# Exhibit A

# 裁 决 书

Arbitral Award



**中国国际经济贸易仲裁委员会**

CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

# 中国国际经济贸易仲裁委员会
# 裁 决 书

第一申请人：湖州创泰融元投资管理合伙企业（有限合伙）

地　　　址：浙江省湖州市红丰路 1366 号 3 幢 1215-1

第二申请人：湖州汇恒赢股权投资合伙企业（有限合伙）

地　　　址：浙江省湖州市红丰路 1366 号 3 幢 1215-15

第三申请人：湖州汇荣晟股权投资合伙企业（有限合伙）

地　　　址：浙江省湖州市红丰路 1366 号 3 幢 1214-16

申请人仲裁代理人：郑玮、方梅、李峥、屈晨希、朱华艺、

　　　　　　　　　孙奇敏　北京市安理律师事务所


第一被申请人：深圳星美圣典文化传媒集团有限公司

地　　　址：广东省深圳市福田区福强路 3030 号福田体育

　　　　　　公园文化产业总部大厦 18-20 层

第二被申请人：覃辉（身份证号码：▆▆▆▆▆▆）

地　　　址：北京市朝阳区呼家楼向军北里 9 号

第三被申请人：星美国际影院有限公司

地　　　址：北京市朝阳区呼家楼向军北里 9 号星美国际大厦

第四被申请人：成都润运文化传播有限公司

地　　　址：北京市朝阳区呼家楼向军北里 9 号

被申请人仲裁代理人：刘芳、仇心惟　北京市世泽律师事务所

北　京

二〇二一年四月二十二日

# 裁 决 书

〔2021〕中国贸仲京裁字第 0742 号

中国国际经济贸易仲裁委员会(以下简称"仲裁委员会")根据申请人湖州创泰融元投资管理合伙企业（有限合伙）、湖州汇恒赢股权投资合伙企业（有限合伙）、湖州汇荣晟股权投资合伙企业(有限合伙)（以下分别简称"第一申请人""第二申请人""第三申请人"，合称"申请人"）和第一被申请人深圳星美圣典文化传媒集团有限公司(以下简称"第一被申请人")、第三被申请人星美国际影院有限公司（以下简称"第三被申请人"）、第四被申请人成都润运文化传播有限公司（以下简称"第四被申请人"）于 2017 年 3 月 15 日签订的 (2017)资字第 06 号-1、（2017）资字第 06 号-2、（2017）资字第 06 号-3《关于成都润运文化传播有限公司的增资协议》及申请人和第一被申请人、第二被申请人覃辉(以下简称"第二被申请人"，与第一、第三、第四被申请人合称"被申请人")于同日签订的《关于成都润运文化传播有限公司增资协议之补充协议》中仲裁条款的约定，以及申请人于 2020 年 3 月 30 日向仲裁委员会提交的书面仲裁申请，受理了上述协议项下的本争议仲裁案。本案编号为 S20200960。

本案仲裁程序适用仲裁委员会自 2015 年 1 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（以下简称"《仲裁规则》"）。

2020 年 5 月 26 日，仲裁委员会仲裁院（以下简称"仲裁院"）按照申请人提供的地址以特快专递的方式分别向申请人和被申请人寄送了本案仲裁通知、《仲裁规则》和《仲裁员名册》，同时向被申请人附寄了申请人提交的仲裁申请

书及证据材料。

上述寄送第一被申请人的文件已妥投；寄送第二、第三、第四被申请人的上述文件先后被邮局退回。仲裁院先后于2020年6月9日和6月15日将第二、第三、第四被申请人的退件情况书面函告申请人，并请其根据《仲裁规则》第八条的规定尽快合理查询被申请人的有效送达地址。

后仲裁院分别收到申请人落款日期为2020年6月12日和2020年6月16日的"确认函"，函中确认第二被申请人的送达地址为："北京市朝阳区呼家楼向军北里9号 收件人彭云，电话 ███████████"或"███████████████████████，收件人覃辉，电话 ███████████，确认第四被申请人的送达地址为："北京市朝阳区呼家楼向军北里9号 收件人彭云，电话 ███████████，确认第三被申请人的送达地址为："北京市朝阳区呼家楼向军北里9号星美国际大厦"。

仲裁院遂按照申请人确认的上述地址分别以特快专递方式向第二、第三、第四被申请人重新寄送了本案仲裁通知等文件。上述寄送第二被申请人"████████████████████████████████████的文件被退回，再次寄送"北京市朝阳区呼家楼向军北里9号"的文件已妥投，寄送第三、第四被申请人上述地址的文件均已妥投。

2020年7月21日，仲裁院致函各方当事人，就其送达地址进行确认，并告知其如对本案已经进行的仲裁程序（包括文件送达）有任何意见或异议，应于规定期限内提出。规定期限内，各方当事人均未提出任何意见或异议。

由于被申请人系多方，且被申请人之间未能就共同选定或共同委托仲裁委员会主任指定仲裁员达成一致意见，仲裁

2

委员会主任根据《仲裁规则》之规定分别指定陶修明先生和李勇先生担任本案仲裁员，指定孙晓民先生担任本案首席仲裁员。上述三位仲裁员在签署了接受指定的《声明书》后，于 2020 年 8 月 24 日组成仲裁庭，共同审理本案。经商仲裁院，仲裁庭决定于 2020 年 9 月 28 日在北京开庭审理本案。

2020 年 8 月 24 日，仲裁院以特快专递的方式分别向双方当事人寄送了本案组庭通知及所附仲裁员签署的《声明书》和开庭通知。同日，仲裁庭通过仲裁院向双方当事人发送了程序通知，要求被申请人于 2020 年 9 月 14 日前提交书面答辩意见及相关证据材料及反请求（如有）。

本案陶修明仲裁员因故主动提出不再担任本案仲裁员，2020 年 9 月 25 日，仲裁院向双方当事人发送了"延期开庭通知"。

后仲裁委员会主任根据《仲裁规则》重新指定刘兰芳女士替换陶修明先生担任本案仲裁员，继续审理本案。经商仲裁院，仲裁庭决定于 2020 年 11 月 12 日在北京开庭审理本案。2020 年 10 月 20 日，仲裁院向双方当事人发送了"替换仲裁员通知"和"开庭通知"。

2020 年 11 月 11 日，仲裁院收到第一、第二被申请人提交的"关于重新邮寄仲裁文件并安排开庭日期的申请"。为便于被申请人参与本案仲裁程序，仲裁院于 2020 年 11 月 11 日再次向被申请人寄送了本案仲裁通知及附件、组庭通知及附件、开庭通知、相关程序通知、延期开庭通知等文件的复印件。但是，该寄送行为并不代表向被申请人重新送达。同日，仲裁庭决定将本案开庭时间延期至 2020 年 12 月 22 日进行。仲裁院于 2020 年 11 月 11 日向双方当事人寄送了"延期开庭通知"。

2020 年 11 月 27 日，被申请人向仲裁院提交了关于指定仲裁员并获得正常答辩期限的申请；2020 年 12 月 7 日，申请人针对被申请人的上述申请提交了回复意见。2020 年 12 月 11 日，仲裁院就此作出答复，决定不予同意被申请人的上述申请，本案仲裁程序继续进行。

2020 年 12 月 22 日，仲裁庭如期在北京对本案进行了开庭审理。申请人和被申请人均委派仲裁代理人参加了庭审。被申请人当庭提交了"被申请人关于仲裁程序问题的异议""答辩状""证据清单"及其附件。庭审中，申请人对其仲裁请求及所依据的事实和理由进行了陈述，被申请人进行了答辩，双方分别就证据进行了说明，出示了相关证据的原件，并回答了仲裁庭的庭审调查提问。

庭后，仲裁院于 2021 年 1 月 4 日收到申请人提交的"仲裁请求确认函""证据目录及说明""补充证据目录及说明"及其附件、"成都润运文化传播有限公司备考财务报表之审计报告"（复印件）并随缴费通知将上述材料转寄被申请人，请其在规定期限内提出意见或异议。后申请人在规定期限内办理了补缴仲裁费事宜。

2021 年 1 月 25 日，仲裁院收到申请人提交的"回应意见"；2021 年 1 月 26 日，仲裁院收到被申请人提交的"补充答辩状及说明""补充答辩状（二）""被申请人补充证据清单"及其附件，并将上述材料在双方当事人之间进行了交换，请其在规定期限内发表书面意见。

2021 年 2 月 3 日，仲裁院收到申请人提交的"质证意见""补充回应意见"及其附件；2021 年 2 月 10 日，仲裁院收到被申请人提交的"被申请人（答辩人）补充答辩意见"。

2021 年 3 月 18 日，仲裁院收到申请人提交的"关于更正

仲裁请求相关文件笔误的说明"并转寄被申请人，请其在规定期限内发表书面意见。在上述规定期限内，被申请人未提出任何意见或异议。

因仲裁程序进行的需要，经仲裁庭申请，仲裁院院长同意并决定将本案裁决作出的期限延长至 2021 年 4 月 24 日。

在本案程序进行中，本案所有材料及书面通知均已由仲裁院按照《仲裁规则》第八条的规定有效送达双方当事人。

本案现已审理终结。仲裁庭根据双方当事人提交的现有书面材料及庭审查明的事实，经合议，作出本裁决。

现将本案案情、仲裁庭意见及裁决结果分述如下：

## 一、案　情

（一）申请人的仲裁请求和主要事实理由

成都润运文化传播有限公司（以下简称"标的公司"或"第四被申请人"）原注册资本人民币 1,000 万元，主营业务为电影放映及影院运营，原股东深圳星美圣典文化传媒集团有限公司（以下简称"第一被申请人"或"星美圣典"）和星美国际影院有限公司（以下简称"第三被申请人"或"星美国际"）分别持有标的公司 51%、49% 的股权，第二被申请人覃辉（以下简称"第二被申请人"或"覃辉"，如无特指，四被申请人统称"被申请人"）系标的公司实际控制人。案外人星美控股集团有限公司（以下简称"星美控股"）拟分拆影城资产并以第四被申请人作为该等影城资产及业务的承载主体，借壳 A 股上市公司"宇顺电子"，实现第四被申请人在国内主板上市。为此，2017 年 3 月 15 日，第一申请人、第二申请人、第三申请人分别与第一被申请人、第三被申请

人、标的公司签订编号为（2017）资字第 06 号-1、-2、-3《关于成都润运文化传播有限公司的增资协议》（如无特指，该三份协议以下合称"《增资协议》"）。同日，申请人与第一被申请人、第二被申请人签订《关于成都润运文化传播有限公司增资协议之补充协议》（以下简称"《补充协议》"）。上述协议共同构成本案所涉交易，相互关联，不可分割，相关条款内容如下：

《增资协议》第 2.1 条约定："综合考虑公司的经营状况、盈利水平、发展前景等因素，并经投资者与星美圣典、星美国际友好协商，确认公司本次增资前的估值为 135 亿元（本案币种均为人民币，仲裁庭注）。以该等估值为参考依据，各投资人分别出资 50,000 万元，除认缴新增资本外，其余计入公司资本公积"。

附件一定义：投资者股权比例=投资者投资金额/（投前估值+本轮增资总的投资额）×100%

第 5.1 条约定："各方同意，自投资者根据本协议第 4.3 条之规定将出资款付至验资账户后 60 个工作日内，共同配合并促使公司完成以下事项：（c）向注册地工商局办理完毕与增资相关的工商变更登记手续"。

第 6.2 条约定："各方同意，尽一切努力、行动和措施配合公司后续以符合法律法规的方式实现上市运作。为上市运作之目的，公司本协议签署之后发生股权转让、增资等股权权益变动事宜，最终以公司及其股东签署的相关交易协议的约定为准"。

第 7.1 条约定："标的公司和星美圣典、星美国际向投资者陈述和保证：……（c）公司和星美圣典、星美国际签署及履行本协议没有也不会……（ⅳ）违反对其作出的任何法

6

院判决或仲裁裁决，或任何政府或主管机构的决定或规定；（e）公司的股权上不存在质押或者其他权利负担……（h）星美圣典、星美国际保证公司于上市运作前的控制权稳定"。

第11.2条约定："如违约方未在本协议第11.1条所述的补救期内予以补救，则除本协议第12.1条（c）项或相关中国法律项下的权利之外，受损害方还可以就违约引起的损失提出索赔，违约方应赔偿其因违约而给受损害方造成的直接和间接损害"。

《补充协议》第3条约定："原股东承诺，标的公司2017年经审计的净利润为7.8788亿元；2017年后至成功上市前，标的公司每年度经审计的净利润增长率不低于15%"。

第4.1条约定："出现下列情形之一的，无论任何主观或客观原因，投资方均有权要求原股东按照本协议4.2条约定的价格购买投资方持有的标的公司的股权：4.1.1增资日起满24个月的对应日后的任何时间；4.1.2标的公司未完成本协议第三条约定的业绩承诺指标的；……4.1.4截至最后一个增资日起满60个月的对应日，标的公司仍未完成成功上市的。4.1.5原股东违反本协议第10.2条承诺的"。

第4.2条约定："购买价格=增资款×（1+15%×投资天数/360）-投资方已经取得的财务顾问费用及股份（或股权）收益"。

第4.3条约定："原股东应于收到投资方要求购买股权的书面通知之日起90日内完成购买义务"。

第4.4条约定："原股东未能依照本协议第4.2条和4.3条约定履行股权购买义务的，投资方有权要求原股东以1元对价向投资方转让标的公司5%的股权作为违约赔偿。违约赔偿不影响购买义务的继续履行。原股东应自通知送达之日

起协助投资方办理本条前述的股权补偿的变更登记（股权过户）手续，原股东应在 10 个工作日内准备完毕全部变更登记所需的书面文件并向相关部门递交书面变更申请"。

第 11.2 条约定："原股东违反本协议约定延期支付款项的，除依照本协议其他条款承担责任外，每延期一日，应向投资方支付延期部分的 5‰作为违约金，违约金应与延期款项一同支付给投资方"。

第 11.4 条约定："支付违约金不影响守约方要求违约方赔偿损失、继续履行协议或解除协议的权利。"

依照上述约定，2017 年 3 月 22 日，三申请人分别向标的公司缴付 5,000 万元保证金。标的公司分别于 2017 年 5 月 8 日、2017 年 6 月 27 日、2017 年 6 月 30 日向第一申请人、第二申请人、第三申请人退还保证金，实际占用时间分别为 48 日、98 日、101 日。

第一申请人、第二申请人、第三申请人分别于 2017 年 5 月 8 日、2017 年 6 月 26 日、2017 年 6 月 28 日向标的公司支付增资款 5 亿元，共计 15 亿元。

然而，被申请人未能按照合同约定履行其合同义务，其对违约行为应承担责任：

1. 标的公司未实现业绩目标，且已实质无法完成上市目标，第一被申请人、第二被申请人应共同承担向申请人股权购买义务，支付股权购买价款。

第一，因标的公司未能实现净利润目标承诺，第一被申请人、第二被申请人应共同承担股权购买义务，支付股权购买价款。

《补充协议》第 3 条约定，第一被申请人、第二被申请人承诺 2017 年经审计的净利润为 7.8788 亿元。

根据中喜会计师事务所 2018 年 7 月 12 日出具的《成都润运文化传播有限公司备考财务报表之审计报告》（中喜审字[2018]第 1751 号，以下简称"《审计报告》"）显示，标的公司 2017 年经审计的净利润仅为 312,829,162.33 元。

根据《补充协议》第 4.1.2 款约定，由于标的公司未能完成上述业绩承诺指标，第一被申请人、第二被申请人应当承担购买申请人持有的标的公司股权义务。

第二，由于标的公司存在对上市的实质性阻碍条件，已无法按约定完成上市，第一被申请人、第二被申请人应共同承担股权购买义务，向申请人支付股权购买价款。

标的公司股份被多轮司法查封，第一被申请人持有的第四被申请人 51%股权已被采取 5 轮冻结措施；第三申请人持有的第四被申请人 49%的股权已被采取 3 轮冻结措施。

第二被申请人作为标的公司的实际控制人，根据中国证券监督管理委员会（以下简称"证监会"）2018 年 8 月 30 日作出的[2018]14 号《中国证监会市场禁入决定书》，被采取 5 年证券市场禁入措施。

标的公司被多家法院列为失信被执行人。

上述事实对于标的公司采取首次公开发行股票方式上市（IPO）构成实质性阻碍。根据证监会《首次公开发行股票并上市管理办法》第十二条、第十三条和第十六条规定，星美国际、星美圣典皆被标的公司的实际控制人覃辉所控制，其持有的标的公司股权被司法冻结，违反"受实际控制人支配的股东持有的发行人股份不存在重大权属纠纷"的要求，并可能最终导致实际控制人发生变更；覃辉作为实际控制人被市场禁入，也将对标的公司首次公开发行股票并上市造成实质性阻碍。标的公司无法通过 IPO 路径上市。

上述事实亦对标的公司采取重大资产重组方式上市（借壳上市）构成实质性阻碍。证监会《上市公司重大资产重组管理办法》第十一条规定："上市公司实施重大资产重组，应当就本次交易符合下列要求作出充分说明，并予以披露：规定：……（二）不会导致上市公司不符合股票上市条件"。据此，即重组上市标准应等同于首次公开发行股票上市标准。

另外，证监会《上市公司收购管理办法》第五条规定："收购人包括投资者及与其一致行动的他人"。第六条规定："有下列情形之一的，不得收购上市公司：（一）收购人负有数额较大债务，到期未清偿，且处于持续状态；（二）收购人最近3年有重大违法行为或者涉嫌有重大违法行为；（三）收购人最近3年有严重的证券市场失信行为；（四）收购人为自然人的，存在《公司法》第一百四十六条规定情形；（五）法律、行政法规规定以及中国证监会认定的不得收购上市公司的其他情形。"据此，第二被申请人作为第四被申请人的实际控制人，可能构成《上市公司收购管理办法》所规定的收购人，其被中国证监会采取行政处罚，属于收购人"有严重的证券市场失信行为"；第四被申请人因涉及多项诉讼查封且被列为失信被执行人，属于收购人"负有数额较大债务，到期未清偿，且处于持续状态"以及"有严重的证券市场失信行为"。

综上，第四被申请人无法通过重大资产重组（借壳）路径上市。

标的公司无法完成上市，已触发第一被申请人、第二被申请人购买申请人股份的条件，应当履行相应的购买义务。根据《补充协议》第4.1.4条约定，标的公司应当在最后一个

增资日（2017年6月28日）起满60个月的对应日（2022年6月27日）前上市，标的公司已实际无法实现该上市目标。

第三，股权购买价款请求的确定标准。

三申请人分别于2017年5月8日、2017年6月26日、2017年6月28日向标的公司支付增资款5亿元，共计15亿元，暂计至2020年3月12日，投资天数分别为1016日、967日、965日。此外，三位申请人已经分别取得财务顾问费用10,000,000元。

《补充协议》第4.2条约定："购买价格=增资款×(1+15%×投资天数/360)-投资方已经取得的财务顾问费用及股份(或股权)收益"。

根据该约定的计算方式，暂计至2020年3月12日，第一被申请人、第二被申请人应共同向第一申请人、第二申请人、第三申请人分别支付的股权购买价款为701,666,666.67元、691,458,333.33元、691,041,666.67元，共计2,084,166,666.67元。

2. 第一被申请人、第二被申请人迟延履行购买义务，应当向申请人转让标的公司5%股权。

2018年9月19日，申请人向第一被申请人、第二被申请人寄送了《履行股权购买义务通知书》，要求其收到通知后90日内履行购买义务。第一被申请人拒收该通知；第二被申请人于2018年9月20日签收该通知，但第二被申请人至今未履行购买义务。2018年9月26日，申请人再次向第一被申请人寄送了《履行股权购买义务通知书》，要求其收到通知后90日内履行购买义务。第一被申请人于2018年9月29日签收该通知，但至今未履行购买义务。

因此，第一被申请人、第二被申请人已迟延履行购买义

务。根据《补充协议》第 4.4 条的约定，申请人有权要求第一被申请人、第二被申请人以 1 元对价向申请人转让其持有的第四被申请人 5%股权。

2019 年 12 月 20 日，申请人向第一被申请人、第二被申请人分别寄送了《履行赔偿义务通知书》，要求其按上述约定转让股权。2019 年 12 月 23 日，第一被申请人、第二被申请人均已签收该《履行赔偿义务通知书》。此外，第一申请人已于 2019 年 12 月 26 日向第一被申请人支付股权转让款人民币 1 元。

据此，第一被申请人、第二被申请人应当按照《补充协议》第 4.4 条的约定，向申请人转让其持有的第四被申请人 5%股权。

3. 第一被申请人、第二被申请人因未按时支付股权购买价款，应向申请人支付相应的迟付股权购买价款的违约金。

《补充协议》第 4.3 款约定，第一被申请人、第二被申请人应于收到申请人要求购买的书面通知之日起 90 日内完成股权购买。自 2018 年 9 月 29 日第一被申请人收到《履行购买义务通知书》计算，90 日履行期届满日为 2018 年 12 月 29 日。因此，第一被申请人、第二被申请人应自 2018 年 12 月 30 日起开始就迟付股权购买价款承担违约金。

根据《补充协议》第 11.2 条约定，第一被申请人、第二被申请人应按照每日迟付金额的千分之五共同向申请人支付违约金。具体计算方法为，以每日迟付股权购买价款为基数，按照每日千分之五计算，自 2018 年 12 月 30 日起计算至实际付款之日止，合计约 42 亿元。

考虑到该数额较高，申请人同意根据案涉合同签署时有效的《中华人民共和国合同法》（以下简称"《合同法》"）

第一百一十三条予以适当调整。申请人与被申请人签订《增资协议》及《补充协议》时一致认可的标的公司投前估值135亿，申请人因对方违约将获得的 5%股权，该部分股权价值6.75 亿元即为被申请人订立合同时预见到或应当预见到的因违反合同可能造成的损失。据此，申请人主张将迟付股权购买价款的违约金减为 6.75 亿元，此笔违约金在申请人中平均分配。

4. 就申请人支付的保证金，第一被申请人、第二被申请人应当支付该保证金的收益及迟延支付该收益的违约金。

第一，第一被申请人、第二被申请人应当支付保证金的收益。

《补充协议》第 5.1.3 条约定，第一被申请人、第二被申请人应支付申请人在《增资协议》项下缴付的保证金收益，按照年利率 15%计算；第 5.2.1 条约定，第一被申请人、第二被申请人应于保证金支付至验资账户之日向申请人结清并支付保证金收益，收益计算自投资方支付保证金至指定账户之日起至保证金转至验资账户之日止。

2017 年 3 月 22 日，三申请人分别向标的公司各支付了5,000 万元保证金。2017 年 5 月 8 日、2017 年 6 月 27 日、2017 年 6 月 30 日，标的公司分别向申请人退还保证金，实际占用保证金时间分别为 48 日、98 日、101 日。按照上述约定，第一被申请人、第二被申请人应按照单利年利率 15%在保证金返还之日共同向三位申请人分别支付资金占用期间的收益 1,000,000 元、2,041,666.67 元、2,104,166.67 元，合计人民币 5,145,833.33 元。

第二，第一被申请人、第二被申请人应就上述迟付保证金收益，支付违约金。

按照《补充协议》第11.2条约定，第一被申请人、第二被申请人应就迟付保证金收益期间的利息损失共同向申请人赔偿。因保证金已退回，保证金收益是固定金额约515万元，按《补充协议》第11.2条约定每日5‰计算（折合为每年180%）标准过高，申请人同意将保证金收益违约金按照年利率24%进行调减。

5. 关于第三被申请人、第四被申请人的违约责任及赔偿义务。

第四被申请人涉及多项诉讼查封，被列为失信被执行人；第一被申请人、第三被申请人在本协议履行期间，其持有标的公司的股权出质，设置权利负担，且被多轮司法查封，亦形成了权利负担。故，第一被申请人、第三被申请人和第四被申请人均违反了《增资协议》第7.1条（c）（e）的约定。

第一被申请人、第三被申请人和第四被申请人的上述行为直接导致标的公司不能通过IPO或借壳方式上市，还违反了《增资协议》第6.2条约定。

2018年11月30日申请人用顺丰快递向第三被申请人和第四被申请人发出通知，要求第三被申请人和第四被申请人就投资者的损失立即采取补救措施，向申请人支付相当于股权购买价款的现金。《增资协议》第18.2条约定，通知如以经公认的快递服务发送，则在递交快递公司之日的次日的3个工作日即视为送达。通知送达后，第三被申请人和第四被申请人亦未履行补救义务。

2020年3月3日，申请人又向第三被申请人和第四被申请人用EMS发出了《履行补救义务通知书》，第三被申请人和第四被申请人仍未履行补救义务。

故第一被申请人、第三被申请人和第四被申请人应就此依据《增资协议》第11.2条承担赔偿义务，因第一被申请人本身还应依据《补充协议》履行股权购买义务和违约赔偿义务，义务范围大于依据《增资协议》第11.2条的赔偿责任的范围，故申请人将《增资协议》第11.2条的赔偿义务主体明确为第三被申请人和第四被申请人，且赔偿范围限定为股权购买价款和相应的迟延支付股权购买价款违约金。

6. 被申请人应当承担申请人为本案仲裁支出的费用及本案全部仲裁费用。

申请人共提出以下七项仲裁请求：

1. 裁决第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人分别支付股权购买价款（购买标的为三申请人分别持有的第四被申请人3.12%股权，股权购买价款按照《补充协议》第4.2条约定计算至被申请人共同向申请人实际支付完毕购买价款之日止，并扣减相应财务顾问费；暂计至2020年3月12日，第一被申请人、第二被申请人应共同向第一申请人、第二申请人、第三申请人支付的股权购买价款分别为706,666,666.67元、696,458,333.33元、696,041,666.67元，共计2,099,166,666.67元）；

2. 裁决第一被申请人、第二被申请人立即向第一申请人、第二申请人、第三申请人转让第四被申请人5%的股权，5%的股权在三申请人中平均分配；

3. 裁决第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人各支付迟延支付股权购买价款的违约金2.25亿元，总计6.75亿元；

4. 裁决第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人分别支付保证金收益（以三申

请人各自支付的 50,000,000 元保证金为基数，按照年收益 15%计算，自 2017 年 3 月 22 日分别计至 2017 年 5 月 8 日、2017 年 6 月 27 日、2017 年 6 月 30 日期间的收益分别为 1,000,000 元、2,041,666.67 元、2,104,166.67 元，共计 5,145,833.33 元），以及因迟延支付保证金收益的违约金（对第一申请人的保证金收益违约金以 1,000,000 元为基数，自 2017 年 5 月 9 日起按照年化 24%计算至全部清偿之日止，以上违约金暂计至 2020 年 3 月 12 日为 692,666.67 元；对第二申请人的保证金收益违约金以 2,041,666.67 元为基数，自 2017 年 6 月 28 日起计算至全部清偿之日止，以上违约金暂计至 2020 年 3 月 12 日为 1,346,138.89 元；对第三申请人的保证金收益违约金以 2,104,166.67 元为基数，自 2017 年 7 月 1 日起计算至全部清偿之日止，以上违约金暂计至 2020 年 3 月 12 日为 1,383,138.89 元。截至 2020 年 3 月 12 日，申请人的保证金收益违约金共计为 3,421,944.45 元）

5. 裁决第三被申请人、第四被申请人对第一项和第三项仲裁请求承担连带赔偿责任。

6. 裁决被申请人共同赔偿申请人为本案仲裁所支出的费用，包括律师费 500,000 元（向第一申请人支付 166,666 元，向第二申请人支付 166,667 元，向第三申请人支付 166,667 元），保全费 5,000 元（全部向第一申请人支付），财产保全担保费 420,000 元（向第一申请人支付 140,000 元，向第二申请人支付 140,000 元，向第三申请人支付 140,000 元）。

7. 裁决被申请人承担本案全部仲裁费用。

（二）被申请人答辩意见

1. 诉争协议应放在被申请人与"中植系"企业之间的整体交易背景下考察，"中植系"企业利用"计划重组上市-增

资-托管-回购"等一系列安排，以投资为名行欺骗之实，严重违背交易公平和诚实信用原则，应予以撤销。

三申请人均为解直锟及"中植系"实际控制的企业或私募基金。2017年3月申请人对第四被申请人进行投资时，承诺无条件支持和配合第四被申请人进行上市运作。后申请人安排A股上市公司宇顺电子通过发行股份和支付现金方式购买第四被申请人100%股权。宇顺电子公告的《2020年半年度报告》显示，其控股股东为中植融云（北京）企业管理有限公司，实际控制人为解直锟。因此，宇顺电子为解直锟及"中植系"实际控制的上市公司。

"中植系"企业假借"计划重组上市-增资-托管-回购"的交易安排，逐步转移乃至掏空被申请人资产，却又要求被申请人回购其股权并要求高额违约金，严重违背了交易公平和诚实信用原则。

2018年1月11日，宇顺电子未经被申请人事先同意和确认公告内容，擅自发布了《关于股票复牌且继续推进重大资产重组事项的公告》，宣布宇顺电子计划按照人民币200亿元的整体作价收购第四被申请人100%股权，交易对手为星美圣典、星美国际、三申请人等。该公告指出，第四被申请人的股东为星美圣典和香港上市公司星美控股集团有限公司的全资子公司协议控制（VIE架构）。在交易方案尚未明确的情况下，宇顺电子的上述擅自公告行为对香港上市公司星美控股集团公司造成了极为恶劣的影响。事实是宇顺电子净资产只有人民币约4.7亿元，根本没有能力收购价值人民币200亿的第四被申请人，并擅自将覃辉定义为交易完成后上市公司的实际控制人。后，宇顺电子在"蛇吞象"的方案无法实施的情况下，又以覃辉作为上市公司宁波圣莱达电

器股份有限公司（证券代码：002473）的实际控制人于 2018 年 4 月 14 日收到证监会《行政处罚事先告知书》为借口，借机于 4 月 17 日又仓促公告终止上市重组计划，整个事件给被申请人造成了极为恶劣的市场影响和声誉损失。

申请人提供的《审计报告》内容不完整，该报告显示第四被申请人在 2017 年计提了人民币 2.67 亿的资产减值损失，计提的巨额减值损失正是 2017 年净利润大幅减少的主要原因。

2018 年 8 月，中泰创展作为三申请人的控制人与被申请人签署《股东权利委托协议》，约定将星美圣典和星美国际（合计持股 84.37%）持有的第四被申请人股权对应的股东权利不可撤销地委托给中泰创展行使（委托期限为 3 年，可延长一年），自 2018 年 9 月至今，中植系企业已实际托管了第四被申请人旗下的全部影院资产。

2019 年 1 月 9 日，中泰创展与高晟财富签订《印章证照交接单》。自此，中泰创展将第四被申请人旗下影院的印章和营业执照交给高晟财富继续执行相关托管事宜。在中泰创展托管期间，第四被申请人旗下多家影院的所有权被陆续转移至"中植系"企业北京九山文化有限公司、深圳杰弗瑞斯投资管理有限公司及成都润运影院管理有限公司名下。

2. 即使《增资协议》和《补充协议》不被撤销（被申请人对此不认可），覃辉也不属于《补充协议》项下的"原股东"，不应与"原股东"星美圣典共同承担责任。

《补充协议》项下"原股东"的定义并不包含覃辉。首先，就第四被申请人的真实股权结构而言，覃辉并非第四被申请人的股东。其次，《补充协议》正文第一页已经对各签约方的身份进行明确定义，其中包括："原股东：乙方：深

圳星美圣典文化传媒集团有限公司"、"实际控制人:丙方:覃辉"。再次,《补充协议》第 1.1 条"定义"项下明确了"原股东指星美圣典",仅仅"为方便表述,将原股东作为星美圣典及覃辉先生之合称"。第四,《补充协议》多项条款已明确体现出"原股东"和"实际控制人"为两个不同主体。

3. 即使《增资协议》和《补充协议》不被撤销(被申请人对此不认可),申请人对第四被申请人的投资也已经构成名股实债,应认定为申请人向第四被申请人支付的 15 亿元为借款,不应由股东或实际控制人承担偿还义务。

根据中国证券投资基金业协会《关于发布<证券期货经营机构私募资产管理计划备案管理规范第 4 号>的通知》,"名股实债"是指投资回报不与被投资企业的经营业绩挂钩,不是根据企业的投资收益或亏损进行分配,而是向投资者提供保本保收益承诺,根据约定定期向投资者支付固定收益,并在满足特定条件后由被投资企业赎回股权或者偿还本息的投资方式,常见形式包括回购、第三方收购、对赌、定期分红等。

《补充协议》第 5 条和第 4.1 条约定了定期支付固定收益以及回购安排。根据这些安排,申请人与第四被申请人之间的交易名为股权投资,实为三笔年利率为15%的借款。因此,应由第四被申请人以偿还债务的形式向申请人还款。

4. 即使《增资协议》和《补充协议》的约定有效(被申请人对此不认可),2018 年签署的《股东权利委托协议》也已对该等协议的相关约定产生实质修改,股权购买价款和保证金收益的支付时间应在托管方中泰创展("中植系"企业)完成第四被申请人股权转让之后。

尽管《补充协议》第 4.3 条对股权购买价款支付时间做出约定，但《股东权利委托协议》第 1.1.7 条约定，中泰创展应将处置第四被申请人股权完成后的财产按以下顺序和方式进行分配：（a）根据中泰创展、第四被申请人控股股东（即星美圣典）与中泰创展投资主体（即申请人）于 2017 年 3 月 15 日签署的《补充协议》的约定补足中泰创展的投资本金及收益；（b）偿还星美圣典、星美国际及其关联方（包括第四被申请人）对中泰创展的债务及利息。因此，依据《股东权利委托协议》，《补充协议》项下的投资本金、收益以及被申请人对中泰创展的债务应在星美圣典和星美国际所持第四被申请人股权以合理估值出售之后，以出售所得款项进行支付或偿还。

由于《股东权利委托协议》的签订时间在后，其应理解为被申请人与申请人的控制者中泰创展就特定事项协商一致后通过书面形式变更之前约定的内容，股权购买价款、保证金收益的支付时间理应在第四被申请人股权出售之后。

5. 即使《增资协议》和《补充协议》的约定有效且被申请人确实需要向申请人支付违约金（被申请人对此不认可），违约金的计算方式也存在严重不合理之处。

（1）申请人的寄送地址有误，导致《履行股权购买义务通知书》《履行补救义务通知书》《履行赔偿义务通知书》并未有效送达，致使相关方发生所谓"违约行为"。

根据申请人提供的文件，申请人已向相关被申请人寄送了《履行股权购买义务通知书》等文件，但是，申请人提供的快递单上并无收件人签名；尽管网页查询截图的投递状态为已签收，但并未标明是何人签收，无法作为被申请人已收到该通知书的凭据。相反，覃辉长期与家人居住国外，特别

是 2018 年 9 月前后一直在欧洲和美国，申请人明知却故意利用覃辉不在国内的机会邮寄上述所谓的"回购通知"，覃辉根本无法收到该通知书。

此外，《补充协议》中载明的覃辉的地址"██████████████████"并非打印，而是由不知名人士手动填写，无法证明该手写地址在各方签约时已经存在，亦无法证明该地址即为覃辉本人明确认可的通知地址。事实上，该地址早已不是覃辉的实际居住地，申请人向该地址寄送通知书不能构成有效送达。

（2）被申请人违约金（即使存在）的利率不应超过申请人提起仲裁时一年期贷款市场报价利率（LPR）的四倍（16.2%）。

根据最高人民法院 2020 年 8 月发布的《最高人民法院关于审理民间借贷案件适用法律若干问题的规定》第二十六条、第三十条和三十二条规定，应参照申请人提起仲裁时（2020 年 3 月 20 日）的 4 倍 LPR 确定利率，2020 年 3 月 20 日中国人民银行授权全国银行间同业拆借中心公布的一年期 LPR（4.05%）的四倍计算，违约金年利率不得超过 16.2%。

6. 即使《增资协议》和《补充协议》的约定有效且被申请人确实需要向申请人支付一定金额（被申请人对此不认可），被申请人也已因"中植系"企业未尽托管义务而丧失支付能力，且该等支付义务应在中植应向第四被申请人承担的损害赔偿中扣除，同时被申请人也有权对剩余的损害赔偿进行追偿。

（1）中泰创展在受托经营期间未尽忠诚勤勉义务，给被申请人造成重大损失，被申请人因中植的不良托管而丧失了

支付能力。

（2）被申请人的还款义务（即使存在）应在中泰创展应向被申请人承担的损害赔偿中扣除，同时被申请人也有权对剩余的损害赔偿进行追偿。

根据《股东权利委托协议》的相关规定，中泰创展应充分履行受托事项，在履行过程中不得对第四被申请人的日常经营造成不利影响；如果中泰创展实质性地未履行上述协议项下的任何义务，则被申请人有权要求中泰创展给予损害赔偿。根据《合同法》第九十九条和第四百零六条，被申请人认为，从交易实质出发，出于节约仲裁庭成本和当事人成本的考量，并基于公平和诚实信用原则，申请人均受中泰创展控制，而中泰创展在其托管第四被申请人期间又给被申请人造成了极大损害，即使被申请人存在任何向被申请人付款的义务，该等金额也可以从中泰创展给被申请人造成的损失中抵销。

7. 即使《增资协议》和《补充协议》的约定有效且被申请人确实需要向申请人支付一定金额（被申请人对此不认可），星美国际和第四被申请人不存在违反《增资协议》和《补充协议》的行为，不需要承担任何违约责任。

首先，对于申请人所主张的星美国际和第四被申请人违反《增资协议》第6.2条的内容，"各方同意，尽一切努力、行动和措施配合公司后续以符合法律法规的方式实现上市运作。"该条约定并未要求各方确保第四被申请人必须实现上市，而是仅提出了努力配合实现上市的要求。申请人以第四被申请人未能完成上市为由认为被申请人构成违约，是对"努力配合"义务的不合理的、过于严苛的解释，严重曲解了《增资协议》条款的原意。

其次，对于申请人所主张的星美国际和第四被申请人违反《增资协议》第7.1条（c）（e）项的内容，第7.1条内容系第四被申请人、星美圣典和星美国际作出的陈述与保证，并未明确约定在增资完成后持续有效。在股权投资协议中，"陈述"指向过去发生、目前既存的事实或状态，是对投资协议签署时的目标企业状态的事实描述；"保证"尤其指对现在或者过去的事实或者行为提供的担保，并不能涵盖交易完成后的任何时间。

第三，星美国际及第四被申请人均不是《补充协议》的签约方，因此申请人要求其承担《补充协议》项下相关责任不存在法律依据。

8.申请人应当自行承担本案仲裁费用以及为本案仲裁支出的全部费用，并应承担被申请人为本案仲裁支出的全部费用。

（三）申请人的代理意见

1.本案送达程序不存在瑕疵

申请人与被申请人签订的《增资协议》第18.3条约定了第四被申请人、星美圣典、星美国际的通讯地址；《补充协议》第12.2条约定了覃辉的通讯地址。申请人在提起本案仲裁时，已经向仲裁委员会提交了上述被申请人的通讯地址。

在部分文件被退回后，申请人通过公开渠道合理查询，又向仲裁委员会提供了星美国际的其它通讯地址，第四被申请人的其它通讯地址（联系人彭云的通讯地址），覃辉的其它通讯地址。

根据仲裁委员会2020年7月21日做出的（2020）中国贸仲京字第068137号通知，仲裁委员会向上述地址再次寄送仲裁通知等文件，快递记录均显示已妥投。其后，仲裁委

员会在后续程序中进一步向上述地址寄送了组庭通知、开庭通知、替换仲裁员通知等材料，全部文件快递记录也均显示已妥投。

据此，仲裁委员会已经以特快专递的方式将仲裁文件发送至被申请人的通讯地址，符合《仲裁规则》第八条第（三）款关于送达的要求。至迟在 2020 年 7 月 21 日，本案仲裁通知等文件已送达全部被申请人。仲裁委员会在（2020）中国贸仲京字第 104700 号通知中亦明确确认："本会仲裁院已根据《仲裁规则》第八条的规定，向申请人和被申请人有效送达了本案所有文件和材料。"

2. 本案审理范围是申请人和被申请人之间的增资纠纷，被申请人应当按《增资协议》及《补充协议》的约定，支付股权回购款等并承担相应的违约责任。

（1）本案审理范围是申请人和被申请人之间的增资纠纷。

申请人系根据申请人分别与星美圣典、星美国际、第四被申请人签订的 3 份《增资协议》第 14 条、以及申请人共同与星美圣典、覃辉签订的《补充协议》第 14 条，提起本案仲裁，故本案审理范围仅为申请人与被申请人之间的增资纠纷，审理依据的合同只有《增资协议》及《补充协议》，除该协议外的其它交易，不属于本案审理范围。

（2）《补充协议》约定的股权回购条件已经成就，被申请人应当按约定承担回购义务及其它责任。

第一，《补充协议》约定的股权回购条件已经成就：其一，根据《补充协议》第 3 条的约定，覃辉、星美圣典承诺标的公司 2017 年经审计的净利润为 7.8788 亿元。但是，《审计报告》显示，标的公司 2017 年经审计的净利润仅为

312,829,162.33 元。

其二，星美圣典公司持有的标的公司 51%股权已被采取 5 轮司法冻结措施，星美国际持有的标的公司 49%的股权已被采取 3 轮司法冻结措施，覃辉被证监会采取 5 年证券市场禁入措施，标的公司多次被列为失信被执行人。

在股权回购条件成就的情况下，申请人也已经根据合同约定的通讯地址和约定的送达方式，向被申请人寄送了《履行购买义务通知书》《履行补救义务通知书》。

第二，被申请人的答辩理由均不能成立。其一，针对被申请人关于《审计报告》内容不真实的主张，申请人认为，《审计报告》系由具备审计资格的专业会计师事务所做出，其是否是第四被申请人的常用审计机构，不影响《审计报告》的效力，且第四被申请人已经在《审计报告》上加盖公章，表明其认可报告所列数据。

其二，针对被申请人关于申请人对股权回购条件成就存在过错的主张，申请人认为，首先，回购条件系由被申请人自身行为所触发。标的公司 2017 年业绩未达标是由于其自身经营不善；星美圣典、星美国际股权被冻结是因为未履行（2018）黔 2325 执保 31 号等执行裁定书规定的义务；覃辉被采取市场禁入措施是因为宁波圣莱达电器股份有限公司虚增收入和利润违反《证券法》的规定；标的公司被列为失信被执行人是因为未履行（2018）辽 0204 执 1590 号等执行裁定书规定的义务，上述事实皆非受到申请人影响，也非申请人所能控制。

其次，回购条件触发时间在《托管方案》《股东权利委托协议》拟定及影院资产转让之前。《审计报告》依据的是标的公司 2017 年 12 月 31 日前的财务数据；星美圣典和星

美国际股权被冻结、覃辉被采取市场禁入措施、标的公司被列为失信被执行人皆发生在 2018 年 8 月，即被申请人所称被申请人与其它主体进行其它交易之前，故股权回购条件成就与申请人无关。

（3）案涉交易不构成"明股实债"，违约金数额无需调减。

首先，申请人与被申请人签订的 4 份协议都强调合同签订的目的是促使标的公司上市。同时，《补充协议》还明确约定了申请人作为股东，享有对标的公司的知情权、分红权，管理权等权利。合同中关于标的公司原股东给予利润补偿、在特定条件成就时回购股权的约定，仅仅是申请人保证其投资利益实现的"对赌条款"，这在商事投融资实践尤其是私募股权投资实践中非常普遍。反之，《增资协议》和《补充协议》中并不存在任何关于借款的意思表示；未限制申请人转让其持有的股权；在增资金额高达 15 亿元的情况下，没有约定任何增信措施，以上情况皆不符合借款的商业习惯。

其次，从合同履行过程来看，申请人办理了工商变更登记，按照协议约定向标的公司委派了董事，实际参与了公司经营；行使知情权，从标的公司处获得了《审计报告》等财务信息，积极行使其作为股东的权利，符合股权交易的特点。

（4）申请人要求标的公司和星美国际承担连带赔偿责任有充分的依据。

申请人系根据《增资协议》第 6.2 条、7.1 条、11.1 条和 11.2 条，要求标的公司和星美国际承担连带赔偿责任，具有充足的事实和法律依据。

首先，标的公司和星美国际违反了《增资协议》第 6.2 条、7.1 条的约定。依第 6.1 条约定，标的公司和星美国际必

26

须采取积极措施最终实现上市目标，不能做出阻碍公司上市的消极行为。但是，标的公司被列为失信被执行人、星美国际的股权被冻结等，已经成为了标的公司上市的实质性障碍。另，依第7.1条第（h）项约定，星美圣典和星美国际须保证标的公司于上市运作前的控制权稳定，而星美国际股权被冻结将导致公司控制权存在争议。

其次，在标的公司和星美国际违反《增资协议》约定的义务的情况下，根据第11.1条和第11.2条，其应当赔偿因违约而给受损害方造成的直接和间接损失，即覃辉和星美圣典应付未付的各种款项。在此基础上，申请人已经根据公平原则将赔偿范围限定为股权购买价款和相应的迟延支付股权购买价款违约金。星美国际和标的公司应当承担上述赔偿责任。

3.被申请人与其它主体的交易不受仲裁委员会管辖，也不影响本案的实质审理。

如前所述，本案审理依据只有《增资协议》及《补充协议》，被申请人与中泰创展、高晟财富的其它交易，与《增资协议》及《补充协议》的履行无关，不属于本案仲裁协议约定的仲裁范围。

另外，仲裁委员会对被申请人的其它交易没有管辖权，相关交易也不影响案涉增资交易的实质审理：

第一，仲裁委员会对被申请人与中泰创展、高晟财富之间纠纷没有管辖权。被申请人未提供任何证据，证明被申请人与中泰创展、高晟财富签订了同意将其争议提交仲裁委员会仲裁的仲裁协议。相反，未盖章生效的《股东权利委托协议》中约定的争议解决方式是向法院提起诉讼。

第二，被申请人与中泰创展、高晟财富之间的其它交易

不影响本案的实质审理。其一，从交易主体而言，被申请人不能基于其它交易合同要求申请人承担责任。申请人与中泰创展、高晟财富、宇顺电子等都是依法成立的法人或非法人组织，都是独立的商事主体，持股关系不影响独立意思表示和法律效力，不能以此作为承担责任的依据。被申请人提供的单方盖章的《托管方案》和《委托协议》，主体都不是申请人。《印章证照交接单》上无申请人签章，申请人也从未实际控制被申请人的印鉴。标的公司旗下影院资产也未转移至申请人名下。据此，上述协议无论是否合法有效，都对申请人没有任何约束力。其二，从交易内容而言，被申请人的其它交易与案涉交易相互独立，互不影响。其三，被申请人与中泰创展、高晟财富等之间的其它交易，并不存在显失公平或欺诈、胁迫等情形。被申请人刻意隐瞒了部分事实，强行将中泰创展与被申请人关于贷款增信的协商、被申请人向高晟财富提供让与担保的行为，与案涉申请人的增资交易联系在一起，意图逃避其在本案中的回购义务，其关于整体交易的主张不能成立。

4.《审计报告》的内容真实公允，覃辉的证券市场禁入惩罚措施也未被撤销，《补充协议》约定的股权回购条件已经成就。

（1）《审计报告》内容真实公允，被申请人未完成业绩承诺。

被申请人未提供任何证据对《审计报告》依据的数据、使用的审计方法等核心内容提出反对意见，其强调的偿还ABS债务、计提资产减值损失、收购影院资产的交易背景和交易目的等，都与数据的准确性和有效性无关，并不影响审计结果。另外，《审计报告》所涉期间，标的公司的股东一

直是星美圣典、星美国际，由覃辉实际控制。

（2）覃辉的证券市场禁入惩罚措施至今未被撤销，考虑到被申请人的其它违约情况，标的公司不可能按约定上市。

证监会至今仍未撤销对覃辉的证券市场禁入处罚决定。覃辉针对该决定提起行政诉讼，北京市第一中级人民法院做出（2019）京01行初671号《行政判决书》，认定证监会对覃辉采取的5年证券市场禁入措施"认定事实清楚，证据充分，幅度适当，程序合法"，驳回了覃辉的诉讼请求。故覃辉在2023年前都无法进行证券市场活动，在维持其实际控制人地位不变的情况下，标的公司无法在合同约定的时间内上市，《补充协议》约定的回购条件已经成就。

即便不考虑覃辉被采取证券市场禁入惩罚之情况，由于标的公司被列为失信被执行人，星美圣典和星美国际持有的标的公司股权被多轮冻结，标的公司已确定不可能在约定时间内完成上市。

5. 本案申请人与被申请人并未通过《股东权利委托协议》对《补充协议》进行变更，《股东权利委托协议》等与本案无关，申请人并未对标的公司股权进行托管。

6. 星美控股的清算程序对本案没有影响，本案无需中止审理。

《中华人民共和国破产法》第二十条规定："人民法院受理破产申请后，已经开始而尚未终结的有关债务人的民事诉讼或者仲裁应当中止；在管理人接管债务人的财产后，该诉讼或者仲裁继续进行"。

四被申请人并非破产债务人，且星美控股已经选定了清盘人，本案无需中止审理。另，根据法人人格独立和合同相对性原则，本案标的是申请人持有的标的公司股权，与星美

控股通过与星美圣典、星美国际之间的协议享有的对标的公司的权利无关，本案处理结果对星美控股不产生影响。

（四）被申请人补充代理意见

1.《股东权利委托协议》已将 2017 年 3 月签署的《补充协议》下的权利义务进行了实质性变更。

经北京市长安公证处公证的原星美集团负责人胡宜东与中植系代表任晓楠 2018 年 7 月 25 日的微信记录和《托管方案及注意事项》。申请人实控方"中泰创展"在 2019 年 1 月 9 日将标的公司及其下属影院公司的公章和证照转委托给中植系另一家企业"高晟财富"的《印章证照交接单》；被申请人 2018 年 8 月与申请人实控方中泰创展签订的标的公司《股东权利委托协议》；《123 家影院授权中影星美院线收淘票票台票平台票款印章使用申请表（成都润运）》及公司 OA 系统显示的中植系员工的资金使用审批记录等证据均证明了股权托管的事实。

根据《股东权利委托协议》的约定，《补充协议》项下的投资本金、收益以及被申请人对中泰创展的债务及利息应在星美圣典和星美国际所持标的公司股权以合理估值出售之后，以出售所得款项进行支付或偿还。

2. 星美国际和标的公司不是《补充协议》的签约方。申请人在明知存在 VIE 交易安排的情况下，试图通过《补充协议》将其对标的公司的股权投资变更为"明股实债"，该《补充协议》不仅对被申请人没有约束力，而且严重损害了香港上市公司星美控股（0198.HK）的权益，应当被认定无效。

3. 申请人提交的《审计报告》不能作为标的公司 2017 年业绩不达标的证据；相反，该《审计报告》体现的各种数据反而证明了标的公司在 2017 年的资产和业务规模均有大幅

增长。该审计报告中的相关处理和数据系各方为标的公司上市共同协商和确认的结果。

根据《审计报告》显示：标的公司 2017 年的营业收入比 2016 年增加了 1.06 亿元，应收账款增加了约 3.6 亿元，预付款项增加了约 7000 万，其它流动资产增加了约 2.66 亿元，总资产增加了约 22.8 亿元，其它应付款减少了约 2.3 亿元；应缴纳税费增加了约 7316 万元。此外，与 2016 年相比，标的公司在 2017 年支付的其他与经营活动有关的现金约 2.63 亿，在 2017 年偿还了 ABS 等相关费用约 3.34 亿元的款项，并且在 2017 年计提了人民币 2.67 亿的资产减值损失（2016 年计提金额为人民币 61 万元）。

4. 关于被申请人覃辉因为上市公司圣莱达 2000 万元虚假利润受证监会处罚一事，覃辉先生完全不服，并提起了行政复议，之后又对证监会提起行政诉讼；但是，在行政诉讼的过程中，证监会将该案移交给了宁波市公安局，宁波市公安局经调查后，出具了《终止侦查决定书》，认定"覃辉不是宁波圣来达股份有限公司的实际控制人，并且对虚假利润的情况并不知情。"

关于覃辉先生受到证监会处罚是否影响标的公司上市，被申请人认为，企业重组上市有各种不同的方案，更何况，在上市未果之后，对标的公司股权托管的安排已经改变了之前各方的关于上市计划的相关安排。申请人没有理由再根据之前的约定，在发生各种后续新的安排后，在长达 2 年多的时间后提出本案仲裁和各种不合理的要求。

（五）第三被申请人和第四被申请人补充代理意见

1. 在 VIE 控制安排下，第三被申请人和第四被申请人名下标的公司 51%的股权资产，均属于香港上市公司星美控股

实际拥有的资产，第四被申请人也是星美控股间接控股的全资子公司，星美控股目前正处于破产清算过程中，为防止星美控股的资产被错误处置，第三被申请人和第四被申请人特此申请仲裁委员会中止本案仲裁程序。

2. 第三被申请人和第四被申请人不是《补充协议》的签约方，申请人明知存在 VIE 交易安排的情况下，试图通过《补充协议》将其对第四被申请人的股权投资变更为名股实债，该《补充协议》对第三被申请人和第四被申请人没有约束力，而且严重损害了香港上市公司星美控股的权益，应当被认定无效。

# 二、仲裁庭意见

需要说明的是，本案双方当事人及代理人就本案事实和法律问题先后向仲裁庭提交了较多的资料和意见，这些资料和意见分别以证据、笔录、质证意见、代理意见、情况说明等形式保留在本案卷宗中，仲裁庭均已予以充分的审阅和考虑。仲裁庭在案情中未予摘录、述及者，或者虽已在案情部分摘录述及但未在仲裁意见中予以采用者，并非仲裁庭忽视或默认。

根据双方当事人提交的全部材料和庭审中查明的事实，依照本案合同约定和法律规定，形成仲裁庭意见如下：

（一）本案适用法律

案涉三份《增资协议》第 14.1 条均约定，"本协议的效力、解释、执行和因本协议引起的争议的解决适用中国法律"。案涉《补充协议》第 14.1 条亦约定："本协议的订立、生效、

履行、解释、修改、争议解决和终止等事项适用中国现行法律、行政法规及规章"。据此，并根据《中华人民共和国涉外民事关系法律适用法》第三条及《仲裁规则》第四十九条二款规定，仲裁庭认为，解决本案争议应适用中华人民共和国法律。

（二）案涉合同的效力

仲裁庭认为，案涉《增资协议》《补充协议》系双方当事人真实的意思表示，且不违反中国法律、行政法规的强制性规定，已依法成立并生效，可作为仲裁庭判定双方当事人权利、义务的基本依据。

仲裁庭注意到，被申请人主张，申请人通过《补充协议》，将其对标的公司的股权投资变更为"名股实债"，该《补充协议》应当被认定无效。

仲裁庭同时注意到，申请人主张，案涉交易不构成"明股实债"，案涉合同目的是促使标的公司上市，《补充协议》约定了申请人对标的公司的各项股东权利，通过履行该协议申请人成为标的公司股东，并行使股东权利。协议中关于标的公司原股东回购股权和利润补偿的约定，属申请人保证其投资利益实现的"对赌条款"，是股权投资方式灵活性和契约自由的体现。

仲裁庭经核查，《补充协议》第 2.3 条约定："原股东将标的公司在中国 A 股以直接或间接的方式实现成功上市"。

第 6 条 "标的公司的治理"，约定申请人有权向标的公司提名一名董事。

第 7 条 "投资方的知情权"，约定申请人享有作为股东所享有的对标的公司经营管理的知情权和进行监督的权利，

申请人有权取得标的公司财务、管理、经营、市场或其他方面信息和资料，申请人有权向标的公司管理层提出建议，并听取管理层关于相关事项的汇报。

又查，2017年8月18日，申请人完成标的公司股东工商变更登记手续，成为标的公司的股东。

基于上述，仲裁庭认为，在《补充协议》中不含任何有关借款或将股权投资变更为名股实债的约定。该协议约定了申请人作为标的公司股东的相关权利，依此约定，在合同履行过程中申请人完成了股东变更的工商登记，并行使其股东权利。仲裁庭须指出的是，《补充协议》中有关标的公司原股东向申请人利润补偿和股权回购的约定，属于私募股权投资实践中广为采用的"对赌条款"，该"对赌条款"是一种股权价格计价方法。依此方法，相关方在进行股权投资时，事先就所交易的股权估值高于该股权实际价值作出补偿安排，即根据目标公司预期业绩目标确定股权投资价格，当目标公司达不到预期业绩目标时，投资方有权要求相关方购买股权和/或支付业绩补偿款。由于该等对赌条款属于对股权价格的调整，并不违反中国法律、行政法规强制性规定，不属于无效条款。基于此，仲裁庭认为，被申请人提出《补充协议》将申请人对标的公司股权投资变更为"名股实债"因而无效的主张，缺少必要的合同、事实和法律依据，仲裁庭不予支持。

（三）仲裁庭查明的基本事实

2017年3月15日，申请人作为投资人分别与第一被申请人、第三被申请人及第四被申请人签订《增资协议》，该三份协议的编号分别为（2017）资字第06号-1、（2017）资字第06号-2和（2017）资字第06号-3，三份协议的内容基

本相同。

协议第 2.1 条约定："综合考虑公司的经营状况、盈利水平、发展前景等因素，并经投资者与星美圣典、星美国际友好协商，确认公司本次增资前的估值为 135 亿元。以该等估值为参考依据，各投资人分别出资 50,000 万元，除认缴新增资本外，其余计入公司资本公积"。

第 2.2 条约定："投资者增资后持有的公司股权比例按其新增资本占公司总注册资本（含本轮其他投资者认缴的注册资本）的比例计算"。

第 4.1 条约定："本协议签署后五个工作日内，投资者应向公司的指定账户支付等于投资者出资款 10%的保证金"。

第 5.1 条约定："各方同意，自投资者根据本协议第 4.3 条之规定将出资款付至验资账户后 60 个工作日内，共同配合并促使公司完成以下事项：……（c）向注册地工商局办理完毕与增资相关的工商变更登记手续"。

第 6.1 条约定："为上市运作之目的，投资者承诺，将无条件同意并支持、配合公司在本协议签署前后进行影院资产收购（被收购方为初始股东的关联方及/或独立第三方）、下属影院资产重组及整合"。

第 6.2 条约定："各方同意，尽一切努力、行动和措施配合公司后续以符合法律法规的方式实现上市运作。为上市运作之目的，公司本协议签署之后发生股权转让、增资等股权权益变动事宜，最终以公司及其股东签署的相关交易协议的约定为准"。

第 7.1 条："公司和星美圣典、星美国际在此向投资者作出如下陈述和保证：……（e）公司的注册资本按中国法律

缴纳，不存在抽逃注册资本和虚假出资的情形；除已披露的以外，公司的股权上不存在质押或者其他权利负担，亦不存在代持或其他类似安排。……（h）公司和星美圣典、星美国际保证公司于上市运作前的控制权稳定"。

第 11.2 条约定："如违约方未在本协议第 11.1 条所述的补救期内予以补救，则除本协议第 12.1 条（c）项或相关中国法律项下的权利之外，受损害方还可以就违约引起的损失提出索赔，违约方应赔偿因其违约而给受损害方造成的直接和间接损失"。

该协议附件一约定：投资者股权比例＝投资者投资金额/（投前估值＋本轮增资总的投资额）×100%

《增资协议》签署当日，申请人与第一被申请人和第二被申请人签署《补充协议》。该《补充协议》鉴于条款约定，截至本协议签署日，标的公司现有登记股东共两位，其中星美圣典持股 51%，星美国际持股 49%；覃辉为标的公司实际控制人，持有星美圣典 100%股权，持有香港主板上市公司星美控股 65.5%股权，星美控股间接持有星美国际 100%股权；申请人于 2017 年 3 月 15 日签署《增资协议》，约定申请人以投前 135 亿元人民币的标的公司估值对其增资总额人民币 15 亿元，增资结束后申请人将持有标的公司 9.37%的股权。

第 1 条定义，第 1.1 条约定："原股东指星美圣典；在本协议下述表述中，为方便表述，皆指星美圣典及覃辉先生之合称；""标的股权指甲方（投资方）因履行增资协议而获得的全部标的公司股权，指标的公司 9.37%的股权"；"成功上市指标的公司通过直接（IPO）或间接（重组上市）的方式实现A股上市，即成为在上海证券交易所或深圳证券交易所公开交易的上市公司或上市公司的子公司"；"净利润指

按照中国会计准则审计的扣除非经常性损益的净利润"。

第 2.1 条约定："原股东应以包括但不限于收购股权等方式向标的公司装入更多影院资产（不限于同一控制下）。原股东应在最后一个增资日（含当日）起满 12 个月的对应日前将其控制的所有影院资产全部整合重组至标的公司"。

第 2.3 条约定："原股东将标的公司在中国 A 股以直接或间接的方式实现成功上市"。

第 3 条约定："原股东承诺，标的公司 2017 年经审计的净利润为 7.8788 亿元；2017 年后至成功上市前，标的公司每年度经审计的净利润增长率不低于 15%"。

第 4.1 条约定："出现下列情形之一的，无论任何主观或客观原因，投资方均有权要求原股东按照本协议 4.2 条约定的价格购买投资方持有的标的公司的股权：

4.1.1 增资日起满 24 个月的对应日后的任何时间；

4.1.2 标的公司未完成本协议第三条约定的业绩承诺指标的；

4.1.3 原股东在最后一个增资日（含当日）起满 18 个月的对应日前未能完成如下事宜的：a) 解除本协议第 2.2 条相关的控制协议，并履行完毕一切合法程序，包括但不限于促使星美控股董事会、股东大会通过关于解除控制协议的相关决议；b) 促使星美控股股东大会通过标的公司以重大资产重组或单独 IPO 实现在 A 股上市的相关决议；

4.1.4 截至最后一个增资日起满 60 个月的对应日，标的公司仍未完成成功上市的。

4.1.5 原股东违反本协议第 10.2 条承诺的"。

第 4.2 条约定："购买价格=增资款 × (1+15% × n/360)-投资方已经取得的财务顾问费用及股份（或股权）收益

n＝实际投资天数（增资款分期进入的，分别计算投资天数，自款项实际缴付至验资账户起，至原股东向投资方实际支付购买价款之日止）；财务顾问费用具体见第5.2.1条；股份（或股权）收益具体见第9条"。

第4.3条约定："原股东应于收到投资方要求购买股权的书面通知之日起90日内完成购买义务"。

第4.4条约定："原股东未能依照本协议第4.2条和4.3条约定履行股权购买义务的，投资方有权要求原股东以1元对价向投资方转让标的公司5%的股权作为违约赔偿。违约赔偿不影响购买义务的继续履行。……原股东应自通知送达之日起协助投资方办理本条前述的股权补偿的变更登记（股权过户）手续，原股东应在10个工作日内准备完毕全部变更登记所需的书面文件并向相关部门递交书面变更申请"。

第5.1条约定："原股东承诺，上市前投资方收益不低于单利年利率15%。上市后，自增资日起5年内(包括5年)，投资方总投资收益不低于增资款的100%（含上市前单利年利率15%的收益）"。

第5.2.1条约定："各方同意，在标的公司成功上市前，本协议第5.1条所述投资收益由丙方（指第二被申请人）或其指定的第三方向投资方支付财务部分费用的方式体现，即丙方或其指定的第三方自增资日起每年向投资方支付增资款总额10%的财务顾问费。增资日支付2%，增资日起每一年对应日支付10%，最后一年对应日支付8%。不足一年的，按实际存续天数结算。原股东应于保证金支付至验资账户之日向投资方结清并支付保证金收益，收益计算至投资方支付保证金至指定账户之日起至保证金转至验资账户之日止"。

第8条约定："标的公司应与星美控股同步进行审计，

并且在星美控股发布审计报告后，向投资方发布 2016 年以标的公司为主体的审计报告；本协议提及的关于标的公司的审计事项，应由投资方认可的具备相关资质的会计师事务所按照中华人民共和国会计准则进行审计"。

第 10.2 条约定："原股东承诺，在标的公司成功上市前，原股东不得对外转让股权，也不得通过转让标的公司股权形式间接转让股权，即覃辉先生对标的公司的实际控制地位不能改变，但在不改变实际控制人控制地位的前提下可以进行企业内部的股权重组"。

第 11.2 条约定："原股东违反本协议约定延期支付款项的，除依照本协议其他条款承担责任外，每延期一日，应向投资方支付延期部分的 5‰作为违约金，违约金应与延期款项一同支付给投资方"。

第 11.4 条约定："支付违约金不影响守约方要求违约方赔偿损失、继续履行协议或解除协议的权利。"

2017 年 3 月 22 日，第一申请人、第二申请人、第三申请人分别向第四被申请人缴付 50,000,000 元的保证金，共计支付 1.5 亿元。第四被申请人分别于 2017 年 5 月 8 日、2017 年 6 月 27 日、2017 年 6 月 30 日向第一申请人、第二申请人、第三申请人退还保证金，实际占用时间分别为 48 日、98 日、101 日。

2017 年 3 月 28 日，第一被申请人支付财务顾问费 300 万元；2017 年 7 月 4 日，第四被申请人支付财务顾问费 2,700 万元。

第一申请人于 2017 年 5 月 8 日、第二申请人于 2017 年 6 月 26 日、第三申请人于 2017 年 6 月 28 日分别向第四被申请人支付增资款 5 亿元，共计 15 亿元。

2017 年 8 月 18 日，申请人完成向第四被申请人增资的工商变更登记，共持有标的公司 9.37%的股权。

2018 年 7 月 12 日，中喜会计师事务所出具《成都润运文化传播有限公司备考财务报表之审计报告》（中喜审字〔2018〕第 1751 号），结论为：第四被申请人 2017 年度审计报告备考合并利润表净利润为 312,829,162.33 元。

2018 年 9 月 19 日，申请人分别向第一被申请人、第二被申请人发送《履行股权购买义务通知书》，内称，标的公司 2017 年度审计报告显示，标的公司 2017 年度净利润为 312,829,162.33 元，没有实现《补充协议》第 3 条约定的业绩承诺指标，依照《补充协议》第 4 条的约定，第一被申请人和第二被申请人应当购买申请人持有的标的公司股权，要求在收到本通知之日起 90 日内，向申请人支付股权购买价款，完成购买义务。

2018 年 11 月 30 日和 2020 年 3 月 3 日，申请人分别向第三被申请人、第四被申请人寄送《履行补救义务通知书》，内称，第四被申请人 2017 年度经审计的净利润仅为 312,829,162.33 元，触发了《补充协议》股权购买义务条款；实际控制人覃辉被证监会处罚实质影响标的公司上市，且标的公司借壳"宇顺电子"上市失败后，被申请人对申请人没有任何通知和安排，近期，经公开信息查询显示标的公司股权被司法查封或质押，标的公司被列为失信被执行人，以上情况违反了《增资协议》《补充协议》的约定，给申请人造成了巨大损失，要求第三被申请人、第四被申请人立即采取补救措施，向申请人支付相当于股权购买价款的现金。

2019 年 12 月 20 日，申请人向第一被申请人、第二被申请人分别发送《履行赔偿义务通知书》，内称，由于第一被

申请人和第二被申请人未履行股权购买义务，已构成违约，应按照《补充协议》第4.4条第一款的约定，以1元的对价向申请人转让标的公司5%的股权作为违约赔偿，现申请人已向第一被申请人支付完毕1元的股权转让价款，请第一被申请人在收到本通知之日起10个工作日内准备完毕全部变更登记所需的书面文件并向有关部门递交书面变更申请书，协助申请人办理完成标的公司5%股权补偿的变更登记手续。

2019年12月26日，申请人向被申请人已支付1元股权转让价款。

被申请人至今未支付股权购买价款，亦未办理上述标的公司5%股权补偿变更登记手续。

（五）关于本案仲裁庭的审理范围

被申请人主张，本案争议应放在被申请人与"中植系"企业之间的整体交易背景下考察，"中植系"企业以投资为名行欺骗之实，掏空被申请人资产，严重违背了交易公平和诚实信用原则，即使按《增资协议》和《补充协议》约定确需要向申请人支付一定金额，2018年签署的《股东权利委托协议》已对案涉合同做了实质性修改，股权购买价款和保证金收益的支付时间应在托管方中泰创展完成第四被申请人股权转让之后。因此，根据《股东权利委托协议》相关约定，申请人的仲裁请求不应支持。

申请人则主张，本案审理范围是《增资协议》和《补充协议》项下的增资纠纷，申请人与案外人中泰创展、高晟财富、宇顺电子都是独立的商事主体，被申请人与它们的交易与案涉交易相互独立，对被申请人根据《增资协议》和《补充协议》应承担的责任并无影响，而且申请人不是《股东权

利委托协议》当事方。该协议与本案无关，不属于本案仲裁庭管辖范围。

仲裁庭经核查，申请人提起本案仲裁的依据为申请人与被申请人签署《增资协议》中的仲裁条款以及申请人与第一被申请人、第二被申请人签订《补充协议》中的仲裁条款，其中《增资协议》第 14 条约定的仲裁事项为"凡因本协议引起或与本协议有关的任何争议、索赔或涉及合同的违约、终止或合同无效事项"，《补充协议》第 14 条约定的仲裁事项为"本协议各方在履行本协议过程中发生的争议"。

仲裁庭注意到，被申请人提交了四被申请人与中泰创展及其他相关方于 2018 年 8 月签订《股东权利委托协议》。对于该托管协议，申请人在其质证意见中提出，由于被申请人未能提交该协议的原件，故对该协议的真实性、合法性不予认可。仲裁庭还注意到，申请人并非该协议的当事人，作为协议当事一方的中泰创展亦未在该《股东权利委托协议》上签字，而该协议第 9.2 条明确约定，本协议自各方中自然人一方签字、法人一方有权代表签字，并加盖公章之日起成立并生效。此外，该协议第 8.2 条约定，该协议争议解决方式为向北京市朝阳区人民法院提起诉讼。

基于上述，仲裁庭认为，申请人与案外人中泰创展、高晟财富、宇顺电子都是独立的商主体，中泰创展、高晟财富、宇顺电子均非案涉合同的签约方，依照案涉合同仲裁协议的约定，本案仲裁庭审理范围仅为申请人与被申请人之间与《增资协议》及《补充协议》有关的或因该两协议所引起的争议，被申请人与上述案外人的争议，不属于本案仲裁庭的审理范围。对于与《股东权利委托协议》相关争议，且不论《股东权利委托协议》是否真实有效，因该《股东权利委托

协议》约定的争议解决条款为通过人民法院诉讼解决，且没有证据表明本案当事人及相关各方同意将该《股东权利委托协议》项下争议纳入本案审理范围，故，对于《股东权利委托协议》项下的争议，不属于本案审理范围。

综上，对于被申请人的上述主张，仲裁庭不予支持。

（六）关于覃辉是否属于《补充协议》定义的原股东

被申请人主张，《补充协议》项下"原股东"不包括覃辉，《补充协议》已对各签约方的身份进行定义，覃辉是标的公司实际控制人而非原股东，该协议第1.1条明确"原股东指星美圣典"，仅仅"为方便表述，将原股东作为星美圣典及覃辉先生之合称"，并且《补充协议》多项条款已明确体现出"原股东"和"实际控制人"为两个不同主体，所以覃辉不应与原股东星美圣典共同承担《补充协议》项下原股东的义务。

仲裁庭经核查，《补充协议》签字方包括作为投资方的申请人、作为原股东的星美圣典、作为实际控制人的覃辉。

该协议鉴于条款约定，截至本协议签署日，标的公司现有登记股东共两位，其中星美圣典持股51%，星美国际持股49%；覃辉作为标的公司实际控制人，持有星美圣典100%股权，持有香港主板上市公司星美控股65.5%股权；星美控股间接持有星美国际100%股权。各方一致同意，标的公司完成本协议第2.1条项下影院资产的重组后，原股东会促使标的公司的全体股东同意，优先以重大资产重组（可能构成重组上市）的方式，将标的公司全部资产注入A股上市公司，实现间接上市。

第1条定义："原股东指星美圣典。在本协议下述表述中，为方便表述，皆指星美圣典与覃辉先生之合称。"

第 4.1.3 条约定："原股东在最后一个增资日（含当日）起满 18 个月的对应日前未能完成如下事宜的：a）解除本协议第 2.2 条相关的控制协议，并履行完毕一切合法程序，包括但不限于促使星美控股董事会、股东大会通过关于解除控制协议的相关决议；b）促使星美控股股东大会通过标的公司以重大资产重组或单独 IPO 实现在 A 股上市的相关决议"。

第 10.2 条约定："原股东承诺，在标的公司的成功上市前，原股东不得对外转让股权，也不得通过转让标的公司股东股权形式间接转让股权，即覃辉先生对标的公司的实际控制地位不能改变，但在不改变实际控制人控制地位的前提下可以进行企业内部股权重组"。

基于上述约定，仲裁庭认为，从《补充协议》的结构安排上看，前言和鉴于条款重点在于说明各签约方的身份，定义条款对合同条款中关键词语进行定义，以避免在合同解释和履行中产生歧义。基于该等安排，签约各方的身份在合同前言和鉴于条款当中已经明确，但是，鉴于覃辉系星美圣典实际控制人，对合同履行至关重要，为方便表述，及避免歧义，在协议中将原股东定义为星美圣典和覃辉之合称。依此定义，原股东在《补充协议》中并非仅指协议签署日时标的公司的登记股东，而且还包括实际控制人覃辉。另一方面，当事人各方订立《补充协议》的目的在于就标的公司上市作出进一步安排，包括标的公司重组上市的步骤、申请人在标的公司上市前、及上市后投资权益保障，以及覃辉和星美圣典对标的公司上市承担的责任，对赌条款等。显而易见，合同中诸多原股东承担的义务需要覃辉和星美圣典共同完成，有些义务甚至仅是针对覃辉，仅能由覃辉完成，诸如上述第 4.1.3.条和第 10.2 条约定的义务。因而，如《补充协议》中的

包括覃辉。原股东应承担的某些合同义务则要落

《补充协议》签约各方对原股东义务的约定，原股

括覃辉。

仲裁庭认为，覃辉属于《补充协议》定义的原股

且《补充协议》项下原股东的责任和义务。

关于股权回购条件是否成就

人主张，标的公司未能实现净利润目标承诺，根据

师事务所出具的《审计报告》，2017 年经审计的净

312,829,162.33 元，远低于《补充协议》第 3 条约

且标的公司股权被多轮司法查封，已被列为失信

第二被申请人作为标的公司的实际控制人被采取

禁入措施，标的公司已无法按约定完成上市，股权

已成就。

请人则主张，股权回购条件未成就。《审计报告》

标的公司 2017 年业绩不达标的证据，为实现上市

的公司在 2017 年提前偿还了 ABS 债务，并大量收

亡，导致原本稳定的业务运营受到严重冲击。对于

覃辉的处罚，现已提起行政诉讼，对标的公司上市

得。

庭经核查，《补充协议》第 3 条约定："原股东承

第 4.1.2.标的公司未完成本协议第三条约定的业绩承诺指标的;

第 4.1.3.原股东在最后一个增资日（含当日）起满 18 个月的对应日前未能完成如下事宜的: a）解除本协议第 2.2 条相关的控制协议,并履行完毕一切合法程序,包括但不限于促使星美控股董事会、股东大会通过关于解除控制协议的相关决议; b）促使星美控股股东大会通过标的公司以重大资产重组或单独 IPO 实现在 A 股上市的相关决议;

第 4.1.4.截至最后一个增资日起满 60 个月的对应日,标的公司仍未完成成功上市的;

第 4.1.5.原股东违反本协议第 10.2 条承诺的"。

第 8 条约定: "本协议提及的关于标的公司的审计事项应由投资方认可的具备相关资质的会计师事务所按照中华人民共和国会计准则进行审计"。

再查,中喜会计师事务所在其出具的《成都润运文化传播有限公司备考财务报表之审计报告》（中喜审字[2018]第 1751 号）中说明: "我们按照中国注册会计师审计准则的规定执行的审计工作"。该报告审计结论为:标的公司 2017 年经审计的净利润为 312,829,162.33 元。

2018 年 8 月 30 日,中国证券监督委员会作出的[2018]14 号《中国证监会市场禁入决定书（胡宜东、覃辉、康璐）》,对标的公司实际控制人第二被申请人覃辉采取 5 年证券市场禁入措施。

2018 年 9 月 19 日,申请人分别向第一被申请人、第二被申请人发送《履行股权购买义务通知书》,要求第一被申请人和第二被申请人在收到该通知之日起 90 日内,向申请人支付股权购买价款,完成购买义务。

标的公司分别于 2018 年 8 月 15 日、2018 年 11 月 6 日、2020 年 3 月 12 日，因未履行（2018）辽 0204 执 1590 号、（2018）粤 1973 执 9269 号、（2020）京 0105 执恢 592 号执行裁定书规定的义务，被列为失信被执行人。

证监会发布的《首次公开发行股票并上市管理办法》第十二条规定："发行人最近 3 年内主营业务和董事、高级管理人员没有发生重大变化，实际控制人没有发生变更"。

第十三条规定："发行人的股权清晰，控股股东和受控股股东、实际控制人支配的股东持有的发行人股份不存在重大权属纠纷"。

第十六条规定："发行人的董事、监事和高级管理人员符合法律、行政法规和规章规定的任职资格，且不得有下列情形：（一）被中国证监会采取证券市场禁入措施尚在禁入期的"。

证监会发布的《上市公司重大资产重组管理办法》第十一条规定："上市公司实施重大资产重组，应当就本次交易符合下列要求作出充分说明，并予以披露：…（二）不会导致上市公司不符合股票上市条件"。

证监会发布的《上市公司收购管理办法》第六条规定："任何人不得利用上市公司的收购损害被收购公司及其股东的合法权益。有下列情形之一的，不得收购上市公司：

（一）收购人负有数额较大债务，到期未清偿，且处于持续状态；

（二）收购人最近 3 年有重大违法行为或者涉嫌有重大违法行为；

（三）收购人最近 3 年有严重的证券市场失信行为；

（四）收购人为自然人的，存在《公司法》第一百四十

六条规定情形；

（五）法律、行政法规规定以及中国证监会认定的不得收购上市公司的其他情形。"

基于上述，仲裁庭认为，第一，依《补充协议》第4.1条约定，标的公司未能完成《补充协议》第3条约定的利润指标，已经触发股权回购条件。

仲裁庭注意到，被申请人提出该审计报告不能作为标的公司业绩不达标依据的主张，认为2017年提前偿还了ABS债务，并大量收购影院资产，导致原本稳定的业务运营受到严重冲击。对此，仲裁庭认为，依据《补充协议》第8条约定，关于标的公司的审计事项应由投资方认可、审计机构具备相关资质，以及审计机构按照中华人民共和国会计准则进行审计，该审计报告均符合《补充协议》约定的上述条件，而且标的公司在《审计报告》所附的《备考合并利润表》上加盖公章，表明其对《审计报告》确认的财务数据予以认可。至于标的公司2017年提前偿债及收购影院等投资行为，均属于标的公司正常经营活动，被申请人作为经营者，理应对标的公司的经营结果承担全部责任。因此，被申请人的上述主张缺乏必要的合同和事实依据，仲裁庭不予采信。

第二，依照《补充协议》第4.1.4.约定，如截至最后一个增资日起满60个月的对应日，标的公司仍未完成成功上市则触发股权回购条件。经查，最后一个增资日为2017年6月28日，满60个月的对应日为2022年6月27日。由于标的公司被多家司法机关查封，其被列入失信被执行人，且其实际控制人覃辉被证券监管机关采取五年市场禁入措施，依照上述《首次公开发行股票并上市管理办法》第十二条、第十三条、第十六条，《上市公司重大资产重组管理办法》第十

一条，以及《上市公司收购管理办法》第六条的规定，标的公司已不具备按照《补充协议》第4.1.4条约定的时间实现上市的条件，同样触发股权购买条件。

仲裁庭注意到，被申请人主张，覃辉针对证监会对其处罚已提起行政诉讼。仲裁庭认为，被申请人未能提供证据证明覃辉证券市场禁入惩罚措施已被撤销，同时，申请人提交了北京市第一中级人民法院作出的（2019）京01行初671号《行政判决书》，该判决书认定证监会对于覃辉采取的五年证券市场禁入措施"认定事实清楚，证据充分，幅度适当，程序合法"，因此，对于申请人的上述主张，仲裁庭不予采信。

仲裁庭还注意到，第一被申请人和第二被申请人主张，其未收到申请人发送的《履行股权购买义务通知书》。经核查，申请人已于2018年9月19日向第一被申请人和第二被申请人分别发送该《履行股权购买义务通知书》，申请人提交了该邮寄凭证原件，在该凭证收寄人员一栏中有签收人签字，虽然被申请人对该证据的真实性不予认可，但是，其未能提供充分证据证明其主张，故，根据高度盖然性原则，对于被申请人的上述主张，仲裁庭不予采信。

（八）申请人的仲裁请求

申请人共提出7项仲裁请求，仲裁庭对该7项仲裁请求逐一分析裁决如下：

1. 申请人的第一项仲裁请求，即裁决第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人分别支付股权购买价款（购买标的为三申请人分别持有的第四被申请人3.12%股权，股权购买价款按照《补充协议》第4.2条约定计算至被申请人共同向申请人实际支付完毕购买价

款之日止，并扣减相应财务顾问费；暂计至 2020 年 3 月 12 日，第一被申请人、第二被申请人应共同向第一申请人、第二申请人、第三申请人支付的股权购买价款分别为 706,666,666.67 元、696,458,333.33 元、696,041,666.67 元，共计 2,099,166,666.67 元）。

仲裁庭经核查，《补充协议》第 4.2 条约定："购买价格=增资款×（1+15%×n/360）-投资方已经取得的财务顾问费用及股份（或股权）收益。

n=实际投资天数（增资款分期进入的，分别计算投资天数，自款项实际缴付至验资账户起，至原股东向投资方实际支付购买价款之日止）；财务顾问费用具体见第 5.2.1 条；股份（或股权）收益具体见第 9 条"。

第 4.3 条约定："原股东应于收到投资方要求购买股权的书面通知之日起 90 日内完成购买义务"。

又查，申请人分别于 2017 年 5 月 8 日、2017 年 6 月 26 日、2017 年 6 月 28 日向标的公司支付增资款 5 亿元，共计 15 亿元。

第一被申请人于 2017 年 3 月 28 日支付财务顾问费 300 万元，第四被申请人于 2017 年 7 月 4 日支付财务顾问费 2,700 万元，共计向申请人支付财务顾问费 3,000 万元。

仲裁庭认为，如前所述，股权回购条件已经成就，第一被申请人和第二被申请人应当按照案涉合同约定，向申请人履行股权购买义务，购买三申请人分别持有的第四被申请人 3.12%股权，并应依照《补充协议》第 4.2 条约定支付股权购买价款，其中 15%固定收益计算至被申请人共同向申请人实际支付完毕购买价款之日止，并扣减相应财务顾问费。鉴于第一申请人、第二申请人、第三申请人各自分别于 2017 年 5

月8日、2017年6月26日、2017年6月28日向第四被申请人支付增资款5亿元,因此,第一被申请人和第二被申请人应当自2017年5月8日、2017年6月26日、2017年6月28日起至被申请人实际支付完毕之日止分别向第一申请人、第二申请人、第三申请人支付股权购买款。由于三申请人确认已经分别收到第一被申请人支付的财务顾问费1,000万元,共计3,000万元,该3,000万元财务顾问费应从股权购买价款中扣除。

综上,仲裁庭对于申请人的本项仲裁请求,予以支持。

2. 申请人的第二项仲裁请求,即裁决第一被申请人、第二被申请人立即向第一申请人、第二申请人、第三申请人转让第四被申请人5%的股权,5%的股权在三申请人中平均分配。

申请人主张,依照《补充协议》第4.4条约定,申请人有权要求第一被申请人、第二被申请人以1元对价向申请人转让其持有的第四被申请人5%股权。申请人于2018年9月19日和2018年9月26日两次向第一被申请人、第二被申请人寄送《履行股权购买义务通知书》,要求其收到通知后90日内履行购买义务,并且第一申请人已于2019年12月26日向第一被申请人支付股权转让款人民币1元,但第一被申请人、第二被申请人未履行其合同义务。

仲裁庭经核查,《补充协议》第4.4条约定:"原股东未能依照本协议第4.2条和4.3条约定履行股权购买义务的,投资方有权要求原股东以1元对价向投资方转让标的公司5%的股权作为违约赔偿。违约赔偿不影响购买义务的继续履行。原股东应自通知送达之日起协助投资方办理本条前述的股权补偿的变更登记(股权过户)手续,原股东应在10个工

作日内准备完毕全部变更登记所需的书面文件并向相关部门递交书面变更申请"。

又查，2018年9月19日和2018年9月26日，申请人两次分别向第一被申请人、第二被申请人发送《履行股权购买义务通知书》，要求第一被申请人和第二被申请人在收到本通知之日起90日内，购买申请人持有的标的公司股权并向申请人支付股权购买价款。

再查，2019年12月26日，第一申请人向第一被申请人支付1元股权转让价款。但第一被申请人和第二被申请人未办理上述标的公司5%股权变更登记手续。

基于上述，仲裁庭认为，第一被申请人和第二被申请人未能按照合同约定在收到申请人发送的《履行股权购买义务通知书》90日内履行股权购买义务，已构成违约，依约应以人民币1元的对价向申请人转让其所持有的第四被申请人5%的股权。第一申请人已于2019年12月26日向第一申请人支付人民币1元股权转让价款，故，第一被申请人和第二被申请人应将第四被申请人5%股权向申请人转让。鉴此，对于申请人的本项仲裁请求，仲裁庭予以支持。

3. 申请人的第三项仲裁请求，即裁决第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人各支付迟延支付股权购买价款的违约金2.25亿元,总计6.75亿元。

申请人主张，依照《补充协议》约定，第一被申请人、第二被申请人应于收到申请人要求购买的书面通知之日起90日内完成股权购买，逾期则应按照每日迟付金额的千分之五共同向申请人支付违约金。第一被申请人已于2018年9月29日收到《履行股权购买义务通知书》，因此，第一被申请

人、第二被申请人应自 2018 年 12 月 30 日起开始就迟付股权购买价款承担违约金，合计约 42 亿元。考虑到该数额较高，申请人同意根据《合同法》第一百一十三条予以适当调整。申请人与被申请人签订《增资协议》及《补充协议》时一致认可的第四被申请人投前估值 135 亿，申请人因对方违约将获得 5% 的股权，该部分股权价值 6.75 亿元。据此，申请人主张将迟付股权购买价款的违约金调减为 6.75 亿元，此笔违约金在申请人中平均分配。

被申请人主张，违约金过高，其利率不应超过申请人提起仲裁时一年期贷款市场报价利率（LPR）的四倍（16.2%）。

仲裁庭经核查，《补充协议》第 4.3 条约定："原股东应于收到投资方要求购买股权的书面通知之日起 90 日内完成购买义务"。

第 11.2 条约定："原股东违反本协议约定延期支付款项的，除依照本协议其他条款承担责任外，每延期一日，应向投资方支付延期部分的 5‰ 作为违约金，违约金应与延期款项一同支付给投资方"。

又查，2018 年 9 月 19 日，申请人分别向第一被申请人、第二被申请人发送《履行股权购买义务通知书》，要求第一被申请人和第二被申请人应在收到本通知之日起 90 日内，向申请人支付股权购买价款。第二被申请人于 2018 年 9 月 20 日收到该通知，第一被申请人于 2018 年 9 月 29 日收到该通知。

再查，《增资协议》第 2.1 条约定："综合考虑公司的经营状况、盈利水平、发展前景等因素，并经投资者与星美

元，除认缴新增资本外，其余计入公司资本公积"。

基于上述，仲裁庭首先认为，依照合同约定，第一被申请人、第二被申请人应就迟延支付股权购买价款向申请人支付违约金。

仲裁庭注意到，被申请人提出违约金过高，应按照《最高人民法院关于审理民间借贷案件适用法律若干问题的规定》等规定，以申请人提起本案仲裁时一年期贷款市场报价利率（LPR）的四倍（16.2%）计。仲裁庭认为，申请人本项仲裁请求所主张的是迟延付款违约金，而非民间借贷的利息，适用最高人民法院关于民间借贷的相关规定，显属不当，仲裁庭不予支持。

但是，仲裁庭同时注意到，申请人亦认为，按照原合同约定违约金过高，故其在本项请求中以上述第二项仲裁请求中获得的 5%股权价值，即 6.75 亿元作为本项请求中的违约金金额。仲裁庭认为，申请人此种计算方法缺乏合同依据，且其亦未对以 6.75 亿元计违约金的合理性作出说明，故，仲裁庭对于申请人以 6.75 亿元计违约金的主张，亦不予支持。

根据本案案情，考虑到在上述第一项和第二项仲裁请求裁决中，仲裁庭对于被申请人违约行为给申请人造成的损害已经作出一定补偿，依据《合同法》第五条和第一百一十四条的规定，仲裁庭酌情裁定，第一被申请人、第二被申请人应共同向第一申请人、第二申请人、第三申请人各支付迟延支付股权购买价款的违约金人民币 1.5 亿元，总计人民币 4.5 亿元。

4. 申请人的第四项仲裁请求，即裁决第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人分别支付保证金收益（以三申请人各自支付的 5000 万元保证

金为基数，按照年收益 15%计算，自 2017 年 3 月 22 日分别计至 2017 年 5 月 8 日、2017 年 6 月 27 日、2017 年 6 月 30 日期间的收益，分别为 1,000,000 元、2,041,666.67 元、2,104,166.67 元，共计 5,145,833.33 元），以及因迟延支付保证金收益的违约金（对第一申请人的保证金收益违约金以 1,000,000 元为基数，自 2017 年 5 月 9 日起按照年化 24%计算至全部清偿之日止，以上违约金暂计至 2020 年 3 月 12 日为 692,666.67 元；对第二申请人的保证金收益违约金以 2,041,666.67 元为基数，自 2017 年 6 月 28 日起计算至全部清偿之日止，以上违约金暂计至 2020 年 3 月 12 日为 1,346,138.89 元；对第三申请人的保证金收益违约金以 2,104,166.67 元为基数，自 2017 年 7 月 1 日起计算至全部清偿之日止，以上违约金暂计至 2020 年 3 月 12 日为 1,383,138.89 元。截至 2020 年 3 月 12 日，申请人的保证金收益违约金共计为 3,421,944.45 元）。

申请人主张，依照《补充协议》第 5.1.3 条约定，第一被申请人、第二被申请人应当按年利率 15%支付保证金收益，第四被申请人实际占用第一申请人、第二申请人、第三申请人保证金时间分别为 48 日、98 日、101 日，第一被申请人、第二被申请人应按照单利年利率 15%在保证金返还之日共同向第一申请人、第二申请人、第三申请人分别支付资金占用期间的收益 1,000,000 元、2,041,666.67 元、2,104,166.67 元。因第一被申请人、第二被申请人未能在标的公司返还保证金时支付保证金收益，按《补充协议》第 11.2 条约定，按日 5‰支付违约金，折合为年 180%，因标准过高，申请人同意将保证金收益违约金按照年利率 24%进行调减。

被申请人主张，申请人主张的违约金过高，应予调减。

仲裁庭经核查，《补充协议》第 5.1.3 条约定："原股东应支付投资方在《增资协议》项下交付的保证金的收益，按照单利年利率 15%计算"。

第 11.2 条约定："原股东违反本协议约定延期支付款项的，除依照本协议其他条款承担责任外，每延期一日，应向投资方支付延期部分的 5‰作为违约金，违约金应与延期款项一同支付给投资方"。

又查，2017 年 3 月 22 日，三位申请人分别向第四被申请人各支付了 5000 万元保证金。2017 年 5 月 8 日、2017 年 6 月 27 日、2017 年 6 月 30 日，第四被申请人分别向第一申请人、第二申请人、第三申请人退还保证金，实际占用保证金时间分别为 48 日、98 日、101 日。

再查，第四被申请人在退还保证金时，仅将保证金的本金退回，至今仍未向申请人支付保证金收益。

基于上述，仲裁庭认为，第四被申请人实际占用第一申请人、第二申请人、第三申请人保证金时间分别为 48 日、98 日、101 日，第一被申请人、第二被申请人应于保证金返还之日按照单利年利率 15%向第一申请人、第二申请人、第三申请人分别支付资金占用期间的收益 1,000,000 元、2,041,666.67 元、2,104,166.67 元。因第一被申请人、第二被申请人未能在标的公司返还保证金的同时支付保证金收益，已构成违约。按照《补充协议》第 11.2 条约定，第一被申请人、第二被申请人应就迟付保证金收益期间的利息损失共同向第一申请人、第二申请人、第三申请人赔偿。仲裁庭注意到，被申请人主张，《补充协议》第 11.2 条约定违约金标准过高。仲裁庭同时注意到，申请人亦认为该保证金的违约金过高，故已按照年利率 24%调减。

仲裁庭认为，根据中华人民共和国相关法律规定，违约金主要是补偿性的，由于申请人未能提供证据证明其在本项仲裁请求项下的实际损失，鉴于第一被申请人和第二被申请人应向申请人支付的保证金收益已达到年15%，在此基础上加收年24%的违约金明显过高，故，依据《合同法》第五条和第一百一十四条规定，仲裁庭酌情裁定，第一被申请人和第二被申请人应向申请人支付的迟延支付保证金收益违约金按年9%计算。

综上，仲裁庭裁定，第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人分别支付保证金收益分别为1,000,000元、2,041,666.67元、2,104,166.67元，共计5,145,833.33元；以及向第一申请人支付以1,000,000元为基数，自2017年5月9日起按照年化9%计算至全部清偿之日止的违约金；向第二申请人支付以2,041,666.67元为基数，自2017年6月28日起按照年化9%计算至全部清偿之日止的违约金；向第三申请人支付以2,104,166.67元为基数，自2017年7月1日起按照年化9%计算至全部清偿之日止的违约金。

5. 申请人的第五项仲裁请求，即裁决第三被申请人、第四被申请人对第一项和第三项仲裁请求应承担连带赔偿责任。

申请人主张，依照《增资协议》第6.2条、第7.1条、第11.1条和第12.1条的约定，被申请人应尽其努力使第四被申请人实现上市运作，第四被申请人的股权上不存在质押或者其他权利负担，但是，由于第四被申请人违约行为，导致第四被申请人不能通过IPO或借壳方式上市，给申请人造成了严重损失。《增资协议》与《补充协议》相互关联，不可分

割，共同构成本案交易，第三被申请人、第四被申请人应对第一被申请人和第二被申请人上述第一项和第三项仲裁请求承担连带赔偿责任。

仲裁庭经核查，《增资协议》前言约定，申请人、第一被申请人、第三被申请人、第四被申请人在本协议中合成"各方"，而"一方"则视情况可指其中每一方或任何一方。

第 6.2 款约定，"各方同意，尽一切努力、行动和措施配合公司后续以符合法律法规的方式实现上市运作。"。

第 7.1 条约定："标的公司和星美圣典、星美国际向投资者陈述和保证：……（c）公司和星美圣典、星美国际签署及履行本协议没有也不会……（iv）违反对其作出的任何法院判决或仲裁裁决，或任何政府或主管机构的决定或规定；（e）公司的股权上不存在质押或者其他权利负担……（h）星美圣典、星美国际保证公司于上市运作前的控制权稳定。

《增资协议》第 11.1 条约定："除本协议其他条款另有约定，如果一方（就本条定义为"违约方"）未履行其在本协议项下任何一项义务或违反了本协议，则对方（就本条定义为"受损害方"）可向违约方发出书面通知，说明违约的性质及范围，并且要求违约方在通知中规定的合理期限内自费予以补救"。

第 11.2 条约定："如果违约方未在本协议第 11.1 条所述的补救期内予以补救，则除本协议第 12.1 条（c）项或相关中国法律项下的权利之外，受损害方还可以就违约引起的损失提出索赔，违约方应赔偿其因违约而给受损害方造成的直接和间接损失"。

第 18.2 条关于通知与送达的约定为："…发出任何通知如以经公认的快递服务发送，则在递交快递公司之日的次日

后3个工作日即视为送达"。

又查，2018年11月30日和2020年3月3日，申请人分别通过顺丰快递和EMS向第三被申请人和第四被申请人发出《履行补救义务通知书》通知，要求向申请人支付相当于股权购买价款的现金。

上述通知发出后，第三被申请人和第四被申请人均未履行支付义务。

基于上述，仲裁庭认为，《增资协议》合同目的为促成第四被申请人成功上市，《补充协议》系对第四被申请人上市作出具体安排。依《增资协议》约定，第一被申请人、第三被申请人和第四被申请人共同作为一方向申请人承担履约保证责任，由于被申请人违约导致案涉合同目的无法实现，依照《增资协议》第11.2条约定应向申请人赔偿其直接和间接损失。为此，申请人已按照合同约定要求第一被申请人和第二被申请人履行股权回购义务并支付迟延付款违约金，仲裁庭在上述申请人第一项和第三项仲裁请求中裁定支持申请人的请求，故，第三被申请人、第四被申请人应依照《增资协议》第11.1条和第11.2条约定和相关法律规定，对第一被申请人和第二被申请人履行上述第一项和第三项仲裁请求承担连带赔偿责任。

仲裁庭需要指出的是，鉴于申请人具有标的公司股东和标的公司债权人的双重身份，第四被申请人作为标的公司在履行本请求项下义务时，应遵守公司法所确定的资本维持原则和保护债权人合法权益原则。

仲裁庭注意到，第三被申请人和第四被申请人主张，其

三被申请人和第四被申请人分别寄送《履行补救义务通知书》，申请人提交了邮寄凭证原件。虽然被申请人对该证据的真实性不予认可，但是，其未能提供证据充分证明其主张，故，根据高度盖然性原则，对于被申请人的主张，仲裁庭不予采信。

6. 申请人的第六项仲裁请求，即裁决被申请人共同赔偿申请人为本案仲裁所支出的费用，包括律师费 500,000 元（向第一申请人支付 166,666 元，向第二申请人支付 166,667 元，向第三申请人支付 166,667 元），保全费 5,000 元（全部向第一申请人支付），财产保全担保费 420,000 元（向第一申请人支付 140,000 元，向第二申请人支付 140,000 元，向第三申请人支付 140,000 元）。

仲裁庭认为，申请人在本项请求中所主张的上述费用系其办理本案的合理支出，申请人已提交支付上述费用的相关证据，根据本案案情及《仲裁规则》第五十二条第二款规定，仲裁庭裁定，被申请人应共同赔偿申请人为本案仲裁所支出的费用，包括向第一申请人支付律师费 166,666 元，向第二申请人支付律师费 166,667 元，向第三申请人支付律师费 166,667 元，向第一申请人支付保全费 5,000 元，向第一申请人支付财产保全担保费 140,000 元，向第二申请人支付财产保全担保费 140,000 元，向第三申请人支付财产保全担保费 140,000 元。

7. 申请人的第七项仲裁请求，即裁决被申请人承担本案全部仲裁费用。

仲裁庭认为，本案系由于被申请人违约所引起，根据仲裁庭对申请人仲裁请求的支持情况，以及《仲裁规则》第五十二条一款规定，仲裁庭裁定，本案仲裁费用申请人承担

15%，被申请人承担 85%。

## 三、裁　决

根据上述事实与理由，仲裁庭裁决如下：

（一）第一被申请人、第二被申请人应共同向第一申请人、第二申请人、第三申请人分别支付股权购买价款，以购买三申请人分别持有的第四被申请人 3.12%的股权，其中向第一申请人支付的股权购买价款为：人民币 5 亿元×(1+15%×n/360)-1,000 万元，n=自 2017 年 5 月 8 日起至实际支付完毕日止的天数；

向第二申请人支付的股权购买价款为：人民币 5 亿元×(1+15%×n/360)-1,000 万元，n=自 2017 年 6 月 26 日起至实际支付完毕日止的天数；

向第三申请人支付的股权购买价款为：人民币 5 亿元×(1+15%×n/360)-1,000 万元，n=自 2017 年 6 月 28 日起至实际支付完毕日止的天数。

（二）第一被申请人、第二被申请人向第一申请人、第二申请人、第三申请人转让第四被申请人 5%股权，该 5%股权在第一申请人、第二申请人、第三申请人中平均分配。

（三）第一被申请人、第二被申请人共同向第一申请人支付迟延支付股权购买价款违约金人民币 1.5 亿元，向第二申请人支付迟延支付股权购买价款违约金人民币 1.5 亿元，向第三申请人支付迟延支付股权购买价款违约金人民币 1.5 亿元。

（四）第一被申请人、第二被申请人共同向第一申请人、第二申请人、第三申请人分别支付保证金收益分别为人民币

1,000,000 元、人民币 2,041,666.67 元、人民币 2,104,166.67 元，以及向第一申请人支付以人民币 1,000,000 元为基数，自 2017 年 5 月 9 日起按照年化 9%计算至全部清偿之日止的违约金，向第二申请人支付以人民币 2,041,666.67 元为基数自 2017 年 6 月 28 日起按照年化 9%计算至全部清偿之日止的违约金，向第三申请人支付以人民币 2,104,166.67 元为基数自 2017 年 7 月 1 日起按照年化 9%计算至全部清偿之日止的违约金。

（五）第三被申请人、第四被申请人对第一被申请人和第二被申请人履行上述第（一）项和第（三）项裁决义务承担连带赔偿责任。

（六）被申请人共同赔偿申请人为本案仲裁所支出的费用，包括向第一申请人支付律师费人民币 166,666 元，向第二申请人支付律师费人民币 166,667 元，向第三申请人支付律师费人民币 166,667 元，向第一申请人支付保全费人民币 5,000 元，向第一申请人支付财产保全担保费人民币 140,000 元，向第二申请人支付财产保全担保费人民币 140,000 元，向第三申请人支付财产保全担保费人民币 140,000 元。

（七）本案仲裁费为人民币 14,481,468 元，由申请人承担 15%，即人民币 2,172,220.20 元，由被申请人承担 85%，即人民币 12,309,247.80 元。本案仲裁费已由申请人向仲裁委员会全额缴纳并冲抵，故被申请人应向申请人支付人民币 12,309,247.80 元以补偿申请人代为垫付的仲裁费。

上述支付款项，被申请人应于本裁决作出之日起三十日内向申请人支付完毕。

本裁决为终局裁决，自作出之日起生效。

（此页无正文）

首席仲裁员：

仲　裁　员：

仲　裁　员：

二○二○年四月二十五日于北京



中国国际经济贸易仲裁委员会

CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION