**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT PARTNERSHIP,
HUZHOU HUIHENGYING EQUITY
INVESTMENT PARTNERSHIP, and HUZHOU         Case No.: 1:21-cv-09221-KPF
HUIRONGSHENG EQUITY INVESTMENT
PARTNERSHIP,

                                                     **RESPONDENT'S RESPONSES TO**
                Petitioners,         **PETITIONERS' RULE 56.1**
                                                     **STATEMENTS OF MATERIAL**
    v.                                                   **FACTS**

HUI QIN,

                Respondent.
-------------------------------------------------------------X

Respondent, by and through undersigned counsel, hereby submits the following responses to Petitioners' statements of material facts pursuant to Local Civil Rule 56.1 of the Southern District of New York.

    **A.**    **Petitioners**

1.    Chuangtai Rongyuan is a limited partnership established under Chinese law with a registered address in the PRC. *See* Declaration of Carol Lee in Support of Petition to Confirm and Enforce Foreign Arbitral Award and for Entry of Judgment, dated November 8, 2021, ECF No. 7 ("Lee Decl.") Ex. D (ECF No. 7-4, Capital Increase Agreement) at 2.

**Response:** Respondent lacks information to admit or deny the statement of facts set forth in Paragraph 1.

1

2. Huihengying is a limited partnership established under Chinese law with a registered address in the PRC. *See* Lee Decl. Ex. H (ECF No. 7-8, Capital Increase Agreement) at 2.

**Response:** Respondent lacks information to admit or deny the statement of facts set forth in Paragraph 2.

3. Huirongsheng is a limited partnership established under Chinese law with a registered address in the PRC. *See* Lee Decl. Ex. F (ECF No. 7-6, Capital Increase Agreement) at 2.

**Response:** Respondent lacks information to admit or deny the statement of facts set forth in Paragraph 3.

### B. Arbitral Respondents

4. Shenzhen SMI Shengdian Cultural and Media Group Co., Ltd. ("SMI Shengdian") is a limited liability company established under Chinese law and headquartered in the PRC. *See* Lee Decl. Ex. D at 2.

**Response:** Admit.

5. SMI International Cinemas Limited ("SMI International") is a limited company established under Hong Kong law and headquartered in Hong Kong. *See id.*

**Response:** Admit.

6.      Chengdu Run Yun Culture Communication Co., Ltd. ("Run Yun") is a limited liability company established under Chinese law headquartered in the PRC. *See id.* As of the date of the signing of the Supplemental Agreement, Run Yun's two registered shareholders were SMI Shengdian (which held 51% of Run Yun's equity) and SMI International (which held 49% of Run Yun's equity). *See* Lee Decl. Ex. J (ECF No. 7-10, Supplemental Agreement) at 5.

**Response:** Admit, except that SMI Holdings Group Limited ("SMI Holdings") was a publicly traded company in the Hong Kong Stock Exchange. SMI Holdings held 100% of the shares of SMI International. Although SMI Shengdian held 51% shares of Run Yun, all Run Yun's dividends, if any, belong to SMI Holdings. SMI Shengdian is only holding the shares on behalf of SMI Holdings due to the legal restriction of oversea shareholding in China and the unique VIE (variable interest entity) structure. Therefore, SMI Holdings is the real beneficiary owner of Run Yun. *See* Declaration of Qin Hui ("Qin Decl.") ¶4 & ¶11.

7.      Hui Qin ("Qin") was the "actual controller" of Run Yun. *See id.* As of the date of the signing of the Supplemental Agreement, Qin held 100% of the equity of SMI Shengdian and 65.5% equity of SMI Holdings, which indirectly holds 100% of the equity of SMI International. *Id.* Qin is a citizen of the PRC and a resident of New York, New York. *See* Petition to Confirm and Enforce Foreign Arbitral Award and for Entry of Judgment, ECF No. 1 ("Petition"), ¶ 5.

**Response:** Admit the Supplemental Agreement named Qin as "actual controller", but the term was not defined. In reality, as explained in the response to Paragraph 6, SMI Holdings is the actual controller/owner of Run Yun. SMI Holding was a publicly listed company which was managed by an independent board of director. Qin was a majority shareholder

3

of SMI Holdings. Not long after the signing of the Supplemental Agreement, it was Petitioners' sister companies managed and controlled Run Yun. *See* Declaration of Qin Hui ("Qin Decl.") ¶4, ¶11 and ¶12-20 .

### C.   The Capital Increase Agreements and the Supplemental Agreement

8.   On March 15, 2017, SMI Shengdian, SMI International, and Run Yun (collectively with SMI Shengdian, SMI International, and Qin, the "Arbitral Respondents"), entered into a Capital Increase Agreement with each Petitioner respectively (collectively, the "Capital Increase Agreements"). *See* Lee Decl. Exs. C-H (ECF Nos. 7-3–7-8, Capital Increase Agreements and certified translations of the Capital Increase Agreements).

**Response**: Admit.

9.   Also on March 15, 2017, SMI Shengdian, Qin, and Petitioners entered into a Supplemental Agreement to the Capital Increase Agreement ("Supplemental Agreement"). *See* Lee Decl. Exs. I-J (ECF Nos. 7-9–7-10, Supplemental Agreement and certified translation of the Supplemental Agreement).

**Response**: Deny that the Supplemental Agreement was valid but admit that it was signed by Respondent., Declaration of Chi Chung Cheng ("Cheng Decl.") ¶2.

10.   Under the Capital Increase Agreements, each Petitioner paid RMB 500,000,000 in increased capital, for a total of RMB 1,500,000,000 to invest in Run Yun. *See* Lee Decl. Exs. D, F, H at 3.

**Response**: Admit.

11. The Capital Increase Agreements and the Supplemental Agreement each contained arbitration clauses. The arbitration clause is set forth in Article 14.3 of the Capital Increase Agreements. Article 14.3 of the Capital Increase Agreements provides,

> If **the parties** fail to reach a solution through amicable negotiation within [60] days from the date of **dispute**, the **dispute** shall be submitted to China International Economic and Trade Arbitration Commission (Beijing) for arbitration in accordance with the arbitration rules in effect at the time of applying for arbitration.

Lee Decl. Exs. D, F, H at 9 (emphasis in original).

**Response:** Deny that the Supplemental Agreement was valid. Cheng Decl. ¶2. Notwithstanding the foregoing, admit that the Capital Increase Agreements and Supplemental Agreement contained arbitration clauses.

12. The arbitration clause is set forth in Article 14.2 of the Supplemental Agreement. Article 14.2 of the Supplemental Agreement provides,

> Any dispute arising from the performance hereof between the parties hereto shall be settled through negotiation. If negotiation fails, the parties agree to submit the dispute to China International Economic and Trade Arbitration Commission in Beijing, and the arbitration shall be conducted in accordance with its arbitration rules in effect at the time of submission of the dispute, unless otherwise stipulated in the effective award. The actual expenses paid by the parties for dispute resolution (including but not limited to arbitration fees and reasonable attorney fees) shall be borne by the losing party.

Lee Decl. Ex. J at 14.

**Response:** Deny that the Supplemental Agreement was valid. Cheng Decl. ¶2. Notwithstanding the foregoing, admit that the Supplemental Agreement contained an arbitration clause.

13. The Arbitral Respondents failed to perform their contractual obligations under the Capital Increase Agreements and the Supplemental Agreement. *See* Lee Decl. Ex. B (ECF No. 7-2, certified translation of China International Economic and Trade Arbitration Commission Arbitral Award) at 8, 39-41 (Award at Lee Decl. Ex. A, ECF No. 7-1).

**Response:** Deny. Qin was not a party to the Capital Increase Agreement. Notwithstanding the foregoing, assuming *arguendo* that the Supplemental Agreement was valid, Respondent's only obligations pursuant to the Supplemental Agreement were to maintain the VIE Holding over Run Yun until its initial public offering and support its initial public offering. Qin Decl. ¶10.

### D. The Arbitration Proceedings before the China International Economic and Trade Commission

14. On March 30, 2020, Petitioners commenced an arbitration (the "Arbitration") as claimants against the Arbitral Respondents before the China International Economic and Trade Arbitration Commission (the "CIETAC"). Lee Decl. Ex. B. at 1.

**Response:** Admit.

15. The Arbitration case was referred to as "S20200960." *Id.* at 1.

**Response:** Admit.

16. The Arbitration was accepted pursuant to the arbitration clauses of the Capital Increase Agreements and the Supplemental Agreement. *Id.*

**Response:** Admit that the Arbitration was accepted by CIETAC but deny that the Supplemental Agreement was valid. Cheng Decl. ¶2.

6

17. The Capital Increase Agreements and the Supplemental Agreement constituted the entire transaction involved in the Arbitration. *Id.* at 6.

**Response**: Admit that the Capital Increase Agreements and the Supplemental Agreement were the only agreements considered in the Arbitration but aver that the Arbitration Panel refused to hear numerous factual issues relevant to the entire transaction. Qin Decl. ¶53.

18. The CIETAC designated Mr. Xiuming Tao and Mr. Yong Li as arbitrators, and Mr. Xiaomin Sun as chief arbitrator for this case, according to the provisions of the arbitration rules. *Id.* at 2.

**Response**: Admit that CIETAC designated arbitrators but deny that the designation followed the provisions of the arbitration rules. See Qin Decl. ¶¶ 34, 42 – 50.

19. On August 24, 2020, the three arbitrators established a panel to hear this case jointly. *Id.* at 3.

**Response**: Admit that CIETAC designated arbitrators but deny that the designation followed the provisions of the arbitration rules. See Qin Decl. ¶¶ 34, 42 – 50.

20. On September 25, 2020, Mr. Tao resigned as arbitrator for this case. *Id.* at 3. The director of the CIETAC designated Ms. Lanfang Liu to replace Mr. Tao. *Id.* Together with Mr. Li and Mr. Sun, the three arbitrators made up the "Arbitration Panel."

**Response**: Admit that Mr. Tao resigned as an arbitrator and admit that CIETAC designated arbitrators but deny that the designation followed the provisions of the arbitration rules. See Qin

Decl. ¶¶ 34, 43 – 51. Further aver that Mr. Tao failed to disclose why he resigned, and it was later discovered that he had numerous conflicts of interest. See Qin Decl. ¶65.

21. On December 22, 2020, the Arbitration Panel heard the case in Beijing. *Id.* at 4.

**Response:** Admit a conference/"hearing" was held on December 22, 2020 but deny that this conference was a real "hearing" as understood in the common sense of the word. The arbitration panel did not allow any witness testimony whatsoever, but merely conferenced with counsels and discussed some evidentiary issues. Respondent's counsel attempted to argue issues concerning the overarching fraud committed by Petitioners and other issues concerning the overarching transactions. These arguments were not even entertained by the arbitration panel. In other words, the arbitration panel did not properly allow Respondent the opportunity to present his case. The total hearing/conference was about 3 hours long. Respondent was not allowed to call any witnesses or testify on his own behalf. Respondent's request for a second hearing was also denied. Qin Decl. ¶52-53.

22. Qin was properly served with notice of the Arbitration and of the formation of the Arbitration Panel. *Id.* at 2-3.

**Response:** Deny. The purported attempts of service in or around May 2020 and June 2020 were never received by Respondent. See Qin Decl. ¶¶25, 29. Respondent did not receive the notices until in or around November 2020, after an application from his counsel. See Qin Decl. ¶39

23. "[Petitioners] and the [Arbitral] Respondents participated in the hearing through their counsel." *Id.* at 4.

**Response:** Admit a conference/"hearing" was held on December 22, 2020, but deny that this conference was a real "hearing" as understood in the common sense of the word. The arbitration panel did not allow any witness testimony whatsoever, but merely conferenced with counsels and discussed some evidentiary issues. Respondent's counsel attempted to argue issues concerning the overarching fraud committed by Petitioners and other issues concerning the overarching transactions. These arguments were not even entertained by the arbitration panel. In other words, the arbitration panel did not properly allow Respondent the opportunity to present his case. The total hearing/conference was about 3 hours long. Respondent was not allowed to call any witnesses. See Qin Decl. ¶52-53.

24. In addition, both parties' counsel submitted arguments on behalf of the respective parties. *See id.* at 23-29 ("Opinions of the Complainants' Counsel"); *id.* at 29-31 ("Supplemental Opinions of the Respondents' Counsel").

**Response:** Admit that Respondent's counsel submitted arguments on his behalf, but aver that Respondent was not permitted the full 45 business days to submit evidence as per the arbitration rules. See Qin Decl. ¶47. As Respondent was not provided the full 45 business days as was his right, he instead scrambled to put together a defense on approximately one months' notice. See Qin Decl. ¶51-52.

25. In the Award (defined herein), the Arbitration Panel expressly stated:

> It is worth noting that the parties to this case and their counsel have submitted to the Arbitration Panel quite many materials and

9

> opinions as to the facts and legal issues surrounding this case. These materials and opinions have all been kept in the dossiers of this case in the form of evidence, records, evidence examination opinions, counsel's opinions or explanations. The Arbitration Panel has perused and considered them all.

*Id.* at 31-32.

**Response:** Admit the foregoing statement was made by the Arbitration Panel. Deny the truth of the statement. Respondent's counsel attempted to argue issues concerning the overarching fraud committed by Petitioners and other issues concerning the overarching transactions. These arguments were not even entertained by the arbitration panel. In other words, the arbitration panel did not properly allow Respondent the opportunity to present his case. See Qin Decl. ¶52-53.

26. At the hearing, Petitioners presented their claims for arbitration and the facts and reasons upon which those claims were based, and the Arbitral Respondents put forth their defense. *Id.* at 4.

**Response:** Deny. Respondent's counsel attempted to argue issues concerning the overarching fraud committed by Petitioners, the invalidity of the Supplemental Agreement, and other issues concerning the overarching transactions. These arguments were not even entertained by the arbitration panel. In other words, the arbitration panel did not properly allow Respondent the opportunity to present his case. See Qin Decl. ¶52-53.

27. All parties explained their evidence, produced original evidentiary documents, and answered questions raised by the Arbitration Panel in the discovery process. *Id.*

**Response:** Deny. Respondent's counsel attempted to argue issues concerning the overarching fraud committed by Petitioners, the invalidity of the Supplemental Agreement, and other issues concerning the overarching transactions. These arguments were not even entertained by the arbitration panel. In other words, the arbitration panel did not properly allow Respondent the opportunity to present his case. See Qin Decl. ¶53.

28. After the hearing, Petitioners and the Arbitral Respondents submitted to the Arbitration Court supplemental pleadings, evidence, and explanations regarding the Arbitration claims. *Id.*

**Response:** Admit that Respondent submitted supplemental documents regarding the Arbitration claims. Deny that Respondent's arguments were considered by the Arbitration Court. See Qin Decl. ¶52-53.

29. Throughout the Arbitration, all documents and written notices pertaining to the case were effectively served by the Arbitration Court on all parties according to the provisions of Article 8 of the Arbitration Rules. *Id.* at 5.

**Response:** Deny. The purported attempts of service in or around May 2020 and June 2020 were never received by Respondent. See Qin Decl. ¶¶25, 29. Respondent did not receive the notices until in or around November 2020, after an application from his counsel. See Qin Decl. ¶39. According to the Arbitration Rules "service on a party "shall be deemed to have been properly served on the party if delivered to the addressee or sent to the addressee's place of business, place of resignation, domicile, habitual residence or mailing address, or where after reasonable inquiries by the other party, none of the aforesaid addresses can be found, the arbitration correspondence is

11

sent to the Arbitration Court to the addressee's last known place of business, place of registration, domicile, habitual residence, or mailing address by registered or express mail." See Memorandum of Law Exhibit A. Prior to in or around November 2020, no documents were served upon Respondent at his place of business, place of resignation, domicile, habitual residence or mailing address. See Qin Decl. ¶27.

30. On April 22, 2021, the Arbitration Panel entered its determination (the "Award") based on the existing written submissions made by the parties and the facts found during the hearing. *Id.*

**Response:** Admit that the Arbitration panel entered the Award. Deny the Award was proper, and deny that the Award properly considered all arguments set forth by Respondents. See *generally* Qin Decl.

31. The Arbitration Panel's opinion was made "[a]ccording to the entire materials submitted by the parties and the facts ascertained in the court hearing and based on the agreements in the contracts and legal provisions concerned." *Id.* at 32.

**Response:** Deny. Respondent's counsel attempted to argue issues concerning the overarching fraud committed by Petitioners, the invalidity of the Supplemental Agreement, and other issues concerning the overarching transactions. These arguments were not even entertained by the arbitration panel. In other words, the arbitration panel did not properly allow Respondent the opportunity to present his case. See Qin Decl. ¶53.

32. The Arbitration Panel noted that it "perused and considered" the materials and opinions submitted by both parties in the case, and, "[s]hould any of them not be quoted or referred to" in its written opinion, "it does not mean that they [were] in any way neglected" by the Arbitration Panel. *Id.*

**Response:** Admit that the Arbitration panel made the foregoing statement. Deny the truth of the statement. The arbitration panel did not properly allow Respondent the opportunity to present his case. See Qin Decl. ¶52-53.

### E. Petitioners' Arbitration Claims and the Opinions and Findings of the Arbitration Panel

33. In the Arbitration, Petitioners asserted seven arbitration claims:

   i. To enter into the determination that SMI Shengdian and Qin, "jointly and severally," pay Petitioners their respective equity acquisition prices;

   ii. To enter into the determination that SMI Shengdian and Qin immediately transfer their 5% equity in Run Yun to Petitioners;

   iii. To enter into the determination that SMI Shengdian and Qin, jointly and severally, pay each Petitioner RMB 225,000,000, or a total of RMB 675,000,000, in damages for delayed payment of the equity acquisition prices;

   iv. To enter into the determination that SMI Shengdian and Qin, jointly and severally, pay each Petitioner the returns on the security deposit placed by them;

   v. To enter into the determination that SMI International and Run Yun bear joint and several compensation liabilities for Petitioners' claims (i) and (iii) above;

   vi. To enter into the determination that the Arbitral Respondents jointly and severally indemnify Petitioners against the expenses incurred by Petitioners in conducting the Arbitration, including legal costs; and

   vii. To enter into the determination that the Arbitral Respondents bear all the arbitration fees for this case.

*Id.* at 15-16.

**Response:** Admit the foregoing claims were made. Deny the validity of the claims. See *generally* Qin Decl.

34. The Arbitration Panel opined that the laws of China applied to the case. *Id.* at 32.

**Response:** Admit.

35. The Arbitration Panel opined that the Capital Increase Agreements and the Supplemental Agreement

> are both true expression of intention of the parties, do not contravene mandatory provisions of China's laws and administrative regulation, and have been established and put into effect according to law, so they can serve as the bases for the Arbitration Panel to identify the rights and obligations of the parties on both sides.

*Id.*

**Response:** Admit the Arbitration Panel made the foregoing statement. Deny the truth of the foregoing statement. Deny that the Supplemental Agreement was valid. Cheng Decl. ¶2. Qin Decl. ¶23.

36. The Arbitration Panel found that Qin was the actual controller of Run Yun. *Id.* at 43.

**Response:** Admit.

37. The Arbitration Panel made the following determinations:

14

i. With respect to Petitioners' first claim, SMI Shengdian and Qin shall jointly and severally pay equity acquisition prices to Petitioners to acquire the 3.12% equity held by each Petitioner in Run Yun. Specifically, SMI Shengdian and Qin shall pay the following amount of equity acquisition prices:

1. To First Petitioner Chuangtai Rongyuan: RMB 500,000,000 $\times$ (1 + 15% $\times$ n/360) – RMB 10,000,000, n = the number of days from May 8, 2017 to the date the equity acquisition price is paid in full;

2. To Second Petitioner Huihengying: RMB 500,000,000 $\times$ (1 + 15% $\times$ n/360) – RMB 10,000,000, n = the number of days from June 26, 2017 to the date the equity acquisition price is paid in full; and

3. To Third Petitioner Huirongsheng: RMB 500,000,000 $\times$ (1 + 15% $\times$ n/360) – RMB 10,000,000, n = the number of days from June 28, 2017 to the date the equity acquisition price is paid in full.

ii. With respect to Petitioners' second claim, SMI Shengdian and Qin shall transfer to Petitioners 5% of the equity in Run Yun, which shall be evenly distributed among the three Petitioners.

iii. With respect to Petitioners' third claim, SMI Shengdian and Qin shall jointly and severally pay RMB 150,000,000 in damages to each Petitioner for delayed payment of the equity acquisition prices;

iv. With respect to Petitioners' fourth claim, SMI Shengdian and Qin shall jointly and severally pay the following amounts as returns of the security deposits:

1. To First Chuangtai Rongyuan, RMB 1,000,000 for the period from May 9, 2017 to the date that such returns are paid up in their entirety, plus an annual rate of 9% of the base amount;

2. To Second Petitioner Huihengying: RMB 2,041,666.67 for the period from June 28, 2017 to the date that such returns are paid up in their entirety, plus an annual rate of 9% of the base amount;

3. To Third Petitioner Huirongsheng: RMB 2,104,166.67 for the period from July 1, 2017 to the date that such returns are paid up in their entirety;

v. With respect to Petitioners' fifth claim, SMI International and Run Yun shall undertake joint and several compensatory liabilities for SMI Shengdian's and Qin's failure to perform their obligations under determinations (i) and (iii).

      vi. The Arbitral Respondents shall jointly and severally compensate Petitioners for the expenses incurred in dealing with this case, including:

1. To Petitioner Chuangtai Rongyuan: RMB 166,666 in legal costs, RMB 5,000 in property preservation costs, and RMB 140,000 in property preservation guarantee costs, for a total of RMB 311,666;

2. To Petitioner Huihengying: RMB 166,667 in legal costs, and RMB 140,000 in property preservation guarantee costs, for a total of RMB 306,667;

3. To Petitioner Huirongsheng: RMB 166,667 in legal costs, and RMB 140,000 in property preservation guarantee costs, for a total of RMB 306,667;

      vii. Of the arbitration fee worth RMB 14,481,468 for this case, 15% or RMB 2,172,220.20 shall be borne by Petitioners, while 85% or RMB 12,309,247.80 shall be borne by the Arbitral Respondents. As the arbitration fee has been paid in its entirety by Petitioners to the CIETAC, the Arbitral Respondents shall therefore pay 12,309,247.80 in arbitration fees to Petitioners to compensate for the arbitration fees advanced by Petitioners.

*Id.* at 60-61.

**Response:** Admit that is what the Award provided. Deny that Petitioners are entitled to any of the relief set forth in the Award. See *generally* Qin Decl.

38. The Award provided, "The foregoing amounts shall be paid by the [Arbitral] Respondents to [Petitioners] within 30 days of the issuance of these determinations." *Id.* at 61.

**Response:** Admit that is what the Award provided. Deny that Petitioners are entitled to any of the relief set forth in the Award. See *generally* Qin Decl.

39. The Award concluded, "These arbitral determinations shall be final and take effect as of the date of their issuance." *Id.*

**Response:** Admit that is what the Award provided. Deny that Petitioners are entitled to any of the relief set forth in the Award. See *generally* Qin Decl.

40. The Award disposes of every claim and issue in the Arbitration. *See* Petition ¶ 24.

**Response:** Deny. Respondent's counsel attempted to argue issues concerning the overarching fraud committed by Petitioners, the invalidity of the Supplemental Agreement, and other issues concerning the overarching transactions. These arguments were not even entertained by the arbitration panel. In other words, the arbitration panel did not properly allow Respondent the opportunity to present his case. See Qin Decl. ¶52-53.

41. The Award was issued on April 22, 2021 in Beijing. Lee Decl. Ex. B at 62.

**Response:** Admit.

F. **The Instant Confirmation and Enforcement Proceedings**

42. As of November 8, 2021, it is undisputed that none of the Arbitral Respondents have paid any of the monetary damages assessed against the Arbitral Respondents in the Award. *See* Petition ¶ 29.

**Response:** Admit that Respondent has not paid Petitioners any monetary damages assessed against Respondent in the Award, however, deny that Petitioners are entitled to any of the relief set forth in the Award. See *generally* Qin Decl.

43.     On November 8, 2021, Petitioners filed a Petition to Confirm and Enforce Foreign Arbitral Award and for Entry of Judgment in the U.S. District Court for the Southern District of New York. *See generally* Petition.

**Response:** Admit. However, deny that this Court should Confirm and Enforce the Award. See *generally* Qin Decl.

Dated:  April 5, 2022

       Glen Cove, New York

                              Xue & Associates, P.C.
                              *Attorneys for Respondent*

By:     /s/ Benjamin B. Xue
       Benjamin B. Xue, Esq.
       1 School Street, Suite 303A
       Glen Cove, New York 11542
       Tel.: (516) 595-8887
       Fax: (212) 216-2276
       Email: BenjaminXue@XueLaw.Com