# EXHIBIT 2



Attn: Sarah Madigan

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019

你好，我是 **Duo Liu**, 我和 **Hui Qin** 两年前开始分居，1年前正式离婚。我们已经正式分开了也不住在一起。我必须把这份文件退回给你，请你不要再给我寄任何关于 **Hui Qin** 的文件，打扰我的正常生活。非常感谢。附上我们在中国法院生效的离婚判决书。

Hi, I'm Duo Liu. Hui Qin and I separated two years ago and got divorced one year ago. We're officially separated and not living together. I must return this document to you. Please do not send me any documents about Hui Qin, which will disturb my normal life. I'm appreciated. Attached is our effective divorce decree in the Chinese court.

Duo Liu.

12/16/2021.

北京市朝阳区人民法院

生效证明书

（2020）京 0105 民初 57201 号

原告刘多（Duo Liu）诉被告覃辉离婚纠纷一案作出的（2020）京 0105 民初 57201 号民事判决书已于 2021 年 1 月 14 日发生法律效力。

特此证明。



# 中华人民共和国
# 北京市朝阳区人民法院
# 民事判决书

（2020）京 0105 民初 57201 号

原告: 刘多（Duo Liu），女，1982 年 ▮▮▮▮ 出生，美利坚合众国国籍，住 39 Applegreen，Dr，Old Westbury．NY，USA，11568，护照号: ▮▮6054。

委托诉讼代理人: 周宝金，北京金投律师事务所律师。

被告: 覃辉，男，1968 年 ▮▮▮▮ 出生，汉族，住 39 Applegreen，Dr、Old Westbury．USA，11568，户籍地北京市朝阳区怡景园北里 1 楼 14 层 18B，公民身份号码: ▮▮▮▮0015。

委托诉讼代理人: 刘芳，北京市世泽律师事务所律师。

委托诉讼代理人: 仇心惟，北京市世泽律师事务所律师。

原告刘多（Duo Liu）（以下简称原告）诉被告覃辉（以下简称被告）离婚纠纷一案，本院立案受理后依法适用简易程序，公开开庭进行了审理。原告及其委托诉讼代理人周宝金，被告及其委托诉讼代理人刘芳均到庭参加了诉讼。本案现已审理终结。

原告向本院提出诉讼请求: 1、判决原告和被告离婚; 2、女儿 A▮▮▮▮ Q▮ 和儿子 O▮▮▮▮ Q▮ 由原告抚养，被告支付抚养费。3、依法分割夫妻共同财产即被告覃辉名下位于北京市朝阳

区将台路 2 号 B 座 18 至 19 层 2105 号房屋和位于北京市朝阳区将台路 2 号 B 座 18 至 19 层 2106 号房屋。事实与理由：2010 年 1 月 25 日，原告与被告于北京市朝阳区民政局登记结婚，婚后育有一子和一女，分别是 A████ Q██（2010 年███出生）和 C████ Q██（2013 年████出生）。双方婚后共同生活期间因性格不合夫妻感情确已破裂，无和好可能。因双方对离婚和子女抚养问题无法达成一致意见，特诉至法院。

被告辩称：同意离婚。同意孩子由原告抚养，自 2021 年 1 月起每月 1 日前支付抚养费 38 万元。依法分割夫妻共同财产。

本院经审理认定如下：原告与被告于 2010 年 1 月 25 日在北京市朝阳区民政局登记结婚。原告系初婚，被告系再婚。双方在美国于 2010 年████生育一女 A████ Q██，于 2013 年████生育一子 C████ Q██。

关于离婚，现双方均同意离婚。

关于子女抚养，双方均同意 A████ Q██ 和 C████ Q██ 由原告抚养，被告自 2021 年 1 月起每月 1 日前支付抚养费 38 万元人民币，计算到 C████ Q██ 满 25 周岁止。

关于财产，经查，位于北京市朝阳区将台路 2 号 B 座 18 至 19 层 2105 号房屋和位于北京市朝阳区将台路 2 号 B 座 18 至 19 层 2106 号房屋均于 2016 年登记在被告名下。被告表示上述房屋系婚前购买，婚后有共同还贷。现双方同意上述两套房屋原告和被告各占 50%份额。另查，上述两套房屋均存在抵押和查封，双方同意

解除查封和抵押后被告协助原告办理上述两套房屋的变更登记手续，变更登记产生的费用由被告负担。另双方均表示双方各自名下的股权归各自所有，无需要法院处理的其他财产。关于债务，双方表示无夫妻共同债务，被告表示与上述房屋有关债务系其个人债务。

本院认为：婚姻关系应以双方感情为基础，现双方均认可夫妻感情确已破裂、同意离婚，本院不持异议。

关于子女抚养，双方达成一致意见，本院不持异议。

关于共同财产，位于北京市朝阳区将台路 2 号 B 座 18 至 19 层 2105 号房屋和位于北京市朝阳区将台路 2 号 B 座 18 至 19 层 2106 号房屋，双方均同意各占 50%份额，待解除抵押和查封后被告协助原告办理变更手续，本院不持异议。另，双方均同意各自名下的股权归各自所有，表示无夫妻共同债务（系双方自述，不影响债权人主张权利）；因股权和债务无明确内容，判决中本院不再予以确认。

综上，依据《中华人民共和国婚姻法》第三十二条、第三十九条，《最高人民法院关于适用<中华人民共和国民事诉讼法>的解释》第五百二十二条、第五百三十条之规定，判决如下：

一、准予原告刘多（Duo Liu）与被告覃辉离婚。

二、婚生子女 A██████ Q█和 C██████ Q██ 均由原告刘多（Duo Liu）抚养，被告覃辉自二〇二一年一月起每月一日前支付原告刘多（Duo Liu）抚养费三十八万元，计算到 C██████ Q██ 满

二十五周岁止。

三、登记于被告覃辉名下位于北京市朝阳区将台路 2 号 B 座 18 至 19 层 2105 号房屋和位于北京市朝阳区将台路 2 号 B 座 18 至 19 层 2106 号房屋，原告刘多（Duo Liu）和被告覃辉各占百分之五十份额，被告覃辉于解除抵押和查封后协助原告刘多（Duo Liu）办理上述房屋的变更登记手续，变更登记产生的费用由被告覃辉负担。

案件受理费 24 500 元，由原告刘多（Duo Liu）负担（已交纳）。

如不服本判决，可在判决书送达之日起三十日内，向本院递交上诉状，并按对方当事人的人数提出副本，预交上诉案件受理费，上诉于北京市第三中级人民法院。



审　判　员　杨　静

本件与原本核对无异

二〇二〇年十二月　日

书　记　员　辛迎雪

- 4 -



**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

:

Huzhou Chuangtai Rongyuan Investment
Management Partnership, Huzhou Huihengying          :          Case No.: 1:21-cv-09221-KPF
Equity Investment Partnership, and Huzhou
Huirongsheng Equity Investment Partnership,         :          **NOTICE OF MOTION FOR**
                                                                        **SUMMARY JUDGMENT**
                              Petitioners,          :          **BY PETITIONERS**

:

                    v.                              :

:

Hui Qin,                                            :

:

                              Respondent.           :

---------------------------------------------------------------------x

      PLEASE TAKE NOTICE that, pursuant to the Court's November 9, 2021 Order (ECF No.

11), upon the accompanying memorandum of law, the accompanying Rule 56.1 Statement of

Material Undisputed Facts, the declaration of Carol Lee, dated November 8, 2021 (ECF No. 7),

and the exhibits attached thereto, Petitioners Huzhou Chuangtai Rongyuan Investment

Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou

Huirongsheng Equity Investment Partnership (collectively, "Petitioners"), will move this Court,

before the Honorable Katherine Polk Failla, United States District Judge, Southern District of New

York, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, on a date to be

determined, for summary judgment pursuant to Fed. R. Civ. P. 56 on Petitioners' Petition to

Confirm and Enforce Foreign Arbitral Award and for Entry of Judgment (ECF No. 1).

Dated: December 8, 2021
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:  */s/ Andrew C. Smith*
     Andrew C. Smith
     Geoffrey Sant
     Carol Lee
     31 West 52nd Street
     New York, New York 10019
     Tel: (212) 858-1000
     Fax: (212) 858-1500
     andrew.smith@pillsburylaw.com
     geoffrey.sant@pillsburylaw.com
     carol.lee@pillsburylaw.com

     *Attorneys for Petitioners Huzhou Chuangtai*
     *Rongyuan Investment Management*
     *Partnership, Huzhou Huihengying Equity*
     *Investment Partnership, and Huzhou*
     *Huirongsheng Equity Investment Partnership*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

Huzhou Chuangtai Rongyuan Investment
Management Partnership, Huzhou Huihengying
Equity Investment Partnership, and Huzhou
Huirongsheng Equity Investment Partnership,

                         Petitioners,

           v.

Hui Qin,

                      Respondent.

-------------------------------------------------------------x

Case No.: 1:21-cv-09221-KPF

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF MATERIAL UNDISPUTED FACTS ..................................... 2

    A.  The Underlying Agreements............................................................................ 2

    B.  The Arbitration............................................................................................... 3

    C.  The Award ...................................................................................................... 4

III. ARGUMENT ....................................................................................................... 6

    A.  Summary Judgment Standard ......................................................................... 6

    B.  This Court has Jurisdiction to Confirm the Award, Which is Subject to the New
        York Convention............................................................................................. 6

    C.  The Award Should be Confirmed Because No Ground for Refusal Applies. .................. 8

IV. CONCLUSION.................................................................................................... 11

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Albtelecom SH.A v. UNIFI Commc'ns, Inc.*,
   No. 16 Civ. 9001 (PAE), 2017 WL 2364365 (S.D.N.Y. May 30, 2017)................................6, 8

*Anderson v. Liberty Lobby*,
   477 U.S. 242 (1986)..................................................................................................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................................................6

*D.H. Blair & Gottdiener*,
   462 F.3d 95, 110 (2d Cir. 2006)...............................................................................................6

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
   403 F.3d 85 (2d Cir. 2005)..........................................................................................8, 9, 10, 11

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du
   Papier (RAKTA)*,
   508 F.2d 969 (2d Cir. 1974) ...................................................................................................11

*Prof'l Sport Serv. Fi Oy v. Puck Agency LLC*,
   No. 19-CV-5904 (CS), 2019 WL 5884558 (S.D.N.Y. Nov. 8, 2019) ......................................6

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997)................................................................................................7, 8, 9

### Statutes and Codes

United States Code
   Title 9, Section 201 *et seq.*...................................................................................................7
   Title 9, Section 202 .............................................................................................................7, 8
   Title 9, Section 203 .............................................................................................................6, 7
   Title 9, Section 207 .......................................................................................................2, 8, 11
   Title 18, Section 2334(a)........................................................................................................6

### Rules and Regulations

Federal Rules of Civil Procedure
   Rule 56(a).................................................................................................................................6

4856-1108-4805

## I.    INTRODUCTION

Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership ("Chaungtai Rongyuan"), Huzhou Huihengying Equity Investment Partnership ("Huihengying"), and Huzhou Huirongsheng Equity Investment Partnership ("Huirongsheng), by and through the undersigned counsel, respectfully submit this memorandum of law in support of their Motion for Summary Judgment ("Motion") to enforce a foreign arbitration award against Hui Qin ("Qin").

On March 15, 2017, Shenzhen SMI Shengdian Cultural and Media Group Co., Ltd. ("SMI Shengdian"), SMI International Cinemas Limited ("SMI International"), and Chengdu Run Yun Culture Communication Co., Ltd. ("Run Yun," collectively with SMI Shengdian, SMI International, and Qin, the "Arbitral Respondents"), entered into a Capital Increase Agreement with each Petitioner respectively (collectively, the "Capital Increase Agreements"). SMI Shengdian, Qin, and Petitioners also entered into a Supplemental Agreement to the Capital Increase Agreement ("Supplemental Agreement"). The Capital Increase Agreements and the Supplemental Agreement each contained an arbitration clause.

When the Arbitral Respondents breached the Capital Increase Agreements and the Supplemental Agreement, Petitioners commenced an arbitration ("the Arbitration") before the China International Economic and Trade Arbitration Commission ("CIETAC") on March 30, 2020.

On April 22, 2021, after the conclusion of the Arbitration, a panel of arbitrators (the "Arbitration Panel") with the CIETAC issued an award (the "Award") in the Arbitration. The Award was entered in favor of Petitioners and against the Arbitral Respondents.

As of the date hereof, none of the Arbitral Respondents have paid any of the monetary damages assessed joint and severally against them in the Award. Now, Petitioners seek to enforce the Award against Qin in this Court, pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign and Arbitral Awards (the "New York Convention" or the

1

"Convention"). There are no grounds upon which Qin may validly object to the Award. Therefore, pursuant to 9 U.S.C. § 207 under the Convention, Petitioners respectfully request that this Court grant their Motion for Summary Judgment, enforce the Award, and enter judgment in favor of Petitioners against Qin.

## II.    STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.    The Underlying Agreements

On March 15, 2017, the Arbitral Respondents entered into a Capital Increase Agreement with each Petitioner respectively. *See* R-56.1 at ¶ 8 (Capital Increase Agreements and certified translations of the Capital Increase Agreements). [1]

Also on March 15, 2017, SMI Shengdian, Qin, and Petitioners entered into a Supplemental Agreement. *See id.* at ¶ 9 (Supplemental Agreement and certified translation of the Supplemental Agreement).

Each of the parties to the Arbitration, or its predecessor in interest, was a party to the Capital Increase Agreements and/or the Supplemental Agreement, and each party here is bound by one or more of the agreements, including Qin. Under the Capital Increase Agreements, each petitioner paid RMB 500,000,000 in increased capital, for a total of RMB 1,500,000,000 to invest in Run Yun. *See id.* at ¶ 10.

The Capital Increase Agreements and the Supplemental Agreement each contained an arbitration clause. Those clauses are set forth in Article 14.3 of the Capital Increase Agreements and Article 14.2 of the Supplemental Agreement. Article 14.3 of the Capital Increase Agreements reads,

> If **the parties** fail to reach a solution through amicable negotiation within [60] days
> from the date of **dispute**, the **dispute** shall be submitted to China International

---

[1] Citations to "R-56.1" are to Petitioners' Local Rule 56.1 Statement of Material Undisputed Facts, filed herewith.

> Economic and Trade Arbitration Commission (Beijing) for arbitration in accordance with the arbitration rules in effect at the time of applying for arbitration.

*Id.* at ¶ 11.

Article 14.2 of the Supplemental Agreement reads,

> Any dispute arising from the performance hereof between the parties hereto shall be settled through negotiation. If negotiation fails, the parties agree to submit the dispute to China International Economic and Trade Arbitration Commission in Beijing, and the arbitration shall be conducted in accordance with its arbitration rules in effect at the time of submission of the dispute, unless otherwise stipulated in the effective award. The actual expenses paid by the parties for dispute resolution (including but not limited to arbitration fees and reasonable attorney fees) shall be borne by the losing party.

*Id.* at ¶ 12.

### B.   The Arbitration

The Arbitral Respondents failed to perform as obligated under the Capital Increase Agreements and Supplemental Agreement. *Id.* at ¶ 13. Therefore, on March 30, 2020, Petitioners commenced the Arbitration as Claimants against the Arbitral Respondents. *Id.* at ¶ 14.

The Arbitration took place in Beijing, PRC. *Id.* at ¶ 21. The Arbitration was heard by three arbitrators ("the Arbitration Panel"): Mr. Xiaomin Sun, who served as the Chair of the Arbitration Panel, Mr. Yong Li, and Ms. Lanfang Liu. *Id.* at ¶¶ 18-21. All four Arbitral Respondents were represented by counsel in the Arbitration, including Qin. *See id.* at ¶¶ 23-25. The parties submitted evidence and written submissions in support of their claims and defenses during the arbitration. *Id.* at ¶¶ 24-28. The Arbitration was conducted pursuant to the arbitration clauses in the Capital Increase Agreements and in the Supplemental Agreement. *Id.* at ¶ 16.

In the Arbitration, Petitioners asserted seven claims against the Arbitral Respondents:

1.    to enter into the determination that SMI Shengdian and Qin, jointly and severally, pay the Petitioners their respective equity acquisition prices;

2.    to enter into the determination that SMI Shengdian and Qin immediately transfer their 5% equity in Run Yun to the Petitioners;

3

3.     to enter into the determination that SMI Shengdian and Qin, jointly and severally, pay each of the Petitioners RMB 225,000,000, or a total of RMB 675,000,000, in damages for delayed payment of the equity acquisition prices;

4.     to enter into the determination that SMI Shengdian and Qin, jointly and severally, pay each of the Petitioners the returns on the security deposit placed by them;

5.     to enter into the determination that SMI International and Run Yun bear joint and several compensation liabilities for Petitioners' claims (i) and (iii);

6.     to enter into the determination that the Arbitral Respondents, jointly and severally, indemnify the Petitioners for the legal expenses incurred by the Petitioners in conducting the arbitration proceeding; and

7.     to enter into the determination that the Arbitral Respondents bear all the arbitration fees for this case.

*Id.* at ¶ 33.

### C.    <u>The Award</u>

In the Award, the Arbitration Panel found in favor of Petitioners on claims 1, 2, 5, and 6 referenced above, and granted Petitioners relief in part on claims 3, 4, and 7. *Id.* at ¶ 37; *see also id.* at ¶¶ 38-40. The Award disposes of every claim and issue in the Arbitration. *Id.* at ¶ 40.

The relief granted in the Award includes monetary damages against Qin in the following amounts:

1. Equity acquisition prices to the Petitioners to acquire the 3.12% equity held by each of the three Petitioners in Run Yun. Specifically, SMI Shengdian and Qin shall pay the following amounts of equity acquisition prices:

a. To First Petitioner Chuangtai Rongyuan: RMB 500,000,000 $\times$ $(1 + 15\% \times n/360)$ – RMB 10,000,000, n = the number of days from May 8, 2017 to the date the equity acquisition price is paid in full;

b. To Second Petitioner Huihengying: RMB 500,000,000 $\times$ $(1 + 15\% \times n/360)$ – RMB 10,000,000, n = the number of days from June 26, 2017 to the date the equity acquisition price is paid in full; and

4

    c. To Third Petitioner Huirongsheng: RMB 500,000,000 × (1 + 15% × n/360) − RMB 10,000,000, n = the number of days from June 28, 2017 to the date the equity acquisition price is paid in full.

2. RMB 150,000,000 in damages to each of the Petitioners for delayed payment of the equity acquisition prices;

3. The return of security deposits to each of the Petitioners, plus 9% interest until those security deposits are paid in full. Specifically, SMI Shengdian and Qin shall pay the following amounts as return of security deposits, plus ongoing interest of 9% per annum:

    a. To First Petitioner Chuangtai Rongyuan: RMB 1,000,000 for the period from May 9, 2017 to the date such security deposit is paid in full;

    b. To Second Petitioner Huihengying: RMB 2,041,666.67 for the period from June 28, 2017 to the date such security deposit is paid in full; and

    c. To Third Petitioner Huirongsheng: RMB 2,104,166.67 for the period from July 1, 2017 to the date such security deposit is paid in full.

4. Reimbursement of expenses Petitioners incurred in the arbitration proceeding, in the amount of: RMB 311,666 to First Petitioner Chuangtai Rongyuan; RMB 306,667 to Second Petitioner Huihengying; and RMB 306,667 to Third Petitioner Huirongsheng.

5. Reimbursement of the arbitration fees paid to the Arbitration Commission, in the amount of RMB 12,309,247.80, to the Petitioners.

6. The transfer of 5% of the equity in Run Yun evenly to each of the three Petitioners.

*Id.* at ¶ 37. The Arbitration Panel awarded the monetary damages described above in favor of Petitioners jointly and severally against Qin and the other Arbitral Respondents. *Id.* As of the date of the Petition (November 8, 2021), none of the Arbitral Respondents have paid any of the monetary damages assessed against them in the Award. *See id.* at ¶ 42.

4856-1108-4805

### III.    ARGUMENT

#### A.    Summary Judgment Standard

A petition to enforce a foreign arbitral award is treated as a motion for summary judgment. *Prof'l Sport Serv. Fi Oy v. Puck Agency LLC*, No. 19-CV-5904 (CS), 2019 WL 5884558, at *4 (S.D.N.Y. Nov. 8, 2019) (citing *Albtelecom SH.A v. UNIFI Commc'ns, Inc.*, No. 16 Civ. 9001 (PAE), 2017 WL 2364365, at *4 (S.D.N.Y. May 30, 2017); *D.H. Blair & Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)).

Summary judgment is appropriate where the moving party shows that, even where all "justifiable inferences" are drawn in favor of the nonmoving party, there is no genuine dispute as to any material fact and that the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law," a court "must grant an order to confirm an arbitration award upon the timely application of a party." *Albtelecom*, 2017 WL 2364365, at *4 (internal quotation and citation omitted).

#### B.    This Court has Jurisdiction to Enforce the Award, Which is Subject to the New York Convention.

This Court has jurisdiction under the New York Convention to recognize and enforce the Award. This Court has personal jurisdiction over Respondent Qin because Respondent Qin resides in this District. *See* 18 U.S.C. § 2334(a); R-56.1 at ¶ 7.

This Court has subject matter jurisdiction over the Petition pursuant to 9 U.S.C. § 203 because the enforcement of the Award is governed by the New York Convention. Under 9 U.S.C. § 203, any action or proceeding falling under the New York Convention "shall be deemed to arise

4856-1108-4805

under the laws and treaties of the United States." Therefore, the U.S. district courts "shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

The New York Convention is a multilateral treaty codified at 9 U.S.C. § 201 *et seq*. The New York Convention applies to "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." New York Convention Art. I, § 1; *see also* 9 U.S.C. § 202. The Convention also applies to "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention Art. I, § 1; *see also* 9 U.S.C. § 202.

The New York Convention governs the Award at issue here on both bases referenced above. It is undisputed that the Award was made outside of the United States, in the PRC. *See* R-56.1 at ¶ 21. As such, it was made "in the territory of a State other than the State where the recognition and enforcement of such awards are sought." It is undisputed that the Award was made in the PRC and pronounced in accordance with the law of the PRC. *Id.* at ¶¶ 34, 41. As such, the Award is not a "domestic award" in the United States. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 18-19 (2d Cir. 1997) (explaining that awards "'not considered as domestic' denotes awards which are subject to the Convention not because made abroad, but because made within the legal framework of another country, e.g., pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction").

Under the Convention, "[t]he term 'arbitral awards' shall include not only awards made by arbitrators appointed for each case but also those made by permanent arbitral bodies to which the

parties have submitted." New York Convention Art. I § 2. An award falls under the New York Convention if it arises "out of a legal relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. § 202. The Award here was made by arbitrators appointed for the Arbitration, and the subject matter of the Arbitration arose out of the commercial relationship formed by the Capital Increase Agreements and the Supplemental Agreement. The Arbitration was heard and resolved by the Arbitration Panel, which consisted of three arbitrators. R-56.1 at ¶¶ 18-21, 37. The subject matter of the Arbitration was a dispute regarding breach of the investment agreements. *See id.* at ¶¶ 13, 17, 31.

**C.    The Award Should be Enforced and Judgment Entered Because No Ground for Refusal Applies.**

Respondent Qin has no grounds under the Convention to challenge confirmation and enforcement of the Award.  Under the Convention, a U.S. district court's role in reviewing an arbitral award is "strictly limited," and the court "*shall* confirm the award unless it finds" that one of the grounds for refusal provided in the Convention applies. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (emphasis added) (quoting 9 U.S.C. § 207). The Second Circuit has made clear that "[g]iven the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is very limited" so as to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) (internal quotations and citation omitted).

If there is "a barely colorable justification for the outcome reached," the arbitration award should be enforced. *Albtelecom*, 2017 WL 2364365, at *4 (internal quotations and citation omitted). Accordingly, the party challenging confirmation of an arbitral award has a "heavy"

4856-1108-4805

burden to prove that one of the defenses under the New York Convention applies. *Encyclopaedia Universalis*, 403 F.3d at 90. Qin cannot meet this heavy burden.

There are only seven grounds upon which a party may validly object to the confirmation and enforcement of an arbitral award under the New York Convention. *See Yusuf*, 126 F.3d at 19. The seven grounds are as follows:

    a.  The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

    b.  The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

    c.  The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

    d.  The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

    e.  The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

    f.  The subject matter of the difference is not capable of settlement by arbitration under [United States] law; or

    g.  The recognition or enforcement of the award would be contrary to the public policy of [the United States].

New York Convention, Art. V §§ 1, 2.

Here, the Award does not fall within any of the above grounds for refusal. There is no evidence that the parties were under any incapacity. The Arbitration was conducted pursuant to a

valid and enforceable agreement to arbitrate. *See* R-56.1 at ¶¶ 11-12 (arbitration clauses in the Capital Increase Agreements and the Supplemental Agreement); *id.* at ¶ 16 (noting that the Arbitration was accepted pursuant to the arbitration clauses of the Capital Increase Agreements and the Supplemental Agreement); *id.* at ¶ 35 (the Arbitration Panel's determination that the Capital Increase Agreements and the Supplemental Agreement are valid).   All parties were represented by counsel and participated in the proceedings. *See* R-56.1 at ¶ 23 ("[Petitioners] and the [Arbitral] Respondents participated in the hearing through their counsel."); *id.* at ¶ 25 ("[T]he parties to this case and their counsel have submitted to the Arbitration Panel quite many materials and opinions as to the facts and legal issues surrounding the case."). Qin received proper notice of the appointment of the arbitrators and of the Arbitration, and Qin and Arbitral Respondents were able to present their case. *Id.* at ¶¶ 22-32.

The arbitral procedure and the selection of the Arbitration Panel were valid because the Arbitration was submitted to the CIETAC, as provided in the Capital Increase Agreements and the Supplemental Agreements. *Id.* at ¶¶ 11-12, 16; *see Encyclopaedia Universalis*, 403 F.3d at 90-91 (holding that the selection of arbitrator was valid and the composition of the arbitral authority was, therefore, in accordance with the parties' agreement, in which "the parties explicitly settled on a form").

The Award is a thorough and well-reasoned award, approximately 66 pages in length, describing in meticulous detail the procedural, factual and legal bases for the decision, responding to the arguments raised by Petitioners and by the Arbitral Respondents. *See* R-56.1 at ¶¶ 23-40. It does not address any issue beyond the terms of the arbitration. *See id.* at ¶¶ 31, 37-39; *see also id.* at ¶ 17. It is a final determination of every claim and issue raised by the parties in the Arbitration, as it addresses each of Petitioners' seven arbitration claims. *Id.* at ¶¶ 37-40. It was effective and

binding on both parties as of April 22, 2021, after which the Arbitral Respondents had 30 days to pay the monetary damages under the Award. *Id.* at ¶¶ 38-39, 41.

Further, the recognition or enforcement of the Award would not be contrary to the public policy of the United States. *See Encyclopaedia Universalis*, 403 F.3d at 90 (explaining the "strong public policy in favor of international arbitration" in the United States) (citation omitted). Indeed, "[e]nforcement of foreign arbitral awards may be denied on this basis only where enforcement would violate the forum state's most basic notions of morality and justice." *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973-74 (2d Cir. 1974) (noting that the "pro-enforcement bias informing the Convention . . . points toward a narrow reading of the public policy defense"). That is not the case here, where the Award enforces the contractual terms of the Capital Increase Agreements and the Supplemental Agreement. The Arbitration Panel expressly determined that these Agreements

> are both true expression of intention of the parties, do not contravene mandatory provisions of China's laws and administrative regulation, and have been established and put into effect according to law, so they can serve as the bases for the Arbitration Panel to identify the rights and obligations of the parties on both sides.

R-56.1 at ¶ 35.

Finally, it is undisputed that the Petitioners timely filed the Petition on November 8, 2021, promptly after the date of the Award (April 22, 2021), which is well within the three-year limitations period provided in 9 U.S.C. § 207. *See* ECF No. 1.

## IV.   CONCLUSION

For the reasons set forth herein, Petitioners respectfully request that this Court grant their Motion for Summary Judgment and enter an order and judgment against Respondent Qin granting the following relief in favor of Petitioners:

    a.    Confirming the Award pursuant to 9 U.S.C. § 207;

4856-1108-4805

b.    Entering a judgment for money damages in favor of Petitioners in the following aggregate amounts (representing the totals granted in the Award as detailed below):

> Petitioner Chuangtai Rongyuan: **$154,263,591.51**
> Petitioner Huihengying: **$152,905,298.70**
> Petitioner Huirongsheng: **$152,854,081.01**

1.  Equity acquisition prices to the Petitioners to acquire the 3.12% equity held by each of the three Petitioners in Run Yun, the amounts of which are as follows as of December 8, 2021:

    i.    To First Petitioner Chuangtai Rongyuan: $130,103,359.17 (representing RMB 839,166,666.67 converted into U.S. dollars at the 6.45 exchange rate);

    ii.   To Second Petitioner Huihengying: $128,520,671.83 (representing RMB 828,958,333.33 converted into U.S. dollars at the 6.45 exchange rate); and

    iii.  To Third Petitioner Huirongsheng: $128,456,072.35 (representing RMB 828,541,666.67 converted into U.S. dollars at the 6.45 exchange rate).

2.  $23,255,813.95 (representing RMB 150,000,000 converted into U.S. dollars at the 6.45 exchange rate) in damages to each of the Petitioners for delayed payment of the equity acquisition prices;

3.  The return of security deposits to each of the Petitioners, plus 9% interest until such security deposits are paid in full. Specifically, as of December 8, 2021, the amounts of security deposits Respondent Qin shall return to the Petitioners, plus ongoing interest of 9% per annum, are as follows:

    i.    To First Petitioner Chuangtai Rongyuan: $219,961.24 (representing RMB 1,418,750.00 converted into U.S. dollars at the 6.45 exchange rate);

    ii.   To Second Petitioner Huihengying: $445,130.81 (representing RMB 2,871,093.75 converted into U.S. dollars at the 6.45 exchange rate); and

    iii.  To Third Petitioner Huirongsheng: $458,512.60 (representing RMB 2,957,406.25 converted into U.S. dollars at the 6.45 exchange rate).

4.  Reimbursement of expenses Petitioners incurred in the arbitration proceeding, in the amount of:

    i.    To First Petitioner Chuangtai Rongyuan: $48,320.31 (representing RMB 311,666 converted into U.S. dollars at the 6.45 exchange rate);

12

ii.   To Second Petitioner Huihengying: $47,545.27 (representing RMB 306,667 converted into U.S. dollars at the 6.45 exchange rate); and

iii.   To Third Petitioner Huirongsheng: $47,545.27 (representing RMB 306,667 converted into U.S. dollars at the 6.45 exchange rate).

5.   Reimbursement of the arbitration fees paid to the Arbitration Commission, in the amount of $1,908,410.51 (representing RMB 12,309,247.80 converted into U.S. dollars at the 6.45 exchange rate) to the Petitioners.

c.   As provided in the Award, ordering Qin to transfer the 5% of equity in Run Yun held by Qin and SMI Shengdian to the Petitioners;

d.   Awarding Petitioners their fees and costs incurred of this proceeding, including their attorneys' fees; and,

e.   Granting Petitioners such other and further relief as this Court deems just and proper.

Dated: December 8, 2021
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:  */s/ Andrew C. Smith*
     Andrew C. Smith
     Geoffrey Sant
     Carol Lee
     31 West 52nd Street
     New York, New York 10019
     Tel: (212) 858-1000
     Fax: (212) 858-1500
     andrew.smith@pillsburylaw.com
     geoffrey.sant@pillsburylaw.com
     carol.lee@pillsburylaw.com

     *Attorneys for Petitioners Huzhou Chuangtai*
     *Rongyuan Investment Management*
     *Partnership, Huzhou Huihengying Equity*
     *Investment Partnership, and Huzhou*
     *Huirongsheng Equity Investment Partnership*

13

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

Huzhou Chuangtai Rongyuan Investment
Management Partnership, Huzhou Huihengying
Equity Investment Partnership, and Huzhou
Huirongsheng Equity Investment Partnership,

                             Petitioners,

               v.

Hui Qin,

                       Respondent.

Case No.: 1:21-cv-09221-KPF

------------------------------------------------------------x

**PETITIONERS'
LOCAL RULE 56.1 STATEMENT OF MATERIAL UNDISPUTED FACTS**

1

Pursuant to Rule 56.1 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York, Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership ("Chuangtai Rongyuan"), Huzhou Huihengying Equity Investment Partnership ("Huihengying"), and Huzhou Huirongsheng Equity Investment Partnership ("Huirongsheng" and, together with Chuangtai Rongyuan and Huihengying, the "Petitioners" and, each, a "Petitioner"), by and through their undersigned counsel, respectfully submit this Statement of Material Undisputed Facts in support of their Motion for Summary Judgment.

## A.   **Petitioners**

1.     Chuangtai Rongyuan is a limited partnership established under Chinese law with a registered address in the PRC. *See* Declaration of Carol Lee in Support of Petition to Confirm and Enforce Foreign Arbitral Award and for Entry of Judgment, dated November 8, 2021, ECF No. 7 ("Lee Decl.") Ex. D (ECF No. 7-4, Capital Increase Agreement) at 2.

2.     Huihengying is a limited partnership established under Chinese law with a registered address in the PRC. *See* Lee Decl. Ex. H (ECF No. 7-8, Capital Increase Agreement) at 2.

3.     Huirongsheng is a limited partnership established under Chinese law with a registered address in the PRC. *See* Lee Decl. Ex. F (ECF No. 7-6, Capital Increase Agreement) at 2.

## B.   **Arbitral Respondents**

4.     Shenzhen SMI Shengdian Cultural and Media Group Co., Ltd. ("SMI Shengdian") is a limited liability company established under Chinese law and headquartered in the PRC. *See* Lee Decl. Ex. D at 2.

5.     SMI International Cinemas Limited ("SMI International") is a limited company established under Hong Kong law and headquartered in Hong Kong. *See id.*

2

6.      Chengdu Run Yun Culture Communication Co., Ltd. ("Run Yun") is a limited liability company established under Chinese law headquartered in the PRC. *See id.* As of the date of the signing of the Supplemental Agreement, Run Yun's two registered shareholders were SMI Shengdian (which held 51% of Run Yun's equity) and SMI International (which held 49% of Run Yun's equity). *See* Lee Decl. Ex. J (ECF No. 7-10, Supplemental Agreement) at 5.

7.      Hui Qin ("Qin") was the "actual controller" of Run Yun. *See id.* As of the date of the signing of the Supplemental Agreement, Qin held 100% of the equity of SMI Shengdian and 65.5% equity of SMI Holdings, which indirectly holds 100% of the equity of SMI International. *Id.* Qin is a citizen of the PRC and a resident of New York, New York.  *See* Petition to Confirm and Enforce Foreign Arbitral Award and for Entry of Judgment, ECF No. 1 ("Petition"), ¶ 5.

**C.      The Capital Increase Agreements and the Supplemental Agreement**

8.      On March 15, 2017, SMI Shengdian, SMI International, and Run Yun (collectively with SMI Shengdian, SMI International, and Qin, the "Arbitral Respondents"), entered into a Capital Increase Agreement with each Petitioner respectively (collectively, the "Capital Increase Agreements"). *See* Lee Decl. Exs. C-H (ECF Nos. 7-3–7-8, Capital Increase Agreements and certified translations of the Capital Increase Agreements).

9.      Also on March 15, 2017, SMI Shengdian, Qin, and Petitioners entered into a Supplemental Agreement to the Capital Increase Agreement ("Supplemental Agreement"). *See* Lee Decl. Exs. I-J (ECF Nos. 7-9–7-10, Supplemental Agreement and certified translation of the Supplemental Agreement).

10.      Under the Capital Increase Agreements, each Petitioner paid RMB 500,000,000 in increased capital, for a total of RMB 1,500,000,000 to invest in Run Yun. *See* Lee Decl. Exs. D, F, H at 3.

11.     The Capital Increase Agreements and the Supplemental Agreement each contained arbitration clauses. The arbitration clause is set forth in Article 14.3 of the Capital Increase Agreements. Article 14.3 of the Capital Increase Agreements provides,

> If **the parties** fail to reach a solution through amicable negotiation within [60] days from the date of **dispute**, the **dispute** shall be submitted to China International Economic and Trade Arbitration Commission (Beijing) for arbitration in accordance with the arbitration rules in effect at the time of applying for arbitration.

Lee Decl. Exs. D, F, H at 9 (emphasis in original).

12.     The arbitration clause is set forth in Article 14.2 of the Supplemental Agreement. Article 14.2 of the Supplemental Agreement provides,

> Any dispute arising from the performance hereof between the parties hereto shall be settled through negotiation. If negotiation fails, the parties agree to submit the dispute to China International Economic and Trade Arbitration Commission in Beijing, and the arbitration shall be conducted in accordance with its arbitration rules in effect at the time of submission of the dispute, unless otherwise stipulated in the effective award. The actual expenses paid by the parties for dispute resolution (including but not limited to arbitration fees and reasonable attorney fees) shall be borne by the losing party.

Lee Decl. Ex. J at 14.

13.     The Arbitral Respondents failed to perform their contractual obligations under the Capital Increase Agreements and the Supplemental Agreement. *See* Lee Decl. Ex. B (ECF No. 7-2, certified translation of China International Economic and Trade Arbitration Commission Arbitral Award) at 8, 39-41 (Award at Lee Decl. Ex. A, ECF No. 7-1).

### D.     The Arbitration Proceedings before the China International Economic and Trade Commission

14.     On March 30, 2020, Petitioners commenced an arbitration (the "Arbitration") as claimants against the Arbitral Respondents before the China International Economic and Trade Arbitration Commission (the "CIETAC"). Lee Decl. Ex. B. at 1.

4866-0064-8453

15.   The Arbitration case was referred to as "S20200960." *Id.* at 1.

16.   The Arbitration was accepted pursuant to the arbitration clauses of the Capital Increase Agreements and the Supplemental Agreement. *Id.*

17.   The Capital Increase Agreements and the Supplemental Agreement constituted the entire transaction involved in the Arbitration. *Id.* at 6.

18.   The CIETAC designated Mr. Xiuming Tao and Mr. Yong Li as arbitrators, and Mr. Xiaomin Sun as chief arbitrator for this case, according to the provisions of the arbitration rules. *Id.* at 2.

19.   On August 24, 2020, the three arbitrators established a panel to hear this case jointly. *Id.* at 3.

20.   On September 25, 2020, Mr. Tao resigned as arbitrator for this case. *Id.* at 3. The director of the CIETAC designated Ms. Lanfang Liu to replace Mr. Tao. *Id.* Together with Mr. Li and Mr. Sun, the three arbitrators made up the "Arbitration Panel."

21.   On December 22, 2020, the Arbitration Panel heard the case in Beijing. *Id.* at 4.

22.   Qin was properly served with notice of the Arbitration and of the formation of the Arbitration Panel. *Id.* at 2-3.

23.   "[Petitioners] and the [Arbitral] Respondents participated in the hearing through their counsel." *Id.* at 4.

24.   In addition, both parties' counsel submitted arguments on behalf of the respective parties. *See id.* at 23-29 ("Opinions of the Complainants' Counsel"); *id.* at 29-31 ("Supplemental Opinions of the Respondents' Counsel").

25.   In the Award (defined herein), the Arbitration Panel expressly stated:

> It is worth noting that the parties to this case and their counsel have submitted to the Arbitration Panel quite many materials and

> opinions as to the facts and legal issues surrounding this case. These
> materials and opinions have all been kept in the dossiers of this case
> in the form of evidence, records, evidence examination opinions,
> counsel's opinions or explanations. The Arbitration Panel has
> perused and considered them all.

*Id.* at 31-32.

26.     At the hearing, Petitioners presented their claims for arbitration and the facts and

reasons upon which those claims were based, and the Arbitral Respondents put forth their defense.

*Id.* at 4.

27.     All parties explained their evidence, produced original evidentiary documents, and

answered questions raised by the Arbitration Panel in the discovery process. *Id.*

28.     After the hearing, Petitioners and the Arbitral Respondents submitted to the

Arbitration Court supplemental pleadings, evidence, and explanations regarding the Arbitration

claims. *Id.*

29.     Throughout the Arbitration, all documents and written notices pertaining to the case

were effectively served by the Arbitration Court on all parties according to the provisions of Article

8 of the Arbitration Rules. *Id.* at 5.

30.     On April 22, 2021, the Arbitration Panel entered its determination (the "Award")

based on the existing written submissions made by the parties and the facts found during the

hearing. *Id.*

31.     The Arbitration Panel's opinion was made "[a]ccording to the entire materials

submitted by the parties and the facts ascertained in the court hearing and based on the agreements

in the contracts and legal provisions concerned." *Id.* at 32.

32.     The Arbitration Panel noted that it "perused and considered" the materials and

opinions submitted by both parties in the case, and, "[s]hould any of them not be quoted or referred

4866-0064-8453

to" in its written opinion, "it does not mean that they [were] in any way neglected" by the

Arbitration Panel. *Id.*

> **E.**   **Petitioners' Arbitration Claims and the Opinions and Findings of the Arbitration Panel**

33.   In the Arbitration, Petitioners asserted seven arbitration claims:

>   i.   To enter into the determination that SMI Shengdian and Qin, "jointly and severally," pay Petitioners their respective equity acquisition prices;
>
>   ii.   To enter into the determination that SMI Shengdian and Qin immediately transfer their 5% equity in Run Yun to Petitioners;
>
>   iii.   To enter into the determination that SMI Shengdian and Qin, jointly and severally, pay each Petitioner RMB 225,000,000, or a total of RMB 675,000,000, in damages for delayed payment of the equity acquisition prices;
>
>   iv.   To enter into the determination that SMI Shengdian and Qin, jointly and severally, pay each Petitioner the returns on the security deposit placed by them;
>
>   v.   To enter into the determination that SMI International and Run Yun bear joint and several compensation liabilities for Petitioners' claims (i) and (iii) above;
>
>   vi.   To enter into the determination that the Arbitral Respondents jointly and severally indemnify Petitioners against the expenses incurred by Petitioners in conducting the Arbitration, including legal costs; and
>
>   vii.   To enter into the determination that the Arbitral Respondents bear all the arbitration fees for this case.

*Id.* at 15-16.

34.   The Arbitration Panel opined that the laws of China applied to the case. *Id.* at 32.

35.   The Arbitration Panel opined that the Capital Increase Agreements and the

Supplemental Agreement

>   are both true expression of intention of the parties, do not contravene mandatory provisions of China's laws and administrative regulation, and have been established and put into effect according

4866-0064-8453

to law, so they can serve as the bases for the Arbitration Panel to identify the rights and obligations of the parties on both sides.

*Id.*

36.   The Arbitration Panel found that Qin was the actual controller of Run Yun. *Id.* at 43.

37.   The Arbitration Panel made the following determinations:

   i.   With respect to Petitioners' first claim, SMI Shengdian and Qin shall jointly and severally pay equity acquisition prices to Petitioners to acquire the 3.12% equity held by each Petitioner in Run Yun. Specifically, SMI Shengdian and Qin shall pay the following amount of equity acquisition prices:

      1.   To First Petitioner Chuangtai Rongyuan: RMB 500,000,000 × (1 + 15% × n/360) – RMB 10,000,000, n = the number of days from May 8, 2017 to the date the equity acquisition price is paid in full;

      2.   To Second Petitioner Huihengying: RMB 500,000,000 × (1 + 15% × n/360) – RMB 10,000,000, n = the number of days from June 26, 2017 to the date the equity acquisition price is paid in full; and

      3.   To Third Petitioner Huirongsheng: RMB 500,000,000 × (1 + 15% × n/360) – RMB 10,000,000, n = the number of days from June 28, 2017 to the date the equity acquisition price is paid in full.

   ii.   With respect to Petitioners' second claim, SMI Shengdian and Qin shall transfer to Petitioners 5% of the equity in Run Yun, which shall be evenly distributed among the three Petitioners.

   iii.   With respect to Petitioners' third claim, SMI Shengdian and Qin shall jointly and severally pay RMB 150,000,000 in damages to each Petitioner for delayed payment of the equity acquisition prices;

   iv.   With respect to Petitioners' fourth claim, SMI Shengdian and Qin shall jointly and severally pay the following amounts as returns of the security deposits:

      1.   To First Chuangtai Rongyuan, RMB 1,000,000 for the period from May 9, 2017 to the date that such returns are paid up in their entirety, plus an annual rate of 9% of the base amount;

4866-0064-8453

    2. To Second Petitioner Huihengying: RMB 2,041,666.67 for the period from June 28, 2017 to the date that such returns are paid up in their entirety, plus an annual rate of 9% of the base amount;

    3. To Third Petitioner Huirongsheng: RMB 2,104,166.67 for the period from July 1, 2017 to the date that such returns are paid up in their entirety;

  v. With respect to Petitioners' fifth claim, SMI International and Run Yun shall undertake joint and several compensatory liabilities for SMI Shengdian's and Qin's failure to perform their obligations under determinations (i) and (iii).

  vi. The Arbitral Respondents shall jointly and severally compensate Petitioners for the expenses incurred in dealing with this case, including:

    1. To Petitioner Chuangtai Rongyuan: RMB 166,666 in legal costs, RMB 5,000 in property preservation costs, and RMB 140,000 in property preservation guarantee costs, for a total of RMB 311,666;

    2. To Petitioner Huihengying: RMB 166,667 in legal costs, and RMB 140,000 in property preservation guarantee costs, for a total of RMB 306,667;

    3. To Petitioner Huirongsheng: RMB 166,667 in legal costs, and RMB 140,000 in property preservation guarantee costs, for a total of RMB 306,667;

  vii. Of the arbitration fee worth RMB 14,481,468 for this case, 15% or RMB 2,172,220.20 shall be borne by Petitioners, while 85% or RMB 12,309,247.80 shall be borne by the Arbitral Respondents. As the arbitration fee has been paid in its entirety by Petitioners to the CIETAC, the Arbitral Respondents shall therefore pay 12,309,247.80 in arbitration fees to Petitioners to compensate for the arbitration fees advanced by Petitioners.

*Id.* at 60-61.

    38. The Award provided, "The foregoing amounts shall be paid by the [Arbitral] Respondents to [Petitioners] within 30 days of the issuance of these determinations." *Id.* at 61.

    39. The Award concluded, "These arbitral determinations shall be final and take effect as of the date of their issuance." *Id.*

    40. The Award disposes of every claim and issue in the Arbitration. *See* Petition ¶ 24.

4866-0064-8453

41.     The Award was issued on April 22, 2021 in Beijing. Lee Decl. Ex. B at 62.

**F.      The Instant Confirmation and Enforcement Proceedings**

42.     As of November 8, 2021, it is undisputed that none of the Arbitral Respondents

have paid any of the monetary damages assessed against the Arbitral Respondents in the Award.

*See* Petition ¶ 29.

43.     On November 8, 2021, Petitioners filed a Petition to Confirm and Enforce Foreign

Arbitral Award and for Entry of Judgment in the U.S. District Court for the Southern District of

New York. *See generally* Petition.

10

Dated: December 8, 2021
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Andrew C. Smith*
    Andrew C. Smith
    Geoffrey Sant
    Carol Lee
    31 West 52nd Street
    New York, New York 10019
    Tel: (212) 858-1000
    Fax: (212) 858-1500
    andrew.smith@pillsburylaw.com
    geoffrey.sant@pillsburylaw.com
    carol.lee@pillsburylaw.com

    *Attorneys for Petitioners Huzhou Chuangtai*
    *Rongyuan Investment Management*
    *Partnership, Huzhou Huihengying Equity*
    *Investment Partnership, and Huzhou*
    *Huirongsheng Equity Investment Partnership*

4866-0064-8453