UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

Huzhou Chuangtai Rongyuan Investment :
Management Partnership, Huzhou Huihengying :
Equity Investment Partnership, and Huzhou : 1:21:cv-09221-KPF
Huirongsheng Equity Investment Partnership, :
 :
  Petitioners, :
 :
   -v.- :
 :
Hui Qin, :
 :
   Respondent. :
 :

------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S
MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b) FOR
<u>RELIEF FROM SUMMARY JUDGMENT ORDER AND JUDGMENT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 3

  Qin's Address in the Supplemental Agreement ........................................................... 3

  CIETAC's First Attempt to Serve Qin ......................................................................... 4

  Petitioners Provide CIETAC With Alternative Addresses for Qin .............................. 4

  CIETAC's Second and Third Attempts to Serve Qin ................................................... 5

  CIETAC Forms a Panel of Arbitrators and Schedules The Hearing............................ 6

  Qin Learns of the Arbitration………… ………………………………………………… 7

  Qin Opposes Confirmation of the Award .................................................................... 9

  The Order .................................................................................................................... 11

LEGAL STANDARD.......................................................................................................... 11

ARGUMENT ...................................................................................................................... 11

  I.   Relief Is Required Because The Order Was Based Upon A Material Factual Error ........ 11

  II.  The Order And Judgment Should Be Vacated.................................................. 13

    A.  Notice to the North Alley Address Did Not Comply With Due Process ........................ 14

    B. Due to Defective Notice, Qin Was Prejudiced Because He Was Denied His Right to
      Appoint an Arbitrator.......................................................................................... 20

    C. Because Qin Was Improperly Denied the Right to Select an Arbitrator, the Order
      and Judgment Should Be Vacated ..................................................................... 21

CONCLUSION.................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………………….....17

*BG Grp., PLC v. Argentina*, 572 U.S. 25 (2014)……..………………………….…………………19

*Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29 (2d Cir.1994)………………..………….....17

*CEEG (Shanghai) Solar Science & Tech. Co., Ltd  v. Lumos LLC*,
  829 F.3d 1201 (10th Cir. 2016)...........................................................……………*passim*

*Cf. Serv. Emps. Int'l Union*, 2006 WL 692000………………………………………..…………..23

*CKR L. LLP v. Anderson Invs. Int'l, LLC*,
  525 F. Supp. 3d 518 (S.D.N.Y. 2021)………………………………………………………15

*Clark v. Tennessee Shell Co.*, No. 2:07-cv-1579, 2008 WL 1944124 (W.D. Pa. May 1, 2008)…...15

*Choice Hotels Int'l v. SM Prop. Mgmt., LLC*, 519 F.3d 200 (4th Cir. 2008) ...............................18

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
  403 F.3d 85 (2d Cir. 2005) ........................................................................ 14, 22, 23

*Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*,
  No. 03-4165-JAR, 2005 WL 1118130 (D. Kan. May 10, 2005) .................................. 15, 16, 19

*Hugs & Kisses, Inc. v. Aguirre*, 220 F.3d 890 (8th Cir. 2000)………………..……………….23

*In re 310 Assocs.*, 346 F.3d 31 (2d Cir. 2003) ............................................................. 11

*Intel Cap. (Cayman) Corp. v. Yi*,
  No. 15-mc-50406, 2015 WL 7075954 (S.D. Mich. Nov. 13, 2015)…………………………20

*Iran Aircraft Indus. v. Avco Corp., Inc.*, 980 F.2d 141 (2d Cir. 1992) ........................................ 14

*Lavaggi v. Republic of Argentina*,
  No. 04-cv-5068 (TPG), 2008 WL 4449347 (S.D.N.Y. Sept. 30, 2008) .................................. 11

*Lugo v. Artus*, No. 05-cv-1998, 2008 WL 312298 (S.D.N.Y. Jan. 31, 2008). ............................ 11

*Millers Mut. Fire Ins. Co. v. Pinnacle Underwriters Mgmt. Assocs., Ltd.*,
  No. CIV. 3:98-cv-0593-H, 2002 WL 424579 (N.D. Tex. Mar. 15, 2002)............................... 21

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ..................................... 3, 12, 15

*OOO FC Grand Cap. v.  Int'l  Pharm.  Svcs.  Ltd.*,
  No.  16-cv-6156  (JS) (SIL),  2017  WL 8813135  (E.D.N.Y. Dec.  15,  2017)……………..…20

*PoolRe Ins. Corp. v. Org. Strategies, Inc.*, 783 F.3d 256, 264 (5th Cir. 2015)……………..…....23

*Qingdao Free Trade Zone Genius Int'l Trading Co. v. P & S Int'l, Inc.*,
  No. 08-1292-HU, 2009 WL 2997184 (D. Or. Sept. 16, 2009)……………………………..…15

*Rodriguez v. City of New York,* 72 F.3d 1051 (2d Cir. 1995)……………………………..……14

*Ron Kingston Cont. Inc. v. Cahaba Disaster Recovery LLC*,
No. 3:13-cv-154, 2015 WL 1345281 (E.D. Ark. Mar. 23, 2015)……………………….…..…..19

*Serv. Emps. Int'l Union, Loc. 32BJ v. Coby Grand Concourse, LLC*,
No. 04-cv-9580 (CSH), 2006 WL 692000 (S.D.N.Y. Mar. 16, 2006)……………..…..……17

*Stef Shipping Corp. v. Norris Grain Co.*, 209 F. Supp. 249 (S.D.N.Y. 1962)…………...……..21

*Tianjin Port Free Trade Zone Int'l Trade Ser. Co., Ltd. v. Tiancheng Chempharm, Inc.*,
No. 17-cv-4130 (JS) (AYS), 2018 WL 2436990 (E.D.N.Y. May 30, 2018)…………....…...16

*Tianjin Port Free Trade Zone Int'l Trade Ser. Co., Ltd. v. Tiancheng Chempharm, Inc.*,
771 F. App'x 36 (2d Cir. 2019)…………..…………………………………………….…...16

*Townsend v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
No. 18-cv-5939 (AJN), 2019 WL 4511696 (S.D.N.Y. Sept. 19, 2019)………….…..…...20

## **Rules**

New York Convention Article V(1)(b)……………………………………………………*passim*

New York Convention Article V(1)(d)……………………...………………………..22, 23

Rule 60(b)…………………………………………………………….…….………1, 11

Respondent Hui Qin ("Qin") respectfully submits this memorandum of law, together with the accompanying Declarations of Xintong Zhang ("Zhang Decl.") and Peng Yun ("Peng Decl."), in support of his motion (the "Motion") pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for relief from the Court's September 26, 2022 Opinion And Order (the "Order"; ECF 44) and the resulting judgment entered on October 11, 2022 (the "Judgment"; ECF 46).

## PRELIMINARY STATEMENT

The Court has held that an arbitration award (the "Award") issued by the China International Economic and Trade Arbitration Commission ("CIETAC") is enforceable in the United States and entered an approximately $443 million judgment against Qin, a respondent in the arbitration.  The Court rejected Qin's arguments that the award is unenforceable because he did not receive proper notice of the arbitration, because (as the Court then understood the facts) notice was successfully delivered to Qin at a "North Alley Address" that "was specifically attributed to Qin in the Supplemental Agreement."  Order at 5; *see also id.* at 18 ("The third time CIETAC attempted to serve Qin, it mailed notice to the North Alley Address, which is the address attributed to Qin in the Supplemental Agreement.").[1]

Respectfully, the Court was mistaken: the "North Alley Address" at which (according to CIETAC) Qin was served in June 2020 is *not* the address attributed to Qin in the Supplemental Agreement.  Petitioners likely contributed to the Court's error (i) by *redacting* Qin's address from the copy of the Supplemental Agreement that they submitted to the Court,[2] and (ii) contending (without evidence) that service was "sent" to Qin's address in the Supplemental Agreement, while conveniently omitting the material fact that CIETAC's mailings to Qin at two addresses were

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Order.

[2] *See* ECF 7-9 (Chinese version of Supplemental Agreement) at §12.2; *see also* ECF 7-10 (English translation of Supplemental Agreement) at §12.2.

*returned as undelivered* before CIETAC purportedly effected service at a third address, the North Alley Address.[3]  Regardless of why this error occurred, the Order should be vacated because its holding concerning the validity of the notice provided to Qin (and hence, the enforceability of the award) is based upon a material factual error.

Upon reconsideration, the Court should find that the notice that CIETAC provided to Qin failed to comply with principles of due process under United States law (even if, as CIETAC determined, it complied with CIETAC's own rules).

Significantly, not only was Qin purportedly served at a different address than was attributed to him in the Supplemental Agreement, but the identified recipient at the "North Valley Address" where Qin was purportedly served (which was unilaterally provided to CIETAC by Petitioners after they commenced the arbitration) was **"Peng Yun," not Qin.**

On summary judgment, Petitioners offered **<u>no evidence</u>** indicating that sending notice to "Peng Yun" at the North Alley Address was reasonably calculated to apprise Qin of the arbitration in accordance with due process principles under United States law.  The overwhelming evidence pointed to the contrary.  Indeed, as his sworn affidavit indicates, Mr. Peng lives over 1,000 miles from the North Alley Address and is not Qin's agent; not surprisingly, Mr. Peng never received the documents that CIETAC supposedly sent to that address.  ECF 30, at ¶¶ 2-6.  There is no evidence that Qin ever agreed that he could be served through Mr. Peng.  There is simply not a shred of evidence in the record which suggests that Qin could be served at the North Alley Address.

The only "evidence" that Qin was validly served is circular: because Petitioners provided the North Valley Address to CIETAC, and CIETAC delivered documents to that address, service was completed.  ECF 7-1, at 5; 7-2, at 6.  Yet, as the United States Supreme Court has held, "due

---

[3] *See* ECF 35 at 16 ("Here, notice was sent to the very address Qin provided . . . in the controlling agreement") (citing a portion of the Award which summarizes the "Opinions of the Complainants' Counsel").

process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (cited in Order at 18). Here, CIETAC's purported notice upon Qin failed to meet the requirements of due process.

As a result of the defective notice, Qin was severely prejudiced because he was denied his right to nominate an arbitrator. Under these circumstances and consistent with the law in the Second Circuit and other Circuits, the Award is unenforceable in the United States. Upon reconsideration, the Order and Judgment should be vacated.

## BACKGROUND

### Qin's Address in the Supplemental Agreement

On March 30, 2020, Petitioners commenced a CIETAC arbitration (the "Arbitration") against Qin and other respondents. ECF 1, at ¶ 16. Petitioners filed the Arbitration pursuant to arbitration provisions in two agreements, a Capital Increase Agreement and a Supplemental Agreement. Qin was a party only to the Supplemental Agreement. *See* ECF 1, at ¶¶ 12-13.

Article 12 of the Supplemental Agreement provides in relevant part:

> **Article 12 Notification and Service**
>
> 12. 1 The parties to the agreement agree that any notice related to this Agreement shall be valid only if it is delivered in writing. Written forms include but are not limited to: Fax, express delivery, mail and e-mail. The above notices shall be deemed to have been delivered at the following time: When sent by fax, on the date when the fax is successfully sent and received by the recipient; when sent by express or by special person, on the day when the recipient receives the notice; when sent by registered mail, 7 working days after sending; when sent by e-mail, after the e-mail is successfully sent.
>
> 12.2 The notices shall be deemed as effectively served if they are delivered to the following places or sent to the following fax numbers or e-mail addresses: [ . . .]

3

**Actual controller:**
Party D: Qin Hui
Address: [hw:[4]] 18B, 14F, Building 1, Beili, Yijingyuan, Chaoyang
District, Beijing.
To:
Zip code:
Fax:
E-mail:

Zhang Decl., Ex. D; *Id.*, Ex. E, at §12.2.

Significantly, in the copy of the Supplemental Agreement that Petitioners submitted to this Court, Petitioners *redacted* the above address that is attributed to Qin.  ECF 7-9 at § 12.2; ECF 7-10, at § 12.2.  After the Order was issued, the Court ordered Petitioners to produce an unredacted copy of the Supplemental Agreement to Qin's counsel.  *See* ECF 48.

### CIETAC's First Attempt to Serve Qin

As the Court noted in its Order, "CIETAC attempted to serve the arbitration materials on Qin three times."  Order at 5.  In the first attempt, on May 26, 2020, CIETAC sent the notice of arbitration to Qin and other respondents via "express delivery," but the mailing was "returned by postal services."  ECF 7-2, at 6.  As the Court correctly noted, "[i]t is not clear from the record where CIETAC sent this initial mailing."  Order at n. 3.

### Petitioners Provide CIETAC With Alternative Addresses for Qin

On or about June 9 and June 15, 2020, CIETAC notified the Petitioners that the notice of arbitration that it had mailed to Qin was returned, and requested Petitioners to provide CIETAC with alternative addresses.  ECF 7-2, at 6.

---

[4] The reference to "hw" (which appears only in the English translation) is an abbreviation for "handwritten."

Thereafter, as the Award states (ECF 7-2), on June 12 and 16, 2020, CIETAC received "Letters of Confirmation" from Petitioners which "confirmed that the address for service of [Qin]" was one of two alternative addresses, including the following address (the "North Alley Address"):

> Peng Yun
> 9 Xiangjun North Alley
> Hujialou Street
> Chaoyang District
> Beijing

*See* ECF 7-2, at 6; *see also* Zhang Decl. Ex. C at 6.

The "Letters of Confirmation" that Petitioners sent to CIETAC were never disclosed to Qin and were not filed in this Court.

Significantly, "Peng Yun" is identified as the recipient for the North Alley Address. *See* ECF 7-2, at 6.[5] Nothing in the record before this Court explains how Petitioners identified the North Alley Address or the basis for their apparent belief that documents could be delivered to Qin through Peng Yun at this address. Further, **the North Alley Address is <u>not</u> the address attributed to Qin in the Supplemental Agreement**. *See* Zhang Decl., Ex. E at § 12.2.

**<u>CIETAC's Second and Third Attempts to Serve Qin</u>**

In or about June or July 2020, CIETAC attempted to serve Qin with the notice of arbitration at two alternative addresses provided by Petitioners. In the second attempt (at one of the new addresses), the documents sent to Qin "were returned again." *See* ECF 7-2 at 6. The Award states that a "third attempt" at service, this time to the North Alley Address, was "successful," but it does not say whether any person accepted delivery at this address or identify any such person. *Id.*

---

[5] Notably, Petitioners' English translation of the Award does not translate the Chinese word for "recipient" ("收件人"), which immediately precedes "Peng Yun" in the North Alley Address in the Award. *See* ECF 7-1, at 5.

On July 21, 2020, CIETAC sent a notice to all parties which recounted CIETAC's attempts to serve Qin and the other respondents.  ECF 37-1, at 3.  The notice indicated that CIETAC's first attempt to serve Qin on May 26, 2020 was "returned by the Post Office" and that, in June 2020, Petitioners provided CIETAC with two alternative addresses for Qin.  *Id*.  The notice said that a mailing directed to Qin at one of these alternative addresses was "returned," but that a mailing to the North Alley Address was "delivered."  *Id*. at 4.  The notice did not say who accepted delivery at the North Alley Address.  The notice indicated that henceforth, all arbitration papers would be sent to Qin at the North Alley Address.  *Id*.  The notice invited the parties to submit any objections to the method of service.  *Id*.   CIETAC received no response to this notice.  ECF 7-2, at 6.

Under CIETAC rules, a party is permitted to appoint an arbitrator (and recommend up to five candidates for the principal arbitrator) within fifteen days of receipt of the notice of arbitration; if the party fails to appoint an arbitrator, CIETAC must select the arbitrator.[6]  Thus, under CIETAC rules, to the extent Qin and the other respondents were validly served by the end of July 2020, they were required to jointly designate an arbitrator by August 15, 2020.

**CIETAC Forms a Panel of Arbitrators and Schedules The Hearing**

According to the Award, on August 24, 2020, CIETAC selected a panel of three arbitrators after the respondents "failed to reach a consensus on the selection of arbitrators."  ECF 7-2, at 6.  However, there is no indication in the Award that as of August 24, 2020, any of the respondents had appeared in the arbitration or knew of its existence.

On August 24, 2020, among other arbitration materials, CIETAC sent a "Notice of Procedures" to all parties which requested respondents to submit written pleadings together with evidentiary materials by September 14, 2020.  ECF 7-2, at 7.

---

[6] *See* ECF 28-1 (CIETAC Rules) at Articles 27 and 29.

In late September 2020, one of the three arbitrators selected by CIETAC resigned. *Id.* CIETAC later selected a replacement arbitrator. *Id.* On October 20, 2020, CIETAC notified all parties regarding the replacement of the arbitrator and set a hearing for November 12, 2020. *Id.*

**Qin Learns of the Arbitration**

As stated in his Declaration, Qin "first found out about the arbitration proceeding in or around late October 2020" from a former executive at Petitioners' parent company. ECF 33, at ¶ 35. In early November 2020, Qin retained counsel to represent him in the arbitration. *Id.*, ¶ at 36.

By letter dated November 10, 2020, Qin's counsel, Ms. Fang Liu, informed CIETAC that while respondents had received certain arbitration materials including a "notice of the hearing," they had not received "the application for arbitration, nor the related evidence" and thus it was "impossible" for respondents "to prepare an answer and attend the hearing." ECF 33-1, at 2. In response to this application, on November 11, 2020, CIETAC re-mailed the notice of arbitration and other arbitration materials to respondents and postponed the hearing to December 22, 2020. *See* ECF 37-2, at 5; ECF 33-7, at 3. According to the Award, this "re-mailing did not represent a process of re-service on the Respondents." ECF 7-2, at 7.

On November 13, 2020, Qin (through his counsel, Ms. Liu) received the notice of arbitration and other arbitration materials for the first time. Qin Decl. at ¶ 39.

On November 26, 2020, Ms. Liu submitted an application to CIETAC to reset the deadline for the respondents to select an arbitrator, because they did not receive the notice of arbitration until November 13, 2020. ECF 33-6, at 2. The application stated in relevant part:

> The Respondents received on Nov. 13, 2020 from [CIETAC] one copy of the relevant documents, including the notice of arbitration [. . .].
>
> Notwithstanding the statement by [CIETAC], that the relevant documents were sent to the addresses provided by the complainants,

the respondents did not receive the key documents for the case, such as the notice of arbitration. Furthermore, Second Respondent Mr. Hui Qin has been living in the US since 2019, making it impossible to receive the mailings from [CIETAC]. In view of the above, to ensure that the arbitration commission do a thorough investigation of the facts of the case, for the respondents to obtain the regular time allowed under the rules of arbitration, for the case to have a fair and just arbitration outcome, and **to guarantee the right of the respondents to appoint arbitrators** in accordance with the rules of arbitration and the agreements between the parties of the arbitration, the respondents, therefore, **request to set the date of its receipt of the notice of arbitration, Nov. 13, 2020, as the base for setting the deadlines for the selection of arbitrators**, and the submission of documents.

*Id*. (emphasis added).  The application also identified Ning Fei as respondents' selected arbitrator, and recommended five candidates for principal arbitrator.  *Id*.  In addition, the application objected to the qualifications and experience of the arbitrators that CIETAC had appointed.  *Id*.

On December 11, 2020, CIETAC denied the application in a two-page decision, on the basis that (according to CIETAC) all respondents (including Qin) had been served with the notice of arbitration and failed to jointly select an arbitrator within the prescribed fifteen day limit.  *See* ECF 33-7.  The December 11 decision notably does not explain how or why CIETAC accepted Petitioners' representation that Qin could be served though Peng Yun at the North Alley Address.

On December 21, 2020, Qin's counsel Ms. Liu submitted a brief to CIETAC entitled "Respondents' Objections to Arbitration Procedural Issues." ECF 33-8.  In this submission, respondents' counsel contended that Petitioners had failed to make "reasonable inquiries" before providing alternative service addresses to CIETAC, in violation of Article 8(3) of the CIETAC Arbitration Rules.  *Id*. at 2.  With respect to Qin, the submission contended in relevant part that:

The second respondent Mr. Qin Hui has been living in the United States since 2019 . . .

It should be pointed out in particular that sources open to the public show that the second respondent, Mr. Qin Hui, has had cases in court

8

> in the past two years, and has been represented by an attorney in the court proceedings. The complainant chose not to use such public information, nor to contact his legal counsel to verify the address for delivering the materials, but providing an undeliverable address on purpose.

*Id.* at 2-3.  The submission further noted that "[t]he recipient Peng Yun" – who is identified by Petitioners for the 9 North Alley Address – "is a long-term resident of Sichuan, and not located in the aforementioned address of Chaoyang District, Beijing."  *Id.* at 3.  The submission once again requested that CIETAC reset the deadline for respondents to select an arbitrator (and recommend up to five individuals to serve as principal arbitrator).  *Id.* at 6.

**Qin Opposes Confirmation of the Award**

In November 2021, Petitioners moved for summary judgment seeking confirmation of the Award.  *See* ECF 1.  Qin opposed the motion on numerous grounds, including that the Award was unenforceable under Article V(1)(b) of the New York Convention because Qin did not receive proper notice of the arbitration or the appointment of the arbitrator.  *See* ECF 28, at 19-29.  Qin submitted two sworn statements that are relevant to whether he received adequate notice of the arbitration: (1) an affidavit from Peng Yun (the identified recipient at the North Alley Address) (ECF 30),[7] and (2) a declaration from Qin (ECF 33).

In his affidavit, Peng Yun stated that he (i) has resided in Chengdu (which is 1,100 miles from Beijing) for twenty years, (ii) was not present in Beijing in June 2020 when CIETAC sent the notice of arbitration to the North Alley Address, (iii) did not receive the documents that were

---

[7] Petitioners objected to Mr. Peng's affidavit on the basis that it was not in the proper form for a declaration executed outside the United States and because of some discrepancies between the English and Chinese versions of the Affidavit.  ECF 35, at 13-14.  In order to address these issues (and in the interest of ensuring an adequate record), Mr. Peng has executed a Declaration attesting under penalty of perjury to the statements contained in his affidavit.  In addition, the discrepancies between the English and Chinese versions of his affidavit (which were the result of inadvertent errors) have been corrected.  Finally, Mr. Peng's affidavit referenced an annexed exhibit, but the exhibit was inadvertently not filed with this Court; that exhibit is attached to Mr. Peng's Declaration.

sent by CIETAC to that address, and (iv) has never been Qin's agent.  (ECF 30), at ¶¶ 4-6.  Mr.

Peng acknowledged that he had worked at a company that was a respondent in the Arbitration, but

stated that he had been terminated by that company in 2018.  *Id.*  Mr. Peng referenced a "proof of

mailing" from CIETAC's records of the Arbitration concerning the June 2020 delivery to the North

Alley Address, and noted that it does not say that he signed or accepted delivery of the package

from CIETAC.  *Id.*, at ¶ 4.  Indeed, the "proof of mailing" does not even list a name (or a signature)

for who received the package and does not list the address where the notice was delivered.  *See*

Peng Decl., Ex. C at 1 (listing "Beijing" as the delivery address).

In his declaration, Mr. Qin stated in relevant part:

> Petitioners knew that I had been living in the United States with my
> family since 2019 because I had regular phone contact with . . . the
> top executives of . . . parent companies of Petitioners [].
>
> None of the Respondents maintained any office at the North Alley
> Address in 2020.  Additionally, even if the North Alley address had
> been in use, which it was not, Mr. Peng Yun was not my agent, and
> he was never authorized to accept service of process on my behalf .
> . . It is my understanding that in or around June 2020, CIETAC
> attempted to serve me the Notice of Arbitration at the North Alley
> Address and the Building Address via postal service.  I never
> received the Notice of Arbitration at either address because neither
> was my address.

ECF 33, at ¶¶ 27-28.  Qin also disputed the authenticity of the address attributed to him in the

Supplemental Agreement (which he referred to as the "Building Address").[8]

In their reply brief on summary judgment, Petitioners contended that the North Alley

Address was "*associated with Qin*,"[9] but did not submit any evidence to support this statement.

_____

[8] Qin contended that the address attributed to him in the Supplemental Agreement was handwritten and that he did not write it into the agreement.  ECF 28 at 10; ECF 33, at ¶ 27.  Qin also explained that he had not lived at this address since 2003.  *Id.*  After the Court issued the Order, Petitioners alleged that Qin identified this address "as his residence" in a December 2020 divorce judgment.  ECF 50, at 8 (citing ECF 51-3).  Contrary to Petitioners' assertion, the divorce judgment states that Mr. Qin "is residing at" an address in "Old Westbury, NY."  ECF 51-3.
[9] ECF 35 (Reply Br.) at 10 (emphasis added).

**The Order**

On September 26, 2022, the Court issued its Order granting summary judgment to Petitioners based upon, among other things, its conclusion that CIETAC validly served Qin at the North Alley Address.  *See* Order at 5, 17-24.

## LEGAL STANDARD

Rule 60(b)(1) allows for relief from an order or judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  It grants a district court authority to vacate an order or judgment based on mistakes of fact or law.  *See, e.g., In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003); *Lugo v. Artus*, No. 05-cv-1998, 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008) ("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party when the judge has made a substantive mistake of law or fact in the final judgment or order.") (citations and quotations omitted); *Lavaggi v. Republic of Argentina*, No. 04-cv-5068 (TPG), 2008 WL 4449347, at *3 (S.D.N.Y. Sept. 30, 2008) ("Given that the judgment was based on a mistake as to the ownership of the bonds at the time of the decision, Rule 60(b)(1) offers sufficient basis to vacate the judgment.").

## ARGUMENT

### I.    RELIEF IS REQUIRED BECAUSE THE ORDER WAS BASED UPON A MATERIAL FACTUAL ERROR

In the Order, the Court stated that "[t]he North Alley Address was specifically attributed to Qin in the Supplemental Agreement."  Order at 5; *id.* at 18 ("The third time CIETAC attempted to serve Qin, it mailed notice to the North Alley Address, which is the address attributed to Qin in the Supplemental Agreement.").

11

The Court was mistaken: the "North Alley Address" at which (according to CIETAC) Qin was properly served in June 2020 is *not* the address that is attributed to Qin in the Supplemental Agreement.  The two addresses are listed below:

| Address Where CIETAC Delivered Notice | Address Attributed to Qin in Supplemental Agreement |
|---|---|
| **Peng Yun**<br>9 Xiangjun North Alley<br>Hujialou Street<br>Chaoyang District<br>Beijing[10] | **Party C: Qin Hui**<br>[ . . .]<br>Address: [hw:] 18B, 14F, Building 1, Beili, Yijingyuan, Chaoyang District, Beijing[11] |

The Court's mistake was material to its holding that the method by which CIETAC provided notice of the arbitration to Qin complied with due process under United States law.  As the Court explained, due process required "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections."  Order at 18 (citing *Mullane*, 339 U.S. at 314).  As the Court explained:

> The third time CIETAC attempted to serve Qin, it mailed notice to the North Alley Address, **which is the address attributed to Qin in the Supplemental Agreement.**  CIETAC also verified that the documents were duly served on Qin on that attempt.
>
> Mailing notice to Qin at this address was not unreasonable under the circumstances.  Although notice is a fact-specific inquiry, mailing notice to a party's known address is widely accepted as constitutionally sufficient.  At least one other Court in this Circuit has found that mailing arbitration documents to **an address listed in the underlying agreement** is sufficient notice under the New York Convention.

Order at 18 (citations omitted) (emphasis added).  Thus, the Court's (mistaken) understanding that CIETAC's third attempt to serve Qin was at the address attributed to him "*in the underlying*

---

[10] ECF 7-2, at 6; *see also* Zhang Decl. Ex. C at 6.

[11] Zhang Decl. Ex. E, at §12.2.

*agreement*" (*i.e.*, the Supplemental Agreement) was material to its holding that such notice was reasonably calculated to apprise Qin of the pendency of the arbitration.

By extension, the Court's mistake was also material to its holding that Qin was <u>not</u> denied the right to appoint an arbitrator.  As the Court explained:

> By not nominating an arbitrator within the timeframe contemplated by CIETAC's rules, Qin forfeited his right to do so.  The real issue here is not CIETAC's compliance with its own procedures, but rather Qin's alleged failure to receive notice of the pending arbitration.  After all, **if Qin did not know about the arbitration in July 2020, he could not have timely selected an arbitrator**.  But as explained in section B.2, *supra*, **the Court will not overturn CIETAC's finding that Qin was properly served in June 2020 and could have timely responded to the arbitration notice.**

Order at 22 (emphasis added).  Thus, the Court's holding that Qin "forfeited" his right to nominate an arbitrator was predicated on its conclusion that Qin was properly served in June 2020.  As the Court correctly observed, "if Qin did not know about the arbitration in July 2020, he could not have timely selected an arbitrator."  *Id.*

In light of the material error, the Court should reconsider the Order and Judgment.

## II.     THE ORDER AND JUDGMENT SHOULD BE VACATED

Upon reconsideration, the Court should address the following questions: (1) whether the notice that CIETAC provided to Qin complied with due process under United States law; (2) if there was such a due process defect, whether Qin was prejudiced by that defect, and (3) if Qin was prejudiced by that defect, whether that defect renders the Award unenforceable in the United States.

As explained below, the notice that CIETAC provided to Qin failed to comply with due process under United States law (even if it complied with CIETAC's rules).  As a result of the defective notice, Qin was severely prejudiced because he lost the ability to nominate an arbitrator.

Under these circumstances and consistent with the law in the Second Circuit and other Circuits, the Award is unenforceable in the United States.

### A.  Notice to the North Alley Address Did Not Comply with Due Process

In opposing summary judgment, Qin argued that the Award was unenforceable under Article V(1)(b) of the Convention, which allows a court to refuse enforcement if "[t]he party against whom the award was invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case."  ECF 28, at 15, 19-24.  As the Court recognized, Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process."  Order at 18 (citing *Iran Aircraft Indus. v. Avco Corp., Inc.*, 980 F.2d 141, 145 (2d Cir. 1992)) (quotation omitted).  Qin had the burden of demonstrating that notice of the arbitration failed to comply with due process.  *See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) ("The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies.").  Petitioners had the burden of showing that there is no genuine issue of material fact, including as to notice and due process.  *Rodriguez v. City of New York,* 72 F.3d 1051, 1060-61 (2d Cir. 1995) ("The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law.").

As discussed above, CIETAC's attempts to mail arbitration documents to Qin were returned as undeliverable twice, before CIETAC purportedly served Qin at the North Alley Address that Petitioners unilaterally provided to CIETAC.  *See* ECF 7-2.[12]  Accordingly, Qin's defense under Article V(1)(b) turns on the validity of notice to the North Alley Address.

---

[12] There is no basis for Petitioners' contention that "Qin was properly served *several times*."  ECF 35, at 9 (emphasis added).  CIETAC determined that Qin was properly served only <u>once</u>, at the North Alley Address; the Award states

Qin met his burden of demonstrating that notice at the North Alley Address failed to satisfy due process requirements under United States law.

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. 306 at 314. Federal courts applying Article V(1)(b) have held foreign arbitral awards unenforceable in the United States where the party against whom enforcement is sought was denied due process. *See, e.g.*, *CEEG (Shanghai) Solar Science & Tech. Co., Ltd v. Lumos LLC*, 829 F.3d 1201, 1207 (10th Cir. 2016) (holding CIETAC award unenforceable under the Convention because the "Chinese-language notice" of the arbitration "was not reasonably calculated to apprise [respondent] of the proceedings"); *Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*, No. 03-4165-JAR, 2005 WL 1118130, at *9 (D. Kan. May 10, 2005) (denying confirmation of CIETAC award where, *inter alia*, the record did not reflect notice that complied with due process); *Qingdao Free Trade Zone Genius Int'l Trading Co. v. P & S Int'l, Inc.*, No. 08-1292-HU, 2009 WL 2997184, at *5 (D. Or. Sept. 16, 2009) (declining to enforce Chinese arbitral award where "the documents and circumstances . . . do not demonstrate that [respondent] received notice reasonably calculated, under all the circumstances, to apprise [respondent] of the pendency of the arbitration and afford them an opportunity to be heard").

In the Order, the Court held that mailing notice to Qin at the North Alley Address "was not unreasonable under the circumstances" because the Court mistakenly understood that this was

---

that CIETAC's prior two attempts to serve Qin at other addresses failed when the documents were returned. ECF 7-1, 7-2. To the extent Petitioners are contending that due process was somehow satisfied by CIETAC's *attempts* to deliver documents to Qin at these other addresses, any such contention fails given that the documents were returned to CIETAC as undelivered. *See, e.g.*, *CKR L. LLP v. Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 524–25 (S.D.N.Y. 2021) (rejecting petitioner's proposal to serve respondent by mail at respondent's office address in Dubai, because "petitioner's first attempt to effectuate service at that address was unsuccessful" in that "the Papers were not delivered" and accordingly "such service would not be reasonably calculated to provide notice to [respondent]"); *Clark v. Tennessee Shell Co.*, No. 2:07-cv-1579, 2008 WL 1944124, at *1 (W.D. Pa. May 1, 2008) (service was "not reasonably calculated to provide 'actual notice'" where "mailings to the last-known business address [were] unclaimed").

address was Qin's "known address" that was "listed in the underlying agreement."  Order at 18.

Upon reconsideration, and after correcting the record to reflect the fact that the North Alley

Address (where CIETAC purportedly succeeded in serving Qin) was **not** the address specified in

the Supplemental Agreement, Petitioners' summary judgment motion should have been denied

given the lack of evidence that notice to the North Alley Address was reasonably calculated to

apprise Qin of the arbitration.  *See Guang Dong Light Headgear Factory Co.*, 2005 WL 1118130,

at \*9 (denying motion for summary judgment seeking confirmation of CIETAC award where, *inter*

*alia*, there was a "genuine issue of material fact as to whether [respondent] received adequate

notice" of the arbitration and the appointment of the arbitrator).[13]

In opposing summary judgment, Qin submitted evidence which refuted the notion that

notice to the North Alley Address was reasonably calculated to apprise him of the arbitration.

Qin's evidence included an Affidavit from Peng Yun, whom Petitioners had identified to

CIETAC as the recipient at the North Alley Address.  ECF 30.  In order for a notice addressed to

Peng Yun to have been reasonably calculated to apprise Qin of the arbitration, there must be some

reasonable basis in the record to conclude that Mr. Peng was Qin's agent or (at a minimum) that

Qin could be contacted through Mr. Peng.  However, in his affidavit, Peng Yun denied ever being

Qin's agent, explained that he lives over 1,000 miles from the North Alley Address and was not in

---

[13] The Court cited *Tianjin Port Free Trade Zone Int'l Trade Ser. Co., Ltd. v. Tiancheng Chempharm, Inc.*, No. 17-cv-4130 (JS) (AYS), 2018 WL 2436990 (E.D.N.Y. May 30, 2018) for the proposition that "mailing arbitration documents to an address listed in the underlying agreement is sufficient notice under the New York Convention."  Order at 18. Critically, in *Tianjin Port*, CIETAC mailed arbitration documents to an address provided in the underlying agreement, and several of those documents (*including the notice of arbitration*) were successfully delivered.  *See Tianjin Port,* 2018 WL 2436990, at \*3-4.  Further, CIETAC also sent documents to an address that Tianjin provided with the New York Secretary of State, and those documents were not returned.  *Id.* at \*4, n. 2.  The Second Circuit affirmed this decision, noting in relevant part that CIETAC sent the arbitration papers to an "address that Tiancheng has on file with the New York Department of State" and that "notice mailed directly to an entity is sufficient to afford it due process." *Tianjin Port Free Trade Zone Int'l Trade Ser. Co., Ltd. v. Tiancheng Chempharm, Inc.*, 771 F. App'x 36, 37 (2d Cir. 2019).  Here, Qin is an individual, not an entity, and there is no allegation that notice was sent to an address that he was required by law to designate for service of process.  Nor is there any evidence that notice was successfully delivered to the address attributed to Qin in the Supplemental Agreement.

Beijing during June 2020, and stated that he never received the documents that CIETAC supposedly sent to that address.  Peng Decl., Ex. B., at ¶ 8.  Mr. Peng also attached a "proof of mailing" from the record of the CIETAC arbitration concerning the June 2020 delivery to the North Alley Address, and noted that it does not say that he signed or accepted delivery of the package from CIETAC.  *Id.*, at ¶ 4; Peng Decl. Ex. B.

Qin also submitted his own declaration, in which he denied receiving the mailing from CIETAC to the North Alley Address.  ECF 33.  Mr. Qin swore that he had been living in the United States since 2019, and that Petitioners had actual knowledge of that fact since Qin was in direct contact with executives of their parent company.  *Id.*, at ¶ 27.  Qin denied that the North Alley Address was his address, and denied that Peng Yun was his agent.  *Id.*, at ¶ 28.  Qin stated that he did not learn of the arbitration until late October 2020, from a former executive who worked at Petitioners' parent company.  *Id.*, at ¶ 35.

The sworn statements from Peng and Qin plainly raised a material issue of fact concerning whether the notice addressed to Peng Yun at the North Alley Address was reasonably calculated to apprise Qin of the arbitration.[14]

In response, far from rebutting the evidence that Qin presented on the reasonableness of such notice, Petitioners offered **__no evidence__** indicating that sending notice to "Peng Yun" at the North Alley Address was reasonably calculated to apprise Qin of the arbitration.  Petitioners merely reiterated the fact that *CIETAC* had concluded that notice to that address was proper.  *See*

---

[14] In evaluating whether a genuine issue of material fact exists regarding the reasonableness of the notice to Qin, the Court is required to draw all reasonable inferences in Qin's favor.  *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (If the court finds "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should be denied); *Serv. Emps. Int'l Union, Loc. 32BJ v. Coby Grand Concourse, LLC*, No. 04-cv-9580 (CSH), 2006 WL 692000, at *2–3 (S.D.N.Y. Mar. 16, 2006) (when "determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party").

ECF 35, at 15-16.   Yet Petitioners were the ones who unilaterally provided that address to CIETAC.   ECF 7-2 at 6.   Petitioners failed to submit any evidence to this Court explaining why they provided the North Alley Address to CIETAC or the basis for their apparent belief that documents could be delivered to Qin *through Peng Yun* at this address.

In opposing this Motion, Petitioners may renew their contention that the Court must defer to CIETAC's determination that service upon Qin was valid.   Indeed, the Court held that "[t]o the extent that Qin challenges CIETAC's conclusion that the third attempt at service complied with the arbitration rules . . . the Court defers to the panel's conclusion that 'all documents and written notices pertaining to this case have been effectively served by [CIETAC] on all of the parties according to provisions of Article 8 of the Arbitration Rules."   Order at 19 (quoting ECF 7-2 at 9).

However, on this Motion, Qin's arguments concern a due process defect *under United States law*; Qin is not challenging CIETAC's determination that he received proper notice *under CIETAC's rules*.   Significantly, where (as here), notice of an arbitration fails to comply with due process, federal courts may decline enforcement of an award even if such notice complied with the arbitral institution's notice procedures.   *See, e.g.*, *CEEG*, 829 F.3d at 1207, n. 2, n. 3 (holding CIETAC award unenforceable under the Convention given that notice of the arbitration did not comply with due process under United States law, even though CIETAC's rules permitted the arbitration to proceed in Chinese and the parties' sales contract did not require arbitration proceedings to be in English); *Choice Hotels Int'l v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 205-08 (4th Cir. 2008) (affirming vacation of arbitral award where notice was not sent to respondents' "Designated Representative" as provided in parties' agreement, notwithstanding arbitrator's conclusion that respondents received "due notice by mail in accordance with the Rules of the American Arbitration Association" and that "[p]roper service" of the demand for arbitration was

effectuated); *Ron Kingston Cont. Inc. v. Cahaba Disaster Recovery LLC*, No. 3:13-cv-154, 2015 WL 1345281, at *3 (E.D. Ark. Mar. 23, 2015) (denying motion to confirm domestic arbitration award where there was "no evidence that [respondent] knew about and/or intentionally failed to participate in the arbitration," notwithstanding that the American Arbitration Association's "notice requirement were met in this case"); *Guang Dong Light Headgear Factory Co.*, 2005 WL 1118130, at *9 (finding "genuine issue of material fact as to whether [respondent] received adequate notice of an arbitration," notwithstanding that petitioner submitted "an affidavit . . . from . . . CIETAC stating that it provided [respondent] with notice of the arbitration proceeding and that it received a signed return receipt indicating that [respondent] received this notice").[15]

The due process defects in the notice to Qin in this case are magnified by the following: (i) service upon Qin was purportedly effected at a *different address* from the notice address identified in Article 12 of the Supplemental Agreement, which requires "any notice" to be sent to the addresses defined therein, (ii) Petitioners unilaterally provided CIETAC with a service address (the North Alley Address) which did *not identify Qin as the recipient*, (iii) Peng and Qin both denied that Peng was Qin's agent, and (iv) Qin's unrebutted testimony that Petitioners knew that Qin was living outside of China when they provided CIETAC with the North Alley Address. *See supra*, at 3-5, 9-10, 16-17.

Petitioners have failed to cite any case finding that due process was satisfied in circumstances such as these.[16]

---

[15] The Court noted that "the fact that Qin contacted CIETAC to request additional copies of the arbitration documents . . . suggests that he was aware of the proceeding." Order at 19.  However, Qin contacted CIETAC on November 11, 2020, *over fourth months after* CIETAC's supposedly successful service of him at the North Alley Address in June 2020.  *See* Award at 3.  As Qin explained in his Declaration, he independently learned of the arbitration in or about late October 2020, from a former executive of Petitioners' parent company.  As explained below, Qin was prejudiced by the deficient notice that was provided at the outset of the arbitration in or about June 2020.

[16] *See* ECF 35, at 9-16 (citing cases).  For example, Petitioners contend that under *BG Grp., PLC v. Argentina*, 572 U.S. 25, 36 (2014), "[e]ffective service in an arbitration is a procedural issue decided by 'arbitrators, not courts.'" ECF 35 at 9.  Petitioners omit the fact that *BG Grp* does not address due process; moreover, as discussed above, on

### B. Due to Defective Notice, Qin Was Prejudiced Because He Was Denied His Right to Appoint an Arbitrator

As noted above, under CIETAC rules, once Qin received notice of the Arbitration, he (together with other respondents) was allowed fifteen days to jointly nominate an arbitrator and make recommendations regarding the principal arbitrator. *See supra*, at 6, 8. However, because CIETAC's attempt to notify Qin at the North Alley Address in June 2020 was deficient, Qin did not receive notice of the arbitration at that time (including notice that he had a set amount of time to choose an arbitrator) and thus he missed the deadline to appoint an arbitrator, which expired in or about July 2020.

Because Qin did not receive timely notice of the arbitration, he was unable to exercise his right to select an arbitrator. As the Court acknowledged in the Order, "**if Qin did not know about the arbitration in July 2020, he could not have timely selected an arbitrator**." Order at 22. On or about November 11, 2020 (shortly after learning of the existence of the Arbitration), Qin appeared in the Arbitration through counsel and immediately requested a re-setting of arbitration deadlines, including the deadline to appoint an arbitrator. CIETAC denied this request. ECF 33-1.

---

this Motion, Qin is not challenging CIETAC's application of its own rules, but rather whether the notice that he received satisfied due process standards under United States law. Petitioners' other cited cases are inapposite. *See, e.g., Townsend v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., No. 18-cv-5939 (AJN), 2019 WL 4511696, at \*3 (S.D.N.Y. Sept. 19, 2019) (denying petitioner's motion to vacate FINRA award, where petitioner never appeared in the arbitration despite "admit[ting] that he received" a notice from FINRA stating that it had not received petitioner's answer to the arbitration demand and petitioner "never assert[ed] that prior to [the date when he received the FINRA notice] he was actually unaware of the arbitration proceeding against him"); *id.* (holding that petitioner did not meet his burden of showing that his "*receipt of notice*" from FINRA was "so insufficient as to render the award fundamentally unfair") (emphasis added); *Intel Cap. (Cayman) Corp. v. Yi*, No. 15-mc-50406, 2015 WL 7075954, at \*4 (S.D. Mich. Nov. 13, 2015) (rejecting arbitral respondent's claims of insufficient notice where the notice of arbitration was sent to the address defined in the parties' agreement *and* "the arbitrator made a reasonable inquiry into the Respondent' whereabouts, including hiring a consultant to find his address and-emailing him, although [respondent] failed to read the email prior to the arbitration proceedings"); *OOO FC Grand Cap. v. Int'l Pharm. Svcs. Ltd.*, No. 16-cv-6156 (JS) (SIL), 2017 WL 8813135, at \*7 (E.D.N.Y. Dec. 15, 2017), *report and recomm. adopted*, 2018 WL 879027 (E.D.N.Y. Feb. 14, 2018) (granting default judgment against respondent in arbitration, finding that notice of arbitration satisfied due process standards because arbitral tribunal found that adverse party "submitted evidence that it [took] measures for reasonable inquiries about the address of [respondent]," and "the tribunal noted that attempts were made to deliver arbitration materials to [respondent] at three different addresses— all of which were listed in the subject agreements—on multiple occasions and thus, deemed such materials received pursuant to applicable [arbitral institution] rules").

There is no question that Qin was prejudiced because he was unable to nominate an arbitrator. *See CEEG*, 829 F. 3d at 1207-08 (holding award unenforceable where defective notice caused respondent "substantial prejudice" by causing it to miss a deadline to appoint an arbitrator); *Millers Mut. Fire Ins. Co. v. Pinnacle Underwriters Mgmt. Assocs., Ltd.*, No. CIV. 3:98-cv-0593-H, 2002 WL 424579, at *1 (N.D. Tex. Mar. 15, 2002) (granting stay of arbitration where arbitrator selected by the parties could not travel for 4-6 weeks to oversee arbitration, stating that "[t]he situation here invokes the 'valuable' right to select an arbitrator"); *Stef Shipping Corp. v. Norris Grain Co.*, 209 F. Supp. 249, 253 (S.D.N.Y. 1962) ("The Right to appoint one's own arbitrator [] is of the essence of tripartite arbitration[.]").

Indeed, given the critical importance of arbitrator selection (and Qin's position that the arbitrators selected by CIETAC lacked relevant experience), Qin's counsel renewed Qin's request to be permitted to appoint an arbitrator. On November 26, 2020, Qin's counsel informed CIETAC that respondents had selected Mr. Ning Fei as their arbitrator, and recommended five candidates for principal arbitrator. Yet the arbitrators refused to entertain this selection, on the basis that the deadline to nominate arbitrators had passed. *See supra*, at 8.

### C. Because Qin Was Improperly Denied the Right to Select an Arbitrator, the Order and Judgment Should Be Vacated

Given that (for the reasons discussed above) notice of the Arbitration to Qin did not comply with due process principles under United States law, Qin met his burden of establishing that he was "*not given proper notice of the appointment of the arbitrator or of the arbitration proceedings []*" within the meaning of Article V(1)(b) of the Convention. Under the circumstances, the Order and Judgment should be vacated because the defective notice caused Qin to miss the deadline to nominate an arbitrator (and recommend up to five candidates for the principal arbitrator).

21

The Tenth Circuit's decision in *CEEG* is directly on point.  In that case, the respondent, an American company based in Colorado, received a Chinese language document from CIETAC and missed the deadline to appoint an arbitrator because it did not understand that the document was a notice of arbitration.  The Tenth Circuit held the resulting CIETAC award unenforceable under the Convention given that the Chinese language notice did not comply with due process under United States law, even though CIETAC's rules permitted the arbitration to proceed in Chinese.  As the Tenth Circuit reasoned, where defective notice causes a respondent to miss a deadline to appoint an arbitrator, the ensuing arbitration is fatally tainted:

> Hindering the right to participate in the panel-selection process is not a minor procedural misstep.  The arbitral tribunal determines the parties' rights with virtually no possibility of appeal or review . . . We agree with the district court that **depriving [respondent] of the right to participate in appointing the arbitral tribunal itself evidences substantial prejudice.**

*CEEG*, 829 F. 3d at 1207-08 (emphasis added).

The Second Circuit's decision in *Encyclopedia Universalis* also strongly supports Qin's arguments.  *See Encyclopedia Universalis S.A.*, 403 F.3d 85.  In *Encyclopedia Universalis*, the arbitration agreement required two party-appointed arbitrators to select a third arbitrator; if they failed to agree on the third arbitrator, an arbitral institution would appoint one.  The Second Circuit found that the arbitral institution appointed a third arbitrator even though there was "no evidence that the parties attempted to agree upon a third arbitrator []."  *Id.* at 91.  The Second Circuit affirmed the district court's refusal to confirm the arbitral award because the composition of the arbitral panel was not in accordance with the parties' agreement.  As the Second Circuit stated:

> **[T]he issue of how the third arbitrator was to be appointed is more than a trivial matter of form**. Article V(1)(d) of the New York Convention itself suggests the importance of arbitral composition, **as failure to comport with an agreement's requirements for how arbitrators are selected is one of only**

22

> **seven grounds for refusing to enforce an arbitral award**. As to the complaint that this result exalts form over substance, at the end of the day, we are left with the fact that the parties explicitly settled on a form and the New York Convention requires that their commitment be respected.

*Encyclopedia Universalis SA*, 403 F.3d at 91 (emphasis added).

Here, as in *Encyclopedia Universalis S.A.*, the process by which Qin was notified of the arbitration (and hence, of his deadline to nominate an arbitrator and recommend candidates for the principal arbitrator) directly impacted arbitrator selection and is thus "more than a trivial matter of form." *Id*. CIETAC purported to serve Qin at an address not contained in the parties' agreement, in a manner that failed to comply with due process under United States law. Notwithstanding that notice defect, CIETAC started the clock on Qin's time to appoint an arbitrator, which ran out before Qin actually learned of the Arbitration. After Qin belatedly learned of the Arbitration, CIETAC refused Qin's repeated requests to reset arbitrator selection deadlines. Thus, due to defective notice, Qin's ability to participate in arbitrator selection was eviscerated. Accordingly, under Article V(1)(b) of the Convention, the Award is unenforceable in the United States.[17]

In its Order, the Court held that *CEEG* and *Encyclopedia Universalis* do not compel a ruling in Qin's favor. Respectfully, on reconsideration (after correcting the Court's mistaken understanding that CIETAC served Qin at the address contained in the Supplemental Agreement), the Court should reconsider the import of these cases.

---

[17] Although Qin's arguments on this Motion are framed under Article V(1)(b) of the Convention (which concerns due process defects), it should be noted that Qin's due process defense overlaps with Article V(1)(d), which addresses defects in the process by which arbitrators were selected. Federal courts have repeatedly declined to enforce arbitration awards where there was a procedural defect that affected arbitrator selection. *Cf. Serv. Emps. Int'l Union*, 2006 WL 692000, at *4-5 ("Case law in this Circuit supports vacating an arbitration award where the arbitrator acted without authority because he was not selected in accordance with the methods specified in the parties' agreement."); *see also PoolRe Ins. Corp. v. Org. Strategies, Inc.*, 783 F.3d 256, 264 (5th Cir. 2015) (affirming vacation of arbitral award where arbitrator was not "selected according to contract specified method"); *Hugs & Kisses, Inc. v. Aguirre*, 220 F.3d 890, 893–94 (8th Cir. 2000) (award could not be confirmed as "appellants did not agree on the arbitrator or give [claimant] the power to unilaterally choose one").

The Court distinguished *CEEG*, reasoning that "[t]he Tenth Circuit refused to confirm the arbitral award, in part because the Chinese-language mailing directly contravened the parties' explicit agreement that any arbitration stemming for their contract would be conducted in English." Order at 24.  The Court concluded that "*CEEG* is a clear example of disregard for the rules the parties agreed would govern their dispute," and that "CIETAC followed its rules governing the appointment of arbitrators." *Id.*

On this Motion, however, the Court should consider that the notice provided to Qin was *not* in accord with the Supplemental Agreement (as the Court mistakenly understood).  This fact, *when combined with the evidence that notice at the North Alley Address was not reasonably calculated to apprise Qin of the Arbitration*, compels a different application of *CEEG*.[18]  Indeed, the Tenth Circuit made clear that its holding "does not rely on the conclusion that the [parties' sales contract] was bound by the terms of the [co-branding agreement]" which required that all notices be in English.  *See CEEG*, 829 F.3d at 1207, n. 2.  Rather, the Tenth Circuit held that the notice violated due process.  *See id.* at 1207 ("We conclude that the Chinese-language notice was not reasonably calculated to apprise [respondent] of the proceedings."); *id.* at n. 3 (rejecting petitioner's argument that "CIETAC, and not [petitioner], sent the arbitration notice" in Chinese, because petitioner "cannot avoid responsibility for insufficient notice by arguing that it assigned to a third party the duty to ensure that the notice was reasonably calculated to apprise [respondent] of the proceedings").  Here, as in *CEEG*, Petitioners cannot escape responsibility for insufficient notice, particularly given that they provided the North Valley Address to CIETAC.  *See also supra*, at 18-19 (citing cases denying confirmation of arbitral awards due to due process defects).

---

[18] Further, as discussed in Section II-A above, Qin is not challenging CIETAC's determination that notice complied with *CIETAC rules*, but rather that notice was inconsistent with due process under United States law.

The Court distinguished *Encyclopedia Universalis* on the basis that CIETAC did not skirt its own procedures, given that Qin was given "the full fifteen days provided by [CIETAC] rules before appointing the arbitral panel."  Order at 23.  For the reasons discussed above, however, the notice that CIETAC provided to Qin was inconsistent with due process under United States law. On reconsideration, and consistent with the Article V(1)(b) of the Convention and the caselaw cited above, this Court should decline to enforce the Award against Qin because he was prejudiced by a due process violation, regardless of whether the arbitral procedure complied with CIETAC's own rules.

## CONCLUSION

Qin respectfully requests that the Court issue an order granting the Motion and vacating the Order and Judgment.

November 8, 2022
New York, New York

SEIDEN LAW GROUP LLP

By: ___/s/ Amiad Kushner_____
     Amiad Kushner
     Xintong Zhang
     Andrew Sklar
     322 Eighth Ave, Suite 1704
     New York, NY 10001
     646-766-1914
     akushner@seidenlawgroup.com
     xzhang@seidenlawgroup.com
     asklar@seidenlawgroup.com

     *Counsel for Respondent Hui Qin*

25