# EXHIBIT F

由此

HCMP2586/2009

**IN THE HIGH COURT OF THE**
**HONG KONG SPECIAL ADMINISTRATIVE REGION**
**COURT OF FIRST INSTANCE**

MISCELLANEOUS PROCEEDINGS NO. 2586 OF 2009

-------------------------

IN THE MATTER of 261,473,945 ordinary shares of SMI Publishing Group Limited under the name of Strategic Media International Limited

and

IN THE MATTER of a Loan Agreement dated 23 April 2008

and

IN THE MATTER of a Share Charge dated 23 April 2008

-------------------------

BETWEEN

BILLION WEALTH GROUP LIMITED Plaintiff

and

STRATEGIC MEDIA INTERNATIONAL LIMITED Defendant

--------------------------

Before : Hon Fok J in Chambers (Open to Public)

Date of Hearing : 22 April 2010

Date of Judgment : 3 May 2010

由此



## JUDGMENT

*Introduction*

1. The plaintiff seeks summary disposal of its claim in this action commenced by originating summons dated 14 December 2009. For its part, the defendant contends that there are substantial and *bona fide* disputes of fact such that it is inappropriate for summary judgment to be granted.

*The procedure and applicable test*

2. There is no dispute between the parties that the court has power at the hearing of an originating summons under RHC O.28 r.4 to dispose of the action summarily where there are no triable issues.

3. As Ma J (as he then was) held in *Wing Hang Bank Ltd v Liu Kam Ying & Ors* [2002] 2 HKC 57 at §10 :

> "… The burden in summary judgment applications under the originating summons procedure is on the plaintiff to justify its entitlement to summary judgment. However, once this is *prima facie* demonstrated on the evidence, it is then up to the defendant to show that he does have a defence or defences to the claim. In this way, there may in practice be little difference between an application for summary judgment in originating summonses and an application for summary judgment under RHC, Order 14."

4. And it is trite that on a summary judgment application, the court simply has to determine two questions : firstly, whether what the defendant says is believable as opposed to whether its version of events is

to be believed; and secondly, if it is, whether what the defendant says amounts to an arguable defence in law.

5. Whether a party's assertions are believable is a question to be answered not by taking the assertions in isolation but by taking them in the context of so much of the background as is either undisputed or beyond reasonable dispute : *per* Deputy Judge To (as he then was) in *Ip Kam Wah v Fair City Group Ltd* [2005] 4 HKLRD 168 at §8.

*The plaintiff's claim*

6. The plaintiff claims that, by a loan agreement in writing dated 23 April 2008 ("the Loan Agreement"), it agreed to provide a term loan of HK$60 million to SMI Publishing Group Limited ("SMI").

7. Clause 3.1(d) of the Loan Agreement provided that the plaintiff :

> "… shall not be obliged to make the Advance to [SMI] unless it shall have received the Share Charge duly executed under seal by the [defendant] together with all documents required pursuant thereto."

8. As required by this condition precedent, the defendant executed a share charge dated 23 April 2008 ("the Share Charge") in favour of the plaintiff creating, on its face, a first fixed charge over 261,473,945 shares of SMI beneficially owned by the defendant ("the Shares") as security for the loan.

9. The plaintiff executed the Loan Agreement and Share Charge in reliance on board minutes of the defendant dated 22 April 2008

apparently signed by Mr Qin Hong and Mr Qin Hui, its directors. Those board minutes recorded a resolution unanimously passed by the directors approving the entry into and execution of the Share Charge and certain deeds in favour of the plaintiff and authorising a Mr Kung Yiu Fai ("Kung") to execute and do all things necessary to give effect to them.

10. On 24 April 2008, in compliance with the listing rules then in force, SMI issued a public announcement signed by its executive director Mr Wang Fei giving details of the Loan Agreement and Share Charge.

11. After the execution of the Share Charge, the plaintiff requested that the Shares, which had previously been held by Lamtex Securities Limited on the instructions of Mr Qin Hui, be transferred to a broker nominated by it, namely Kingston Securities Limited. In or around May to June 2008, the Shares were transferred from Lamtex to Kingston.

12. The plaintiff subsequently discovered, in about late May to early June 2008, that SMI had previously obtained a loan from a Mr Ma Hing Sum ("Mr Ma"), which was secured by a charge created by the defendant in February 2008 over 242,583,315 shares of the defendant ("the Earlier Charge").

13. Clause 13.1 of the Loan Agreement provided :

> "Each of the following events and circumstances shall be an Event of Default :
>
> …
>
> (c) any representation or warranty made or deemed to be made by [SMI] or any Security Party in or in connection with any

> Transaction Documents to which he/it is a party proves to have been incorrect or misleading in any respect reasonably considered by the [plaintiff] to be material;"

14. The Share Charge was one of the transaction documents as defined under the Loan Agreement and the term Security Party was defined to include the defendant.

15. Two of the representations and warranties in the Share Charge (at clause 4.1) were that :

> "(a) [the defendant] is the legal and beneficial owner of the Charged Shares free and clear of all Charge;
>
> …
>
> (c) during the continuance of this Deed, [the defendant] has not granted and will not grant in favour of any other person any interest in or any option or other rights in respect of any of the Charged Shares;"

16. The plaintiff formed the view that the existence of the Earlier Charge constituted an event of default under clause 13.1 of the Loan Agreement.

17. On 9 September 2009, the plaintiff's solicitors made written demand on SMI for the immediate repayment of all outstanding sums due under the Loan Agreement. On the same date, they also wrote to the defendant declaring that, pursuant to clause 6.1 of the Share Charge, all security under the Share Charge was immediately enforceable and requested the defendant :

(1) to provide an undertaking not to deal with the Shares;

(2) to sign proxies in favour of the plaintiff to attend and vote in all general meetings of SMI; and

(3) to instruct Kingston to accept and act on all instructions of the plaintiff in respect of the Shares.

18. Since none of the plaintiff's demands referred to in the preceding paragraph were complied with, the plaintiff issued the originating summons in this action on 14 December 2009.

19. I am satisfied that the plaintiff has discharged the initial burden on it to show *prima facie* on the evidence that it is entitled to judgment on its claim and it therefore falls to consider whether the defendant has shown a triable defence.

*Have the defendants shown a defence to the plaintiff's claim?*

20. In the skeleton submissions of the defendant for the hearing before me, it was submitted that the following were substantial and *bona fide* issues which could only be resolved at a trial, namely :

(1) whether the Share Charge and other documents purportedly executed at the same time were forgeries; and

(2) whether SMI has fully repaid the loan owed to Mr Ma and therefore discharged the Earlier Charge.

21. I shall consider those defences in turn.

由此



*The forgery defence*

22. Following the issue of the letters of demand on behalf of the plaintiff on 9 September 2009, no payment was made by SMI and the defendant did not give the confirmation demanded. On 14 September 2009, the defendant's solicitors merely sent a holding reply to the plaintiff's solicitors.

23. On 24 December 2009, the defendant acknowledged service of the originating summons stating an intention to contest the proceedings. The first hearing of the originating summons was fixed for 27 January 2010 before To J.

24. On 20 January 2010, the defendant's solicitors wrote to the plaintiff's solicitors stating they had instructions to oppose the plaintiff's application. The grounds relied upon included an allegation that the execution of the Share Charge by Kung was not duly authorised by the defendant's board.

25. On 26 January 2010 an affirmation was filed on behalf of the defendant by Mr Tse Yuen Ming, a partner of the defendant's solicitors on the basis of instructions received by him from Mr Qin Hui, a director of the defendant. In that affirmation, the gist of the forgery defence was put forward for the first time. This evidence was confirmed by Mr Qin Hui in his own affirmation, subsequently filed on 10 February 2010.

26. The evidence was to the effect that Mr Qin Hui and the defendant disputed the authenticity of the Share Charge and other security documents allegedly executed by the defendant in favour of the plaintiff.

Mr Qin Hui disclaimed any knowledge that the defendant's Board of Directors ever resolved to authorise Kung to execute any charge against the Shares in favour of the plaintiff. Moreover, the existence of the Loan Agreement and the purported security documents including the Share Charge was not known to Mr Qin Hui until these proceedings. Mr Qin Hui denied that the board meeting on 22 April 2008 apparently authorising Kung to execute the Share Charge ever took place and disputed the authenticity of his signature on the minutes of that meeting as well as that of Mr Qin Hong, his brother and co-director of the defendant.

27. The crux of the defence is therefore that the board resolution of 22 April 2008 is a forgery and therefore that Kung was not in fact authorised to execute the Share Charge.

28. I turn to consider whether or not the defendant's assertions are believable in the context of so much of the background as is either understood or beyond reasonable dispute.

29. The background to the action includes the fact that the defendant was at all material times a substantial shareholder of SMI. SMI is and was at all material times a listed company in Hong Kong, on the GEM Board, and its main business was the publication of the Sing Pao newspaper. Since 2006 onwards, the Sing Pao newspaper business has been in financial difficulty, recording losses of about HK$70 million in 2007. So dire was the financial condition of the Sing Pao newspaper business that petitions to wind up the business had been presented by ex-employees based on non-payment of outstanding salaries and the MPF

Scheme Authority has also threatened to present petitions in respect of outstanding MPF contributions.

30. In those circumstances, the plaintiff came to the assistance of SMI by agreeing to extend the term loan facility of HK$60 million under the Loan Agreement. Although the defendant did not admit the authenticity or enforceability of the Loan Agreement itself, it did not dispute that the loan was made by the plaintiff to SMI. It is most unlikely, in my view, that the plaintiff would have done so without obtaining some form of security for that loan. Yet the defendant's case would suggest that the plaintiff did so.

31. On 24 April 2008, SMI made a public announcement that it had, on 23 April 2008, entered into the Loan Agreement with the plaintiff and had also entered into the Share Charge. This announcement is, in my view, highly significant. In respect of the Share Charge, the public announcement stated:

> "As a security for [SMI's] performance of its obligations under the Loan Agreement, [the defendant], a substantial shareholder of [SMI] holding 261,473,945 shares of [SMI] ('the Shares'), representing approximately 26.37% of the entire issued share capital of [SMI], executed a share charge dated 23 April 2008 ('the Share Charge') in favour of [the plaintiff], pursuant to which [the defendant] had charged 261,473,945 shares held by it, representing approximately 26.37% of the entire issued share capital of [SMI], in favour of [the plaintiff]. [The defendant] is wholly and beneficially owned by Mr Qin Hui."

32. As noted above, the public announcement was said to have been issued by order of the board of SMI over the signature of Mr Wang Fei, one of its two executive directors. And at the time of the public announcement, the other executive director of SMI was

Mr Qin Hong, also a director of the defendant as noted above. There is no evidence from Mr Qin Hong challenging the content of the public announcement.

33. In an affirmation made on behalf of the defendant on 23 February 2010, Mr Wang Fei asserted, for the first time, that although the public announcement was made in his name, it was published without his knowledge. He claims that he was given to understand that the announcement might have to be made by SMI as a result of what he defines as an "Interim Agreement" under which Mr Carson Yeung Ka Sing ("Mr Carson Yeung") would acquire the Sing Pao newspaper business. His evidence was that it was probably prepared by Mr Kenneth Chiu Ngai Hung, to whom the daily operation of SMI, including Sing Pao, had been entrusted since about September 2006.

34. However, significantly, Mr Wang does not expressly challenge the contents of the public announcement and, so far as the Loan Agreement and Share Charge are concerned, the public announcement is wholly consistent with the plaintiff's case in this action. The public announcement stood without any correction or amendment from April 2008 until after the commencement of this action.

35. In addition to the public announcement, the plaintiff relies on the fact of the transfer of the Shares by the defendant from Lamtex, the brokers by whom the Shares were originally held, to Kingston in May or June 2008 after the execution of the Loan Agreement and Share Charge. The plaintiff submitted that, if those two documents had not been executed

with the knowledge and approval of, amongst others, Mr Qin Hui, instructions would not have been given for this transfer.

36. In his second affirmation, which the defendant was granted leave to file and serve at the hearing before me, Mr Qin Hui denied that he had procured the transfer of the Shares from Lamtex to Kingston. On his instructions, the defendant's solicitors wrote to Lamtex to request information in relation to the transfer of the Shares to Kingston.

37. However, as from the date of the letters of demand from the plaintiff's solicitors, namely 9 September 2009, the defendant must have been aware of the fact that the Shares were in the custody of Kingston rather than Lamtex. In the circumstances, Mr Qin Hui's late denial of knowledge of the transfer of the Shares and his assertion that some unknown person had forged his signature on the documents to facilitate the transfer seem rather hollow and self-serving.

38. Finally, the plaintiff refers to the publication of two notices in the press, one in Chinese dated 31 December 2009 in the Ming Pao Daily Newspaper and the other in English dated 5 January 2010 in the South China Morning Post, in which he stated that he would "transfer [his] 26.73% [*sic*] shareholding of [SMI] to Mr Yeung gratuitously".

39. The defendant's evidence in relation to these notices is, in my view, curious. According to the evidence of the defendant's solicitor, the notices were "a gesture of goodwill of Mr Qin Hui displayed during the time when the parties were in negotiation". It is not sought to deny that the notices were in fact published on the instructions of Mr Qin Hui.

Given the fact that these notices were published after the issuance of the originating summons in this action and the acknowledgement of service by the defendant, it is, in my opinion, extraordinary that a statement in these terms would have been made if the Share Charge had truly been executed without the knowledge of Mr Qin Hui and on the strength of a forged resolution of the defendant's board.

40. I have reflected carefully on the evidence in this matter, recognising that the application before me is for summary judgment and that the test is whether the defendant's evidence is believable, not whether it will be believed at trial. At the same time, I have also born in mind that an allegation of forgery is a serious allegation which the defendant will bear the burden of proving by cogent and compelling evidence since it is trite that the more serious the allegation, the less likely it is that the event occurred. Having considered the evidence as a whole, I am persuaded by the submission of Mr Peter Ng, SC, leading counsel for the plaintiff, that the alleged forgery defence flies in the face of the contemporaneous acts of those in control of the defendant, in particular the matters referred to above. I therefore accept his submission that the alleged forgery defence is not capable of belief and does not give rise to a triable defence.

41. In the light of my conclusion, it is not necessary to consider the submissions that were made on behalf of the plaintiff that, in any event, the alleged forgery defence could not provide a defence to the plaintiff's claim by reason of the rule in *Royal British Bank v Turquand* (1856) 6 E&B 327. In this regard, Mr Bernard Mak, counsel for the defendant, submitted that the indoor management rule was inapplicable to cases involving an instrument bearing a counterfeit signature or company seal,

由此



unless the company in question was estopped by its own representation from denying its authenticity: a submission that derives support from *Ruben v Great Fingall Consolidated and ors* [1906] AC 439 and *Northside Developments Pty Limited v Registrar-General and ors* (1990) 93 ALR 385.

*The discharge of the Earlier Charge*

42. It was submitted by Mr Mak that the discharge of the Earlier Charge meant that its existence could not reasonably have been considered by the plaintiff to be material under clause 13.1(c) of the Loan Agreement.

43. The Earlier Charge was created by the defendant on 18 February 2008 in favour of Mr Ma as security for a loan by Mr Ma to SMI. It is self-evident, therefore, that as at the date of the Share Charge, representations by the defendant that (i) it was the legal and beneficial owner of the Charged Shares free and clear of all charge, and (ii) during the continuance of the Share Charge, it had not granted any interest in or other rights in respect of any of the Charged Shares were incorrect and had the potential to mislead.

44. The evidence of the plaintiff was that the prior loan facility provided by Mr Ma to SMI and the Earlier Charge only came to its attention in around late May to early June 2008.

45. It was also the evidence of the plaintiff that its director, Mr Carson Yeung, decided to repay the loan to safeguard the plaintiff's interests. Accordingly, on the 4 December 2008, Mr Carson Yeung, together with Mr Ma, SMI and the defendant, entered into a Deed of

Assignment of Debt whereby SMI's debt to Mr Ma was assumed by Mr Carson Yeung. On the plainitff's case, Mr Carson Yeung then used his personal funds to repay the debt owed by SMI to Mr Ma and, as a result, a Deed of Release dated 17 June 2009 was executed by Mr Ma in favour of the defendant to discharge the Earlier Charge.

46. Mr Mak submitted on behalf of the defendant that, the Earlier Charge having ceased to exist before the present action was commenced, there was a triable issue as to whether the existence of the Earlier Charge could have constituted a material breach of warranty or misrepresentation within clause 13.1(c) of the Loan Agreement.

47. Furthermore, the defendant's evidence was that it was SMI, and not Mr Carson Yeung, who repaid the indebtedness to Mr Ma.

48. Whatever the position as to the repayment of the indebtedness to Mr Ma, the fact of its existence, and of that of the Earlier Charge, if not undisputed is, in my view, beyond reasonable dispute.

49. The evidence of the plaintiff was that it considered the existence of the Earlier Charge to be material for the purpose of the Loan Agreement and that Share Charge. In my judgment, it was reasonably open to the plaintiff to conclude that the representations in the Share Charge referred to above were incorrect or misleading in a material respect.

50. In my opinion, the alleged defence based on the discharge of the Earlier Charge does not therefore give rise to a triable defence.

*The relief claimed in the originating summons*

51. In a supplemental skeleton submission, Mr Mak submitted that the relief sought by the plaintiff in the originating summons was either claimed as foreclosure or as specific performance of clause 6.1 of the Share Charge. In either event, he submitted that the court should exercise its discretionary equitable jurisdiction to grant relief against forfeiture of the shares by giving the defendant time to pay the outstanding amount of the loan on the taking of an account.

52. So far as the nature of the claim is concerned, the provisions of clauses 2.1 and 6.1 are relevant. The former provides, under the heading "Charge", as follows :

> "In consideration of the [plaintiff] agreeing to make the Facility available to [SMI] upon the terms and conditions of the Loan Agreement, the [defendant] as beneficial owner mortgages, charges and assigns by way of first fixed charge, the Charged Shares, to the [plaintiff] as a continuing security for the due, full and punctual payment of the Secured Indebtedness and the due, full and punctual performance and observance by [SMI] of all other obligations of [SMI] contained in the Loan Agreement."

53. Clause 6.1 provides, under the heading "Enforceability", as follows :

> "Upon the occurrence of an Event of Default, the [plaintiff] may declare any part of the security hereby created immediately enforceable and at any time thereafter, the [plaintiff] or its nominee may, without further notice to all concerned by the [defendant], <u>exercise all rights and enjoy all benefits attached to the Charged Shares as if it were the sole beneficial owner thereof</u>, including without limitation, the sale or disposal of all or any part of the Charged Shares, proceeds of which may be applied in or towards the discharge of the costs thereby incurred and of the Secured Indebtedness in such manner as it in its absolute discretion thinks fit." (Emphasis added)

54. It is clear from these provisions of the Share Charge that the plaintiff is entitled to enforce its security rights over the Shares by exercising all rights and enjoying all benefits attached to the Shares as if it were the sole beneficial owner of them.

55. I therefore agree with the submission of Mr Ng, SC that it is not appropriate to analyse the plaintiff's claim as a foreclosure action or claim for specific performance. The plaintiff is simply seeking to exercise the express rights given to it by the Share Charge.

56. It is therefore not necessary to consider any claim for relief against forfeiture. But even if that were open to the defendant, there would not appear to be any factual basis in the circumstances of this case on which to grant such relief in its favour.

*Disposition and costs*

57. In the circumstances, I grant an order in terms of paragraphs (1), (2) and (3) of the plaintiff's Notice of Appointment to hear Originating Summons, namely :

(1) an Injunction restraining the defendant, whether by itself, its officers, servants, agents or any third party, from disposing of, granting any interest in, creating any charge over or otherwise dealing with the 261,473,945 ordinary shares in SMI Publishing Group Limited ("the Shares") currently deposited by its stockbroker viz. Kingston Securities Limited ("Kingston") into the Central Clearing and Settlement System, save with the plaintiff's prior written instructions and safe for

the purpose of carrying into effect the Order at paragraph (2) below;

(2) an Order that the defendant do forthwith instruct, direct, procure or otherwise cause Kingston, or if so required, any of its other stockbroker(s), to transfer the Shares to the plaintiff; and

(3) a declaration that the plaintiff do have power and authority to act as the defendant's attorney and in its name or otherwise on its behalf to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be reasonably required for the purpose of transferring the Shares to the plaintiff.

58. I make an order *nisi* that the defendant pay the plaintiff the costs of the proceedings, to be taxed if not agreed, with a certificate for two counsel in respect of the hearing before me.

(Joseph Fok)
Judge of the Court of First Instance
High Court

Mr Peter Ng, SC and Ms Elizabeth Cheung, instructed by Messrs Robertsons, for the Plaintiff

Mr Bernard Mak, instructed by Messrs Tung, Ng, Tse & Heung, for the Defendant