# EXHIBIT J

```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #1: 21-cv-09221-
HUZHOU CHUANGTAI RONGYUAN            :    KPF
INVESTMENT MANAGEMENT PARTNERSHIP,
et al.,                             :

                  Plaintiffs,       :

   - against -                      :

                                    :
QIN,                                     New York, New York
                                    :    November 18, 2022
                  Respondent.            REMOTE MOTION HEARING
------------------------------------ :
```

```
                     PROCEEDINGS BEFORE
             THE HONORABLE KATHERINE POLK FAILLA,
                 UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

```
For Petitioners:         PILLSBURY WINTHROP SHAW PITTMAN LLP
                         BY:  ANDREW C. SMITH, ESQ.
                         31 West 52nd Street
                         New York, New York 10019

For Respondent:          SEIDEN LAW GROUP LLP
                         BY:  AMIAD M. KUSHNER, ESQ.
                         322 Eighth Avenue, Suite 1704
                         New York, New York 10001

For Movant:              XUE & ASSOCIATES, P.C.
                         BY:  BENJAMIN B. XUE, ESQ.
                         1 School Street, Suite 303A
                         Glen Cove, New York 11542

Transcription Service: Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:   Transcription420@aol.com
```

Proceedings conducted by video conference and recorded by
electronic sound recording;
Transcript produced by transcription service

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | **Re-**<br><u>**Direct**</u> | **Re-**<br><u>**Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| **Exhibit**<br><u>**Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | **Voir**<br><u>**Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS              3

 2              THE CLERK:  Your Honor, this is in the matter

 3    of Huzhou Chuangtai Rongyuan Investment Management

 4    Partnership et al v. Qin.

 5              Counsel, please state your name for the record,

 6    beginning with plaintiffs.

 7              MR. ANDREW C. SMITH:  Good morning, your Honor.

 8    This is Andrew Smith with Pillsbury Winthrop Shaw

 9    Pittman, appearing on behalf of the petitioners,

10    judgment creditors.

11              HONORABLE KATHERINE POLK FAILLA (THE COURT):

12    Sir, thank you very much, and welcome to you.  Thank

13    you.

14              And from the Seiden law firm, may I have the

15    appearance, please?

16              MR. AMIAD MOSHE KUSHNER:  Good morning, your

17    Honor.  My name is Amiad Kushner from Seiden Law Group,

18    appearing for the respondent.

19              THE COURT:  Sir, welcome, and thank you very

20    much.

21              And then is it Mr. Xue?

22              MR. BENJAMIN B. XUE:  Good morning, your Honor.

23    This is Benjamin Xue from Xue & Associates, P.C.

24              THE COURT:  Good morning.  And thank you, all,

25    very much.
```

```
 1                         PROCEEDINGS                 4
 2             This is a motion hearing on a motion to
 3   withdraw as counsel.  I've received Mr. Xue's first
 4   motion to withdraw, the petitioner's opposition, and the
 5   Xue reply.
 6             Mr. Xue, just because I have read all of your
 7   written things and I have not heard from Mr. Kushner,
 8   I'm going to actually speak with him first.
 9             Mr. Kushner, may I have a sense, please, was
10   there a division of labor between you and Mr. Xue's
11   firm, or what is the understanding that you believe each
12   firm has with respect to work going forward on this
13   case?
14             MR. KUSHNER:  Thank you, your Honor.  Seiden
15   Law Group is currently engaged to handle all matters
16   going forward.  That includes all matters related to
17   responding to petitioners' discovery demands in aid of
18   the judgment.  It also includes Mr. Qin's efforts to
19   have the judgment vacated.
20             I will say, your Honor, that the scope of our
21   work changed over time.  When we initially appeared in
22   the case in May of this year, Mr. Xue's firm had been
23   handling the matter entirely.  In fact, his firm had
24   submitted all of the papers on the summary judgment
25   motion.  And at some point after the Court issued the
```

```
 1                        PROCEEDINGS                    5
 2   judgment, the client made a decision to transition
 3   everything to our firm, which led to Mr. Xue's motion to
 4   withdraw.
 5           So, in short, from this point forward, assuming
 6   your Honor grants Mr. Xue's motion to withdraw, the
 7   Seiden firm will be handling everything for Mr. Qin in
 8   this case going forward.
 9           THE COURT:  I think what confused me, Mr.
10   Kushner, is that I understood from the Pillsbury letter
11   that Mr. Xue's motion was filed on the day that the
12   responses were due.  That suggested to me that responses
13   were not in fact filed.  Were they filed by your firm,
14   sir?
15           MR. KUSHNER:  Yes.  So your Honor had issued an
16   order requiring that responses to the document demand be
17   served by November 9th.  So the Seiden Law Group
18   prepared those responses and served them on the
19   petitioners on November 9th.
20           THE COURT:  All right, Mr. Kushner, do I
21   understand that you and your firm have all of the
22   relevant documents in this case, either in original or
23   copy form, and that you're not relying or you don't need
24   Mr. Xue to provide these documents to you to have a
25   complete set?
```

```
 1                        PROCEEDINGS                    6

 2            MR. KUSHNER:  Yes.  The Xue firm has turned

 3   over its client file to Seiden Law Group.  So, yes, we

 4   are prepared to handle the matter going forward, and

 5   there are no -- as far as we know, there are no

 6   documents that the Xue firm has that our firm doesn't

 7   have.

 8            THE COURT:  Okay.  Mr. Xue, I appreciate your

 9   patience, sir.  And I asked to speak to Mr. Kushner

10   first because I don't believe I had anything from him in

11   writing.  Do you wish to supplement anything that he has

12   just told me?

13            MR. XUE:  No, your Honor.  I was personally

14   informed by Mr. Qin soon after the decision come down he

15   was going to have Seiden law firm handling the matter

16   going forward.  And at that time because it's unclear

17   what Seiden law firm is going to undertake, so I stay on

18   a little bit, and he made -- both Mr. Qin and Seiden law

19   firm make it clear to me, especially after the motion

20   was assisted -- the motion was filed without really --

21   we saw it at the same time the Court receive it.  So we

22   realized that we should not stay on the case just to put

23   our name there, doing nothing.  So that's why I filed

24   the motion to withdraw on that day, has -- really have

25   nothing to do with discovery.
```

```
 1                         PROCEEDINGS                    7

 2              THE COURT:  Okay.  Mr. Smith, you had

 3    originally opposed the motion, but I now have a greater

 4    sense of how at least Mr. Qin believes he's going to be

 5    represented going forward.  May I hear from you, please,

 6    as to whether you still object?

 7              MR. SMITH:  Certainly.  Thank you, your Honor.

 8              Yes, we do still object because this is not a

 9    usual case.  In fact, it actually is worth taking a

10    moment to review a couple of facts in this case.  And

11    with respect to our opposition to the motion to

12    withdraw, it is, as you I'm sure understood from our

13    opposition, related to the Xue firm's prior

14    representation of Mr. Qin in the Gold Team matter.  And

15    over the course of two years that they represented --

16    well, they represented Mr. Qin's wife and an entity that

17    we now know through the opposition that -- sorry, the

18    reply that we received from Mr. Xue's firm -- that they

19    are in fact very well aware of the entities that Mr. Qin

20    is involved in, as well as his wife, and also his

21    mother-in-law.

22              The concern that we have is not that Mr.

23    Kushner's firm is not going to turn over any documents

24    that he has in his possession or that Mr. Qin will

25    provide to him; our concern is that Xue firm has
```

PROCEEDINGS                           8

information that it has gathered through this two-year

representation of Mr. Qin's wife and related entities

that Mr. Qin will not provide to the Seiden Law Group

and therefore we will have no insight as to whether or

not Mr. Qin is making a fulsome production with respect

to where his assets are, what entities he's involved in,

what entities his wife and his mother-in-law are

involved in.

          And I'd also note that Mr. Kushner mentioned

that in response to your question -- and maybe it was

the way that your question was phrased -- but my

understanding of his response was that he's currently in

possession of all the documents responsive to our post-

judgment discovery requests.  To date we have received

not a single document, let alone anything that the Xue

firm may have provided to the Kushner law group.

          But also, it's not clear whether or not any of

the documents relating to the Gold Team matter have been

provided.  And we're concerned that there will be a

determination of relevance with respect to what Qin

provides, Mr. Qin provides to the Kushner law group that

would exclude information that the Xue firm may be in

possession of.  And, to be clear, we are not questioning

whether the Xue firm would abide by its ethical

1                         PROCEEDINGS                    9

2  obligations.

3           In fact, that's one of the reasons why we want

4  to keep them in this action, at least with respect to

5  post-judgment discovery, because we view that as an

6  additional safeguard in terms of getting fulsome

7  discovery from Mr. Qin, who has through various

8  proceedings demonstrated that he's less than forthright

9  in terms of disclosing where his assets are, even where

10  he is.  I mean, we now are a couple of years into this;

11  and after hundreds of pages of service, even the most

12  recent motion for reconsideration, we still have not

13  from any counsel had any identification of where Mr. Qin

14  resides.  And, in fact, when we were attempting to serve

15  Mr. Qin with this action back in December of 2021, your

16  Honor ordered that we could effect service through mail,

17  regular mail or email.  So we attempted to serve his

18  counsel that represented him in the underlying

19  arbitration in China.  That counsel responded that they

20  did not represent him.  But in response to a direct

21  request in terms of simply getting an address or some

22  type of contact information in order to serve Qin, that

23  lawyer refused to do so.

24           So where we are now is we have received not

25  documents to date; obviously, not a single dollar has

1                          PROCEEDINGS                    10

2  been paid in terms of satisfying this judgment; we have

3  no information with respect to bank accounts, no assets.

4  And the point that Mr. Xue makes in his reply to our

5  opposition with regard to him not representing Mr. Qin

6  but rather representing Mr. Qin's wife or ex-wife, that

7  is insufficient because he cannot deny, does not deny in

8  his reply that he worked with Mr. Qin to put in a sworn

9  declaration in that.  But also, we have discovered

10 evidence that Mr. Qin's ex-wife is someone that he has

11 been transferring assets to, number one; and, number

12 two, has demonstrated likewise less than being

13 forthright, in fact being overtly duplicitous in the

14 sense that when we attempted to serve at a couple of

15 locations, she sent us responses saying that Mr. Qin did

16 not reside there.  And the only way we ended up

17 effectuating service was through investigators who

18 surveyed one of the addresses that she said he did not

19 reside at and then followed him in his car as he left

20 that residence and eventually served him by hand.

21          So I say this all, your Honor, by way of

22 background that this is not a usual motion to withdraw

23 as counsel because the facts here are different than

24 your typical case.  And as Judge Nathan pointed out in

25 the recent 2021 Southern District decision that we cited

```
 1                         PROCEEDINGS                 11
 2   in our opposition -- this is the Worms v. State
 3   Corporation -- "Even if a client steadfastly refused to
 4   pay the fees, however, a Court need not allow withdrawal
 5   on that basis when it would delay or disrupt the
 6   proceedings,"  And then, in fact proceeded to deny a
 7   motion to withdraw in that case because it determined
 8   that his withdrawal at this juncture would plainly be
 9   disruptive.  We believe that it would be disruptive to
10   allow the Xue firm to withdraw at this time.
11             And with respect to who is doing what work for
12   Mr. Qin, we, just to be clear, we certainly are not
13   trying to dictate what legal work should be done as
14   between Mr. Kushner's firm and Mr. Xue's firm with
15   respect to the efforts to vacate.  In fact, we have no
16   interest in seeing how that is done, and we certainly
17   are not attempting to impede a client's ability to
18   direct strategy and to hire a counsel that he wants to
19   for this.
20             But with respect to just the limited aspect of
21   post-judgment discovery, that is where our opposition to
22   the Xue firm's withdrawal lies.
23             THE COURT:  But, Mr. Smith, what you're
24   suggesting to me is that Mr. Xue needs to stay on this
25   case because you don't trust Mr. Kushner's firm's
```

1                        PROCEEDINGS              12

2   ability to figure out what the universe of responsive

3   materials is that is in the possession of their client

4   or their client's former counsel and to then have that

5   universe of materials ready to either produce in

6   discovery or to object to the production.  I mean,

7   you're basically -- and I'm using this term very loosely

8   -- I want to be very careful as I say this, but you're

9   basically holding Mr. Xue hostage as counsel because you

10  believe that Mr. Qin is so likely to lie and to not

11  respond to your requests, that you want to keep him on

12  board so that you have two attorneys making

13  (indiscernible) certifications and not one.  Am I

14  putting too fine a point on this, sir?

15            MR. SMITH:  Actually, no, except I wanted to go

16  back because I had thought where you were going was

17  implying that -- or not implying but asking whether we

18  are concerned about whether Mr. Kushner's firm will

19  abide by his ethical duties.   Absolutely not.  And in

20  fact, we're not questioning whether Mr. Xue and his firm

21  would do so, as well.  In fact, we want to keep him in

22  the action precisely because we know that he is bound by

23  his ethical duties.  But to answer the ultimate question

24  whether we have concerns about Mr. Qin providing all the

25  information that is responsive to our post-judgment

```
 1                        PROCEEDINGS                    13
 2   discovery and allowing us to locate the assets,
 3   absolutely; that is our concern, and we believe that
 4   there is sufficient evidence in the record of Mr. Xue
 5   taking proactive steps to hide his whereabouts and to
 6   hide has assets through various --
 7           THE COURT:  You mean -- I think you mean
 8   Mr. Qin.  Mr. Xue is the attorney for --
 9           MR. SMITH:  Sorry.  Yes, Mr. Qin.  I absolutely
10   misspoke there.
11           THE COURT:  But, again, my point remains you've
12   now outlined for me, you've placed on my radar screen,
13   and by extension on Mr. Kushner and his firm's radar
14   screen, your very serious belief that Mr. Qin is going
15   to not only hide his assets but also hide from his
16   attorneys the documents and the information that they
17   need in order to comply with their duties.  Having put
18   the Seiden law firm on notice that you think their
19   client isn't telling them everything, I would think Mr.
20   Kushner is now -- and his firm, if they didn't do it
21   beforehand, they're now going to make sure that their
22   client is telling them everything.  And I'm not sure why
23   you believe Mr. Xue could not give to Mr. Kushner all of
24   the information he has obtained in the two years he has
25   been representing Mr. Qin.  But tell me.
```

1                          PROCEEDINGS                    14

2          MR. SMITH:  Yes.  And thank you because you

3    really are, as you said, putting a fine point on it and

4    exactly identifying our concern.  I have no doubt in Mr.

5    Kushner's ability to ask the right questions and to

6    zealously, you know, not only represent his clients but

7    also his ethical obligations to the Court.  What I do

8    have a doubt about is whether or not that will

9    nonetheless, despite the efforts, elicit the fulsome

10   responses from Mr. Qin.

11         Mr. Xue in his representation of Mr. Qin's ex-

12   wife and also the investigation into the assets, he has

13   information.  He has essentially educated himself with

14   respect to these different entities' location, how they

15   work, what the ownership structure is.  And, therefore,

16   he wouldn't be -- at this point, he already has what he

17   has, so he wouldn't be relying on Mr. Qin again to

18   produce that.  And want to make sure that we have access

19   to that.

20         And just by way of example, your Honor,

21   footnote one to the reply that Mr. Xue put in, he

22   describes without any cite to any documents how a

23   transaction worked, the dates -- it was owned by a BVI

24   company associated with Mr. Qin.  He transferred his

25   interest in 2018.  Then after that, the property was

 1
 2  transferred in 2020 from the BVI company to Mr. Qin's
 3  wife at that time.  I mean, these are all details that -
 4  - and then -- but elsewhere in the letter he says, But I
 5  don't have any documents that were produced in this
 6  case.  So this would be information that he would know
 7  that there would exist information and documents
 8  relating to this type of transaction by his apparent
 9  representation he hasn't handed over to the Kushner law
10  firm because the documents aren't there, but he has
11  knowledge of these transactions and knows that there are
12  documents that exist that relate to these type of
13  things.  That is just by way of example, your Honor.
14          So to try to more simply answer your question,
15  it's not merely a handing over of documents.  Mr. Xue
16  has already been educated with respect to the location
17  of potential post-judgment assets available to satisfy
18  our judgment, that there's no reason to believe that the
19  Kushner law firm would otherwise have gained outside of
20  what Mr. Qin would offer voluntarily.
21          THE COURT:  Okay.  Mr. Xue, I'm going to turn
22  to you.  And I want to begin by asking you again to
23  pronounce your surname, sir, because I've heard it
24  pronounced three different ways in this call.  Let me
25  hear it again, please, sir.

```
 1                        PROCEEDINGS                 16
 2              MR. XUE:  It's "sher" in Chinese; it's like s-
 3    h-e-r.  But I go by "zoo," because it's easier for
 4    Americans to --
 5              THE COURT:  Well --
 6              MR. XUE:  But thank you, your Honor.
 7              THE COURT:  No, no, but I think we're all
 8    trying to be -- I listened to you, but perhaps I should
 9    go with the way you would prefer, which is "sher."  So,
10    Mr. Xue, let me please understand, you've just heard
11    Mr. Smith pay you the highest of compliments in that you
12    have a gone of information that you've learned in the
13    last two years that he's afraid is not going to make its
14    way to Mr. Kushner.  How can I be confident, sir, that
15    to the extent that there is information that you have
16    that is properly disclosable in post-judgment discovery,
17    that it makes its way to Mr. Kushner's firm?
18              MR. XUE:  Yes, your Honor, first, I don't know
19    how an Mr. Smith make these kinds of representations to
20    Court when the whole case file is available to him.  The
21    Gold Team litigation was presented in Nassau County.
22    The case did not even get into discovery stage.  The
23    plaintiff, Gold Team, filed an action in Nassau County
24    saying there is a violation of BVI order, so sued
25    Mr. Qin's ex-wife and her mother and the corporate
```

1                        PROCEEDINGS                    17

2  entity owned by Mr. Qin's mother.  The corporate entity

3  was transferred to Mr. Qin's mother back in 2018, two

4  years before ending up what's happening before this

5  Court in arbitration proceeding, so really have nothing

6  to do with arbitration proceeding whatsoever.  The case

7  did not get into discovery stage.  I said it very

8  clearly in my reply.  And the counsel can verify that.

9  It's an e-file case.  All right?  And they file

10 complaint, I file a motion to dismiss because I believe

11 that the property is not subject to notice of pendency

12 because property does not belong to Mr. Qin.  Mr. Qin

13 was -- the corporation was never the debtor.  And then

14 Mr. Qin in that time have nothing to do with the

15 corporation.  So that's why I file a motion to dismiss.

16 They somehow feel like, oh, that was discovery.  They

17 could just check the e-filing was ever discovery.  And I

18 litigate with I think it's Becher law firm or something.

19        They are very professional; nobody make

20 misconduct accusation at Pillsbury's firm.  We're very

21 friendly.  We litigate -- we don't make accusation

22 against each other.  All right?  So there is no

23 discovery.  I don't know how can Mr. Smith in his

24 opposition make representation to Court.  I have

25 Mr. Qin's bank statement, I have Mr. Qin's asset

```
 1                          PROCEEDINGS                 18
 2   documents.  I don't know where his basis come from.  As
 3   attorney, they are bounded by ethics code; they cannot
 4   make false representation to the Court.  Especially they
 5   cannot speculate, can't make this kind of speculation,
 6   almost like slander another attorney's reputation here.
 7   And then, if I have any documents, my document will not
 8   come from me, will come from my client.  They can easily
 9   get it from Mr. Qin as a third party, right, if they
10   want to subpoena Mr. Qin's ex-wife, ex-wife's mother, he
11   can do that.  Right.  Why --
12              THE COURT:  Mr. Xue, just pause for a moment,
13   please.  Sir, a concern that I have that has come up in
14   other cases is that individuals have given originals of
15   their documents to their attorneys, and then succeeding
16   attorneys just don't have them.  Are you saying, sir,
17   that anything that you have been given has been given to
18   you in copy form or that you can otherwise confirm that
19   everything you got has gone to Mr. Kushner's law firm?
20              MR. XUE:  Your Honor, in terms of this case,
21   everything I got go to Kushner's firm.  The Gold Team
22   case, it's not really related in this case, so if
23   Kushner's firm need it, I turn over entire file to him.
24   But the thing is I need consent from the client I
25   represented.   But there is no discovery; I can make
```

1                          PROCEEDINGS                    19

2   representation to Court there was no discovery in the

3   Gold Team litigation.

4           THE COURT:  Okay, so Mr. Xue, just so that I'm

5   comfortable with what you're saying, what you're saying

6   is you believe that everything that's properly

7   discoverable in this case is with Mr. Kushner's firm,

8   you may have some other materials.  But if I were to

9   find at some later date that those other materials were

10  in fact relevant, you have them preserved, you're not

11  going to destroy them, and you're going to turn them

12  over to the Kushner firm promptly, correct, sir?

13          MR. XUE:  A hundred percent, your Honor.  I can

14  make this kind of representation.  And, your Honor, it's

15  my firm's practice we never keep clients'

16  (indiscernible), never, because we just don't want to be

17  responsible.  And, actually, my firm has already

18  transferred to cloud service; we use DropBox for the

19  past probably at least 6, 7, 8 years.  So we don't have

20  paper file nowadays, yes, because everything is cloud --

21          THE COURT:  No paper files, ah.  How very

22  modern of you, sir.

23          All right, Mr. Xue, before I turn to Mr.

24  Kushner to get his thoughts on Mr. Smith's arguments, I

25  want to make sure I've heard from you fully.  Have I,

```
 1                          PROCEEDINGS                20

 2   sir?

 3          Mr. Xue, let me ask the question again, please.

 4   Sir, I'm about to ask Mr. Kushner for his thoughts.

 5   Mr. Xue, do you have anything else you want me to know

 6   in response to Mr. Smith's arguments to me?

 7          MR. XUE:  Just give me one second.  I --

 8          THE COURT:  Of course, sir.

 9          MR. XUE:  -- think you make -- your Honor, I

10   believe he also mentioned something like because Mr. Qin

11   may not be forthcoming, so he want to keep me hostage in

12   the case.  You know, this is not (indiscernible) now.

13   The case law he cited is not applicable in this case.

14   In that case, there was no other attorney representing

15   the party whose attorney seeking to withdraw.  In this

16   case, there is attorney who is -- full represent to

17   call; they are responsible for everything from this

18   point going forward.  So there is no prejudice to

19   plaintiff in this -- petitioner in this case.

20          THE COURT:  Sir, thank you.

21          Mr. Kushner, please allay my concerns that you

22   don't have all the documents and that without meaning to

23   violate your professional responsibility, you're going

24   to produce something less than you should.

25          MR. KUSHNER:  Absolutely I can assure you of
```

1                              PROCEEDINGS                    21

2    that.  And if I may just respond to some of the points

3    that petitioners' counsel made.  You know,

4    preliminarily, your Honor, this is a motion by the Xue

5    firm to withdraw as counsel; it's not a motion to compel

6    discovery, it's not a final hearing on a potential

7    fraudulent transfer action.  You know, let's be clear

8    about what this motion is --

9              THE COURT:  I am, sir.

10             MR. KUSHNER:  And I think petitioners' counsel

11   seems to be making arguments that really are far outside

12   the scope of the types of -- you know, it's relevant for

13   this motion.  In every single case in which there is a

14   transition of counsel, the outgoing counsel has

15   information or knowledge of the facts, knowledge of the

16   documents that the incoming counsel may not have or

17   takes time to kind of get up to speed on.

18             So the notion that because the Xue firm has

19   more of an intimate familiarity with some of the

20   background facts and documents isn't relevant.  The

21   clients are entitled to their choice of counsel.  What

22   is relevant is whether Seiden Law Group can appear in

23   the case and can handle the matter going forward.  We've

24   said on the record, and Mr. Xue has confirmed, that the

25   Xue firm has provided its client file to Seiden Law

```
 1                          PROCEEDINGS                    22
 2    Group.  Mr. Xue has represented that he's not holding
 3    any responsive documents related to this matter at his
 4    firm, that he's given us everything.  That should end
 5    the matter.
 6             And I would point out, your Honor, something
 7    that petitioners' counsel left out of his presentation,
 8    is that he's already subpoenaed the Xue firm for
 9    documents, and he's subpoenaed Seiden Law Group, as
10    well.  You know, the idea that somehow he needs to keep
11    Mr. Xue in the case to be able to get documents from
12    Mr. Xue's firm is not correct.  You know, he has avenues
13    to get those documents.  He doesn't have to hold him
14    hostage, as your Honor pointed out.
15             Petitioners' counsel, I believe in his
16    presentation, cited that Seiden Law Group has all
17    responsive documents.  I just want to make sure the
18    record is clear I did not say that.  What I said is that
19    as far as Seiden Law Group knows, we have all responsive
20    documents that the Xue firm had, that they provided us
21    with whatever they had.  I don't believe Seiden Law
22    Group has all responsive documents, but we are working
23    with Mr. Xue to collect responsive documents.
24             Your Honor, I don't know that it's necessary
25    for me to respond to any of petitioners' counsel's other
```

```
 1                        PROCEEDINGS                 23
 2   assertions regarding, for example, service in the
 3   Southern District in this case.  I'm happy to, if you'd
 4   like.  I don't know that I need to, though.
 5           THE COURT:  No, no, that's fine.  Thank you,
 6   all, very much.  I appreciate the arguments, but I don't
 7   believe that the arguments that Mr. Smith is raising are
 8   arguments why I need to keep Mr. Xue in the case.  So I
 9   am going to grant the motion to withdraw.  Mr. Xue knows
10   and Mr. Kushner knows that there are obligations and
11   that each of them has a professional responsibility with
12   respect to the discharge of those obligations as it
13   relates to materials they received from their clients
14   that may or may not be responsive to discovery requests
15   in this case.  I also have obtained from Mr. Xue an
16   understanding that if it turns out that he has
17   additional files that are responsive and that I believe
18   need to be turned over, he will turn them over.  But I
19   don't think it is appropriate for me to keep him on the
20   case on the possibility, even if that possibility is
21   more than a one percent chance that Mr. Qin will not
22   produce everything.  Mr. Kushner is on notice that
23   Mr. Smith believes that Mr. Qin is hiding assets and is
24   transferring them to people, and we'll figure out
25   whether that in fact is the case.  I don't think it
```

```
 1                          PROCEEDINGS              24

 2    means that Mr. Kushner can't represent -- and his firm

 3    can't represent Mr. Qin going forward, and I don't think

 4    it means that Mr. Xue has to stay on as sort of backup

 5    counsel.  So I am granting the motion to withdraw.  I

 6    know that there remains an open motion for

 7    reconsideration.  You'll get that in due course.

 8              I think those are all the issues I should be

 9    addressing today; so unless someone else has something

10    to raise, I will let you all go with my thanks and my

11    best wishes for a Happy Thanksgiving.

12              Anything else, gentlemen?

13              THE COURT:  All right, I'm seeing heads being

14    shaken and a few no's being said.  I thank you all.  Be

15    well.  And we'll talk when it's appropriate to do so in

16    the future.

17              Thank you.

18              (Whereupon, the matter is adjourned.)

19

20

21

22

23

24

25
```

```
 1                                                      25

 2                  C E R T I F I C A T E

 3

 4          I, Carole Ludwig, certify that the foregoing

 5   transcript of proceedings in the case of Huzhou

 6   Chuangtai Rongyuan Investment Management Partnership et

 7   al v. Qin, Docket #21-cv-09221-KPF, was prepared using

 8   digital transcription software and is a true and

 9   accurate record of the proceedings.

10

11

12

13

14   Signature_____

15                   Carole Ludwig

16   Date:     December 5, 2022

17

18

19

20

21

22

23

24

25
```