UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

HUZHOU CHUANGTAI RONGYUAN      :
INVESTMENT MANAGEMENT         :
PARTNERSHIP, HUZHOU HUIHENGYING  :
EQUITY INVESTMENT PARTNERSHIP, and  :
HUZHOU HUIRONGSHENG EQUITY     :
INVESTMENT PARTNERSHIP,         :
                                 :     21 Civ. 9221 (KPF)
          Petitioners,     :
                                 :
          v.               :
                                 :
HUI QIN,                         :
                                 :
          Respondent.    :

---------------------------------------------------------------------x

## PETITIONERS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO COMPEL, FOR SANCTIONS, AND FOR AN
## ORDER OF CIVIL CONTEMPT

# TABLE OF CONTENTS

## Contents

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. FACTS ....................................................................................................................... 2

    A. Qin Violates the Expedited Discovery Order ..................................................... 2

    B. Qin Violates the January 23, 2023 Order Setting Qin's Deposition................... 4

    C. Qin Violates This Court's January 30, 2023 Order to Answer Questions.......... 5

    D. Qin Lied to This Court and Other Courts ........................................................... 7

    E. Qin and His Wife Lie About Their Relationship .............................................. 11

    F. Qin's Counsel Coaches the Witness ................................................................ 12

    G. Qin Destroys Assets, Spoliates Evidence, Refuses to Produce Documents, and Violates a Restraining Notice Issued Under CPLR 5222(b)............................... 13

    H. Qin Denies Representations Made by His Counsel ......................................... 15

    I. Qin Breaks the Law and ██████████ ............................................. 17

    J. Qin's Story of ████████████████████ ..................................... 18

    K. Qin's February 13, 2023 Declaration............................................................... 18

    L. Certification of Meet-and-Confer .................................................................... 19

III. ARGUMENT ........................................................................................................... 19

    A. Standards for a Motion to Compel Discovery, Sanctions and Civil Contempt ............... 19

    B. This Court Should Compel Qin to Produce Documents, Appear for Continued Deposition, and Respond to Interrogatories Necessitated by his Misconduct................. 20

    C. The Court Should Order Sanctions Against Qin and his Counsel. ................... 21

    D. Respondent Should Be Held In Contempt for Violating Discovery Orders.................... 23

    E. Petitioners Are Entitled to Reasonable Expenses, Including Attorney's Fees. ............... 25

CONCLUSION.................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Agiwal v. Mid Island Mortg. Corp.*,
    555 F.3d 298 (2d Cir. 2009)....................................................................................19

*Boaziz v. Torati*,
    No. 14-CV-8024 (RA) (RLE), 2016 WL 11483840 (S.D.N.Y. June 1, 2016), *report and
    recommendation adopted as modified sub nom. Boaziz v. Hezi Torati*, No. 14-CV-8024 (RA),
    2016 WL 3636663 (S.D.N.Y. June 28, 2016) ........................................................20

*Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir. 1991)....................................................................................19

*Doe 1 v. E. Side Club, LLC.*,
    No. 18 Civ. 11324 (KPF), 2021 WL 2709346 (S.D.N.Y. July 1, 2021) .................22

*Doe 1 v. E. Side Club, LLC.*,
    Doe 1 v. E. Side Club, LLC, No. 18 Civ. 11324 (KPF), 2021 WL 4711249 (S.D.N.Y. Oct. 8,
    2021) .........................................................................................................................22

*Donoghe v. Astro Aerospace Ltd.*,
    No. 19-CV-7991 (JPO), 2022 WL 17095249 (S.D.N.Y. Nov. 21, 2022) ...............19

*Exp.-Imp. Bank of Republic of China v. Democratic Republic of Congo*,
    No. 16-cv-4480 (DAB), 2018 WL 10601809 (S.D.N.Y. Aug. 29, 2018) ...............19

*Genzyme Corp. v. Rice*,
    No. 15-cv-7892 (SAS), 2016 WL 397673 (S.D.N.Y. Jan. 29, 2016) .....................24

*Gibbons v. Smith*,
    No. 01 Civ. 1224(LAP), 2010 WL 582354 (S.D.N.Y. Feb. 11, 2010)....................19

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994)..................................................................................................23

*Jacquety v. Baptista*,
    538 F. Supp. 3d 325 (S.D.N.Y. 2021).......................................................................22

*Kelly v. City of New York*,
    No. 01 Civ. 8906(LMM)(RLE), 2007 WL 1746912 (S.D.N.Y. June 15, 2007) ....20

*Morales v. Zondo, Inc.*,
    204 F.R.D. 50 (S.D.N.Y. 2001) ...............................................................................23

4861-1971-2840

*Paramedics Electromedicina Comercial, LTDA v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 654 (2d Cir. 2004)...................................................................................24

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    No. 09 Civ. 3701(JPO)(JCF), 2013 WL 6439069 (S.D.N.Y. Dec. 9, 2013) ..........................23

*Ruiz v. Citibank, N.A*,
    No. 10 Civ. 5950(KPF)(RLE), 2014 WL 4635575 (S.D.N.Y. Aug. 19, 2014) (Failla, J.)......20

*Ryan v. Paychex, Inc.*,
    No. Civ. 3:08CV1151(WWE), 2009 WL 2883053 (D. Conn. Sept. 1, 2009) ........................23

*Schwarz v. ThinkStrategy Cap. Mgmt. LLC*,
    No. 09 Civ. 9346(PAE), 2015 WL 4040558 (S.D.N.Y. July 1, 2015) ...................................24

*SEC v. Bremont*,
    No. 96 Civ.8771 LAK, 2003 WL 21398932 (S.D.N.Y. June 18, 2003)................................24

*SEC v. Bronson*,
    602 F. Supp. 3d 599 (S.D.N.Y. 2022)....................................................................................24

*SEC v. Bronson*,
    No. 12-CV-6421 (KMK), 2021 WL 3167853 (S.D.N.Y. Jan. 19, 2021) ..............................24

*SEC v. Durante*,
    No. 01 Civ. 9056(DAB)(AJP), 2013 WL 6800226 (S.D.N.Y. Dec. 19, 2013), *adopted with modification*, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x 73 (2d Cir. 2016) ......................................................................................................................................24

*Spotnana, Inc. v. Am. Talent Agency*,
    No. 09 Civ. 3698(LAP), 2014 WL 7191400 (S.D.N.Y. Dec. 3, 2014) ...................................24

*Sussman v. Bank of Isr.*,
    56 F.3d 450 (2d Cir. 1995)......................................................................................................22

*Top Jet Enters., Ltd. v. Kulowiec*,
    No. 21-MC-789 (RA) (KHP), 2022 WL 280459 (S.D.N.Y. Jan. 31, 2022)...........................19

*Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*,
    273 F.R.D. 372 (S.D.N.Y. 2011), *subsequent determination*, 276 F.R.D. 105 (S.D. N.Y. 2011) ........................................................................................................................................25

<u>Statutes and Codes</u>

United States Code
    Title 28 Section 1927 ..................................................................................................19, 22, 25

4861-1971-2840

## Rules and Regulations

Federal Rules of Civil Procedure
    Rule 11(b)(3)-(4)............................................................................................21
    Rule 30(d)(2)...............................................................................................22
    Rule 37................................................................................................ *passim*
    Rule 69(a)(2)...............................................................................................19

Local Civil Rule
    Rule 83.6(c)(2)-(5)..................................................................................19, 20

N.Y. Tax Law
    Section 1402.................................................................................................4
    Section 1402-A ............................................................................................4

Rules of Professional Conduct
    Rule 3.3(a)(1)..............................................................................................22

## Other Authorities

State Department of Taxation and Finance, Real Estate Transfer Tax, *available at*:
    https://www.tax.ny.gov/bus/transfer/rptidx.htm ........................................................4

4861-1971-2840

Petitioners/Judgment-Creditors[1] respectfully submit this memorandum in support of their motion to compel the production of documents, for sanctions, and for an order of civil contempt against Respondent/Judgment-Debtor Hui Qin ("Qin") and/or his counsel.

## I. PRELIMINARY STATEMENT

Qin has violated three orders: a November 1, 2022 order expediting discovery; January 23, 2023 order setting his deposition; and January 30, 2023 order requiring him to answer questions.

Four months after this Court expedited discovery, Qin has produced only a handful of non-public documents. Qin lives in Plaza Hotel penthouses *and* a $15 million mansion. This Court held "[i]t defies belief" that Qin lacks records or money: "I don't think Respondent's counsel has satisfied their obligations" or that "Mr. Qin has satisfied his obligations."

At his deposition, Qin refused to answer 24 questions in the first 80 minutes. This Court stated: "I think he's in violation of the order that's compelling his deposition" and ordered Qin "to answer all questions." *After this order*, Qin testified: ███████████████████████ ████████████████████████████████████████ Qin made unbelievable denials, including ████████████████████ or ███████████████████████

Qin's testimony contradicts his sworn declaration; he has lied to this and other courts; and he uses fake identities. Qin testified he ████████████████████████████ ████████████████████████████████████████████ Qin will ████████████ rather than pay the judgment. Displaying a ███████████████ Qin testified: ████████████████████████████████████

This Court should issue sanctions, compel production, and hold Qin in civil contempt.

---

[1] "Petitioners" are Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership. "Ex." are exhibits to the Declaration of Carol Lee, filed with this Motion. "Dep." refers to Ex. P, the January 30, 2023 deposition transcript of Hui Qin. "Building Address" is ████████████████████████ Chaoyang District, Beijing, China.

## II.   FACTS

Qin violated three of this Court's orders: (1) the November 1, 2022 order expediting discovery (ECF 64); (2) the January 23, 2023 order setting Qin's deposition (ECF 100); and (3) the January 30, 2023 order requiring Qin to answer deposition questions (Dep. 67:23-68:13).

### A.   Qin Violates the Expedited Discovery Order

On November 1, 2022, this Court ordered expedited post-judgment discovery into Qin's assets. Despite this order, Qin produced nothing—not one page—for the next ten weeks. One day after Petitioners informed this Court of Qin's noncompliance, Qin's counsel suddenly produced 82 documents. But 81 of these were public records (73 of them court judgments against Qin).[2]

On January 13, 2023, Qin produced 47 documents, almost all public records. *32 were duplicates* of documents in the original production. Qin produced a ▮▮▮▮▮, which refers to an attached ▮▮▮▮▮▮▮. *But the* ▮▮▮▮▮▮ *was affirmatively removed.*

At 11:46 P.M. the night before a pre-motion conference, Qin produced 49 documents. 46 were public records. Qin produced an ▮▮▮▮▮▮▮ that *he had created two days earlier*. The original (filed in April 2022) says ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

On January 20, 2023, this Court told Qin's counsel: "Respondent's production has been woefully inadequate. . . . [Y]ou had said to me at a prior conference, these things were gathered together, they were going to be produced. They haven't been." Ex. A ("1/20/23 RT") at 15:5-6; 24:13-16. If documents are not produced, "there's going to be sanctions." *Id.* at 31:10-11. Further:

> I think it should be clear that I don't think Respondent's counsel has satisfied their obligations. . . . I do not think that Mr. Qin has satisfied his obligations based on everything that I'm hearing. It defies belief that he can live the lifestyle he leads and have no money. It defies belief that he could have no records of his money and

---

[2] Qin timed his productions to be on the immediate eve of deadlines and hearings about discovery, apparently to disrupt Petitioners' filings and arguments. Qin's January 13, 2023 production was the same day as Petitioners' reply letter motion was due; Qin's next production came on January 19, 2023 at *11:46 P.M.*, the night before a pre-motion conference. On February 13, 2023, the eve of this filing, Qin's counsel likewise made a production of 5 documents.

4861-1971-2840

that . . . what has been produced is the vast majority of what's going to be produced.
Ex. A (1/20/23 RT) 46:21-47:5. Qin has produced almost nothing since this warning. On January 24, Qin produced 29 public records, one duplicate, and one other document. On February 2, Qin produced four more duplicates (removing Respondent's improper redactions).

In total, 200 of the 213 documents produced (94%) are public records. 42 (20%) are duplicates, including five of the 13 non-public documents. Qin produced nothing for 11 of 20 document requests. More than half the pages in Qin's productions are ancient annual reports (2017 or earlier); these documents predate the timeframe in the Requests and are thus nonresponsive.

In response to Petitioners' deposition subpoena on written questions, Qin's counsel (Seiden Law Group) identified four banks Qin uses: ███████████████████████████████ ████, and ██████. But Qin's former counsel (Xue Law Firm) identified an additional bank: ████. *See* Ex. S. During Qin's deposition, Qin identified *yet another* bank: ██████████. Dep. 154:8-9. Pressed about this, Qin walked back his admission. *Id*. at 154:10-23. To date, Qin has produced just *one* year of records for just *one* bank: namely, ██████████ statements from ██ ████████████████████. *See* Ex. O. Qin produced no other bank records, and no records showing the name, address, and phone number of counterparties for transfers greater than $9,000, as required in Request No. 10. Qin's ██████████ statements show a balance of ██████. But Qin's counsel represents that Qin lives in *both* a $29 million ████████████████ *and* a $15 million mansion. *See* Ex. B at 3. This "defies belief." Ex. A (1/20/23 RT) 46:21-47:5.

Qin produced nothing in response to a request for documents identifying trusts held or controlled by Qin or relevant persons. Yet even the sparse ██████████ records refer to a ████ ████████ and a ████████████ *See* Ex. C. Qin transferred ██████ to the ██████████ ████████████, just before this Court's summary judgment ruling. *Id*.

Qin conceals information about real estate transactions. The ███████████████

where Qin lives was transferred to ████████████ for ███ and unidentified consideration. New

York State transfer taxes were ████████, indicating a total value of ████████.[3] ████████

was transferred for ███ to ████████████—which shares Qin's ████████████

address. ████████, Qin ████████████████████████████

*See* Exs. D, Q. Likewise, ████████████████████████████ mansion

to his mother-in-law, Xuemin Liu. ████████████████, Qin ████████████

████████████████████████████. *See* Ex.

E. Qin produced no records about the transfers other than the ████████, and no records about ███

████████████ or ████████████████ (the entities that own the penthouses where he lives).

### B.    Qin Violates the January 23, 2023 Order Setting Qin's Deposition

Before being asked one question at his court-ordered deposition, Qin announced: ████████

████████████████████████████ Dep. 10:21-23.

Over the next 80 minutes, Qin refused to answer questions *24* times. *See* Dep. 16:19 ███

████████████████; 17:14 (same); 18:21-22 (same); 18:25-19:5 ████████████

████████████████████████████████; 19:20-

21 ████████████; 24:17-20 ████████████; 26:9 ████████████; 26:10-

11 ████████████████████████; 26:17-19 (same); 27:17-19

(same); 27:5-6 (same); 29:11-13 ████████████; 29:16-18 ████████████████

████████████████████████████; 29:22-25 ████████

---

[3]  New Year State real estate transfer tax before July 1, 2019, is calculated as (a) two dollars for each $500 plus (b) 1% of the sales price ("mansion tax") for residences with consideration of $1 million or more.  N.Y. Tax Law, §§ 1402, 1402-A; *see also* N.Y. State Department of Taxation and Finance, Real Estate Transfer Tax, *available at*: https://www.tax ny.gov/bus/transfer/rptidx htm.  If the ████████ and ████████ components are calculated respectively under these two rates, the corresponding consideration figures are each ████████.

4861-1971-2840



; 30:16-20 [REDACTED]

[REDACTED]

[REDACTED];

31:6 [REDACTED]; 31:12-13 [REDACTED]; 31:15-16 [REDACTED]

[REDACTED]; 31:19-22 [REDACTED]

[REDACTED]; 32:2-5 [REDACTED]; 37:16-19 (same); 37:22-23 (same); 38:4-6 (same); 38:8-9 (same).

On none of these occasions did Qin's counsel instruct him not to answer.

### C.    Qin Violates This Court's January 30, 2023 Order to Answer Questions

Petitioners sought a court order that Qin answer questions. During colloquy, Qin's counsel attempted to mislead this Court by falsely asserting that "[t]here have only been *a couple of questions* where this, you know, this came up." Dep. 56:3-5. The Court responded:

> It is really troubling to me, not only that your client is not answering questions that you have not instructed him not to answer, but that he's making relevance determinations without you and that you're not even sure that my order is going to get him to actually answer these questions. . . . [Y]our client should be answering these questions. I don't really know why he's not. I don't think he gets to decide what is and isn't relevant. . . . I think he's in violation of the order that's compelling his deposition. . . . I fully expect that he will answer all questions unless he's been instructed not to answer and that those are the ground rules going forward.

Dep. 59:2-60:24. This Court then repeated this order directly to Qin:

> I am directing you, I am ordering you . . . to answer all the questions that you are asked unless and until your attorney directs you not to answer. . . . I am ordering you to answer all questions unless and until your attorney directs you not to answer. . . . Mr. Qin, please confirm that you understand the order that I've just issued.

Dep. 67:23-68:16. Qin responded: "I am very happy to comply [with] your order to answer the questions. I understand what you mean." *Id*. at 69:4-7.

The deposition restarted, but Qin still



Dep. 89:8-11; *id*. at 76:22 [REDACTED]; 88:8-9 [REDACTED]; 88:12-14 (same);

5

88:16-17 (same); 114:2-3 █████████████████████████████████████; 135:8-9 ███████████████; 135:12-18 (same); 136:10 ███████████████████; 136:23 ██████.

Qin also filibustered the deposition with long, off-topic speeches. Asked ████████ ████████████████████████████████████████████████████ Qin's response included: ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ Dep. 80:22-81:9. Asked ██████████████ █████████████████████████████████████████████████████████ Qin's response included: █████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ *Id*. at 83:22-84:24. Asked ████████████████████████████████████████████████████████ ████████ Qin stated: ████████████████████████████████████████████████████ ███████████████████████████ *Id*. at 96:24-97:25. In response to ██████████████ ███████████████████ Qin's answer included: ██████████████████████████████████ ██████████████ *Id*. at 133:7-11. Asked ████████████████████████████████████ ████████ Qin said: ████████████████████████████████████████████████████████ ███████████████████████████████████ *Id*. at 166:10-167:12. Qin ignored repeated requests to stop speechifying. *See*, *e.g.*, at 9:16-10:10; 25:11-13 ███████████████ ██████████████████████████████████████████████████; 80:7-81:16; 96:24-98:4.

Qin made frequent, unbelievable assertions that ████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████ █████████████████████████████████████ ████████████████ ████████████████████████████████

Dep. 111:23-112:7; *see also, e.g., id.* at 19:4-5 ████████████████████████; 73:12-21

██████████████████████████████████████████████████████████████████████

███████████████████████████████; 178:3-7 (

███████████████████████████████; 108:4-17 ████████████████████████

██████████████████████████████████████████████████████████████████;

116:13-19 ████████████████████████████████████████████████████

████████████████████████████████; 123:2-4 █████████████████████████

████; 191:5-9 ████████████████████████████████████████████

Qin wasted half of the deposition's seven hours by demanding a translation he didn't need.

Qin ████████████████████, *see* Dep. 15:15. Qin often answered prior to the translation, *id.*

at 29:16-20; 29:22-23; 35:6-8; 81:19-22; 175:13; 198:25, and he proposed his own translations, *id.*

at 12:24-13:3; 28:16-17; 37:12-13; 38:17-18; 39:14-15; 39:16; 74:14-15; 77:2-8; 79:4-5; 87:5-8.

**D.      Qin Lied to This Court and Other Courts**

In this action, Qin swore to the Court that "Petitioners knew that I had been living in the

United States with my family since 2019." Declaration of Hui Qin (ECF 33), ¶¶ 27-28. Qin's

frivolous filings denying service are based on this lie. *See* ECF 67 at 8 (Qin "has been living in the

US since 2019") (quoting ECF 33-6 at 2); ECF 67 at 8 (quoting ECF 33-8 at 2-3); ECF 67 at 17.

Qin testified that, █████████████████████████████████████████████

████ Dep. 100:6-103:2-12. Contrary to his sworn assertion that Petitioners knew he was in the

U.S., Qin testified ███████████████████████████████ *Id.* at 101:5-23; 104:16-24.

Qin's 2020 Divorce Decree—obtained by his arbitration counsel during the arbitration—

lists the Building Address as Qin's "registered address." ECF 56-1 at 7. But Qin falsely swore to

this Court someone forged the Building Address in the Supplemental Agreement: "I did not write

it nor do I know who wrote it." Qin Declaration at 6.[4] In fact, 89 of the 213 documents Qin produced (over 40%) are court judgments naming the Building Address as Qin's address. Petitioners requested these judgments in *October 2022*. Qin withheld them until *January 2023*, even though they are not privileged. *See* Lee Decl., ¶ 24; Ex. A (1/20/23 RT) 36:8-9 ("[I]t's true, we didn't need the Protective Order [to produce] them."). By withholding the judgments, Qin's counsel prevented Petitioners from citing them in the briefing on the Motion for Reconsideration.

The Building Address is just Qin's latest claim of forgery. In 2010, a Hong Kong court held: "Qin Hui's . . . assertion that some unknown person had forged his signature . . . [is] hollow and self-serving" and "is not capable of belief." *See* Ex. F at 1, 11-12. "Qin Hui . . . disputed the authenticity of his signature on the minutes of that meeting as well as that of Mr Qin Hong, his brother," but this "forgery defence flies in the face of the [facts]." *Id.* at 8, 12.

In 2020, Qin again told a court that "document appears to contain a forgery of my signature," despite the signature having been witnessed. *See* Ex. G at 5. Qin's "defence of forgery . . . bears a striking resemblance to the defence he ran . . . in 2010." *Id.* "[T]he underlying facts . . . are sufficient to show Mr. Qin's dishonesty." *Id*. at 9. There is "a good arguable case that Mr. Qin is a dishonest man" and "the risk of dissipation is shown by solid evidence." *Id*. at 12, 22. Qin's actions had the "sole effect" of causing his creditors to "rack up costs." *Id*. at 41.

In 2021, the High Court of Hong Kong held that "the allegations advanced by [Qin] are incredible," "wholly incredible," "not capable of belief," and "bears all the hallmarks of a recent fabrication and is incredible." *See* Ex. H ("*Goldteam*"), ¶¶ 68, 67, 75, 71. The court held: "There is not a shred of document in support of [Qin]'s allegations," which are "flimsy" and contradict

---

[4]  *See also* ECF 28 at 19 (denying "Building Address w[as] Respondent's . . . domicile, habitual residence, or mailing address . . . []or . . . last known place of business [or] domicile [or] mailing address"); ECF 44 at 17-19, 33 ¶¶ 26-27 (similar); ECFs 66-69 (similar).

4861-1971-2840

testimony Qin presented under oath in a separate proceeding. *Id*. ¶ 55. There is "a good arguable case that [Qin] is a dishonest man." *Id*. ¶¶ 72, 59, 75.

Qin falsely denied service at an address on ███████. ECF 7-1 at 2. Service papers were delivered there but returned by an unidentified individual. *Id.* At his deposition, Qin testified that ████████████████████ which ██████████ and that ███████ ██████████████████ Dep. 39:10-18; 102:3-11.

Qin is a serial service denier who denied or evaded service in five litigations. ECF 82 at 5-7. In this action, Petitioners initially served Qin at ███████████. *Id.* at 5. The mailing was delivered, signed for, and then returned without explanation by an unidentified person. *Id.* But Qin testified that ████████████████. *See* Dep. 75:14-24. Petitioners next served Qin at ███████████████. Qin's (alleged "ex-") wife "Emma" Duo Liu refused service: "do not send me any more documents about Hui Qin" because they are "not living together." *See* ECF 56-1 at 3. Petitioners served ██████████████, which is listed as Qin's residence in his Divorce Decree. Emma Duo Liu refused service again: "[D]o not send me any more mail about Hui Qin. I have no . . . relationship with Hui Qin now, and he no longer lives here." *See* ECF 51-4 at 2. After Emma Duo Liu sent this letter, but before it arrived, Petitioners served Qin by following him *as he drove his Rolls Royce out of* ██████████. Served personally, Qin responded by flinging the service papers out the window of his Rolls Royce.

On November 28, 2022, Qin's counsel *gave Petitioners a fake address* for Qin: "Plaza Hotel Penthouse Suite 2203." *See* Ex. I at 4. The Plaza Hotel has no 22nd floor. On January 24, 2023, Qin's counsel finally wrote that the ████████████████████████ ████████████████████████████████ ██████████████ Ex. B at 3. But Emma Duo Liu refused service at both those addresses.

4861-1971-2840

Asked ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ Dep. 20:25-21:4; 22:3-5. Petitioners then ██████████████████

████████████████████████████████████████████████████
████████████████████████

████

████████████████████████████████████████████

████████████

████████████████████████████████████████;

████

Dep. 34:2-12. As noted above, █████████████████████████████████████

Despite swearing he ████████████████████ Qin eventually admitted under

questioning that, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Dep. 200:4-24. Likewise, Qin ████

████████████████████████████████████████████████████████████

████████████████████████████████████ *Id*. at 21:22-22:5; 71:23-72:10.

For ████████████████████████████████████████ *See, e.g.,* Dep.

76:17-23 ████████████████████████████████ ; 76:24-77:24

████████████████████████████████████████████████████████████

████████████████ Asked ██████████████████████████████████████

████████████████████████ Qin responded with vague and meaningless answers:

████████████████████████████████████████ *See id*. at 85:5-88:4

████████████████████████████████████████████████████████████

4861-1971-2840

███████████████████████████████████████████████████

Qin also lied that ████████████████████████████████████████

████████████████████████ Dep. 108:19-20; 140:18-25; 141:23-142:2. But Qin's former

counsel told this Court that "throughout [his] representation, [he] communicated with Mr. Qin . . .

via email," and successfully opposed some document requests as "overbroad [because] they would

require production of any and all emails" revealing "Qin's contact information." ECF 80 at 5.

### E. Qin and His Wife Lie About Their Relationship

This Court noted Qin "transferred ownership of his home in Old Westbury, New York, to

his ex-mother-in-law and ex-wife for only ten dollars in a series of transactions occurring shortly

after the underlying arbitration was commenced." ECF 61 at 2. The "timing . . . [and] the minimal

consideration . . . suggest that the transfer was not made for genuine business purposes." *Id.*

Indeed, in April 2022—months after this action began—Qin ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ Dep. 192:2-5; 193:3-16.

Emma Duo Liu lied by claiming she had "no . . . relationship" with Qin, and "he [] no

longer lives here." ECF 51-4. To the contrary, Qin testified that ████████████████

████████████████████████████ Dep. 80:22-81:5; 82:18-25. █

██████████ *Id.* at 81:23-82:25. ██████████████ *Id.*

███████████████████████████████████████████████████

████████████████████████ *Id.* at 42:11-13; 84:13-15.

Despite paying *none* of the judgment, Qin testified he ████████████████



Dep. 181:16-186:13. Qin ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dep. 183:5-21; 185:11-12.

Qin testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇ Dep. 123:2-129:20; 168:10-169:8; 203:11-12.

**F.    Qin's Counsel Coaches the Witness**

Qin initially testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dep. 34:14-25.

Qin's counsel then ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇ Dep. 35:2-5. The interpreter answered: ▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. at 35:6-8 ▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ As set forth in the declaration of

Professor Lening Liu, Director of the Chinese Language Program at Columbia University, it is

"crystal clear that ▇▇▇▇▇▇▇▇ and any assertion to the contrary "is not made in good

faith." *See* Liu Decl., ¶ 8. Petitioners' counsel ▇▇▇▇▇▇▇. Dep. 35:16-23 ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Clearly responding to the

coaching, Qin ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

12



*See id.* at 34:15; 72:6; 92:2; 99:13; 99:15; 100:8; 151:25; Liu Decl., ¶¶ 6, 8.

Qin would rather destroy assets than let creditors seize them. Qin ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dep.

184:2-8. Qin's counsel again ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 184:22-24. Responding to the coaching, Qin briefly

▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 185:2-4. But, proving his denial was a response to coaching,

Qin later repeated: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 185:11-13.

Qin's counsel and Qin spoke during a thirteen-minute recess prior to cross-examination.

Dep. 204:15-205:13. In a miraculous about-face, he answered questions he had previously refused

to answer, and did so with formulaic responses. *Id.* at 206:19-213:19; 215:11-218:3 ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ This does not cure Qin's misconduct. His refusals to answer wasted enormous time; he

has still not answered many questions; and Petitioners were prevented from asking follow-ups.

     **G.**    **Qin Destroys Assets, Spoliates Evidence, Refuses to Produce Documents, and Violates a Restraining Notice Issued Under CPLR 5222(b)**

This Court dissolved the automatic stay because of the "well-founded risk that Respondent

is concealing or will conceal assets to avoid collection of the judgment," and put Qin's counsel

"on notice that [Petitioners' counsel] believes that Mr. Qin is hiding assets and is transferring

them"; Qin's transfers of multimillion-dollar properties for ten dollars each may not be "for

genuine business purposes." *See* ECF 61 at 2-3; ECF 64 at 2; Ex. J (11/18/22 RT) 23:22-25.

Qin ███████████████████████████████████████████

███████████████████████████████████████ Dep. 184:2-14.



Qin spoliated evidence by ███████████████████████

Specifically, ███████████████████████████████████████

███████████████████████████████ Dep. 210:11-211:7. *Id*. Despite

having a $15-million mansion and two penthouses, Qin claimed ███████

███████████████████████████████████ *Id*.

Qin claims not to know ███████████ But he has █████████

████████████████████████████ Dep. 107:9-16. Qin emphatically

denied that ██████████████████████████████████████

███████████ *Id*. at 218:10-219:8. █████████████████

████████████ *See* Ex. K. Qin ████████████████████

████████████████████████████████████████████ Qin's

████████████ *Id*. at 140:18-141:8 ████████████████

██████████████████████████ *Id*. at 141:9-11; 148:3-149:11.

Qin testified that ██████████████████████████████

Dep. 213:12-19. But he only produced ████████████████

Bizarrely, Qin claimed ██████████████████████████

███████████████████████████████████████████

▮▮▮▮▮▮▮▮▮▮ *Id*. at 199:2-20. Qin has produced no meeting minutes for any of his companies. In other litigations, Qin falsely claimed meeting minutes were "forged." *See supra*, Section II. D. Upon being shown the ▮▮▮▮▮▮ produced in this action, Qin initially answered ▮▮▮ ▮▮▮▮▮▮▮▮ Dep. 193:25-194:6. But when asked a follow-up question, Qin said: ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at

195:12-24. Qin did not explain how ▮▮▮▮▮▮▮▮▮▮▮▮ Asked ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Qin stated, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*.

at 197:7-198:25. Despite ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

On January 20, 2023, Petitioners served a restraining notice under CPLR 5222(b). *See* Ex. L. Ten days later, Qin testified that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dep. 186:24-187:19.

### H.   Qin Denies Representations Made by His Counsel

This Court held it "defies belief that he could have no records of his money" or other responsive records. Defying belief, on January 24, 2023, Qin's counsel wrote that Qin had no non-public documents other than the eight they had produced. Ex. B. But this is untrue.

Qin's counsel represented ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. B at 2. But Qin testified (in an absurd colloquy)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dep. 128:19-23.[5]

----

[5] ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮



4861-1971-2840



Qin's counsel represented that ███████████████████████████████

███████████████████ Ex. B at 2. But Qin testified that ██████████████

██████████████████████████████████████████ Dep. 147:10-12. Qin

also testified ████████████████████████████████████████████

██████████████████████ *Id*. at 141:9-11; 148:3-149:11.

Qin's counsel represented that Qin ██████████████████████████

█████████████████████████████ Ex. B at 2. But ██████████████████

████████████████████████ Ex. M at 18. Moreover, Qin initially testified

that ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ Dep. 178:3-23. ████████████████████████ *Id*. at 178:24-25.

Shown that ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ *Id*. at 180:19-181:3. ██████████████████████

████████████████████████████████████████████████████

██████████████████ *Id*. at 181:6-21; 182:5-12. ██████████████████

███████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████
█████████████████████████████████

Dep. 128:24-131:14.

16

4861-1971-2840

███████████████████████████████████████████████████████

███████████████████████████████ *Id*. 183:2-4.

Qin's counsel represented that ████████████████████████

██████████████████████████████████████ Ex. B at 2. But Qin testified █

██████████████████████████████████████ Dep. 191:5-193:16.

Qin's counsel represented that ████████████████████████

███████████ Ex. B at 3. But, questioned by Qin's own counsel, Qin testified to ███████

███████████████████████ Dep. 213:12-19; *see also id*. at 170:5-10. At 8:51 P.M. on February 13,

2023 (the night before this filing was due), Qin's counsel emailed a "Supplemental Declaration of

Hui Qin," which reveals Qin has now ██████████████████████ Ex. N, ¶ 20. ███

███████████████████████████████████████████████████████

Qin's counsel set the deposition for 11 A.M. because "Qin will be traveling from Long

Island." Ex. R. But this is false; Qin ████████████████████████████████

██████████████████████████████ Dep. 71:23-72:10.

## I.     Qin Breaks the Law and ████████████

Qin falsely testified: ███████████████████████ Dep. 14:6-18. The High Court

of Hong Kong held: "[Qin] holds a HKID card in the name of Li Muk Lam (李木林) which bears

a date of birth different from that stated in his passport"; in just four months, Qin made "4 arrival

4 departure records under the name 'Li Muk Lam.'" *See* Ex. H (*Goldteam*, ¶ 12). Qin eventually

testified that he ████████████████████████████████ Dep. 202:3-203:2. Qin

admitted ████████████████████████████████████████████

██████████████████████████ *Id*. at 112:10-113:2; 114:21-115:5.

Qin testified that ████████████████████████████████████████

████████████████████████████████ Dep. 159:4-20. ████████

████████████████████████████████████████████████████

████████████████████████ *Id*. at 156:10-157:15; 161:11-162:11. ████████

████████████████████████████████████████████ *Id.*

**J.      Qin's Story of** ████████████████████████████

Qin testified: ████████████████████████████████████████

████████████████████ Dep. 106:20-107:8; 112:20-114:9. ████████

████████████████ *Id.* at 186:5-10. ████████████████

████████████████████████████████████ *Id.* at 109:9-19.

████████████████ *Id.* at 117:22-118:4. ████████████

████████████████████████████ *Id.* at 183:5-21; 185:20-

25. ████████████████████████████████████████ *Id.*

**K.      Qin's February 13, 2023 Declaration**

At 8:51 P.M. on February 13, 2023, the night before this brief was due, Qin's counsel sent

a "Supplemental Declaration of Hui Qin." Ex. N. Qin's alleged declaration is ████████████

████████████████████████████████████████ He purports to ████████

████████████████████████████████ *Id.* ¶7. Qin admits

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ *Id.* ¶13. Qin's nonsensical explanation is that ████████

████████████████████████████████ *Id.* Qin swears his

false statement that ████████████████████████████████████

████████████████████████████████████████████████████

████████████ Ex. N, ¶7. These "explanations" insult one's intelligence.

18

**L.     Certification of Meet-and-Confer**

Petitioners certify their good faith efforts to obtain discovery, including meet-and-confers on November 18, 2022 and January 31, 2023, over a month of correspondence about the protective order, a formal February 10, 2023 letter, and many other communications. *See* Lee Decl., ¶¶ 48-52.

## III.     ARGUMENT

**A.     Standards for a Motion to Compel Discovery, Sanctions and Civil Contempt**

Petitioners move under this Court's inherent power, Rule 37, and 28 U.S.C. Section 1927 to compel discovery and for sanctions, and under Local Civil Rule 83.6 for civil contempt due to Respondent and his counsel's violation of court orders and post-judgment discovery obligations.

Rule 69(a)(2) gives judgment creditors broad discovery powers. F.R.C.P. 69(a)(2); *Donoghe v. Astro Aerospace Ltd.*, No. 19-CV-7991 (JPO), 2022 WL 17095249, at *1 (S.D.N.Y. Nov. 21, 2022). Judgment creditors have "wide latitude" in discovery (*Gibbons v. Smith*, No. 01 Civ. 1224 (LAP), 2010 WL 582354, at *3 (S.D.N.Y. Feb. 11, 2010)), including "the identity and location of any of the judgment debtor's assets, wherever located." *Top Jet Enterprises, Ltd. v. Kulowiec*, No. 21-MC-789 (RA) (KHP), 2022 WL 280459, at *4 (S.D.N.Y. Jan. 31, 2022).

A judgment creditor may move under Rule 37(a) to compel compliance. *Exp.-Imp. Bank of Rep. of China v. Democratic Republic of Congo*, No. 16-cv-4480 (DAB), 2018 WL 10601809, at *2 (S.D.N.Y. Aug. 29, 2018) (citation omitted). A district court has "wide discretion in imposing sanctions, including severe sanctions[] under Rule 37(b)(2)" for disobeying a discovery order. *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). Courts imposing Rule 37 sanctions consider: (1) "willfulness"; (2) "efficacy of lesser sanctions"; (3) duration of noncompliance, and (4) "whether the non-compliant party had been warned..." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). Courts may also

"consider[] whether the party's non-compliance has caused prejudice." *Ruiz v. Citibank, N.A*, No. 10 Civ. 5950(KPF)(RLE), 2014 WL 4635575, at *4 (S.D.N.Y. Aug. 19, 2014) (Failla, J.).

Multi-month delays in producing discovery warrant Rule 37(b)(2) sanctions. *See, e.g.*, *Boaziz v. Torati*, No. 14-CV-8024 (RA)(RLE), 2016 WL 11483840, at *1, *4 (S.D.N.Y. June 1, 2016), *report and recommendation adopted as modified sub nom. Boaziz v. Hezi Torati*, No. 14-CV-8024 (RA), 2016 WL 3636663 (S.D.N.Y. June 28, 2016) (sanctioning defendant for making only a partial production five months after the document requests, and over two months after the court ordered production); *see also Kelly v. City of New York*, No. 01 Civ. 8906(LMM)(RLE), 2007 WL 1746912, at *2-3 (S.D.N.Y. June 15, 2007) (four-month delay warrants Rule 37(b)(2) sanctions, even if defendants "never explicitly refused to produce" documents).

Local Civil Rule 83.6 provides for civil contempt for disobeying deposition orders (Rule 37(b)(1)) and discovery orders (Rule 37(b)(2)(A)(vii)). Courts have broad discretion to fashion remedies, including (i) "setting forth the amount of damages," (ii) fines, (iii) imposing "any other conditions," and (iv) directing "the arrest of the contemnor by the United States marshal and confinement" until the contemnor purges contempt and pays the fine. L. Civ. R. 83.6(c)(2)-(5).

### B.    This Court Should Compel Qin to Produce Documents, Appear for Continued Deposition, and Respond to Interrogatories Necessitated by his Misconduct

Four months after this Court's order expediting discovery, Qin has produced only a few non-public documents. This Could already held that "Respondent's production has been woefully inadequate" and that neither Qin nor his "counsel has satisfied their obligations." 1/20/23 RT at 31:10-11; 46:21-47:5. Qin's willful noncompliance includes spoliating evidence and withholding documents located in his house. *See supra*, Section II.G. This Court warned, nearly a month ago, that if documents were not produced, "there's going to be sanctions." Ex. A, 1/20/23 RT at 31:10-11. This Court identified prejudice in the "well-founded risk" that Qin is hiding assets. ECF 61 at

20

2-3. This Court should compel Qin to produce the list of documents set forth in Appendix A to the Lee Declaration based on Qin's violation of Rule 37(a)(3)(A), (a)(3)(B)(iv) and (a)(4).

This Court declared: "I think he's in violation of the order that's compelling his deposition," reaching this conclusion despite the misrepresentation by Qin's counsel that he only refused to answer "a couple of questions." Dep. 56:3-5; 59:2-60:24. In fact, Qin refused to answer dozens of questions, wasted time with long, off-topic speeches, and pretended not to know basic facts. He wasted half the time with unneeded translations, then blamed the translator for his own evasive and inconsistent answers. Compounding matters, Qin disavowed his own testimony in a "Supplemental Declaration." Based on these violations of Rule 37(a)(3)(B)(i), (C) and (a)(4), this Court should compel Qin to submit to a continued deposition of indefinite length, until he fully answers all questions posed, and to answer Petitioners' First Set of Interrogatories, attached as Appendix B to the Lee Declaration, on or before February 28, 2023. Consistent with its past orders expediting discovery, this Court should order expedited responses. *See* Section II.A.

**C.  The Court Should Order Sanctions Against Qin and his Counsel.**

This Court found that neither Qin nor his "counsel has satisfied their obligations" and finding "violation of the order that's compelling [Qin's] deposition." Since then, Qin admitted to possessing (but not producing) documents that Qin's counsel represented did not exist, admitted to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and refused to answer questions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In the Motion for Reconsideration, Qin's counsel violated their obligation to certify that "factual contentions have evidentiary support" and "denials of factual contentions are warranted on the evidence." F.R.C.P. 11(b)(3)-(4). Qin's counsel could have discovered that this motion is premised on lies simply by asking their client basic questions. At the deposition, Qin admitted he

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4861-1971-2840

Qin's counsel could have checked the 89 court judgments and Divorce Decree that each identify the Building Address as his. The Court may use its inherent power to "sanction counsel or a litigant for bad-faith conduct"; "28 U.S.C. § 1927 authorizes a court to require an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred." *Doe 1 v. E. Side Club, LLC.*, No. 18 Civ. 11324 (KPF), 2021 WL 2709346, at *20 (S.D.N.Y. July 1, 2021) (quoting *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995))*, reconsideration denied sub nom. Doe 1 v. E. Side Club, LLC*, No. 18 Civ. 11324 (KPF), 2021 WL 4711249 (S.D.N.Y. Oct. 8, 2021) (Failla, J.).

Qin's counsel violated their "duty of candor to the tribunal" to bring to the court's attention any foreign judgment with negative factual information, or "at the very least . . . apprise[ opposing counsel] so that they could do so." *See Jacquety v. Baptista*, 538 F. Supp. 3d 325, 360 n.53 (S.D.N.Y. 2021); N.Y. Jud. L., Rules of Prof'l Conduct, R. 3.3(a)(1) (McKinney 2022) (prohibiting lawyers from "knowingly mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made"); *id.* cmt. [3] ("failure to make a disclosure [can be] the equivalent of an affirmative misrepresentation").

Sanctions may be awarded if conduct "frustrates the fair examination of the deponent." F.R.C.P. 30(d)(2). In addition to Qin's obstructive conduct, Qin's counsel frustrated the deposition by coaching Qin. Qin's counsel prompted him to say ███████████████████ doing so under the guise of asking ██████████████████ As set forth in the declaration of Columbia University Professor Liu Lening, this question was "not made in good faith." Likewise, Qin's counsel purported to ask for clarification as to ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ This is wrong. It is "prohibited" to "cue a witness how to answer (or avoid answering)

4861-1971-2840

a question." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701 (JPO)(JCF), 2013 WL 6439069, at *4 (S.D.N.Y. Dec. 9, 2013) (collecting cases); *see also Ryan v. Paychex, Inc.*, No. civ 3:08CV1151(WWE), 2009 WL 2883053, at *2 (D. Conn. Sept. 1, 2009) ("speaking objections which suggest how the witness should answer may be sanctionable").

Then, after speaking with his counsel during a thirteen-minute recess, Qin made an abrupt about-face with his testimony, changed his answers, and used formulaic responses. *See supra*, Section II.F. For example, Qin suddenly claimed that ███████████████████████████ ███████████████████ Dep. 216:17-20. But on Petitioners' redirect, *Qin contradicted the answers he gave minutes earlier*. Qin ████████████████████████████████ ███████████████████ *Id.* at 218:10-17; 218:23-3. These abrupt reversals confirm Qin had been coached. In any case, a "deponent and the deponent's attorney have no right to confer during a deposition, except for the purpose of determining whether a privilege shall be asserted." *See Morales v. Zondo, Inc.*, 204 F.R.D. 50, 53 (S.D.N.Y. 2001).

### D.  Respondent Should Be Held In Contempt for Violating Discovery Orders

Qin should be held in civil contempt for repeatedly violating this Court's clear and unambiguous orders. Civil contempt sanctions seek to "compel future compliance with a court order," and are "coercive and avoidable through obedience, and thus may be imposed . . . upon notice and an opportunity to be heard," without a jury or proof beyond a reasonable doubt. *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command." *Id.* at 828. A contemnor "carries the keys of his prison in his own pocket." *Id.*

A party may be held in civil contempt for failure to obey a court order if: (1) the order is clear and unambiguous; (2) proof is clear and convincing; and (3) the contemnor has not diligently

4861-1971-2840

attempted to comply. *Paramedics Electromedicina Comercial, LTDA v. GE Medical Sys. Info. Techs., Inc.*, 369 F.3d 654, 655 (2d Cir. 2004). Here, Qin █████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Dep. 69:4-7. Qin then proceeded to, among other things, assert: █████████████████████████████████████████████████████ ████████████████████████ *Id.* at 89:8-11. This Court also warned that, if documents were not produced, "there's going to be sanctions." 1/20/23 RT at 31:10-11. Qin testified to the existence of documents that have not been produced. Qin made false statements under oath, continues to conceal assets, and told █████████████████████████████████████████████████

Civil contempt has been found for far less. *See, e.g., Schwarz v. ThinkStrategy Capital Mgmt. LLC*, No. 09 Civ. 9346(PAE), 2015 WL 4040558 (S.D.N.Y. July 1, 2015) (detaining contemnor based upon acts and false statements regarding financial transactions); *SEC v. Durante*, No. 01 Civ. 9056(DAB)(AJP), 2013 WL 6800226, at *14 (S.D.N.Y. Dec. 19, 2013) (Magistrate Judge's report and recommendation) (recommending civil contempt finding and incarceration of defendant who wove "a fanciful tale of unparalleled charity and generosity by 'friends'" in order to "hide his financial condition and steadfastly frustrate . . . collection"), *adopted with modification*, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x. 73 (2d Cir. 2016) (imprisonment not ripe due to pending service of criminal sentence). *Compare* Dep. 106:20-107:8; 112:20-114:9; 186:5-10 ("more than 10,000 people . . . are willing to lend money to me"; "I don't have to pay the bills"; "I really don't know" their names).[6]

---

[6] *See also, e.g., Spotnana, Inc. v. American Talent Agency*, No. 09 Civ. 3698(LAP), 2014 WL 7191400 (S.D.N.Y. Dec. 3, 2014) (defendant ordered to surrender to U.S. Marshal's custody pursuant to prior civil contempt order in light of failure to cooperate with a receiver); *SEC v. Bronson*, No. 12-CV-6421 (KMK), 2021 WL 3167853, at *13 (S.D.N.Y. Jan. 19, 2021) (SEC's contempt order based primarily on failure to pay the judgment requiring production of records and deposition); *SEC v. Bronson*, 602 F. Supp. 3d 599, 609 (S.D.N.Y. 2022) (defendant ordered arrested for failing to pay installment of settlement); *SEC v. Bremont*, No. 96 Civ.8771 LAK, 2003 WL 21398932 (S.D.N.Y. June 18, 2003) (imprisonment as sanction for refusal to satisfy judgment, failure to establish inability to pay, and lies to the court); *Genzyme Corp. v. Rice*, No. 15-cv-7892 (SAS), 2016 WL 397673 (S.D.N.Y. Jan. 29, 2016) (civil contempt imprisonment imposed for failure to comply with preliminary injunction).

4861-1971-2840

This Court should order Qin to appear in person for a hearing, and thereupon fashion an appropriate remedy that may include fines, seizure of property or devices, and/or civil detainment until Qin purges his contempt by either paying the Judgment or by (i) producing all documents in Appendix A; and (ii) responding fully to all Interrogatories in Appendix B of the Lee Declaration.

### E.  Petitioners Are Entitled to Reasonable Expenses, Including Attorney's Fees.

If this Motion is granted, the Court must, "after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." F.R.C.P. 37(a)(5)(A). "[B]elated compliance does not insulate a party from sanctions." *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 379 (S.D.N.Y. 2011), *subsequent determination*, 276 F.R.D. 105 (S.D.N.Y. 2011).

### <u>CONCLUSION</u>

Based on the foregoing, Petitioners respectfully request an order:

(i)   Compelling Qin to respond to Petitioners' document requests, attached as Appendix A to the Lee Declaration;

(ii)  Compelling Qin to appear for an additional deposition for indefinite length;

(iii)  Compelling Qin to respond to Petitioners' First Set of Interrogatories, attached as Appendix B to the Lee Declaration, by February 28, 2023;

(iv)  Imposing sanctions on Qin and his counsel pursuant to Fed. R. Civ. P. 37(b)(2), 37(d)(1)(A), 28 U.S.C. §1927, and Court's inherent power for discovery violations;

(v)   Compelling Qin to appear at a civil contempt hearing in person and entering an order of contempt imposing damages, fines, an order seizing and securing devices and/or property, and/or detaining Qin until his contempt is purged;

(vi)  Compelling Qin to pay Petitioners' attorney's fees and expenses incurred in connection with this Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A); and

(vii)  For such other relief as may be appropriate, in law or in equity.

4861-1971-2840

Dated: February 14, 2023
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Geoffrey Sant*
Andrew C. Smith
Geoffrey Sant
Carol Lee
31 West 52nd Street
New York, New York 10019
Tel: (212) 858-1000
Fax: (212) 858-1500
andrew.smith@pillsburylaw.com
geoffrey.sant@pillsburylaw.com
carol.lee@pillsburylaw.com

*Attorneys for Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership*

4861-1971-2840