UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP; HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP; and HUZHOU HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP,<br><br>                    Petitioners,<br><br>                         -v.-<br><br>HUI QIN,<br><br>                    Respondent. | 21 Civ. 9221 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Petitioners brought this action to enforce a multi-hundred-million-dollar judgment awarded to them in a Chinese arbitration. The Court previously confirmed the Chinese arbitral award and granted summary judgment to Petitioners by Opinion and Order dated September 26, 2022. Respondent now asks the Court to reconsider a portion of that decision and vacate its prior judgment. For the reasons that follow, the Court corrects a factual mistake in its original Opinion that was occasioned by an unfortunate redaction in the parties' summary judgment submissions, but declines to reconsider its original legal conclusion.

**BACKGROUND**[1]

A.    **Factual Background**

The Court assumes familiarity with the facts of this case, which facts are recounted at length in its summary judgment Opinion. *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2022 WL 4485277 (S.D.N.Y. Sept. 26, 2022). Only the facts relevant to Respondent's notice of the arbitration — the subject of the instant motion — are recounted here. The facts that follow supplement, and in one instance correct, the Court's initial telling of the facts.

CIETAC, the Chinese arbitral authority that issued the underlying award for Petitioners, thrice endeavored to notify Respondent of the arbitration by mail. On May 26, 2020, it mailed a notice of the arbitration to Respondent at 18B, 14F, Building 1, Beili, Yijingyuan, Chaoyang District, Beijing (the "Building Address"). (*See* Lee Decl., Ex. 1). The Supplemental Agreement

---

[1]    The Court adopts the naming and citation conventions defined in its September 26, 2022 Opinion and Order granting summary judgment to Petitioners. *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2022 WL 4485277, at *1 n.1 (S.D.N.Y. Sept. 26, 2022). The Court draws facts from the parties' submissions in connection with both the motion for summary judgment (Dkt. #15) and the instant motion, including the Declaration of Hui Qin and its exhibits (Dkt. #33 ("Qin Decl.")); the Declarations of Carol Lee and their exhibits (Dkt. #37 ("Lee Decl."); Dkt. #81 ("Lee Recon. Decl.")); the Declaration of Xingtong Zhang and its exhibits (Dkt. #68 ("Zhang Recon. Decl.")), including the unredacted English translation of the Supplemental Agreement (Dkt. #68-5 ("Supplemental Agreement")) and the unredacted English version of the underlying arbitral award (Dkt. #68-3 ("CIETAC Award")); and the Declaration of Yun Peng and its exhibits (Dkt. #69 ("Peng Recon. Decl.")). Any additional facts sourced from the declarations and their accompanying exhibits are cited using the convention "[Name] Decl., Ex. [ ]."

The Court refers to Respondent's brief in support of his motion to vacate the summary judgment Opinion and resulting judgment as "Resp. Recon. Br." (Dkt. #67); to Petitioners' brief in opposition as "Pet. Recon. Opp." (Dkt. #82); and to Respondent's reply as "Resp. Recon. Reply" (Dkt. #88).

attributes this address to Respondent and specifies that notices to that address "shall be deemed as effectively served[.]" (Supplemental Agreement 1; *see also id.* § 12.2). In addition to being listed on the Supplemental Agreement, the Building Address is Respondent's "registered address" with the Chinese government (*see* Pet. Recon. Opp. 6; Resp. Recon. Reply 8 & n.8), though Respondent attests that "the property was sold" and he has not lived there since 2003 (Qin Decl. ¶ 27).[2] CIETAC's mailing to Respondent at the Building Address was "returned by postal services." (CIETAC Award 2).

CIETAC notified Petitioners that the mailing was unsuccessful and prompted them "to reasonably inquire about the valid correspondence addresses" of Respondent and two other arbitral respondents (SMI International and Chengdu Run Yun), whose initial mailings were also returned. (CIETAC Award 2).[3] Petitioners informed CIETAC that Respondent could be served at "9 Xiangjun North Alley, Hujialou Street, Chaoyang District, Beijing" (the "North Alley Address") in care of Yun Peng, or at "Qin Hui, …, Rooms 2015/2016, Floors 18-19, Tower B, No. 2 Jiangtai Road, Chaoyang District, Beijing" (the "Jiangtai Road Address"). (*Id.*). Papers in a separate 2019 Chinese civil lawsuit involving SMI International describe the North Alley

---

[2]   Petitioners give the Court good reason to question the veracity of Respondent's assertions in connection with this motion, including the fact that numerous contemporaneous court documents in other actions attribute the Building Address to Respondent. (*See* Pet. Recon. Opp. 6). Respondent does not contest that the Building Address remains his "registered address" to this day, nor does he specify to whom he sold it or whether he controls that entity. (*See* Resp. Recon. Reply 8-9; Qin Decl. ¶ 27).

[3]   CIETAC's first attempt to serve the remaining arbitral respondent, SMI Shengdian, was successful. (CIETAC Award 2).

Address as SMI International's office address as well as Respondent's residential and mailing address. (*See* Qin Decl., Ex. 8).[4]

In or about June or July 2020, CIETAC re-mailed the arbitration notices to the new addresses provided by Petitioners. (CIETAC Award 2). The documents sent to Respondent at the Jiangtai Road Address were returned by the postal service, but CIETAC's mailing to Respondent at the North Alley Address was delivered successfully. (*Id.*; *see also* Peng Decl., Ex. C (delivery receipt for service at the North Alley Address)). The arbitral papers were also delivered successfully to SMI International and Chengdu Run Yun at the North Alley Address. (CIETAC Award 2). In July 2020, CIETAC gave all parties an opportunity to confirm their addresses and to object to service. (*Id.*; *see also* Lee Decl., Ex. 1). CIETAC ultimately determined that "all documents and written notices pertaining to this case have been effectively served by the Arbitration Court on all parties according to provisions of Article 8 of the Arbitration Rules." (CIETAC Award 5).

CIETAC constituted a panel of three arbitrators in August 2020 and the arbitration proceedings commenced. (CIETAC Award 2-3). On November 11, 2020, the day before the case was set to be heard, CIETAC received from

---

[4] Respondent objects to the Court's consideration of the 2019 suit because Petitioners did not provide an English translation of the judgment in that action. (Resp. Recon. Reply 5). But Respondent's own submissions to this Court provide the same information. Respondent attached to his declaration a copy of objections he raised to the arbitral panel, in which he acknowledges that the 2019 case attributes the North Alley Address to SMI International (but contests the accuracy of those papers). (Qin Decl., Ex. H). Even disregarding the Chinese judgment itself, Petitioners' contention is supported by the record.

Respondent and SMI Shengdian a request to re-send them the arbitration documents, which CIETAC promptly did as a courtesy (and not as a renewed attempt at service). (*Id.*). CIETAC also adjourned the hearing to December 22, 2020. (*Id.*). With the assistance of counsel, Respondent participated in the arbitration. *Qin*, 2022 WL 4485277, at *3. Respondent's counsel in the arbitration also represented the other Arbitral Respondents. (Pet. Recon. Opp. 7). In April 2021, CIETAC issued a written decision largely in favor of Petitioners. *See Qin*, 2022 WL 4485277, at *3 (summarizing the arbitral decision).

**B.   Procedural Background**

The Court granted summary judgment for Petitioners on September 26, 2022. *See generally Qin*, 2022 WL 4485277. On October 11, 2022, the Court entered final judgment in favor of Petitioners. (Dkt. #46). Contentious post-judgment discovery followed. The Court does not exhaustively recount Petitioners' collection efforts here, but notes that in the months following the Court's summary judgment decision, Respondent has repeatedly resisted Petitioners' discovery requests and has produced little responsive information. Respondent's post-judgment conduct is the subject of a separate motion for sanctions. (*See* Dkt. #104).

The instant motion was briefed simultaneously with Petitioners' post-judgment discovery efforts. Respondent filed his motion to vacate the judgment and accompanying papers on November 8, 2022. (Dkt. #66-69). Petitioners filed their opposition and accompanying papers on November 28,

2022.  (Dkt. #81-82).  Respondent filed his reply on December 7, 2022.  (Dkt. #88).  The Court now resolves that fully briefed motion.

## DISCUSSION

## Respondent Is Not Entitled to Relief Under Rule 60(b)(1)

### A.     Applicable Law

Federal Rule of Civil Procedure 60(b) permits "a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances[.]"  *Gonzalez* v. *Crosby*, 545 U.S. 524, 528 (2005).  "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."  *Tapper* v. *Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) (quoting *Nemaizer* v. *Baker,* 793 F.2d 58, 61 (2d Cir. 1986)).  Motions for relief from a judgment under Rule 60 are "committed to the sound discretion of the district court," *Stevens* v. *Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal citation and quotation marks omitted), and are generally granted only upon a showing of "exceptional circumstances," *Ruotolo* v. *City of New York*, 518 F.3d 184, 191 (2d Cir. 2008); *see also Nemaizer,* 793 F.2d at 61 (explaining that although Rule 60(b) "should be broadly construed to do substantial justice, ... final judgments should not be lightly reopened" (citations omitted)).

Under Rule 60(b)(1), a party may seek relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  The mistake provision "affords a party relief from a material mistake that changed the outcome of the court's judgment."  *In re Bulk Oil (USA), Inc.,* No. 93 Civ. 4492 (PKL), 2007 WL 1121739, at *10 (S.D.N.Y. Apr. 11, 2007) (quoting

*Matura* v. *United States,* 189 F.R.D. 86, 89 (S.D.N.Y. 1999))). It permits the Court to correct its own errors of both fact and law. *Kemp* v. *United States*, 142 S. Ct. 1856, 1862 (2022); *see also In re 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003). It is not, however, "an additional opportunity to make arguments or attempt to win a point already 'carefully analyzed and justifiably disposed.'" *In re Bulk Oil*, 2007 WL 1121739, at *10 (quoting *Matura,* 189 F.R.D. at 90). A Rule 60(b)(1) motion must be filed within a year after entry of the challenged judgment. Fed. R. Civ. P. 60(c)(1).

**B.     Respondent Was Afforded Proper Notice of the Arbitration**

Although Respondent originally opposed confirmation of the CIETAC Award on several grounds, he seeks reconsideration of only one: whether he received proper notice of the arbitration. (Resp. Recon. Br. 13-20). But, as discussed in the remainder of this section, in fixating on a minor, non-dispositive factual error in the Court's prior Opinion, Respondent misses the forest for the trees.

The New York Convention provides for nonenforcement of a foreign arbitral award where "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." New York Convention, Art. V(1)(b). This defense "essentially sanctions the application of the forum state's standards of due process." *Iran Aircraft Indus.* v. *Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992) (quoting *Parsons & Whittemore Overseas Co., Inc.* v. *Societe Generale de L'Industrie du Papier (RAKTA),* 508 F.2d 969, 975-76

7

(2d Cir. 1974)). "Under American standards of due process, a party is entitled to 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pagaduan* v. *Carnival Corp.*, 830 F. App'x 61, 62 (2d Cir. 2020) (summary order) (quoting *Jones* v. *Flowers*, 547 U.S. 220, 226 (2006)); *see also Iran Aircraft Indus.*, 980 F.2d at 146 ("[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quoting *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976)). In evaluating whether notice is reasonably given, the proper inquiry is whether the party giving notice "acted reasonably in selecting means likely to inform … not whether [the subject] actually received notice." *Weigner* v. *City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). Because the due process inquiry requires consideration of the totality of the circumstances, it is necessarily a fact-specific determination. *Clermont* v. *Intra-Op Monitoring Servs., LLC*, No. 16 Civ. 6037 (DAB), 2017 WL 2239564, at *6 (S.D.N.Y. Mar. 29, 2017) (citing *Flowers*, 547 U.S. at 234).

The Article V(1)(b) inquiry is not to be confused with other notice and service standards. A party may have sufficient notice to satisfy due process — and by extension, Article V(1)(b) — even if it was not served with process to the satisfaction of the Federal Rules of Civil Procedure. *See Karaha Bodas Co., L.L.C.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 299 (5th Cir. 2004) ("The right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil

8

Procedure." (internal quotation omitted)).  Similarly, a party may have sufficient notice to satisfy Article V(1)(b) even if that notice is not sufficient under the rules governing the arbitration itself.  *P.T. Reasuransi Umum Indonesia* v. *Evanston Ins. Co.*, No. 92 Civ. 4263 (MGC), 1992 WL 400733, at *3 (S.D.N.Y. Dec. 23, 1992) (concluding that notice comported with due process even though respondent "was not given proper notice of the commencement of the arbitration proceeding or the appointment of the arbitrators as is required by [the arbitration association's] rules").  Because the due process inquiry is "limited to determining whether the procedure used was fundamentally unfair," *BSH Hausgeräte, GMBH* v. *Kamhi*, 282 F. Supp. 3d 668, 673 (S.D.N.Y. 2017) (quoting *Abu Dhabi Inv. Auth.* v. *Citigroup, Inc.*, No. 12 Civ. 283 (GBD), 2013 WL 789642, at *7 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 557 F. App'x 66 (2d Cir. 2014) (summary order)), it often demands less than either of those two alternative measures of notice.

The Court previously determined that "[t]he procedures CIETAC used to serve [Respondent] were not fundamentally unfair such that they violated due process." *Qin*, 2022 WL 4485277, at *8 (internal quotation marks omitted).  In so holding, it found CIETAC's three attempts to mail service to Respondent to be constitutionally adequate, particularly because the third mailing was sent "to the North Alley Address, which is the address attributed to [Respondent] on the Supplemental Agreement."  *Id.*  The Court explained that "mailing arbitration documents to an address listed in the underlying agreement is sufficient notice under the New York Convention." *Id.*  The Court found

9

additional support for Respondent's awareness of the arbitration in "the fact that [Respondent] contacted CIETAC to request additional copies of the arbitration documents[.]" *Id.*

Respondent believes the Court's initial determination to be in error because, he believes, it was premised on the Court's mistaken understanding that the Supplemental Agreement attributed the North Alley Address to Respondent, when in fact it lists the Building Address.  (Resp. Recon. Br. 3-4, 11-12).  He further argues that whether service to the Building Address is constitutionally sufficient is a materially disputed fact that defeats summary judgment because both Respondent and Mr. Yun Peng, a Chengdu Run Yun employee to whom the mailing to the North Alley Address was addressed, both attest that they did not actually receive the mailing.  (*Id.* at 14-17 (citing Peng Recon. Decl., Ex. A ¶ 5; Qin Decl. ¶ 29)).  In response, Petitioners argue that CIETAC's initial mailing to the Building Address alone is constitutionally sufficient notice (Pet. Recon. Opp. 17-22), and that in any event, Respondent had actual notice of the arbitration because he appeared and participated in the proceeding and because he shared counsel with the other Arbitral Respondents (including his wholly-owned company SMI Shengdian), which were served successfully (*id.* at 22-25).  Ultimately, Petitioners' legal analysis is the correct one.

The Court takes this opportunity to clarify and correct a factual error in its original Opinion.  The Supplemental Agreement attributes to Respondent the Building Address, not the North Alley Address.  (*See* Supplemental

10

Agreement 1). The Court does not appreciate that this critical fact was redacted in Petitioners' original submissions.

That mislabeling, however, does not change the Court's conclusion that Respondent was afforded proper notice of the arbitration. Because the Supplemental Agreement states that service on Respondent at the Building Address is adequate (Supplemental Agreement § 12.2), and because Respondent never changed or updated his service address for purposes of that agreement, Petitioners' argument that CIETAC's initial mailing of notice to that address alone satisfies due process is colorable. *See Yukos Cap. S.A.R.L.* v. *OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 297-98 (S.D.N.Y. 2013), *aff'd*, 592 F. App'x 8 (2d Cir. 2014) (summary order) (noting that it was arbitral respondent's responsibility to inform the arbitral body of any changes to its preferred method of service). But while mailing notice to an address listed in the parties' underlying agreement typically satisfies due process, once it became clear that the mailing was not delivered, CIETAC had an obligation to "tak[e] additional reasonable steps to notify [Respondent] … if practicable to do so," such as sending the mailing again by a different delivery method. *Flowers*, 547 U.S. at 234-35; *see also CKR Law LLP* v. *Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 524-25 (S.D.N.Y. 2021) (deeming proposal to mail service constitutionally insufficient because first attempt to serve documents at same address was unsuccessful).

In line with this obligation, CIETAC took additional, reasonable steps "with due regard for the practicalities and peculiarities of the case[.]" *Mullane*

11

v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950). After its first mailing to Respondent was returned, it sent the arbitration notices to Respondent at two alternative addresses (the Jiangtai Road Address and the North Alley Address). (CIETAC Award 2). Although its mailing to the Jiangtai Road Address was returned as undeliverable, CIETAC verified that the mailing to the North Alley Address was successful (*id.*), and a delivery receipt for that successful mailing appears in the record (Peng Decl., Ex. C).

Under the circumstances, mailing the notice papers to the Building Address, the Jiangtai Road Address, and the North Alley Address was "reasonably calculated" to apprise Respondent of the proceedings. *See Pagaduan,* 830 F. App'x at 62. Petitioners (and CIETAC) had good reason to believe that Respondent could be reached at the North Alley address; They understood it be the address attributed to him in a contemporaneous Chinese civil action, and two companies that he controls — represented by his counsel — accepted service there without objection. *See Tianjin Port Free Trade Zone Int'l Trade Serv. Co., Ltd.* v. *Tiancheng Chempharm, Inc.,* No. 17 Civ. 4130 (JS) (AYS), 2018 WL 2436990, at *4 (E.D.N.Y. May 30, 2018), *aff'd,* 771 F. App'x 36 (2d Cir. 2019) (summary order) (finding notice proper under the New York Convention where a portion of CIETAC's first mailing to an address listed in the parties' underlying agreement was returned but CIETAC verified delivery of additional mailings to two alternative addresses);[5] *Yukos Cap. S.A.R.L.,* 963

---

[5] Respondent distinguishes *Tianjin Port* on the grounds that CIETAC's successful alternative mailing in that case was to an address registered to the respondent with the New York Secretary of State. (Resp. Recon. Br. 16 n.13). The Court does not deny this

12

F. Supp. 2d at 297 (finding, based on respondent's unresponsiveness, that it was reasonable for arbitrator to address subsequent notices to respondent's affiliate).  Respondent's Article V(1)(b) challenge fails not because any one attempted mailing is constitutionally sufficient, but because CIETAC's mailing to the address listed in the parties' contract, followed by its mailings to two additional, known addresses meets the relatively low burden imposed by due process.

Adding further support to the Court's conclusion, these notice efforts undeniably resulted in Respondent having an opportunity to appear and present his objections both to service and to the merits of the arbitration. Respondent contacted CIETAC the night before the arbitration was scheduled to occur to request re-mailing of the arbitration documents and an adjournment of the hearing (CIETAC Award 3), evincing that he was actually

---

factual difference.  But while court or arbitral rules may require service to such a registered address, the Constitution is not so exacting.  *Tianjin Port* is instructive because like the present case, it found CIETAC's verified mailing to alternate, known addresses of the respondent to be constitutionally sufficient:

> When some of the materials were returned, CIETAC sent the materials to two other addresses — a Great Neck, New York, address that [respondent] has on file with the New York Department of State as the address to which New York will mail process, and a Bayside, New York, address.  The documents sent to the latter two addresses were not returned, and CIETAC determined that the documents were duly served on [respondent]. [The respondent] nevertheless contends that it never received notice of the arbitration and submits a declaration to that effect. But notice mailed directly to an entity is sufficient to afford it due process, and we agree with the District Court that [respondent]'s declaration does not satisfy the "heavy" burden imposed on a party asserting a defense under the New York Convention.

*Tianjin Port*, 771 F. App'x at 37 (quoting *Encyclopaedia Universalis S.A.* v. *Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)).  *Tianjin Port* thus turned on the fact that service to the alternative addresses was calculated to provide notice — not the fact that one of the alternative addresses was registered with the government.

13

aware of the arbitration, *see CBF Industria de Gusa S/A* v. *Amci Holdings, Inc.*, 316 F. Supp. 3d 635, 653 (S.D.N.Y. 2018) (considering an arbitral respondent's request for additional time to answer an initial pleading "evidence that [the respondent] was provided proper notice of the [a]rbitration"); *accord Anhui Provincial Imp. & Exp. Corp.* v. *Hart Enters. Int'l, Inc.*, No. 96 Civ. 128 (LAK), 1996 WL 229872, at *3 (S.D.N.Y. May 7, 1996). The arbitral body assented and adjourned the hearing for more than a month. (CIETAC Award 3). At the rescheduled hearing, Respondent had an ample opportunity to participate and present arguments with the assistance of counsel. *See Qin*, 2022 WL 4485277, at *8-9.

Respondent's remaining counterarguments are unavailing. Even accepting Respondent's assertion that his receipt of the mailing at the North Alley Address is a contested fact (Resp. Recon. Br. 14-17), that contest is not material to the due process inquiry. "Due process does not require perfect or actual notice." *Yukos Cap. S.A.R.L.*, 963 F. Supp. 2d at 297; *see also Mullane*, 339 U.S. at 314-15. Respondent has also not shown that he was prejudiced. While a lack of actual notice could explain his failure to nominate an arbitrator of his choosing within the timeframe provided by CIETAC rules, Respondent was afforded the opportunity to challenge the adequacy of service and the composition of the arbitral panel multiple times in the underlying arbitration. (*See, e.g.*, Qin Decl., Ex. 8 (filing raising service objections to CIETAC)). That the arbitral panel ultimately disagreed with Respondent's positions is of no moment. Due process is concerned only with whether there was notice

14

reasonably calculated to permit Respondent to present his objections, not whether those objections ultimately persuaded the arbitral panel.

Because Respondent has still not carried the very heavy burden of proof required to avoid confirmation of a foreign arbitral award, *see D.H. Blair & Co., Inc.* v. *Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006), the Court will not vacate its original judgment.

## CONCLUSION

For the foregoing reasons, Respondent's motion for relief from the judgment is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 66.

SO ORDERED.

Dated:   March 31, 2023
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge