# Exhibit G

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT
PARTNERSHIP, et al,                 : Docket #21-cv-09221

                        Petitioners, :

      -against-                      :

HUI QIN,                            : New York, New York
                                      April 18, 2023
                        Respondent.

-------------------------------:

                    PROCEEDINGS BEFORE
            THE HONORABLE KATHERINE POLK FAILLA
                UNITED STATES DISTRICT JUDGE



APPEARANCES:

For Petitioners:    PILLSBURY WINTHROP SHAW PITTMAN LLP
                    BY:  ANDREW SMITH, ESQ.
                         GEOFFREY SANT, ESQ.
                         CAROL LEE, ESQ.
                    31 West 52nd Street
                    New York, New York 10036


For Respondent:     SEIDEN LAW GROUP LLP
                    BY:  AMIAD MOSHE KUSHNER, ESQ.
                         XINTONG ZHANG, ESQ.
                    322 8th Avenue, Suite 1704
                    New York, New York 10001



Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1              THE DEPUTY CLERK:  Your Honor, this is in
 2   the matter of Huzhou Chuangtai Rongyuan Investment
 3   Management Partnership, et al. v. Qin.
 4              Counsel, please state your name for the
 5   record, beginning with petitioners.
 6              MR. SMITH:  Good morning, Your Honor.  This
 7   is Andrew Smith from Pillsbury Winthrop Shaw
 8   Pittman on behalf of petitioners.
 9              And I have along with me my colleagues,
10   Geoffrey Sant and Carol Lee.
11              THE COURT:  Good morning.  Thank you very
12   much for appearing.
13              And representing the respondent this
14   morning?
15              MR. KUSHNER:  Good morning, Your Honor.
16   This is Amiad Kushner from Seiden Law.  My
17   colleague, Tony Zhang, is on the line with me.
18              THE COURT:  Okay.  Thank you as well.
19              There is a pending motion to compel and for
20   sanctions and for civil contempt.  And what I'd like
21   to do, please, is to give to you an oral decision
22   because that will be the quickest way of deciding
23   the matter.  So what I'm going to ask you to do,
24   please, is to take a moment and mute yourselves.
25   And as you do so, I'll get ready to read the
```

```
 1    decision.  Thank you very much.
 2            Today we're having a conference regarding
 3    the petitioners' motion to compel for sanctions and
 4    for an order of civil contempt against respondent
 5    and for sanctions against his current counsel, the
 6    Seiden Law Group.  The Court has reviewed the
 7    briefing from petitioners and from respondent and
 8    the Seiden firm in connection with the motion, as
 9    well as the exhibits submitted with those
10    submissions, including the transcript of the
11    respondent's January 30, 2023 deposition.  I'm also
12    aware of some recent e-mails that provide the
13    parties' interpretations, how they see the more
14    recent productions and the updates on them.
15            For the reasons that I'm about to state,
16    this court finds that respondent has repeatedly and
17    willfully failed to comply with his discovery
18    obligations.  And as a consequence, this Court is
19    ordering the respondent to respond to petitioners'
20    document requests and interrogatories on an
21    expedited basis and to sit for a second deposition
22    at his own expense.
23            Additionally, The Court orders respondent
24    to bear petitioners' costs and attorneys' fees
25    associated with this motion.  But at this time, the
```

1    Court declines to assess sanctions against the

2    Seiden firm, and it declines to hold respondent in

3    civil contempt.

4           The procedural history of this matter is

5    recounted at length in the Court's summary judgment

6    and reconsideration opinions, so only the history

7    that's relating to post-judgment discovery is going

8    to be recounted by me here.

9           On October 28th of 2022, recognizing a

10   well-founded risk that respondent is concealing or

11   will conceal assets to avoid collection of the

12   judgment, the Court granted petitioners' motion to

13   dissolve Rule 62(a)'s 30-day stay on collection

14   following judgment.  And for the same reason, the

15   Court recognized a need for expedited post-judgment

16   discovery and ordered expedited production shortly

17   thereafter.

18          On November 19th of 2022, the Court held a

19   conference to discuss Benjamin Xue's motion to

20   withdraw as counsel for respondent.  The Court

21   granted the motion in reliance on a representation

22   from incoming counsel for respondent, the Seiden Law

23   Group, that it had obtained the full client file

24   from Xue and would promptly produce all responsive

25   documents.  At that conference, petitioners raised

1    to the Court their concern that they had not yet

2    received any documents from respondent despite the

3    Court's order expediting discovery.

4            Less than one week later, Xue & Associates

5    filed a motion to quash petitioners' subpoenas on

6    the firm.  On January 6th of 2023, the Court denied

7    the firm's motion to quash in large part and ordered

8    Xue to respond to subpoenas on an expedited

9    timeline.  The information sought by the subpoena

10   included respondent's known addresses, banks and the

11   sources of funds used to satisfy a settlement in a

12   different litigation.

13           On January 9th of 2023, petitioners

14   requested a conference to discuss their ongoing

15   concerns about respondent's compliance with his

16   post-judgment discovery obligations; specifically,

17   petitioners' claim that respondent had not produced

18   a single document in the three months following the

19   entry of judgment.  Respondent produced 82 documents

20   the day after petitioners filed their letter

21   request; 81 of which were public documents,

22   including court judgments in other cases involving

23   respondent.

24           The Court held a conference on January 30th

25   of 2023 to discuss the matter.  The Court ordered

1    the parties to meet and confer, following which,

2    respondent would file a letter on the docket

3    containing any outstanding objections to

4    petitioners' request for production.  The Court also

5    ordered respondent to appear for deposition in the

6    month of January.  Finally, the Court noted that

7    should petitioners still not be satisfied with

8    respondent's productions, they should file a

9    proposed motion-to-compel briefing schedule by

10   February 6th of 2023.

11           The Court received a call from the parties

12   on January 30th of 2023, several hours into

13   respondent's deposition.  Petitioners reported that

14   respondent repeatedly refused to answer their

15   questions.  The Court ordered respondent to answer

16   every question unless specifically instructed not to

17   by his attorney, and warned counsel that respondent

18   was in violation of the order compelling his

19   deposition.

20           On February 14th of 2023, petitioners filed

21   the instant motion.  Petitioners' claim that

22   respondent is in violation of three of this Court's

23   orders:  Number one, the November 1, 2022 order

24   expediting discovery; number two, the January 23,

25   2023 order directing respondent to sit for a

```
 1    deposition; and number three, the January 30, 2023
 2    order issued during respondent's deposition,
 3    directing him to answer questions unless
 4    specifically advised not to by counsel.
 5            Petitioners seek, first, an order
 6    compelling respondents to -- respondent to respond
 7    to the document request contained in Appendix A to
 8    the Declaration of Carol Lee, respond to the
 9    interrogatories contained in Appendix B to the Lee
10    Declaration, and sit for an additional deposition of
11    indeterminate length.
12            They also seek sanctions on respondent and
13    his counsel.  They seek an order compelling
14    respondent to appear in person at a civil contempt
15    hearing at which the Court will enter a contempt
16    finding and order damages, seizure of devices and
17    property, and/or detention until respondent's
18    contempt is purged by paying the judgment or
19    producing the documents requested in Appendix A and
20    answering the interrogatories in Appendix B, and an
21    order awarding petitioner attorneys' fees and
22    expenses for the prosecution of this motion.
23            On April 13th of 2023, following the
24    scheduling of this hearing, the parties filed a
25    joint update regarding respondent's productions.
```

1    They reported that in the weeks since petitioners

2    filed the instant motion, respondent has produced an

3    additional 92 documents; 79 of which are publicly

4    available.  Respondent's recent productions include

5    his 2020 tax returns and bank statements from

6    JPMorgan Chase.  I turn, now, to the legal standards

7    at issue here.

8           "Discovery of a judgment debtor's assets is

9    conducted routinely under the Federal Rules of Civil

10   Procedure."  I'm quoting here from a Second Circuit

11   decision in 2002, First City, Texas-Houston, NA v.

12   Rafidain Bank.

13          And under Rule 37(a), a judgment debtor --

14   excuse me -- judgment creditor may move to compel a

15   judgment debtor's compliance with post-judgment

16   discovery requests.  It's -- that's a principle

17   found in many cases.  One of them is Export-Import

18   Bank of The Republic of China v. Democratic Republic

19   of The Congo; 2018 Westlaw 10601809.

20          And in considering a motion to compel, the

21   Court keeps in mind that judgment creditors must be

22   given the freedom to make broad inquiries to

23   discover hidden or concealed assets of the judgment

24   debtor.  Here, I'm quoting from GMA Accessories,

25   Incorporated v. Electric Wonderland, Incorporated;

 1   2012 Westlaw 1933558, a decision from a sister court

 2   in this district from 2012.

 3          Any "motion must include a certification

 4   that the movant has, in good faith, conferred or

 5   attempted to confer with a person or party failing

 6   to make disclosure or discovery in an effort to

 7   obtain it without court action."  I'm quoting here

 8   simply from Rule 37(a)(2).

 9          And so, for the first principle, first part

10   of this decision, this Court is ordering respondent

11   to respond to petitioners' document requests and

12   interrogatories and to sit for an additional

13   deposition.  In this regard, petitioners have

14   demonstrated that they are entitled to an order

15   compelling these actions.

16          Petitioners have plainly met the criteria

17   for an order to compel.  They seek information about

18   bank accounts, credit cards and trusts controlled by

19   respondent, as well as documentation of his income,

20   property and vehicles and contact information for

21   the assistants and friends respondent has identified

22   in his deposition as contributing to and/or managing

23   his finances.  This information squarely relates to

24   their efforts to locate his -- respondent's assets.

25          Additionally, petitioners satisfied Rule

```
 1    37's procedural requirements by certifying that they
 2    conferred with respondent on the issue prior to
 3    filing this motion.  And indeed, this Court has
 4    ordered such a meet-and-confer at Docket Entry 100
 5    in this case.  For the most part, respondent does
 6    not dispute that petitioners' requests are
 7    appropriate.  And, in fact, he agrees to respond to
 8    their document requests and interrogatories, except
 9    to the extent that they seek privileged information
10    and subject to certain limited objections discussed
11    at pages 21 and 22 of his brief.  And given this
12    agreement, this Court does not spend more time on
13    the propriety of an order to compel, but instead
14    objections to petitioners' discovery requests.
15            First, respondent objects to petitioners'
16    demands for immigration documents that he submitted
17    to USCIS from March 2017 through the present on the
18    ground that petitioners have not established their
19    relevance because respondent testified that he did
20    not participate in any investment-based immigration
21    program.  This objection is denied or, if you will,
22    overruled.  Respondent's immigration records are
23    relevant because they may contain information about
24    his finances, addresses and marital status, and thus
25    may identify assets and speak to the nature and
```

1   timing of respondent's purported divorce.

2           In the Fifth Circuit in 2016, in the case

3   of Cazorla v. Koch Foods of Mississippi, LLC, a

4   similar request was granted for the disclosure of

5   visa applications.  Of course, productions

6   responsive to this request shall not be disclosed

7   beyond the extent permitted by the parties' existing

8   confidentiality order.

9           The respondent also objects to petitioners'

10  demands for documents related to the FBI's raid of

11  respondent's home in Old Westbury, New York,

12  including business cards received from FBI agents,

13  search warrants and subpoenas, again, on relevance

14  grounds.  Petitioners respond that it is appropriate

15  to seek these records because respondent referenced

16  the raid in his deposition and because information

17  about the investigation can constitute

18  circumstantial evidence of fraud.

19          Again, this Court denies or overrules

20  respondent's objection to this document request.

21  Subjects raised by a party in their deposition are

22  properly within the scope of discovery, and

23  respondent's potential history of fraud speaks to

24  petitioners' instant concerns about current

25  fraudulent concealment of assets.

1            Finally, respondent requests that if the
2    Court orders him to sit for an additional
3    deposition, it will be limited to three hours and
4    focus only on the documents or information that
5    petitioners obtained after respondent's January 30th
6    deposition.  The Court understands that since the
7    briefing of this motion, respondent has agreed to
8    sit for an additional deposition on April 24th.  The
9    Court appreciates respondent's cooperation, but
10   addresses, nonetheless, the parties' previously
11   briefed concerns in order to offer the parties
12   clarity going into respondent's second deposition.
13           Depositions are typically limited to seven
14   hours.  See the committee note on Rule 30.  But
15   courts have broad discretion to set the length of
16   depositions appropriate to the circumstances of the
17   case.  I'm quoting here from Arista Records LLC v.
18   Lime Group LLC; 2009 Westlaw 1752254, a decision
19   from Judge Lynch from 2008.
20           This Court finds that a deposition of up to
21   two days is appropriate under the circumstances.
22   And in reaching this conclusion, this Court
23   considered the following factors:  The Court shares
24   petitioners' concern that if it imposes a time
25   limitation on respondent's deposition, he may

 1   intentionally fill the time with unrelated anecdotes
 2   and non sequiturs, as he did in his first
 3   deposition, including such topics unrelated to the
 4   case as the unpopularity relative of the (inaudible)
 5   -- in the United States.
 6          This Court is not concerned that respondent
 7   is requesting interpretation services without cause.
 8   After all, it is in the interest of all parties for
 9   their communications to be clear and unambiguous.
10   But the Court notes that the use of an interpreter
11   cuts in half the time available for asking and
12   answering questions and weighs in favor of a
13   longer-than-usual deposition.
14          Finally, because of respondent's lack of
15   cooperation during his first deposition, the Court
16   will not limit the scope of his second deposition to
17   information obtained after January 30th of 2023
18   because that limitation would unfairly prevent
19   petitioners from fully exploring pertinent lines of
20   questions that they were previously thwarted from
21   exploring by respondent's recalcitrance, so the
22   Court denies respondent's requested limits on his
23   second deposition.
24          Under ordinary circumstances, this Court
25   would credit a party's promise to fully produce

 1   responsive discovery, but as the Court will detail

 2   in a little while, it has serious concerns about the

 3   genuineness of respondent's efforts to comply with

 4   his discovery obligations to date.  In the interest

 5   of clarity and in an effort to avoid future

 6   discovery disputes, the Court finds that an order

 7   compelling production is necessary to ensure

 8   respondent's compliance.  Accordingly, petitioners'

 9   motion for an order compelling discovery is granted.

10          Respondent shall respond in full to the

11   document request contained in Appendix A of the Lee

12   Declaration and to the interrogatories contained at

13   Appendix B to the Lee Declaration no later than

14   April 21, 2023.  The Court expects that respondent

15   will respond to these requests sufficiently and

16   fully.  Partial responses like those requests

17   received to date -- a single tax return, a single

18   bank statement, and things of the like -- are not

19   sufficient and will constitute a violation of this

20   order.

21          Petitioners shall also sit for an

22   additional deposition not to exceed two days in

23   length no later than April 20 -- beginning no later

24   than April 24, 2023.  At his deposition, respondent

25   shall answer all questions asked of him unless

16

1   specifically instructed otherwise by counsel.  And

2   if, during respondent's deposition, it becomes

3   apparent that additional time is needed, the parties

4   shall promptly contact chambers.

5         I, now, proceed to petitioners' request for

6   sanctions as to the respondent.  Here, the legal

7   standard is as follows:  Failure to comply with a

8   discovery order may result in sanctions, including

9   monetary penalties and dismissal of an action with

10  prejudice.  One case for that proposition is the

11  Second Circuit's 2009 decision in Agiwal v. Mid

12  Island Mortgage Corporation; 555 F.3d 298.

13        The Court considers several factors in

14  evaluating a sanctions motion.  These include,

15  number one, the willfulness of the noncompliant

16  party or the reason for noncompliance; number two,

17  the efficacy of lesser sanctions; number three, the

18  duration of the period of noncompliance; and number

19  four, whether the noncompliant party had been warned

20  of the consequences of noncompliance.

21        Because the text of the rule requires only

22  that the district court's orders be just, however,

23  and because the district court has wide discretion

24  in imposing sanctions under Rule 37, these factors

25  are not exclusive, and they need not each be

1    received against the party -- resolved -- excuse

2    me -- against the party imposing the sanctions.  I'm

3    citing here to two decisions from the Second

4    Circuit:  Their 2010 decision in Southern New

5    England Telephone Company v. Global Naps

6    Incorporated; 624 F.3d 123, and Shcherbakovskiy v.

7    Da Capo Al Fine, Limited; 490 F.3d 130 from 2007.

8         So going through these factors, I will

9    now -- the Court finds first that respondent has

10   repeatedly and intentionally violated the Court's

11   discovery orders and that sanctions are warranted.

12   For one, respondent's productions to date have been

13   woefully inadequate.  Although respondent touts

14   producing over 2,500 pages of responsive documents,

15   both the content and the timing of his document

16   productions are quite lacking.

17        In the more than five months since the

18   Court ordered expedited discovery in this matter,

19   petitioner has produced only a few nonpublic

20   documents.  More than 90 percent of his productions

21   are judgments from other court actions involving

22   respondent and his affiliates, which, while

23   technically responsive, are public documents.

24   Respondent has offered very little that petitioners

25   could not and probably have not obtained on their

1    own.

2            Respondent's few productions of nonpublic

3    documents are clearly incomplete.  For instance, he

4    produced just one year of bank records from one bank

5    despite respondent, his current counsel and his

6    former counsel identifying at least four other banks

7    that he uses:  JPMorgan Chase, Standard Chartered

8    Bank, Citibank, and East West Bank.  Similarly,

9    respondent produced only one tax return, an amended

10   2021 return filed in January 2023 for a single year,

11   despite testifying that he filed U.S. taxes in 2020,

12   2021 and 2022.  After petitioners filed this motion,

13   respondent produced one additional tax return for

14   2020 and statements from one additional bank,

15   JPMorgan.

16           To the Court's knowledge, respondent has

17   not produced his 2022 returns or statements from the

18   remaining banks.  Respondent has, perhaps more

19   troublingly, given conflicting and sometimes

20   incredible responses to document requests.  For

21   instance, he maintains that he has no responsive

22   documents to petitioners' request for documents

23   relating to motor vehicles, watercraft, or aircraft,

24   despite testifying about a black Rolls-Royce.  Even

25   worse, he has completely refused to produce

1    documents that he admits exist and are responsive to

2    petitioners' requests.

3           For instance, he had an assistant take a

4    responsive document, a written agreement with

5    St. Tome LLC, a company from which he receives funds

6    each month, to Singapore, and he refuses to produce

7    a schedule of assets connected with a deed of gift

8    for his mansion in Old Westbury despite testifying

9    that the document is in one of his New York homes.

10    The willfulness of respondent's compliance is

11    evidenced as well by the timing of his bare-bones

12    productions.

13           Respondent did not produce any documents

14    until after petitioners filed a letter notifying the

15    Court of his noncompliance.  He made additional

16    disclosures just hours before this Court's

17    January 20, 2023 pre-motion conference.  The Court

18    is not blind to the timing of these scant

19    disclosures.  It seems that respondent's strategy is

20    to produce copious public records on the eve of

21    court deadlines to divert attention from his

22    uncooperativeness.

23           Additionally, respondent has a pattern of

24    producing the bare minimum in key categories of

25    documents; a single tax return, a single bank record

1   as examples, so that he can claim to have satisfied

2   those requests.  He has not, and that informs the

3   Court's decision today.

4        Additionally, respondent violated the

5   Court's order compelling his deposition.  During

6   respondent's deposition, the parties informed the

7   Court that respondent refused to answer nearly every

8   question asked of him based on his opinion that the

9   questions were irrelevant.  The Court warned

10  respondent that his recalcitrance was a violation of

11  the order compelling his deposition, yet even after

12  the Court's intervention, even after the Court's

13  instruction, respondent continued to flout the

14  proceeding, filibustering with long stories

15  unrelated to the questions asked, and telling an

16  incredible story about his lifestyle being funded by

17  the generosity of friends whose names respondent has

18  conveniently forgotten.  Contrary to respondent's

19  suggestion, merely appearing at the deposition was

20  not enough.  The Court ordered respondent to respond

21  to the questions in good faith, and he did not.

22        Time and again, respondent has done what he

23  perceives to be, but is not even, the bare minimum

24  to be able to feign cooperation with petitioners'

25  discovery requests.  Given respondent's pattern of

1   behavior over a period of months, the Court finds

2   that respondent's repeated efforts to evade

3   disclosure of his assets and to avoid collection are

4   willful violations of his obligations under the

5   Federal Rules of Civil Procedure and this Court's

6   orders.  Monetary sanctions are appropriate.

7          Under Rule 37(a)(5)(A), the Court must,

8   after giving an opportunity to be heard, require the

9   party or deponent whose conduct necessitated the

10  motion, the party or attorney advising that conduct,

11  or both, to pay the movant's reasonable expenses

12  incurred in making the motion, including attorneys'

13  fees.

14          This Court orders respondent to pay

15  petitioners' reasonable expenses and attorneys' fees

16  incurred in connection with the instant motion.

17  Additionally, respondent shall bear the costs of his

18  own deposition continuation.  This sanction reflects

19  the severity of respondent's violations and, it is

20  hoped, incentivizes respondent to cooperate fully

21  with future discovery efforts.

22          Although the Court would be legally

23  justified in doing so, it will not, at this time,

24  issue a contempt order against respondent.  To be

25  clear:  Federal courts have the statutory authority

22

```
 1   to punish contempt of their authority -- fine or
 2   imprisonment, or both -- at the Court's discretion.
 3   As shown in § 401 of Title 18 of the United States
 4   Code, a contempt order is a "potent weapon" that is
 5   inappropriate if there "is a fair ground of doubt as
 6   to the wrongfulness of the defendant's conduct."
 7        I'm quoting here from the Second Circuit's
 8   2009 decision in Latino Officers Association of the
 9   City of New York, Incorporated v. the City of New
10   York; 558 F.3d 159.
11        A civil contempt order is appropriate if,
12   number one, the order the contemnor failed to comply
13   with is clear and unambiguous; number two, the proof
14   of noncompliance is clear and convincing; and number
15   three, the contemnor has not diligently attempted to
16   comply in a reasonable manner.  As but one of many
17   cites for this proposition, I quote -- or I'm citing
18   to Perez v. Danbury Hospital; 347 F.3d 419, a Second
19   Circuit decision from 2003.
20        Courts enjoy broad discretion in
21   determining the appropriate sanction for civil
22   contempt.  That's discussed at some length in
23   Carrington v. Graden; 2021 Westlaw 1077772.
24        The Court may resort to incarceration as a
25   coercive sanction for civil contempt such that the
```

1    contemnor is able to purge the contempt and obtain

2    his release by committing an affirmative act.

3    That's discussed by the Supreme Court in

4    International Union of Mine Workers of America v.

5    Bagwell; 512 U.S. 821, and by the Second Circuit in

6    Close-Up International, Incorporated v. Berov;

7    474 Federal Appendix 790.  But the Court is denying

8    the petitioners' motion for a contempt hearing

9    without prejudice as to its renewal upon further

10   noncompliance.

11        To explain, this Court has no doubt that a

12   contempt finding could be justified on the existing

13   record.  The Court's orders regarding document

14   production and respondent's obligations to answer

15   all questions at his deposition, unless specifically

16   instructed otherwise by counsel, were clear and

17   unambiguous.  And as just detailed, respondent's

18   failure to comply with those orders is beyond

19   question.  But the Court is concerned that a

20   contempt filing is -- finding is premature mainly

21   because it presupposes that respondent will fail to

22   comply with today's order compelling further

23   discovery.

24        In other words, this Court, today, at this

25   moment, is hopeful that today's ruling can serve as

1  a wake-up call for respondent and can prompt him to

2  take his discovery obligations more seriously, but

3  respondent is hereby warned:  Further noncompliance

4  with the Court's discovery orders, including today's

5  ruling, will simply not be tolerated.  If respondent

6  again fails to comply with his discovery obligations

7  in a timely and complete manner, petitioners may

8  renew their contempt motion.  The Court will then

9  promptly schedule a civil contempt hearing in which

10  respondent may be found in contempt and incarcerated

11  until he cures his deficient productions or

12  satisfies the outstanding judgment.

13         The Court is denying, however, petitioners'

14  motion for sanctions as to the Seiden Law Group.  It

15  is the final request that petitioners are making.

16  And in petitioners' view, sanctions are warranted

17  because the firm made false statements to the Court

18  in respondent's reconsideration motion, including

19  that respondent is not presently affiliated with

20  either the building address or the Zhang Tai Road

21  address as discussed in the Court's prior written

22  opinion.

23         Petitioners assert that had the firm

24  conducted even a reasonably diligent investigation,

25  including looking at the Court judgments respondent

1    eventually produced in this matter, it would have
2    seen numerous contemporaneous records attributing
3    those addresses to respondent.  Petitioners also
4    maintain that sanctions are warranted against the
5    firm because the firm frustrated respondent's
6    deposition by coaching respondent's answers by, for
7    instance, prompting him to refer to Duolu as his
8    ex-wife rather than his wife and to change his
9    testimony about who is depicted burning money in a
10   video respondent showed on his phone.
11        In its defense, the Seiden Law Group is
12   arguing that petitioners' sanctions motion is an
13   improper attempt to supplement or to reargue the
14   reconsideration motion and seeks to explain the
15   supposed inconsistencies the petitioners identify.
16   The firm also denies coaching respondent during his
17   deposition.
18        At this time, the Court will not order
19   sanctions against the Seiden Law Group because
20   petitioners have not yet established the firm's bad
21   faith.  The Court has already issued its opinion
22   denying respondent's motion for reconsideration and
23   will not address the substantive issues raised in
24   that motion, including which addresses are properly
25   attributable to respondent here now.

1          The Court does find, however, that while it

2     ultimately disagreed with respondent's views on the

3     law and the facts, the views were not totally

4     unfounded, and counsel had a good faith basis to

5     make those arguments respondent's -- namely,

6     respondent's sworn testimony regarding his

7     affiliation, or lack thereof, with the relevant

8     addresses.

9          The Court also notes that the Seiden firm

10    was retained and appeared shortly before the filing

11    of the reconsideration motion.  And while that is no

12    excuse for not conducting a thorough investigation,

13    it suggests -- at least the Court hopes it

14    suggests -- that the firm acted with limited

15    information rather than bad faith.

16         Petitioners' concerns about counsels'

17    conduct during respondent's deposition do not, on

18    this record, warrant sanctions.  Many of the issues

19    petitioners raised -- chiefly, the firm's

20    clarification of respondent's marital status -- may

21    be attributable to good-faith attempts to create an

22    accurate record or to clarify unclear

23    foreign-language interpretations, rather than a

24    more nefarious attempt to prompt respondent to

25    change course.

1        Going forward, the Court expects the Seiden

2   Law Group to diligently ensure respondent's

3   compliance with his discovery obligations and to

4   impress upon respondent the consequences of failing

5   to do so.  The Court also expects respondent to

6   refrain from any improper or bad-faith conduct

7   during his second deposition.  Failure to do so may

8   result in future sanctions, including sanctions

9   against the Seiden Law Firm, but such a penalty is

10  not warranted at this juncture.

11        In conclusion, the Court finds that it has

12  been very generous to respondent to date.  That

13  generosity, however, has now reached its limit.  For

14  the reasons the Court has just laid out,

15  petitioners' motion to compel and for sanctions

16  against respondent is granted, and petitioners'

17  motion for contempt finding against respondent and

18  for sanctions against the Seiden Law Group are

19  denied without prejudice as to their renewal.

20        This Court remains deeply concerned about

21  respondent's five-month history of flouting his

22  post-judgment discovery obligations.  It is trying

23  at the moment to be optimistic that he will reform

24  his behavior going forward, if for no other reason

25  other than the threat of incarceration for continued

1   noncompliance.

2            I thank you all for your attention to this

3   ruling.  I will direct the clerk of court to

4   terminate the pending motion at Docket Entry 104.

5   Thank you very much.  We are adjourned.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3          I, Marissa Mignano, certify that the foregoing

4     transcript of proceedings in the case of

5     HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT

6     PARTNERSHIP, et al v. HUI QIN, Docket #21-cv-09221,

7     was prepared using digital transcription software and

8     is a true and accurate record of the proceedings.

9

10

11    Signature  ___*Marissa Mignano*_____

12                   Marissa Mignano

13

14    Date:      April 19, 2023

15

16

17

18

19

20

21

22

23

24

25