**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT
PARTNERSHIP, HUZHOU HUIHENGYING
EQUITY INVESTMENT PARTNERSHIP, and
HUZHOU HUIRONGSHENG EQUITY
INVESTMENT PARTNERSHIP,

                  Petitioners,

                  v.

HUI QIN,

                  Respondent.

            21 Civ. 9221 (KPF)

------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'**
**MOTION FOR ATTORNEY'S FEES AND COSTS**

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................ 2

III.  ARGUMENT ................................................................................................................. 6

    A.  Attorney's Fees Are Mandatory and Are "the Mildest" Form of Sanctions........... 6

    B.  Fees Negotiated and Billed at Arm's Length Are Reasonable .............................. 9

    C.  Qin's Misconduct and Choices Caused Petitioners' Fees.................................... 12

IV.  CONCLUSION............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.V.E.L.A., Inc. v. Est. of Monroe*,
    No. 12 Civ. 4828 KPF JCF, 2014 WL 715540 (S.D.N.Y. Feb. 24, 2014) ...............................7

*Armament, Sys. & Procedures, Inc. v. IQ H.K. Ltd.*,
    546 F.Supp.2d 646 (E.D.Wis. 2008)....................................................................................10

*Balcor Real Estate v. Walentas-Phoenix Corp.*,
    73 F.3d 150 (7th Cir. 1996) ..........................................................................................10, 12

*Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir. 1979)...............................................................................................7

*Matter of Cont'l Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...............................................................................................10

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*,
    No. 1:17-CV-00519-DCN, 2021 WL 2444157 (D. Idaho June 15, 2021) ............................11

*Disabled Patriots of Am. v. Niagara Grp. Hotels, LLC*,
    No. 07 Civ. 284S, 2008 WL 941712 (W.D.N.Y. Apr. 4, 2008) ...............................................7

*Farmers Co-op Co. v. Senske & Son Transfer Co.*,
    572 F.3d 492 (8th Cir. 2009) ...............................................................................................12

*Fendi Adele v. Filene's Basement, Inc.*,
    No. 06 Civ. 244 RMB MHD, 2009 WL 855955 (S.D.N.Y. Mar. 24, 2009) ...........................7

*First Fed. Sav. & Loan Ass'n of Rochester v. United States*,
    88 Fed. Cl. 572 (2009) ..........................................................................................................11

*Fla. Rock Indus. v. United States*,
    9 Cl.Ct. 285 (1985) ...............................................................................................................11

*Fox v. Vice*,
    563 U.S. 826 (2011)........................................................................................................10, 11

*In re GMC*,
    110 F.3d 1003 (4th Cir. 1997) .............................................................................................12

*Matthews v. Wis. Energy Corp.*,
    642 F.3d 565 (7th Cir. 2011) ...............................................................................................10

*In re Terrorist Attacks on Sept. 11, 2001*,
    2015 WL 6666703 (S.D.N.Y. Dec. 18, 2015) ....................................................................11

*Tse v. UBS Fin. Servs., Inc.*,
    568 F. Supp. 2d 274 (S.D.N.Y. 2008).........................................................................7

*Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*,
    273 F.R.D. 372 (S.D.N.Y. 2011) ...........................................................................7, 8

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 34 ..........................................................................................................................2
    Rule 37 ...............................................................................................................7, 11, 12
    Rule 37(a)(5)(A) ..................................................................................................1, 6, 7, 9
    Rule 69 ..........................................................................................................................2

I.      **INTRODUCTION**

This Court's April 18, 2023 Order held: "This Court orders respondent to pay petitioners' reasonable expenses and attorneys' fees incurred in connection with the instant motion. . . . This sanction reflects the severity of respondent's violations . . . ." April 18, 2023 Order at 20:25-21:19 (a copy of which is attached to the Declaration of Carol Lee ("Lee Decl."), filed concurrently with this motion, as Ex. G).  This Court found a "pattern of behavior over a period of months," "repeated efforts to evade disclosure," and "willful violations of his obligations under the Federal Rules of Civil Procedure and this Court's orders." *Id*. Moreover, "[u]nder Rule 37(a)(5)(A), the Court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." *Id*.

As set forth above, this Court has already found that Respondent Hui Qin's ("Qin" or "Respondent") misconduct is a willful and egregious pattern of intentionally violating court orders and obligations. This is not an instance where an award of attorney fees was triggered by a mere technical or unintentional violation of Rule 37(a)(5)(A). Here, the misconduct is willful, continuous, and flagrant.

The only remaining issue is the reasonableness of Petitioners' legal fees. To avoid contentious motion practice, here Petitioners seek less than half of their actual legal fees. In particular, Petitioners only seek fees for a subset of the attorneys who have appeared in this action: partners Geoffrey Sant and Andrew Smith, and counsel Carol Lee. Petitioners have voluntarily chosen not to seek fees from other attorneys who have worked on this matter. In addition, these three attorneys have each ███████████████████████████ a fixed rate of $██. By comparison, Qin pays his own counsel as much as $██ per hour, which is 30% more than the fixed hourly rates sought by Petitioners here.

Accordingly, the Court should order all fees and expenses requested in this motion.

## II.   **BACKGROUND**

Pursuant to this Court's April 18, 2023 Order and Fed. R. Civ. P. 37(a)(5), Petitioners respectfully submit this memorandum of law in support of their motion for an award of fees, costs, and interest.

Qin has been evading and violating this Court's orders since October 2022. Finding that "there is a well-founded risk that Respondent is concealing or will conceal assets to avoid collection of the judgment," this Court dissolved the automatic stay and permitted Petitioners to "immediately enforce the judgment." *See* ECF 61 at 3.  On October 31, 2022, Petitioners served their first set of post-judgment demands for production of documents on Qin pursuant to Fed. R. Civ. P. 34 and 69 ("Requests").  On November 1, 2022, this Court granted Petitioners' request for expedited discovery, "recogniz[ing] the need for expedited post-judgment discovery," and ordered Qin "to respond to Petitioners' Requests on or before November 9, 2022." *See* ECF 64 at 2.  But on November 9, 2022, Qin served his responses and objections to the Requests without producing any documents.  Two months after the court-ordered deadline for expedited discovery, Qin had not produced a single document.

On January 10, 2023, "the day after Petitioners filed their letter request" to the Court seeking a pre-motion conference, Qin "produced 82 documents . . . , 81 of which were public documents" (73 of them court judgments against Qin and his companies). *See* April 18, 2023 Order at 6:19-21. Between January 13 and January 19, Qin produced 96 more documents, 90 of them public documents.

At the January 20 conference, the Court held that "the Respondent's production has been woefully inadequate" and that neither Qin nor his counsel had satisfied their obligations. *See*

2

January 20, 2023 Hearing Transcript (ECF 106-1) at 15:5-6, 46:21-25. Between this Court's January 20 hearing and February 2, Qin produced 35 documents, of which 29 were public documents and 5 were duplicates. Qin only produced one new, non-public document.

On January 30, 2023, in accordance with the Court's order, Petitioners deposed Qin. The deposition began at 11:00 a.m. because Qin had been "████████████████" *See* Dep. (ECF 108-11) at 71:23-72:10. Prior to being asked any questions, Qin announced: "███████████████ █████████████████████████████" *See* Dep. at 10:21-23. Over the next eighty minutes, Qin refused to answer 24 questions. Petitioners then sought relief from the Court. "The Court ordered respondent to answer every question unless specifically instructed not to by his attorney, and warned . . . that respondent was in violation of the order compelling his deposition." April 18, 2023 Order at 7:15-19. *After* this order, Qin not only refused to answer questions, he stated: "████████████████████████████████████████████ ██████" Dep. at 89:8-11. Indeed, "even after the Court's instruction, respondent continued to flout the proceeding, filibustering with long stories unrelated to the questions asked, and telling an incredible story about his lifestyle being funded by the generosity of friends whose names respondent has conveniently forgotten." April 18, 2023 Order at 20:12-18. Qin "intentionally" wasted the parties' time at his first deposition "with unrelated anecdotes and non sequiturs." *See id*. at 13:25-14:3.

On February 14, 2023, Petitioners filed their Motion to Compel, for Sanctions, and for an Order for Civil Contempt against Qin ("Sanctions Motion") (ECF 104). In the Sanctions Motion, Petitioners noted that Qin, among other things, spoliated evidence by giving documents to his assistant to remove from the United States, contradicted his previous sworn statements and his counsel's representations, and lied to this Court. As this Court found, Qin "completely refused to

produce documents that he admits exist and are responsive to petitioners' requests," such as his consulting agreement with St. Tome LLC. *See* April 18, 2023 Order at 18:25-19:12. Qin refused "to produce a schedule of assets connected with a deed of gift for his mansion in Old Westbury despite testifying that the document is in one of his New York homes." *Id*. In Qin's opposition to the Sanctions Motion, Qin admitted: (i) Qin only produced bank records for one of the five or six bank accounts that he used; (ii) Qin refused to answer dozens of questions at his January 30 deposition; (iii) even after the Court ordered him to answer all questions, Qin refused to answer an additional ten questions; and (iv) Qin admitted that it was his habit to give his ex-wife Duo Liu "████████████████████" *See* ECF 116 at 3-15.

After Petitioner's Sanctions Motion was fully briefed, Qin suddenly produced 92 more documents, 79 of them publicly-filed documents that Qin could have produced earlier. *See* ECF 135. But Qin's production remains "woefully inadequate." To date, Qin has only produced two sets of *incomplete* bank statements (missing months or years of information) while admittedly failing to produce any bank statements for four other bank accounts. *After full briefing of the Sanctions Motion*, Qin finally produced his ███████. Notably, both Qin and his counsel had repeatedly and falsely told this Court that the ███████ did not exist, even while withholding it for nearly half a year. The overwhelming majority of documents identified in Petitioners' Sanctions Motion remain unproduced.

On April 18, 2023, this Court held that Qin "has repeatedly and willfully failed to comply with his discovery obligations." *See* April 18, 2023 Order at 4:16-18. This Court found that Qin's repeated violations of the Court's discovery orders warranted sanctions. Finding, for the second time in this litigation, that Qin's "production to date have been woefully inadequate," the Court held that "both the content and timing of his document productions are quite lacking." *Id.* at 17:8-

16. Furthermore, Qin's "few productions of nonpublic documents are clearly incomplete." *Id.* 18:2-3. In sum, Qin "has done what he perceives to be, but is not even, the bare minimum to be able to feign cooperation with petitioners' discovery requests." *Id.* at 20:22-25. Finding that "[m]onetary sanctions are appropriate" under the circumstances, the Court ordered Qin to pay Petitioners' reasonable expenses and attorneys' fees incurred in connection with Petitioners' Sanctions Motion, and bear the costs of his own deposition continuation. *Id.* at 20:25-21:18.

Petitioners twice contacted Respondent to propose stipulating to the amount of this fee award and thereby avoid further motion practice. On a meet-and-confer on April 20, 2023 (two days after the Court's April 18, 2023 Order), Petitioners offered to provide a discount on Petitioners' actual fees, and offered to stipulate to an amount in the low six figures. *See* Lee Decl. ¶¶ 4-5. Petitioners' counsel asked that Qin's counsel discuss this offer with their client and provide a specific proposal. *Id.* Qin's counsel never provided any proposed number in response to this offer. *Id.* ¶ 6. On May 8, 2023, Petitioners' counsel wrote to Qin's counsel following up on the offer to stipulate to the amount of the fee award ordered by the Court. *Id.* ¶ 7. Petitioners' counsel informed Qin's counsel that the total amount of fees actually incurred by Petitioners on the Motion to Compel was approximately $██████ and that the total amount of costs incurred was $2,500. *Id.* Nevertheless, Petitioners proposed a reduction of over 50% on Petitioners' actual fees to "reduce costs for the parties and limit the burden on the Court." *Id.* ¶¶ 7-8; Ex. A. At 5:24 pm on May 8, 2023, Qin's counsel replied to Petitioners' message, describing Petitioners' offer as a "generous offer." *Id.* ¶ 9; Ex. A. Qin's counsel stated that they had "forwarded [Petitioners'] proposal to Mr. Qin and have not received his response yet." *Id.* Counsel also stated that they expect to make a document production the following day. As of the filing of this motion, no document production has been made. At 5:59 pm on the evening of Petitioners' deadline to file

5

this motion, Qin provided a counterproposal ████████████████████████████████

███████████████. *Id.* ¶ 9-10.

As discussed below, Petitioners are legally entitled to the entirety of their fees for bringing

and litigating the Sanctions Motion. Nevertheless, in an attempt to limit contentious motion

practice, and to streamline this proceeding, Petitioners are seeking only $161,374.50 in fees and

$2,500 in costs, which represents an over 50% discount on Petitioners' actual fees and costs, and

which provides an additional discount beyond the amount Petitioners proposed to Qin's counsel.

Petitioners' hourly rates in this matter are reasonable.

Qin's engagement letter with Seiden Law ████████████████████████████████

███████████████. Lee Decl. ¶¶ 22-23; Ex E. By contrast, Petitioners' counsel charges a

fixed hourly rate for all timekeepers of $██ per hour. *Id.* ¶ 15. This represents ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██. *Id.* To avoid contentious motion practice, Petitioners have voluntarily removed from their

submission all time entries from six other attorneys who have worked on this matter, including

partner Ronald Cheng, and associates Sarah Madigan, Fangwei Wang, Yang Wang, Nika Yeo and

Andrea Shang. *See id.* ¶ 17. In sum, Petitioners have discounted the hourly rates for six attorneys

to zero, and ████████████████████████████████████████████████ (to

the fixed hourly rate of $███).

## III.  ARGUMENT

### A.  Attorney's Fees Are Mandatory and Are "the Mildest" Form of Sanctions

As this Court found, Qin produced documents after the Sanctions Motion was filed (indeed,

after the Sanctions Motion was fully briefed). "Under Rule 37(a)(5)(A), the Court must, after

giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." April 18, 2023 Order at 21:7-13.

Sanctions are mandatory "even if the discovering party ultimately obtains, through Herculean and expensive effort, the discovery to which it was entitled." *Fendi Adele v. Filene's Basement, Inc.*, No. 06 Civ. 244 RMB MHD, 2009 WL 855955, at *5 (S.D.N.Y. Mar. 24, 2009); *see also*, *e.g.*, *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("[P]laintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics . . . ."); *A.V.E.L.A., Inc. v. Est. of Monroe*, No. 12 Civ. 4828 KPF JCF, 2014 WL 715540, at *7 (S.D.N.Y. Feb. 24, 2014); *Disabled Patriots of Am. v. Niagara Grp. Hotels, LLC*, No. 07 Civ. 284S, 2008 WL 941712, at *3 (W.D.N.Y. Apr. 4, 2008); *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (citing 7 Moore's Federal Practice, §37.23 (Lee Decl. Ex. H)).

Here, this Court found that Qin has acted in bad faith in concealing information and thwarting post-judgment discovery. Qin "has repeatedly and intentionally violated the Court's discovery orders and [therefore] sanctions are warranted." April 18, 2023 Order at 17:8-11. But even if Qin had not acted in bad faith, sanctions would still be mandatory under Rule 37(a)(5)(A) due to Qin's failure to produce certain documents until after briefing on the Sanctions Motion commenced (and indeed, until after all briefing was completed). *See, e.g., Disabled Patriots*, 2008 WL 941712, at *3; *Underdog Trucking*, 273 F.R.D. at 377. Fee reimbursement is an automatic "if-then" mandate of Rule 37. *See also Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 321

(S.D.N.Y. 2008) ("Sanctions are appropriate '[w]hen a party seeks to frustrate [discovery] by …

preventing disclosure of facts essential to an adjudication on the merits.'").

       Attorney's fees are considered "the mildest" form of sanctions. *Underdog Trucking,* 273

F.R.D. at 379. It merely puts the winning party back in its financial position status quo ante. In the

present case, Petitioners spent $███████ in attorney fees and $████ in costs to obtain

documents and information to which they are legally entitled. Lee Decl. ¶ 16. An order requiring

reimbursement of this amount would be "the mildest" possible sanctions for Qin's overt and

intentional misconduct. Nevertheless, to avoid disputes over the reasonableness of the fees,

Petitioners are voluntarily reducing the amount of fees sought by nearly 60%. That is, even though

it would otherwise be mandatory for Qin to reimburse Petitioners for the entire $████████ in

fees and costs spent preparing, filing, and litigating the motion to compel and for sanctions,

Petitioners have voluntarily reduced the amount of the requested fees and costs to just $163,874.50.

Lee Decl. ¶¶ 17-21; Exs. B-D.

       As set forth above, prior to filing this motion, Petitioners attempted to avoid this motion

practice by offering to stipulate to an amount with Respondent, and indeed offered a discount of

over 50% on Petitioners' actual fees. *Id.* ¶¶ 4-8. Petitioners offered to take a discount on their

actual fees (as Petitioners are in fact doing in this motion) to avoid costly and unnecessary motion

practice and to limit the burden on this Court. *Id.* Despite Qin's counsel recognizing Petitioners'

proposal as "generous," Qin declined to accept Petitioners' proposal and provided a

counterproposal ███████████████████████████████████████. *Id.* ¶¶ 9-

10. Qin does not dispute that Petitioners' proposal was reasonable, but only claims that he is unable

to pay. Petitioners rejected Qin's counterproposal. *Id.* ¶ 11. Accepting Qin's counterproposal

would require Petitioners to accept what Petitioners and this Court know is untrue. As this Court

found, "[i]t defies belief that he can live the lifestyle he leads and have no money." *See* ECF 106-1 at 46:25-47:2.

Rule 37(a)(5)(A) mandates an award of attorney fees in order to put the injured party back in the position it was prior to the sanctioned party's misconduct. Here, because Petitioners seek to streamline resolution of this matter by voluntarily reducing their requested fees far below the amount actually incurred, this Court should award the entirety of the $163,874.50 in fees and costs sought by Petitioners.

The reasonableness of Petitioners' fee submission is further evidenced by a comparison with the daily interest accruing on the judgment. This comparison is appropriate because, by refusing to provide discovery, Qin has delayed enforcement of the Court's judgment and has specifically caused harm to Petitioners equal to this accrued interest. Thus, Petitioners would have been justified in requesting that this Court impose monetary sanctions that include this ongoing, unpaid interest.

Daily interest on the judgment entered by this Court is $80,011.03, which makes Petitioners' entire fee submission roughly equal to just two days of unpaid interest on this judgment.

This further confirms that Petitioners' fees and costs are reasonable and are the "mildest" form of sanctions.

**B.    Fees Negotiated and Billed at Arm's Length Are Reasonable**

As discussed above, the amount Petitioners seek in this motion is much less than the actual amount of legal fees and costs Petitioners incurred in litigating the motion to compel and for sanctions. Lee Decl. ¶¶ 13-18.

Courts hold that "the best guarantee of reasonableness is willingness to pay." *Balcor Real Estate v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996); *see also Matthews v. Wis. Energy Corp.*, 642 F.3d 565, 572-73 (7th Cir. 2011) ("willingness to pay is an indication of commercial reasonableness"). Here, the amount sought is much less than what Petitioners were actually billed by their legal counsel, which incorporates ███████████████████████ ████████████████████████████. Lee Decl. ¶ 15. ████████████████████ ████████████████████████████████████. *Id.* Given these ███ ██████, the Court should decline to modify these hourly rates.

Qin has been paying his own attorneys up to $███ per hour to fight Petitioners' efforts to enforce the judgment. *Id.* ¶¶ 22-25; Exs. E & F. The lead partner handling this matter for Qin, Amiad Kushner, bills at $875 per hour. *Id.* Therefore, it cannot be disputed that Petitioners' ████████ hourly rates are reasonable.

Courts regularly find that fee arrangements negotiated at arm's-length between a client and its law firm are necessarily reasonable: "A law firm is a business, and like any business its charges must be commercially reasonable or its client base will dry up." *Armament, Sys. & Procedures, Inc. v. IQ H.K. Ltd.*, 546 F.Supp.2d 646, 649 (E.D.Wis. 2008). "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price," replacing fees actually negotiated with an ideal fee. *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). As Justice Kagan explained for a unanimous Supreme Court, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The injured party must be relieved of "expenses attributable" to the improper conduct of the party that "acted wrongly." *Id.* at 834.

10

Unlike statutory fee-shifting principles used in civil rights litigation, a "successful Rule 37 motion" is intended to "simply [make] the [winning party] whole." *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *18 (S.D.N.Y. Dec. 18, 2015) (citing *On Time Aviation, Inc. v. Bombardier Capital, Inc*., 354 F. App'x 448, 452 (2d Cir. 2009) (approving higher out-of-district rates because "the reasoning behind the calculation of awards under fee-shifting statutes ... is not ... precisely analogous to that applicable to Rule 11 awards," the intent of which is not compensation of victims, but the "curbing of abuses."); *Ceglia v.. Zuckerberg*, No. 10–CV–00569A (LF), 2012 WL 503810 (W.D.N.Y. Feb. 12, 2012) ("Plaintiff's arguments proffered in opposition to Defendants' use of out-of-district hourly rates ... fail to perceive any distinction between attorney's fees awarded pursuant to a fee-shifting statute, and attorney's fees awarded as a sanction.")).

Generally, a court "is reluctant to second-guess counsel's time allocation for what has proved to be a winning case." *Fla. Rock Indus. v. United States*, 9 Cl.Ct. 285, 288 (1985) *cited in First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 88 Fed. Cl. 572, 585 (2009) ("How experienced trial counsel staffs his or her case reflects counsel's professional judgment as to which the Court recognizes substantial leeway."); *see also Fox*, 563 U.S. at 838 ("We emphasize, as we have before, that a determination of fees 'should not result in a second major litigation.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Instead, courts simply refund the money that the winning party would not have incurred "but for" the losing party's conduct. *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp*., No. 1:17-CV-00519-DCN, 2021 WL 2444157, at *12 (D. Idaho June 15, 2021) ("The Court will thus award [the winning party] the costs it would not have incurred but for [the losing party's] discovery misconduct, including the costs of travel and computerized legal research.").

11

In this case, Petitioners reasonably pursued this litigation because they have a $450+ million judgment that they cannot enforce without obtaining basic financial information from Qin. Given this, Petitioners' requested legal fees of $161,374.50 in pursuing their Sanctions Motion are reasonable. Petitioners' legal fees in making the Sanctions Motion are less than one-tenth of one percent of their $450+ million judgment against Qin.

Moreover, Qin's mandatory obligation to pay Petitioners' attorney fees under Rule 37 was triggered by Qin himself, including by "repeatedly and intentionally violat[ing] the Court's discovery orders"; by timing his production of "copious public records on the eve of court deadlines to divert attention from his uncooperativeness"; by having "a pattern of producing the bare minimum in key categories of documents"; and by violating "the Court's order compelling his deposition." *See* April 18, 2023 Order at 17:9-11; 19:17-25; 20:4-5.

Rule 37 mandates that the victim of discovery abuse should not be stuck with the bill. All of Petitioners' fees resulting from their Sanctions Motion are reasonable.

### C.    Qin's Misconduct and Choices Caused Petitioners' Fees

A defendant cannot contest the fees it caused through its own litigation choices and misconduct. Thus, a defendant who vigorously litigated "is in no position to complain that it induced [plaintiff] to incur *large* legal costs." *Balcor*, 73 F.3d at 153 (original emphasis).

When litigation expenses were "caused by . . . misdeeds," the "Court need not directly address the reasonableness of the outside counsel's bills." *In re GMC*, 110 F.3d 1003, 1017 (4th Cir. 1997). If the fees "were indeed caused" by misconduct, then "the calculation will be relatively simple: what did [the injured party] pay…?" *Id.*; *see also*, *e.g.*, *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009) (reimbursing 110% of plaintiff's fees because of discovery misconduct).

Here, this Court concluded that Qin's "productions to date have been woefully inadequate" and that "both the content and the timing of his document productions are quite lacking." April 18, 2023 Order at 17:12-16. Qin's "few productions of nonpublic documents are clearly incomplete." *Id.* at 18:2-3. Qin "has, perhaps more troublingly, given conflicting and sometimes incredible responses to document requests . . . . Even worse, he has completely refused to produce documents that he admits exist and are responsive to petitioners' requests." *Id.* at 18:18-19:2. "The Court is not blind to the timing of [Qin's] scant disclosures. It seems that respondent's strategy is to produce copious public records on the eve of court deadlines to divert attention from his uncooperativeness." *Id.* at 19:17-22. Qin "has a pattern of producing the bare minimum in key categories of documents; a single tax return, a single bank record as examples, so that he can claim to have satisfied those requests. He has not." *Id.* at 19:23-20:2.

In determining an appropriate sanction for Qin's past discovery misconduct, this Court may also take into account Qin's ongoing and persistent violations of this Court's orders. That is, in fashioning an appropriate sanction, this Court may take notice of the fact that Qin has already violated this Court's April 18, 2023 Order, which required Qin to "sufficiently and fully" respond to Petitioners' document requests and interrogatories by April 21, 2023. *See* April 18, 2023 Order at 15:10-20. This Court further instructed that "a single tax return, a single bank statement, and things of the like – are not sufficient and will constitute a violation of this order." *Id.* Despite the clear language of this order, *Qin did not produce a single page of a single document* by the Court-ordered April 21, 2023 deadline. ECF 144 at 1.

Here, it would be appropriate to order a much larger fee award against Qin. For example, Qin intentionally wasted the parties' time during his deposition. It would be appropriate to order Qin to pay all fees and costs for that initial deposition. As this Court held:

13

> Additionally, respondent violated the Court's order compelling his deposition … The Court warned respondent that his recalcitrance was a violation of the order compelling his deposition, yet even after the Court's intervention, even after the Court's instruction, respondent continued to flout the proceeding, filibustering with long stories unrelated to the questions asked, and telling an incredible story about his lifestyle being funded by the generosity of friends whose names respondent has conveniently forgotten.  Contrary to respondent's suggestion, merely appearing at the deposition was not enough.  The Court ordered respondent to respond to the questions in good faith, and he did not.

*Id.* at 20:4-21.

Qin's misconduct at his deposition wasted the time of Petitioners' legal counsel, resulting in a full day of legal fees for the several attorneys in attendance at the deposition. Nevertheless, Petitioners have not sought these fees here.

Likewise, it would have been entirely appropriate to order Qin to pay Petitioners' actual fees and costs in bringing the Sanctions Motion, as opposed to the reduced amount that Petitioners are hereby seeking. Nevertheless, in the interests of simplifying this motion and the Court's work, Petitioners are requesting only $161,374.50 in fees and $2,500 in costs, for a total fee award of $163,874.50. Petitioners respectfully submit that this amount is indisputably reasonable.

## IV. <u>CONCLUSION</u>

Petitioners respectfully request that this Court require Qin to pay $161,374.50 in fees and $2,500 in costs, together with any interest and other expenses resulting from the Sanctions Motion. Petitioners further request such other relief as this Court deems just and proper.

Dated: May 9, 2023

New York, New York                     PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Geoffrey Sant*
    Andrew C. Smith
    Geoffrey Sant
    Hugh M. Ray III (*pro hac vice*)
    Carol Lee
    31 West 52nd Street
    New York, New York 10019
    Tel: (212) 858-1000
    Fax: (212) 858-1500
    andrew.smith@pillsburylaw.com
    geoffrey.sant@pillsburylaw.com
    hugh.ray@pillsburylaw.com
    carol.lee@pillsburylaw.com

    *Attorneys for Petitioners Huzhou Chuangtai*
    *Rongyuan Investment Management*
    *Partnership, Huzhou Huihengying Equity*
    *Investment Partnership, and Huzhou*
    *Huirongsheng Equity Investment Partnership*