UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x
HUZHOU CHUANGTAI RONGYUAN  :
INVESTMENT MANAGEMENT  :
PARTNERSHIP, HUZHOU HUIHENGYING  :
EQUITY INVESTMENT PARTNERSHIP, and  :
HUZHOU HUIRONGSHENG EQUITY  :
INVESTMENT PARTNERSHIP,  :
                                                                                :    21 Civ. 9221 (KPF)
                 Petitioners,  :
                        v.  :

HUI QIN,  :
                 Respondent.  :
---------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PETITIONERS' MOTION FOR ATTORNEY'S FEES AND COSTS**

# TABLE OF CONTENTS

| | Page(s) |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| CONCLUSION | 10 |

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Abdell v. City of New York*,
   No. 05-cv-8453 RJS, 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015) ...................3, 6, 8

*Allende v. Unitech Design, Inc.*, 783 F. Supp.2d 509 (S.D.N.Y. 2011) ..........................4

*Armament Sys. & Procs., Inc. v. IQ Hong Kong Ltd.*,
   546 F. Supp. 2d 646 (E.D. Wis. 2008)...........................................................................2

*Balcor Real Estate v. Walentas-Phoenix Corp.*,
   73 F.3d 150 (7th Cir. 1996) (Easterbrook, J.)................................................................4

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................................9

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
   15 CIV. 7428 (PAE), 2017 WL 6551198 (S.D.N.Y. Dec. 22, 2017) ...........................8

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
   342 F.R.D. 84 (S.D.N.Y. 2022) ..............................................................................1, 2

*Ceglia v. Zuckerberg*,
   No. 10–CV–00569A (LF), 2012 WL 503810 (W.D.N.Y. Feb. 12, 2012)................3

*Diamond D Enters. USA, Inc. v. Steinsvaag*,
   979 F.2d 14 (2d Cir. 1992)............................................................................................2

*Fox v. Vice*,
   563 U.S. 826 (2011)......................................................................................................4

*In re GMC*,
   110 F.3d 1003 (4th Cir. 1997) .....................................................................................2

*Google LLC v. Starovikov*,
   21CV10260, 2023 WL 2344935 (S.D.N.Y. Mar. 3, 2023)......................................1, 2

*Guzman v. Joesons Auto Parts*,
   No. CV 11-4543 ETB, 2013 WL 2898154 (E.D.N.Y. June 13, 2013).......................9

*Haley v. Pataki*,
   106 F.3d 478 (2d Cir. 1997).....................................................................................3, 4

*Henson v. Columbus Bank & Trust Co.*,
 770 F.2d 1566 (11th Cir. 1985) ..................................................................................6

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
 No. 17-CV-6851 (SHS), 2020 WL 57315953 (S.D.N.Y. Sept. 24, 2020)................9

*Hnot v. Willis Group Holdings Ltd.*,
 01 CIV. 6558 GEL, 2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008)............................8

*Jones v. Corbis Corp.*,
 489 F. App'x 155 (9th Cir. 2012) .............................................................................9

*Lora v. Grill on 2nd LLC*,
 No. 18-CV-4949 (JMF), 2018 WL 5113953 (S.D.N.Y. Oct. 19, 2018)...................3

*Matthews v. Wisconsin Energy Corp.*,
 642 F.3d 565 (7th Cir. 2011) ....................................................................................9

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*,
 200 F.3d 518 (7th Cir. 1999) ....................................................................................9

*Metavante Corp. v. Emigrant Sav. Bank*,
 619 F.3d 748 (7th Cir. 2010) ................................................................................2, 9

*Metavante Corp. v. Emigrant Sav. Bank*,
 *Metavante*, No. 05-CV-1221, 2009 WL 4556121 (E.D. Wis. Nov. 27, 2009),
 *aff'd*, 619 F.3d 748 (7th Cir. 2010).............................................................................2

*Nassar v. Jackson*,
 779 F.3d 547 (8th Cir. 2015) ....................................................................................8

*Nat'l Hockey League v. Metro Hockey Club, Inc.*,
 427 U.S. 639 (1976)..................................................................................................3

*Pig Newton, Inc. v. The Boards of Directors of The Motion Picture Indus. Pension Plan*,
 No. 13 CIV. 7312, 2016 WL 796840 (S.D.N.Y. Feb. 24, 2016)..............................3

*Pipeline Prods., Inc. v. Madison Cos.*,
 LLC, 15-4890-KHV, 2019 WL 3252743 (D. Kan. July 19, 2019)..........................3

*Raja v. Burns*,
 43 F.4th 80 (2d Cir. 2022) ........................................................................................8

*Rezende v. Citigroup Glob. Markets, Inc.*,
 09 CIV. 9392 HB, 2011 WL 1584603 (S.D.N.Y. Apr. 27, 2011) ............................1

*Samms v. Arbrams*,
 198 F.Supp. 3d 311 (S.D.N.Y. 2016)................................................................3, 6, 9

*Silverstein v. AllianceBernstein LP*,
    No. 09-CV-5904 (JPO), 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ................................... 9

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03 MDL 1570 GBD FM, 2015 WL 6666703 (S.D.N.Y. Oct. 28, 2015) ........................... 3

*Top Jet Enters. Ltd. v. Skyblueocean Ltd.*,
    No. 21-CV-00096-W-FJG, 2021 WL 5546458 (W.D. Mo. Aug. 31, 2021) ............................ 7

*U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets*,
    No. 12 CIV. 9412 (PAE), 2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ................................ 4

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 37(a)(5)(A) .................................................................................................................. 7

# INTRODUCTION[1]

This Court found Qin's "willful violations," their "severity," and his "repeated efforts to evade disclosure" merited sanctions. 4/18 Order at 21:2-4, 21:19. "[E]ven after the Court's instruction, [Qin] continued to flout the [deposition]." *Id*. at 20:12-14. Indeed, Qin stated:

██████████████████████████████████████

████ Dep. at 89:8-10. Qin "completely refused to produce documents that he admits exist." 4/18 Order at 18:25-19:1. "[T]his Court has no doubt that a contempt finding could be justified on the existing record" because Qin's "failure to comply with [court] orders is beyond question." *Id*. at 23:11-13, 17-19. This Court "warned" Qin against "[f]urther noncompliance", noting he "may be found in contempt and incarcerated." *Id*. at 24:3-10. Since then, Qin "violated this Court's April 18, 2023 Order" and "did not produce a single page of a single document" by the Court-ordered deadline. Mot. at 13. Qin, unmoved, responds to all of this by calling it a "routine discovery motion." Opp. at 1.

# ARGUMENT

Qin's conclusory statement that Petitioners' fees "are grossly unreasonable" (Opp. at 1) is baseless. Petitioners seek a fraction of what courts in this circuit award for sanctions motions. *See, e.g.*, *Google LLC v. Starovikov*, 21CV10260 (DLC), 2023 WL 2344935, at *3 (S.D.N.Y. Mar. 3, 2023) (**$525,673.81**); *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D. 84, 93 (S.D.N.Y. 2022) (**$497,523.62**); *Rezende v. Citigroup Glob. Markets, Inc.*, 09 CIV. 9392 HB, 2011 WL 1584603, at *7 (S.D.N.Y. Apr. 27, 2011) (**$638,364.38**). These cases—one from a dozen years ago—all awarded fees *over triple* what Petitioners seek. Each award exceeds

---

[1] Capitalized terms have the same meaning as in Petitioners' opening memorandum of law. ECF 151 (public), 152 (sealed) ("Motion" or "Mot."). Respondent Hui Qin's ("Qin") opposition to the Motion is cited as "Opp." Exhibits to the Declaration of Carol Lee, filed contemporaneously, are cited as "Ex. __." Seiden Law LLP is "Seiden."

1

Petitioners' original, undiscounted bill, and in each, vastly more hours were approved for the sanctions motions than are sought here. The *CBF* court approved about 840 hours. *CBF*, 342 F.R.D. at 88, 93. The *Google* court awarded fees for "over 916.1 hours," which "were reasonably expended." *Google*, 2023 WL 2344935 at *2-3. In *Google*, a single senior associate billed more hours (298.1) at a higher rate ($811.75) than all the time sought by Petitioners. *Id*. at *2.

Qin fails to produce his own invoices for comparison. This "can only be seen . . . as a concession that [Petitioners'] total efforts actually were reasonable." *In re GMC*, 110 F.3d 1003, 1033 (4th Cir. 1997). As one court has observed, when the "party challenging the fees as excessive had declined to reveal its own fees," then "no additional guarantee of reasonableness was required." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 775-6 (7th Cir. 2010).[2] Qin's failure to produce invoices is especially damning given that one would expect Qin's fees to be lower (preparing a Sanctions Motion involves more work than responding). As of *November 2022*, Qin's various invoices from his counsel already exceeded ▮.[3] To the extent this Court has any hesitation about Petitioners' fees, the Court should order Seiden to produce unredacted invoices for comparison.[4] The Second Circuit approved a fee award *twice the size of the judgment* because defendants "apparently spent even more." *Diamond D Enters. USA, Inc. v.*

---

[2] Bills are "very probative evidence" and the "failure to offer [one's] own counsel's fees into evidence is strongly suggestive that the [opposing] fees are indeed reasonable"; "one side should not be heard to complain about billing practices when it fails to disclose its own"; "complex [cases] are highly contextual" so "the best evidence available is what *others* in the same case paid their own attorneys." *Armament Sys. & Procs., Inc. v. IQ Hong Kong Ltd.*, 546 F. Supp. 2d 646, 649, 653-54 (E.D. Wis. 2008) (original emphasis). "[M]ost damaging for [defendants] is their failure to disclose any of the[ir] costs and attorneys' fees . . . in this litigation. . . . Defendants' silence on this issue is more than deafening." *Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2009 WL 4556121, at *6 (E.D. Wis. Nov. 27, 2009), *aff'd*, 619 F.3d 748 (7th Cir. 2010).

[3] Seiden charged Qin ▮ (April 13, 2022), ▮ (April 19, 2022), ▮ (October 18, 2022), and also issued invoices from April 17, 2022 to November 15, 2022 totaling ▮. Given this litigation was dormant between April and the Court's October 11, 2022 judgment, the fees after November 2022 must be multiples greater than the ▮ incurred during its dormancy. The Xue Firm's retainers and invoices total ▮. *See* ECF 150-5 at 5, 150-6; Exs. 2 (SLG_000023-26), 3 (SLG_000009-13), 6-11 (XUE0000018-130).

[4] This Court already ordered Qin's counsel to produce invoices (over the Xue Firm's objection), *see* ECF 95 at 12:22-13:11, moreover, Seiden claims time entries, rates, and totals are not confidential even as to the general public, *see* ECF 158. There is therefore no reason why Seiden should not have already produced these invoices.

*Steinsvaag*, 979 F.2d 14, 20 (2d Cir. 1992). Here, Petitioners are seeking the equivalent of *less than two days of interest* on the nearly $500 million underlying judgment – of which Qin has not paid a penny.

Qin never disputes that fees negotiated with a paying client are presumed reasonable (Mot. at 9-11), or that a fee award is "the mildest" sanction in the Court's arsenal. *Id*. at 6-9. Qin asserts, without citation, that the "purpose" here is to "document attorneys' fees." Opp. at 2. In fact, the purpose of sanctions is to "penalize" and "deter." *See Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Pipeline Prods., Inc. v. Madison Cos.*, LLC, 15-4890-KHV, 2019 WL 3252743, at *6 (D. Kan. July 19, 2019) ("primary purpose of sanctions is to punish and deter, whereas [for] fee-shifting statutes [it] is to compensate").[5]

Qin's opposition thus confuses attorney's fees awarded pursuant to a *fee-shifting statute* with fees awarded *as a sanction*. *See* Motion at 19. If litigation expenses are "caused by . . . misdeeds," the "Court need not directly address the reasonableness of the outside counsel's bills." *GMC*, 110 F.3d at 1017 (4th Cir. 1997); Mot. at 12; *Ceglia v. Zuckerberg*, No. 10–CV–00569A (LF), 2012 WL 503810, at *4, *6 (W.D.N.Y. Feb. 12, 2012) (emphasizing "distinction between attorney's fees awarded pursuant to a fee-shifting statute, and attorney's fees awarded as a sanction"). A "successful Rule 37 motion" for attorney's fees as sanctions not only compensates but deters. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 GBD FM, 2015 WL 6666703, at *18 (S.D.N.Y. Oct. 28, 2015) (citing *Ceglia*, 2012 WL 503810, at *10). Qin nevertheless fills his brief with a string of irrelevant *statutory fee-shifting* cases.[6]

---

[5] A ▮▮▮▮▮▮ sanction is likely too little to effectively "penalize" or "deter" evasion of a $450 million judgment. This explains why Qin has already violated the 4/18 Order.

[6] *See, e.g.*, *Haley v. Pataki*, 106 F.3d 478 (2d Cir. 1997); *Lora v. Grill on 2nd LLC*, No. 18-CV-4949 (JMF), 2018 WL 5113953 (S.D.N.Y. Oct. 19, 2018); *Samms v. Arbrams*, 198 F. Supp. 3d 311 (S.D.N.Y. 2016); *Pig Newton, Inc. v. The Boards of Directors of The Motion Picture Indus. Pension Plan*, No. 13 CIV. 7312, 2016 WL 796840 (S.D.N.Y. Feb. 24, 2016); *Abdell v. City of New York*, No. 05-cv-8453 RJS, 2015 WL 898974 (S.D.N.Y. Mar. 2,

Qin's factual arguments are as deficient as his legal arguments. Qin's brief overwhelmingly consists of attacks on *fees not being sought*. *See* Opp. at 1-4, 6-11 (criticizing the number of attorneys when fees for only three are sought; complaining about ▮ hours billed when fewer than ▮ hours are sought). Contradicting himself factually and logically, Qin calls it "excessive" that "the Sanctions Motion [involved] three (3) associates" but *also* complains there was insufficient delegation because allegedly the Sanctions Motion only "involved one associate." *Id*. at 1, 6, 9. In any case, Qin, who pays none of this Court's half-billion-dollar judgment, has no right to micromanage his judgment-creditors' efforts to collect. As Qin's counsel told this Court: "clients are entitled to their choice of counsel." ECF 85 at 21:20-21.

Qin cannot complain about fees when Petitioners' counsel charge lower hourly rates than Qin's legal team. Qin pays his counsel $▮/hour and $▮/hour – ▮▮▮▮▮▮▮▮▮▮▮▮ than Petitioners' counsel's fixed rate. ECF 150-5 at 4, 150-6 at 2. Petitioners negotiated a $▮/hour fixed fee for all timekeepers; Petitioners ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Declaration of Carol Lee, dated June 12, 2023 ("Lee Decl.") ¶¶ 5-6. Prior to switching to a fixed hourly rate for all attorneys, Petitioners ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. ¶ 4. Bills to paying clients are presumptively reasonable: "Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it *is* market value." *Balcor Real Estate v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) (Easterbrook, J.) (original emphasis). Further, Petitioners' counsel's fixed rate is well below what comparable law firms charge. Nearly a decade ago, $1,000/hour partner rates were "not uncommon in this District," *see*

---

2015); *Allende v. Unitech Design, Inc.*, 783 F. Supp.2d 509 (S.D.N.Y. 2011) (statutory fee-shifting cases cited by Qin). Even in statutory fee-shifting, the Second Circuit emphasized courts need not conduct "item-by-item findings," and affirmed an award based on time sheets. *Haley*, 106 F.3d at 484. The Supreme Court held that the "essential goal" is "to do rough justice, not to achieve auditing perfection"; "trial courts may take into account their overall sense of a suit." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

*U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets*, No. 12 CIV. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016). Indeed, $975 is now the median partner rate in New York City, including small firms. *See* Ex. 13.

Considering Petitioners' fixed fee arrangement, Qin's accusations of insufficient delegation make no sense. *See* Opp. at 1, 7-9. Because all Petitioners' timekeepers charge a fixed $▮/hour rate, partners have no financial motivation to "hog[]" work.[7] A fixed hourly rate also means Petitioners' staffing choices have no impact on this fee submission. As explained in the Motion, the fixed $▮ rate is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the attorneys whose time is sought here. Mot. at 6. By criticizing these attorneys for having *too much* expertise, Qin admits Petitioners obtained good value for the fixed rate—and, ironically, this good value is being passed along to Qin via this fee award. *See* Opp. at 5 (criticizing use of attorneys with 10 to 25 years of experience, including a practice area co-chair).

Qin's criticism of the number of attorneys working on this matter is not only misplaced (since fees are sought for only three), but also hypocritical. A *minimum* of ▮ timekeepers from ▮▮▮▮▮ have represented Qin in this action, including *at least* ▮ from Seiden.[8] Petitioners' legal team is reasonable in size both because it matches the size of Qin's own "army," and because this is a judgment for $450 million. Petitioners seek fees for only three attorneys—the same number of attorneys who co-signed Qin's opposition brief. Seventy-five percent of all reported U.S. litigation teams (regardless of dispute size) have more than three

---

[7] In a fixed rate case, the moral hazard is to *overly* delegate so that partners can devote time to clients who pay full rates. Qin's accusation of *insufficient* delegation is a remarkable, if unintended, recognition that Petitioners' counsel avoided this moral hazard and staffed the case according to the clients' best interest. *See* Opp. at 1, 9.

[8] Seiden's invoices, submitted through November 2022, identify ▮ timekeepers: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. An unknown number of additional attorneys have joined the case since November, including ▮▮▮▮. *See* ECF 145, 150-5, 150-6. Xue Firm attorneys include ▮▮▮▮ Exs. 6, 11 (XUE000001, XUE0000018-19). Qin is also represented in this action by ▮▮▮▮, whose attorney(s) remain unidentified; they have not made appearances on the docket. Ex. 1 (SLG_000001-08).

attorneys. *See* Ex. 14 at 6. Petitioners, enforcing a half-billion judgment, seek fees for a team smaller than 75% of all U.S. litigation teams. This is indisputably reasonable.

Qin's counsel gratuitously misrepresents Petitioners' counsel's time entries (filed under seal) even while improperly, and without justification, redacting every word of their own invoices (despite this Court's order that they be produced).[9] For instance, Qin attacks ▓ hours of work performed over multiple days by quoting *three* words ▓▓▓▓▓▓▓▓▓▓▓ from time entries totaling *170 words* (Opp. at 8), falsely insinuating all this time was spent on revisions. Qin's criticism of time spent on revisions is baseless; briefs do not burst forth fully formed. Other courts award fees for generic entries ▓▓▓▓▓▓▓▓▓▓.[10] Petitioners' entries provide vastly more detail. Qin, taking snippets out of context, uses this detail to attack Petitioners. Qin's criticism of Petitioners' counsel's review of deposition transcripts to file a sanctions motion based on (among other things) lies and refusals to answer deposition questions (Opp. at 7-8) likewise is without merit. Qin's position is like insisting that a court write opinions without looking at briefs or exhibits. Seiden can assert impossible standards for opposing counsel's invoices precisely because it has not revealed its own time entries. This Court should renew its order that Seiden produce its invoices. *See Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) (remanding for discovery into defendants' invoices).

Rather than produce his own invoices, Qin digs through the past half-decade for three cases reducing Pillsbury fee awards. These are not relevant. Any large law firm with frequent

---

[9] Qin violated the Court's sealing order and published Petitioners' counsel's "sensitive business information, such as attorney rates and fees." *See* May 10, 2023 Order at 2-3 (ECF 153). As justification, Qin's counsel claims "time entries, and billing rates" are not confidential. Ex. 12. When this Court ordered Seiden to produce invoices to Petitioners, Seiden redacted every word. ECF 150-6. Yet when this Court ordered Seiden not to reveal Petitioners' invoices, Seiden "disagree[d]" and openly published time entries, fees, and billing rates. Ex. 12.

[10] *Samms*, 198 F.Supp.3d at 321 ("descriptions such as 'worked on complaint' or 'worked on fee petition' . . . are not [too] vague. . . . [S]tating that a certain amount of time was spent working on a particular pleading or motion is sufficient"); *Abdell*, 2015 WL 898974, at *4 (approving entries such as "case preparation" or "meeting").

litigations will have mixed results. Qin highlights *Top Jet*, but the same Top Jet plaintiff and legal team obtained full fee awards in two other proceedings. *See Top Jet Enters. Ltd. v. Skyblueocean Ltd.*, No. 21-CV-00096-W-FJG, 2021 WL 5546458, at *4 (W.D. Mo. Aug. 31, 2021) ("'Claimant's legal fees – which are only slightly more than 2% of the sum in dispute – are reasonable in amount, and on a review of the itemized legal fees and expenses presented, are reasonably incurred.'") (agreeing with and quoting arbitration tribunal). Petitioners already voluntarily reduced their fee submission by nearly 60%, a discount *far greater* than the average reduction ordered by the courts in the three cases found by Qin.

This 60% discount is on top of the ▮▮▮▮▮▮▮▮▮▮ on Petitioners' individual hourly rates. *See* Mot. at 8, 10. Petitioners offered these extreme discounts to avoid this briefing. After initially stating he "appreciate[s] your generous offer," Qin later claimed he couldn't pay ▮▮▮▮, proposing instead ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* ECF 150-1 at 2. Qin now goes further, demanding denial of the "Fee Motion in its entirety," Opp. at 13, which would reverse the Court's 4/18 Order (ordering fees) and violate FRCP 37(a)(5)(A) (mandating reasonable fees). This is the *fifth* time Qin refused to accept one of this Court's orders.[11]

In defiance of the 4/18 Order, Qin incredibly claims he is ▮▮▮▮▮▮▮ a fee award—even as his own counsel bill over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, ECF 150-1 at 2; Exs. 4 & 5 (SLG_000014-15). This Court held: "It defies belief that he can live the lifestyle he leads and have no money." *See* ECF 106-1 at 46:25-47:2. Qin *currently* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Exs. 16 (continued Qin Dep. 297:6-20) & 17 (*id.* 403:6-404:9). Qin splits time between two Long Island mansions and two Plaza Hotel penthouses, including this one:

---

[11] The Court found Qin violated a Nov. 1, 2022 order expediting discovery, *see* 4/18 Order at 7:22-24, 17:17-18:15; a Jan. 23, 2023 order setting his deposition, *id.* at 7:24-25, 20:4-21; and a Jan. 30, 2023 order to answer questions, *id.* at 8:1-4, 20:18-21. Qin also violated the 4/18 production order; Qin produced *nothing* by the Court's deadline.

7

 

*See also* Ex. 15 (additional images). And yet Qin has not paid a penny of this Court's judgment.

Qin's "block billing" argument is wrong on both the facts and the law. Concerns over "block billing" arise where time entries describe unrelated tasks in the same narrative, preventing the fact finder from determining how much time was spent on tasks for which fees are recoverable. Here, none of the attacked time entries are "block bills" because all relate solely to the Sanctions Motion (and nothing else).[12] This is obvious from reading the entries. Moreover, the Second Circuit and other appellate courts state that block billing is "by no means prohibited," and is "minutiae"; courts in this circuit call it "a generally accepted billing practice."[13]

Qin's allegations of improper redactions (Opp. at 1) are false. Petitioners did not redact any time entries for the Sanctions Motion, *even for fees not sought*. (Petitioners shaded the time for which no fees are sought.) Qin's claim that redacted entries may evidence "duplicated work" is not only false but also nonsensical: Why duplicate work at all? How is Qin harmed by alleged "duplicated work" when these fees are not sought? Qin should not be allowed to *use this Court's*

---

[12] Each accused time entry is entirely focused on the Sanctions Motion; *no* unrelated tasks are included. Time entries about preparing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ refer to Appendices A and B, namely, *the specific relief requested and granted by this Court* in the Sanctions Motion. Qin falsely claims ▮▮▮▮▮▮ and "40%" of time are block billed; *none* are.

[13] *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (block billing is "by no means prohibited"); *Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015) ("minutiae"); *Hnot v. Willis Group Holdings Ltd.*, 01 CIV. 6558 GEL, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) ("a generally accepted billing practice"). Even Qin's cases state that block-billing "does not automatically preclude recovery." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 15 CIV. 7428 (PAE), 2017 WL 6551198, at *3 (S.D.N.Y. Dec. 22, 2017); *see also Abdell*, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (ordering *full reimbursement*; block billing "not prohibited"; the court had "little difficulty understanding the entries in context and finding the hours reasonable").

*sanctions against him* to peer into Petitioners' other efforts to enforce this Court's judgment.[14]

Nevertheless, courts regularly award fees even for redacted time entries.[15] Indeed, the Seventh Circuit affirmed a $10 million fee award where *all* "descriptions of work performed were redacted" because line-by-line fee reviews are only for statutory fee-shifting:

> Instead of doing a detailed, hour-by-hour review after the fashion of a fee-shifting statute, therefore, the district judge should have undertaken an overview of [the party's] aggregate costs to ensure that they were reasonable in relation to the stakes of the case and [the opponent's] litigation strategy.

*Metavante*, 619 F. 3d at 774 (7th Cir. 2010) (quoting *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999)). Here, a ▌▌▌▌▌▌▌ fee award is reasonable in relation to the stakes (a half-billion-dollar judgment) and Qin's litigation strategy ("repeatedly and willfully fail[ing] to comply with his discovery obligations," *see* 4/18 Order at 4:16-18). *Samms*, cited by Qin, awarded fees equal to 92% of the judgment. *Samms*, 198 F. Supp. 3d at 323. "Fees of 30 to 33 1/3 percentage [of the award] are not uncommon in this Circuit." *Guzman v. Joesons Auto Parts*, No. CV 11-4543 ETB, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013).[16] Here, Petitioners do not seek 92% or 33% or even 2% of the judgment; they seek 0.04% of the judgment.

In contrast to Petitioners, Seiden redacted *every word of every time entry* in the invoices they produced in response to this Court's order. *See* ECF 150-6. This Court ordered invoices from Qin's prior counsel to be produced with minimal redactions: "[I]f [counsel] wishes to

---

[14] Qin misleadingly blames Petitioners for redacting Qin's address in their initial Petition. Petitioners were obligated, under Rule 9A of Your Honor's Individual Rules, to redact all "sensitive information" from a public filing, including "home address." *See* Rule 9A of Judge Failla's Individual Rules. Petitioners did not know Qin would deny this address was his. In his opposition, Qin could have (but did not) provide his unredacted home address.

[15] *See, e.g.*, *Jones v. Corbis Corp.*, 489 F. App'x 155, 157 (9th Cir. 2012); *Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 569, 572 (7th Cir. 2011); *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, No. 17-CV-6851 (SHS), 2020 WL 57315953, at *3 (S.D.N.Y. Sept. 24, 2020). Here, no redacted time is being sought, and no time related to the Sanctions Motion is redacted.

[16] *See also Silverstein v. AllianceBernstein LP*, No. 09-CV-5904 (JPO), 2013 WL 7122612, at *9 (S.D.N.Y. Dec. 20, 2013); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (same).

submit any putative privilege based redactions, it should . . . include[e] both proposed redactions and unredacted versions of the documents, and a brief description..." 1/6/2023 Hr'g Tr. (ECF 95) at 22:15-22 (overruling Xue Firm's objections). Qin's current counsel violated this ruling.

Finally, Qin's accusation that Petitioners have provided "no documentary evidence" of fees and costs incurred (Opp. at 2, 12-13) is frivolous. Qin ignores the legal invoices and attorney declaration submitted with the Motion and provides no citation for any such evidentiary standard.[17]

## CONCLUSION

The purpose of sanctions is to "punish" and "deter." A ▮▮▮▮▮▮▮ sanction is frankly too little to effectively "punish" or "deter" the flagrant evasion of a $450 million judgment. Nevertheless, Petitioners offered a massive discount on their fees in a good-faith attempt to obviate this briefing. Then, Petitioners produced *all* relevant time entries with no redactions. But no good deed goes unpunished. Qin falsely accuses Petitioners of block billing and of redacting relevant time, attacks junior associates whose time is not sought, nonsensically argues that Petitioners' counsel is not billing its clients, contradictorily claims Petitioners use too many and also too few associates, and publicly publishes what this Court placed under seal. Petitioners seek fees that are less than one-third of what other courts in this district have awarded for sanctions motions. Petitioners' hourly rates are far lower than those billed by Qin's own counsel. Petitioners seek fees for just three timekeepers, a smaller team than three-fourths of all litigations in the U.S. This Court should award the fees and costs sought, renew the Court's order that Seiden produce unredacted invoices, and order such other relief this Court deems just and proper.

---

[17] *See* Opp. at 12-13 (citing no cases). Qin uses the sanctions briefing *on his own failure to produce discovery* to demand that his judgment-creditors produce wire transfers or other "documentary evidence" (in addition to the legal invoices and attorney declaration). Qin brazenly uses his own misconduct to seek discovery. Nevertheless, Petitioners can provide this Court with engagement letters and exemplar wire transfers, *in camera*, if required.

10

Dated: June 12, 2023
     New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Geoffrey Sant*
    Andrew C. Smith
    Geoffrey Sant
    Carol Lee
    31 West 52nd Street
    New York, New York 10019
    Tel: (212) 858-1000
    Fax: (212) 858-1500
    andrew.smith@pillsburylaw.com
    geoffrey.sant@pillsburylaw.com
    hugh.ray@pillsburylaw.com
    carol.lee@pillsburylaw.com

*Attorneys for Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership*