# Exhibit 1

# **CERTIFICATE OF TRANSLATION**

I, Bingjie Liu, an attorney licensed in the State of New York (United States) and a court-certified interpreter of the State Court of the State of New York, am competent to translate from Chinese into English, and certify that the translation of the documents attached to this certificate is true and accurate to the best of my abilities.


_Bingj Liu_
Bingjie Liu


Date:  7/7/2023

## 1.1. Corporation Inforamtion

| Company's Name | Ningbo Sunlight Electrical Appliance Co., Ltd. | English Name | Ningbo Sunlight Electrical Appliance Co., Ltd. |
|---|---|---|---|
| Used Name | Ningbo Sunlight Electrical Appliance Company | Registration No. | 330200400011799 |
| Unified Social Credit Code | 91330200756283354Q | Taxpayer Identification No. | 91330200756283354Q |
| Import and export enterprise code | 3302756283354 | Legal Representative | Qi Song |
| Organization code | 75628335-4 | Registered Capital | 160,000,000 RMB |
| Actual Capital | 160,000,000 RMB | Industry | Manufacturing |
| Type of Entity | Corporation (listed, natural personal investment or holding shares) | Registration Status | Good Standing |
| Incorporation Date | 3/11/2004 | Approval Date | 11/11/2020 |
| Business Term | 3/11/2004 – no fixed term | Registration Authority | Ningbo City Market Supervision Administration |
| Size of Employee | Less than 50 | Insured People | 6 |
| Registered Address | Zhejiang Province, Ningbo City, Jiangbei District, Changxing Road No. 199, Building No. 10, Room 202 | | |
| Scope of Business | Manufacture and processing of electric heating appliances, electrical appliances and accessories; leasing of houses and sites and business management consulting services; self-supporting and agent for the import and export of all kinds of goods and technologies, except for the goods and technologies that are restricted or prohibited by the state. | | |

## 1.2 Shareholder Information

| No. | Shareholder's Name | Percentage | Shares (number) |
|---|---|---|---|
| 1 | Ningbo Sunlight Electrical Technology Co., Ltd | 16.91% | 27,052,500 |
| 2 | Shenzhen City Zhouji Tongshang Investment Co., Ltd | 15.63% | 25,000,000 |
| 3 | Xizang Dingxin Chuang Capital Management Co., Ltd | 14.90% | 23,843,294 |
| *[intentionally omitted]* | | | |


# 一、基本信息

## 1.1 工商信息

| | | | |
|---|---|---|---|
| 企业名称 | 宁波圣莱达电器股份有限公司 | 英文名 | Ningbo SUNLIGHT Electrical APPLIANCE Co., Ltd. |
| 曾用名 | 宁波圣莱达电器有限公司 | 注册号 | 330200400011799 |
| 统一社会信用代码 | 91330200756283354Q | 纳税人识别号 | 91330200756283354Q |
| 进出口企业代码 | 3302756283354 | 法定代表人 | 宋骐 |
| 组织机构代码 | 75628335-4 | 注册资本 | 16000 万元人民币 |
| 实缴资本 | 16000 万元人民币 | 所属行业 | 制造业 |
| 企业类型 | 股份有限公司（上市、自然人投资或控股） | 登记状态 | 存续 |
| 成立日期 | 2004-03-11 | 核准日期 | 2020-11-11 |
| 营业期限 | 2004-03-11 至 无固定期限 | 登记机关 | 宁波市市场监督管理局 |
| 人员规模 | 少于 50 人 | 参保人数 | 6（2021 年报） |
| 注册地址 | 浙江省宁波市江北区长兴路 199 号 10 幢 202 室 | | |
| 经营范围 | 电热电器、电机电器及配件的制造、加工；自有房屋、场地租赁及企业管理咨询服务；自营和代理各类货物和技术的进出口，但国家限定经营或禁止进出口的货物和技术除外。 | | |

历史工商信息查询，请下载《企业信用报告专业版》

## 1.2 股东信息

| 序号 | 股东名称 | 持股比例 | 持股数(股) |
|---|---|---|---|
| 1 | 宁波金阳光电热科技有限公司 | 16.91% | 27,052,500 |
| 2 | 深圳市洲际通商投资有限公司 | 15.63% | 25,000,000 |
| 3 | 西藏晟新创资产管理有限公司 | 14.90% | 23,843,294 |
| 4 | 新时代信托股份有限公司 | 4.97% | 7,952,000 |
| 5 | 陈庆桃 | 3.75% | 6,004,600 |
| 6 | 杨柏忠 | 2.55% | 4,080,000 |
| 7 | 融通资本-招商银行-华润信托-华润信托·润金 76 号集合资金信托计划 | 2.50% | 4,004,560 |
| 8 | 赵爱芬 | 1.53% | 2,450,000 |
| 9 | 李风琴 | 1.38% | 2,211,600 |
| 10 | 陈飞 | 1.05% | 1,675,500 |

以上出资比例信息可能滞后或未显示，如需准确的股东出资比例，请下载《企业信用报告专业版》。

历史股东查询，请下载《企业信用报告专业版》

## 1.3 主要人员

| 序号 | 姓名 | 职务 | 持股数 | 持股比例 | 最终受益股份 | 本届任期 | 公告日期 |
|---|---|---|---|---|---|---|---|
| 1 | 师彦芳 | 监事会主席 | - | - | - | 2018-08-31 至 | 2021-12-27 |

## 1.1. Corporation Inforamtion

| Company's Name | Run Yun Chengdu Culture Communication Co., Ltd. | English Name | Run Yun Chengdu Culture Communication Co., Ltd. |
|---|---|---|---|
| Used Name | - | Registration No. | 510107000234230 |
| Unified Social Credit Code | 91510100553561481Q | Taxpayer Identification No. | 91510100553561481Q |
| Import and export enterprise code | - | Legal Representative | Jianjun Liu |
| Organization code | 55356148-1 | Registered Capital | 11,851,851.85 RMB |
| Actual Capital | 11,851,851.85 RMB | Industry | Leasing and Business Service |
| Type of Entity | Limited Liability Company (Taiwan, Hong Kong, Macau, and overseas investment) | Registration Status | Good Standing (operating, open business, on records) |
| Incorporation Date | 4/12/2010 | Approval Date | 1/14/2020 |
| Business Term | 5/25/2010 to 4/11/2030 | Registration Authority | Chengdu City Market Supervision Administration |
| Size of Employee | Less than 50 | Insured People | - |
| Registered Address | Sichuan Province Chengdu City Wuhou District, Yulin East Road No. 5, 2-3-5. | | |
| Scope of Business | Planning cultural and artistic exchange activities (excluding performances); exhibition display agency; corporate image design (excluding advertising); machinery and equipment leasing (excluding automobiles); domestic business information consulting (except intermediary services); wholesale and retail office supplies, computer hardware, general merchandise; stage and stage design; and other services. domestic business information consulting (except intermediary services); wholesale and retail office supplies, computer hardware, daily-use department stores; stage Equipment installation; project investment management (shall not engage in illegal fund-raising, absorption of public funds and other financial activities; the above scope of business does not include national laws and regulations restrict or prohibit the project, the project of the project of the project. The above business scope does not include national laws and regulations restrict or prohibit the project, except for the implementation of special management measures involving state regulations access, involving the license with the relevant license to carry out business activities). The above scope of business does not include items restricted or prohibited by national laws and regulations, except for those involving the implementation of special management measures for access by the state, and the relevant permits to carry out business activities). | | |

## 1.2 Shareholder Information

| No. | Shareholder's Name | Percentage | Contribution (ten thousand RMB) | Contribution Date |
|---|---|---|---|---|
| 1 | Shenzhen Xingmei Shengdian Culture Media Group Co., Ltd | 43.0131% | 510 | - |
| 2 | SMI International Cinemas Limited | 41.3438% | 490 | 4/12/2012 |
| | *[intentionally omitted]* | | | |



# 一、基本信息

## 1.1 工商信息

| 企业名称 | 成都润运文化传播有限公司 | 英文名 | Run Yun Chengdu Culture Communication Co., Ltd. |
|---|---|---|---|
| 曾用名 | - | 注册号 | 510107000234230 |
| 统一社会信用代码 | 91510100553561481Q | 纳税人识别号 | 91510100553561481Q |
| 进出口企业代码 | - | 法定代表人 | 刘建军 |
| 组织机构代码 | 55356148-1 | 注册资本 | 1185.185185 万元人民币 |
| 实缴资本 | 1185.06 万元人民币 | 所属行业 | 租赁和商务服务业 |
| 企业类型 | 有限责任公司（台港澳与境内合资） | 登记状态 | 存续（在营、开业、在册） |
| 成立日期 | 2010-04-12 | 核准日期 | 2020-01-14 |
| 营业期限 | 2010-05-25 至 2030-04-11 | 登记机关 | 成都市市场监督管理局 |
| 人员规模 | 少于 50 人 | 参保人数 | - |
| 注册地址 | 四川省成都市武侯区玉林东路 5 号 2-3-5 | | |
| 经营范围 | 策划文化艺术交流活动(不含演出);展览展示代理;企业形象设计(不含广告);机械设备租赁(不含汽车);国内商务信息咨询(中介服务除外);批发零售办公用品、计算机硬件、日用百货;舞台设备安装;项目投资管理(不得从事非法集资、吸收公众资金等金融活动;以上经营范围不含国家法律法规限制或禁止的项目,涉及国家规定实施准入特别管理措施的除外,涉及许可证的凭相关许可证方可开展经营活动)。 | | |

历史工商信息查询，请下载《企业信用报告专业版》

## 1.2 股东信息

| 序号 | 股东名称 | 持股比例 | 认缴出资额（万元） | 认缴出资日期 |
|---|---|---|---|---|
| 1 | 深圳星美圣典文化传媒集团有限公司 | 43.0313% | 510 | - |
| 2 | 星美国际影院有限公司 | 41.3438% | 490 | 2012-04-12 |
| 3 | 湖州汇恒赢股权投资合伙企业（有限合伙） | 3.1250% | 37.037037 | - |
| 4 | 湖州创泰融元投资管理合伙企业（有限合伙） | 3.1250% | 37.037037 | - |
| 5 | 湖州汇荣晟股权投资合伙企业（有限合伙） | 3.1250% | 37.037037 | - |
| 6 | 建银国际（深圳）投资有限公司 | 1.8750% | 22.222222 | - |
| 7 | 东证归鼎（上海）投资合伙企业（有限合伙） | 1.8750% | 22.222222 | - |
| 8 | 焰石鸿源 4 号（平潭）投资合伙企业（有限合伙） | 1.2500% | 14.814815 | - |

## 1.1. Corporation Inforamtion

| Company's Name | Shenzhen Xingmei ShengDian Culture Media Group Co., Ltd. | English Name | Shenzhen Xingmei ShengDian Culture Media Group Co., Ltd. |
|---|---|---|---|
| Used Name | Shenzhen City Run Yun Technology Development Co., Ltd; Shenzhen City Ming Xiang Industrial Development Co., Ltd | Registration No. | 440301106893448 |
| Unified Social Credit Code | 914403007451916737 | Taxpayer Identification No. | 914403007451916737 |
| Import and export enterprise code | - | Legal Representative | Zhengqiang Huang |
| Organization code | 74519167-3 | Registered Capital | 680,000,000 RMB |
| Actual Capital | 73,000,000 RMB | Industry | Wholesale and retail trade |
| Type of Entity | Limited Liability Company (natural individual only) | Registration Status | Good Standing (operating, open business, on records) |
| Incorporation Date | 1/3/2003 | Approval Date | 4/22/2021 |
| Business Term | 1/3/2003 to 1/3/2023 | Registration Authority | Shenzhen City Market Supervision Administration |
| Size of Employee | Less than 50 | Insured People | - |
| Registered Address | Shenzhen City, Longhua District, Minzhi Community, Xinniu Community, Minzhi Avenue, No. 690, Dong Meng Building, Fllor 3, F02 | | |
| Scope of Business | General business items are: cultural activities planning; ceremonial brand planning; exhibition planning; advertising print, animation, landscape design; investment information consulting (including restricted items); film and television project investment; ticketing agency; investment in the establishment of industry (specific items to be declared separately);; and Investment information consulting (excluding restricted items); film and television project investment; ticketing agent; investment in the establishment of industry (specific projects are separately declared). Online trade; development and sales of communication products; domestic trade (excluding exclusive, proprietary, proprietary goods); import and export business (laws, administrative regulations, decisions of the State Council prohibit the use of the Internet). (except for items prohibited by laws, administrative regulations and decisions of the State Council, and items restricted only after obtaining permission). Permitted business Project is: the operation of telecommunications services. | | |

## 1.2 Shareholder Information

| No. | Shareholder's Name | Percentage | Contribution (ten thousand RMB) | Contribution Date |
|-----|--------------------|-----------|---------------------------------|-------------------|
| 1 | Hui Qin | 100% | 68000 | 5/31/2016 |



# 一、基本信息

## 1.1 工商信息

| 企业名称 | 深圳星美圣典文化传媒集团有限公司 | 英文名 | Shenzhen Xingmei ShengDian Culture Media Group Co., Ltd. |
|---|---|---|---|
| 曾用名 | 深圳市润运科技发展有限公司，深圳市名翔实业发展有限公司 | 注册号 | 440301106893448 |
| 统一社会信用代码 | 914403007451916737 | 纳税人识别号 | 914403007451916737 |
| 进出口企业代码 | - | 法定代表人 | 黄政强 |
| 组织机构代码 | 74519167-3 | 注册资本 | 68000 万元人民币 |
| 实缴资本 | 7300 万元人民币 | 所属行业 | 批发和零售业 |
| 企业类型 | 有限责任公司（自然人独资） | 登记状态 | 存续（在营、开业、在册） |
| 成立日期 | 2003-01-03 | 核准日期 | 2021-04-22 |
| 营业期限 | 2003-01-03 至 2023-01-03 | 登记机关 | 深圳市市场监督管理局 |
| 人员规模 | 少于 50 人 | 参保人数 | - |
| 注册地址 | 深圳市龙华区民治街道新牛社区民治大道 690 号东盟大厦 3 楼 F02 | | |
| 经营范围 | 一般经营项目是:文化活动策划;礼仪品牌策划;展览展示策划;广告平面、动漫、景观的设计;投资信息咨询(不含限制项目);电影电视项目投资;票务代理;投资兴办实业(具体项目另行申报);网上贸易;通讯产品的开发与销售;国内贸易(不含专营、专控、专卖商品);经营进出口业务(法律、行政法规、国务院决定禁止的项目除外,限制的项目须取得许可后方可经营)。,许可经营项目是:经营电信业务。 | | |

历史工商信息查询，请下载《企业信用报告专业版》

## 1.2 股东信息

| 序号 | 股东名称 | 持股比例 | 认缴出资额(万元) | 认缴出资日期 |
|---|---|---|---|---|
| 1 | 覃辉 | 100% | 68000 | 2016-05-31 |

以上出资比例信息可能滞后或未显示，如需准确的股东出资比例，请下载《企业信用报告专业版》。

历史股东查询，请下载《企业信用报告专业版》

## 1.3 主要人员

| 序号 | 姓名 | 职务 | 持股比例 | 最终受益股份 |
|---|---|---|---|---|
| 1 | 黄政强 | 执行董事,总经理,法定代表人 | - | - |
| 2 | 潘梦 | 监事 | - | - |
| 3 | 李宝成 | 监事 | - | - |

对外投资信息及在外任职信息请下载《董监高投资任职及风险报告》。

历史高管查询，请下载《企业信用报告专业版》

## 1.4 对外投资

| 序号 | 被投资企业名称 | 状态 | 持股比例 | 认缴出资额 | 认缴出资日期 | 所属省份 | 所属行业 |
|---|---|---|---|---|---|---|---|



# Contents

| | |
|---|---|
| Corporate Information | 2 |
| Chairman's Statement | 3 |
| Management Discussion and Analysis | 5 |
| Biographical Information of Directors | 9 |
| Directors' Report | 11 |
| Corporate Governance Report | 20 |
| Independent Auditor's Report | 30 |
| Consolidated Statement of Profit or Loss and Other Comprehensive Income | 35 |
| Consolidated Statement of Financial Position | 36 |
| Consolidated Statement of Changes in Equity | 38 |
| Consolidated Statement of Cash Flows | 40 |
| Notes to the Consolidated Financial Statements | 42 |
| Financial Summary | 136 |

0017


**Confidential**

**Qin_00000959**

# Corporate Information

**BOARD OF DIRECTORS**
**Executive Directors**
Mr. WAI Yee Tai *(Chairman)*
(Appointed on 5 September 2017)
Mr. YANG Rongbing *(Chief Executive Officer)*
Mr. KOH Kok Sim *(Chief Operating Officer)*
(Appointed on 1 September 2017 and
resigned on 9 March 2018)
Mr. CHENG Chi Chung
Mr. KONG Daiu (Appointed on 6 April 2017)
Mr. PAN Jen Kai (Appointed on 9 March 2018)

**Non-Executive Directors**
Dr. YAP Allan (Resigned on 28 November 2017)
Mr. HUNG Ka Hai Clement (Appointed on 16 January 2017
as independent non-executive director
and re-designated on 15 March 2017)

**Independent Non-Executive Directors**
Mr. PANG Hong
Mr. LI Fusheng
Mr. LI Wing Yin (Resigned on 16 January 2017)
Mr. WONG Shui Yeung (Appointed on 13 April 2017)

**AUDIT COMMITTEE**
Mr. PANG Hong
Mr. LI Fusheng
Mr. LI Wing Yin (Resigned on 16 January 2017)
Mr. HUNG Ka Hai Clement (Appointed on 16 January 2017)
Mr. WONG Shui Yeung *(Chairman)*
(Appointed on 13 April 2017)

**REMUNERATION COMMITTEE**
Mr. LI Fusheng *(Chairman)*
Mr. PANG Hong
Mr. LI Wing Yin (Resigned on 16 January 2017)
Mr. HUNG Ka Hai Clement
(Appointed on 16 January 2017)

**NOMINATION COMMITTEE**
Mr. PANG Hong *(Chairman)*
Mr. LI Fusheng
Mr. LI Wing Yin (Resigned on 16 January 2017)
Mr. HUNG Ka Hai Clement
(Appointed on 16 January 2017)

**COMPANY SECRETARY**
Mr. TSANG Chun Yiu (Resigned on 31 July 2017)
Mr. WONG Wing Shun (Appointed on 31 July 2017)

**AUTHORIZED REPRESENTATIVES**
Mr. CHENG Chi Chung
Mr. YANG Rongbing

**AUDITOR**
Deloitte Touche Tohmatsu

**REGISTERED OFFICE**
Clarendon House
2 Church Street
Hamilton HM 11
Bermuda

**PRINCIPAL PLACE OF BUSINESS IN HONG KONG**
Suite 6701-2 & 13
The Center
99 Queen's Road Central
Central, Hong Kong

**SHARE REGISTRARS**
**Principal Share Registrar in Bermuda**
MUFG Fund Services (Bermuda) Limited
The Belvedere Building
69 Pitts Bay Road
Pembroke HM08
Bermuda

**BRANCH SHARE REGISTRAR IN HONG KONG**
Tricor Progressive Limited
Level 22
Hopewell Centre
183 Queen's Road East
Hong Kong

**PRINCIPAL BANKER**
The Hongkong and Shanghai Banking
Corporation Limited

**STOCK CODE**
00198.HK

**WEBSITE**
http://www.smi198.com

SMI HOLDINGS GROUP LIMITED

**Confidential**

**Qin_00000960**

# Chairman's Statement

To all Shareholders:

On behalf of the board ("Board") of directors ("Directors") of SMI Holdings Group Limited (the "Company"), I am pleased to present the annual results of the Company and its subsidiaries (together referred to as the "Group") for the year ended 31 December 2017.

In recent years, the film market in Mainland China has enjoyed leapfrog development. According to the statistics of the Film Division of the State Administration of Radio and Television of the People's Republic of China (the "PRC"), for the year ended 31 December 2017 (the "Year"), the total number of screens across China exceeded 50,000, surpassing the USA and has become the country with the highest number of screens in the world. The total box office receipts amounted to RMB55.91 billion, representing a year-on-year increase of 13.5%, the first time for China's annual total box office to record a revenue of over RMB55 billion, and continued as the world's second largest movie market. Entering 2018, the movie market in Mainland China ushered in "the Strongest Chinese New Year Cinema Audienceship Ever", which resulted in the February box office's receipts to surpass RMB10 billion and became the top of the world for single-month box office receipts. The outlook of the overall increase of the 2018 box office remains to be optimistic.

## UPGRADING OLD MOVIE THEATRES AND CREATING THE NEW ERA OF CHINA'S MOVIE THEATRES 2.0

China's film market grows rapidly, competition between movie theatres becomes more and more intense. Since the Group entered the domestic movie theatre industry early, the facilities of individual old movie theatres can no longer satisfy consumers' demand for quality, and as such, upgrading and transformation is imperative. The Group commenced its upgrading project in 2017, and expects to complete the offline facilities upgrade of its movie theatres in 2018, including expanding the equipment in movie theatre, offline facilities and membership service, with an aim to establishing the new era of China's Movie Theatres 2.0.

As at 31 December 2017, the number of SMI Group's movie theatres reached 365, the total number of screens exceeded 2,290 pieces, spreading across 30 provinces, municipalities and autonomous regions and over 140 cities. In 2018, the Group will continue its effort in movie theatres network expansion, with a plan to own 400 movie theatres by the end of the year through self-operation and acquisition.

## ARRANGING NEW ECOSYSTEM OF MOVIE THEATRES BASED ON MEMBERS' BIG DATA

To break away from the homogenization of competition in the industry, SMI has commenced an ecological deployment based on supporting facilities and channels as early as 2011, laying the foundation for a new movie theatre ecosystem of "New Marketing, New Retail, New Development". In 2018, SMI will carry out upgrading of marketing scenes in its 100 movie theatres with continuous efforts in expanding its scope of operation and income from non-box office business.

Currently the Company has approximately 40 million members, and is shifting its operating mode from the focus on movie theatres to focus on membership. The Group expanded ecological businesses relating to its members and has currently made connections between different businesses. With only one membership identity, one can enjoy the comprehensive services from SMI Mobile, SMI Living and SMI Ticket. During 2017, the SMI Group carried out a complete upgrade to its membership strategic product – Movie Card (隨影卡) and promoted it extensively through online and offline channels, which has effectively enhanced the members' sense of affiliation and promoted the members' value-added business.

SMI Mobile is a platform entry through which SMI will build new media, realise multi-panel interaction and enrich members' diversified entertainment experience in the future. It is the only enterprise in the domestic cultural media industry, which has received a virtual network operator license from the Ministry of Industry and Information Technology of the PRC (工信部虛擬電信運營商牌照). The total number of users has surpassed 2 million within two years of its establishment. Members can redeem movie tickets on SMI Mobile's channel with their accumulated credits, and complete the ticket purchasing and seat selection processes on the SMI Ticket App. The consistent efforts

Confidential

Qin_00000961

made by the new retail business of SMI Living has separated itself from the monotonous mode of "movie ticket + popcorn + coke". Extensive analyses are carried out on the members' data, with respect to movie watching frequencies, purchase amounts and consuming behaviours. With the advantages of offline facilities, enriched product contents and free delivery within 2 kilometre perimeter of movie theatres, members are provided with personalised, customised services.

Relying on the Group's 365 movie theatres and 40 million members, in 2018, the SMI Group will continue to strengthen its main operating business and deepen its "New Retail" mode by means of technological innovations to establish the new era of China's Movie Theatres 2.0, promoting innovation updates in China's culture industry.

Chairman
**Mr. WAI Yee Tai**

Hong Kong, 29 March 2018

**Confidential**

Qin_00000962

# Management Discussion and Analysis

## INDUSTRY REVIEW

According to the statistics of the Film Division of the State Administration of Radio and Television of the People's Republic of China (the "PRC"), China continues to be the world's second largest movie market. For the year ended 31 December 2017 (the "Year" or the "Reporting Period"), China's total movie box office receipts amounted to RMB55.91 billion, representing a year-on-year increase of 13.5%. It is the first time for China's annual total movie box office to record a revenue of more than RMB55 billion. The urban cinema admission was 1,620 million, representing an increase of 18.1% as compared with 1,370 million for the same period last year. In 2017, there were 9,169 theatres in the country, with 9,597 newly added screens across China and the total number of screens has exceeded 50,000. China maintained its record as the country with the largest number of screens in the world.

According to statistics of the National Bureau of Statistics, China's per capita GDP in 2017 was approximately RMB59,000. The national disposable income per capita was RMB25,974, representing a year-on-year growth of 7.3% in real terms. The national per capita consumption expenditure for the Year was RMB18,322, representing a year-on-year growth of 5.4% in real terms, in which educational, cultural and entertainment expenditure was RMB2,086, representing a year-on-year growth of 8.9% in real terms and accounting for 11.4% of per capita consumption expenditure. The increase in income brought impetus to demand for cultural and entertainment consumption. With the upgrade in consumption, the movie industry in China will have a great development potential, especially in the movie derivative market. Apart from traditional cinema advertisements and sales of products, income from games, food and beverages and retail development around the movies will increase continuously in the future, and may even surpass that of the box office receipts.

## BUSINESS REVIEW

The Group's operating revenue for the Year reached approximately HK$3,789,000,000, representing an increase of 13.1% as compared with HK$3,351,000,000 for 2016. Gross profit was approximately HK$978,000,000 (2016: approximately HK$1,207,000,000), representing a gross margin of 25.8% (2016: 36.0%). Loss for the year approximately HK$267 million (2016: profit for the year approximately HK$407 million).

### Movie Theatre Business

For the year ended 31 December 2017, the Group's movie theatre business segment generated a revenue of approximately HK$3,027,000,000, representing an increase of 2.6% as compared with HK$2,951,000,000 for the corresponding period in 2016.

Profit of this segment decreased 86.0% to approximately HK$104 million (2016: HK$739 million) due to that impairment loss in goodwill and other assets amounted to approximately HK$347 million and approximately HK$68 million respectably was recorded in the Year.

As at 31 December 2017, the Group owned 365 movie theatres and 2,290 screens, representing a substantial growth as compared with 260 movie theatres and approximately 1,820 screens as at 31 December 2016. The Group will continue to leverage on the advantage of the industry and push forward the strategy of "one cinema in every county", that is, to operate at least one movie theatre in every county in China in order to capture the opportunity in the industry. It is expected that by late 2018, the total number of movie theatres owned by the Group in China will be approximately 450.

During the Year, the capital and financial structures of the Group was further optimised, Chengdu Runyun Culture Broadcasting Company Limited ("Chengdu Runyun"), a subsidiary of the Company, completed a capital increase of RMB2,210 million, effectively supplementing the Company's funds. The proceeds from the capital increase will be used for the construction and acquisition of new movie theatres as well as for the repayment of certain interest-bearing debts of the Group.

0019

Confidential

Qin_00000963

**SMI Living**

During the Year, SMI continuously returned benefits to its members in form of innovations and its sincerity. As at 31 December 2017, the accumulative number of members under the new membership scheme reached 40 million. Meanwhile, the Group actively set up the "New Retail" platform, and carried out strategic upgrades by leveraging on the Group's 365 theatres and 40 million members, so as to create more output value. Through the cloud platform, the Group analyses the members' needs instantly and "understands exactly what the members need" rather than "guess what the members would like". Gradually, more strategic partners will be introduced and the platform for own products will be constantly enriched. With technology means such as big data, artificial intelligence, the SMI Living ecosystem will be revamped to achieve upgrade of consumption facilities. Following the successive launching of the 3C Digital Centre and Maternal-Infant Care Supplies Centre, the experiential consumption mode in relation to movie theatres is emerging.

During the Year, the segment of retailed sales business generated revenue of approximately HK$624,000,000, representing an increase of 62.9% as compared with HK$383,000,000 in 2016. Profit increased 13.2% to approximately HK$27.0 million in this segment (2016: HK$23.9 million), which shows that the Group's "New Retail" strategy has been gradually achieving results.

**PROSPECTS**

During the 2018 Chinese New Year period (16 February 2018 to 22 February 2018), China's movie box office receipts reached RMB6.37 billion, representing a significant increase of nearly 70% as compared with the same period last year. Benefitting from "the Strongest Chinese New Year Cinema Audienceship Ever", the Mainland China's movie box office receipts in February 2018 unprecedentedly broke the mark of RMB10 billion and became the top of the world for single-month movie box office receipts. Some industry players even made bold forecasts that the annual movie box office receipts of China in 2018 will surpass RMB70 billion. Data shows that watching movies has become a common way of entertainment in China. As per capita income increases continuously, demand for culture and entertainment will continue to rise. It is expected that the movie theatre business will continue to benefit.

The Chinese government has launched a series of measures in recent years, including the "Notice of Economic Policies Supporting the Development of the Film Industry" (《關於支持電影發展若干經濟政策的通知》), "National Film Industry Development Funds Collection and Management Approach"(《國家電影事業發展專項資金徵收使用管理辦法》) and "Film Industry Promotion Act" (《電影產業促進法》), to regulate and support the development of the film industry. Meanwhile, the upgrade in new consumption and the change in the public's attitude towards entertainment consumption is expected to give momentum to the development of the movie-related businesses.

Looking into 2018, SMI will continue its deployment of movie theatres expansion and at the same time intensify its upgrading work of traditional movie theatres and endeavour to create the new movie theatre ecosystem of "New Marketing, New Retail, New Development", so as to start a new era in movie theatre development with cooperating partners.

In the future, SMI will continue to focus on members' core demand as its operating direction, leveraging on modern logistic means and platform of experiential mode, and supplemented by innovations of intelligent technology. SMI's "New Retail" model will be created by incorporating duplications of successful models. In the future, movie watching will only be one of the underlying businesses in SMI's business chain, while "SMI Living", the new retail platform, will lead the traditional movie theatres in carrying out whole-elements, multi-dimensional and systematic innovative reforms.

**Confidential**

Qin_00000964



## FINANCIAL REVIEW

### Turnover, Revenue and Profit for the year

During the year ended 31 December 2017, total revenue amounted to approximately HK$3,789 million (2016: approximately HK$3,351 million), an increase of 13.1% as compared with 2016.

During the Year, the Group continuously expanded through acquisition and self construction. The number of the theatres and the screens owned by the Group increased significantly with the core business of the Group recording an increase.

Due to the continuous increase in the operating cost as a result of recovering economy which drives the growth of the enterprise, as well as certain portion of borrowings were completed in late 2016, the cost of sales and finance cost for the Year, recorded a relatively large increase. Since time was required for some of the newly acquired theatres to be consolidated, the revenue growth did not increase as the management expected. Therefore, a larger provision for goodwill of newly acquired theatres for the Year was made. An impairment of approximately HK$347,000,000 was made for goodwill for the Year (2016: approximately HK$47,000,000). Also an impairment of approximately HK$68,000,000 was made for various assets.

In addition, SMI Culture & Travel Group Holdings Limited ("SMI Culture") (Stock code: 2366), a subsidiary of the Group, shrank the investment scale in movies, resulting in a record of loss.

The loss after tax for the Year was approximately HK$267,000,000 (2016: profit of approximately HK$407,000,000). Excluding the abovemention impairment of goodwill and assets, profit for the year will be approximately HK$149,000,000.

During the year ended 31 December 2017, the segment revenue and profit were mainly contributed by theatre operation.

The revenue of theatre operation for the year ended 31 December 2017 increased by approximately HK$76 million compared to the corresponding period in 2016. Affected by the impairment of goodwill, the profit decreased by 86% from approximately HK$739 million in 2016 to approximately HK$104 million in 2017.

An impairment of approximately HK$68,000,000 was made for other assets for the Year.

Furthermore, retail business segment recorded revenue of approximately HK$624 million. Segment profit of approximately HK$27.0 million (2016: profit HK$23.9 million) was recorded during the Reporting Period.

### Selling, Marketing and Administrative Expenses

The selling, marketing and administrative expenses increased by 12.7%, which were mainly attributable to the increase in number of theatres acquired and construction completed during the year ended 31 December 2017.

### Financial Costs

Financial costs were mainly represented by the interest of approximately HK$262,268,000 from bank and other loans, interest of approximately HK$176,397,000 from bonds, interest of approximately HK$105,434,000 from convertible notes, interest of approximately HK$32,755,000 from securities margin facilities and finance lease charges of approximately HK$15,667,000.

### Financial Resources and Liquidity

As at 31 December 2017, the Group had net current liabilities of approximately HK$3,050 million. The Group has been operating in profit and positive operating cash inflow is recorded since 2011. The Group meets the potential investors from time to time to expand the capital structure of the Company for short term working capital and long term capital investment. In addition to the Group's successful fund raising activities organised at past, the Directors believe that the Group will have sufficient cash resources to satisfy its future working capital requirement.

Confidential

Qin_00000965

As at 31 December 2017, the gearing ratio (total borrowings (including convertible notes) to total assets of the Company) reduced from 33.0% from 46.1% in 2016, which was mainly due to increase of goodwill approximately HK$1,559 million, increase in progress payment approximately HK$41 million and increase in deposits paid approximately HK$139 million.

The Group was financed mainly through share capital, reserves, bonds, bank borrowings and other borrowings.

**Capital expenditures**

During the Year, the expenditures on leasehold land and buildings, leasehold improvements and theatre equipment of the Group increased approximately HK$690 million. The Group also acquired a number of subsidiaries for an aggregated consideration of approximately HK$1,719 million. The above expenditures were mainly related to the construction and acquisition of movie theatres by the Group all over China.

**Contingent liabilities**

As at the date of this report, there are certain disputes which arise from time to time in the ordinary course of the operation of theatres. The Group is in the course of processing these matters. The Directors are of the view that these disputes will not have a material adverse impact on the financial results of the Group.

As at 31 December 2017, the Group and the Company did not have any other significant contingent liabilities.

**Exposure to Fluctuations in Exchange Rates and Related Hedges**

The Group's monetary assets and transactions are mainly denominated in Hong Kong dollars and Renminbi. The exchange rates of Renminbi against Hong Kong dollars were relatively stable during the Year. During the Year, the Group did not use financial instruments for hedging purposes. The Group continues to monitor the exposures to Renminbi and will take necessary procedures to reduce the fluctuations in exchange rates at reasonable costs.

**Pledge of Assets**

At the end of the Reporting Period, the Group has the following pledge of assets:

(a) The Group's building situated in the PRC amounted to approximately HK$205,057,000 (2016: HK$24,456,000) was pledged to secure for certain bank borrowings granted to the Group.

(b) the Group assigned the movie box office's receipts and receivables from the movie theatres operated by certain subsidiaries in the PRC to the financial institutions for securing the repayments of FY 2015, FY 2016 Trust loans (the "Trust Loans") and FY 2017 Other Loan in the next five year.

(c) the Group pledged its subordinated securities as stipulated in the ABS arrangement as a collateral for the Trust Loans.

(d) As at 31 December 2017, all equity interests in a subsidiary and held-for-trading investments were used as contingent collaterals for the margin account facilities granted to the Group.

**Employees**

Excluding the staff of associates, the Group had approximately 6,400 full-time staff as at 31 December 2017 (including Directors but excluding part-time staff). The Group offers remuneration and benefit packages to its employees according to the prevailing salary levels in the market, individual merits and performance.

**Confidential**

Qin_00000966

# Biographical Information of Directors

**EXECUTIVE DIRECTORS**

**Mr. WAI Yee Tai**, aged 40, was appointed as an executive Director and the chairman of the Board on 5 September 2017. He has approximately 15 years' working experience and extensive knowledge in the field of private banking, and wealth management in Singapore. Mr. Wai obtained a bachelor's degree in Economics (major in Banking and Finance) at University of London (External) in 1999. Mr. Wai is an executive director of private wealth management, Institutional Equity Division of Morgan Stanley Asia Limited from 2015, focus on serving ultra-high net worth individuals, corporates and institutions. From 2003 to 2015, Mr. Wai worked in Citibank Singapore Limited, with the latest position of elite plus relationship manager of global consumer bank.

**Mr. YANG Rongbing**, aged 38, was appointed as an executive Director on 3 May 2013 and the CEO of the Company on 6 April 2017. He holds a MBA from Central University of Finance and Economics. Mr. Yang joined the Group in 2010 and is an executive Director and the vice president of the Company. Mr. Yang is mainly responsible for corporate strategy whilst oversees a list of key operational departments including finance, investment, human resources and legal. Mr. Yang has extensive experience in investment and finance, and familiar with relevant areas with regard to the media industry, including financial markets and tax planning. Mr. Yang is also an expert in adopting a wide range of innovative financial vehicles to support rapid growth and continuously improving capital structure. Mr. Yang has acquired extensive experience in financial management, capital planning, internal control, investment and financing and capital financial strategy from serving various financial and investment roles in state-owned enterprises and institutions such as Beijing Golden Tide Group Co., Ltd., Foreign Economic Cooperation Office under Ministry of Environmental Protection, Center for Development of Trade and Control of Investment in Europe, etc.

Mr. Yang is an independent non-executive director of China Leon Inspection Holding Limited (Stock code: 1586), the shares of which are listed on the Main Board of The Stock Exchange of Hong Kong Limited (the "Stock Exchange").

**Mr. CHENG Chi Chung**, aged 51, was appointed as an executive Director on 22 November 2011. He holds an EMBA degree from Tsinghua University of Beijing and a bachelor degree from Taiwan University, and obtained Special Awards and honor of the 44th National Culture and Arts in China. He served as the chief executive officer of Beijing Gome Online Co., Ltd. (北京國美在線有限公司), the director of Eastern Broadcasting Co., Ltd. (東森集團), the general manager of Eastern Broadcasting and Eastern Shopping (America) (東森電視及東森購物(美洲)), the general manager of Eastern Public Relations Company (東森公關公司) and the director of Eastern Broadcasting News Channel (東森電視新聞台). Mr. Cheng has extensive management experience in culture, media and retail areas.

**Mr. KONG Dalu**, aged 45, was appointed as an executive Director on 6 April 2017. He has approximately 20 years' working experience and extensive knowledge in the field of banking, corporate finance and investment in Hong Kong and Mainland China. Mr. Kong obtained a bachelor's degree in Economics (major in International Finance) at Wuhan University in the PRC in 1994.

Mr. Kong was a foreign exchange manager and foreign exchange trader in the international business department in the headquarters of Hua Xia Bank Co., Limited from 1994 to 1997. From 1997 to 2007, Mr. Kong also served at senior management level respectively at China Minsheng Bank Corp., Ltd. and Bank of Communications Co., Ltd. Since 2007, Mr. Kong has acted as a director of Xince (Hong Kong) Investment Development Co. Limited, being an equity investment company incorporated in Hong Kong. During the period from 2008 to 2011, Mr. Kong also acted as a director of Haitong Securities Company Limited (Shanghai Stock Code: 600837), being a company listed on the Shanghai Stock Exchange. Mr. Kong was an executive director of SMI Culture & Travel Group Holdings Limited (Stock code: 2366) from 7 June 2014 to 9 March 2018, the shares of which are listed on the Main Board of the Stock Exchange.

**Mr. PAN Jen Kai**, aged 38, was appointed as an executive Director on 9 March 2018. He has over 18 years' experience in equity research, corporate finance, investment banking, assets management and listed companies. He obtained a Master of Science degree in global finance in Leonard N. Stern School of Business of New York University.

0021

**Confidential**

Qin_00000967

**NON-EXECUTIVE DIRECTOR**

**Mr. HUNG Ka Hai Clement**, aged 62, was appointed as an independent non-executive Director on 16 January 2017 and re-designated as an non-executive Director on 15 March 2017. He retired from the Chairman role of Deloitte China in June 2016. He also represented Deloitte China in the Deloitte Global Board and Governance Committee as a member during at that time.

Mr. Hung has served Deloitte China firm for 31 years. He has extensive experience in the areas of initial public offerings, mergers and strategic acquisitions and corporate finance, and advising multinational corporations, public companies and enterprises in Hong Kong and the People's Republic of China and is an expert in listings in Main Board and GEM in the Hong Kong Stock Exchange. Recently the Ministry of Finance of People's Republic of China appointed him as an expert Consultant under his extensive experience as a Hong Kong accounting professionals.

Mr. Hung had also assumed various leadership roles in Deloitte before he took up the appointment as Chairman. He was the Audit group leader and the Office Managing Partner of Deloitte Shenzhen Office and Guangzhou Office. He was also a member of the China Management Team. Later on Mr. Hung assumed the role of the Southern Audit Leader and the Deputy Managing Partner of the Southern Region.

Mr. Hung has become an honorary member of the Shenzhen Institute of Certified Public Accountants in 2004; He has served as the Guangzhou Institute of Chartered Accountants consultant from 2009; During 2006-2012 he also served as member of the Political Consultative Committee of Luohu District, Shenzhen.

Mr. Hung is the independent non-executive director of Gome Finance Technology Co., Ltd. (Stock code: 628), Henry Group Holdings Limited (Stock code: 859), and LT Commercial Real Estate Limited (Stock code: 112). He is also a non-executive director of High Fashion International Limited (Stock code: 608), whose shares are listed on the main board of the Stock Exchange. Mr. Hung is also an independent non-executive director of Sheng Ye Capital Limited (Stock code: 8469), of which it shares are listed on the GEM of the Stock Exchange.

**INDEPENDENT NON-EXECUTIVE DIRECTORS**

**Mr. PANG Hong**, aged 63, was appointed as an independent non-executive Director on 28 September 2004. Mr. PANG had worked for various enterprises and government departments in China for over 20 years. He has substantial knowledge of the investment environment in China and has extensive experience in the management of Chinese companies. After studying in the United States for 3 years, he came to Hong Kong to further his career development. He is currently engaged in providing private management consultancy services. Mr. PANG is the independent non-executive director of Shaw Brothers Holdings Limited (Stock code: 953) and Sino Haijing Holdings Limited (Stock Code: 1106), both shares are listed on the Main Board of the Stock Exchange.

**Mr. LI Fusheng**, aged 56, was appointed as an independent non-executive Director on 10 October 2013. Mr. LI is the manager of Beijing Office of Hong Kong Ta Kung Pao. Since joining Ta Kung Pao in 1994, Mr. LI has reported many breaking news and important events. He has reported many significant events in Mainland China, such as reporting the news about the National People's Congress and Chinese People's Political Consultative Conference for 20 consecutive years, and the Beijing Olympic Games. Mr. LI has extensive experience and network in the media industry.

**Mr. WONG Shui Yeung**, aged 47, was appointed as an independent non-executive Director on 13 April 2017. Mr. Wong has over 20 years of experience in public accounting, taxation, secretarial and financial consultancy and management in Hong Kong. He is a practising member and fellow of Hong Kong Institute of Certified Public Accountants and a member of Hong Kong Securities and Investment Institute. Mr. Wong is the independent non-executive director of Singapore eDevelopment Limited (Stock code: 40V), the shares of which are listed on the Catalist of the Singapore Exchange Securities Trading Limited.

**Confidential**

Qin_00000968



# Directors' Report

The Board is pleased to present its report together with the audited consolidated financial statements of the Group for the year ended 31 December 2017.

## PRINCIPAL ACTIVITIES
The Company is an investment holding company. The principal activities of its principal subsidiaries are operating movie theatres in PRC. Details of the Company's principal subsidiaries and associates as at 31 December 2017 are set out in notes 50 and 20 to the consolidated financial statements on pages 121 to 125 and 86 respectively. There were no significant changes in the nature of the principal activities of the Company and of the Group during the year ended 31 December 2017.

## BUSINESS REVIEW AND PERFORMANCE
A review of the business of the Group and a discussion and analysis of the Group's performance during the year under review and a discussion on the Group's future business development and outlook of the Company's business, possible risks and uncertainties that the Group may be facing and important events affecting the Company occurred during the year ended 31 December 2017 are provided in the section headed "Chairman's Statement" on pages 3 to 4, the section headed "Management Discussion and Analysis" on pages 5 to 8 of this annual report and the paragraph headed "Principal Risks and Uncertainties" of this section of this annual report. An analysis of the Group's performance during the year ended 31 December 2017 using financial performance indicators is provided in the section headed "Management Discussion and Analysis" on pages 5 to 8 of this annual report. An account of the Company's relationships with its employees, suppliers and customers is included in the paragraph headed "Relationship with Employees, Suppliers, Customers and Other Stakeholders" of this section of this annual report.

## PRINCIPAL RISKS AND UNCERTAINTIES
Risk and uncertainties will affect the Group in the financial aspect and operational aspect. The followings are part of the key risks factors and uncertainties identified by the Group. There may be other risks and uncertainties in addition to those shown below which are not known to the Group or which may not be material now but could turn out to be material in the future.

### Business Risk
The number of movie theatres in tier one cities in China is tended to be saturated, while the pace of development in other cities are different. Since the Group is still under expansion, if new movie theatres cannot be established in superior locations during the booming development of the movie theatre market at this moment, the market sharing of the Group may not be increased as expected. Moreover, if the reputation of the movies broadcasted were not satisfactory and cannot attract audience to watch, the revenue of box office may reduce and thus affect the Group's performance. Moreover, retail business, both online and offline, are under fierce competition. Our performance of the value-added business, SMI Living, may be affected by the pricing and marketing strategies applied by our competitors.

### Liquidity Risk
This referred to the potential threat that the Group may be unable to meet the financial obligations when they fall due. The Company will keep monitoring the cashflow of the Group to ensure there are sufficient fundings for any financial liabilities are fall due.

## RESULTS AND APPROPRIATIONS
The results of the Group for the year ended 31 December 2017 are set out in the consolidated statement of profit or loss and other comprehensive income on page 35. The Board does not recommend the payment of a final dividend for the year ended 31 December 2017. (2016: HK1.32 cents per ordinary share).



**SHARE CAPITAL AND RESERVES**
As at 31 December 2017 the total number of shares issued by the Company was 2,720,041,916 shares. Movements in the Company's authorized and issued share capital are set out in note 40 to the consolidated financial statements on page 108.

Movements in the reserves of the Group are set out in the consolidated statement of changes in equity on pages 38 to 39 and those of the Company are set out in note 51 to the consolidated financial statements on pages 126 to 129.

**PROPERTY, PLANT AND EQUIPMENT**
Details of the Group's property, plant and equipment during the year ended 31 December 2017 are set out in note 16 to the consolidated financial statements on pages 80.

**DIRECTORS AND DIRECTORS' SERVICE CONTRACTS**
The Directors of the Company during the year ended 31 December 2017 and up to the date of this report were:

**Executive Directors:**

| | |
|---|---|
| Mr. WAI Yee Tai | *(Chairman)* (Appointed on 5 September 2017) |
| Mr. YANG Rongbing | *(Chief Executive Officer)* |
| Mr. KOH Kok Sim | (Appointed on 1 September 2017 and resigned on 9 March 2018) |
| Mr. CHENG Chi Chung | |
| Mr. KONG Dalu | (Appointed on 6 April 2017) |
| Mr. PAN Jen Kai | (Appointed on 9 March 2018) |

**Non-executive Directors:**

| | |
|---|---|
| Dr. YAP Allan | (Resigned on 28 November 2017) |
| Mr. HUNG Ka Hai Clement | (Appointed on 16 January 2017 as an independent non-executive Director and re-designated as a non-executive Director on 15 March 2017) |

**Independent non-executive Directors:**

| | |
|---|---|
| Mr. PANG Hong | |
| Mr. LI Fusheng | |
| Mr. LI Wing Yin | (Resigned on 16 January 2017) |
| Mr. Wong Shui Yeung | (Appointed on 13 April 2017) |

In accordance with Bye-laws 86(2), 87(1) and 87(2) of the Company's bye-laws (the "Bye-laws"), Mr. WAI Yee Tai and Mr. PAN Jen Kai were appointed by the Board as executive Directors of the Company after the last annual general meeting dated 2 June 2017. They shall retire from office, and being eligible, have offered themselves for re-election at the forthcoming 2018 annual general meeting of the Company.

The Company has received from each of the independent non-executive Directors an annual confirmation of his independence pursuant to Rule 3.13 of the Rules Governing the Listing of Securities on The Stock Exchange of Hong Kong Limited (the "Listing Rules"). The Company considers Mr. LI Fusheng and Mr. Wong Shui Yeung are independent. The Board considers that Mr. PANG Hong meets the independence criteria set out under Rule 3.13 of the Listing Rules even though he has served as an independent non-executive Director for more than nine years, as the Board is of the view that his duration of service will not interfere with his exercise of independent judgment in carrying out the duties and responsibilities as an independent non-executive Director. The Board considers him to be independent and believes he will continue to contribute to the Board because of his familiarity and experience with the Group's businesses and affairs. Each of the three independent non-executive Directors has entered into a service contract with the Company for a term of three years. The service contracts can be terminated by either party giving three months' notice to the other party.

**Confidential** Qin_00000970



All annual remuneration packages of the Directors were determined on arm's length negotiations between the parties based on their respective contributions to and responsibilities in the Company. No Director proposed for re-election at the forthcoming 2018 annual general meeting has a service contract which is not determinable by the Company or any of its subsidiaries within one year without payment of compensation, other than normal statutory compensation. Details of the Director's emoluments are set out in note 12 to the consolidated financial statements.

## DIRECTORS AND CHIEF EXECUTIVE'S INTERESTS

As at 31 December 2017, the interests and short positions of the Directors and chief executive in the shares of the Company and their associates or any of its associated corporations (within the meaning of Part XV of the Securities and Futures Ordinance ("SFO")) as recorded in the register required to be kept by the Company under Section 352 of the SFO or as otherwise notified to the Company and The Stock Exchange of Hong Kong Limited (the "Stock Exchange") pursuant to the Model Code for Securities Transactions by Directors of Listed Issuers (the "Model Code") contained in Appendix 10 of the Listing Rules were as follows:

### Long positions in the shares and underlying shares of the Company

| Name of Director | Capacity | Register Shareholders | Underlying Interest | Total | Approximate % of Shareholding |
|---|---|---|---|---|---|
| WAI Yee Tai (Appointed on 5 September 2017) | Beneficial Owner | – | 6,000,000 | 6,000,000 | 0.22 |
| YANG Rongbing | Beneficial Owner | 1,066 | 7,000,000 | 7,001,066 | 0.26 |
| CHENG Chi Chung | Beneficial Owner | – | 4,500,000 | 4,500,000 | 0.17 |
| KONG Dalu (Appointed on 6 April 2017) | Beneficial Owner | – | 7,000,000 | 7,000,000 | 0.26 |
| KOH Kok Sim (Appointed on 1 September 2017 and resigned on 9 March 2018) | Beneficial Owner | – | 6,000,000 | 6,000,000 | 0.22 |

Save as disclosed above, as at 31 December 2017, none of the Directors or the chief executive or their associates had any interests or short positions in any shares, underlying shares or debentures of the Company, subsidiaries or any of its associated corporations (within the meaning of Part XV of the SFO) as recorded in the register required to be kept under Section 352 of the SFO or as otherwise notified to the Company and the Stock Exchange pursuant to the Model Code.

## SHARE OPTION SCHEME

The Company adopted a new share option scheme on 30 September 2009. The purpose of the share option scheme is to enable the Board, at its discretion, to grant options to eligible participants, including the Directors of the Company, as incentives or rewards for their contributions to the Group. Details of the scheme are set out in note 41 to the consolidated financial statements.

**Confidential**

**Qin_00000971**

During the year ended 31 December 2017, certain existing executive Directors of the Company and other eligible participants have interests in share options to subscribe for shares in the Company. Details of such interests and movement of share options granted by the Company are shown below:

| | Date of Grant | Exercise period | Balance as at 1 January 2017 | Granted during the year | Exercised during the year | Lapsed during the year | Balance as at 31 December 2017 | Exercise price per share (HK$) |
|---|---|---|---|---|---|---|---|---|
| WAI Yee Tai | 12 October 2017 | Note 1 | 0 | 6,000,000 | – | – | 6,000,000 | 4.37 |
| YANG Rongbing | 12 October 2017 | Note 1 | 0 | 7,000,000 | – | – | 7,000,000 | 4.37 |
| KOH Kok Sim | 12 October 2017 | Note 1 | 0 | 6,000,000 | – | – | 6,000,000 | 4.37 |
| CHENG Chi Chung | 12 October 2017 | Note 1 | 0 | 4,500,000 | – | – | 4,500,000 | 4.37 |
| KONG Dalu | 12 October 2017 | Note 1 | 0 | 7,000,000 | – | – | 7,000,000 | 4.37 |
| Other Eligible Participants | 12 October 2017 | Note 1 | 0 | 53,500,000 | – | – | 53,500,000 | 4.37 |

Notes:

(1)    From 12 October 2017 to 12 October 2019 (both days inclusive) provided that the maximum number of share options granted on 12 October 2017 which may be exercisable of by each of the Grantee in each one year of the exercise period shall not exceed half of the options granted to that Grantee.

## SUBSTANTIAL SHAREHOLDERS' INTERESTS

As at 31 December 2017, so far as it is known to the Directors, the following parties (other than the Directors and chief executive of the Company) had interests of 5% or more in the issued share capital of the Company as recorded in the register required to be kept under Section 336 of SFO:

| Substantial Shareholder | Beneficial Owner | Corporate Interest | Family Interest | Long Position | Short Position | % of total issued share |
|---|---|---|---|---|---|---|
| Mr. QIN Hui (Notes 1 and 2) | 1,767,025,513 | 1,285,828 | – | 1,767,025,513 | – | 65.01% |

Notes:

1.    Mr. QIN Hui is beneficially interested in 1,767,025,513 shares.

2.    Mr. QIN Hui owns the entire interest in Strategic Media International Limited ("SMIL") and was accordingly deemed to be interested in 1,285,828 shares which are held by SMIL.

Save as disclosed herein, the Company has not been notified by any other person (other than a Director of the Company) who had an interest or a short position in the shares and underlying shares as recorded in the register to be kept by the Company pursuant to Section 336 of the SFO as at 31 December 2017.

## DIRECTORS' INTERESTS IN COMPETING BUSINESS

No Director of the Company had a material interest in any business apart from the business of the Group which directly or indirectly completed or likely to compete with the business of the Group at the end of the year or at any time during the year ended 31 December 2017 which is required to be disclosed pursuant to Rule 8.10 of the Listing Rules.



14    SMI HOLDINGS GROUP LIMITED

**Confidential**    **Qin_00000972**



## DIRECTORS' INTERESTS IN CONTRACTS

No contract of significance in relation to the Group's business to which the Company, its subsidiaries, its fellow subsidiaries or its holding company, was a party, and in which a Director of the Company had a material interest whether directly or indirectly, subsisted at the end of the year or at any time during the year.

### 1. MANAGEMENT CONTRACTS

No contracts concerning the management and administration of the whole or any substantial part of the business of the Group were entered into or existed during the year.

### 2. PERMITTED INDEMNITY PROVISION

Subject to the applicable laws, every Director and other officers of the Company shall be entitled to be indemnified by the Company from and against all actions, costs, charges, losses, damages and expenses which they or any of them may incur in the execution and discharge of his or her duties or in relation thereto pursuant to the Bye-laws. Such provisions were in force during the course of the financial year ended 31 December 2017 and remained in force as of the date of this report. The Group has also taken out and maintained liability insurance for Directors and officers throughout the year.

## MAJOR CUSTOMERS AND SUPPLIERS

There are no major customer contributing over 10% of the Group's revenue during the year ended 31 December 2017 and 2016.

## CONTRACTUAL ARRANGEMENTS

### Structured Contracts

A series of structured contracts (the "Structured Contracts") that were designed to provide Beijing Xingmeihui Catering Management Co., Ltd. (北京星美匯餐飲管理有限公司) ("Xingmeihui"), an indirect wholly-owned subsidiary of the Company, with effective control over the financial and operational policies of the PRC Subsidiaries (as defined in note 1 below) and (to the extent permitted by PRC laws and regulations) the right to acquire the equity interests in the PRC Subsidiaries were entered into between or amongst Xingmeihui, the PRC Equity Owners (as defined in note 2 below) and the PRC Entities (as defined in note 3 below).

### (a) Exclusive Business Cooperation Agreement

An exclusive business cooperation agreement dated 30 June 2016 (the "Exclusive Business Cooperation Agreement") was entered into between Xingmeihui and the PRC Entities, pursuant to which the PRC Entities shall engage Xingmeihui on an exclusive basis to provide comprehensive theatre management and support, technical services and consultation services to the PRC Entities including but not limited to:

(i) corporate operation management;

(ii) business support;

(iii) business-related technical services;

(iv) internet support;

(v) business consultation;

(vi) intellectual property permission;

(vii) equipment or lease;

(viii) market consultation;

(ix) system integration;



(x)   product research and development;

(xi)  system maintenance; and

(xii) other management consultation services in relation to the business of the PRC Entities.

**(b)   *Exclusive right to purchase agreement***

An exclusive right to purchase agreement dated 30 June 2016 (the "Exclusive Right to Purchase Agreement") was entered into between Xingmeihui, the PRC Equity Owners and the PRC Entities, pursuant to which the PRC Equity Owners will irrevocably, and jointly and individually grant Xingmeihui the exclusive right to purchase the equity interests of the PRC Entities at the minimum price permitted by the relevant laws and regulations of the PRC at any time, by one or more times.

**(c)   *Equity pledge agreement***

An equity pledge agreement dated 30 June 2016 (the "Equity Pledge Agreement") was entered into between Xingmeihui, the PRC Equity Owners and the PRC Entities, pursuant to which the PRC Equity Owner agreed to pledge their equity interest in the PRC Entities to Xingmeihui as security. Xingmeihui shall have the rights to dispose the pledged equity interest upon occurrence of any event of default, which includes: (i) any breach of terms or conditions, or any substantial incorrectness or misrepresentation in the representations and warranties of the Exclusive Right to Purchase Agreement, the Shareholders' Voting Right Entrustment Agreement or the Equity Pledge Agreement by the PRC Equity Owners; and (ii) any breach of terms or conditions, or any substantial incorrectness or misrepresentation in the representations and warranties of the Exclusive Business Cooperation Agreement, the Exclusive Right to Purchase Agreement, the Shareholders' Voting Right Entrustment Agreement or the Equity Pledge Agreement by the PRC Entities.

**(d)   *Shareholders' voting right entrustment agreement***

A shareholders' voting right entrustment agreement dated 30 June 2016 (the "Shareholders' Voting Right Entrustment Agreement") was entered into between Xingmeihui, the PRC Equity Owners and the PRC Entities, pursuant to which the PRC Equity Owners irrevocably and unconditionally agreed to entrust to the director(s), successor(s) or receiver(s) of Xingmeihui all their voting rights in the PRC Entities to the followings:

Note 1:

The following PRC entities shall be collectively known as the "PRC Subsidiaries":

1.   成都潤通文化傳播有限公司, a company established in the PRC with limited liability and is held as to 43.03% and 41.34% by 深圳星美聖典文化傳媒集團有限公司 and 星美國際影院有限公司, respectively;

2.   北京望京星美國際影城管理有限公司, a company established in the PRC with limited liability and is held as to 51% and 49% by 深圳星美聖典文化傳媒集團有限公司 and the Group, respectively;

3.   北京回龍觀星美國際影城管理有限公司, a company established in the PRC with limited liability and is held as to 51% and 49% by 深圳星美聖典文化傳媒集團有限公司 and the Group, respectively;

4.   北京名翔國際影院管理有限公司, a company established in the PRC with limited liability and is held as to 51% and 49% by 深圳星美聖典文化傳媒集團有限公司 and the Group, respectively;

5.   天津星美影城管理有限公司, a company established in the PRC with limited liability and is held as to 51% and 49% by 深圳星美聖典文化傳媒集團有限公司 and the Group, respectively;

6.   上海星美樂羣影院管理有限公司, a company established in the PRC with limited liability and is held as to 51% and 49% by 深圳星美聖典文化傳媒集團有限公司 and the Group, respectively;

**Confidential**

**Qin_00000974**

7.    上海金山星美百倍影院管理有限公司, a company established in the PRC with limited liability and is held as to 51% and 49% by 深圳星美聖典文化傳媒集團有限公司 and the Group, respectively;

Note 2:

The following PRC individuals/entities shall be collectively known as the "PRC Equity Owners":

1.    Mr. Qin Hui, a PRC citizen who holds the entire equity interest in the 深圳星美聖典文化傳媒集團有限公司 and a controlling shareholder of the Company;

Note 3:

The following PRC entities shall be collectively known as the "PRC Entities":

1.    深圳星美聖典文化傳媒集團有限公司;

## Reasons for using contractual arrangements

Pursuant to 外商投資產業指導目錄(2015修訂) (Guidance Catalogue of Industries for Foreign Investment (revised in 2015)), 外商投資電影院暫行規定(2015年修訂) (Interim Regulations on Investment in Cinemas by Foreign Investors) and its supplementary provisions, foreign investors are not permitted to establish any solely-owned cinemas or form any film network companies. As regards Sino-foreign equity joint cinemas, the share of the investment in registered capital made by the foreign investor may not exceed 49%, and for Sino-foreign equity joint cinemas established in pilot cities including Beijing, Shanghai, Guangzhou, Chengdu, Xi'an, Wuhan and Nanjing, the share of the investment in registered capital made by the foreign party may not be more than 75%.

In light of the above PRC laws and regulations and in order to enable control to be exercised over the entities engaged in theatre operation business invested by the Group, the contractual arrangements are necessary, which enable the Company to exercise effective financial and operational control over the theatre operation companies and receive substantially all of the economic interest returns generated by the theatre operation companies.

## Significance of business of the PRC Subsidiaries to the Group

The Group is engaged in the movie theatre operation through the Structured Contracts. For the year ended 31 December 2017, the revenue and assets from this segment account for approximately 88.1% and 77.3% of the total revenue and total assets of the Group, respectively.

## The risk associated with the contractual arrangements

*(a)   The PRC government may determine that Structure Contracts do not comply with applicable PRC laws or regulations in the future*

The Directors confirm that the Structured Contracts are legal and valid. The Auditor had carried out procedures on the Contractual arrangements and understand that the group has rights to variable returns from its involvement with the relevant entities and has the ability to affect those returns through its power over the relevant entities and is considered to control the Relevant Entities.

There can be no assurance that the PRC governmental authorities will not in future interpret or issue laws or regulations that will result in the Structured Contracts being deemed to be in violation of the then prevailing PRC laws.

*(b)   The Structured Contracts may not provide control as effective as direct ownership*

The PRC Legal Adviser has advised that the Structured Contracts are in compliance with the PRC laws currently in force, are enforceable under the current PRC laws, and that in the event of any breach or default by the PRC Equity Owners or the PRC Entities, Xingmeihui may take legal action against any one of them. However, the Structured Contracts do not give the Company the extent of control and security that direct legal and beneficial ownership over the PRC Subsidiaries provides. The Company relies on the PRC legal system to enforce these arrangements.

**Confidential**

**Qin_00000975**



Directors' Report

**Actions taken by the Company to mitigate the risks**
The Company have engaged PRC legal advisers to review the Structured Contracts in order to mitigate the risk of any non-compliance of the Structured Contracts with all applicable laws and regulations of the PRC. In the view of the Company's PRC legal advisers, the arrangement of the Structure Contracts does not violate applicable existing PRC laws and regulations.

**No Material Change**
Save as disclosed in note 56 to the financial statements, there has been no material change in the Structured Contracts and/or the circumstances under which they were adopted up to the date of this report.

**MATERIAL ACQUISITION AND DISPOSAL OF SUBSIDIARIES AND ASSOCIATED COMPANIES**
On 15 March 2017, Chengdu Runyun, a subsidiary of the Company, entered into the capital increase agreements (the "Capital Increase Agreements") with Zhongtai Specialty Financing Holdings Limited, Hesheng No.1 (Shenzhen) Investment Centre (Limited Partnership), Dongzheng Guiding (Shanghai) Investment Partnership (Limited Partnership) and CCB International (Shenzhen) Investment Co., Ltd (collectively, the "Investors") respectively, pursuant to which the Investors have conditionally agreed to make an aggregate capital contribution of RMB2,500,000,000 (the "Capital Increase"), in exchange of a total of 15.625% of the enlarged equity interest of Chengdu Runyun.

Chengdu Runyun is a subsidiary of the Company and is principally engaged in operation and management of movie theatre business. The Company has obtained written approval for the Capital Increase pursuant to Rule 14.44 of the Listing Rules from the controlling shareholder of the Company which holds more than 50% of the issued share capital of the Company giving the right to attend and vote at a general meeting. Following the completion of the Capital Increase under the Capital Increase Agreements, the ownership interests of the Group in Chengdu Runyun has been diluted from 100% to 84.375%. As the ownership interests of the Group in Chengdu Runyun has been diluted from 100% to 84.375%, the Capital Increase constitutes a deemed disposal of the Company pursuant to Rule 14.29 of the Listing Rules.

**PURCHASE, SALE OR REDEMPTION OF THE LISTED SECURITIES OF THE COMPANY**
During the year ended 31 December 2017, the Company purchased 11,000,000 shares of its own ordinary shares of the Company of HK$0.10 each share at the highest and lowest prices of HK$0.74 and HK$0.66 per share respectively ("Shares Repurchase"). The Company conducted the Shares Repurchase because the Board considered that the then value of the Company's shares was consistently undervalued, and the Board believed that the then financial resources of the Company would enable it to conduct the Shares Repurchase while maintaining a solid financial position for the continuation of the Company's business in the financial year.

Detail information of the purchase, sales or redemption of the listed securities of the Company by the Company or any of its subsidiaries during the year ended 31 December 2017 were disclosed in note 40 of the consolidated financial statements.

**PUBLIC FLOAT**
As at 31 December 2017, the Company has maintained the prescribed public float under the Listing Rules based on the information that is publicly available to the Company and within the knowledge of the Board.

**PRE-EMPTIVE RIGHTS**
There is no provision for pre-emptive right under the Bye-laws, or the laws of Bermuda which would oblige the Company to offer new shares on a pro-rata basis to existing shareholders.

**ENVIRONMENTAL POLICIES AND PERFORMANCE**
The Group is committed to the long term sustainability of the environment and communities in which it operates. As a responsible corporation, to the best knowledge of the Directors, the Group has complied with all relevant laws and regulations regarding environmental protection during the year ended 31 December 2017. Further details about the environmental and social responsibility which will be published in separate report to be uploaded on the websites of the Company and the Stock Exchange within three months after the publication of this report.

**Confidential**

Qin_00000976



## COMPLIANCE WITH THE RELEVANT LAWS AND REGULATIONS

The Group recognises the importance of compliance with regulatory requirements and the risk of non-compliance with the applicable rules and regulations. To the best knowledge of the Directors, the Group has complied in material respects with the relevant laws and regulations that have a significant impact on the business and operation of the Group during the year ended 31 December 2017.

## RELATIONSHIP WITH EMPLOYEES, SUPPLIERS, CUSTOMERS AND OTHER STAKEHOLDERS

The Group understands that the success of the Group's business depends on the support from its key stakeholders including employees, customers, suppliers, banks, regulators and shareholders. The Group will continue to ensure effective communication and maintain good relationship with each of its key stakeholders.

## RETIREMENT BENEFITS SCHEMES

Details of the Group's retirement benefit schemes are set out in note 13 to the consolidated financial statements on page 79.

## CONTINGENT LIABILITIES

As at the date of this report, there are certain disputes which arise from time to time in the ordinary course of the operation of theatres. The Group is in the course of processing these matters. The Directors are of the view that these disputes will not have a material adverse impact on the financial results of the Group.

As at 31 December 2017, the Group and the Company did not have any other significant contingent liabilities.

## EVENTS AFTER THE REPORTING PERIOD

Details of significant events occurring after the date of statement of financial position are set out in note 56 to the consolidated financial statements on page 135.

## FIVE YEAR FINANCIAL SUMMARY

A summary of the results and the assets and liabilities of the Group for the last four financial years and for the year ended 31 December 2017 is set out on page 136 of the annual report.

## AUDITOR

Messrs Deloitte Touche Tohmatsu ("Deloitte") will retire and, being eligible, offer themselves for re-appointment. A resolution will be proposed at the forthcoming annual general meeting to re-appoint Deloitte as the auditor of the Company.

## APPRECIATION

I would like to take this opportunity to thank my fellow Directors, as well as the management and all our employees for the contribution they have made towards the Group's continued progress and to our shareholders, customers and business partners for their support.

On behalf of the Board
**WAI Yee Tai**
*Chairman*

Hong Kong, 29 March 2018

0026

**Confidential**

Qin_00000977

# Corporate Governance Report

**OVERVIEW OF CORPORATE GOVERNANCE**

The Company is committed to maintaining high standards of corporate governance. The Board believed that effective internal control and corporate governance practices are essential for the sustainable growth for the Group and for safeguarding and maximizing the interest of the shareholders.

The Company has established a corporate governance framework comprising principally the Bye-laws and internal control handbook of the Company to implement the Corporate Governance Code (the "CG Code") as set out in Appendix 14 to the Rules Governing the Listing of Securities on the Stock Exchange (the "Listing Rules").

**THE CORPORATE GOVERNANCE CODE**

During the year ended 31 December 2017, the Company complied with the code provisions (the "Code Provisions") of the CG Code, except for the deviations from Code Provisions A.6.7 and E.1.2 as set out in Appendix 14 to the Listing Rules which are explained below:

1.  Code Provision A.6.7 – This Code Provision stipulates that independent non-executive directors and other non-executive directors, as equal Board members, should give the Board and any committees on which they serve the benefit of their skills, expertise and varied backgrounds and qualifications through regular attendance and active participation. They should also attend general meetings and develop a balanced understanding of the views of shareholders.

    All Directors have given the Board and the committees on which they serve the benefit of their skills, expertise and varied backgrounds and qualifications through regular attendance and active participation.

    Mr. CHENG Chi Chung and Mr. KONG Dalu (executive Directors), Dr. YAP Allan (ex non-executive Director), Mr. LI Fusheng, Mr. PANG Hong and Mr. WONG Shui Yeung (independent non-executive Directors) were unable to attend the special general meeting of the Company held on 2 June 2017 due to their other business engagements.

    Mr. CHENG Chi Chung and Mr. KONG Dalu (executive Directors), Dr. YAP Allan (ex non-executive Director), Mr. LI Fusheng, Mr. PANG Hong and Mr. WONG Shui Yeung (independent non-executive Directors) were unable to attend the annual general meeting of the Company held on 2 June 2017 (the "2017 AGM") due to their other business engagements.

2.  Code Provision E.1.2 – This Code Provision requires the Chairman to attend the annual general meeting and he/she should also invite the chairmen of the audit, remuneration and nomination committees to attend the annual general meeting.

    Mr. CHENG Chi Chung (executive Director and the ex Chairman), Mr. LI Fusheng (independent non-executive Director and the chairman of the remuneration committee), Mr. PANG Hong (independent non-executive Director and the chairman of the nomination committee) and Mr. WONG Shui Yeung (Independent non-executive director and the Chairman on the audit committee) were unable to attend the 2017 AGM due to their other business engagements. Mr. YANG Rongbing, an executive Director and who took the chair at the 2017 AGM and Mr. HUNG Ka Hai Clement, non-executive Director, was of sufficient calibre and knowledge for answering questions at the 2017 AGM.

    Save as those mentioned above, in the opinion of the Directors, the Company complied with all Code Provisions of the CG Code during the Reporting Period.

**Confidential**

**Qin_00000978**

**BOARD OF DIRECTORS**

The Company is headed by the Board which is responsible for directing and supervising the Company's affairs.

As at the date of this report, the Board comprises five executive Directors, one non-executive Director and three independent non-executive Directors which provide the Board with a balanced composition of skills and experience appropriate for the requirements of the business of the Company. Biographies of all the Directors and the relationships (if any) among them are set out on pages 9 to 10 of this annual report.

The Company has received annual confirmations of independence from all the independent non-executive Directors that, save as disclosed in the annual report, they did not have any business or financial interest with the Company or its subsidiaries and were independent as at 31 December 2017 in accordance with Rule 3.13 of the Listing Rules. The Company considers that all the existing independent non-executive Directors are independent.

Notice convening each regular Board meeting is sent at least 14 days in advance, and reasonable notice is given for other Board meetings. The Company Secretary circulated meeting agenda and supporting papers to the Directors at least 3 days in advance of a Board meeting to enable the Directors to make informed decisions on the matters to be discussed, except where a Board meeting is convened on a very urgent basis to consider any urgent ad hoc matter.

Minutes are recorded in sufficient details which included the matters considered by the Board at the meeting and decisions reached, including any concerns raised by Directors whose dissenting view were expressed.

Updated list of Directors identify their roles and functions is available on the websites of the Stock Exchange: www.hkexnews.hk and the Company website: www.smi198.com whenever there is any change.

Functions and responsibilities reserved to the Board and the functions and responsibilities delegated to management are as follows:

The Board shall be responsible for:

- Approval of corporate and business strategies and objectives of the Company

- Approval of the annual budgets and financial reports of the Group and selecting suitable accounting policies and ensuring consistent application of these policies

- Monitoring the operating and financial performance of the Group

- Overseeing the management of the Company's relationships with the stakeholders, especially the Government, shareholders, etc.

- Approval of investment proposals of the Company

- Restructuring and spin-off relating to the Group

- Overseeing the processes for evaluation of the adequacy of internal controls, risk management, financial reporting and compliance

- Monitoring the performance of management

- Overseeing the corporate governance policies adopted by the Company

Confidential

Qin_00000979

The management shall be responsible for:

- Day to day operations of the Company and its subsidiaries as delegated by the Board to the management led by the CEO

- Formulation of corporate and business strategies to be approved by the Board

- Execution of corporate and business strategies approved by the Board

- Formulation of investment, acquisition, mergers or spin off proposals

- Execution of investment, acquisition, mergers or spin-off proposals and approved by the Board

## APPOINTMENT, RE-ELECTION AND REMOVAL OF DIRECTORS
All Directors (including independent non-executive Directors) are subject to retirement by rotation and re-election in accordance with the Bye-laws and also the CG Code.

The newly appointed Directors will offer themselves for re-election at the forthcoming special general meeting or the forthcoming annual general meeting, whichever is earlier in accordance with the Bye-laws.

Details of the rotation and re-election of Directors are set in pages 12 and 13 of this annual report.

## NON-EXECUTIVE DIRECTORS
There are currently four non-executive Directors, of which three of them are independent. Each independent non-executive Director has entered into a service agreement with the Company for a period of three years. Pursuant to the Bye-laws of the Company, one-third of all the Directors, including the non-executive Directors, shall be subject to retirement by rotation at each annual general meeting.

The company has 3 independent non-executive Directors representing over one-third of the total number of the Board members and it is in compliance with the requirement of Rule 3.10 of the Listing Rules. Each of them has, pursuant to Rule 3.13 of the Listing Rules, provided an annual confirmation of his independence to the Company and the Company also considers that all independent non-executive Directors are to be independent.

One of three independent non-executive Directors is a professional accountant and two of them possess the related extensive management experience. Mr. WONG Shui Yeung, chairman of the Audit Committee, has the appropriate accounting and financial management expertise requirement under Rule 3.10(2) of the Listing Rules.

The independent non-executive Directors play a significant role in the Board by virtue of their independent judgment and their views carry significant weight in the Board's decision. The Board also considers that the independent non-executive Directors can provide independent advice on the Company's business strategies, results and management so as to safeguard the interests of the Company and its shareholders.

## TRAINING AND CONTINUOUS SUPPORT
Every newly appointed director will receive an induction upon his appointment. Such induction may include briefing of a director's obligation in the Listing Rules and other regulatory requirements, and/or visits to the business site of the Company and meetings with the management of the Company. This enables the Directors to have a more comprehensive understanding of the Company's business and operation as well as to be aware of his responsibilities as a director in a listed company. All directors appointed to fill a casual vacancy would be subject to election by shareholders at the first general meeting of the Company at the appointment.

**Confidential**      **Qin_00000980**

Meanwhile, directors' training is an ongoing process. Pursuant to Code Provision A.6.5 of the CG Code, the directors should participate in continuous professional development to develop their knowledge and skills. During the year ended 31 December 2017, the Directors are provided with updates on the Company's performance to enable the Board as a whole and each Director to discharge their duties and have a proper understanding of the Company's business under the applicable laws and regulations. The Company would also keep the Directors updated with the latest information regarding the developments and changes in the Listing Rules and other regulatory requirements.

Apart from the updates of the Listing Rules and the Company, Directors also visited and met the key managements and the Company's facilities in Hong Kong or PRC in order to understand and be updated of the Company's business and operations. The Company believes that it would ensure that the contribution of the Directors to the Board remains informed and relevant to the Company.

The participation by the Directors for the year ended 31 December 2017 is as follows:–

| Name of Directors | Reading Regulatory Updates | Visit/Meeting Key Management |
|---|---|---|
| **Executive Directors** | | |
| WAI Yee Tai (Appointed on 5 September 2017) | ✓ | ✓ |
| YANG Rongbing | ✓ | ✓ |
| KOH Kok Sim | | |
| (Appointed on 1 September 2017 and | | |
| resigned on 9 March 2018) | ✓ | ✓ |
| CHENG Chi Chung | ✓ | ✓ |
| KONG Dalu (Appointed on 6 April 2017) | ✓ | ✓ |
| PAN Jen Kai (Appointed on 9 March 2018) | N/A | N/A |
| | | |
| **Non-Executive Directors** | | |
| YAP Allan (resigned on 28 November 2017) | ✓ | ✓ |
| HUNG Ka Hai Clement | | |
| (Appointed on 16 January 2017 | | |
| as independent non-executive director | | |
| and re-designated on 15 March 2017) | ✓ | ✓ |
| | | |
| **Independent Non-Executive Directors** | | |
| PANG Hong | ✓ | ✓ |
| LI Fusheng | ✓ | ✓ |
| WONG Shui Yeung (Appointed on 13 April 2017) | ✓ | ✓ |
| LI Wing Yin (Resigned on 16 January 2017) | ✓ | ✓ |

**Company Secretary**
Mr. Wong Wing Shun ("Mr. Wong") was appointed as the Company Secretary on 31 July 2017.

Mr. Wong, aged 42, has more than 18 years of experience in finance and accounting. Mr. Wong also has company secretarial services experience. Mr. Wong is a member of the Hong Kong Institute of Certified Public Accountants and a fellow member of the Association of Chartered and Certified Accountants.

The Company Secretary is responsible for facilitating the Board process, as well as communications among Board members. For the financial year ended 31 December 2017, the Company Secretary has complied with paragraph 3.29 of the Listing Rules by taking no less than 15 hours of relevant professional training.

**DIRECTORS' AND OFFICERS' INSURANCE**
The Company has arranged appropriate directors' and officers' liability insurance cover for protection of the Directors and officers of the Group from potential legal actions against them.

0028

**Confidential**

Qin_00000981

## ATTENDANCE RECORDS AND MEETINGS

The attendance records of each Director of various meeting of the Company during the year ended 31 December 2017 are set out as below:

| | Annual General Meetings | Board Meetings | Audit Committee Meetings | Remuneration Committee Meetings | Nomination Committee Meetings |
|---|---|---|---|---|---|
| **No. of Meetings** | 1 | 7 | 2 | 3 | 3 |
| **Executive Directors** | | | | | |
| WAI Yee Tai (Appointed on 5 September 2017) | 0 | 2 | 0 | 0 | 0 |
| YANG Rongbing | 1 | 7 | 0 | 0 | 0 |
| KOH Kok Sim (Appointed on 1 September 2017 and resigned on 9 March 2018) | 0 | 0 | 0 | 0 | 0 |
| CHENG Chi Chung | 0 | 7 | 0 | 0 | 0 |
| KONG Dalu (Appointed on 6 April 2017) | 0 | 0 | 0 | 0 | 0 |
| PAN Jen Kai (Appointed on 9 March 2018) | N/A | N/A | N/A | N/A | N/A |
| **Non-Executive Directors** | | | | | |
| YAP Allan (resigned on 28 November 2017) | 0 | 0 | 0 | 0 | 0 |
| HUNG Ka Hai Clement (appointed on 16 January 2017 as independent non-executive director and re-designated as non-executive director on 15 March 2017) | 1 | 5 | 2 | 3 | 3 |
| **Independent Non-Executive Directors** | | | | | |
| PANG Hong | 0 | 5 | 2 | 3 | 3 |
| LI Fusheng | 0 | 2 | 2 | 3 | 3 |
| WONG Shui Yeung (Appointed on 13 April 2017) | 0 | 3 | 1 | 0 | 0 |
| LI Wing Yin (resigned on 16 January 2017) | 0 | 0 | 0 | 0 | 0 |

Minutes of Board meetings and general meetings are kept by the secretary of the Company (the "Secretary") and are open for inspection by the Directors of the Company. Every Director of the Company is entitled to have access to Board papers and related materials and has unrestricted access to the advice and services of the Secretary, and has the liberty to seek external professional advice if so required.

## COMPLIANCE WITH THE MODEL CODE FOR SECURITIES TRANSACTIONS BY DIRECTORS

The Company has adopted the Model Code for Securities Transactions by Directors of Listed Issuers (the "Model Code") contained in Appendix 10 to the Listing Rules regarding securities transactions by Directors. Upon specific enquiries of all Directors by the Company, all Directors confirmed that they have fully complied with the Model Code.

## BOARD COMMITTEES

### Audit Committee

Since 14 July 2009, the Company has established an audit committee (the "Audit Committee") with written terms of reference aligned with the Code Provisions of the CG Code. The Audit Committee currently comprises three independent non-executive directors, namely, Mr. WONG Shui Yeung (as Chairman), Mr. PANG Hong and Mr. LI Fusheng and one non-executive director, Mr. HUNG Ka Hai Clement.

The primary role of the Audit Committee are to monitor integrity of the annual report and accounts and half-yearly report of the Company and to review significant reporting judgments contained in such reports; to review the Group's financial and accounting policies and practices; to review the Group's financial control, internal control and risk management system of the Group with particular regard to their effectiveness and to make recommendations to the Board where the monitoring activities of the committee reveal cause for concern or scope for improvement. The Audit Committee also meets regularly with the Company's external auditor to discuss the audit progress and accounting matters.

The Audit Committee has reviewed the consolidated financial statements of the Group for the year ended 31 December 2017 and has discussed with the Company's auditors about auditing, internal control and financial reporting matters including the review of the accounting practices and principles adopted by the Group.

**Confidential**   Qin_00000982



The Audit Committee held 2 meetings during the year ended 31 December 2017 to consider the full year audit report for the financial year ended 31 December 2016 and interim report for the six months ended 30 June 2017. The attendance records of the meetings are as follows:

| Name | Attendance |
| --- | --- |
| LI Wing Yin *(Chairman)* (Resigned on 16 January 2017) | 0/2 |
| PANG Hong | 2/2 |
| Li Fusheng | 2/2 |
| HUNG Ka Hai Clement | 2/2 |
| WONG Shui Yeung *(Chairman)* | 1/2 |

**Remuneration Committee**

Since 14 July 2009, the Company has established a remuneration committee (the "Remuneration Committee") with written terms of reference. Currently the Remuneration Committee comprises two independent non-executive Directors, namely, Mr. LI Fusheng (as chairman), Mr. PANG Hong and one non-executive director, Mr. HUNG Ka Hai, Clement.

Within the authority delegated by the Board, the Remuneration Committee is mainly responsible for making recommendations to the Board on the Company's policy and structure for all remuneration of all Directors and senior management on the establishment of a formal and transparent procedure for developing policy on such remuneration; reviewing the specific remuneration packages of all Directors and senior management by reference to corporate goals and objective resolved by the Board from time to time; ensuring no Director or any of his associates is involved in deciding his own remuneration and advising shareholders on how to vote with respect to any service contracts of Directors that requires shareholders' approval.

The terms of reference of the Remuneration Committee were adopted in March 2012 and are in line with the Code Provisions of the CG Code, a copy of which is posted on the websites of the Company and the Stock Exchange.

The Remuneration Committee held 3 meetings during the year ended 31 December 2017 to review the remuneration of Directors and senior management for the financial year ended 31 December 2017 and to make recommendations on the remuneration package of the newly appointed Directors. The attendance records of the meeting are as follows:

| Name | Attendance |
| --- | --- |
| LI Fusheng *(Chairman)* | 3/3 |
| PANG Hong | 3/3 |
| LI Wing Yin (Resigned on 16 January 2017) | 0/3 |
| HUNG Ka Hai Clement | 3/3 |

Pursuant to paragraph B.1.5 of the CG Code, the remuneration of Directors and the members of the senior management by band for the year ended 31 December 2017 is set out as below:

| Remuneration Band | Number of individuals |
| --- | --- |
| Nil to HK$1,000,000 | 9 |
| HK$1,000,001 to HK$2,000,000 | – |
| HK$2,000,001 to HK$3,000,000 | 2 |

Further particulars regarding to Directors' emoluments and the five highest paid employees as required to be disclosed pursuant to Appendix 16 to the Listing Rules are set out in note 12 to the consolidated financial statements.

**Nomination Committee**

Since 14 July 2009, the Company has established a nomination committee (the "Nomination Committee") with written terms of reference. Currently the Nomination Committee comprised two independent non-executive Directors, namely, Mr. PANG Hong (as Chairman), Mr. LI Fusheng and one non-executive director, Mr. HUNG Ka Hai, Clement.

**Confidential**

Qin_00000983

The primary function of the Nomination Committee is to make recommendations to the Board on potential candidates to fill vacancies or additional appointment on the Board and senior management. All appointments of Directors were nominated by the Nomination Committee based on considerations including vacancy available, competence and experience, possession of requisite skills and qualifications, independence and integrity.

The Nomination Committee adopted the "Board Diversity Policy" in relation to the nomination and appointment of new directors. The Nomination Committee selects board candidates based on a range of diversity perspectives with reference to the Company's business model and specific needs, including but not limited to gender, age, race, language, cultural background, educational background, industry experience and professional experience.

The terms of reference of the Nomination Committee were adopted in March 2012 and are in line with the Code Provisions of the CG Code, a copy of which is posted on the websites of the Company and the Stock Exchange.

The Nomination Committee held 3 meetings during the year ended 31 December 2017. The attendance records of the meetings are as follows:

| Name | Attendance |
| --- | --- |
| PANG Hong *(Chairman)* | 3/3 |
| LI Fusheng | 3/3 |
| HUNG Ka Hai Clement | 3/3 |
| LI Wing Yin (Resigned on 16 January 2017) | – |

## ACCOUNTABILITY AND AUDIT
### Remuneration of the Auditor
The remuneration in respect of audit and other services provided by auditor of the Group for the year ended 31 December 2017 are as follows:

| | 2017<br>HK$'000 |
| --- | --- |
| Annual audit service | 12,500 |
| Other non-audit services | 185 |

## RISK MANAGEMENT AND INTERNAL CONTROL
The Board has overall responsibility for the internal control system of the Company. The Board has developed its systems of internal control and risk management and is also responsible for reviewing and maintaining an adequate internal control system to safeguard the interests of the shareholders and the assets of the Company.

The system is designed to manage rather than eliminate the risk of failure to achieve business objectives and can only provide reasonable but not absolute assurance against material misstatement or loss. The Company adopted a bottom-up approach to identify, assess and mitigate the risk on all the business levels and function of the Company.

Below is the framework of risk management of the Company:

| Board and Audit Committee | Overall management of risk |
| --- | --- |
| Finance Team | Assisting the Board and Audit Committee to review and monitor key risks |
| Operation Team | Identifying and management of risks in operation level |



26   **SMI HOLDINGS GROUP LIMITED**

**Confidential**

Qin_00000984



Below is the procedure of the risk management of the Company:

| | |
|---|---|
| Risk Identification: | Risk is identified according to a series of internal and external factors, including but not limited to: economic, political, social, technical, environmental, laws and regulation, business objective and expectation of stakeholders |
| Risk Assessment: | The risk identified would be assessed and rated based on the likelihood and impact to the achievement of the Group's objectives |
| | The risk assessment based on the probability and the level of the consequence. Level of consequence is divided into 3 levels: mild (1) middle (2) and severe(3) ; while the probability of occurrence is divided into impossible (0), improbable (1) likely (2) and most likely(3) |
| Control Activities: | The internal control procedures have been designed and implemented to mitigate the risks |
| Risk Monitoring: | Risk information has been maintained and updated regularly to monitor risks on an ongoing basis |
| Risk Management Review: | The Board and Audit Committee would perform review on any change of significant risks of the Group |

During the Year, under review, the Board has conducted a review of the effectiveness of the internal control system of the Company including the adequacy of resources, qualifications and experience of staff of the Company's accounting and financial reporting function, and their training programmes and budgets and the Board considers them effective and adequate.

**CONSTITUTIONAL DOCUMENTS**
There is no significant change in the Company's constitutional documents during the year ended 31 December 2017.

**DIRECTORS' RESPONSIBILITIES FOR THE CONSOLIDATED FINANCIAL STATEMENTS**
The Board acknowledges its responsibility to prepare the Company's financial statements for each financial year which give a true and fair view of the state of affairs of the Company and that appropriate accounting policies have been selected and applied consistently.

**COMMUNICATION WITH SHAREHOLDERS AND INVESTORS**
**Investor Relations and Communication with Shareholders**
The Company is committed to ensuring that its shareholders and the investment community are provided with comprehensive information of the Company in a timely and transparent manner through the announcements, circulars, annual reports and interim reports etc. publish on the websites of the Stock Exchange and the Company, so that the shareholders and investment community are well-informed of the developments and information of the Company. The Company also updates its website regularly to provide other latest information to the shareholders and the investment community.

Effective communication with the shareholders is also maintained by ongoing dialogue with the shareholders through annual general meetings and other general meetings.

The Company has established a shareholder communication policy to provide framework to facilitate effective communication with shareholders.

0030

**Confidential**   **Qin_00000985**

**Shareholder's Rights**

Set below is a summary of certain rights of the shareholders of the Company:

*(1)    Convening an special general meeting on requisition by shareholders*

According to the Bye-laws, the shareholders of the Company holding at the date of deposit of the requisition not less than one-tenth of the paid up capital of the Company carrying the right of voting at general meetings of the Company shall at all times have the right, by written requisition to the Board or the Secretary of the Company, to require a special general meeting to be called by the Board for the transaction of any business specified in such requisition; and such meeting shall be held within two (2) months after the deposit of such requisition. If within twenty-one (21) days of such deposit the Board fails to proceed to convene such meeting the requisitionists themselves may do so in accordance with the provisions of Section 74(3) of the Act.

*(2)    Procedures for directing shareholders' enquiries to the board*

Shareholders may at any time send enquires and concerns to the Board in writing through the Company Secretary whose contact details are as follows:–

The Company Secretary
SMI Holdings Group Limited
Suite 6701-2 & 13
The Center
99 Queen's Road Central
Central, Hong Kong
E-mail: info@smi198.com
Tel No.: +852 2111 9859
Fax No.: +852 2111 0498

The Company Secretary shall forward enquires and concerns received to the Board of Directors and/or the relevant board committees of the Company, where appropriate, to answer the shareholders' questions.

*(3)    Procedures for putting forward proposals at general meetings by shareholders*

Pursuant to Bye-law 88, the shareholders of the Company may refer to the procedures below for proposing a person for election as a Director of the Company:

Any shareholder (who is duly qualified to attend and vote at the meeting), who wishes to propose a person other than a retiring director of the Company for election as a Director at any general meeting, may do so by sending the written notice together with other relevant documents in relation to the said proposal ("Nomination Documents") to the head office or at the registration office of the Company. The period of lodgment of such written notice shall commence on or after the day after the despatch of the notice of general meeting appointed for such election and ending no later than 7 days prior to the date of such general meeting. The minimum length of such notice period shall be at least 7 days.

The shareholders may send the Nomination Documents to the following principal place of business of the Company in Hong Kong:

The Company Secretary
SMI Holdings Group Limited
Suite 6701-2 & 13, 67/F
The Center
99 Queen's Road Central
Central, Hong Kong



**Confidential**                                                                                      **Qin_00000986**



The Nomination Documents includes:

(1)   Notice of intention regarding the proposal by the shareholder;

(2)   Consent in writing to be elected as Director of the Company by the nominated candidate;

(3)   Biography of the nominated candidate; and

(4)   Any other relevant information of the proposal.

0031


**Confidential**                                    **Qin_00000987**

# Independent Auditor's Report

# Deloitte. 德勤

TO THE SHAREHOLDERS OF SMI HOLDINGS GROUP LIMITED
星美控股集團有限公司
*(Incorporated in Bermuda with limited liability)*

## OPINION

We have audited the consolidated financial statements of SMI Holdings Group Limited (the "Company") and its subsidiaries (collectively referred to as the "Group") set out on pages 35 to 135, which comprise the consolidated statement of financial position as at 31 December 2017, and the consolidated statement of profit or loss and other comprehensive income, consolidated statement of changes in equity and consolidated statement of cash flows for the year then ended, and notes to the consolidated financial statements, including a summary of significant accounting policies.

In our opinion, the consolidated financial statements give a true and fair view of the consolidated financial position of the Group as at 31 December 2017, and of its consolidated financial performance and its consolidated cash flows for the year then ended in accordance with International Financial Reporting Standards ("IFRSs") and have been properly prepared in compliance with the disclosure requirements of the Hong Kong Companies Ordinance.

## BASIS FOR OPINION

We conducted our audit in accordance with Hong Kong Standards on Auditing ("HKSAs") issued by the Hong Kong Institute of Certified Public Accountants ("HKICPA"). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Consolidated Financial Statements section of our report. We are independent of the Group in accordance with the HKICPA's Code of Ethics for Professional Accountants (the "Code"), and we have fulfilled our other ethical responsibilities in accordance with the Code. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion.

## MATERIAL UNCERTAINTY RELATED TO GOING CONCERN

We draw attention to note 1 to the consolidated financial statements, which indicates that as of 31 December 2017, the Group's current liabilities exceeds its current assets by HK$3,050,152,000. The directors of the Company are considering and negotiating a number of financing measures as set forth in note 1 to improve the Group's liquidity and financial position and consider that the Group will have sufficient working capital to finance its operations and to fulfil its financial obligations as and when they fall due in the foreseeable future upon successfully implementing these measures. These conditions indicate that a material uncertainty exists that may cast significant doubt on the Group's ability to continue as a going concern. Our opinion is not modified in respect of this matter.

**Confidential**                                                    **Qin_00000988**

## KEY AUDIT MATTERS

Key audit matters are those matters that, in our professional judgment, were of most significance in our audit of the consolidated financial statements of the current period. These matters were addressed in the context of our audit of the consolidated financial statements as a whole, and in forming our opinion thereon, and we do not provide a separate opinion on these matters.

| Key audit matter | How our audit addressed the key audit matter |
|---|---|
| *Accounting judgment on the consolidation of entities engaged in theatre operation in the People's Republic of China (the "PRC").*  | |

We identified the accounting judgment on the consolidation of entities engaged in theatre operation in the PRC (the "Relevant Entities") as a key audit matter due to critical judgment required by the management in determining that the Group, under certain contractual arrangements, has rights to variable returns from its involvement with the Group's entities engaged in theatre operation in the PRC and has the ability to affect those returns through its power over the Relevant Entities and is considered to control the Relevant Entities.

In determining the extent of the Group's involvement and control over the Relevant Entities, the management considers a number of factors including whether the Group has: 1) exercised effective financial and operational control over the Relevant Entities; 2) exercised equity holders' voting rights of the Relevant Entities; 3) received substantially all of the economic interest returns generated by the Relevant Entities; 4) obtained an irrevocable and exclusive right to purchase the remaining entire equity interest in the Relevant Entities from the respective equity holders; and 5) obtained a pledge over the entire equity interest of the Relevant Entities from their respective equity holders as collateral securities to secure performance of the obligations of the Relevant Entities and their respective equity holders under the contractual arrangements.

Note 4 to the consolidated financial statements set out more details about the aforesaid.

Our procedures in relation to the accounting judgment on the consolidation of entities engaged in theatre operation in the PRC included:

- Conducting review on the contractual agreements in connection with the Group's control over the Relevant Entities;

- Understanding how the Group controls the daily business operation of the Relevant Entities;

- Understanding the management judgment in relation to the control over the Relevant Entities according to IFRS 10 Consolidated Financial Statements; and

- Obtaining and conducting review of the legal opinion obtained from the Company's PRC external legal counsel, regarding whether the contractual arrangements are in compliance with the relevant current PRC laws and regulations and are legally binding and enforceable.

**Confidential**

**Qin_00000989**



| Key audit matter | How our audit addressed the key audit matter |
|---|---|
| **Impairment of goodwill - theatre operation segment** | |

We identified the impairment of goodwill - theatre operation segment as a key audit matter due to judgment and estimation involved in the discounted future cash flow model which was prepared and used by the management in considering impairment of goodwill.

Impairment of goodwill is assessed by the management by comparing the recoverable amount and carrying amount of the relevant cash-generating units engaging in theatre operation at the end of the reporting period. Significant judgment and assumptions were required by the management of the Group in assessing the recoverable amounts of those cash-generating units. The recoverable amounts are determined at the higher of value in use and fair value less costs of disposal of the relevant cash-generating units, which the value in use calculation required significant assumptions on discount rates, growth rates, estimated average occupancy rate of theatres, average number of shows of theatres and average ticket price during the period in order to derive the net present value of the discounted future cash flow analysis.

As disclosed in notes 4 and 17 to the consolidated financial statements, the Group reported goodwill in theatre operation segment amounting to HK$6,941,731,000 as at 31 December 2017, net of accumulated impairment losses of HK$412,634,000.

Our procedures in relation to management's evaluation of impairment assessment of goodwill - theatre operation segment included:

- Understanding the Group's key control for the impairment assessment on goodwill;

- Obtaining the discounted future cash flow analysis prepared by the management and checking its mathematical accuracy;

- Evaluating the reasonableness of the key assumptions adopted by the management, including discount rates, growth rates, estimated average occupancy rate of theatres, average number of shows of theatres and average ticket price during the period;

- Testing the accuracy and evaluating the relevance of key inputs adopted in the discounted future cash flow model against historical performance of the Group, including revenues, cost of sales and operating expenses, and with reference to the future strategic plans of the Group in respect of each cash-generating units; and

- Reviewing the sensitivity analysis performed by the management on occupancy rates and discount rates to evaluate the potential impacts on the recoverable amount and impairment.

**OTHER INFORMATION**

The directors of the Company are responsible for the other information. The other information comprises the information included in the annual report, but does not include the consolidated financial statements and our auditor's report thereon.

Our opinion on the consolidated financial statements does not cover the other information and we do not express any form of assurance conclusion thereon.

In connection with our audit of the consolidated financial statements, our responsibility is to read the other information and, in doing so, consider whether the other information is materially inconsistent with the consolidated financial statements or our knowledge obtained in the audit or otherwise appears to be materially misstated. If, based on the work we have performed, we conclude that there is a material misstatement of this other information, we are required to report that fact. We have nothing to report in this regard.

**SMI HOLDINGS GROUP LIMITED**

**Confidential**

Qin_00000990

## RESPONSIBILITIES OF DIRECTORS AND THOSE CHARGED WITH GOVERNANCE FOR THE CONSOLIDATED FINANCIAL STATEMENTS

The directors of the Company are responsible for the preparation of the consolidated financial statements that give a true and fair view in accordance with IFRSs and the disclosure requirements of the Hong Kong Companies Ordinance, and for such internal control as the directors determine is necessary to enable the preparation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the consolidated financial statements, the directors are responsible for assessing the Group's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless the directors either intend to liquidate the Group or to cease operations, or have no realistic alternative but to do so.

Those charged with governance are responsible for overseeing the Group's financial reporting process.

## AUDITOR'S RESPONSIBILITIES FOR THE AUDIT OF THE CONSOLIDATED FINANCIAL STATEMENTS

Our objectives are to obtain reasonable assurance about whether the consolidated financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion solely to you, as a body, in accordance with Section 90 of the Bermuda Companies Act, and for no other purpose. We do not assume responsibility towards or accept liability to any other person for the contents of this report. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with HKSAs will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these consolidated financial statements.

As part of an audit in accordance with HKSAs, we exercise professional judgment and maintain professional skepticism throughout the audit. We also:

- Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Group's internal control.

- Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by the directors.

- Conclude on the appropriateness of the directors' use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the Group's ability to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditor's report to the related disclosures in the consolidated financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Group to cease to continue as a going concern.

- Evaluate the overall presentation, structure and content of the consolidated financial statements, including the disclosures, and whether the consolidated financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

0033



**Confidential**

**Qin_00000991**

- Obtain sufficient appropriate audit evidence regarding the financial information of the entities or business activities within the Group to express an opinion on the consolidated financial statements. We are responsible for the direction, supervision and performance of the group audit. We remain solely responsible for our audit opinion.

We communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

We also provide those charged with governance with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

From the matters communicated with those charged with governance, we determine those matters that were of most significance in the audit of the consolidated financial statements of the current period and are therefore the key audit matters. We describe these matters in our auditor's report unless law or regulation precludes public disclosure about the matter or when, in extremely rare circumstances, we determine that a matter should not be communicated in our report because the adverse consequences of doing so would reasonably be expected to outweigh the public interest benefits of such communication.

The engagement partner on the audit resulting in the independent auditor's report is Chung Chin Cheung.

**Deloitte Touche Tohmatsu**
*Certified Public Accountants*
Hong Kong
29 March 2018

# Consolidated Statement of Profit or Loss and Other Comprehensive Income

*For the year ended 31 December 2017*

| | NOTES | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|---|
| Revenue | 5 | 3,788,764 | 3,351,186 |
| Cost of theatre operation and sales | | (2,810,646) | (2,144,264) |
| Gross profit | | 978,118 | 1,206,922 |
| Other gains and income | 7 | 184,014 | 163,581 |
| Selling and marketing expenses | | (55,115) | (64,747) |
| Administrative expenses | | (332,026) | (278,829) |
| Other losses and expenses | 8 | (429,561) | (122,160) |
| Finance costs | 9 | (599,250) | (422,916) |
| Share of results of associates | | 545 | 11,246 |
| (Loss) profit before taxation | | (253,275) | 493,097 |
| Income tax expense | 10 | (13,245) | (85,993) |
| (Loss) profit for the year | 11 | (266,520) | 407,104 |
| **Other comprehensive income (expense)** | | | |
| *Items that may be reclassified subsequently to profit or loss:* | | | |
| Exchange differences arising on the translation of foreign operations | | 288,683 | (254,137) |
| Share of other comprehensive income of associates | | – | 66 |
| Reserve released upon disposal of subsidiaries | | – | 2,055 |
| Other comprehensive income (expense) for the year | | 288,683 | (252,016) |
| **Total comprehensive income for the year** | | 22,163 | 155,088 |
| **(Loss) profit for the year attributable to:** | | | |
| Owners of the Company | | (153,734) | 403,724 |
| Non-controlling interests | | (112,786) | 3,380 |
| | | (266,520) | 407,104 |
| **Total comprehensive income (expense) attributable to:** | | | |
| Owners of the Company | | 98,194 | 152,105 |
| Non-controlling interests | | (76,031) | 2,983 |
| | | 22,163 | 155,088 |
| | | | (restated) |
| **(Loss) earnings per share (HK cents)** | | | |
| – Basic | 15 | (5.65) | 14.91 |
| – Diluted | | (5.65) | 14.86 |

8034

**Confidential**



Qin_00000993

# Consolidated Statement of Financial Position

*At 31 December 2017*

| | NOTES | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|---|
| **NON-CURRENT ASSETS** | | | |
| Property, plant and equipment | 16 | 4,104,792 | 3,638,211 |
| Goodwill | 17 | 7,094,692 | 5,536,125 |
| Intangible assets | 18 | 33,161 | 40,931 |
| Purchased license rights | 18 | 61,148 | 82,372 |
| Prepaid lease payments | 19 | 37,597 | 39,855 |
| Interests in associates | 20 | 17,835 | 64,724 |
| Rental deposits | | 65,347 | 59,845 |
| Other financial assets | 21 | 202,755 | 177,724 |
| Available-for-sale investments | 22 | 66,347 | 65,396 |
| Financial assets designated as at fair value through profit or loss | 23 | 147,941 | – |
| Progress payments for construction of property, plant and equipment and other deposits | 24 | 168,603 | 127,771 |
| Deposits paid for acquisitions of entities | 25 | 292,928 | 154,289 |
| | | 12,293,146 | 9,987,243 |
| | | | |
| **CURRENT ASSETS** | | | |
| Prepaid lease payments | 19 | 4,234 | 2,999 |
| Inventories | 26 | 297,727 | 360,055 |
| Film rights investment | 27 | 810,617 | 397,643 |
| Trade and other receivables | 28 | 1,148,312 | 973,758 |
| Amounts due from related parties | 33 | 76,624 | – |
| Held-for-trading investments | 29 | 61,961 | 304,217 |
| Other loan | 30 | 126,000 | 150,000 |
| Pledged bank deposits | 31 | 149,262 | 121,642 |
| Bank balances and cash | 31 | 97,165 | 625,081 |
| | | 2,771,902 | 2,935,395 |
| | | | |
| **CURRENT LIABILITIES** | | | |
| Trade and other payables | 32 | 1,467,758 | 1,047,294 |
| Amounts due to related parties | 33 | 22,163 | 20,967 |
| Finance lease payables | 34 | 90,059 | 88,662 |
| Bank borrowings | 35 | 45,411 | 38,906 |
| Other borrowings | 36 | 1,336,112 | 824,900 |
| Convertible notes | 37 | 907,813 | 1,007,572 |
| Derivative financial instruments | 37 | 14,584 | 55,686 |
| Bonds | 38 | 1,528,170 | 1,225,711 |
| Taxation payable | | 409,984 | 357,853 |
| | | 5,822,054 | 4,667,551 |
| | | | |
| **NET CURRENT LIABILITIES** | | (3,050,152) | (1,732,156) |
| | | | |
| **TOTAL ASSETS LESS CURRENT LIABILITIES** | | 9,242,994 | 8,255,087 |

SMI HOLDINGS GROUP LIMITED

**Confidential**

Qin_00000994

| | NOTES | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|---|
| **NON-CURRENT LIABILITIES** | | | |
| Finance lease payables | 34 | 55,142 | 96,279 |
| Bank borrowings | 35 | 29,081 | – |
| Other borrowings | 36 | 631,662 | 1,986,044 |
| Convertible notes | 37 | 10,000 | – |
| Bonds | 38 | 330,989 | 639,886 |
| Deferred tax liabilities | 39 | 12,082 | 14,025 |
| | | 1,068,956 | 2,736,234 |
| **NET ASSETS** | | 8,174,038 | 5,518,853 |
| **CAPITAL AND RESERVES** | | | |
| Share capital | 40 | 1,360,021 | 1,361,121 |
| Reserves | | 5,771,790 | 3,910,003 |
| **Equity attributable to owners of the Company** | | 7,131,811 | 5,271,124 |
| Non-controlling interests | | 1,042,227 | 247,729 |
| **Total equity** | | 8,174,038 | 5,518,853 |

The consolidated financial statements on pages 35 to 135 were approved and authorised for issue by the Board of Directors on 29 March 2018 and are signed on its behalf by:


**WAI Yee Tai**
*Director*

**YANG Rongbing**
*Director*

0035

**Confidential**

Qin_00000995

# Consolidated Statement of Changes in Equity

*For the year ended 31 December 2017*

| | Share capital HK$'000 | Share premium HK$'000 [note 51(i)] | Other reserve HK$'000 [note 51(ii)] | Contributed surplus HK$'000 [note 51(iii)] | Translation reserve HK$'000 [note 51(iv)] | Convertible notes reserve HK$'000 | Statutory reserve HK$'000 [note 51(v)] | Share-based payment reserve HK$'000 | Capital redemption reserve HK$'000 | Retained profits HK$'000 | Sub-total HK$'000 | Non-controlling interests HK$'000 [note 50] | Total equity HK$'000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | *Attributable to owners of the Company* | | | | | | | |
| At 1 January 2016 | 1,350,743 | 1,487,498 | (71,238) | 1,463,670 | (6,445) | 35,381 | 54,741 | 12,393 | 4,415 | 900,144 | 5,231,302 | (3,968) | 5,227,334 |
| Profit for the year | - | - | - | - | - | - | - | - | - | 403,724 | 403,724 | 3,380 | 407,104 |
| Other comprehensive expense | - | - | - | - | (251,619) | - | - | - | - | - | (251,619) | (397) | (252,016) |
| Total comprehensive (expense)/income for the year | - | - | - | - | (251,619) | - | - | - | - | 403,724 | 152,105 | 2,983 | 155,088 |
| Approved final dividend for the year ended 31 December 2015 | - | - | - | - | - | - | - | - | - | (147,231) | (147,231) | - | (147,231) |
| Issue of shares upon conversion | 11,645 | 30,005 | - | - | - | (564) | - | - | - | - | 41,650 | - | 41,650 |
| Issue of shares on exercise of share options | 6,833 | 5,467 | - | - | - | - | - | (7,508) | - | 7,508 | 12,300 | - | 12,300 |
| Lapse of share options | - | - | - | - | - | - | - | (4,885) | - | 4,885 | - | - | - |
| Shares repurchased | (8,100) | (57,187) | - | - | - | - | - | - | 8,100 | - | (57,187) | - | (57,187) |
| Transfer to statutory reserve | - | - | - | - | - | - | 210,950 | - | - | (210,950) | - | - | - |
| Acquisition of additional interests in a subsidiary (Note (a)) | - | - | (2,194) | - | - | - | - | - | - | - | (2,194) | (31,562) | (33,756) |
| Arising from conversion of a subsidiary's convertible notes (Note (b)) | - | - | 19,724 | - | - | - | - | - | - | - | 19,724 | 24,619 | 44,343 |
| Acquisition of additional interests in TicketChina Holdings Limited (Note (c)) | - | - | 6,068 | - | - | - | - | - | - | - | 6,068 | (6,468) | (400) |
| Deemed capital contribution (Note (c)) | - | - | 14,587 | - | - | - | - | - | - | - | 14,587 | - | 14,587 |
| Arising from acquisition of subsidiaries (Note 43(b)(ii)) | - | - | - | - | - | - | - | - | - | - | - | 260,903 | 260,903 |
| Disposal of subsidiaries (Note 44(ii)) | - | - | - | - | - | - | - | - | - | - | - | 1,222 | 1,222 |
| Changes in equity for the year | 10,378 | (21,715) | 38,185 | - | (251,619) | (564) | 210,950 | (12,393) | 8,100 | 58,500 | 39,822 | 251,697 | 291,519 |
| At 31 December 2016 | 1,361,121 | 1,465,783 | (33,053) | 1,463,670 | (258,064) | 34,817 | 265,691 | - | 12,515 | 958,644 | 5,271,124 | 247,729 | 5,518,853 |

Notes:

(a) After obtaining the control of SMI Culture & Travel Group Holdings Limited ("SMI Culture & Travel Group") (see note 43(b)(ii)), the Group acquired 1.08% additional interest in SMI Culture & Travel Group from non-controlling interests. The consideration on acquisition of HK$33,756,000 were paid in cash. The difference of HK$2,194,000 between the carrying amount of non-controlling interests being acquired of HK$31,562,000 and the consideration paid of HK$33,756,000 has been debited to other reserve.

(b) Save as disclosed in note 37(i), the Convertible Note XIII was converted into the ordinary share of SMI Culture & Travel Group. The Group's interest in SMI Culture & Travel Group was diluted by 3.85%. The difference of HK$19,724,000 between the carrying amount of the Group's equity interests being disposed of HK$24,619,000 and the aggregate sum of liability component and embedded derivative of the Convertible Note XIII amounting to HK$44,343,000 has been credited to other reserve.

(c) In March 2016, the former shareholder of TicketChina Holdings Limited waived the shareholder's loan of HK$14,587,000 which was treated as the deemed capital contribution to the Group and credited to other reserve. At the same date, the Group acquired 35.8% additional interest in TicketChina Holdings Limited, a subsidiary of the Company, from non-controlling interests. The consideration on acquisition of HK$400,000 were paid in cash. The difference of HK$6,068,000 between the carrying amount of non-controlling interests being acquired of HK$6,468,000 and the consideration paid of HK$400,000 has been credited to other reserve.



38 SMI HOLDINGS GROUP LIMITED

**Confidential**

Qin_00000996

| | | Attributable to owners of the Company | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Share capital HK$'000 | Share premium HK$'000 (note 51(ii)) | Other reserve HK$'000 (note 51(iii)) | Contributed surplus HK$'000 (note 51(iii)) | Translation reserve HK$'000 (note 51(vi)) | Convertible notes reserve HK$'000 | Statutory reserve HK$'000 (note 51(v)) | Share-based payment reserve HK$'000 | Capital redemption reserve HK$'000 | Retained profits HK$'000 | Sub-total HK$'000 | Non-controlling interests HK$'000 (note 50) | Total equity HK$'000 |
| At 1 January 2017 | 1,361,121 | 1,465,783 | (33,053) | 1,463,670 | (258,064) | 34,817 | 265,691 | - | 12,515 | 958,644 | 5,271,124 | 247,729 | 5,518,853 |
| Loss for the year | - | - | - | - | - | - | - | - | - | (153,734) | (153,734) | (112,786) | (266,520) |
| Other comprehensive income | - | - | - | - | 251,928 | - | - | - | - | - | 251,928 | 36,755 | 288,683 |
| Total comprehensive income (expense) for the year | - | - | - | - | 251,928 | - | - | - | - | (153,734) | 98,194 | (76,031) | 22,163 |
| Approved final dividend for the year ended 31 December 2016 | - | - | - | - | - | - | - | - | - | (179,668) | (179,668) | - | (179,668) |
| Shares repurchased | (1,100) | (7,807) | - | - | - | - | - | - | 1,100 | - | (7,807) | - | (7,807) |
| Transfer to statutory reserve | - | - | - | - | - | - | 2,188 | - | - | (2,188) | - | - | - |
| Share-based payments | - | - | - | - | - | - | - | 12,064 | - | - | 12,064 | - | 12,064 |
| Acquisition of additional interests in a subsidiary (Note (d)) | - | - | 6,804 | - | - | - | - | - | - | - | 6,804 | (92,776) | (85,972) |
| Arising from conversion of a subsidiary's convertible notes (Note (e)) | - | - | (2,167) | - | - | - | - | - | - | - | (2,167) | 68,074 | 65,907 |
| Arising from placement of a subsidiary's shares (Note (f)) | - | - | (19,912) | - | - | - | - | - | - | - | (19,912) | 165,412 | 145,500 |
| Acquisition of additional interests in a subsidiary by share placement (Note (g)) | - | - | 5,861 | - | - | - | - | - | - | - | 5,861 | (5,861) | - |
| Arising from deemed disposal of partial interests of a subsidiary without losing control (Note (h)) | - | - | 1,947,318 | - | - | - | - | - | - | - | 1,947,318 | 735,680 | 2,682,998 |
| Changes in equity for the year | (1,100) | (7,807) | 1,937,904 | - | 251,928 | - | 2,188 | 12,064 | 1,100 | (335,590) | 1,860,687 | 794,498 | 2,655,185 |
| At 31 December 2017 | 1,360,021 | 1,457,976 | 1,904,851 | 1,463,670 | (6,136) | 34,817 | 267,879 | 12,064 | 13,615 | 623,054 | 7,131,811 | 1,042,227 | 8,174,038 |

Notes:

(d) During the year ended 31 December 2017, the Group acquired 11.02% additional interest in SMI Culture & Travel Group from non-controlling interests, increasing its controlling interest from 64.49% to 75.51%. The consideration on acquisition of HK$85,972,000 were paid in cash. The difference of HK$6,804,000 between the carrying amount of non-controlling interests being acquired of HK$92,776,000 and the consideration paid of HK$85,972,000 has been credited to other reserve.

(e) Save as disclosed in notes 37(g) and 37(h), the Convertible Note XI and Convertible Note XII were converted into ordinary shares of SMI Culture & Travel Group. The Group's interest in SMI Culture & Travel Group was diluted by 5.62%. The difference of HK$2,167,000 between the carrying amount of the Group's equity interests disposed of HK$68,074,000 and the aggregate sum of liability components and embedded derivatives of the Convertible Note XI and Convertible Note XII amounting to HK$65,907,000 has been debited to other reserve.

(f) During the year ended 31 December 2017, SMI Culture & Travel Group completed a placement of 214,285,000 new shares, with par value of HK$0.01, of SMI Culture & Travel Group at a price of HK$0.70 per share. The Group's interest in SMI Culture & Travel Group was diluted by 12.41%. The difference of HK$19,912,000 between the carrying amount of the Group's equity interests being disposed of HK$165,412,000 and the net proceeds received from the placement amounting to HK$145,500,000 has been debited to other reserve.

(g) During the year ended 31 December 2017, the Group disposed of the entire 100% equity interest in SMI Entertainment Limited ("SMIE") to SMI Culture Investment Holdings Limited ("SMI Culture Investment"), a wholly-owned subsidiary of SMI Culture & Travel Group, at total consideration of RMB150,000,000 (equivalent to HK$171,000,000) settled by cash consideration for RMB50,000,000 (equivalent to HK$57,000,000) and issue of SMI Culture & Travel Group' shares at consideration of RMB100,000,000 (equivalent to HK$114,000,000) to the Company. The disposal of SMIE to SMI Culture Investment is accounted for as business combination under common control. The Group's interest in SMI Culture & Travel Group increased by 5.19%. The difference of HK$5,861,000 between the carrying amount of non-controlling interests being acquired of and the share consideration has been credited to other reserve.

(h) During the year ended 31 December 2017, Chengdu Runyun Culture Broadcasting Limited (成都潤運文化傳播有限公司) ("Chengdu Runyun"), a subsidiary of the Company, entered into separate agreements with the independent investors (the "Investors") (the "Capital Injection Agreements"), pursuant to which the Investors have agreed to make capital contribution in exchange of a total of 15.63% of the enlarged equity interest of Chengdu Runyun. The capital contribution on 15.63% enlarged equity interest on Chengdu Runyun was completed in June 2017 and aggregate proceeds of RMB1,980,000,000 (equivalent to HK$2,403,772,000) settled by cash was received from the Investors upon completion. The Group has not lost control over Chengdu Runyun. The difference of HK$1,723,855,000 between the carrying amount of the Group's equity interests being deemed disposed of and the proceeds from capital contribution has been credited to other reserve. In July 2017, additional capital contribution of RMB230,000,000 (equivalent to HK$279,226,000) settled as cash was received from the Investors, the capital contribution accounted for as equity transaction and the difference of HK$223,463,000 between the capital contribution and carrying of non-controlling interest deemed disposed of was credited to other reserve.



**Confidential**

**Qin_00000997**

# Consolidated Statement of Cash Flows

*For the year ended 31 December 2017*

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| **OPERATING ACTIVITIES** | | |
| (Loss) profit before taxation | (253,275) | 493,097 |
| Adjustments for: | | |
| Depreciation of property, plant and equipment | 671,193 | 419,456 |
| Interest expenses on borrowings | 576,854 | 400,216 |
| Amortisation of intangible assets | 10,656 | 10,714 |
| Amortisation of purchased license rights | 11,906 | 2,319 |
| Financial lease charges | 15,667 | 15,110 |
| Equity-settled share-based payments | 12,064 | – |
| Allowance for inventories | 9,819 | 723 |
| Impairment loss on intangible assets | 9,318 | 3,326 |
| Gain on disposal of available-for-sale financial assets in Photon Group classified as held for sale | – | (1,158) |
| Impairment loss on film rights investment | 6,490 | – |
| Amortisation of prepaid lease payments | 3,122 | 3,074 |
| Loss on disposal/write-off of property, plant and equipment | 664 | 34,221 |
| Share of results of associates | (545) | (11,246) |
| Bank interest income | (1,832) | (2,456) |
| Gain on disposal/deemed disposal of interests in associates | (2,478) | (27,810) |
| Unrealised (gain) losses on change in fair value of held-for-trading investments | (11,706) | 17,373 |
| Fair value change on derivative financial instruments | (28,989) | 9,718 |
| Allowance for doubtful debts | 370 | 37 |
| Impairment on other receivables | 52,472 | – |
| Interest income from associates, other financial assets, and financial assets designated as at fair value through profit or loss | (15,400) | (17,232) |
| Fair value change on financial assets designated as at fair value through profit or loss | (57,941) | – |
| Impairment loss on goodwill | 347,179 | 46,556 |
| Gain on disposal of a subsidiary | – | (251) |
| Operating cash flows before working capital changes | 1,355,608 | 1,395,787 |
| Decrease (increase) in inventories | 81,734 | (42,177) |
| (Increase) decrease in rental deposits | (700) | 70,686 |
| (Increase) decrease in trade and other receivables | (136,242) | 619,344 |
| Decrease in amount due from related parties | – | 13,788 |
| Decrease (increase) in held-for-trading investments | 253,962 | (125,573) |
| Decrease in deferred income | – | (90,786) |
| Increase (decrease) in trade and other payables | 9,711 | (689,213) |
| Increase in film rights investment | (419,464) | (188,108) |
| Cash generated from operations | 1,144,609 | 963,748 |
| Income taxes paid | (3,109) | (5,443) |
| Finance lease charges paid | (15,667) | (15,110) |
| Net cash generated from operating activities | 1,125,833 | 943,195 |



40    SMI HOLDINGS GROUP LIMITED

**Confidential**

Qin_00000998

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| **INVESTING ACTIVITIES** | | |
| Repayment of loan from an associate | – | 50,000 |
| Repayment of other loan | 24,000 | – |
| Bank interest received | 1,832 | 2,456 |
| Other interest received | 2,200 | 17,232 |
| Proceeds from disposal of subsidiaries | 14,233 | 52,785 |
| Proceeds on disposal of interests in an associate | 50,000 | – |
| Acquisition of interests in an associate | – | (50,000) |
| Placement of pledged bank balances | (17,859) | (12,604) |
| Acquisition of subordinated asset-backed securities | – | (116,390) |
| Deposits paid for acquisitions of property, plant and equipment | (162,523) | (298,580) |
| Purchase of property, plant and equipment | (557,079) | (1,252,923) |
| Advance of loans to other parties | – | (150,000) |
| Advance to related parties | (76,624) | – |
| Deposits paid for acquisitions of entities | (282,365) | (215,349) |
| Acquisition of subsidiaries, net of cash acquired | (1,541,666) | (1,464,566) |
| Acquisition of SMI Culture & Travel Group | – | (120,517) |
| Investment in available-for-sales investments | (951) | (65,396) |
| Acquisition of financial assets designed as at fair value through profit or loss | (90,000) | – |
| Net cash used in investing activities | (2,636,802) | (3,623,852) |
| **FINANCING ACTIVITIES** | | |
| Proceeds from other borrowings | 173,625 | 1,915,231 |
| Proceeds from placement of a subsidiary's shares | 145,500 | – |
| Proceeds from issue of convertible notes | – | 65,000 |
| Proceeds from bank borrowings raised | 72,809 | 38,906 |
| Proceeds from disposal of own-debt securities | – | 407,365 |
| Proceeds from issue of bonds | 12,300 | 1,184,804 |
| Proceeds from issue of shares upon exercise of share options | – | 12,300 |
| Proceeds from deemed disposal of partial interests of a subsidiary without losing control | 2,682,998 | – |
| Advance from related parties | 1,196 | 2,431 |
| Advance from lease financing | 60,566 | 122,051 |
| Repayment of finance lease payables | (113,180) | (16,055) |
| Repurchase of shares | (7,807) | (57,187) |
| Dividend paid | (179,668) | (147,231) |
| Interest paid | (540,178) | (323,927) |
| Repayments of bonds | (40,000) | (64,431) |
| Repayments of other borrowings | (1,166,111) | (399,264) |
| Repayments of bank borrowings | (41,516) | (364,863) |
| Redemption of convertible notes | (250) | – |
| Acquisition of additions interests in SMI Culture & Travel Group | (85,972) | (33,756) |
| Acquisition of additions interests in TicketChina Group | – | (400) |
| Net cash generated from financing activities | 974,312 | 2,340,974 |
| **NET DECREASE IN CASH AND CASH EQUIVALENTS** | (536,657) | (339,683) |
| **CASH AND CASH EQUIVALENTS AT 1 JANUARY** | 625,081 | 1,007,689 |
| **EFFECT OF FOREIGN EXCHANGE RATES CHANGES** | 8,741 | (42,925) |
| **CASH AND CASH EQUIVALENTS AT 31 DECEMBER** represented by bank balances and cash | 97,165 | 625,081 |

0037

Confidential

Qin_00000999

# Notes to the Consolidated Financial Statements

*For the year ended 31 December 2017*

1. **GENERAL AND BASIS OF PREPARATION OF CONSOLIDATED FINANCIAL STATEMENTS**

    SMI Holdings Group Limited (the "Company") is incorporated in Bermuda as an exempted company with limited liability and its shares are listed on the Main Board of The Stock Exchange of Hong Kong Limited. In the opinion of the directors of the Company (the "Directors"), the immediate and ultimate controlling party of the Company is Mr. Qin Hui ("Mr. Qin"). The addresses of the registered office and principal place of business of the Company are disclosed in the corporate information section to the annual report. The Company is an investment holding company. The principal activities of its principal subsidiaries are set out in note 50.

    In preparing the consolidated financial statements, the Directors have given careful consideration of the future liquidity of the Group in light of the fact that the Group incurred a net current liabilities of HK$3,050,152,000 as at 31 December 2017. The consolidated financial statements have been prepared on a going concern basis because:

    (i) Mr. Qin has agreed to provide adequate funds for the Company to meet in full its financial obligations as they fall due for the foreseeable future;

    (ii) As announced by the Company on 27 March 2018, SMI International Cinemas Limited ("SMII"), a wholly owned subsidiary of the Company, entered into the sale and purchase agreement with an independent third party whereby SMII (as the vender) agreed to dispose 5% of equity interest in Chengdu Runyun to the purchaser at a consideration of RMB1,000,000,000, payable upon completion of the disposal. Upon completion of the disposal, the ownership interests of the Group in Chengdu Runyun would be reduced from 84.375% to 79.375% without losing control over Chengdu Runyun. The consideration is payable upon completion of the disposal and the Directors expected that the disposal will be completed in April 2018;

    (iii) On 26 March 2018, the Group obtained a credit loan facility from a financial institution of maximum amount up to HK$300,000,000 for working capital purpose of the Group. The facility is unsecured, interest bearing at 6% per annum and payable in full by 30 September 2019. The drawdown of any facility amount is subject to certain condition precedents including due diligence of credit assessment of the Group. The Group has applied to draw the entire facility amount. The Directors expected that approval will be granted in April 2018;

    (iv) In March 2018, three independent third party investors subscribed the Company's 2-year convertible notes with principal amount of HK$430,000,000, US$60,000,000 and US$30,000,000. These convertible notes bear interest rate at 7.5% per annum and are redeemed in whole or in part at an amount that would yield an annual return of 11% thereon calculated from the issue date. The Directors expected that the convertible notes will be issued in April 2018;

    (v) On 28 March 2018, the Group signed a subscription agreement with a PRC registered financial institution for the issue of a 9.75% fixed rate bond with principal amount of US$70,000,000 and two years fixed term and is extendable to the third anniversary date; and

    (vi) As announced by the Company on 27 March 2018, the Group has received subscription offers from financial institutions regarding the issuance of bonds with an aggregate principal amount of not more than RMB1,000,000,000 with a term of not more than three years. It is proposed that the bonds are to be listed on the Shenzhen Stock Exchange.

**Confidential**

Qin_00001000



1.   **GENERAL AND BASIS OF PREPARATION OF CONSOLIDATED FINANCIAL STATEMENTS (Continued)**
     Based on the current status of these negotiations, the Directors are confident that the Group will secure sufficient funds to support the Group's working capital requirements for the next twelve months from the date of approval of these consolidated financial statements.

     The consolidated financial statements are presented in Hong Kong dollars ("HK$"), which is also the functional currency of the Company. The management believes that the Group's operations involved HK$ and Renminbi ("RMB") while the financing is mainly in HK$. Taking into account of all the factors, the management exercised their judgement in determining the functional currency which is HK$ after considering that the adoption of HK$ as the functional currency is the most faithful reflection of the economic effects of the underlying transactions, events and conditions that are relevant to the Company.

2.   **APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS ("IFRSs")**
     **Amendments to IFRS that are mandatory effective for the current year**
     The Group has applied the following amendments to IFRSs and the International Accounting Standards ("IASs") issued by the International Accounting Standards Board ("IASB") for the first time in the current year:

     | | |
     |---|---|
     | Amendments to IAS 7 | Disclosure Initiative |
     | Amendments to IAS 12 | Recognition of Deferred Tax Assets for Unrealised Losses |
     | Amendments to IFRS 12 | As Part of the Annual Improvements to IFRSs 2014 – 2016 Cycle |

     Except as described below, the application of amendments to IFRS in the current year has had no material impact on the Group's financial performance and positions for the current and prior years and/or on the disclosures set out in these consolidated financial statements.

     **Amendments to IAS 7 Disclosure Initiative**
     The Group has applied these amendments for the first time in the current year. The amendments require an entity to provide disclosures that enable users of financial statements to evaluate changes in liabilities arising from financing activities, including both cash and non-cash changes. In addition, the amendments also require disclosures on changes in financial assets if cash flows from those financial assets were, or future cash flows will be, included in cash flows from financing activities.

     Specifically, the amendments require the following to be disclosed: (i) changes from financing cash flows; (ii) changes arising from obtaining or losing control of subsidiaries or other businesses; (iii) the effect of changes in foreign exchange rates; (iv) changes in fair values; and (v) other changes.

     A reconciliation between the opening and closing balances of these items is provided in note 55. Consistent with the transition provisions of the amendments, the Group has not disclosed comparative information for the prior year. Apart from the additional disclosure in note 55, the application of these amendments has had no impact on the Group's consolidated financial statements.



**Confidential**                                                         **Qin_00001001**

2. **APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS ("IFRSs")** (Continued)

*New and revised IFRSs in issue but not yet effective*

The Group has not early applied the following new and revised IFRSs that have been issued but are not yet effective:

| | |
|---|---|
| IFRS 9 | Financial Instruments[1] |
| IFRS 15 | Revenue from Contracts with Customers and the related Amendments[1] |
| IFRS 16 | Leases[2] |
| IFRS 17 | Insurance Contracts[4] |
| IFRIC 22 | Foreign Currency Transactions and Advance Consideration[1] |
| IFRIC 23 | Uncertainty over Income Tax Treatments[2] |
| Amendments to IFRS 2 | Classification and Measurement of Share-based Payment Transactions[1] |
| Amendments to IFRS 4 | Applying IFRS 9 Financial Instruments with IFRS 4 Insurance Contracts[1] |
| Amendments to IFRS 9 | Prepayment Features with Negative Compensation[2] |
| Amendments to IFRS 10 and IAS 28 | Sale or Contribution of Assets between an Investor and its Associate or Joint Venture[3] |
| Amendments to IAS 19 | Plan Amendments, Curtailment or Settlements[2] |
| Amendments to IAS 28 | Long-term Interests in Associates and Joint Ventures[2] |
| Amendments to IAS 28 | As part of the Annual Improvements to IFRSs 2014 – 2016 Cycle[1] |
| Amendments to IAS 40 | Transfers of Investment Property[1] |
| Amendments to IFRSs | Annual Improvements to IFRSs 2015 – 2017 Cycle[2] |

[1]  Effective for annual periods beginning on or after 1 January 2018
[2]  Effective for annual periods beginning on or after 1 January 2019
[3]  Effective for annual periods beginning on or after a date to be determined
[4]  Effective for annual periods beginning on or after 1 January 2021

**IFRS 9 Financial Instruments**

IFRS 9 introduces new requirements for the classification and measurement of financial assets, financial liabilities, general hedge accounting and impairment requirements for financial assets.

Key requirements of IFRS 9:

•   All recognised financial assets that are within the scope of IFRS 9 are required to be subsequently measured at amortised cost or fair value. Specifically, debt investments that are held within a business model whose objective is to collect the contractual cash flows, and that have contractual cash flows that are solely payments of principal and interest on the principal outstanding are generally measured at amortised cost at the end of subsequent accounting periods. Debt instruments that are held within a business model whose objective is achieved both by collecting contractual cash flows and selling financial assets, and that have contractual terms that give rise on specified dates to cash flows that are solely payments of principal and interest on the principal amount outstanding, are generally measured at fair value through other comprehensive income ("FVTOCI"). All other financial assets are measured at their fair value at subsequent accounting periods. In addition, under IFRS 9, entities may make an irrevocable election to present subsequent changes in the fair value of an equity investment (that is not held for trading) in other comprehensive income, with only dividend income generally recognised in profit or loss.

•   For non-substantial modifications of financial liabilities that do not result in derecognition, the carrying amount of the relevant financial liabilities will be calculated at the present value of the modified contractual cash flows and discounted at the financial liabilities' original effective interest rate. Transaction costs or fees incurred are adjusted to the carrying amount of the modified financial liabilities and are amortised over the remaining term. Any adjustment to the carrying amount of the financial liability is recognised in profit or loss at the date of modification. Currently, the Group revises the effective interest rates for non-substantial modification of financial liabilities with no gain/loss being recognised in profit or loss.

**SMI HOLDINGS GROUP LIMITED**

**Confidential**

**Qin_00001002**



2. **APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS ("IFRSs") (Continued)**

*New and revised IFRSs in issue but not yet effective (Continued)*

**IFRS 9 Financial Instruments (Continued)**

- In relation to the impairment of financial assets, IFRS 9 requires an expected credit loss model, as opposed to an incurred credit loss model under IAS 39. The expected credit loss model requires an entity to account for expected credit losses and changes in those expected credit losses at each reporting date to reflect changes in credit risk since initial recognition. In other words, it is no longer necessary for a credit event to have occurred before credit losses are recognised.

Based on the Group's financial instruments and risk management policies as at 31 December 2017, the Directors anticipate the following potential impact on initial application of IFRS 9:

*Classification and measurement*

- Debt instruments classified as trade and other receivables, amounts due from related parties, other loan, pledged bank deposits and bank balances and cash carried at amortised cost as disclosed in notes 28, 33, 30 and 31, respectively: these are held within a business model whose objective is to collect the contractual cash flows that are solely payments of principal and interest on the principal outstanding. Accordingly, these financial assets will continue to be subsequently measured at amortised cost upon the application of IFRS 9.

- Equity securities classified as available-for-sale investments carried at cost less impairment as disclosed in note 22: these securities qualified for designation as measured at FVTOCI under IFRS 9, however, the Group plans not to elect the option for designating these securities to be measured at FVTOCI and will measure these securities at fair value with subsequent fair value gains or losses to be recognised in profit or loss. Upon initial application of IFRS 9, the differences between cost less impairment and fair value would be adjusted to retained profits as at 1 January 2018;

- Other financial assets as disclosed in note 21 currently measured at amortised cost, are measured at fair value through profit or loss ("FVTPL") at subsequent accounting periods upon the application of IFRS 9. Upon initial application of IFRS 9, fair value changes representing the differences between amortised cost and fair value would be adjusted to retained profits as at 1 January 2018;

- At 1 January 2018, the Group also revoked the designation of measurement of financial assets designated as at fair value through profit or loss and held-for-trading investments measured at FVTPL under IFRS 9 as these financial assets are required to be measured at FVTPL under IFRS 9; and

- Except for financial assets which are subject to expected credit loss model under IFRS 9, all other financial assets and financial liabilities will continue to be measured on the same bases as are currently measured under IAS 39.

*Impairment*

In general, the Directors anticipate that the application of the expected credit loss model of IFRS 9 will result in earlier provision of credit losses which are not yet incurred in relation to the Group's financial assets measured at amortised costs and other items that subject to the impairment provisions upon application of IFRS 9 by the Group.

Based on the assessment by the Directors, if the expected credit loss model were to be applied by the Group, the accumulated amount of impairment loss to be recognised by Group as at 1 January 2018 would be increased as compared to the accumulated amount recognised under IAS 39 mainly attributable to expected credit losses provision on trade and other receivables and other loan. Such further impairment recognised under expected credit loss model would reduce the opening retained profits at 1 January 2018.

8039

**Confidential**

Qin_00001003

2. **APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS ("IFRSs")**
   **(Continued)**
   *New and revised IFRSs in issue but not yet effective (Continued)*
   **IFRS 15 Revenue from Contracts with Customers**

IFRS 15 was issued which establishes a single comprehensive model for entities to use in accounting for revenue arising from contracts with customers. IFRS 15 will supersede the current revenue recognition guidance including IAS 18 Revenue, IAS 11 Construction contracts and the related interpretations when it becomes effective.

The core principle of IFRS 15 is that an entity should recognise revenue to depict the transfer of promised goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services. Specifically, the standard introduces a 5-step approach to revenue recognition:

- Step 1: Identify the contract(s) with a customer
- Step 2: Identify the performance obligations in the contract
- Step 3: Determine the transaction price
- Step 4: Allocate the transaction price to the performance obligations in the contract
- Step 5: Recognise revenue when (or as) the entity satisfies a performance obligation

Under IFRS 15, an entity recognises revenue when (or as) a performance obligation is satisfied, i.e. when 'control' of the goods or services underlying the particular performance obligation is transferred to the customer. Far more prescriptive guidance has been added in IFRS 15 to deal with specific scenarios. Furthermore, extensive disclosures are required by IFRS 15.

In 2016, the IASB issued clarifications to IFRS 15 in relation to the identification of performance obligations, principal versus agent considerations, as well as licensing application guidance.

The Directors anticipate that the application of IFRS 15 in the future may result in more disclosures, however, the Directors do not anticipate that the application of IFRS 15 will have a material impact on the timing and amounts of revenue recognised in the respective reporting periods.

**IFRS 16 Leases**

IFRS 16 introduces a comprehensive model for the identification of lease arrangements and accounting treatments for both lessors and lessees. IFRS 16 will supersede IAS 17 Leases and the related interpretations when it becomes effective.

IFRS 16 distinguishes lease and service contracts on the basis of whether an identified asset is controlled by a customer. Distinctions of operating leases and finance leases are removed for lessee accounting and is replaced by a model where a right-of-use asset and a corresponding liability have to be recognised for all leases by lessees, except for short-term leases and leases of low value assets.

**Confidential**                                                                                           **Qin_00001004**

**2.  APPLICATION OF NEW AND REVISED INTERNATIONAL FINANCIAL REPORTING STANDARDS ("IFRSs")**
**(Continued)**

*New and revised IFRSs in issue but not yet effective (Continued)*

**IFRS 16 Leases (Continued)**

The right-of-use asset is initially measured at cost and subsequently measured at cost (subject to certain exceptions) less accumulated depreciation and impairment losses, adjusted for any remeasurement of the lease liability. The lease liability is initially measured at the present value of the lease payments that are not paid at that date. Subsequently, the lease liability is adjusted for interest and lease payments, as well as the impact of lease modifications, amongst others. For the classification of cash flows, the Group currently presents upfront prepaid lease payments as investing cash flows in relation to leasehold lands for owned use while other operating lease payments are presented as operating cash flows. Upon application of the IFRS 16, lease payments in relation to lease liability will be allocated into a principal and an interest portion which will be presented as financing cash flows by the Group.

Under IAS 17, the Group has already recognised an asset and a related finance lease liability for finance lease arrangement and prepaid lease payments for leasehold lands where the Group is a lessee. The application of IFRS 16 may result in potential changes in classification of these assets depending on whether the Group presents right-of-use assets separately or within the same line item at which the corresponding underlying assets would be presented if they were owned.

In contrast to lessee accounting, IFRS 16 substantially carries forward the lessor accounting requirements in IAS 17, and continues to require a lessor to classify a lease either as an operating lease or a finance lease.

Furthermore, extensive disclosures are required by IFRS 16.

As at 31 December 2017, the Group has non-cancellable operating lease commitments of HK$4,753,040,000 as disclosed in note 45. A preliminary assessment indicates that these arrangements will meet the definition of a lease. Upon application of IFRS 16, the Group will recognise a right-of-use asset and a corresponding liability in respect of all these leases unless they qualify for low value or short-term leases.

In addition, the Group currently considers refundable rental deposits paid of HK$77,311,000 as rights and obligations under leases to which IAS 17 applies. Based on the definition of lease payments under IFRS 16, such deposits are not payments relating to the right to use the underlying assets, accordingly, the carrying amounts of such deposits may be adjusted to amortised cost and such adjustments are considered as additional lease payments. Adjustments to refundable rental deposits paid would be included in the carrying amount of right-of-use assets.

Furthermore, the application of new requirements may result in changes in measurement, presentation and disclosure as indicated above.

**Confidential**                                                                 **Qin_00001005**

3.  **SIGNIFICANT ACCOUNTING POLICIES**

The consolidated financial statements have been prepared in accordance with IFRSs issued by the IASB. In addition, the consolidated financial statements include applicable disclosures required by the Rules Governing the Listing of Securities on The Stock Exchange of Hong Kong Limited ("Listing Rules") and by the Hong Kong Companies Ordinance ("CO").

The consolidated financial statements have been prepared on the historical cost basis except for certain financial instruments which are measured at fair values at the end of each reporting period, as explained in accounting policies set out below.

Historical cost is generally based on the fair value of the consideration given in exchange for goods and services.

Fair value is the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date, regardless of whether that price is directly observable or estimated using another valuation technique. In estimating the fair value of an asset or a liability, the Group takes into account the characteristics of the asset or liability if market participants would take those characteristics into account when pricing the asset or liability at the measurement date. Fair value for measurement and/or disclosure purposes in these consolidated financial statements is determined on such a basis, except for share-based payment transactions that are within the scope of IFRS 2 Share-based payment, leasing transactions that are within the scope of IAS 17 Leases, and measurements that have some similarities to fair value but are not fair value, such as net realisable value in IAS 2 Inventories or value in use in IAS 36 Impairment of Assets.

In addition, for financial reporting purposes, fair value measurements are categorised into Level 1, 2 or 3 based on the degree to which the inputs to the fair value measurements are observable and the significance of the inputs to the fair value measurement in its entirety, which are described as follows:

*   Level 1 inputs are quoted prices (unadjusted) in active markets for identical assets or liabilities that the entity can access at the measurement date;

*   Level 2 inputs are inputs, other than quoted prices included within Level 1, that are observable for the asset or liability, either directly or indirectly; and

*   Level 3 inputs are unobservable inputs for the asset or liability.

The principal accounting policies are set out below.

**Confidential**                                                      **Qin_00001006**



3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
**Basis of consolidation**
The consolidated financial statements incorporate the financial statements of the Company and entities controlled by the Company and its subsidiaries. Control is achieved when the Company:

- has power over the investee;

- is exposed, or has rights, to variable returns from its involvement with the investee; and

- has the ability to use its power to affect its returns.

The Group reassesses whether or not it controls an investee if facts and circumstances indicate that there are changes to one or more of the three elements of control listed above.

When the Group has less than a majority of the voting rights of an investee, it has power over the investee when the voting rights are sufficient to give it the practical ability to direct the relevant activities of the investee unilaterally. The Group considers all relevant facts and circumstances in assessing whether or not the Group's voting rights in an investee are sufficient to give it power, including:

- the size of the Group's holding of voting rights relative to the size and dispersion of holdings of the other vote holders;

- potential voting rights held by the Group, other vote holders or other parties;

- rights arising from other contractual arrangements; and

- any additional facts and circumstances that indicate that the Group has, or does not have, the current ability to direct the relevant activities at the time that decisions need to be made, including voting patterns at previous shareholders' meetings.

Consolidation of a subsidiary begins when the Group obtains control over the subsidiary and ceases when the Group loses control of the subsidiary. Specifically, income and expenses of a subsidiary acquired or disposed of during the year are included in the consolidated statement of profit or loss and other comprehensive income from the date the Group gains control until the date when the Group ceases to control the subsidiary.

Profit or loss and each item of other comprehensive income are attributed to the owners of the Company and to the non-controlling interests. Total comprehensive income of subsidiaries is attributed to the owners of the Company and to the non-controlling interests even if this results in the non-controlling interests having a deficit balance.

When necessary, adjustments are made to the financial statements of subsidiaries to bring their accounting policies into line with the Group's accounting policies.

All intragroup assets and liabilities, equity, income, expenses and cash flows relating to transactions between members of the Group are eliminated in full on consolidation.

*Changes in the Group's ownership interests in existing subsidiaries*
Changes in the Group's ownership interests in subsidiaries that do not result in the Group losing control over the subsidiaries are accounted for as equity transactions. The carrying amounts of the Group's relevant components of equity and the non-controlling interests are adjusted to reflect the changes in their relative interests in the subsidiaries, including re-attribution of relevant reserves between the Group and the non-controlling interests according to the Group's and the non-controlling interests' proportionate interests.

0041

Any difference between the amount by which the non-controlling interests are adjusted, and the fair value of the consideration paid or received is recognised directly in equity and attributed to owners of the Company.



**Confidential**                                                                                      **Qin_00001007**

3.    **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
      **Basis of consolidation (Continued)**
      *Changes in the Group's ownership interests in existing subsidiaries (Continued)*
      When the Group loses control of a subsidiary, the assets and liabilities of that subsidiary and non-controlling interests (if any) are derecognised. A gain or loss is recognised in profit or loss and is calculated as the difference between (i) the aggregate of the fair value of the consideration received and the fair value of any retained interest and (ii) the carrying amount of the assets (including goodwill), and liabilities of the subsidiary attributable to the owners of the Company. All amounts previously recognised in other comprehensive income in relation to that subsidiary are accounted for as if the Company had directly disposed of the related assets or liabilities of the subsidiary (i.e. reclassified to profit or loss or transferred to another category of equity as specified/permitted by applicable IFRSs). The fair value of any investment retained in the former subsidiary at the date when control is lost is regarded as the fair value on initial recognition for subsequent accounting under IAS 39 or, when applicable, the cost on initial recognition of an investment in an associate or a joint venture.

      **Business combinations**
      Acquisitions of businesses are accounted for using the acquisition method. The consideration transferred in a business combination is measured at fair value, which is calculated as the sum of the acquisition-date fair values of the assets transferred by the Group, liabilities incurred by the Group to the former owners of the acquiree and the equity interests issued by the Group in exchange for control of the acquiree. Acquisition-related costs are generally recognised in profit or loss as incurred.

      At the acquisition date, the identifiable assets acquired and the liabilities assumed are recognised at their fair value, except that:

      •    deferred tax assets or liabilities, and assets or liabilities related to employee benefit arrangements are recognised and measured in accordance with IAS 12 Income Taxes and IAS 19 Employee Benefits respectively;

      •    liabilities or equity instruments related to share-based payment arrangements of the acquiree or share-based payment arrangements of the Group entered into to replace share-based payment arrangements of the acquiree are measured in accordance with IFRS 2 at the acquisition date (see the accounting policy below); and

      •    assets (or disposal groups) that are classified as held for sale in accordance with IFRS 5 Non-current Assets Held for Sale and Discontinued Operations are measured in accordance with that standard.

**Confidential**                                                                                         **Qin_00001008**



3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**

**Business combinations (Continued)**

Goodwill is measured as the excess of the sum of the consideration transferred, the amount of any non-controlling interests in the acquiree, and the fair value of the acquirer's previously held equity interest in the acquiree (if any) over the net amount of the identifiable assets acquired and the liabilities assumed as at the acquisition date. If, after re-assessment, the net of the acquisition-date amounts of the identifiable assets acquired and liabilities assumed exceeds the sum of the consideration transferred, the amount of any non-controlling interests in the acquiree and the fair value of the acquirer's previously held interest in the acquiree (if any), the excess is recognised immediately in profit or loss as a bargain purchase gain.

Non-controlling interests that are present ownership interests and entitle their holders to a proportionate share of the relevant subsidiary's net assets in the event of liquidation are initially measured at the non-controlling interests' proportionate share of the recognised amounts of the acquiree's identifiable net assets or at fair value. The choice of measurement basis is made on a transaction-by-transaction basis.

When a business combination is achieved in stages, the Group's previously held equity interest in the acquiree is remeasured to fair value at the acquisition date (i.e. the date when the Group obtains control), and the resulting gain or loss, if any, is recognised in profit or loss. Amounts arising from interests in the acquiree prior to the acquisition date that have previously been recognised in other comprehensive income are reclassified to profit or loss where such treatment would be appropriate if that interest were disposed of.

**Goodwill**

Goodwill arising on an acquisition of a business is carried at cost as established at the date of acquisition of business (see the accounting policy above) less accumulated impairment losses, if any.

For the purposes of impairment testing, goodwill is allocated to each of the Group's cash-generating units (or groups of cash-generating units) that is expected to benefit from the synergies of the combination, which represent the lowest level at which the goodwill is monitored for internal management purposes and not larger than an operating segment.

A cash-generating unit (or group of cash-generating units) to which goodwill has been allocated is tested for impairment annually or more frequently when there is indication that the unit may be impaired. For goodwill arising on an acquisition in a reporting period, the cash-generating unit (or group of cash-generating units) to which goodwill has been allocated is tested for impairment before the end of that reporting period. If the recoverable amount of the cash-generating unit is less than its carrying amount, the impairment loss is allocated first to reduce the carrying amount of any goodwill and then to the other assets on a pro rata basis based on the carrying amount of each asset in the unit (or group of cash-generating units).

On disposal of the relevant cash-generating unit, the attributable amount of goodwill is included in the determination of the amount of profit or loss on disposal (or any of the cash-generating units group of cash-generating units in which the Group monitors goodwill).

The Group's policy for goodwill arising on the acquisition of an associate is described below.

8042

**Confidential**



Qin_00001009

3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**

**Investments in associates**

An associate is an entity over which the Group has significant influence. Significant influence is the power to participate in the financial and operating policy decisions of the investee but is not control or joint control over those policies.

The results and assets and liabilities of associates are incorporated in these consolidated financial statements using the equity method of accounting. The financial statements of associates used for equity accounting purposes are prepared using uniform accounting policies as those of the Group for like transactions and events in similar circumstances. Under the equity method, an investment in an associate is initially recognised in the consolidated statement of financial position at cost and adjusted thereafter to recognise in the Group's share of the profit or loss and other comprehensive income of the associate. Changes in net assets of the associate other than profit or loss and other comprehensive income are not accounted for unless such changes resulted in changes in ownership interest held by the Group. When the Group's share of losses of an associate exceeds the Group's interest in that associate, the Group discontinues recognising its share of further losses. Additional losses are recognised only to the extent that the Group has incurred legal or constructive obligations or made payments on behalf of that associate.

An investment in an associate is accounted for using the equity method from the date on which the investee becomes an associate. On acquisition of the investment in an associate, any excess of the cost of the investment over the Group's share of the net fair value of the identifiable assets and liabilities of the investee is recognised as goodwill, which is included within the carrying amount of the investment. Any excess of the Group's share of the net fair value of the identifiable assets and liabilities over the cost of the investment, after reassessment, is recognised immediately in profit or loss in the period in which the investment is acquired.

The requirements of IAS 39 are applied to determine whether it is necessary to recognise any impairment loss with respect to the Group's investment in an associate. When necessary, the entire carrying amount of the investment (including goodwill) is tested for impairment in accordance with IAS 36 as a single asset by comparing its recoverable amount (higher of value in use and fair value less costs of disposal) with its carrying amount. Any impairment loss recognised forms part of the carrying amount of the investment. Any reversal of that impairment loss is recognised in accordance with IAS 36 to the extent that the recoverable amount of the investment subsequently increases.

When the Group ceases to have significant influence over an associate, it is accounted for as a disposal of the entire interest in the interest in the investee with a resulting gain or loss being recognised in profit or loss. When the Group retains an interest in the former associate and the retained interest is a financial asset within the scope of IAS 39, the Group measures the retained interest at fair value at that date and the fair value is regarded as its fair value on initial recognition. The difference between the carrying amount of the associate, and the fair value of any retained interest and any proceeds from disposing the relevant interest in the associate is included in the determination of the gain or loss on disposal of the associate. In addition, the Group accounts for all amounts previously recognised in other comprehensive income in relation to that associate on the same basis as would be required if that associate had directly disposed of the related assets or liabilities. Therefore, if a gain or loss previously recognised in other comprehensive income by that associate would be reclassified to profit or loss on the disposal of the related assets or liabilities, the Group reclassifies the gain or loss from equity to profit or loss (as a reclassification adjustment) upon disposal/partial disposal of the relevant associate.

**Confidential** **Qin_00001010**



3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
**Investments in associates (Continued)**
When the Group reduces its ownership interest in an associate but the Group continues to use the equity method, the Group reclassifies to profit or loss the proportion of the gain or loss that had previously been recognised in other comprehensive income relating to that reduction in ownership interest if that gain or loss would be reclassified to profit or loss on the disposal of the related assets or liabilities.

When a group entity transacts with an associate of the Group, profits and losses resulting from the transactions with the associate are recognised in the Group's consolidated financial statements only to the extent of interests in the associate that are not related to the Group.

**Revenue recognition**
Revenue is measured at the fair value of the consideration received or receivable future. Revenue is reduced for estimated customer returns, rebates and other similar allowances.

Revenue is recognised when the amount of revenue can be reliably measured; when it is probable that future economic benefits will flow to the Group and when specific criteria have been met for each of the Group's activities, as described below.

Income from box office ticketing is recognised when the services are rendered.

Income from advertising, events and field marketing and other related services is recognised when the services are rendered.

Revenue from the sale of scripts, synopsis and editing/publishing rights is recognised when the items are delivered and the titles of those items have passed to the customers, as evidenced by the signing of the contract with the customers.

Purchased license rights related to the broadcasting rights of TV series, documentaries and similar products. Revenue from the licensing of broadcasting rights is recognised when the following criteria are met: (i) an agreement has been signed with a customer, (ii) master tapes have been delivered and (iii) it is probable that future economic benefits will flow to the Group.

Film investment income represents the Group's share of box office sales from films exhibited in movie theatres, after the payment by the movie theatres of taxes and other governmental charges and deductions by movie theatres. The Group's share of profit is determined in accordance with the profit sharing ratio set out in the respective film investment agreements.

Revenue from film investment is recognised when (i) the films are exhibited in movie theatres, (ii) the amount of revenue can be measured reliably and (iii) the collectability of the entitled proceeds is reasonably assured.

Sales of goods that result in award credits for customers, under the Group's customer loyalty scheme, are accounted for as multiple element revenue transactions and the fair value of the consideration received or receivable is allocated between the goods supplied and the award credits granted. The consideration allocated to the award credits is measured by reference to the fair value of the awards for which they could be redeemed. Such consideration is not recognised as revenue at the time of the initial sale transaction, but is deferred and recognised as revenue when the award credits are redeemed and the Group's obligations have been fulfilled.

0043

**Confidential**

Qin_00001011

3.  **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
    **Revenue recognition (Continued)**
    Promotional service income is recognised when services are provided.

    Dividend income from investments is recognised when the shareholders' rights to receive payment have been established.

    Interest income is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable, which is the rate that exactly discounts the estimated future cash receipts through the expected life of the financial asset to that asset's net carrying amount on initial recognition.

    **Property, plant and equipment**
    Property, plant and equipment including buildings and leasehold land (classified as finance leases) held for use in the production or supply of goods or services, or for administrative purposes (other than properties under construction as described below) are stated in the consolidated statement of financial position at cost less subsequent accumulated depreciation and subsequent accumulated impairment losses, if any.

    Properties in the course of construction for production, supply or administrative purposes are carried at cost, less any recognised impairment loss. Costs include professional fees and, for qualifying assets, borrowing costs capitalised in accordance with the Group's accounting policy. Such properties are classified to the appropriate categories of property, plant and equipment when completed and ready for intended use. Depreciation of these assets, on the same basis as other property assets, commences when the assets are ready for their intended use.

    Depreciation is recognised so as to write off the cost of assets other than properties under construction less their residual values over their estimated useful lives, using the straight-line method. The estimated useful lives, residual values and depreciation method are reviewed at the end of each reporting period, with the effect of any changes in estimate accounted for on a prospective basis.

    Assets held under finance leases are depreciated over their expected useful lives on the same basis as owned assets. However, when there is no reasonable certainty that ownership will be obtained by the end of the lease term, assets are depreciated over the shorter of the lease term and their useful lives.

    An item of property, plant and equipment is derecognised upon disposal or when no future economic benefits are expected to arise from the continued use of the asset. Any gain or loss arising on the disposal or retirement of an item of property, plant and equipment is determined as the difference between the sales proceeds and the carrying amount of the asset and is recognised in profit or loss.

**Confidential**                                    **Qin_00001012**



3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**

**Intangible assets**

*Intangible assets acquired separately*

Intangible assets with finite useful lives that are acquired separately are carried at costs less accumulated amortisation and any accumulated impairment losses. Amortisation for intangible assets with finite useful lives is recognised on a straight-line basis over their estimated useful lives. The estimated useful life and amortisation method are reviewed at the end of each reporting period, with the effect of any changes in estimate being accounted for on a prospective basis.

*Intangible assets acquired in a business combination*

Intangible assets acquired in a business combination are recognised separately from goodwill and are initially recognised at their fair value at the acquisition date (which is regarded as their cost).

Subsequent to initial recognition, intangible assets acquired in a business combination with finite useful lives are reported at costs less accumulated amortisation and any accumulated impairment losses, on the same basis as intangible assets that are acquired separately. Alternatively, intangible assets acquired in a business combination with indefinite useful lives are carried at cost less any subsequent accumulated impairment losses (see the accounting policy in respect of impairment losses on tangible and intangible assets below).

An intangible asset is derecognised on disposal, or when no future economic benefits are expected from use or disposal. Gains and losses arising from derecognition of an intangible asset, measured as the difference between the net disposal proceeds and the carrying amount of the asset, are recognised in profit or loss when the asset is derecognised.

**Purchased license rights**

Purchased license rights are stated at costs less accumulated amortisation and any accumulated impairment losses. In periods where revenue is generated from a purchased license right, amortisation is recognised at a rate calculated to write off the costs in proportion to the expected revenue from the licensing of the right. In periods where no revenue is generated from the purchased license right, amortisation for the purchased license rights is recognised on a straight-line basis over their estimated useful lives.

**Impairment on tangible and intangible assets other than goodwill**

At the end of the reporting period, the Group reviews the carrying amounts of its tangible and intangible assets with finite useful lives to determine whether there is any indication that those assets have suffered an impairment loss. If any such indication exists, the recoverable amount of the asset is estimated in order to determine the extent of the impairment loss (if any).

When it is not possible to estimate the recoverable amount of an asset individually, the Group estimates the recoverable amount of the cash-generating unit to which the asset belongs. When a reasonable and consistent basis of allocation can be identified, corporate assets are also allocated to individual cash-generating units, or otherwise they are allocated to the smallest group of cash-generating units for which a reasonable and consistent allocation basis can be identified.

Confidential                                    Qin_00001013

3.   **SIGNIFICANT ACCOUNTING POLICIES (Continued)**

   **Impairment on tangible and intangible assets other than goodwill (Continued)**

   Recoverable amount is the higher of fair value less costs of disposal and value in use. In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset (or a cash-generating unit) for which the estimates of future cash flows have not been adjusted.

   If the recoverable amount of an asset (or a cash-generating unit) is estimated to be less than its carrying amount, the carrying amount of the asset (or a cash-generating unit) is reduced to its recoverable amount. In allocating the impairment loss, the impairment loss is allocated first to reduce the carrying amount of any goodwill (if applicable) and then to the other assets on a pro-rata basis based on the carrying amount of each asset in the unit. The carrying amount of an asset is not reduced below the highest of its fair value less costs of disposal (if measurable), its value in use (if determinable) and zero. The amount of the impairment loss that would otherwise have been allocated to the asset is allocated pro rata to the other assets of the unit. An impairment loss is recognised immediately in profit or loss.

   Where an impairment loss subsequently reverses, the carrying amount of the asset (or a cash-generating unit) is increased to the revised estimate of its recoverable amount, but so that the increased carrying amount does not exceed the carrying amount that would have been determined had no impairment loss been recognised for the asset (or a cash-generating unit) in prior years. A reversal of an impairment loss is recognised immediately in profit or loss.

   **Inventories**

   Inventories are stated at the lower of cost and net realisable value. Net realisable value represents the estimated selling price for inventories less all estimated costs of completion and costs necessary to make the sale.

   **Film rights investment**

   Film rights investment represent films invested by the Group. The investments are governed by the relevant agreements entered into between the Group and the production houses whereby the Group is entitled to benefits generated from the distribution of the related films based on the percentage of capital invested in the films. Film rights investment are stated at cost less accumulated amortisation and any identified impairment loss.

   Amortisation of film rights investment is charged to profit or loss based on the proportion of actual income earned during the year to the total estimated income from the exhibition of the film attributed to the Group, according to the respective film investment agreements.

**Confidential**                                                                                    **Qin_00001014**



3.   **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
**Leasing**
Leases are classified as finance leases whenever the terms of the lease transfer substantially all the risks and rewards of ownership to the lessee. All other leases are classified as operating leases.

*The Group as lessee*
Assets held under finance leases are recognised as assets of the Group at their fair value at the inception of the lease or, if lower, at the present value of the minimum lease payments. The corresponding liability to the lessor is included in the consolidated statement of financial position as a finance lease obligation.

Lease payments are apportioned between finance expenses and reduction of the lease obligation so as to achieve a constant rate of interest on the remaining balance of the liability. Finance expenses are recognised immediately in profit or loss, unless they are directly attributable to qualifying assets, in which case they are capitalised in accordance with the Group's general policy on borrowing costs (see the accounting policy below). Contingent rentals are recognised as expenses in the periods in which they are incurred.

Operating lease payments are recognised as an expense on a straight-line basis over the lease term, except where another systematic basis is more representative of the time pattern in which economic benefits from the leased asset are consumed. Contingent rentals arising under operating leases are recognised as an expense in the period in which they are incurred.

In the event that lease incentives are received to enter into operating leases, such incentives are recognised as a liability. The aggregate benefit of incentives is recognised as a reduction of rental expense on a straight-line basis.

*Leasehold land and building*
When the Group makes payments for a property interest which includes both leasehold land and building elements, the Group assesses the classification of each element as a finance or an operating lease separately based on the assessment as to whether substantially all the risks and rewards incidental to ownership of each element have been transferred to the Group, unless it is clear that both elements are operating leases in which case the entire property is accounted as an operating lease. Specifically, the entire consideration (including any lump-sum upfront payments) are allocated between the leasehold land and the building elements in proportion to the relative fair values of the leasehold interests in the land element and building element at initial recognition.

To the extent the allocation of the relevant payments can be made reliably, interest in leasehold land that is accounted for as an operating lease is presented as "prepaid lease payments" in the consolidated statement of financial position and is amortised over the lease term on a straight-line basis. When the payments cannot be allocated reliably between the leasehold land and building elements, the entire property is generally classified as if the leasehold land is under finance lease.

0045

Confidential

Qin_00001015

3.   SIGNIFICANT ACCOUNTING POLICIES (Continued)
     Retirement benefit costs and termination benefits
     Payments to state-managed retirement benefit schemes and the Mandatory Provident Fund Scheme are recognised as an expense when employees have rendered service entitling them to the contributions.

     Short-term and other long-term employee benefits
     Short-term employee benefits are recognised at the undiscounted amount of the benefits expected to be paid as and when employees rendered the services. All short-term employee benefits are recognised as an expense unless another IFRS requires or permits the inclusion of the benefit in the cost of an asset.

     A liability is recognised for benefits accruing to employees (such as wages and salaries, annual leave and sick leave) after deducting any amount already paid.

     Foreign currencies
     In preparing the financial statements of each individual group entity, transactions in currencies other than the functional currency of that entity (foreign currencies) are recognised at the rates of exchanges prevailing on the dates of the transactions. At the end of the reporting period, monetary items denominated in foreign currencies are retranslated at the rates prevailing at that date. Non-monetary items carried at fair value that are denominated in foreign currencies are retranslated at the rates prevailing on the date when the fair value was determined. Non-monetary items that are measured in terms of historical cost in a foreign currency are not retranslated.

     Exchange differences arising on the settlement of monetary items, and on the retranslation of monetary items, are recognised in profit or loss in the period in which they arise.

     For the purposes of presenting the consolidated financial statements, the assets and liabilities of the Group's operations in the People's Republic of China ("the PRC") are translated into the presentation currency of the Group (i.e. Hong Kong dollars) using exchange rate prevailing at the end of each reporting period. Income and expenses items are translated at the average exchange rates for the period. Exchange differences arising, if any, are recognised in other comprehensive income and accumulated in equity under the heading of translation reserve (attributed to non-controlling interests as appropriate).

     On the disposal of a foreign operation (i.e. a disposal of the Group's entire interest in a foreign operation, or a disposal involving loss of control over a subsidiary that includes a foreign operation, or a partial disposal of an interest in a joint arrangement or an associate that includes a foreign operation of which the retained interest becomes a financial asset), all of the exchange differences accumulated in equity in respect of that operation attributable to the owners of the Company are reclassified to profit or loss.

     In addition, in relation to a partial disposal of a subsidiary that does not result in the Group losing control over the subsidiary, the proportionate share of accumulated exchange differences are re-attributed to non-controlling interests and are not recognised in profit or loss. For all other partial disposals (i.e. partial disposals of associates that do not result in the Group losing significant influence, the proportionate share of the accumulated exchange differences is reclassified to profit or loss.

     Goodwill and fair value adjustments on identifiable assets acquired arising on an acquisition of a foreign operation are treated as assets and liabilities of that foreign operation and translated at the rate of exchange prevailing at the end of each reporting period. Exchange differences arising are recognised in other comprehensive income.



3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**

**Borrowing costs**

Borrowing costs directly attributable to the acquisition, construction or production of qualifying assets, which are assets that necessarily take a substantial period of time to get ready for their intended use or sale, are added to the cost of those assets until such time as the assets are substantially ready for their intended use or sale.

All other borrowing costs are recognised in profit or loss in the period in which they are incurred.

**Government grants**

Government grants are not recognised until there is reasonable assurance that the Group will comply with the conditions attaching to them and that the grants will be received.

Government grants are recognised in profit or loss on a systematic basis over the periods in which the Group recognises as expenses the related costs for which the grants are intended to compensate. Specifically, government grants whose primary condition is that the Group should purchase, construct or otherwise acquire non-current assets are recognised as deferred income in the consolidated statement of financial position and transferred to profit or loss on a systematic and rational basis over the useful lives of the related assets.

**Taxation**

Income tax expense represents the sum of the tax currently payable and deferred tax.

The tax currently payable is based on taxable profit for the year. Taxable profit differs from profit before tax as reported in the consolidated statement of profit or loss and other comprehensive income because of income or expense that are taxable or deductible in other years and items that are never taxable or deductible. The Group's liability for current tax is calculated using tax rates that have been enacted or substantively enacted by the end of the reporting period.

Deferred tax is recognised on temporary differences between the carrying amounts of assets and liabilities in the consolidated financial statements and the corresponding tax bases used in the computation of taxable profit. Deferred tax liabilities are generally recognised for all taxable temporary differences. Deferred tax assets are generally recognised for all deductible temporary differences to the extent that it is probable that taxable profits will be available against which those deductible temporary differences can be utilised. Such deferred tax assets and liabilities are not recognised if the temporary difference arises from the initial recognition (other than in a business combination) of assets and liabilities in a transaction that affects neither the taxable profit nor the accounting profit. In addition, deferred tax liabilities are not recognised if the temporary difference arises from the initial recognition of goodwill.

Deferred tax liabilities are recognised for taxable temporary differences associated with investments in subsidiaries and associates, except where the Group is able to control the reversal of the temporary difference and it is probable that the temporary difference will not reverse in the foreseeable future. Deferred tax assets arising from deductible temporary differences associated with such investments and interests are only recognised to the extent that it is probable that there will be sufficient taxable profits against which to utilise the benefits of the temporary differences and they are expected to reverse in the foreseeable future.

The carrying amount of deferred tax assets is reviewed at the end of each reporting period and reduced to the extent that it is no longer probable that sufficient taxable profit will be available to allow all or part of the asset to be recovered.

0046



Confidential                                                                                          Qin_00001017

3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
**Taxation (Continued)**
Deferred tax assets and liabilities are measured at the tax rates that are expected to apply in the period in which the liability is settled or the asset realised, based on tax rate (and tax laws) that have been enacted or substantively enacted by the end of the reporting period.

The measurement of deferred tax liabilities and assets reflects the tax consequences that would follow from the manner in which the Group expects, at the end of the reporting period, to recover or settle the carrying amount of its assets and liabilities.

Current and deferred tax are recognised in profit or loss, except when they relate to items that are recognised in other comprehensive income or directly in equity, in which case, the current and deferred tax are also recognised in other comprehensive income or directly in equity respectively. Where current tax or deferred tax arises from the initial accounting for a business combination, the tax effect is included in the accounting for the business combination.

**Financial instruments**
Financial assets and financial liabilities are recognised when a group entity becomes a party to the contractual provisions of the instrument.

Financial assets and financial liabilities are initially measured at fair value. Transaction costs that are directly attributable to the acquisition or issue of financial assets and financial liabilities (other than financial assets or financial liabilities at fair value through profit or loss) are added to or deducted from the fair value of the financial assets or financial liabilities, as appropriate, on initial recognition. Transaction costs directly attributable to the acquisition of financial assets or financial liabilities at fair value through profit or loss are recognised immediately in profit or loss.

*Financial assets*
Financial assets are classified into the following specified categories: financial assets at fair value through profit or loss ("FVTPL"), available-for-sale ("AFS") investments and loans and receivables. The classification depends on the nature and purpose of the financial assets and is determined at the time of initial recognition. All regular way purchases or sales of financial assets are recognised and derecognised on a trade date basis. Regular way purchases or sales are purchases or sales of financial assets that require delivery of assets within the time frame established by regulation or convention in the marketplace.

*Effective interest method*
The effective interest method is a method of calculating the amortised cost of a debt instrument and of allocating interest income over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash receipts (including all fees and points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the debt instrument, or, where appropriate, a shorter period to the net carrying amount on initial recognition.

Interest income is recognised on an effective interest basis for debt instruments.

**Confidential**                                                                                          **Qin_00001018**



**3. SIGNIFICANT ACCOUNTING POLICIES (Continued)**
**Financial instruments (Continued)**
*Financial assets (Continued)*
*Financial assets at FVTPL*

Financial assets are classified as at FVTPL when the financial asset is (i) held for trading or (ii) it is designated as at FVTPL on initial recognition.

A financial asset is classified as held for trading if:

- it has been acquired principally for the purpose of selling in the near term; or

- on initial recognition it is a part of a portfolio of identified financial instruments that the Group manages together and has a recent actual pattern of short-term profit-taking; or

- it is a derivative that is not designated and effective as a hedging instrument.

A financial asset other than a financial asset held for trading may be designated as at FVTPL upon initial recognition if it forms part of a contract containing one or more embedded derivatives, and IAS 39 permits the entire combined contract (asset or liability) to be designated as at FVTPL.

Financial assets at FVTPL are stated at fair value, with any gains or losses arising on remeasurement recognised in profit or loss. The net gain or loss recognised in profit or loss exclude any dividend or interest earned on the financial assets and is included in the "other gains and income" line item. Fair value is determined in the manner described in note 53.

*AFS investments*

AFS investments are non-derivatives that are either designated as available-for-sale or are not classified as loans and receivables or financial assets at FVTPL. AFS equity investments that do not have a quoted market price in an active market and whose fair value cannot be reliably measured are measured at cost less any identified impairment losses at the end of each reporting period.

*Loans and receivables*

Loans and receivables are non-derivative financial assets with fixed or determinable payments that are not quoted in an active market. Subsequent to initial recognition, loans and receivables (including other financial assets, trade and other receivables, amounts due from related parties, other loan, pledged bank deposits and bank balances and cash) are carried at amortised cost using the effective interest method, less any impairment (see accounting policy on impairment loss on financial assets below).

Interest income is recognised by applying the effective interest rate, except for short-term receivables where the recognition of interest would be immaterial.

0047



**Confidential** **Qin_00001019**

3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
   **Financial instruments (Continued)**
   *Financial assets (Continued)*
   Impairment of financial assets

Financial assets, other than those at FVTPL, are assessed for indicators of impairment at the end of each reporting period. Financial assets are considered to be impaired when there is objective evidence that, as a result of one or more events that occurred after the initial recognition of the financial asset, the estimated future cash flows of the financial assets have been affected.

For all other financial assets, objective evidence of impairment could include:

- significant financial difficulty of the issuer or counterparty; or

- breach of contract, such as default or delinquency in interest or principal payments; or

- it becoming probable that the borrower will enter bankruptcy or financial re-organisation.

Objective evidence of impairment for a portfolio of receivables could include the Group's past experience of collecting payments, an increase in the number of delayed payments in the portfolio past the average credit period, observable changes in local economic conditions that correlate with default on receivables.

For financial assets carried at amortised cost, the amount of the impairment loss recognised is the difference between the asset's carrying amount and the present value of the estimated future cash flows discounted at the financial asset's original effective interest rate.

For financial assets carried at cost, the amount of the impairment loss is measured as the difference between the asset's carrying amount and the present value of the estimated future cash flows discounted at the current market rate of return for a similar financial asset. Such impairment loss will not be reversed in subsequent periods (see the accounting policy below).

The carrying amount of the financial asset is reduced by the impairment loss directly for all financial assets with the exception of trade receivables, where the carrying amount is reduced through the use of an allowance account. Changes in the carrying amount of the allowance account are recognised in profit or loss. When a trade receivable is considered uncollectible, it is written off against the allowance account. Subsequent recoveries of amounts previously written off are credited to profit or loss.

For financial assets measured at amortised cost, if, in a subsequent period, the amount of the impairment loss decreases and the decrease can be related objectively to an event occurring after the impairment was recognised, the previously recognised impairment loss is reversed through profit or loss to the extent that the carrying amount of the investment at the date the impairment is reversed does not exceed what the amortised cost would have been had the impairment not been recognised.

**Confidential**                                   **Qin_00001020**



**3. SIGNIFICANT ACCOUNTING POLICIES (Continued)**
**Financial instruments (Continued)**
*Financial liabilities and equity instruments*
Debt and equity instruments issued by a group entity are classified as either financial liabilities or as equity in accordance with substance of the contractual arrangements and the definitions of a financial liability and an equity instrument.

*Equity instruments*
An equity instrument is any contract that evidences a residual interest in the assets of an entity after deducting all of its liabilities. Equity instruments issued by the Group are recognised at the proceeds received, net of direct issue costs.

Repurchase of the Company's own equity instruments is recognised and deducted directly in equity. No gain or loss is recognised in profit or loss on the purchase, sale, issue or cancellation of the Company's own equity instruments.

*Effective interest method*
The effective interest method is a method of calculating the amortised cost of a financial liability and of allocating interest expense over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash payments (including all fees and points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the financial liability, or, where appropriate, a shorter period, to the net carrying amount on initial recognition. Interest expense is recognised on an effective interest basis.

*Financial liabilities*
Financial liabilities (including trade and other payables, amounts due to related parties, bank borrowings, other borrowings, bonds and convertible notes – liability component) are subsequently measured at amortised cost, using the effective interest method.

*Convertible notes*
*Convertible loan notes contain equity component*
The component parts of certain convertible loan notes issued by the Company are classified separately as financial liabilities and equity in accordance with the substance of the contractual arrangements and the definitions of a financial liability and an equity instrument. A conversion option that will be settled by the exchange of a fixed amount of cash or another financial asset for a fixed number of the Company's own equity instruments is an equity instrument.

At the date of issue, the fair value of the liability component (including any embedded non-equity derivative features) is estimated by measuring the fair value of similar liability that does not have an associated equity component.

The conversion option classified as equity is determined by deducting the amount of the liability component from the fair value of the compound instrument as a whole. This is recognised and included in equity, net of income tax effects, and is not subsequently remeasured. In addition, the conversion option classified as equity will remain in equity until the conversion option is exercised, in which case, the balance recognised in equity will be transferred to share premium. Where the conversion option remains unexercised at the maturity date of the convertible note, the balance recognised in equity will be transferred to retained profits. No gain or loss is recognised in profit or loss upon conversion or expiration of the conversion option.

Transaction costs that relate to the issue of the convertible loan notes are allocated to the liability and equity components in proportion to the allocation of the gross proceeds. Transaction costs relating to the equity component are charged directly to equity. Transaction costs relating to the liability component are included in the carrying amount of the liability portion and amortised over the period of the convertible loan notes using the 0048 effective interest method.

**Confidential**    **Qin_00001021**

3.  **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
    **Financial instruments (Continued)**
    *Convertible notes (Continued)*
    *Convertible loan notes contain debt and derivative components*
    A conversion option that will be settled other than by the exchange of a fixed amount of cash or another financial asset for a fixed number of the Group's own equity instruments is a conversion option derivative.

    At the date of issue, both the debt component and derivative components are recognised at fair value. In subsequent periods, the debt component of the convertible notes is carried at amortised cost using the effective interest method. The derivative component is measured at fair value with changes in fair value recognised in profit or loss.

    Transaction costs that relate to the issue of the convertible loan notes are allocated to the debt and derivative components in proportion to their relative fair values. Transaction costs relating to the derivative component are charged to profit or loss immediately. Transaction costs relating to the debt component are included in the carrying amount of the debt portion and amortised over the period of the convertible loan notes using the effective interest method.

    *Derecognition*
    The Group derecognises a financial asset only when the contractual rights to the cash flows from the asset expire, or when it transfers the financial asset and substantially all the risks and rewards of ownership of the asset to another entity.

    On derecognition of a financial asset in its entirety, the difference between the asset's carrying amount and the sum of the consideration received and receivable and the cumulative gain or loss that had been recognised in other comprehensive income and accumulated in equity is recognised in profit or loss.

    The Group derecognises financial liabilities when, and only when, the Group's obligations are discharged, cancelled or have expired. The difference between the carrying amount of the financial liability derecognised and the consideration paid and payable is recognised in profit or loss.

    When an existing financial liability's terms are modified and such modification results in the discounted present value of the cash flows under the new terms including any fees paid net of any fees received is at least 10 per cent different from the discounted present values of the remaining cash flows of the original financial liability, it is accounted for as an extinguishment of the original financial liability and a recognition of a new financial liability or equity instrument or compound instrument with the difference, being the carrying amount of the financial liability extinguished and the fair value of the financial liability, recognised in profit or loss.

    **Share-based payment arrangement**
    *Equity-settled share-based payment transactions*
    Equity-settled share-based payments to employees and others providing similar services are measured at the fair value of the equity instruments at the grant date.

    The fair value of the equity-settled share based payments determined at the grant date without taking into consideration all non-market vesting conditions is expensed on a straight-line basis over the vesting period, based on the Group's estimate of equity instruments that will eventually vest, with a corresponding increase in share-based payment reserve. At the end of each reporting period, the Group revises its estimate of the number of equity instruments expected to vest based on assessment of all relevant non-market vesting conditions. The impact of the revision of the original estimates, if any, is recognised in profit or loss such that the cumulative expense reflects the revised estimate, with a corresponding adjustment to share-based payment reserve. For share options that vest immediately at the date of grant, the fair value of the share options granted is expensed immediately to profit or loss.

**Confidential**

Qin_00001022



3. **SIGNIFICANT ACCOUNTING POLICIES (Continued)**
**Share-based payment arrangement (Continued)**
*Equity-settled share-based payment transactions (Continued)*
When share options are exercised, the amount previously recognised in share-based payment reserve will be transferred to share premium. When share options are forfeited after the vesting date or are still not exercised at the expiry date, the amount previously recognised in share-based payment reserve will be transferred to retained profits.

**Provisions**
Provisions are recognised when the Group has a present obligation (legal or constructive) as a result of a past event, it is probable that the Group will be required to settle that obligation, and a reliable estimate can be made of the amount of the obligation.

The amount recognised as a provision is the best estimate of the consideration required to settle the present obligation at the end of the reporting period, taking into account the risks and uncertainties surrounding the obligation. When a provision is measured using the cash flows estimated to settle the present obligation, its carrying amount is the present value of those cash flows (where the effect of the time value of money is material).

4. **CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY**
In the application of the Group's accounting policies, which are described in note 3, the Directors are required to make judgments, estimates and assumptions about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an on-going basis. Revisions to accounting estimates are recognised in the period in which the estimate is revised if the revision affects only that period, or in the period of the revision and future periods if the revision affects both current and future periods.

**Critical judgments in applying accounting policy**
The followings are the critical judgments, apart from those involving estimations, that the directors have made in the process of applying the Group's accounting policies and that have the most significant effect on the amounts recognised in the consolidated financial statements.

*Consolidation of entities engaged in theatre operation in the PRC*
The theatre operations of the Group are carried out mainly through domestic operating companies incorporated in the PRC. Certain of the Company's wholly-owned subsidiaries hold equity interest in certain of these theatre operating companies. The remaining equity interests of these theatre operating companies are held by certain PRC entities controlled by Mr. Qin, the controlling shareholder of the Company ("Mr. Qin's Affiliates"). The Group's entities engaged in theatre operation are collectively defined as the "Relevant Entities" hereinafter.

0049

**Confidential** Qin_00001023

**4. CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY (Continued)**

**Critical judgments in applying accounting policy (Continued)**

*Consolidation of entities engaged in theatre operation in the PRC (Continued)*

Pursuant to the applicable PRC laws and regulations, foreign investors are restricted from owning more than 49% of equity interest of any theatre operation entities, except that: i) in certain cities (including Beijing, Shanghai, Guangzhou, Chengdu, Xian, Wuhan and Nanjing in the PRC under pilot plan whereby foreign investors are allowed to own up to 75% of equity interest in any theatre operation entities; and ii) theatre operator from Hong Kong or Macau could invest by the way of holding not more than 75% of equity interest in any theatre operation entities commencing 1 January 2015. In order to enable control to be exercised over the entities engaged in theatre operation business invested by the Group, certain wholly-owned subsidiaries of the Company entered into certain contractual arrangements (the "Contractual Arrangements") with the Relevant Entities and their respective equity holders, who are being Mr. Qin's Affiliates, which enable those wholly-owned subsidiaries and the Company to:

- exercise effective financial and operational control over the Relevant Entities;

- exercise equity holders' voting rights of the Relevant Entities;

- receive substantially all of the economic interest returns generated by the Relevant Entities;

- obtain an irrevocable and exclusive right to purchase the remaining entire equity interest in the Relevant Entities from the respective equity holders; and

- obtain a pledge over the entire equity interest of the Relevant Entities from their respective equity holders as collateral security to secure performance of the obligations of the Relevant Entities and their respective equity holders under the Contractual Arrangements.

As a result of the Contractual Arrangements, the Group has rights to variable returns from its involvement with the Relevant Entities and has the ability to affect those returns through its power over the Relevant Entities and is considered to control the Relevant Entities. Consequently, the Company regards the Relevant Entities as consolidated structured entities under IFRSs and all existing ownership interests of these Relevant Entities are held by the Group. The Group has included the assets and liabilities and results of the Relevant Entities in the consolidated financial statements. The revenue generated from the Relevant Entities during the year ended 31 December 2017 and total assets and total liabilities attributable to the Relevant Entities as at 31 December 2017 amounted to HK$3,027,371,000 (2016: HK$2,951,319,000), HK$12,200,855,000 (2016: HK$9,984,349,000) and HK$3,161,164,000 (2016: HK$3,793,985,000), respectively.

**Confidential**                                          **Qin_00001024**

**4. CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY (Continued)**

**Critical judgments in applying accounting policy (Continued)**

*Consolidation of entities engaged in theatre operation in the PRC (Continued)*

Nevertheless, the Contractual Arrangements may not be as effective as direct legal ownership in providing the Group with direct control over the Relevant Entities and uncertainties presented by the PRC legal system could impede the Group's beneficiary rights of the results, assets and liabilities of the Relevant Entities. However, the Company believes that, based on the legal opinion obtained from the Company's PRC external legal counsel, the Contractual Arrangements are in compliance with the relevant current PRC laws and regulations and are legally binding and enforceable.

**Key sources of estimation uncertainty**

The followings are the key assumptions concerning the future, and other key sources of estimation uncertainty at the end of the reporting period, that have a significant risk of causing a material adjustment to the carrying amounts of assets and liabilities within the next financial year.

*Impairment loss for bad and doubtful debts*

The Group makes impairment loss for bad and doubtful debts based on assessments of the recoverability of the trade and other receivables, including the current creditworthiness and the past collection history of each debtor. Impairments arise where events or changes in circumstances indicate that the balances may not be collectible. The identification of bad and doubtful debts requires the use of judgment and estimates.

Where the actual result is different from the original estimate, such difference will impact the carrying values of the trade and other receivables and doubtful debt expenses in the year in which such estimate has been changed. If the financial conditions of the debtors were to deteriorate, resulting in an impairment of their ability to make payments, additional allowances may be required. As at 31 December 2017, the carrying amount of trade receivable and prepayment and other receivables were HK$760,407,000 and HK$375,941,000, respectively (2016: HK$623,592,000 and HK$335,629,000, respectively), net of impairment loss for bad and doubtful debts.

*Estimated impairment of goodwill – theatre operation*

Determining whether goodwill in theatre operation segment is impaired requires an estimation of the recoverable amount of the cash-generating unit to which goodwill has been allocated. Significant judgment and assumptions are required by the management of the Group in assessing the recoverable amounts of cash generating units. The recoverable amounts are determined at the higher of value in use and fair value less costs of disposal of the relevant cash-generating units, which the value in use calculation required significant assumptions on discount rates, growth rates, estimated average occupancy rate of theatres, average number of shows of theatres and average ticket price during the period in order to derive the net present value of the discounted future cash flow analysis. Where there is a downward revision of discounted future cash flow, there will be a change of recoverable amount, and a material impairment loss may arise.

Confidential                                                                                    Qin_00001025

4. **CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY (Continued)**
   **Key sources of estimation uncertainty (Continued)**
   *Estimated impairment of goodwill (Continued)*
   The carrying amount of goodwill at the end of the reporting period was HK$6,941,731,000 (2016: HK$5,383,164,000). Details of the impairment loss assessment are set out in note 17.

   *Property, plant and equipment and depreciation*
   The Directors determines the estimated useful lives, residual values and related depreciation charges for the Group's property, plant and equipment. This estimate is based on the historical experience of the actual useful lives and residual values of property, plant and equipment of similar nature and functions. The Group will revise the depreciation charge where useful lives and residual values are different from those previously estimated, or it will write-off or write-down technically obsolete assets. The carrying amount of property, plant and equipment as at 31 December 2017 was approximately HK$4,104,792,000 (2016: HK$3,638,211,000).

   *Estimated useful lives of purchased license rights*
   The Directors estimate the useful lives of purchased license rights in order to determine the amount of amortisation expenses to be recognised in accordance with the accounting policy set out in note 3. The useful lives are estimated at the time the purchased license right is acquired based on historical experience, the expected usage, as well as market obsolescence arising from changes in market demands. The Directors also perform annual reviews on whether the assumptions made on useful lives continue to be valid. Such reviews take into account market changes, prospective utilisation, market popularity and public acceptance of the assets concerned. Adjustments may need to be made to the carrying amounts of intangible assets should there be a material difference between the expected revenue and the actual results.

   *Provision of scripts, synopses, publication rights, publishing rights and editing rights*
   The Directors carry out a review on the scripts, synopses, publication rights and editing rights at each of the reporting period and provision is made when net realisable values of the scripts, synopses, publication rights and editing rights are estimated to be less than their carrying amounts. The Group engaged an independent qualified professional valuer to carry out the estimation of selling prices of the scripts, synopses, publication rights and editing rights with details set out in note 26. Where the net realisable value is different from the original estimate, additional allowance for inventories may be required. As at 31 December 2017, the carrying amount of scripts, synopses, publication rights, publishing rights and editing rights was HK$185,926,000 (2016: HK$226,849,000) (net of provision of HK$9,819,000 (2016: HK$723,000)).

4.  **CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY (Continued)**
    **Key sources of estimation uncertainty (Continued)**
    *Impairment assessment of purchased license rights*
    The Directors carry out a review on purchased license rights at the end of each reporting period and impairment is made when events or changes in circumstances indicate that the carrying amounts may not be recoverable. Determination whether and how much purchased license rights are impaired involves management estimate of the recoverable amount, which is the lower of carrying amount and the recoverable amount. The Group engaged an independent qualified professional valuer to carry out the valuation. The recoverable amount calculation has been arrived on the market value basis with other key estimation included risk-free rate and market equity risk premium. As at 31 December 2017, the carrying value of purchased license rights was HK$61,148,000 (net of the accumulated impairment losses of HK$12,644,000) (2016: HK$82,372,000 (net of the accumulated impairment losses of HK$3,326,000)).

5.  **REVENUE**
    An analysis of the Group's revenue for the year is as follows:

    |  | 2017<br>HK$'000 | 2016<br>HK$'000 |
    |---|---|---|
    | Theatre operation | 3,027,371 | 2,951,319 |
    | Retail business | 624,027 | 383,123 |
    | Others | 137,366 | 16,744 |
    | | 3,788,764 | 3,351,186 |

    Revenue derived from theatre operation consists of income from box office ticketing, income from advertising, events & field marketing services and other related services, and income from sales of food & beverages and film products.

Confidential                                    Qin_00001027

6. **SEGMENT INFORMATION**

The Group's operating and reportable segments are analysed as follows:

| (a) | Theatre operation | – | box office ticketing, advertising, events & field marketing services and other related services and sales of food & beverages and film products. |
| --- | --- | --- | --- |
| (b) | Retail business | – | in-theatre counter sales and online shopping under 'SMI Living' brand and related business. |
| (c) | Others | – | sales of editing rights, licensing income from purchased license rights from television program related business, investments in production and distribution of film rights and trading of marketable securities. |

These operating and reportable segments have been identified on the basis of internal management reports prepared in accordance with accounting policies that conform to IFRSs, that are regularly reviewed by the chief operating decision makers (the "CODM"), who are the members of executive directors of the Company for the purposes of resource allocation and performance assessment. The CODM regularly reviews revenue analysis by theatre operation and retail business.

Segment results represents the profit earned or loss incurred by each segment without allocation of corporate-level income and expenses including certain finance costs, certain other gains and income and certain other losses and expense. Segment assets do not include assets of headquarters, other loan and other receivables of the headquarters. Segment liabilities do not include certain amounts due to related parties, other payables of headquarters, certain other borrowings, bonds and convertible notes.

The following is an analysis of the Group's revenue and results by reportable and operating segments.

**For the year ended 31 December 2017**

| | Theatre operation HK$'000 | Retail business HK$'000 | Others HK$'000 | Total HK$'000 |
| --- | --- | --- | --- | --- |
| **REVENUE** | | | | |
| External and segment revenue | 3,027,371 | 624,027 | 137,366 | 3,788,764 |
| Segment results | 103,649 | 27,027 | (89,978) | 40,698 |
| Unallocated corporate income | | | | 2,478 |
| Unallocated corporate expense | | | | (296,451) |
| Loss before tax | | | | (253,275) |

**Confidential**                                                                 **Qin_00001028**



## 6. SEGMENT INFORMATION (Continued)

For the year ended 31 December 2016

| | Theatre operation HK$'000 | Retail business HK$'000 | Others HK$'000 | Total HK$'000 |
|---|---|---|---|---|
| **REVENUE** | | | | |
| External and segment revenue | 2,951,319 | 383,123 | 16,744 | 3,351,186 |
| Segment results | 739,265 | 23,884 | (53,818) | 709,331 |
| Unallocated corporate income | | | | 6,575 |
| Unallocated corporate expense | | | | (222,809) |
| Profit before tax | | | | 493,097 |

Notes:

(a) Revenue reported above represents revenue generated from external customers. There are no inter-segment sales for the year ended 31 December 2017 and 2016.

(b) Segment results of "Theatre operation" for the year ended 31 December 2017 and 2016 include share of results of associates in related theatre operation. Segment results of "Other" for the year ended 31 December 2016 includes share of result of an associate in television program related business and film investment and distribution, the associate became the Group's subsidiary in October 2016.

### Segment assets and liabilities

The following is an analysis of the Group's assets and liabilities by reportable and operating segments:

#### Segment assets

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Theatre operation | 12,200,855 | 9,984,349 |
| Retail business | 696,243 | 589,375 |
| Others | 1,830,683 | 2,065,975 |
| Total segment assets | 14,727,781 | 12,639,699 |
| Unallocated corporate assets | 337,267 | 282,939 |
| Consolidated assets | 15,065,048 | 12,922,638 |

0052

**Confidential**

Qin_00001029

Notes to the Consolidated Financial Statements

*For the year ended 31 December 2017*

6. **SEGMENT INFORMATION (Continued)**
**Segment assets and liabilities (Continued)**
*Segment liabilities*

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Theatre operation | 3,161,164 | 3,793,985 |
| Retail business | 184,161 | 22,599 |
| Others | 1,225,756 | 1,144,122 |
| Total segment liabilities | 4,571,081 | 4,960,706 |
| Amounts due to related parties – corporate | 4,847 | 20,967 |
| Convertible notes – corporate | 809,000 | 847,999 |
| Bonds – corporate | 1,410,435 | 1,420,066 |
| Other borrowings – corporate | – | 100,000 |
| Corporate liabilities | 95,647 | 54,047 |
| Consolidated liabilities | 6,891,010 | 7,403,785 |

**Other segment information**
*For the year ended 31 December 2017*

|  | Theatre operation HK$'000 | Retail business HK$'000 | Others HK$'000 | Total HK$'000 |
|---|---|---|---|---|
| Amounts included in the measure of segment profit or loss or segment assets: |  |  |  |  |
| Additions to non-current assets (Note) | 1,816,222 | 217,722 | 133,320 | 2,167,264 |
| Depreciation and amortisation | 675,982 | 11,841 | 9,054 | 696,877 |
| Interests in associates | 17,835 | – | – | 17,835 |
| Share of profits of associates | 545 | – | – | 545 |
| Finance costs | 253,866 | – | 345,384 | 599,250 |
| Other gains and income | 79,412 | 632 | 103,970 | 184,014 |

*For the year ended 31 December 2016*

|  | Theatre operation HK$'000 | Retail business HK$'000 | Others HK$'000 | Total HK$'000 |
|---|---|---|---|---|
| Amounts included in the measure of segment profit or loss or segment assets: |  |  |  |  |
| Additions to non-current assets (Note) | 2,882,228 | 382,063 | 55,496 | 3,319,787 |
| Depreciation and amortisation | 427,839 | 5,217 | 2,507 | 435,563 |
| Interests in associates | 17,202 | – | 47,522 | 64,724 |
| Share of (losses) profits of associates | (486) | – | 11,732 | 11,246 |
| Finance costs | 174,840 | 3,534 | 244,542 | 422,916 |
| Other gains and income | 103,094 | 4,146 | 56,341 | 163,581 |

Note: Non-current assets excluded deposits paid for acquisition of entities.





6. **SEGMENT INFORMATION (Continued)**

   **Other segment information (Continued)**

   The Group operates in Hong Kong and the PRC with revenue and profit derived from its operations in these geographical location.

   Substantially most of the Group's revenue from external customers by geographical locations of the customers and over 90% its non-current assets by geographical location of assets are located in the PRC.

   There are no major customers contributing over 10% of the Group's revenue for the year ended 31 December 2017 and 2016.

7. **OTHER GAINS AND INCOME**

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Interest income from banks | 1,832 | 2,456 |
| Interest income from other financial assets | 13,200 | 15,194 |
| Interest income from financial assets designed as at fair value through profit or loss | 2,200 | – |
| Interest income from associates | – | 2,038 |
| Government grants (Note (a)) | 53,336 | 72,271 |
| Gain on disposal of subsidiaries (Note 44) | – | 1,409 |
| Gain on deemed disposal of interest in an associate (Note (b)) | – | 27,810 |
| Gain on disposal of interest in an associate | 2,478 | – |
| Dividend income from held-for-trading securities | 348 | 3,249 |
| Realised gain on disposal of held-for-trading investment | – | 25,988 |
| Unrealised gain on change in fair value of held-for-trading investments | 11,706 | – |
| Fair value change on financial assets designated as at fair value through profit or loss | 57,941 | – |
| Fair value charge on derivative financial instruments | 28,989 | – |
| Sundry income | 11,984 | 13,166 |
|  | **184,014** | **163,581** |

Notes:

(a) Government grants mainly represented the refund of the contributions to the National Film Development Trust (國家電影事業發展專項資金). The government grants were recognised as other income when conditions of these government grants were fulfilled. There were no unfulfilled conditions or contingencies relating to these grants as at 31 December 2017 and 2016. During the year ended 31 December 2017, HK$53,336,000 (2016: HK$72,271,000) was received from these grants.

(b) As disclosed in note 43(b)(ii), the Group acquired the controlling equity interests of SMI Culture & Travel Group, a former associate of the Group, from the open stock market in October 2016. Immediately after the acquisition, the carrying amount of equity interest in SMI Culture & Travel Group as associate of HK$164,188,000 at that date was treated as deemed disposal. A gain on deemed disposal of interest in SMI Culture & Travel Group as associate of HK$27,810,000 was recognised in profit or loss during the year ended 31 December 2016.

### 8. OTHER LOSSES AND EXPENSES

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Allowance for doubtful debts | 370 | 37 |
| Net exchange losses | 5,287 | 7,875 |
| Loss on disposal/write off of property, plant and equipment | 664 | 34,221 |
| Realised loss on disposal of held-for-trading investments | 7,704 | – |
| Unrealised loss on change in fair value of held-for-trading investments | – | 17,373 |
| Impairment on intangible assets | 9,318 | 3,326 |
| Impairment on film rights investment | 6,490 | – |
| Impairment on goodwill (note 17) | 347,179 | 46,556 |
| Impairment on other receivables | 52,472 | |
| Fair value change on derivative financial instruments | – | 9,718 |
| Forfeited deposits | – | 2,947 |
| Sundry expenses | 77 | 107 |
| | 429,561 | 122,160 |

### 9. FINANCE COSTS

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Interest on borrowings: | | |
| – bonds | 176,397 | 67,996 |
| – convertible notes | 105,434 | 103,072 |
| – bank borrowings | 3,243 | 5,213 |
| – other borrowings | 259,025 | 195,546 |
| – securities margin facilities | 32,755 | 28,389 |
| Finance charges | 6,729 | 7,590 |
| Finance lease charges | 15,667 | 15,110 |
| Total borrowing costs | 599,250 | 422,916 |

### 10. INCOME TAX EXPENSE

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Tax charge (credit) comprises: | | |
| Current tax | | |
| – PRC Enterprise Income Tax ("EIT") | 15,909 | 94,418 |
| – Overprovision in prior years | | (5,354) |
| | 15,909 | 89,064 |
| Deferred tax (note 39) | | |
| – Current year | (2,664) | (3,071) |
| | 13,245 | 85,993 |

**Confidential**                                                    **Qin_00001032**

10. **INCOME TAX EXPENSE (Continued)**

As stipulated in Cai Shui [2011] No. 112 and Xin Cai Fa Shui [2012] No. 1, enterprises newly established in Xin Jiang Ka Shi/Huoerguosi special economic areas during the period from 2011 to 2020 could enjoy EIT exemption for five years starting from their first profit-making year. These subsidiaries engaged in the encouraged industries as defined under the《新疆困難地區重點鼓勵發展產業企業所得稅優惠目錄》which are entitled to such EIT exemption derived more than 25% of the Group's revenue during the years ended 31 December 2017. According to《企業所得稅優惠事項備案表》, the Group obtained the approval from the PRC tax bureau on 14 July 2015 for entitlement of EIT exemption from 1 June 2015 to 31 December 2019.

For the other PRC subsidiaries of the Company, the provision for EIT is based on a statutory rate of 25% (2016: 25%) of the estimated assessable profits of the group entities as determined in accordance with the relevant income tax rules and regulations of the PRC.

No provision for taxation in Hong Kong is made as the Group's operation in Hong Kong has no assessable taxable profits arising from Hong Kong.

The income tax expense for the year can be reconciled to the (loss) profit before taxation in the consolidated statement of profit or loss and other comprehensive income as follows:

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| (Loss) profit before taxation | (253,275) | 493,097 |
| | | |
| Tax at the applicable income tax rate of 25% (2016: 25%) | (63,319) | 123,274 |
| Effect of share of results of associates | (136) | (2,811) |
| Tax effect of expenses not deductible for tax purpose | 122,011 | 85,159 |
| Tax effect of income not taxable for tax purpose | (18,703) | (19,483) |
| Tax effect of tax exemption granted to a subsidiary | (225,210) | (255,508) |
| Tax effect of tax losses not recognised | 182,602 | 189,890 |
| Utilisation of tax losses previously not recognised | (5,425) | (2,051) |
| Overprovision in prior years | – | (5,354) |
| Effect of different tax rates of subsidiaries operating in other jurisdictions | 20,464 | (27,325) |
| Others | 961 | 202 |
| Tax charge for the year | 13,245 | 85,993 |

Confidential

Qin_00001033





11. **(LOSS) PROFIT FOR THE YEAR**

The Group's (loss) profit for the year is stated after charging the following:

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Amortisation of prepaid lease payments (included in cost of sales) | 3,122 | 3,074 |
| Amortisation of intangible assets (included in cost of sales) | 10,656 | 10,714 |
| Amortisation of purchased license rights (included in cost of sales) | 11,906 | 2,319 |
| Auditor's remuneration | 12,500 | 10,475 |
| Film exhibition and related costs (included in cost of sales) | 825,646 | 712,914 |
| Cost of inventories sold (included in cost of sales) | 623,887 | 296,528 |
| Cost of film rights investment expensed (included in cost of sales) | 37,049 | – |
| Allowance for inventories (included in cost of sales) | 9,819 | 723 |
| Directors' emoluments (note 12) | 14,215 | 3,089 |
| Depreciation of property, plant and equipment | 671,193 | 419,456 |
| Promotion and advertising expenses | 37,950 | 42,963 |
| Operating lease payments of premises | | |
| – minimum lease payments | 400,056 | 300,724 |
| – contingent rent | 31,240 | 34,215 |
| | **431,296** | 334,939 |
| Other staff costs excluding directors' emoluments | | |
| – salaries, bonus and allowances | 273,596 | 315,376 |
| – equity-settled share-based payments | 7,684 | – |
| – retirement benefit scheme contributions | 55,661 | 60,143 |
| | **336,941** | 375,519 |

**Confidential**                                                    **Qin_00001034**



## 12. DIRECTORS', CHIEF EXECUTIVE'S EMOLUMENTS AND FIVE HIGHEST PAID EMPLOYEES

The emoluments of each director and chief executive were as follows:

| Name of director | Director fees HK$'000 | Salaries and allowances HK$'000 | Equity-settled share-based payments HK$'000 | Retirement benefit scheme contributions HK$'000 | Total HK$'000 |
|---|---|---|---|---|---|
| *Executive directors* | | | | | |
| Mr. WAI Yee Tai (Note (a)) | – | 1,000 | 862 | – | 1,862 |
| Mr. YANG Rongbing | 240 | 2,565 | 1,005 | – | 3,810 |
| Mr. KOH Kok Sim (Note (b)) | – | 968 | 646 | – | 1,614 |
| Mr. CHENG Chi Chung | 240 | 2,420 | 862 | – | 3,522 |
| Mr. KONG Dalu (Note (d)) | 260 | 1,315 | 1,005 | – | 2,580 |
| *Non-executive directors* | | | | | |
| Mr. HUNG Ka Hai Clement (Note (e)) | 345 | – | – | – | 345 |
| Dr. YAP Allan (Note (f)) | – | – | – | – | – |
| *Independent non-executive directors* | | | | | |
| Mr. PANG Hong | 168 | – | – | – | 168 |
| Mr. LI Fusheng | 168 | – | – | – | 168 |
| Mr. WONG Shui Yeung (Note (c)) | 129 | – | – | – | 129 |
| Mr. LI Wing Yin (Note (g)) | 17 | – | – | – | 17 |
| **For the year ended 31 December 2017** | **1,567** | **8,268** | **4,380** | **–** | **14,215** |
| *Executive directors* | | | | | |
| Mr. CHENG Chi Chung | 120 | 818 | – | – | 938 |
| Mr. YANG Rongbing | 240 | 1,260 | – | – | 1,500 |
| Mr. ZHOU Lin (Note (i)) | 165 | – | – | – | 165 |
| *Non-executive directors* | | | | | |
| Mr. ZHANG Yongdong (Note (i)) | 56 | – | – | – | 56 |
| Mr. LI Xuan (Note (h)) | 33 | – | – | – | 33 |
| Dr. YAP Allan (Note (f)) | – | – | – | – | – |
| *Independent non-executive directors* | | | | | |
| Mr. KAM Chi Sing (Note (i)) | 56 | – | – | – | 56 |
| Mr. PANG Hong | 132 | – | – | – | 132 |
| Mr. LI Fusheng | 132 | – | – | – | 132 |
| Mr. LI Wing Yin (Note (g)) | 77 | – | – | – | 77 |
| **For the year ended 31 December 2016** | **1,011** | **2,078** | **–** | **–** | **3,089** |

Notes:

(a) appointed on 5 September 2017

(b) appointed on 1 September 2017 and resigned on 9 March 2018

(c) appointed on 13 April 2017

(d) appointed on 6 April 2017



**Confidential**

**Qin_00001035**

## 12. DIRECTORS', CHIEF EXECUTIVE'S EMOLUMENTS AND FIVE HIGHEST PAID EMPLOYEES (Continued)

Notes: (Continued)

(e) appointed on 16 January 2017 as an independent non-executive director and re-designed as a non-executive director on 15 March 2017

(f) appointed on 26 April 2016 and resigned on 28 November 2017

(g) appointed on 2 June 2016 and resigned on 16 January 2017

(h) resigned on 26 April 2016

(i) retired/resigned on 2 June 2016

The executive directors' emoluments shown above were for their services in connection with the management of the affairs of the Company and the Group.

The non-executive directors' emoluments shown above were for their services as directors of the Company.

The independent non-executive directors' emoluments shown above were for their services as directors of the Company.

During both reporting periods, there was no arrangement under which a director waived or agreed to waive any emoluments.

The five highest paid individuals in the Group during the year included five (2016: two) Directors whose emoluments are reflected in the analysis presented above. The emoluments of the remaining three individuals for the year ended 31 December 2016 are set out below:

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Salaries and allowances | – | 4,082 |
| Retirement benefit scheme contributions | – | 53 |
|  | – | 4,135 |

The number of the highest paid employees who are not the directors of the Company whose remuneration fell within the following bands:

|  | Number of individuals | |
|---|---|---|
|  | 2017 | 2016 |
| HK$1,000,001 to HK$1,500,000 | – | 2 |
| HK$1,500,001 to HK$2,000,000 | – | 1 |

During both years ended 31 December 2017 and 2016, no emoluments were paid by the Group to any of the Directors or the highest paid individuals of the Group as an inducement to join or upon joining the Group or as compensation for loss of office.

**Confidential**    **Qin_00001036**



**13. RETIREMENT BENEFIT SCHEMES**

The Company's subsidiaries in the PRC, in compliance with the applicable regulations of the PRC, participated in retirement benefit schemes operated by the relevant local government authorities. The Group is required to make contributions on behalf of employees who are registered permanent residents in the PRC.

The Group's Hong Kong office implemented a Mandatory Provident Fund Scheme (the "MPF Scheme") in compliance with the applicable regulations in Hong Kong for its staff. Contributions are made based on a percentage of the employees' basic salaries and are recognised in profit or loss as they become payable in accordance with the rules of the MPF Scheme. The assets of the MPF Scheme are held separately from those of the Group in an independently administered fund. The Group's employer contributions vest fully with the employees when contributed into the MPF Scheme.

**14. DIVIDENDS**

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Final dividend recognised as distribution during the year | | |
| – HK$1.32 cents per ordinary share for the year ended 31 December 2016 (2016: HK$1.09 cents per ordinary share for the year ended 31 December 2015) | 179,668 | 147,231 |

The Board of Directors does not recommend the payment of a final dividend for the year ended 31 December 2017.

**15. (LOSS) EARNINGS PER SHARE**

The calculation of the basic and diluted (loss) earnings per share attributable to owners of the Company is based on the following data:

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| (Loss) earnings for the purposes of calculating basic and diluted (loss) earnings per share | (153,734) | 403,724 |

**Number of shares**

| | 2017 | 2016 (restated) |
|---|---|---|
| Weighted average number of ordinary shares for the purpose of basic (loss) earnings per share | 2,720,826,026 | 2,707,230,941 |
| Effect of dilutive potential ordinary shares: | | |
| Share options | – | 9,014,166 |
| Weighted average number of ordinary shares for the purpose of diluted (loss) earnings per share | 2,720,826,026 | 2,716,245,107 |

The weighted average number of ordinary shares for the purpose of basic and diluted earnings per share for both current and prior years has been adjusted for the shares consolidation as set out in note 40(ii).

For the years ended 31 December 2017, the effects of potential ordinary shares arising from all share options and convertible notes (2016: all convertible notes) are not included in calculating the diluted (loss) earnings per share as they had an anti-dilutive effect on the (loss) earnings per share for the year.



Confidential

Qin_00001037

## 16. PROPERTY, PLANT AND EQUIPMENT

| | Leasehold land and buildings HK$'000 | Leasehold improvements HK$'000 | Theatre equipment HK$'000 | Office equipment HK$'000 | Motor vehicles HK$'000 | Total HK$'000 |
|---|---|---|---|---|---|---|
| **COST** | | | | | | |
| At 1 January 2016 | 61,406 | 1,978,017 | 820,524 | 21,856 | 7,145 | 2,888,948 |
| Acquisition of subsidiaries (note 43) | 803 | 198,277 | 103,494 | 5,583 | 2,510 | 310,667 |
| Additions | 1,117,143 | 529,091 | 107,942 | 5,094 | 3,534 | 1,762,804 |
| Disposals/write-off | – | (34,801) | (2,226) | – | – | (37,027) |
| Exchange differences | (53,389) | (185,806) | (79,941) | (2,036) | (750) | (321,922) |
| At 31 December 2016 | 1,125,963 | 2,484,778 | 949,793 | 30,497 | 12,439 | 4,603,470 |
| Acquisition of subsidiaries (note 43) | – | 84,297 | 111,288 | 4,818 | – | 200,403 |
| Additions | – | 524,679 | 149,126 | 10,130 | 6,191 | 690,126 |
| Disposals/write-off | – | (37,376) | (229) | (102) | (624) | (38,331) |
| Exchange differences | 86,982 | 217,213 | 79,477 | 2,452 | 851 | 386,975 |
| At 31 December 2017 | 1,212,945 | 3,273,591 | 1,289,455 | 47,795 | 18,857 | 5,842,643 |
| **ACCUMULATED DEPRECIATION AND IMPAIRMENT** | | | | | | |
| At 1 January 2016 | 4,690 | 382,281 | 221,003 | 9,900 | 5,100 | 622,974 |
| Charge for the year | 2,221 | 264,312 | 145,171 | 7,550 | 202 | 419,456 |
| Disposals/write-off | – | (179) | (340) | – | – | (519) |
| Exchange differences | (480) | (43,253) | (31,331) | (1,157) | (431) | (76,652) |
| At 31 December 2016 | 6,431 | 603,161 | 334,503 | 16,293 | 4,871 | 965,259 |
| Charge for the year | 30,655 | 309,848 | 320,271 | 7,135 | 3,284 | 671,193 |
| Disposals/write-off | – | (37,376) | (103) | (26) | (162) | (37,667) |
| Exchange differences | 1,563 | 97,033 | 38,818 | 1,216 | 436 | 139,066 |
| At 31 December 2017 | 38,649 | 972,666 | 693,489 | 24,618 | 8,429 | 1,737,851 |
| **CARRYING AMOUNTS** | | | | | | |
| At 31 December 2017 | 1,174,296 | 2,300,925 | 595,966 | 23,177 | 10,428 | 4,104,792 |
| At 31 December 2016 | 1,119,532 | 1,881,617 | 615,290 | 14,204 | 7,568 | 3,638,211 |

The above items of property, plant and equipment are depreciated on a straight-line basis at the following rates per annum:

| | |
|---|---|
| Leasehold land and buildings | 5% or shorter of the lease term |
| Leasehold improvements | over the shorter of 3 to 20 years or the relevant lease term |
| Theatre equipment | 10% to 33.33% |
| Office equipment | 10% to 33.33% |
| Motor vehicles | 20% |

At 31 December 2017, the Group is in the process of obtaining the relevant property ownership certificates with respect to the leasehold land and buildings with carrying values of HK$340,341,000 (2016: HK$961,956,000). The Directors are in the opinion that the Group is entitled the relevant property ownership lawfully and validly occupy, or use the relevant properties.

The carrying amount of property, plant and equipment includes an amount of HK$222,414,000 (2016: HK$188,614,000) in respect of assets held under finance lease obligations.

As at 31 December 2017, HK$205,057,000 (2016: HK$24,456,000) of the leasehold land and buildings situated in the PRC was pledged as security for the Group's bank borrowings.

**Confidential**

**Qin_00001038**

## 17. GOODWILL

|  | HK$'000 |
|---|---|
| **COST** | |
| At 1 January 2016 | 3,375,078 |
| Acquisition of subsidiaries – 79 individually immaterial group entities (note 43(b)(i)) | 2,286,012 |
| Acquisition of a subsidiary – SMI Culture & Travel Group (note 43(b)(ii)) | 120,559 |
| Disposal of subsidiary (note 44) | (36,804) |
| Exchange realignment | (156,252) |
| At 31 December 2016 | 5,588,593 |
| Acquisition of subsidiaries – 51 individually immaterial group entities (note 43(a)) | 1,600,847 |
| Exchange realignment | 317,886 |
| At 31 December 2017 | 7,507,326 |
| **IMPAIRMENT** | |
| At 1 January 2016 | 5,912 |
| Impairment recognised in profit of loss | 46,556 |
| At 31 December 2016 | 52,468 |
| Impairment recognised in profit of loss | 347,179 |
| Exchange realignment | 12,987 |
| At 31 December 2017 | 412,634 |
| **CARRYING AMOUNTS** | |
| At 31 December 2017 | 7,094,692 |
| At 31 December 2016 | 5,536,125 |

For the purposes of impairment testing, goodwill has been allocated to 48 (2016: 34) groups of cash-generating units (CGUs), grouped by physical location and timing of their acquisition by the Group, operating in the theatre operation and other segments. The carrying amounts of goodwill (net of accumulated impairment losses) allocated to these groups of CGUs are as follows:

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Theatre operation segment: | | |
| Beijing Stellar Group | 15,431 | 15,431 |
| Stellar China Line Group | 1,344,794 | 1,406,275 |
| 62 individually immaterial group entities (2015) (comprising 12 groups of CGUs) | 1,629,100 | 1,675,446 |
| 79 individually immaterial group entities (2016) (comprising 18 groups of CGUs) | 2,351,559 | 2,286,012 |
| 51 individually immaterial group entities (2017) (comprising 14 groups of CGUs) | 1,600,847 | – |
|  | 6,941,731 | 5,383,164 |
| Retail business segment: | | |
| TicketChina Group | 32,402 | 32,402 |
| Others segment: | | |
| SMI Culture & Travel Group (2016) | 120,559 | 120,559 |
|  | 7,094,692 | 5,536,125 |

0057



Confidential      Qin_00001039

## 17. GOODWILL (Continued)

### Theatre operation segment and retail business segment

During the year ended 31 December 2017, impairment losses of (i) HK$174,272,000 (2016: HK$46,556,000) of 5 (2016: 2) out of 12 groups of CGUs of 62 individually immaterial group entities' goodwill; (ii) HK$113,643,000 (2016: nil) of 3 (2016: nil) out of 18 groups of CGUs of 79 individually immaterial group entities' goodwill; and (iii) HK$59,264,000 (2016: nil) of the CGU of Stellar China Line Group's goodwill, have been recognised.

The recoverable amounts of the impaired 5 (2016: 2) out of 12 groups of CGUs of 62 individually immaterial group entities, 3 (2016: nil) out of 18 groups of CGUs of 79 individually immaterial group entities and the CGU of Stellar China Line Group were HK$774,287,000 (2016: HK$326,023,000), HK$573,483,000 (2016: nil) and HK$1,762,589,000 (2016: nil) respectively.

The recoverable amounts of the CGU of Beijing Stellar Group, the CGU of Stellar China Line Group, the 12 groups of CGUs of 62 individually immaterial group entities, and the 18 groups of CGUs of 79 individually immaterial group entities are determined based on value in use calculations. The key assumptions for the value in use calculations are those regarding the discount rates, growth rates, estimated average occupancy rate of theatres, average number of shows of theatres and average ticket price during the period of respective CGUs. The Group estimates discount rates using pre-tax rates that reflect current market assessments of the time value of money and the risks specific to the CGUs. The growth rates are based on long-term average economic growth rate of the geographical area in which the businesses of the CGUs operate. The estimated average occupancy rate of theatres, average number of shows of theatres and average ticket price of respective CGUs are based on the Group and industry historical data and expectations on market development of the PRC movie market in the foreseeable future.

The Group prepares cash flow forecasts derived from the most recent financial budgets approved by the management and board of directors for the next five years with the remaining period's cash flows forecasted using a growth rate of 3% (2016: 3%). The rates used to discount the cash flows forecast from the subsidiaries of Beijing Stellar Group, Stellar China Line Group and 62 and 79 individually immaterial group entities are 14.09% (2016: ranging from 13.40% to 13.85%). At 31 December 2016, the rate used to discount the cash flows forecast from TicketChina Group was 19.05%.

In addition to impairment testing using the base case assumptions, separate sensitivity analyses were performed by either (i) increasing the discount rate of 1% from the base case; or (ii) decreasing the occupancy rate of 1% from the base case.

The sensitive tests using a lower occupancy rate by deduct 1% indicate that the impairment loss of (i) 5 out of 12 groups of CGUs of 62 individually immaterial group entities; (ii) 5 out of 18 groups of CGUs of 79 individually immaterial group entities; and (iii) Stellar China Line Group would have been increased by HK$12,269,000, HK$11,649,000 and HK$17,419,000 respectively.

The sensitive tests using a higher discount rate of plus 1% indicate that the impairment loss of (i) 6 out of 12 groups of CGUs of 62 individually immaterial group entities; (ii) 8 out of 18 groups of CGUs of 79 individually immaterial group entities; and (iii) Stellar China Line Group would have been increased by HK$96,963,000, HK$94,777,000 and HK$116,254,000 respectively.

**Confidential**

Qin_00001040



17. **GOODWILL (Continued)**
    **Theatre operation segment and retail business segment (Continued)**

The recoverable amount of 14 groups of CGUs of 51 individually immaterial group entities as at 31 December 2017 are the higher of their fair value less costs of disposal and their value in use. The Directors assessed that the recoverable amount of 14 groups of CGUs of 51 individually immaterial group entities are determined based on fair value less costs of disposal, which is higher than their value in use and are determined based on the recent transactions under market approach as at 31 December 2017. In the opinion of the Directors, the carrying amounts of goodwill of 14 groups of CGUs of 51 individually immaterial group entities do not exceed the recoverable amounts of 14 groups of CGUs of 51 individually immaterial group entities.

The recoverable amount of the CGU of TicketChina Group as at 31 December 2017 is the higher of its fair value less costs of disposal and its value in use. The Directors assessed that the recoverable amount of the CGU of TicketChina Group is determined based on fair value less costs of disposal, which is higher than its value in use and is determined based on the fair value per share of other benchmark quoted entities measured using quoted price in the active market as at 31 December 2017. In the opinion of the Directors, the carrying amount of the CGU of TicketChina Group does not exceed the recoverable amount of TicketChina Group.

For the remaining CGUs, the management believes that any reasonably possible change in any of these assumptions would not cause the individual carrying amount of those CGUs to exceed their individual recoverable amount.

**Other Segment**

As at 31 December 2017, the Directors assessed that the recoverable amount of CGU of SMI Culture & Travel Group's goodwill is determined based on fair value less cost of disposal, which is higher than its value in use and is determined based on the fair value per share of SMI Culture & Travel Group measured using quoted price in an active market as at 31 December 2017. In the opinion of the Directors, the carrying amount of SMI Culture & Travel Group does not exceed the recoverable amount of SMI Culture & Travel Group.

As at 31 December 2016, the key assumptions for the value in use calculations were those regarding the discount rates, growth rates, estimated revenue growth during the period. The Group estimated discount rates using pre-tax rates that reflect current market assessments of the time value of money and the risks specific to the CGU. The growth rates were based on long-term average economic growth rate of the geographical area in which the businesses of the CGU operate. The estimated revenue growth were based on the Group and industry historical data and expectations on market development of the licensed films and television drama series in the foreseeable future.

The Group prepared cash flow forecasts derived from the most recent financial budgets approved by the management and board of directors for the next five years with the remaining period's cash flows forecasted using a growth rate of 3%. The rates used to discount the cash flows forecast is 18.02%.



**Confidential**                                    **Qin_00001041**

18.  INTANGIBLE ASSETS AND PURCHASED LICENSE RIGHTS

| | Cinema operating know-how HK$'000 | Purchased license rights HK$'000 |
|---|---|---|
| **COST** | | |
| At 1 January 2016 | 56,773 | – |
| Arising from acquisition of a subsidiary (note 43(b)(ii)) | – | 88,017 |
| Arising from disposal of a subsidiary (note 44(i)) | (915) | – |
| Exchange realignment | (4,213) | – |
| At 31 December 2016 | 51,645 | 88,017 |
| Exchange realignment | 3,624 | – |
| At 31 December 2017 | 55,269 | 88,017 |
| **AMORTISATION AND IMPAIRMENT** | | |
| At 1 January 2016 | – | – |
| Amortisation expense | 10,714 | 2,319 |
| Impairment recognised in profit or loss | – | 3,326 |
| At 31 December 2016 | 10,714 | 5,645 |
| Amortisation expense | 10,656 | 11,906 |
| Impairment recognised in profit or loss | – | 9,318 |
| Exchange realignment | 738 | – |
| At 31 December 2017 | 22,108 | 26,869 |
| **CARRYING AMOUNTS** | | |
| At 31 December 2017 | 33,161 | 61,148 |
| At 31 December 2016 | 40,931 | 82,372 |

**Confidential**                                              **Qin_00001042**



18. **INTANGIBLE ASSETS AND PURCHASED LICENSE RIGHTS (Continued)**

Cinema operating know-how were purchased as part of the acquisition of the 62 individually immaterial group entities operated in the theatre operation and was recognised at its fair value at the date of acquisition. Cinema operating know-how have finite useful lives and are amortised on a straight-line basis over 5 years.

Purchased license rights were purchased as part of the acquisition of SMI Culture & Travel Group and were recognised at its fair value at the date of acquisition. Purchased license rights represent purchased broadcasting rights over films, TV series, documentaries, etc. These rights have finite useful lives and are expected to generate economic benefits in the long term through leasing out arrangements, whereby the Group would license out these broadcasting rights to TV stations and other broadcasting and media channels for broadcasting in particular location for a finite period. Purchased license rights have useful lives of 9 years to 15 years.

The Directors have reviewed the recoverable amount of the purchased license rights with reference to their fair value less cost of disposal (2016: value in use) on 31 December 2017. The recoverable amount of the Group's purchased license rights at 31 December 2017 have been arrived at on the market value basis carried out by Grant Sherman Appraisal Limited (2016: value in use calculation with reference to the valuation carried out Ascent Partners Valuation Service Limited), an independent valuer who holds a recognised and relevant professional qualification and has recent experience in the valuation of similar assets.

As at 31 December 2017, the fair value of purchased license rights is a level 3 recurring fair value measurement. Other key estimation included risk-free rate of 3.9% and market equity risk premium of 10.42%. As at 31 December 2016, the value in use of purchased license rights is estimated based on the discounted cash flows analysis based on assumptions about future net cash flows from these rights at a discount rate of 20.08%. Other assumptions for the future cash flow estimation, included forecast income and gross margin from the purchased license rights, are determined with reference to the marketability of the assets as well as the general market condition for the media industry.

An impairment loss of HK$9,318,000 for purchase license right was recognised in profit or loss during the year ended 31 December 2017 (2016: HK$3,326,000) due to continuous unsatisfactory results from licensing of these assets. The recoverable amount of the purchased license rights was HK$229,300,000 (2016: HK$87,163,000).

19. **PREPAID LEASE PAYMENTS**

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| The Group's prepaid lease payments comprise: | | |
| Leases in the PRC | 41,831 | 42,854 |
| Analysed for reporting purposes as: | | |
| Current assets | 4,234 | 2,999 |
| Non-current assets | 37,597 | 39,855 |
| | 41,831 | 42,854 |

Confidential

Qin_00001043

20. INTERESTS IN ASSOCIATES

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Listed investment: | | |
| Cost of investment | | 301,860 |
| Share of post-acquisition results and accumulated impairment losses | – | (137,672) |
| Deemed disposal of an associate (Note) | – | (164,188) |
| | – | – |
| Unlisted investments: | | |
| Cost of investments | 14,731 | 64,731 |
| Share of post-acquisition results | 2,454 | 442 |
| Exchange realignment | 650 | (449) |
| | 17,835 | 64,724 |
| | 17,835 | 64,724 |

Note: As disclosed in note 43(b)(ii), the Group acquired the controlling equity interests of SMI Culture & Travel Group, a former associate of the Group, from the open stock market in October 2016. Immediately after the acquisition, the carrying amount of equity interest in the associate of HK$164,188,000 at that date was treated as deemed disposal of the associate and a gain on deemed disposal of interest in the associate of HK$27,810,000 was recognised in profit or loss during the year ended 31 December 2016.

On 25 May 2017, the Group disposed of its entire equity interests in Goldwe Securities (Group) Limited to an independent third party at a cash consideration of HK$50,000,000. Gain on disposal of HK$2,478,000 was recognised in profit or loss in the current year.

Details of the Group's associates as at 31 December 2017 and 31 December 2016 are as follows:

| Name | Place of incorporation/ establishment | Principal place of operation | Percentage of equity interest held by the Group/ profit sharing 2017 | 2016 | Principal activities |
|---|---|---|---|---|---|
| 廣州市華影星美影城有限公司 Guangzhou Huaying Stellar Cineplex Limited | PRC | PRC | 46.55% | 46.55% | Operation of cinema |
| 北京世紀東都國際影城 有限公司 | PRC | PRC | 40.85% | 40.85% | Operation of cinema |
| 國滙證券(集團)有限公司 Goldwe Securities (Group) Limited | Hong Kong | Hong Kong | – | 25% | Investment activities |

All of the associates are accounted for using equity method in the consolidated financial statements. The Directors consider there is no associate individually material to the Group.

**Confidential**

Qin_00001044



## 21. OTHER FINANCIAL ASSETS

At the end of the reporting period, the amount comprises of:

(a) RMB100,000,000 (equivalent to HK$121,180,000) 5-year non-tradable zero coupon subordinated Securities as stipulated in the FY 2015 ABS Arrangement (see note 36(a) for details) as a collateral for having the FY 2015 Trust Loans made available to the Group under the FY 2015 Trust Loans Arrangement. The subordinated Securities will mature in December 2019.

At initial recognition, HK$37,117,000 loss arising from fair value adjustment has been recognised based on the principal amount of RMB100,000,000 (equivalent to HK$121,800,000) at an effective interest rate of 8.3% per annum. The amount was recognised against the carrying amount of the FY 2015 Trust Loans on initial recognition.

(b) RMB100,000,000 (equivalent to HK$111,160,000) 5-year non-tradable zero coupon subordinated Securities as stipulated in the FY 2016 ABS Arrangement (see note 36(b) for details) as a collateral for having the FY 2016 Trust Loans made available to the Group under the FY 2016 Trust Loans Arrangement. The subordinated Securities will mature in December 2020.

At initial recognition, HK$23,000,000 loss arising from fair value adjustment has been recognised based on the principal amount of RMB100,000,000 (equivalent to HK$111,160,000) at an effective interest rate of 6% per annum. The amount was recognised as part of transaction costs against the carrying amount of the FY 2016 Trust Loans on initial recognition.

## 22. AVAILABLE-FOR-SALE INVESTMENTS

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| At cost: |  |  |
| – Unlisted private fund | 66,347 | 65,396 |

The above unlisted investments in private fund are measured at cost less impairment at the end of reporting period because the range of reasonable fair value estimates is so significant that the Directors are of the opinion that their fair values cannot be measured reliably. The private fund incorporated in Singapore invests in equity securities in oversea companies.

## 23. FINANCIAL ASSETS DESIGNATED AS AT FAIR VALUE THROUGH PROFIT OR LOSS

During the year ended 31 December 2017, the Group subscribed for a convertible note issued by a company listed on the GEM of The Stock Exchange of Hong Kong, with principal amount of HK$90,000,000 which carries interest at 7.5% per annum payable quarterly in arrears with maturity in 2019 at redemption amount of 100% of the principal amount (the "7.5% 2019 CNR"). The 7.5% 2019 CNR can be converted at any time from the date of issue to the maturity date at initial conversion price of HK$0.3 per share, subject to adjustments in accordance with the terms and conditions of the 7.5% 2019 CNR. In addition, the issuer has the option to early redeem the 7.5% 2019 CNR at any time from the date of issue to the maturity date at full or partial of the principal amount outstanding under the 7.5% 2019 CNR together with all accrued interest.

Confidential

Qin_00001045

23. **FINANCIAL ASSETS DESIGNATED AS AT FAIR VALUE THROUGH PROFIT OR LOSS (Continued)**

The Group designated the entire 7.5% 2019 CNR as at fair value through profit or loss upon initial recognition with any gains or losses arising on remeasurement recognised in profit or loss. As at initial recognition, the fair value of the 7.5% 2019 CNR was HK$90,000,000 based on the subscription price. The fair value of the 7.5% 2019 CNR at the end of the reporting period is determined based the valuation provided by professional qualified valuer not connected with the Group, and measured using the Binomial Option Pricing Model. The inputs into the model at the end of the reporting period are as follow:

|  | 31 December 2017 |
|---|---|
| Stock price | HK$0.49 |
| Conversion price | HK$0.30 |
| Risk-free rate | 1.31% |
| Expected volatility | 49.31% |
| Time to maturity | 1.68 years |
| Discount rate | 14.64% |

24. **PROGRESS PAYMENTS FOR CONSTRUCTION OF PROPERTY, PLANT AND EQUIPMENT AND OTHER DEPOSITS**

At the end of the reporting period, the amounts comprise of:

(i) The progress payments of HK$166,386,000 (2016: HK$50,022,000) paid to contractors. The Group has entered into agreements with these contractors for the interior renovation construction of leasehold improvements and theatre equipment in the theatres leased by the Group.

During the year ended 31 December 2017, HK$50,022,000 paid as at 31 December 2016 (2016: HK$328,684,000 paid as at 31 December 2015) was utilised as the additions of property, plant and equipment for the year.

(ii) At 31 December 2017, HK$2,217,000 (2016: HK$77,749,000) was paid for acquisition of other property, plant and equipment.

25. **DEPOSITS PAID FOR ACQUISITIONS OF ENTITIES**

The amounts represent the deposits paid to the agent, who has been entrusted by the Group to enter into sales and purchase agreements with certain vendors in the PRC for the proposed acquisitions of 11 (2016: 6) entities engaged in theatre operations in the PRC. At the end of the reporting period, the Group has entered into arrangement with the agent, who in turn has entered into various agreements with these vendors under which the vendors have conditionally agreed to sell to the agent (who in turn would then sell to the Group) the equity interests of those entities but the completion of the acquisitions are mainly subject to the completion of the due diligence and the approval from the relevant PRC government authorities.

At the end of the reporting period, the amounts are non-interest bearing and refundable from the vendors through the agent if the proposed transactions do not proceed.

During the year ended 31 December 2017, the entire amount of deposits paid of HK$154,289,000 as at 31 December 2016 was utilised for the acquisition of subsidiaries in the current year (see note 43(a) for details).

**Confidential**                                                           **Qin_00001046**

## 26. INVENTORIES

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Scripts, synopses, publication rights, publishing rights and editing rights | 185,926 | 226,849 |
| Food and beverages (excluding wine) | 37,699 | 41,512 |
| Wine | 58,776 | 76,151 |
| Electronic products | 6,748 | 4,526 |
| Others | 8,578 | 11,017 |
|  | 297,727 | 360,055 |

The scripts, synopses, publication rights, publishing rights and editing rights purchased by the Group are held by the Group for re-sale in the ordinary course of business.

The Directors have reviewed the net realisable value of scripts, synopses, publication rights, publishing rights and editing rights with reference to a valuation carried out on 31 December 2017 by an independent qualified professional valuer, Grant Sherman Appraisal Limited. The valuation was performed on an individual basis for each script, synopsis and editing/publishing rights, taking into account market information on estimated selling prices adjusted for factors such as authorship, length of the works, historical trends on marketability of the work.

## 27. FILM RIGHTS INVESTMENT

|  | HK$'000 |
|---|---|
| As at 1 January 2016 | – |
| Addition arose from acquisition of subsidiaries | 209,535 |
| Addition during the year | 188,108 |
| As at 31 December 2016 | 397,643 |
| Addition during the year | 456,513 |
| Recognised as expense included in cost of sales | (37,049) |
| Impairment | (6,490) |
| As at 31 December 2017 | 810,617 |

An impairment loss of HK$6,490,000 (2016: nil) was recognised for the year ended 31 December 2017 due to expected loss over the recoverable amount.

## 28. TRADE AND OTHER RECEIVABLES

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Trade receivables, net of allowance for doubtful debts | 760,407 | 623,592 |
| Rental and other deposits | 11,964 | 14,537 |
| Prepayments and other receivables, net of allowance for doubtful debts | 375,941 | 335,629 |
|  | 1,148,312 | 973,758 |

As at 31 December 2017, an amount of HK$116,784,000 (2016: HK$67,207,000) prepaid for the acquisition of potential film rights was included in other receivable. The amount will be transferred to the film rights investments once the investment agreement is finalised.

Confidential

Qin_00001047

28. **TRADE AND OTHER RECEIVABLES (Continued)**

Prepayments and remaining other receivables mainly consists of prepaid operating and administrative expenses and other cash advance to staff for business activities.

The Group's box office ticketing are mainly made in cash or through online ticket platform agents. The Group allows an average credit period of 90 days to its box office online ticket platform agents, advertising agents and wholesale customers.

The Group allows a credit period ranging from 90 to 180 days to its trade customers for contract sales of editing rights.

Trade receivables from the licensing income are usually received within 180 days from the date of signing of the contracts.

Trade receivables from film investment income are usually received within 90 days after receipt of box office certificate and profit-sharing confirmation.

The following is an aged analysis of trade receivables presented based on the invoice date, contract date or receipt of box office certificate and profit sharing confirmation, as appropriate, at the end of the report period.

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| 0 to 30 days | 299,793 | 222,392 |
| 31 to 90 days | 253,538 | 127,153 |
| 91 to 180 days | 73,723 | 263,420 |
| 181 days to 365 days | 125,234 | 4,289 |
| Over 1 year | 8,119 | 6,338 |
| | **760,407** | 623,592 |

At 31 December 2017, trade receivables of HK$207,076,000 (2016: HK$274,047,000) were past due but not impaired. These relate to a number of independent customers for whom there is no recent history of default. The aging analysis of these trade receivables is as follows:

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Overdue less than 90 days | 73,723 | 263,420 |
| Overdue 91 to 180 days | 125,234 | 4,289 |
| Overdue over 181 days | 8,119 | 6,338 |
| | **207,076** | 274,047 |

At the end of each reporting period, the Group's trade and other receivables are individually tested for impairment. The individually impaired receivables are recognised based on the credit history of the counterparties, such as financial difficulties or default in payments. Consequently, specific impairment loss was recognised.

Impairment loss on trade and other receivables are recorded using an allowance account unless the Group is satisfied that the recovery of the amount is remote, in which case the impairment loss is written off against trade and other receivable balance directly.

**28. TRADE AND OTHER RECEIVABLES (Continued)**

The movement in the allowance for doubtful debts of trade and other receivables is as follows:

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Balance at the beginning of the year | – | – |
| Allowance for doubtful debts | 52,842 | 37 |
| Write-off as uncollectable | (52,842) | (37) |
| Balance at the end of the year | – | – |

**29. HELD FOR TRADING INVESTMENTS**

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Listed equity securities in Hong Kong | 61,961 | 304,217 |

The fair value of the listed equity securities held for trading were determined based on the quoted market bid prices available on The Stock Exchange of Hong Kong.

**30. OTHER LOAN**

As at 31 December 2017, the amount comprises a revolving loan to an independent third party of HK$126,000,000 (2016: 150,000,000) which is unsecured and interest-bearing at 8% (2016: 8%) per annum with repayment on demand clause.

**31. PLEDGED BANK DEPOSITS/BANK BALANCES AND CASH**

As at 31 December 2017, the Group's pledged bank deposits of HK$149,262,000 (2016: HK$121,642,000) are denominated in RMB and pledged to secure FY 2016 Trust Loans as set out in note 36(b).

As at 31 December 2017, the bank balances and cash of the Group which are denominated in RMB amounted to HK$78,960,000 (2016: HK$142,743,000). Conversion of RMB into foreign currencies is subject to the PRC's Foreign Exchange Control Regulations and Administration of Settlement, Sale and Payment of Foreign Exchange Regulations.

The bank balances carry interest at 0.01% to 0.2% (2016: 0.01% to 0.2%) per annum.

**32. TRADE AND OTHER PAYABLES**

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Trade payables | 504,892 | 405,325 |
| Customers' deposits and receipts in advance (Note (a)) | 74,352 | 214,074 |
| Other tax payables | 232,202 | 178,065 |
| Amounts due to non-controlling interests of subsidiaries (Note (b)) | – | 590 |
| Margin payables due to financial institutions (Note (c)) | 389,130 | 66,258 |
| Accrued charges and sundry payables (Note (d)) | 267,182 | 182,982 |
| | 1,467,758 | 1,047,294 |

0062

Confidential

Qin_00001049

**32.   TRADE AND OTHER PAYABLES** (Continued)

Notes:

(a)   Customers' deposits and receipts in advance represent prepayments from advertising agents for advertising services, prepaid card deposits from cinema customers and prepayments from customers for goods.

(b)   As at 31 December 2016, the amounts of HK$590,000 (2017: nil) are of non-trade nature, unsecured, interest-bearing at 7% per annum and repayable on demand.

(c)   The margin payables due to financial institutions are secured by the Group's equity interest in SMI Culture & Travel Group and held-for-trading investments and repayable on demand. Interests are charged at a rate ranging from 11% to 12% per annum.

(d)   Accrued charges and sundry payables mainly consists of interest payables and accrued operating costs.

The credit period on purchases of goods and services is ranged from 30 to 60 days. Meanwhile, the average credit period on purchase of film rights investment is 90 days. The aging analysis of the Group's trade payables based on the invoice date at the end of the reporting period is as follows:

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| 0 to 30 days | 286,567 | 317,857 |
| 31 to 60 days | 137,027 | 56,840 |
| 61 days to 1 year | 60,094 | 10,366 |
| Over 1 year | 21,204 | 20,262 |
|  | 504,892 | 405,325 |

**33.   AMOUNTS DUE FROM (TO) RELATED PARTIES**

|  | 2017 HK$'000 | 2016 HK$'000 | Maximum amount outstanding during the year HK$'000 |
|---|---|---|---|
| Amounts due from related parties |  |  |  |
| 星美影業有限公司 (Note) | 74,812 | – | 74,812 |
| 深圳星美聖典文化傳媒集團有限公司 (「星美聖典」) (Note) | 1,812 | – | 1,812 |
|  | 76,624 | – | 76,624 |
| Amounts due to related parties |  |  |  |
| 深圳星美聯合通訊有限公司 (Note) | (8,178) | (7,871) |  |
| 星美聖典 (Note) | (13,985) | (13,096) |  |
|  | (22,163) | (20,967) |  |

Note: Mr. Qin has control over these entities. The amounts are of non-trade nature, unsecured, interest-free and have no fixed repayment terms.

**Confidential**                                                                                   **Qin_00001050**

## 34. FINANCE LEASE PAYABLES

| | Minimum lease payments | | Present value of minimum lease payments | |
|---|---|---|---|---|
| | **2017**<br>**HK$'000** | 2016<br>HK$'000 | **2017**<br>**HK$'000** | 2016<br>HK$'000 |
| Amounts payable under finance leases: | | | | |
| Within one year | **98,488** | 99,294 | **90,059** | 88,662 |
| In the second to fifth years, inclusive | **60,082** | 104,345 | **55,142** | 96,279 |
| | **158,570** | 203,639 | **145,201** | 184,941 |
| Less: Future finance charges | **(13,369)** | (18,698) | **–** | – |
| Present value of finance lease obligations | **145,201** | 184,941 | **145,201** | 184,941 |
| Less: Amounts due for settlement within one year (shown under current liabilities) | | | **(90,059)** | (88,662) |
| Amounts due for settlement after one year | | | **55,142** | 96,279 |

It is the Group's practice to lease certain of its theatre equipment under finance leases. The common lease term is 10 years. As at 31 December 2017, the average effective borrowing rate was 5.87% (2016: 6.90%) per annum. Interest rates are fixed at the contract date and thus expose the Group to fair value interest rate risk. The above lease obligations only include basic lease payments and do not include the contingent rental amounts, if any, which are to be determined generally by applying pre-determined percentages to future revenue less the basic rentals of the respective leases, as it is not possible in advance to calculate the amount of such additional rental.

All finance lease payables are denominated in RMB.

The Group's finance lease obligations are secured by the lessor's title to the leased assets.

## 35. BANK BORROWINGS

| | **2017**<br>**HK$'000** | 2016<br>HK$'000 |
|---|---|---|
| Bank loans: | | |
| – secured | **74,492** | 38,906 |
| | **74,492** | 38,906 |

The bank loans are repayable based on scheduled repayment dates as follows:

| | **2017**<br>**HK$'000** | 2016<br>HK$'000 |
|---|---|---|
| Within one year | **45,411** | 38,906 |
| Between one to two years | **3,383** | – |
| Between two to five years | **10,149** | – |
| More than five years | **15,549** | – |
| | **74,492** | 38,906 |
| Less: Amount due for settlement within one year | **(45,411)** | (38,906) |
| Amount due for settlement after one year | **29,081** | – |

Confidential

Qin_00001051

**35.  BANK BORROWINGS (Continued)**

All bank loans are denominated in RMB and carry interest benchmarking interest rate in People's Bank of China ("PBOC") with effective interest rates ranging from 5.9% to 6.5% (2016: 6.5%) per annum.

As at 31 December 2017, HK$205,057,000 (2016: HK$24,456,000) of the leasehold land and buildings situated in the PRC was pledged as security for the Group's bank borrowings.

**36.  OTHER BORROWINGS**

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Other loans |  |  |
| – secured | 1,967,774 | 2,509,644 |
| – unsecured | – | 301,300 |
|  | 1,967,774 | 2,810,944 |

The other loans are repayable based on scheduled repayment dates as follows:

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Within one year | 1,336,112 | 824,900 |
| Between one to two years | 631,662 | 1,192,916 |
| Between two to five years | – | 793,128 |
|  | 1,967,774 | 2,810,944 |
| Less: Amount due for settlement within one year | (1,336,112) | (824,900) |
| Amount due for settlement after one year | 631,662 | 1,986,044 |

**Confidential**

Qin_00001052

**36. OTHER BORROWINGS (Continued)**

At the end of the reporting period, the amounts consists of:

(a) Pursuant to the Company's announcement on 29 April 2015, certain subsidiaries of the Company entered into a trust loan agreement (the "FY 2015 Trust Loans Arrangement") with a trust in the PRC, pursuant to which the trust has agreed to make available the FY 2015 Trust Loans in an aggregate principal amount of RMB1,350,000,000 to the Company for a five-year term at a fixed effective interest rate ranging from 9.6% to 11.8% per annum (the "FY 2015 Trust Loans"). The FY 2015 Trust Loans are secured by the box office's receipts and receivables from the movie theatres operated by certain subsidiaries of the Company in the PRC for certain calendar months from 2015 to 2019. The FY 2015 Trust Loans are further secured by cross guarantees provided by the Company, a subsidiary of the Company and Mr. Qin. Subsequently, a financial institution in the PRC pooled the FY 2015 Trust Loans drawn down by the Company under the FY 2015 Trust Loans Arrangement as asset-backed securities (the "Securities") secured against the box office's receipts and receivables from the movie theatres operated by certain subsidiaries of the Company in the PRC (the " FY 2015 ABS Arrangement"). Pursuant to the FY 2015 ABS Arrangement, the Company is required to invest in one tranche of the Securities products being RMB100,000,000 (equivalent to HK$123,519,000) investment in a 5-year non-tradable zero coupon subordinated Securities as stipulated in the FY 2015 ABS Arrangement for having the FY 2015 Trust Loans made available to the Company under the FY 2015 Trust Loans Arrangement (see note 21(a) for details). The Securities have been listed on the Shenzhen Stock Exchange since 4 August 2015.

Two tranches of the Securities issued under the FY 2015 ABS Arrangement, with an aggregate principal amount of RMB647,000,000 (equivalent to HK$796,522,000), was acquired by another financial institution in the PRC (the "Financial Institution B"), at their aggregate principal amount, who then repackaged the two tranches of the Securities into an unlisted asset-backed security (the "Synthetic Instrument"). The Synthetic Instrument has the same terms and conditions as the underlying two tranches of the Securities carrying fixed effective interest rates of 7.7% and 8.3% per annum. The Synthetic Instrument will mature in 2018 and 2019 based on the terms of the underlying securities.

Pursuant to the subscription agreement entered into between Financial Institution B and the Group, Financial Institution B has passed on all risks and rewards of the two tranches of the Securities to the Group as subscriber through the Synthetic Instrument. Accordingly, the Group has effectively repurchased the two tranches of the Securities via this arrangement and RMB647,000,000 (equivalent to HK$796,522,000) paid for the acquisition of the Synthetic Instrument is initially recognised as deduction against the FY 2015 Trust Loans liability.

In December 2015 and March 2016, the Group disposed of all Synthetic Instrument to Financial Institution B of aggregate principal amount of RMB297,000,000 (equivalent to HK$365,637,000) and RMB350,000,000 (equivalent to HK$389,060,000) for proceeds of RMB303,144,000 (equivalent to HK$373,201,000) and RMB353,467,000 (equivalent to HK$407,365,000), respectively and simultaneously, Financial Institution B disposed of the two tranches of the Securities in the Shenzhen Stock Exchange to the market at the same aggregate principal amount for the same amount of proceed. The disposal of the Synthetic Instrument by the Group is accounted for as disposal of own debt instrument previously repurchased. Hence, the proceeds from the disposal is accounted for as part of the proceeds from the deemed issuance of the liabilities instruments.

As at 31 December 2017, the carrying amount of FY 2015 Trust Loans was HK$854,047,000 (2016: HK$1,031,456,000).

0064

Confidential

Qin_00001053

**36. OTHER BORROWINGS (Continued)**

(b) Pursuant to the Company's announcement on 9 August 2016, certain subsidiaries of the Company entered into a trust loan agreement (the "FY 2016 Trust Loans Arrangement") with a trust in the PRC, pursuant to which the trust has agreed to make available the FY 2016 Trust Loans in an aggregate principal amount of RMB1,500,000,000 to the Group for a five-year term at a fixed effective interest rate of 6.67% per annum (the "FY 2016 Trust Loans"). The FY 2016 Trust Loans are secured by box office's receipts and receivables from the movie theatres operated by certain subsidiaries of the Company in the PRC for certain calendar months from 2016 to 2020. The FY 2016 Trust Loans are further secured by cross guarantees provided by the Company and 星美聖典. Subsequently, a financial institution in the PRC pooled the FY 2016 Trust Loans drawn down by the Company under the FY 2016 Trust Loans Arrangement as asset-backed securities (the "Securities") secured against the box office's receipts and receivables from the movie theatres operated by certain subsidiaries of the Company in the PRC (the "FY 2016 ABS Arrangement"). Pursuant to the FY 2016 ABS Arrangement, the Company is required to invest in one tranche of the Securities products being RMB100,000,000 (equivalent to HK$123,519,000) investment in a 5-year non-tradable zero coupon subordinated Securities as stipulated in the FY 2016 ABS Arrangement for having the FY 2016 Trust Loans made available to the Company under the FY 2016 Trust Loans Arrangement (see note 21(b) for details). The Securities have been listed on the Shenzhen Stock Exchange since 9 August 2016.

As at 31 December 2017, the carrying amount of FY 2016 Trust Loans was HK$1,006,855,000 (2016: HK$1,478,188,000).

(c) During the year ended 31 December 2016, the Group obtained: 1) a short-term credit loan facility from a financial institution of maximum amount up to HK$680,000,000 for the purpose of acquisition of SMI Culture & Travel Group's equity interests. As at 31 December 2016, HK$75,724,000 (2017: nil) of the loan is drawdown by the Group which is unsecured, carrying interest rate of 24% per annum and repayable within 6 months; and 2) a short-term credit loan facility from the financial institution of HK$100,000,000 for the general business. As at 31 December 2016, HK$100,000,000 (2017: nil) of the loan is drawdown by the Group which is carrying interest rate of 24% per annum and repayable within 2 months. The entire other borrowings were fully repaid by the Group during the year ended 31 December 2017.

(d) As at 31 December 2016, other borrowings also included amount of HK$125,576,000 borrowed by SMI Culture & Travel Group from a financial institution, which was repayable within one year, unsecured and borne interest at fixed rate of 17.5% per annum. The entire other borrowing was fully repaid by SMI Culture & Travel during the year ended 31 December 2017.

(e) During the year ended 31 December 2017, the Group obtained a credit loan facility from a financial institution of maximum amount up to RMB150,000,000 (equivalent to HK$173,625,000) for the general business (the "FY 2017 Other Loan"). The facility is secured against the box office's receipts and receivables from the movie theatres operated by certain subsidiaries of the Company in the PRC and bears fixed interest at 9% per annum and fully repaid in January 2019. The Group has the option to early repay the principal of the borrowing in full or in part before the maturity date. As at 31 December 2017 the entire facility amount has been drawdown by the Group and RMB61,000,000 (equivalent to HK$70,608,000) was repaid.

**Confidential**

**Qin_00001054**

**37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS**

Shown in the consolidated statement of financial position as:

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Current liabilities | 907,813 | 1,007,572 |
| Non-current liabilities | 10,000 | – |
| | 917,813 | 1,007,572 |

The movement of the liability component of the convertible notes for the year is set out below:

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Carrying amount at the beginning of year | 1,007,572 | 823,207 |
| Arising from acquisition of subsidiaries (note 43(b)(ii)) | – | 130,128 |
| Issued during the year (note 37(g)) | – | 64,190 |
| Interest charged (note 9) | 105,434 | 103,072 |
| Conversion into shares of the Company (note 37(b) & (c)) | – | (41,650) |
| Conversion into shares of SMI Culture & Travel Group (note 37(g), (h) & (i)) | (53,794) | (34,049) |
| Interest paid/payable | (141,149) | (37,326) |
| Repayment | (250) | – |
| | 917,813 | 1,007,572 |

At the end of the reporting period, the amounts comprised of:

(a) The Company issued several 5-year 5% convertible notes ("Convertible Note II") with principal amount totalling of HK$10,250,000 on 11 September 2012 to certain independent third party investors. The Convertible Note II are denominated in Hong Kong dollars and entitle the holders to convert them into ordinary shares of the Company at any business day after the date of issue of the Convertible Note II up to and including the date which is 7 business days prior to the maturity date on 10 September 2017 at a conversion price of HK$1.00 per share, subject to anti-dilutive adjustments. If the Convertible Note II have not been converted, they will be redeemed at 100% of their principal amount on the maturity date. No early redemption is allowed. Interest of 5.0% per annum will be payable annually on the last business day of each calendar year.

The Convertible Note II contains two components, a liability component and a conversion component. Since the conversion option would be settled by a fixed number of the Company's own equity instruments, the conversion option is presented in equity as convertible notes reserve. The effective interest rate of the liability component is 5.00% (2016: 5.94%).

During the year ended 31 December 2017, an independent third party investor extended the maturity date of the Convertible Note II from 10 September 2017 to 10 September 2018. All the other terms and conditions of the Convertible Note II remain unchanged and the independent third party investors can convert the Convertible Note II into ordinary shares of the Company up to the close of business date on 10 September 2018 at a conversion price of HK$5.00 per share, being adjusted with the anti-dilutive effect from the Company's share consolidation effective on 5 June 2017.

As the discounted present value of the cash flows under the new terms, including any fees paid and discounted using the original effective interest rate, was less than 10% different from the discounted present value of the remaining cash flows of the financial liability, the Directors consider the extension of the maturity date is non-substantial modifications that do not result in derecognition. The effective interest rate of the Convertible Note II liability component for the remaining period after the modification is revised to 5.00%.

As at 31 December 2017, Convertible Note II with principal amount of HK$10,000,000 (2016: HK$10,250,000) was outstanding.

**Confidential**

Qin_00001055

37. **CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)**

(b) The Company issued several 3-year 9% convertible notes ("Convertible Note IV") with principal amount totalling of HK$200,000,000 on 15 August 2014 to certain independent third party investors. The Convertible Note IV are denominated in Hong Kong dollars and entitle the holders to convert them into ordinary shares of the Company at any business day after the date of issue of the Convertible Note IV up to and including the maturity date on 14 August 2017 at a conversion price of HK$0.34 per share, subject to anti-dilutive adjustments. If the Convertible Note IV have not been converted, they will be redeemed at an amount that would yield an annual return of 12% thereon calculated from the issue date to (and including) the maturity date. The subscriber may on the date falling 24 months from the issue date of Convertible Note IV require the Company to redeem the Convertible Note IV in whole or in part at an amount that would yield an annual return of 12% thereon calculated from the issue date to (and including) the early redemption date by serving at least 45 days written notice to the Company. Interest of 9% per annum will be payable quarterly.

The Convertible Note IV contains two components, a liability component together with a closely related early redemption option and a conversion component. Since the conversion option would be settled by a fixed number of the Company's own equity instruments, the conversion option is presented in equity as convertible notes reserve. In the case of exercise of the early redemption option, since the redemption price approximately equals to the amortised cost of the issued instrument (prior to the equity conversion option being separated), the early redemption option, therefore, is closely related to the liability component and is not separately recognised. The effective interest rate of the liability component is 13.62%.

On 14 May 2015, 5 June 2015, 6 July 2015 and 22 October 2015, the Convertible Note IV holders exercised the conversion rights to the extent of principal amount of HK$100,000,000, HK$30,000,000, HK$30,000,000 and HK$20,000,000, respectively, of the Convertible Note IV, to convert the Convertible Note IV at a conversion price of HK$0.34 per ordinary share, and a total of 529,411,764 conversion ordinary shares were then issued.

On 14 August 2016, the Convertible Note IV holders exercised the conversion rights to the extent of principal amount of HK$20,000,000 of the Convertible Note IV, to convert the Convertible Note IV at a conversion price of HK$0.34 per ordinary share, and a total of 58,823,529 conversion ordinary shares were then issued. As at 31 December 2017 and 2016, no Convertible Note IV was outstanding.

(c) The Company issued a 3-year 7% convertible note ("Convertible Note V") with principal amount of US$5,160,000, equivalent to approximately HK$39,992,000, on 20 December 2014 to an independent third party investor. The Convertible Note V is denominated in US dollars, the exchange rate of which to HK$ is fixed at 7.7505 by the subscription agreement, and entitles the holder to convert it into ordinary shares of the Company at any business day after the date of issue of the Convertible Note V up to and including the maturity date on 19 December 2017 at a conversion price of HK$0.34 per share, subject to anti-dilutive adjustments. If the Convertible Note V has not been converted, it will be redeemed at an amount that would yield an annual return of 10% thereon calculated from the issue date to (and including) the maturity date. The subscriber may on the date falling 24 months from the issue date of Convertible Note V require the Company to redeem the Convertible Note V in whole or in part at an amount that would yield an annual return of 10% thereon calculated from the issue date to (and including) the early redemption date by serving at least 45 days written notice to the Company. Interest of 7% per annum will be payable semi-annually.

The Convertible Note V contains two components, a liability component with a closely related early redemption option and a conversion component. Since the conversion option would be settled by a fixed number of the Company's own equity instruments, the conversion option is presented in equity as convertible notes reserve. In the case of exercise of the early redemption option, since the redemption price approximately equals to the amortised cost of the issued instrument (prior to the equity conversion option being separated), the early redemption option, therefore, is closely related to the liability component and is not separately recognised. The effective interest rate of the liability component is 11.50%.

**Confidential**     **Qin_00001056**

**37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)**

(c) (Continued)

On 13 May 2015, the Convertible Note V holders exercised the conversion rights to the extent of principal amount of US$2,632,000, equivalent to approximately HK$20,400,000, of the Convertible Note V, to convert the Convertible Note V at a conversion price of HK$0.34 per ordinary share, and a total of 60,000,000 conversion ordinary shares were then issued.

As at 31 December 2015, Convertible Note V with principal amount of US$2,528,000, equivalent to approximately HK$19,592,000 was outstanding. On 13 September 2016, the Convertible Note V holders exercised the remaining conversion rights of principal amount of US$2,528,000, equivalent to approximately HK$19,592,580, of the Convertible Note V, to convert the Convertible Note V at a conversion price of HK$0.34 per ordinary share, and a total of 57,625,235 conversion ordinary shares were then issued. As at 31 December 2017 and 2016, no Convertible Note V was outstanding.

(d) The Company issued a 2-year 4.0% convertible note ("Convertible Note VIII") with principal amount totalling of HK$300,000,000 on 5 November 2015 to an independent third party investor. The Convertible Note VIII are denominated in Hong Kong dollars and entitle the holders to convert them into ordinary shares of the Company at any business date from the issue date up to the close of business on the maturity date on 4 November 2017 at a conversion price of HK$0.77 per share, subject to anti-dilutive adjustments. If the Convertible Note VIII have not been converted, they will be redeemed at such amount that would yield an annual return of 10% per annum thereon calculated from the issue date to (and including) the maturity date. No early redemption is allowed. Interest of 4.0% per annum will be payable semi-annually on the last business day of every half calendar year.

The Convertible Note VIII contains two components, a liability component and a conversion component. Since the conversion option would be settled by a fixed number of the Company's own equity instruments, the conversion option is presented in equity as convertible notes reserve. The effective interest rate of the liability component is 10.00% (2016: 11.71%).

During the year ended 31 December 2017, the holder of Convertible Note VIII extended the maturity date of the Convertible Note VIII from 4 November 2017 to 4 November 2018. All the other terms and conditions of the Convertible Note VIII remain unchanged and the independent third party investors can convert the Convertible Note VIII into ordinary shares of the Company up to the close of business date on 4 November 2018 at a conversion price of HK$3.85 per share, being adjusted with the anti-dilutive effect from the Company's share consolidation effective on 5 June 2017.

As the discounted present value of the cash flows under the new terms, including any fees paid and discounted using the original effective interest rate, was less than 10% different from the discounted present value of the remaining cash flows of the financial liability, the Directors consider the extension of the maturity date is non-substantial modifications that do not result in derecognition. The effective interest rate of the Convertible Note VIII liability component for the remaining period after the modification is revised to 10.00%.

As at 31 December 2017 and 2016, Convertible Note VIII with principal amount of HK$300,000,000 was outstanding.

Confidential

Qin_00001057

**37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)**

(e) The Company issued several 2-year 4.0% convertible notes ("Convertible Note IX") with principal amount totalling of HK$275,000,000 on 12 November 2015 to an independent third party investor. The Convertible Note IX are denominated in Hong Kong dollars and entitle the holder to convert them into ordinary shares of the Company at any business date from and including the date falling six months from the issue date up to the close of business on the maturity date on 11 November 2017 at a conversion price of HK$0.77 per share, subject to anti-dilutive adjustments. If the Convertible Note IX have not been converted, they will be redeemed at such amount that would yield an annual return of 10% per annum thereon calculated from the issue date to (and including) the maturity date. No early redemption is allowed. Interest of 4.0% per annum will be payable semi-annually on the last business day of every half calendar year.

The Convertible Note IX contains two components, a liability component and a conversion component. Since the conversion option would be settled by a fixed number of the Company's own equity instruments, the conversion option is presented in equity as convertible notes reserve. The effective interest rate of the liability component is 10.00% (2016: 12.30%).

During the year ended 31 December 2017, the holder of Convertible Note IX extended the maturity date of the Convertible Note IX from 11 November 2017 to 11 November 2018. All the other terms and conditions of the Convertible Note IX remain unchanged and the independent third party investors can convert the Convertible Note IX into ordinary shares of the Company up to the close of business date on 11 November 2018 at a conversion price of HK$3.85 per share, being adjusted with the anti-dilutive effect from the Company' share consolidation effective on 5 June 2017.

As the discounted present value of the cash flows under the new terms, including any fees paid and discounted using the original effective interest rate, was less than 10% different from the discounted present value of the remaining cash flows of the financial liability, the Directors consider the extension of the maturity date is non-substantial modifications that do not result in derecognition. The effective interest rate of the Convertible Note IX liability component for the remaining period after the modification is revised to 10.00%.

As at 31 December 2017 and 2016, Convertible Note IX with principal amount of HK$275,000,000 was outstanding.

(f) The Company issued several 2-year 4.0% convertible notes ("Convertible Note X") with principal amount totalling of HK$224,000,000 on 23 November 2015 to certain independent third party investors. The Convertible Note X are denominated in Hong Kong dollars and entitle the holders to convert them into ordinary shares of the Company at any business date from and including the date falling six months from the issue date up to the close of business on the maturity date on 22 November 2017 at a conversion price of HK$0.77 per share, subject to anti-dilutive adjustments. If the Convertible Note X have not been converted, they will be redeemed at such amount that would yield an annual return of 10% per annum thereon calculated from the issue date to (and including) the maturity date. No early redemption is allowed. Interest of 4.0% per annum will be payable semi-annually on the last business day of every half calendar year.

The Convertible Note X contains two components, a liability component and a conversion component. Since the conversion option would be settled by a fixed number of the Company's own equity instruments, the conversion option is presented in equity as convertible notes reserve. The effective interest rate of the liability component is 10.00% (2016: 12.45%).

**Confidential**

Qin_00001058



**37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)**

(f) (Continued)

During the year ended 31 December 2017, the holders of Convertible Note X extended the maturity date of the Convertible Note X from 22 November 2017 to 22 November 2018. All the other terms and conditions of the Convertible Note X remain unchanged and the independent third party investors can convert the Convertible Note X into ordinary shares of the Company up to the close of business date on 22 November 2018 at a conversion price of HK$3.85 per share, being adjusted with the anti-dilutive effect from the Company's share consolidation effective on 5 June 2017.

As the discounted present value of the cash flows under the new terms, including any fees paid and discounted using the original effective interest rate, was less than 10% different from the discounted present value of the remaining cash flows of the financial liability, the Directors consider the extension of the maturity date is non-substantial modifications that do not result in derecognition. The effective interest rate of the Convertible Note X liability component for the remaining period after the modification is revised to 10.00%.

As at 31 December 2017 and 2016, Convertible Note X with principal amount of HK$224,000,000 was outstanding.

(g) SMI Culture & Travel Group, the subsidiary of the Company, issued 1-year 5% convertible note ("Convertible Note XI") with principal amount of HK$65,000,000 on 11 November 2016 to Cheer Hope Holdings Limited ("Cheer Hope"), an independent third party investor. The Convertible Note XI is denominated in Hong Kong dollars and entitle the holder to convert it into ordinary shares of SMI Culture & Travel Group at any business date from and including the date falling one year from the issue date up to the close of business on the maturity date on 8 August 2017 at a conversion price of HK$0.675 per share, subject to anti-dilutive adjustments. If the Convertible Note XI have not been converted, they will be redeemed at such amount that would yield an annual return of 5% per annum thereon calculated from the issue date to (and including) the maturity date. No early redemption is allowed. Interest of 5% per annum will be payable every six months from the issue date in arrears.

The Convertible Note XI contains two components, a liability component and a conversion option. The conversion option is not closely related to the liability component and is classified as a derivative because the conversion will not result in SMI Culture & Travel Group issuing a fixed number of shares in settlement of a fixed amount of liability component. Conversion option is measured at fair value with change in fair value recognised in profit or loss.

At the date of issue, the liability component was recognised at fair value. The fair value of liability component was calculated based on the present value of the contractually determined stream of future cash flows discounted at the required yield, which was determined with reference to the average yield of notes with similar credit rating and remaining time to maturity. In subsequent periods, the liability component is carried at amortised cost using the effective interest method. The effective interest rate of the liability component of the Convertible Note XI is 11.40% (2016: 6.75%).

During the year ended 31 December 2017, Cheer Hope extended the maturity date of the Convertible Note XI from 8 August 2017 to 8 August 2018. All the other terms and conditions of the Convertible Note XI remain unchanged and Cheer Hope can convert the Convertible Note XI into ordinary shares of SMI Culture & Travel Group up to the close of business date on 8 August 2018 at a conversion price of HK$0.675 per share.

0067



**Confidential** Qin_00001059

**37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)**

(g) (Continued)

As the discounted present value of the cash flows under the new terms, including any fees paid and discounted using the original effective interest rate, was less than 10% different from the discounted present value of the remaining cash flows of the financial liability, the Directors consider the extension of the maturity date is non-substantial modifications that do not result in derecognition. The effective interest rate of the Convertible Note XI liability component for the remaining period after the modification is revised to 11.40%.

The movement of the liability component and conversion option and other embedded derivatives of the Convertible Note XI for the year is set out as below:

|  | Liability component HK$'000 | Conversion and other embedded derivatives HK$'000 | Total HK$'000 |
|---|---:|---:|---:|
| Issued during the year ended 31 December 2016 | 64,190 | 810 | 65,000 |
| Interest charged | 593 | – | 593 |
| Interest paid/payable | (445) | – | (445) |
| Loss arising on change in fair value | – | 19,954 | 19,954 |
| As at 31 December 2016 | 64,338 | 20,764 | 85,102 |
| Interest charged | 3,635 | – | 3,635 |
| Interest paid/payable | (3,225) | – | (3,225) |
| Converted during the year | (29,748) | (6,745) | (36,493) |
| Change in fair value | – | (8,559) | (8,559) |
|  | 35,000 | 5,460 | 40,460 |

Binomial option pricing model is used for valuation of conversion option of the Convertible Note XI. The inputs into the model were as follows:

|  | 11 November 2016 | 31 December 2016 | 10 February 2017 | 31 December 2017 |
|---|---:|---:|---:|---:|
| Stock price | HK$0.840 | HK$0.860 | HK$0.810 | HK$0.750 |
| Exercise price | HK$0.675 | HK$0.675 | HK$0.675 | HK$0.675 |
| Volatility | 40.44% | 37.73% | 38.28% | 22.00% |
| Option life | 0.74 year | 0.61 year | 0.49 year | 0.61 year |
| Risk-free interest rate | 0.49% | 0.82% | 0.76% | 1.39% |

On 10 February 2017, Cheer Hope exercised the conversion rights to principal amount of HK$30,000,000 of the Convertible Note XI, to convert the Convertible Note XI at a conversion price of HK$0.675 per ordinary share, and a total of 44,444,444 conversion ordinary shares of SMI Culture & Travel group were then issued.

As at 31 December 2017, Conversion Note XI with principal amount of HK$35,000,000 (2016: HK$65,000,000) was outstanding.

**Confidential**

Qin_00001060

**37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)**

(h) SMI Culture & Travel Group issued 1-year 5% convertible note ("Convertible Note XII") with principal amount of HK$100,000,000 on 26 October 2016 to Ever Ascend Investments Limited ("Ever Ascend"), an independent third party investor. The Convertible Note XII is denominated in Hong Kong dollars and entitle the holder to convert it into ordinary shares of SMI Culture & Travel Group at any business date from and including the date falling one year from the issue date up to the close of business on the maturity date on 25 October 2017 at a conversion price of HK$0.675 per share, subject to anti-dilutive adjustments. If the Convertible Note XII have not been converted, they will be redeemed at such amount that would yield an annual return of 5% per annum thereon calculated from the issue date to (and including) the maturity date. No early redemption is allowed. Interest of 5% per annum will be payable every six months from the issue date in arrears.

The Convertible Note XII contains two components, a liability component and a conversion option. The conversion option is not closely related to the liability component and is classified as a derivative because the conversion will not result in SMI Culture & Travel Group issuing a fixed number of shares in settlement of a fixed amount of liability component. Conversion option is measured at fair value with change in fair value recognised in profit or loss.

At the date of the Company acquired SMI Culture and Travel Group (see note 43(b)(ii)), the liability component was recognised at fair value. The fair value of liability component was calculated based on the present value of the contractually determined stream of future cash flows discounted at the required yield, which was determined with reference to the average yield of notes with similar credit rating and remaining time to maturity. In subsequent periods, the liability component is carried at amortised cost using the effective interest method. The effective interest rate of the liability component of the Convertible Note XII is 12.09% (2016: 9.11%).

During the year ended 31 December 2017, Ever Ascend extended the maturity date of the Convertible Note XII from 25 October 2017 to 25 October 2018. All the other terms and conditions of the Convertible Note XII remain unchanged and Ever Ascend can convert the Convertible Note XII into ordinary shares of SMI Culture & Travel Group up to the close of business date on 25 October 2018 at a conversion price of HK$0.675 per share.

As the discounted present value of the cash flows under the new terms, including any fees paid and discounted using the original effective interest rate, was less than 10% different from the discounted present value of the remaining cash flows of the financial liability, the Directors consider the extension of the maturity date is non-substantial modifications that do not result in derecognition. The effective interest rate of the Convertible Note XI liability component for the remaining period after the modification is revised to 12.09%.

The movement of the liability component and conversion option and other embedded derivatives of the Convertible Note XII for the year is set out as below:

| | Liability component HK$'000 | Conversion and other embedded derivatives HK$'000 | Total HK$'000 |
|---|---|---|---|
| Arising from the acquisition | 96,152 | 41,769 | 137,921 |
| Interest charged | 1,605 | – | 1,605 |
| Interest paid/payable | (2,522) | – | (2,522) |
| Gain arising on change in fair value | – | (6,847) | (6,847) |
| As at 31 December 2016 | 95,235 | 34,922 | 130,157 |
| Interest charged | 9,110 | – | 9,110 |
| Interest paid/payable | (6,486) | – | (6,486) |
| Converted during the year | (24,046) | (5,368) | (29,414) |
| Gain arising on change in fair value | – | (20,430) | (20,430) |
| | 73,813 | 9,124 | 82,937 |



**Confidential**

Qin_00001061

## 37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)

(h) (Continued)

Binomial option pricing model is used for valuation of conversion option of the Convertible Note XII. The inputs into the model were as follows:

|  | Date of Acquisition | 31 December 2016 | 15 March 2017 | 31 December 2017 |
|---|---|---|---|---|
| Stock price | HK$0.900 | HK$0.860 | HK$0.790 | HK$0.750 |
| Exercise price | HK$0.675 | HK$0.675 | HK$0.675 | HK$0.675 |
| Volatility | 38.70% | 36.04% | 37.55% | 21.05% |
| Option life | 0.99 year | 0.82 year | 0.62 year | 0.82 year |
| Risk-free interest rate | 0.43% | 0.86% | 0.65% | 1.47% |

On 15 March 2017, Ever Ascend exercised the conversion rights to principal amount of HK$25,000,000 of the Convertible Note XII, to convert the Convertible Note XII at a conversion price of HK$0.675 per ordinary share, and a total of 37,037,037 conversion ordinary shares of SMI Culture & Travel Group were then issued.

As at 31 December 2017, Conversion Note XII with principal amount of HK$75,000,000 (2016: HK$100,000,000) was outstanding.

(i) SMI Culture & Travel Group issued 1-year 5% convertible note ("Convertible Note XIII") with principal amount of HK$35,000,000 on 8 August 2016 to Cheer Hope, an independent third party investor. The Convertible Note XIII is denominated in Hong Kong dollars and entitle the holder to convert it into ordinary shares of SMI Culture & Travel Group at any business date from and including the date falling one year from the issue date up to the close of business on the maturity date on 8 August 2017 at a conversion price of HK$0.675 per share, subject to adjustment and resets in accordance with the terms and conditions of convertible Note XIII. If the Convertible Note XIII have not been converted, they will be redeemed at such amount that would make up an aggregate internal rate of return on relevant amount at 10% per annum thereon calculated from the issue date to (and including) the maturity date. No early redemption is allowed. Interest of 5% per annum will be payable every six months from the issue date in arrears.

The Convertible Note XIII contains two components, a liability component and a conversion option. The conversion option is not closely related to the liability component and is classified as a derivative because the conversion will not result in SMI Culture & Travel Group Holdings Limited issuing a fixed number of shares in settlement of a fixed amount of liability component. Conversion option is measured at fair value with change in fair value recognised in profit or loss.

**Confidential**                                                    **Qin_00001062**



**37. CONVERTIBLE NOTES/DERIVATIVE FINANCIAL INSTRUMENTS (Continued)**

(i) (Continued)

The movement of the liability component and conversion option and other embedded derivatives of the Convertible Note XIII for the year is set out as below:

|  | Liability component HK$'000 | Conversion and other embedded derivatives HK$'000 | Total HK$'000 |
|---|---|---|---|
| Arising from the acquisition | 33,976 | 13,683 | 47,659 |
| Interest charged | 176 | – | 176 |
| Interest paid/payable | (103) | – | (103) |
| Converted during the year | (34,049) | (10,294) | (44,343) |
| Gain arising on change in fair value | – | (3,389) | (3,389) |
| As at 31 December 2016 | – | – | – |

At the date of the Company acquired SMI Culture and Travel Group (see note 43(b)(ii)), the liability component was recognised at fair value. The fair value of liability component was calculated based on the present value of the contractually determined stream of future cash flows discounted at the required yield, which was determined with reference to the average yield of notes with similar credit rating and remaining time to maturity. In subsequent periods, the liability component is carried at amortised cost using the effective interest method. The effective interest rate of the liability component of the Convertible Note XIII is 8.94%.

Binomial option pricing model is used for valuation of conversion option of the Convertible Note XIII. The inputs into the model were as follows:

|  | Date of Acquisition | 21 November 2016 |
|---|---|---|
| Stock price | HK$0.900 | HK$0.830 |
| Exercise price | HK$0.675 | HK$0.675 |
| Volatility | 37.00% | 37.51% |
| Option life | 0.78 year | 0.72 year |
| Risk-free interest rate | 0.42% | 0.53% |

On 21 November 2016, the Convertible Note XIII holder exercised the conversion rights to entire principal amount of HK$35,000,000 of the Convertible Note XIII, to convert the Convertible Note XIII at a conversion price of HK$0.675 per ordinary share, and a total of 51,851,851 conversion ordinary shares of SMI Culture & Travel Group were then issued. As at 31 December 2017 and 2016, no Conversion Note XIII was outstanding.

0069



## 38. BONDS

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| The bonds are repayable as follows: |  |  |
| Within one year | 1,528,170 | 1,225,711 |
| Within a period of more than one year but not exceeding two years | 9,225 | 330,533 |
| Within a period of more than two years but not exceeding five years | 256,548 | 177,270 |
| Within a period of more than five years | 65,216 | 132,083 |
|  | 1,859,159 | 1,865,597 |
| Less: Amount due for settlement within one year | (1,528,170) | (1,225,711) |
| Amount due for settlement after one year | 330,989 | 639,886 |
| Analysed as: |  |  |
| Unsecured | 1,859,159 | 1,865,597 |
|  | 1,859,159 | 1,865,597 |

At the end of the reporting period, the amounts comprised of:

(a) In 2013 and 2014, the Company issued fifteen 7-year term private bonds to independent third parties with aggregate principal amounts of HK$170,000,000 with fixed coupon rate of 5% per annum each. The effective interest rates of the bonds range from 5.0% to 9.1%.

(b) In 2015, the Company issued two 3-year 5% bonds, one 4-year 6% bonds and thirteen 7-year 5% bonds to independent third parties with aggregate principal amounts of HK$95,900,000. The effective interest rates of the bonds range from 7.8% to 11.1%.

(c) In 2016, the Company issued one 3-year 5% bond, three 4-year 5% bonds, one 5-year 5% bond, ten 7-year 5% bonds and three 8-year 5% bonds to independent third parties with aggregate principal amount of HK$96,000,000. The effective interest rates of the bonds range from 8.3% to 13.3%.

(d) In 2016, the Company issued three 2-year 8.5% bonds to independent third parties with aggregate principal amounts of HK$1,124,805,000. The effective interest rates of the bonds range from 8.79% to 10.25%. During the year ended 31 December 2017, the Company had early redeemed bond of HK$40,000,000.

(e) In 2017, the Company issued one 7-year 6% bond with principal amount of HK$5,000,000 at effective interest rate of 9.59% and two 3-year 5% bonds with aggregate principal amounts of HK$10,000,000 at effective interest rate of 12.36% to independent third parties.

(f) SMI Culture & Travel Group issued a 1-year bond to an independent third party with aggregate principal amount of HK$315,000,000 in August 2016 with fixed coupon rate of 5% per annum each, with the corporate guarantee by the Company. The bond will be redeemed at an amount that would make up an aggregate internal rate of return on the relevant amount at 10% per annum thereon. The effective interest rate of the Bond is 9.85%. In November 2016, SMI Culture & Travel Group has early redeemed bond of HK$64,431,000.

In August 2017, the maturity date of the bond was extended to August 2018 without any supplemental clause. Other terms of the bond remain unchanged and there was no redemption during the year.

**Confidential**

**Qin_00001064**

**38. BONDS (Continued)**

(g) SMI Culture & Travel Group issued a 1-year bond to Ever Ascend, an independent third party with aggregate principal amount of HK$200,000,000 in August 2016 with fixed coupon rate of 5% per annum, with the guarantee by the Company. The bond will be redeemed at an amount that would make up an aggregate internal rate of return on the relevant amount at 10% per annum thereon. The effective interest rate of the bond is 11.00%.

In August 2017, the maturity date of the bond was extended to August 2018 without any supplemental clause. Other terms of the bond remain unchanged and there was no redemption during the year.

**39. DEFERRED TAX LIABILITIES**

The following are the deferred tax liabilities recognised by the Group:

|  | Intangible assets HK$'000 | Fair value adjustments on lease contracts HK$'000 | Total HK$'000 |
|---|---|---|---|
| At 1 January 2016 | 14,706 | 3,792 | 18,498 |
| Credit to profit or loss in the year (note 10) | (2,558) | (513) | (3,071) |
| Disposal | (229) | – | (229) |
| Exchange realignment | (1,173) | – | (1,173) |
| At 31 December 2016 and 1 January 2017 | 10,746 | 3,279 | 14,025 |
| Credit to profit or loss in the year (note 10) | (2,151) | (513) | (2,664) |
| Exchange realignment | 721 | – | 721 |
| At 31 December 2017 | 9,316 | 2,766 | 12,082 |

At the end of the reporting period, the Group has unused tax losses of HK$1,827,703,000 (2016: HK$1,118,995,000) available for offset against future profits. No deferred tax asset has been recognised due to the unpredictability of future profit streams. Included in unrecognised tax losses are losses of HK$1,510,394,000 (2016: HK$938,571,000) that will expire within 5 years. Other tax losses may be carried forward indefinitely.

At the end of the reporting period, the aggregate amount of temporary differences associated with undistributed earnings of subsidiaries, for which deferred tax liabilities have not been recognised, is HK$2,743,520,000 (2016: HK$1,787,188,000). No liability has been recognised in respect of these differences because the Group is in a position to control the timing of reversal of the temporary differences and it is probable that such differences will not reverse in the foreseeable future.



**Confidential** Qin_00001065



40. SHARE CAPITAL

| | Number of shares | | Amount | |
|---|---|---|---|---|
| | 2017 | 2016 | 2017 HK$'000 | 2016 HK$'000 |
| **Authorised:** | | | | |
| At beginning of year | | | | |
| Ordinary shares of HK$0.1 each | 20,000,000,000 | 20,000,000,000 | 2,000,000 | 2,000,000 |
| Shares consolidation (Note (ii)) | (16,000,000,000) | – | – | – |
| At end of year | | | | |
| Ordinary shares of HK$0.1 each | – | 20,000,000,000 | – | 2,000,000 |
| Ordinary shares of HK$0.5 each | 4,000,000,000 | – | 2,000,000 | – |
| **Issued and fully paid:** | | | | |
| At beginning of year | | | | |
| Ordinary shares of HK$0.1 each | 13,611,209,583 | 13,507,427,488 | 1,361,121 | 1,350,743 |
| Issue of conversion shares | – | 116,448,764 | – | 11,645 |
| Share options exercised | – | 68,333,331 | – | 6,833 |
| Shares bought back (Note (i)) | (11,000,000) | (81,000,000) | (1,100) | (8,100) |
| Shares consolidation (Note (ii)) | (10,880,167,667) | – | – | – |
| At end of the year | | | | |
| Ordinary shares of HK$0.1 each | – | 13,611,209,583 | – | 1,361,121 |
| Ordinary shares of HK$0.5 each | 2,720,041,916 | – | 1,360,021 | – |

Notes:

(i) During the year ended 31 December 2016, the Company paid in aggregate HK$57,187,000 to buy back 33,000,000, 23,000,000, 20,000,000 and 5,000,000 ordinary shares of HK$0.1 each from the Stock Exchange on 27 May, 30 June, 29 July and 30 September respectively, at highest price of HK$0.77 and lowest price of HK$0.63 per share, and the excess paid over the par value of the shares was debited to the Company's share premium account. The share capital of HK$8,100,000 was transferred to capital redemption reserve for cancellation after the end of the reporting period.

During the year ended 31 December 2017, the Company paid in aggregate HK$7,807,000 to buy back 5,000,000, 3,000,000 and 3,000,000 ordinary shares of HK$0.1 each from the Stock Exchange on 4 May, 15 May and 19 May respectively, at highest price of HK$0.73 and lowest price of HK$0.68 per share, and the excess paid over the par value of the shares was debited to the Company's share premium account. The share capital of HK$1,100,000 was transferred to capital redemption reserve for cancellation after the end of the report period.

(ii) On 10 May 2017, the Board of Directors of the Company proposed consolidation of every five existing shares of HK$0.1 each in the issued and unissued share capital of the Company into one consolidated share of HK$0.5 each in the issued and unissued share capital (the "Proposed Share Consolidation"). The Proposed Share Consolidation was approved by shareholders of the Company at the special general meeting on 2 June 2017 and became effective on 5 June 2017.

**Confidential**

Qin_00001066



## 41. SHARE-BASED PAYMENT

### Equity-settled share option scheme

On 30 September 2009, an ordinary resolution was proposed at the special general meeting to approve the adoption of a share option scheme ("Share Option Scheme") and termination of the operation of the old share option scheme. The resolution was approved by the shareholders and the Share Option Scheme became effective for a period of 10 years commencing on 30 September 2009.

Under the Share Option Scheme, the consideration paid for each grant of share options will be HK$1.00. The subscription price shall be determined by the Board of Directors and notified to a participant and shall be at least the highest of: (i) the closing price of the shares of the Company as stated in the Stock Exchange's daily quotations sheet on the date of grant, which must be a business day; (ii) the average closing price of the shares of the Company as stated in the Stock Exchange's daily quotation sheets for the 5 business days immediately preceding the date of grant; and (iii) the nominal value of a share. Details of the principal terms of the Share Option Scheme were summarised and set out in a circular to shareholders dated 9 September 2009.

On 12 October 2017, the Company granted 84,000,000 options (the "2017 Options") under the Share Option Scheme to eligible participants. The 2017 Share Options are vested when the Group acquired up to 370 entities engaged in operations of theatres. The 2017 Options are exercisable any time before maturity date provided that the maximum number of the 2017 Options which may be exercisable by each eligible participant each year during the exercise period shall not exceed half of the 2017 Options granted to the eligible participant. No 2017 Options are vested and/or exercised during the year ended 31 December 2017.

The estimated fair value of the options on the date of grant was HK$55,043,000. The 2017 Options are divided into 2 equal trenches in which Tranches (1) is exercisable within one year from the date of grant i.e. 12 October 2017 to 11 October 2018, and Tranches (2) is exercisable in the second year from the date of grant i.e. 12 October 2018 to 11 October 2019. The fair values of the 2017 Options were calculated using the Black-Scholes Model. The inputs into model were as follows:

|  | 12 October 2017 | |
| --- | --- | --- |
|  | Tranches (1) | Tranches (2) |
| Share price | HK$4.37 | HK$4.37 |
| Exercise price | HK$4.37 | HK$4.37 |
| Expected volatility | 26.98% | 35.95% |
| Risk-free rate | 0.70% | 1.00% |
| Expected dividend yield | 1.51% | 1.53% |

The Group recognised total expense of HK$12,064,000 for the year ended 31 December 2017 in relation to the 2017 Options.

Confidential

Qin_00001067



41. **SHARE-BASED PAYMENT (Continued)**
    **Equity-settled share option scheme (Continued)**
    A summary of the movements of the outstanding options during the year ended 31 December 2016 and 2017 under the Share Option Scheme is as follows:

| Type of participants | Date of grant | Exercise period | Exercise price per share HK$ | Changes during the year ended 31 December 2016 | | | |
|---|---|---|---|---|---|---|---|
| | | | | Balance as at 1.1.2016 | Exercised in 2016 | Lapsed in 2016 | Balance as at 31.12.2016 |
| Directors | 19 July 2013 | 19 July 2013 to 18 July 2016 | 0.18 | 21,666,665 | (21,666,665) | – | – |
| Employees | 19 July 2013 | 19 July 2013 to 18 July 2016 | 0.18 | 46,666,666 | (20,000,000) | (26,666,666) | – |
| Others participants | 19 July 2013 | 19 July 2013 to 18 July 2016 | 0.18 | 39,999,999 | (26,666,666) | (13,333,333) | – |
| | | | | 108,333,330 | (68,333,331) | (39,999,999) | – |

| Type of participants | Date of grant | Exercise period | Exercise price per share HK$ | Changes during the year ended 31 December 2017 | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Balance as at 1.1.2017 | Granted in 2017 | Exercised in 2017 | Lapsed in 2017 | Balance as at 31.12.2017 |
| Directors | 12 October 2017 | 12 October 2017 to 11 October 2018 | 4.37 | – | 15,250,000 | – | – | 15,250,000 |
| | 12 October 2017 | 12 October 2018 to 11 October 2019 | 4.37 | – | 15,250,000 | – | – | 15,250,000 |
| Employees | 12 October 2017 | 12 October 2017 to 11 October 2018 | 4.37 | – | 26,750,000 | – | – | 26,750,000 |
| | 12 October 2017 | 12 October 2018 to 11 October 2019 | 4.37 | – | 26,750,000 | – | – | 26,750,000 |
| | | | | – | 84,000,000 | – | – | 84,000,000 |

**Confidential**                                                    **Qin_00001068**



42. **PLEDGE OF ASSETS**

At the end of the reporting period, the Group has the following pledge of assets:

(a)  As described in note 16, the Group's leasehold land and buildings situated in the PRC amounting to HK$205,057,000 (2016: HK$24,456,000) was pledged to secure for certain bank borrowings granted to the Group.

(b)  As described in notes 31, the Group's pledged bank deposits amounting to HK$149,262,000 (2016: HK$121,642,000) was pledged to secure the FY 2016 Trust Loans.

(c)  As described in notes 36(a), 36(b) and 36(e), part of the box office's income generated by certain subsidiaries in coming years were pledged to secure for the FY 2015 Trust Loan, the FY 2016 Trust Loans and the FY 2017 Other Loan.

(d)  As described in notes 21 and 36, the Group pledged its subordinated Securities as stipulated in the ABS Arrangement as a collateral for the FY 2015 Trust Loan and the FY 2016 Trust Loans.

(e)  As at 31 December 2017, all equity interests in SMI Culture & Travel Group and held-for-trading investments were used as contingent collaterals for the margin account facilities granted to the Group as required.

43. **ACQUISITION OF SUBSIDIARIES**

(a)  **For the year ended 31 December 2017**

During the year ended 31 December 2017, the Group acquired the entire equity interests in fifty-one entities which are engaged in operation of theatres from independent third parties for an aggregated cash consideration of RMB1,432,000,000 (equivalent to approximately HK$1,719,546,000). The fifty-one entities are acquired so as to continue the expansion of the Group's theatre operation. The information for these acquisitions is disclosed on an aggregated basis as they are individually immaterial to the Group.



**Confidential**

### 43. ACQUISITION OF SUBSIDIARIES (Continued)

(a) **For the year ended 31 December 2017 (Continued)**

Assets acquired and liabilities recognised at the date of acquisitions are as follows:

| | HK$'000 |
|---|---|
| Fair value of net assets acquired: | |
| Property, plant and equipment | 200,403 |
| Inventories | 2,260 |
| Trade and other receivables (Note) | 27,248 |
| Bank balances and cash | 23,591 |
| Trade and other payables | (134,803) |
| Fair value of total identifiable net assets | 118,699 |
| Goodwill (note 17) | 1,600,847 |
| | 1,719,546 |
| Satisfied by: | |
| Cash | 1,719,546 |
| Net cash outflow on acquisition of subsidiaries: | |
| Cash consideration paid | (1,719,546) |
| Utilising deposits paid for acquisition of entities in prior years | 154,289 |
| Bank balances and cash acquired from the subsidiaries | 23,591 |
| | (1,541,666) |

Note: The fair value of trade and other receivables at the date of acquisition also represented the gross contractual amounts.

Goodwill arose from the acquisition of these subsidiaries because the costs of the combinations included control premiums. In addition, the consideration paid for the combinations effectively included amounts in relation to the benefit of expected synergies, revenue growth, future market development and the assembled workforce of these subsidiaries. These benefits are not recognised separately from goodwill because they do not meet the recognition criteria for identifiable intangible assets.

The acquisition-related costs are insignificant and have been excluded from the consideration transferred and recognised in profit or loss.

Included in the loss for the year is loss of HK$23,336,000 attributable to the additional business generated by these subsidiaries. Revenue for the year includes HK$95,858,000 generated from these subsidiaries.



## 43. ACQUISITION OF SUBSIDIARIES (Continued)

### (a) For the year ended 31 December 2017 (Continued)

Had the acquisition been completed on 1 January 2017, total group revenue for the year would have been HK$3,878,200,000, and loss for the year would have been HK$275,209,000. The pro forma information is for illustrative purposes only and is not necessarily an indication of revenue and results of operations of the Group that actually would have been achieved had the acquisition been completed on 1 January 2017, nor is it intended to be a projection of future results.

In determining the 'pro-forma' revenue and profit of the Group had these subsidiaries been acquired at the beginning of the current year, the Directors have calculated depreciation of property, plant and equipment acquired on the basis of the fair values arising in the initial accounting for the business combination.

### (b) For the year ended 31 December 2016

(i)  During the year ended 31 December 2016, the Group acquired the entire equity interests in seventy-nine entities which are engaged in operation of theatres from independent third parties for an aggregated cash consideration of RMB2,160,700,000 (equivalent to approximately HK$2,401,834,000). The seventy-nine entities are acquired so as to continue the expansion of the Group's theatre operation. The information for these acquisitions is disclosed on an aggregated basis as they are individually immaterial to the Group.

Assets acquired and liabilities recognised at the date of acquisitions are as follows:

|  | HK$'000 |
|---|---|
| Fair value of net assets acquired: | |
| Property, plant and equipment | 310,223 |
| Inventories | 3,868 |
| Trade and other receivables (Note) | 100,906 |
| Bank balances and cash | 23,200 |
| Trade and other payables | (315,663) |
| Finance lease payables | (6,712) |
| Fair value of total identifiable net assets | 115,822 |
| Goodwill (note 17) | 2,286,012 |
|  | 2,401,834 |
| Satisfied by: | |
| Cash | 2,401,834 |
| Net cash outflow on acquisition of subsidiaries: | |
| Cash consideration paid | (2,401,834) |
| Utilising deposits paid for acquisition of entities in prior years | 914,068 |
| Bank balances and cash acquired from the subsidiaries | 23,200 |
|  | (1,464,566) |



**Confidential**

**Qin_00001071**

**43. ACQUISITION OF SUBSIDIARIES (Continued)**

**(b) For the year ended 31 December 2016 (Continued)**

(i) (Continued)

Note: The fair value of trade and other receivables at the date of acquisition also represented the gross contractual amounts.

Goodwill arose from the acquisition of these subsidiaries because the costs of the combinations included control premiums. In addition, the consideration paid for the combinations effectively included amounts in relation to the benefit of expected synergies, revenue growth, future market development and the assembled workforce of these subsidiaries. These benefits are not recognised separately from goodwill because they do not meet the recognition criteria for identifiable intangible assets.

The acquisition-related costs are insignificant and have been excluded from the consideration transferred and recognised in profit or loss.

Included in the profit for the year ended 31 December 2016 is HK$36,478,000 attributable to the additional business generated by these subsidiaries. Revenue for the year ended 31 December 2016 includes HK$252,314,000 generated from these subsidiaries.

Had the acquisition been completed on 1 January 2016, total group revenue for the year ended 31 December 2016 would have been HK$3,561,275,000, and profit for the year ended 31 December 2016 would have been HK$463,698,000. The pro forma information is for illustrative purposes only and is not necessarily an indication of revenue and results of operations of the Group that actually would have been achieved had the acquisition been completed on 1 January 2016, nor is it intended to be a projection of future results.

In determining the 'pro-forma' revenue and profit of the Group had these subsidiaries been acquired at the beginning of the year ended 31 December 2016, the Directors have calculated depreciation of property, plant and equipment acquired on the basis of the fair values arising in the initial accounting for the business combination.

(ii) On 28 October 2016, the Group acquired approximately 33.42% equity interests of SMI Culture & Travel Group at a cash consideration of HK$213,899,000 from the open stock market which is engaged in the provision of cross-media services including investment in the production and distribution of films and television programmes and related services. Following the acquisition, the Group's equity interest in SMI Culture & Travel Group increased from 29.99% to 63.41% and SMI Culture & Travel Group becomes a subsidiary of the Company.

**Confidential**

**Qin_00001072**

43. **ACQUISITION OF SUBSIDIARIES (Continued)**
    (b) **For the year ended 31 December 2016 (Continued)**
        (ii) (Continued)

Assets acquired and liabilities recognised at the date of acquisition are as follows:

|  | HK$'000 |
|---|---|
| Fair value of net assets acquired: | |
| Property, plant and equipment | 444 |
| Intangible assets | 88,017 |
| Inventories | 227,572 |
| Trade and other receivables (Note) | 992,131 |
| Film rights investment | 209,535 |
| Bank balances and cash | 93,382 |
| Convertible notes | (130,128) |
| Derivative financial instruments | (55,452) |
| Other borrowings | (160,000) |
| Bonds | (509,550) |
| Trade and other payables | (209,710) |
| Net assets | 546,241 |

|  | HK$'000 |
|---|---|
| Goodwill arising on acquisition | |
| Consideration paid | 213,899 |
| Add: | |
| Non-controlling interests | 260,903 |
| Fair value of previously held interests | 191,998 |
| Less: | |
| Net assets acquired | (546,241) |
| Goodwill (note 17) | 120,559 |
| Satisfied by: | |
| Cash | 213,899 |
| Net cash outflow on acquisition of SMI Culture & Travel Group: | |
| Cash consideration paid | (213,899) |
| Bank balances and cash acquired from the SMI Culture & Travel Group | 93,382 |
|  | (120,517) |

Note: The fair value of trade and other receivables at the date of acquisition also represented the gross contractual amounts.

The non-controlling interests in SMI Culture & Travel Group recognised at the acquisition date was measured by reference to the fair value of the non-controlling interests and amounted to HK$260,903,000.

0074

**Confidential**    Qin_00001073

**43. ACQUISITION OF SUBSIDIARIES (Continued)**

    **(b)   For the year ended 31 December 2016 (Continued)**

          (ii)   (Continued)

               Goodwill arose from the acquisition of SMI Culture & Travel Group because the costs of the combinations included control premiums. In addition, the consideration paid for the combinations effectively included amounts in relation to the benefit of expected synergies, revenue growth, future market development and the assembled workforce of these subsidiaries. These benefits are not recognised separately from goodwill because they do not meet the recognition criteria for identifiable intangible assets.

               The acquisition-related costs are insignificant and have been excluded from the consideration transferred and recognised in profit or loss.

               Included in the profit for the year ended 31 December 2016 of the Group is a profit of HK$3,379,000 attributable to the additional business generated by these subsidiaries. Revenue for the year ended 31 December 2016 includes HK$16,744,000 generated from these subsidiaries.

               Had the acquisition been completed on 1 January 2016, total group revenue for the year end 31 December 2016 would have been HK$3,894,675,000, and profit for the year end 31 December 2016 would have been HK$430,176,000. The pro forma information is for illustrative purposes only and is not necessarily an indication of revenue and results of operations of the Group that actually would have been achieved had the acquisition been completed on 1 January 2016, nor is it intended to be a projection of future results.

               In determining the 'pro-forma' revenue and profit of the Group had these subsidiaries been acquired at the beginning of the year ended 31 December 2016, the Directors have calculated depreciation of property, plant and equipment and amortisation of intangible asset acquired on the basis of the fair values arising in the initial accounting for the business combination.

**44. DISPOSAL OF SUBSIDIARIES**

    (i)    On 30 September 2016, the Group entered into an agreement to dispose of one wholly owned subsidiary to an independent third party. The subsidiary was principally engaged in the operation of cinema in the PRC. The disposal of subsidiary was completed during the year ended 31 December 2016, a net gain on the disposal of such subsidiary of HK$251,000 was recognised in profit or loss.

**Confidential**

**Qin_00001074**

**44. DISPOSAL OF SUBSIDIARIES (Continued)**

(i) (Continued)

The aggregate net assets of the above subsidiary at its date of disposal are as follows:

|  | HK$'000 |
|---|---|
| Cash consideration | 44,837 |
| **Analysis of assets and liabilities over which control was lost:** | |
| Property, plant and equipment | 2,287 |
| Intangible assets | 915 |
| Goodwill | 36,804 |
| Inventories | 4 |
| Trade and other receivables | 1,283 |
| Bank balances and cash | 11 |
| Trade and other payables | (185) |
| Deferred tax liabilities | (229) |
|  | 40,890 |
| **Gain on disposal of the subsidiary** | |
| Consideration | 44,837 |
| Net assets disposed of | (40,890) |
| Cumulative exchange differences in respect of the net assets of the subsidiary reclassified from equity to profit or loss on loss of control of the subsidiary | (3,696) |
| Gain on disposal of the subsidiary | 251 |
| **Net cash inflow on disposal of the subsidiary** | |
| Cash consideration | 44,837 |
| Bank balance and cash | (11) |
|  | 44,826 |

0075

Confidential



Qin_00001075

**44. DISPOSAL OF SUBSIDIARIES (Continued)**

(ii) During the year ended 31 December 2015, the Company entered into an unconditional share transfer agreement with an independent third party to dispose of all the equity interest in the Photon Group. The disposal was completed on 30 April 2016.

The aggregate net assets of the Photon Group at its date of disposal are as follows:

|  | HK$'000 |
|---|---|
| Cash consideration | 22,250 |
| **Analysis of assets and liabilities over which control was lost:** |  |
| Intangible assets | 25,120 |
| Bank balances and cash | 58 |
| Trade and other payables | (3,667) |
|  | 21,511 |
| **Gain on disposal of the subsidiary** |  |
| Consideration | 22,250 |
| Net assets disposed of | (21,511) |
| Non-controlling interest | (1,222) |
| Cumulative exchange differences in respect of the net assets of the subsidiary reclassified from equity to profit or loss on loss of control of the subsidiary | 1,641 |
| Gain on disposal of the subsidiary | 1,158 |
| **Net cash inflow on disposal of the subsidiary** |  |
| Cash consideration | 22,250 |
| Cash consideration to be received | (14,233) |
| Bank balance and cash | (58) |
|  | 7,959 |

**Confidential**                                           Qin_00001076



**45. LEASE COMMITMENTS**

As at 31 December 2017, the total future minimum lease payments under non-cancellable operating leases are payable as follows:

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Within one year | 452,680 | 422,510 |
| In the second to fifth years inclusive | 1,746,645 | 1,659,832 |
| After five years | 2,553,715 | 2,702,369 |
|  | 4,753,040 | 4,784,711 |

Operating lease payments represent rentals payable by the Group for its office, staff quarters and warehouses in Hong Kong, the office and certain cinema premises in the PRC.

The leases in Hong Kong are negotiated for an average term of 2 years while the leases in the PRC are negotiated for an average term of 15 to 20 years.

The above lease commitments only include commitments for basic rentals and property management fee, and do not include commitments for additional rental payable (contingent rents), if any, which are to be determined generally by applying pre-determined percentages to future revenue less the basic rentals of the respective leases, as it is not possible in advance to calculate the amount of such additional rental.

**46. CAPITAL COMMITMENTS**

At the end of the reporting period, the Group had the following capital commitments:

|  |  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|---|
| (a) | Amount contracted but not provided for in the consolidated financial statements in respect of: |  |  |
|  | Renovation of cinema premises | 439,082 | 202,093 |
|  | Capital contribution to an investment classified as available-for-sale investment | 59,701 | 67,845 |

As described in note 25, the management of the Group is engaged with various vendors to acquire 11 theatres (2016: 6) in the PRC with total deposits of HK$292,928,000 (2016: HK$154,289,000) paid to individual vendors under the memorandum of understandings entered into between the vendors and the Group. In the opinion of the Directors, the total amount of commitment on the acquisitions is subject to the results of due diligence works as at 31 December 2017 and not yet be conclusive.

**47. CONTINGENT LIABILITIES**

Up to the date of approval for issuance of these consolidated financial statements, there are certain disputes which arise from time to time in the ordinary course of the operation of theatres. The Group is in the course of processing these matters. While it is in an early stage of those disputes, the Directors are of the view that these disputes will not have a material adverse impact on the consolidated financial statements of the Group.

As at 31 December 2017 and 31 December 2016, the Group did not have any other significant contingent liabilities.

0076


**Confidential**

Qin_00001077

**48. RELATED PARTY TRANSACTIONS**

In addition to the related party balances disclosed in note 33, the Group has the following transactions with its related parties during the year:

(a) Mr. Qin, the controlling shareholder of the Group, provided a personal financial guarantee to the lenders to secure the Group's borrowings.

(b) 星美聖典 provided a corporate financial guarantee to the lenders to secure the FY 2016 Trust Loans.

(c) The compensation paid to key management personnel, the Directors, by the Group during the year was disclosed in note 12.

**49. STATEMENT OF FINANCIAL POSITION OF THE COMPANY**

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| **Non-current assets** | | |
| Investments in subsidiaries (Note) | 4,656,606 | 5,819,354 |
| Interests in an associate | – | 50,000 |
| Available-for-sale investment | 66,347 | 65,396 |
| | 4,722,953 | 5,934,750 |
| **Current assets** | | |
| Prepayments, deposits and other receivables | 42,755 | 78,448 |
| Other loan | 126,000 | 150,000 |
| Amounts due from related parties | 26,813 | 169 |
| Bank balances and cash | 10,489 | 37,340 |
| | 206,057 | 265,957 |
| **Current liabilities** | | |
| Other payables | 86,511 | 41,670 |
| Financial guarantee obligation | – | 103 |
| Other borrowings | – | 100,000 |
| Convertible notes | 799,000 | 847,999 |
| Bonds | 1,079,445 | 780,180 |
| Amount due to subsidiaries | 315,797 | 2,376 |
| | 2,280,753 | 1,772,328 |
| **Net current liabilities** | (2,074,696) | (1,506,371) |
| **Total assets less current liabilities** | 2,648,257 | 4,428,379 |
| **Non-current liabilities** | | |
| Convertible notes | 10,000 | – |
| Bonds | 330,989 | 639,886 |
| | 340,989 | 639,886 |
| | 2,307,268 | 3,788,493 |
| **Capital and reserves** | | |
| Share capital | 1,360,021 | 1,361,121 |
| Reserves (note 51) | 947,247 | 2,427,372 |
| **Total equity** | 2,307,268 | 3,788,493 |

Note: During the year ended 31 December 2016, the Company waived the amounts due from subsidiaries, amounting to HK$735,117,000 (2017: nil). It was treated as the deemed capital contribution.

**Confidential**                                                                          **Qin_00001078**

## 50. PARTICULARS OF PRINCIPAL SUBSIDIARIES OF THE COMPANY

Particulars of the principal subsidiaries as at 31 December 2017 are as follows:

| Name of subsidiary | Place of incorporation/ establishment | Issued/ paid up capital | Percentage of equity interest held by the Company | | Principal activities |
|---|---|---|---|---|---|
| | | | Directly | Indirectly | |
| Able Charm Limited | HK | 10,000,000 ordinary shares of HK$1 each | – | 100% | Investment holding |
| Admiral Team Limited | The British Virgin Islands ("BVI") | 1 ordinary share of US$1 | – | 100% | Investment holding |
| *Beijing Huilongguan Stellar Cineplex Management Co., Ltd. 北京回龍觀星美國際 影城管理有限公司) | PRC | Registered capital of RMB6,000,000 | – | 100% | Operation of cinema |
| *Beijing Mingxiang International Cinema Mgt Co., Ltd. 北京名翔國際影院 管理有限公司) | PRC | Registered capital of RMB7,000,000 | – | 100% | Operation of cinema |
| *Beijing Shijiecheng Stellar Cineplex Management Co., Ltd. 北京世界城星美國際 影城管理有限公司) | PRC | Registered capital of RMB6,000,000 | – | 100% | Operation of cinema |
| *Beijing Wangjing Stellar International Cinema Mgt Co., Ltd. 北京望京星美國際 影城管理有限公司) | PRC | Registered capital of RMB7,500,000 | – | 100% | Operation of cinema |
| Beijing Xingmeihui Catering Mgt Co., Ltd. 北京星美滙餐飲管理 有限公司) | PRC | Registered capital of RMB8,800,000 | – | 100% | Operation of cafe and sale of food and beverage in cinema |
| Beijing Zhong Xingmeihui Trading Co., Ltd. 北京中星美滙商貿 有限公司) | PRC | Registered capital of RMB10,000,000 | – | 90% | Operation of In-theatre counter sales and online shopping |

0077

Confidential



Qin_00001079

50. **PARTICULARS OF PRINCIPAL SUBSIDIARIES OF THE COMPANY (Continued)**

| Name of subsidiary | Place of incorporation/ establishment | Issued/ paid up capital | Percentage of equity interest held by the Company | | Principal activities |
|---|---|---|---|---|---|
| | | | Directly | Indirectly. | |
| Bravissimi Films (International) Limited | BVI | 1 ordinary share of US$1 | 100% | – | Investment in production of film |
| Campbell Hall Limited | BVI | 3 ordinary shares of US$1 each | – | 100% | Investment holding |
| *Chengdu Runyun | PRC | Registered capital of RMB11,851,852 | – | 84.37% | Principally engaged in operation of cinema, and provisions of advertising and public relation services |
| Color Asia Pacific Limited | HK | 1 ordinary share of HK$1 | – | 100% | Investment holding |
| GDL Nominee Limited | HK | 2 ordinary shares of HK$1 each | – | 100% | Investment holding |
| *Lanzhou Stellar Cineplex Limited 蘭州星美影城管理有限公司 | PRC | Registered capital of RMB6,000,000 | – | 100% | Operation of cinema |
| Market Dynamics (Hong Kong) Limited | HK | 10,000 ordinary shares of HK$1 each | – | 100% | Provision of advertising and public relation services |
| North Hollywood Limited | BVI | 1 ordinary share of US$1 | 100% | – | Investment holding |

**Confidential**                                                                 **Qin_00001080**

## 50. PARTICULARS OF PRINCIPAL SUBSIDIARIES OF THE COMPANY (Continued)

| Name of subsidiary | Place of incorporation/ establishment | Issued/ paid up capital | Percentage of equity interest held by the Company Directly | Percentage of equity interest held by the Company Indirectly | Principal activities |
|---|---|---|---|---|---|
| *Shanghai Jinshan Baibei Cineplex Mgt Co., Ltd. 上海金山星美百倍影院 管理有限公司 | PRC | Registered capital of RMB6,000,000 | – | 100% | Operation of cinema |
| *Shanghai Lemo Stellar Cineplex Management Co., Ltd. 上海星美樂莫影院 管理有限公司 | PRC | Registered capital of RMB6,000,000 | – | 100% | Operation of cinema |
| *Shanghai Stellar Cineplex Management Co., Ltd. 上海星美影院管理 有限公司 | PRC | Registered capital of RMB12,000,000 | – | 100% | Operation of cinema |
| SMI Culture & Travel Group | Cayman Islands | 1,316,009,000 ordinary shares of HK$0.01 each | – | 62.67% | Provision of cross-media services including investment in the production and distribution of films and television programs and related services |
| SMI International Cinemas Limited | HK | 10,000 ordinary shares of HK$1 each | – | 100% | Investment holding |
| SMI Investment (HK) Limited | HK | 1 ordinary share of HK$1 | 100% | – | Investment in securities |
| SMI Management (Beijing) Limited | HK | 1 ordinary share of HK$1 | – | 100% | Provision of administrative services |
| SMI Management (HK) Limited | HK | 1 ordinary share of HK$1 | – | 100% | Provision of administrative services |
| *Tianjin Stellar Cineplex Management Co., Ltd. 天津星美影城管理 有限公司 | PRC | Registered capital of RMB6,000,000 | – | 100% | Operation of cinema |

\*   These subsidiaries are held by the Company under the Contractual Arrangements. The Directors are of the opinion that the Group has control over these companies. Future details of those are set out in note 4.

0078

Confidential



Qin_00001081

**50. PARTICULARS OF PRINCIPAL SUBSIDIARIES OF THE COMPANY (Continued)**

The above table lists the subsidiaries of the Company which, in the opinion of the Directors, principally affected the results or assets or liabilities of the Group. To give details of other subsidiaries which are mainly inactive or engaged in investment holding would, in the opinion of the Directors, result in particulars of excessive length.

**Details of non-wholly-owned subsidiaries that have material non-controlling interests**

The table below shows details of a non-wholly-owned subsidiaries of the Company that have material non-controlling interests:

| Name of subsidiary | Place of incorporation and principal place of business | Proportion of ownership interests and voting rights held by non-controlling interests | | (Loss) profit allocated to non-controlling interests | | Accumulated non-controlling interests | |
|---|---|---|---|---|---|---|---|
| | | 2017 | 2016 | 2017 HK$'000 | 2016 HK$'000 | 2017 HK$'000 | 2016 HK$'000 |
| SMI Culture & Travel Group | Cayman Island | 37.3% | 35.5% | (53,108) | 1,120 | 345,110 | 255,160 |
| Chengdu Runyun | PRC | 15.6% | – | (62,171) | – | 700,772 | – |
| Individually immaterial | | | | 2,493 | 2,260 | (3,655) | (7,431) |
| | | | | (112,786) | 3,380 | 1,042,227 | 247,729 |

Summarised financial information in respect of the Group's subsidiary that have material non-controlling interests is set out below. The summarised financial information below represents amounts before intragroup eliminations.

SMI Culture & Travel Group

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Current assets | 1,453,662 | 1,477,654 |
| Non-current assets | 213,331 | 82,762 |
| Current liabilities | 867,418 | 995,844 |
| Non-current liabilities | 13,671 | – |
| Equity attributable to owners of the company | 787,571 | 565,388 |
| Non-controlling interests | (1,667) | (816) |

Current assets mainly consists of inventories of HK$185,926,000 (2016: HK$226,849,000), film rights investments of HK$810,617,000 (2016: HK$397,643,000), trade and other receivables of HK$323,327,000 (2016: HK$432,168,000), amounts due from a related party/a shareholder of HK$127,664,000 (2016: HK$12,200,000) and bank balances and cash of HK$6,128,000 (2016: HK$408,794,000).

Current liabilities mainly consists of trade and other payables of HK$124,080,000 (2016: HK$67,977,000), amounts due to fellow subsidiaries/directors of HK$14,263,000 (2016: HK$360,000), tax payable of HK$156,952,000 (2016: HK$141,142,000), loan notes of HK$448,725,000 (2016: HK$445,531,000), convertible notes of HK$108,813,000 (2016: HK$159,573,000), derivatives of HK$14,585,000 (2016: HK$55,685,000) and other borrowing of nil (2016: HK$125,576,000).

Confidential Qin_00001082

50. **PARTICULARS OF PRINCIPAL SUBSIDIARIES OF THE COMPANY (Continued)**

Non-current assets mainly consists of property, plant and equipment of HK$2,387,000 (2016: HK$390,000), intangible assets of HK$115,223,000 (2016: HK$82,372,000) and goodwill of HK$95,721,000 (2016: nil).

| | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| Revenue | 134,948 | 548,429 |
| (Loss) profit for the year | (133,914) | 26,441 |
| Other comprehensive income (expenses) | 29,840 | (1,391) |
| Net cash outflow from operating activities | (289,399) | (309,014) |
| Net cash (outflow) inflow from investing activities | (3,194) | 1,049 |
| Net cash (outflow) inflow from financing activities | (139,913) | 696,990 |
| Net cash (outflow) inflow | (432,506) | 389,025 |

Chengdu Runyun

| | 2017 HK$'000 |
|---|---|
| Current assets | 833,261 |
| Non-current assets | 9,338,017 |
| Current liabilities | 4,076,514 |
| Non-current liabilities | 1,629,593 |
| Equity attributable to owners of the company | 4,465,171 |

Current assets mainly consists of prepaid lease payments of HK$4,234,000, inventories of HK$24,317,000, trade and other receivables of HK$736,202,000 and bank balances and cash of HK$68,508,000.

Current liabilities mainly consists of trade and other payables of HK$2,820,124,000, EIT and other PRC tax payable of HK$296,708,000, finance lease payable of HK$90,059,000, bank borrowings of HK$42,028,000 and amount due to group companies of HK$827,595,000

Non-current assets mainly consists of property, plant and equipment of HK$3,323,267,000, goodwill of HK$5,939,653,000, intangible assets of HK$33,161,000, prepaid lease payments of HK$37,597,000 and interest in associate of HK$4,339,000.

Non-current liabilities mainly consists of bank borrowings of HK$106,871,000, other borrowings of HK$1,455,498,000, finance lease payable of HK$55,142,000 and deferred tax liabilities HK$12,082,000.

| | 2016 HK$'000 |
|---|---|
| Revenue | 2,723,669 |
| Profit for the year | 163,744 |

8079

Confidential

Qin_00001083

## 51. RESERVES

| THE COMPANY | Share premium HK$'000 | Other reserve HK$'000 note (iii)(a) | Contributed surplus HK$'000 | Convertible notes reserve HK$'000 | Share-based payment reserve HK$'000 | Capital redemption reserve HK$'000 | Accumulated losses HK$'000 | Total HK$'000 |
|---|---|---|---|---|---|---|---|---|
| At 1 January 2016 | 1,487,498 | (36,615) | 1,468,501 | 35,381 | 12,393 | 4,415 | (151,626) | 2,819,947 |
| Loss and total comprehensive expense for the year | - | - | - | - | - | - | (231,729) | (231,729) |
| Approved final dividend for the year ended 31 December 2015 | - | - | - | - | - | - | (147,231) | (147,231) |
| Issue of shares upon conversion | 30,005 | - | - | (564) | - | - | 564 | 30,005 |
| Recognition of share options exercised | 5,467 | - | - | - | (7,508) | - | 7,508 | 5,467 |
| Lapse of share options | - | - | - | - | (4,885) | - | 4,885 | - |
| Repurchase of own shares | (57,187) | - | - | - | - | 8,100 | - | (49,087) |
| Changes in equity for the year | (21,715) | - | - | (564) | (12,393) | 8,100 | (366,003) | (392,575) |
| At 31 December 2016 | 1,465,783 | (36,615) | 1,468,501 | 34,817 | - | 12,515 | (517,629) | 2,427,372 |
| At 1 January 2017 | 1,465,783 | (36,615) | 1,468,501 | 34,817 | - | 12,515 | (517,629) | 2,427,372 |
| Loss and total comprehensive expense for the year | - | - | - | - | - | - | (1,305,814) | (1,305,814) |
| Approved final dividend for the year ended 31 December 2016 | - | - | - | - | - | - | (179,668) | (179,668) |
| Repurchase of own shares | (7,807) | - | - | - | - | 1,100 | - | (6,707) |
| Share-based payment | - | - | - | - | 12,064 | - | - | 12,064 |
| Changes in equity for the year | (7,807) | - | - | - | 12,064 | 1,100 | (1,485,482) | (1,480,125) |
| At 31 December 2017 | 1,457,976 | (36,615) | 1,468,501 | 34,817 | 12,064 | 13,615 | (2,003,111) | 947,247 |

**(i)    Share premium of the Company**

The application of the share premium account is governed by Section 40 of the Companies Act 1981 of Bermuda.

Pursuant to Section 46(2) of the Companies Act 1981 of Bermuda, the Company was authorised by a special resolution passed at the annual general meeting of the Company held on 6 June 2014 to reduce the share premium account ("Share Premium Reduction"). As at 1 January 2014, the amount standing to the credit of the share premium account of the Company was approximately HK$1,692,627,000 and the amount of accumulated losses was approximately HK$260,129,000. Under the Share Premium Reduction, the entire amount standing to the credit of the share premium account of the Company as at 1 January 2014 in the sum of approximately HK$1,692,627,000 was reduced, with part of the credit arising therefrom being applied to offset the accumulated losses of the Company as at 31 December 2013 in the sum of approximately HK$260,129,000 in full and the remaining balance of the credit in the sum of approximately HK$1,432,498,000 being credited to the contributed surplus account of the Company.

Confidential

Qin_00001084

51. **RESERVES (Continued)**

(ii) **Other reserve**

Other reserve of the Company and the Group comprises:

(a) The difference between the fair value of the 843,500,000 ordinary shares issued for the acquisition of the entire equity interest in Colour Asia Pacific Limited and the issued and fully paid up amount of such ordinary shares in 2009.

Other than those set out above, the other reserve of the Group also comprises:

(b) The consideration for the additional equity interests of two principal subsidiaries (Further details of the transactions are set out in the circular of the Company dated 18 January 2011).

(c) During the year ended 31 December 2016, after obtaining the control of SMI Culture & Travel Group (see note 43(b)(ii)), the Group acquired 1.08% additional interest in SMI Culture & Travel Group from non-controlling interests, increasing its controlling interest from 63.41% to 64.49%. The consideration on acquisition of HK$33,756,000 were paid in cash. The difference of HK$2,194,000 between the carrying amount of non-controlling interests being acquired of HK$31,562,000 and the consideration paid of HK$33,756,000 has been debited to other reserve.

(d) Save as disclosed in note 37(i), the Convertible Note XIII was converted into the ordinary share of SMI Culture & Travel Group, the subsidiary of the Company. The Group's interest in SMI Culture and Travel Group was diluted by 3.85%. The difference of HK$19,724,000 between the carrying amount of the Group's equity interests being disposed of HK$24,619,000 and the aggregate sum of liability component and embedded derivative of the Convertible Note XII amount to HK$44,343,000 has been credited to other reserve.

(e) During the year ended 31 December 2016, the former shareholder TicketChina Holdings Limited waived the shareholder's loan of HK$14,587,000 and treated as the deemed capital contribution to the Group and credited to other reserve. At the same date, the Group acquired 35.8% additional interest in TicketChina Holdings Limited, a subsidiary of the Company, from non-controlling interests. The consideration on acquisition of HK$400,000 were paid in cash. The difference of HK$6,068,000 between the carrying amount of non-controlling interests being acquire of HK$6,468,000 and the consideration paid of HK$400,000 has been credited to other reserve.

(f) During the year ended 31 December 2017, the Group acquired 11.02% additional interest in SMI Culture & Travel Group from non-controlling interests, increasing its controlling interest from 64.49% to 75.51%. The consideration on acquisition of HK$85,972,000 were paid in cash. The difference of HK$6,804,000 between the carrying amount of non-controlling interests being acquired of HK$92,776,000 and the consideration paid of HK$85,972,000 has been credited to other reserve.

(g) Save as disclosed in notes 37(g) and 37(h), the Convertible Note XI and Convertible Note XII were converted into the ordinary share of SMI Culture & Travel Group. The Group's interest in SMI Culture & Travel Group was diluted by 5.62%. The difference of HK$2,167,000 between the carrying amount of the Group's equity interests being disposed of HK$68,074,000 and the aggregate sum of liability components and embedded derivatives of the Convertible Note XI and Convertible Note XII amounted to HK$65,907,000 has been debited to other reserve.



Confidential

Qin_00001085

**51. RESERVES (Continued)**

    **(ii) Other reserve (Continued)**

        (h) During the year ended 31 December 2017, SMI Culture & Travel Group completed a placement of 214,285,000 shares, with par value of HK$0.01, of SMI Culture & Travel Group at a price of HK$0.70 per share. The Group's interest in SMI Culture & Travel Group was diluted by 12.41%. The difference of HK$19,912,000 between the carrying amount of the Group's equity interests being disposed of HK$165,412,000 and the net proceeds received from the placement amounted to HK$145,500,000 has been debited to other reserve.

        (i) During the year ended 31 December 2017, the Group disposed the entire equity interest in SMIE, a wholly-owned subsidiary of the Company, to SMI Culture Investment, a wholly-owned subsidiary of SMI Culture & Travel Group, at total consideration of RMB150,000,000 (equivalent to HK$171,000,000) settled by cash consideration of RMB50,000,000 (equivalent to HK$57,000,000) and issue of SMI Culture & Travel Group' shares at consideration of RMB100,000,000 (equivalent to HK$114,000,000) to the Company. The disposal of SMIE to SMI Culture Investment is accounted as business combination under common control. The Group's interest in SMI Culture & Travel Group increased by 5.19%. The difference of HK$5,861,000 between the carrying amount of non-controlling interests being acquired of and the share consideration has been credited to other reserve.

        (j) During the year ended 31 December 2017, Chengdu Runyun, a subsidiary of the Company, entered into the Capital Injection Agreements, which the Investors have agreed to make capital contribution in exchange of a total of 15.63% of the enlarged equity interest of Chengdu Runyun. The capital contribution on 15.63% enlarged equity interest on Chengdu Runyun was completed in June 2017 and aggregate proceeds of RMB1,980,000,000 settled by cash was received from the Investors upon completion. The Group has not lost control over Chengdu Runyun. The difference of HK$1,723,855,000 between the carrying amount of the Group's equity interests being deemed disposed and the proceeds from capital contribution has been credited to other reserve. In July 2017, additional capital contribution of RMB230,000,000 settled as cash was received from the Investors, the capital contribution accounted as equity transaction and the difference of HK$223,463,000 between the capital contribution and carrying of non-controlling interest deemed disposed was credited to other reserve.

    **(iii) Contributed surplus of the Company and the Group**

    The contributed surplus of the Group represented: (a) the balance of credit arising from the reduction of share capital and the cancellation of share premium in relation to the capital reorganisation in 1996; (b) less the amount transferred to accumulated losses in relation to capital reorganisation in the years ended 31 March 2003 and 2005; (c) the amount released from disposal of certain associates and distribution of dividend in prior years, and (d) the balance of credit arising from the reduction of share capital and the cancellation of share premium in relation to the Share Premium Reduction mentioned in note (i) above during the year ended 31 December 2014.

    Under the Companies Act of Bermuda, the contributed surplus account of the Company is available for distribution. However, the Company cannot declare or pay a dividend, or make a distribution out of contributed surplus if: (a) the Company is, or would after the payment be, unable to pay its liabilities as they become due; or (b) the realisable value of the Company's assets would thereby be less than the aggregate of its liabilities and its issued share capital and share premium account.

**Confidential**        **Qin_00001086**



51. **RESERVES (Continued)**

    (iv) **Translation reserve of the Group**

        The translation reserve comprises all foreign exchange differences arising from the translation of the financial statements of foreign operations.

    (v) **Statutory reserve of the Group**

        As stipulated by the relevant laws and regulations for foreign investment enterprises in the PRC, the Company's PRC subsidiaries are required to maintain a statutory surplus reserve fund. Appropriation to such reserve is made out of net profit after taxation as reflected in the statutory financial statements of the PRC subsidiaries while the amounts and allocation basis are decided by their board of directors annually. The statutory surplus reserve fund can be used to make up prior year losses, if any, and can be applied in conversion into capital by means of capitalisation issue.

52. **CAPITAL RISK MANAGEMENT**

The Group manages its capital to ensure that entities in the Group will be able to continue as a going concern while maximising the return to shareholders through the optimisation of the debt and equity balance. The Group's overall strategy remains unchanged from prior year.

The capital structure of the Group consists of borrowings and equity attributable to owners of the Company (comprising issued share capital, share premium, reserves and retained profits).

The Directors review the capital structure regularly. As part of this review, the directors consider the cost of capital and the risks associated with each class of capital. Based on recommendations of the directors, the Group will balance its overall capital structure through the payment of dividends, new share issues and share buy-backs as well as the issue of new debts or the redemption of existing debts.

53. **FAIR VALUE MEASUREMENTS**

Fair value is the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. The disclosures of fair value measurements as shown above use a fair value hierarchy that categorises into three levels the inputs to valuation techniques used to measure fair value:

- Level 1 inputs: quoted prices (unadjusted) in active markets for identical assets or liabilities that the Group can access at the measurement date.

- Level 2 inputs: inputs other than quoted prices included within level 1 that are observable for the asset or liability, either directly or indirectly.

- Level 3 inputs: unobservable inputs for the asset or liability.

The Group's investments in listed equity interests in held-for-trading investments are measured at fair value (Level 1 inputs) at the end of the reporting period. The Group's investments in financial assets designated as at fair value through profit or loss and derivative financial instruments are measured at fair value (level 3 inputs) at the end of the reporting period. There was no transfers between Level 1, 2 and 3 during the year.

The Group's investments in unlisted interests in available-for-sale investments are measured at fair value (Level 3 inputs) for impairment review assessment at the end of the reporting period.

The Directors consider that the carrying amounts of the other financial assets and financial liabilities recorded at amortised cost in the results and financial position of the Group approximate their respective fair values.

0081

**Annual Report 2017**  129

**Confidential**

Qin_00001087

### 54. FINANCIAL INSTRUMENTS

#### (a) Financial risk management objectives

Financial instruments are fundamental to the Group's daily operations. The risks associated with financial instruments and the policies on how to mitigate these risks are set out below. The management manages and monitors these exposures to ensure appropriate measures are implemented on a timely and effective manner.

#### (b) Categories of financial instruments

|  | 2017 HK$'000 | 2016 HK$'000 |
|---|---|---|
| **Financial assets** | | |
| Financial assets at fair value through profit or loss: | | |
| – Held-for-trading investments | 61,961 | 304,217 |
| – Financial assets designated as at fair value through profit or loss | 147,941 | – |
| Available-for-sales investments | 66,347 | 65,396 |
| Loans and receivables (including cash and cash equivalents) | 1,416,290 | 1,852,220 |
| **Financial liabilities** | | |
| Financial liabilities at fair value through profit or loss: | | |
| – Derivatives | 14,584 | 55,686 |
| Financial liabilities at amortised cost | 5,846,520 | 6,376,272 |

Details of the significant accounting policies and methods adopted, including the criteria for recognition, the basis of measurement and the basis on which income and expenses are recognised, in respect of each class of financial asset and financial liability are disclosed in note 3.

#### (c) Credit risk management

The carrying amount of financial assets designated as at fair value through profit or loss, deposits paid for acquisitions of property, plant and equipment, other financial assets, deposits paid for the acquisitions of entities, the pledged bank deposits, the bank balances and cash, trade and other receivables, and amounts due from related parties represents the Group's maximum exposure to credit risk in relation to the Group's financial assets.

The Group's credit risk is primarily attributable to deposits paid and trade receivables and advances made to some independent third parties which were included in other receivables.

The Group has concentration of credit risk as 44% (2016: 24%) of the total trade receivables were due from the Group's five largest customers with average credit period of 90 to 180 days. In order to minimise the credit risk, the Group reviews the recoverable amount of each individual's receivables at the end of the reporting period to ensure that adequate impairment losses are made for irrecoverable amounts. An internal credit assessment process assesses the potential borrower's credit quality and defines credit limits by borrowers. In this regard, the Directors consider that the Group's credit risk is significantly reduced.

**Confidential**

**Qin_00001088**



**54. FINANCIAL INSTRUMENTS (Continued)**

**(c) Credit risk management (Continued)**

In addition, the Group has concentration of credit risk as 34% and 100% (2016: 39% and 100%) of progress payments for construction of property, plant and equipment and deposits paid for acquisitions of entities, respectively, were due from the contractors and the agent (see note 24 and 25 for details). In order to minimise the credit risk, the management of the Group has delegated a team responsible for determination of progress payment approvals and other monitoring procedures to ensure that follow-up action is taken to the proper realisation of the progress payments and deposits. In addition, the Group reviews the progress on the renovation and due diligence works carrying out by the contractors and the agent during the reporting period, the continuous business relationship and the construction payables to contractors and the agent subsequent to the end of the reporting period, the underlying assets would be obtained by the Group from the vendors under the conditional sales and purchase agreements with the contractors and the agent and the financial background of the contractors and the agent to ascertain the recoverability of the amounts paid to the contractors and the agent.

As a result, the Directors consider that the Group's exposure to credit risk on the amounts paid to the contractors and the agent are significantly reduced.

The credit risk for bank deposits and bank balances exposure is considered minimal as such amounts are placed in banks in PRC and Hong Kong having reputation.

None of the Group's financial assets are secured by collateral or other credit enhancements.

**(d) Interest rate risk management**

The Group's exposure to changes in interest rate risk is mainly attributable to its bank deposits in Hong Kong and the PRC and bank borrowings in the PRC. These bank deposits and bank borrowings bear interests at variable interest rates and expose the Group to cash flow interest rate risk. The Group is also exposed to fair value interest rate risk in relation to fixed-rate other loan, bank and other borrowings, and convertible notes. The Group currently does not use any derivative contracts to hedge its exposure to interest rate risk. The Group has not formulated a policy to manage the interest rate risk.

The Group's exposure to interest rate risk on financial liabilities is detailed in the liquidity risk management section of this note. The Group's cash flow interest rate risk is mainly concentrated on the fluctuation of the bank deposit rate arising from bank deposits in Hong Kong and PBOC base interest rate arising from bank deposits and bank borrowings in the PRC. The bank deposits carried at prevailing market rates.

The following table details the Group's sensitivity to a 100 basis points increase and decrease in bank deposit rate, and a 100 basis points increase and decrease in PBOC base interest rate prescribed interest rate. 100 basis points are the sensitivity rate used when reporting interest rate risk internally to key management personnel and represents management's assessment of the reasonably possible change in interest rates.

The sensitivity analysis includes only variable-rate bank deposits and bank borrowings assuming the amount of bank deposits and bank borrowings outstanding at the end of the reporting period was outstanding for the whole year.

If bank deposit rate had been 100 basis points (2016: 100 basis points) higher/lower and all other variables were held constant, the Group's post-tax loss (2016: post tax-profit) for the year ended 31 December 2017 would decrease/increase by HK$744,000 (2016: increase/decrease by HK$5,097,000).

If PBOC based interest rate had been 100 basis points (2016: 100 basis points) higher/lower and all other variables were held constant, the Group's post-tax loss (2016: post tax-profit) for the year ended 31 December 2017 would increase/decrease by HK$559,000 (2016: decrease/increase by HK$292,000).

**Confidential**

**Qin_00001089**

## 54. FINANCIAL INSTRUMENTS (Continued)

### (e) Price risk management

The Group is exposed to equity price risk through its investments in listed equity securities. The management manages this exposure by maintaining a portfolio of investments of different risks. The Group's equity price risk is mainly concentrated on equity instruments quoted in the Stock Exchange.

The sensitivity analyses below have been determined based on the exposure to the change of share price and its volatility of the listed equity securities at the reporting date only.

As at 31 December 2017, if the share price of the investment increases/decreases by 10%, loss after tax for the year (2016: profit after tax for the year) would have been approximately HK$5,174,000 lower/higher (2016: HK$25,402,700 higher/lower), arising as a result of the fair value gain/loss of the investment.

### (f) Foreign currency risk management

The Group has minimal exposure to foreign currency risk as most of its business transactions, assets and liabilities are principally denominated in Hong Kong dollars and Renminbi which are the functional currencies of the Group's entities. The Group currently does not have a foreign currency hedging policy in respect of foreign currency transactions, assets and liabilities. The Group monitors its foreign currency exposure closely and will consider hedging significant foreign currency exposure should the need arise.

### (g) Liquidity risk management

The Directors consider that the Group's holding of bank balances and cash, bank deposits, together with net cash flow from operating activities and committed credit facilities, can provide adequate sources of funding to enable the Group to meet in full its financial obligations due for the foreseeable future and manage its liquidity position. In addition, the management of the Group expects to fund the remaining estimated capital expenditure and commitments of its business development in Hong Kong, Taiwan and the PRC through a proper balance between internal generated funds and credit facilities secured by the Group's assets.

Save as disclosed in note 1, the management of the Company have given careful consideration of the future liquidity of the Group in light of the fact that the Group incurred a net current liabilities of HK$3,050,152,000 as at 31 December 2017. The management of the Company considered that the Company could obtain adequate funds to meet in full its financial obligations as they fall due for the foreseeable future by obtaining full support by adequate funds provided by Mr. Qin and the proceeds from the other financing activities detailed in note 1.

The following table details the Group's remaining contractual maturities of non-derivative financial liabilities that exposed the Group to liquidity risk based on the agreed repayment terms. The table has been drawn up based on the undiscounted cash flows of financial liabilities based on the earliest date on which the Group could be required to pay. The table includes both interests and principal cash flows. To the extent that interest flows are floating rate, the undiscounted amount of interest payment is estimated based on the interest rate at the end of the reporting period.

**Confidential**                                                                                    **Qin_00001090**

54. FINANCIAL INSTRUMENTS (Continued)

(g) Liquidity risk management (Continued)

| 2017 | Weighted average effective interest rate | On demand/ less than 1 year HK$'000 | Between 1 and 2 years HK$'000 | Between 2 and 5 years HK$'000 | Over 5 years HK$'000 | Total undiscounted cash flow HK$'000 | Carrying amount at 31.12.2017 HK$'000 |
|---|---|---|---|---|---|---|---|
| **Financial liabilities at amortised cost** | | | | | | | |
| Trade and other payables | | | | | | | |
| – Trade and other payables | – | 615,989 | – | – | – | 615,989 | 615,989 |
| – Margin payables due to financial institutions | 16% | 389,130 | – | – | – | 389,130 | 389,130 |
| Amount due to related parties | – | 22,163 | – | – | – | 22,163 | 22,163 |
| Finance lease payables | 5.87% | 98,488 | 37,053 | 23,029 | – | 158,570 | 145,201 |
| Other borrowings | 11.73% | 1,532,598 | 823,875 | – | – | 2,356,473 | 1,967,774 |
| Bank borrowings | 6.53% | 47,385 | 5,041 | 13,917 | 17,788 | 84,131 | 74,492 |
| Convertible notes | 11.58% | 1,122,485 | 10,500 | – | – | 1,132,985 | 917,813 |
| Bonds | 8.59% | 1,715,001 | 28,917 | 331,492 | 83,035 | 2,158,445 | 1,859,159 |
| | | 5,543,239 | 905,386 | 368,438 | 100,823 | 6,917,886 | 5,991,721 |

| 2016 | Weighted average effective interest rate | On demand/ less than 1 year HK$'000 | Between 1 and 2 years HK$'000 | Between 2 and 5 years HK$'000 | Over 5 years HK$'000 | Total undiscounted cash flow HK$'000 | Carrying amount at 31.12.2016 HK$'000 |
|---|---|---|---|---|---|---|---|
| **Financial liabilities at amortised cost** | | | | | | | |
| Trade and other payables | | | | | | | |
| – Trade and other payables | – | 566,028 | – | – | – | 566,028 | 566,028 |
| – Margin payables due to financial institutions | 12% | 66,258 | – | – | – | 66,258 | 66,258 |
| Amount due to related parties | – | 20,967 | – | – | – | 20,967 | 20,967 |
| Finance lease payables | 6.90% | 99,294 | 99,294 | 5,051 | – | 203,639 | 184,941 |
| Other borrowings | 10.01% | 907,472 | 1,312,294 | 959,811 | – | 3,179,577 | 2,810,944 |
| Bank borrowings | 6.53% | 38,906 | – | – | – | 38,906 | 38,906 |
| Convertible notes | 12.18% | 1,108,424 | – | – | – | 1,108,424 | 1,007,572 |
| Bonds | 9.27% | 1,371,613 | 434,148 | 242,340 | 167,822 | 2,215,923 | 1,865,597 |
| | | 4,178,962 | 1,845,736 | 1,207,202 | 167,822 | 7,399,722 | 6,561,213 |

0083



Confidential

Qin_00001091

54. **FINANCIAL INSTRUMENTS (Continued)**

   (g) **Liquidity risk management (Continued)**

   The amounts included above for variable rate bank borrowings are subject to change if variable interest rates differ from those estimates of interest rates determined at the end of the reporting period.

   The liquidity table as at 31 December 2016 summarises the maturity analysis of the bonds repayable on demand as at 31 December 2016 due to the Company did not fulfil certain terms of such bonds. As at the date of the Company's 2016 annual report, the lenders of bonds have provided their written consents to waive the relevant covenant terms of bonds. Based on the agreed scheduled repayments set out in the relevant bond agreements, the undiscounted cash flows which includes both interests and principal cash flows are set out below. Taking into account the Group's financial position, the directors believe that such bonds will be repaid in accordance with the scheduled repayment dates set out in the bond agreements.

|  | On demand/ less than 1 year HK$'000 | Between 1 and 2 years HK$'000 | Between 2 and 5 years HK$'000 | Over 5 years HK$'000 | Total undiscounted cash flows HK$'000 | Carrying amount HK$'000 |
|---|---|---|---|---|---|---|
| 31 December 2016 | 67,402 | 832,665 | – | – | 900,067 | 786,905 |

   The Company has fulfilled all terms of bonds outstanding as at 31 December 2017.

55. **RECONCILIATION OF LIABILITIES ARISING FROM FINANCING ACTIVITIES**

   The table below details changes in the Group's liabilities arising from financing activities, including both cash and non-cash changes. Liabilities arising from financing activities are those for which cash flows were, or future cash flows will be, classified in the Group's consolidated statement of cash flows as cash flows from financing activities.

|  | Amount due to related parties Note 33 HK$'000 | Finance lease payables Note 34 HK$'000 | Bank borrowings Note 35 HK$'000 | Other borrowings Note 36 HK$'000 | Convertible notes Note 37 HK$'000 | Bonds Note 38 HK$'000 | Total HK$'000 |
|---|---|---|---|---|---|---|---|
| As at 1 January 2017 | 20,967 | 184,941 | 38,906 | 2,810,944 | 1,007,572 | 1,865,597 | 5,928,927 |
| Repayment of principal and interest | – | (128,847) | (44,759) | (1,425,136) | (141,399) | (195,135) | (1,935,276) |
| Proceeds from other borrowings | – | – | – | 173,625 | – | – | 173,625 |
| Proceed from bank borrowings raised | – | – | 72,809 | – | – | – | 72,809 |
| Advance from lease financing | – | 60,566 | – | – | – | – | 60,566 |
| Proceeds from issue of bonds | – | – | – | – | – | 12,300 | 12,300 |
| Conversion of shares of a subsidiary | – | – | – | – | (53,794) | – | (53,794) |
| Advance from related parties | 1,196 | – | – | – | – | – | 1,196 |
| Finance cost | – | 15,667 | 3,243 | 259,025 | 105,434 | 176,397 | 559,766 |
| Exchange realignment | – | 12,874 | 4,293 | 149,316 | – | – | 166,483 |
| As at 31 December 2017 | 22,163 | 145,201 | 74,492 | 1,967,774 | 917,813 | 1,859,159 | 4,986,602 |

Confidential

Qin_00001092

## 56. EVENTS AFTER THE REPORTING PERIOD

Subsequent to 31 December 2017, the Group had the following events:

(i) As announced by the Company on 27 March 2018, SMI International Cinemas Limited ("SMII"), a wholly owned subsidiary of the Company, entered into sale and purchase agreement with an independent third party whereby SMII (as the vender) agreed to disposal of 5% of equity interest in Chengdu Runyun to the purchaser at a consideration of RMB1,000,000,000, payable upon completion of the disposal. Upon completion of the disposal, the ownership interests of the Group in Chengdu Runyun will be reduced from 84.375% to 79.375% without losing control over Chengdu Runyun. The consideration is payable upon completion of the disposal and the Directors expected that the disposal will be completed in April 2018; and

(ii) As announced by the Company on 27 March 2018, the Group has received subscription offers from financial institutions regarding the issuance of bonds with an aggregate principal amount of not more than RMB1,000,000,000 with a term of not more than three years. It is proposed that the bonds are to be listed on the Shenzhen Stock Exchange.

## 57. COMPARATIVE FIGURES

Certain comparative figures have been reclassified to conform with current year's presentation. These reclassification have no effect on financial position, loss for the year or cash flows of the Group.


Confidential

Qin_00001093

# Financial Summary

A financial summary of the Group for the last five financial years is set out below:

| Results | Year ended 31 December | | | | |
|---|---|---|---|---|---|
| | 2013 HK$'000 | 2014 HK$'000 | 2015 HK$'000 | 2016 HK$'000 | 2017 HK$'000 |
| Revenue | 1,471,684 | 1,650,146 | 2,924,086 | 3,351,186 | 3,788,764 |
| Profit before taxation | 172,596 | 209,077 | 446,859 | 493,097 | (253,275) |
| Income tax expense | (56,878) | (83,692) | (78,498) | (85,993) | (13,245) |
| Profit before non-controlling interests | 115,718 | 125,385 | 368,361 | 407,104 | (266,520) |
| Non-controlling interests | (2,745) | 5,607 | (8,397) | (3,380) | 112,786 |
| Profit for the year | 112,973 | 130,992 | 359,964 | 403,724 | (153,734) |

| Assets and liabilities | As at 31 December | | | | |
|---|---|---|---|---|---|
| | 2013 HK$'000 | 2014 HK$'000 | 2015 HK$'000 | 2016 HK$'000 | 2017 HK$'000 |
| Total assets | 4,494,237 | 6,131,082 | 9,485,617 | 12,922,638 | 15,065,048 |
| Total liabilities | (1,684,068) | (2,765,905) | (4,258,283) | (7,403,785) | (6,891,010) |
| Total equity | 2,810,169 | 3,365,177 | 5,227,334 | 5,518,853 | 8,174,038 |

SMI HOLDINGS GROUP LIMITED

**Confidential**

Qin_00001094

# 財務概要

本集團過往五個財政年度之財務概要載列如下：

| 業績 | 二零一三年<br>千港元 | 二零一四年<br>千港元 | 二零一五年<br>千港元 | 二零一六年<br>千港元 | 二零一七年<br>千港元 |
|---|---|---|---|---|---|
| | | | 截至十二月三十一日止年度 | | |
| 收益 | 1,471,684 | 1,650,146 | 2,924,086 | 3,351,186 | 3,788,764 |
| 除稅前溢利 | 172,596 | 209,077 | 446,859 | 493,097 | (253,275) |
| 所得稅開支 | (56,878) | (83,692) | (78,498) | (85,993) | (13,245) |
| 扣除非控股權益前溢利 | 115,718 | 125,385 | 368,361 | 407,104 | (266,520) |
| 非控股權益 | (2,745) | 5,607 | (8,397) | (3,380) | 112,786 |
| 本年度溢利 | 112,973 | 130,992 | 359,964 | 403,724 | (153,734) |

| 資產及負債 | 二零一三年<br>千港元 | 二零一四年<br>千港元 | 二零一五年<br>千港元 | 二零一六年<br>千港元 | 二零一七年<br>千港元 |
|---|---|---|---|---|---|
| | | | 於十二月三十一日 | | |
| 總資產 | 4,494,237 | 6,131,082 | 9,485,617 | 12,922,638 | 15,065,048 |
| 總負債 | (1,684,068) | (2,765,905) | (4,258,283) | (7,403,785) | (6,891,010) |
| 權益總額 | 2,810,169 | 3,365,177 | 5,227,334 | 5,518,853 | 8,174,038 |

Confidential

Qin_00001095

**56. 報告期後事項**

本集團於二零一七年十二月三十一日後發生下列事件：

(i)  如本公司於二零一八年三月二十七日所公佈，本公司全資附屬公司星美國際影院有限公司（「SMII」）與獨立第三方訂立買賣協議，據此SMII（作為賣方）同意向買方出售成都潤運之5%股權，代價為人民幣1,000,000,000元，於出售事項完成時支付。於出售事項完成後，本集團於成都潤運之擁有權將由84.375%減少至79.375%，並未失去對成都潤運的控制權。代價於出售事項完成時支付，本公司董事預期出售將於二零一八年四月完成；及

(ii) 如本公司於二零一八年三月二十七日所公佈，本集團已收到金融機構認購本公司發行不超過三年期，總額為不超過人民幣1,000,000,000元之公司債券。公司債券擬於深圳證券交易所上市。

**57. 比較數字**

本集團之比較數字已予重新分類，以符合本年度之呈列方式。此重新分類對本集團之財務狀況、年內虧損及現金流量並無影響。

**Confidential**

Qin_00001096

54. **金融工具(續)**

    (g) **流動資金風險管理(續)**

    倘浮動利率與報告期末所釐定的估計利率不同,則上述按浮息計算的銀行借款金額將會改變。

    二零一六年十二月三十一日的流動資金表概述,因本公司沒有達成該等債券的若干條款而於二零一六年十二月三十一日須於要求時償還的債券的到期日分析。於本公司二零一六年報日期,債券的貸款已提供書面同意豁免該等債券的有關承諾條款。根據相關債券協議所載的議定還款規劃,未貼現現金流量(包括利息及本金現金流量)載於下文。考慮到本集團的財務狀況,董事認為該等債券將根據債券協議所載的規劃還款日期償還。

    | | 按要求/少於一年<br>千港元 | 一年至兩年<br>千港元 | 兩年至五年<br>千港元 | 五年以上<br>千港元 | 未貼現現金流總額<br>千港元 | 賬面值<br>千港元 |
    |---|---|---|---|---|---|---|
    | 二零一六年<br>十二月三十一日 | 67,402 | 832,665 | – | – | 900,067 | 786,905 |

    於二零一七年十二月三十一日,本公司未償還債券之全部條款已獲達成。

55. **融資活動所產生之負債對賬**

    下表詳列本集團融資活動所產生之負債之變動,包括現金及非現金變動。融資活動所產生負債指本集團綜合現金流量表中現金流量過往分類或未來現金流量將分類為融資活動所產生之現金流量之負債。

    | | 應付關聯方款項<br>附註33<br>千港元 | 融資租賃應付款項<br>附註34<br>千港元 | 銀行借款<br>附註35<br>千港元 | 其他借款<br>附註36<br>千港元 | 可換股票據<br>附註37<br>千港元 | 債券<br>附註38<br>千港元 | 總計<br>千港元 |
    |---|---|---|---|---|---|---|---|
    | 於二零一七年一月一日 | 20,967 | 184,941 | 38,906 | 2,810,944 | 1,007,572 | 1,865,597 | 5,928,927 |
    | 償還本金及利息 | – | (128,847) | (44,759) | (1,425,136) | (141,399) | (195,135) | (1,935,276) |
    | 其他借款所得收益 | – | – | – | 173,625 | – | – | 173,625 |
    | 所籌集銀行借款之所得收益 | – | – | 72,809 | – | – | – | 72,809 |
    | 融資租賃墊款 | – | 60,566 | – | – | – | – | 60,566 |
    | 發行債券之所得收益 | – | – | – | – | – | 12,300 | 12,300 |
    | 轉換一間附屬公司股份 | – | – | – | – | (53,794) | – | (53,794) |
    | 關連人士墊款 | 1,196 | – | – | – | – | – | 1,196 |
    | 融資租賃 | – | 15,667 | 3,243 | 259,025 | 105,434 | 176,397 | 559,766 |
    | 匯兌調整 | – | 12,874 | 4,293 | 149,316 | – | – | 166,483 |
    | 於二零一七年十二月三十一日 | 22,163 | 145,201 | 74,492 | 1,967,774 | 917,813 | 1,859,159 | 4,986,602 |

54. 金融工具(續)
   (g) 流動資金風險管理(續)

| | 加權平均<br>實際利率 | 應要求／<br>一年內<br>千港元 | 一至兩年<br>千港元 | 兩至五年<br>千港元 | 五年以上<br>千港元 | 未貼現現金<br>流量總額<br>千港元 | 於二零一七年<br>十二月<br>三十一日<br>之賬面值<br>千港元 |
|---|---|---|---|---|---|---|---|
| **二零一七年** | | | | | | | |
| | | | | | | | |
| **按攤銷成本計算**<br>**之金融負債** | | | | | | | |
| 貿易及其他應付款項 | | | | | | | |
| － 貿易及其他應付款項 | － | 615,989 | － | － | － | 615,989 | 615,989 |
| － 應付金融機構的保證金 | 16% | 389,130 | － | － | － | 389,130 | 389,130 |
| 應付關聯方款項 | － | 22,163 | － | － | － | 22,163 | 22,163 |
| 融資租賃應付款項 | 5.87% | 98,488 | 37,053 | 23,029 | － | 158,570 | 145,201 |
| 其他借款 | 11.73% | 1,532,598 | 823,875 | － | － | 2,356,473 | 1,967,774 |
| 銀行借款 | 6.53% | 47,385 | 5,041 | 13,917 | 17,788 | 84,131 | 74,492 |
| 可換股票據 | 11.58% | 1,122,485 | 10,500 | － | － | 1,132,985 | 917,813 |
| 債券 | 8.59% | 1,715,001 | 28,917 | 331,492 | 83,035 | 2,158,445 | 1,859,159 |
| | | 5,543,239 | 905,386 | 368,438 | 100,823 | 6,917,886 | 5,991,721 |

| | 加權平均<br>實際利率 | 應要求／<br>一年內<br>千港元 | 一至兩年<br>千港元 | 兩至五年<br>千港元 | 五年以上<br>千港元 | 未貼現現金<br>流量總額<br>千港元 | 於二零一六年<br>十二月<br>三十一日<br>之賬面值<br>千港元 |
|---|---|---|---|---|---|---|---|
| **二零一六年** | | | | | | | |
| | | | | | | | |
| **按攤銷成本計算**<br>**之金融負債** | | | | | | | |
| 貿易及其他應付款項 | | | | | | | |
| － 貿易及其他應付款項 | － | 566,028 | － | － | － | 566,028 | 566,028 |
| － 應付金融機構的保證金 | 12% | 66,258 | － | － | － | 66,258 | 66,258 |
| 應付關聯方款項 | － | 20,967 | － | － | － | 20,967 | 20,967 |
| 融資租賃應付款項 | 6.90% | 99,294 | 99,294 | 5,051 | － | 203,639 | 184,941 |
| 其他借款 | 10.01% | 907,472 | 1,312,294 | 959,811 | － | 3,179,577 | 2,810,944 |
| 銀行借款 | 6.53% | 38,906 | － | － | － | 38,906 | 38,906 |
| 可換股票據 | 12.18% | 1,108,424 | － | － | － | 1,108,424 | 1,007,572 |
| 債券 | 9.27% | 1,371,613 | 434,148 | 242,340 | 167,822 | 2,215,923 | 1,865,597 |
| | | 4,178,962 | 1,845,736 | 1,207,202 | 167,822 | 7,399,722 | 6,561,213 |


**Confidential**

Qin_00001098

54. **金融工具(續)**

    (e) **價格風險管理**

    本集團就其於上市股本證券之投資而需要面對股價風險。管理層通過維持不同風險的投資組合管理此風險。本集團的股價風險主要集中於在聯交所報價的股本工具。

    以下敏感性分析乃基於上市股本證券僅在報告日期的股價變動風險及其波幅而釐定。

    於二零一七年十二月三十一日,倘投資的股價上升/下降10%,則年度除稅後虧損(二零一六年:年度除稅後溢利)將減少/增加約5,174,000港元(二零一六年:增加/減少25,402,700港元),此乃由於投資的公允價值收益/虧損所產生。

    (f) **外幣風險管理**

    由於本集團大部份業務交易、資產及負債主要以本集團實體之功能貨幣港元及人民幣計值,故本集團之外幣風險甚微。本集團現時並無就外幣交易、資產及負債制訂外幣對沖政策。本集團密切留意外幣風險,並將於有需要時考慮對沖重大外幣風險。

    (g) **流動資金風險管理**

    董事認為,本集團所持有的銀行結餘及現金、銀行存款連同經營活動產生的現金流量淨額及獲承諾信貸融通可提供足夠的資金來源,讓本集團應付其於可見將來到期的所有財務責任和管理其流動資金狀況。此外,本集團的管理層預期會透過內部產生資金和以本集團資產抵押的信貸融通的適當比重,撥付其在香港、台灣及中國之業務發展的其餘估計資本支出及承擔。

    除附註1所披露者外,鑒於本集團於二零一七年十二月三十一日產生流動負債淨額約3,050,152,000港元,本公司管理層已謹慎考慮本集團日後之流動資金狀況。本公司管理層認為,本公司可透過於附註1所詳述董先生提供的足夠資金及其他融資活動所得收益獲得全面支持,以獲得足夠資金,致使本公司在可預見未來可悉數履行其財務責任。

    下表詳述本集團非衍生金融負債的剩餘合約屆滿期限,根據協定償還條款承受流動資金風險。下表乃根據本集團在可能在最早日期被要求付款時的金融負債未貼現現金流量編制。該表包含利息及本金現金流。就按浮動利率計算的利息流量而言,未貼現利息付款金額乃根據報告期末的利率估計。

0087

54. **金融工具(續)**

　　(c) **信貸風險管理(續)**

　　　　此外,本集團信貸風險集中,因為物業、廠房及設備建設之進度款項及收購實體之已付按金中分別34%及100%(二零一六年:39%及100%)乃應收承包商及代理人款項(詳情見附註24及25)。為盡量降低信貸風險,本集團管理層委派一團隊負責決定審批進度款項及其他監控程序,確保會就妥善實現進度款項及按金採取跟進行動。此外,本集團在報告期末後檢討在報告期內之裝修進度及承包商及代理人所進行之盡職審查、持續業務關係及應付承包商及代理人之建築款項,本集團應可按照與承包商及代理人訂立之有條件買賣協議從賣方取得相關資產,以及承包商及代理人之財政背景,以確定付予承包商及代理人款項之可收回程度。

　　　　因此,董事認為,本集團就已付承包商及代理人款項所面臨的信貸風險已明顯減少。

　　　　由於銀行存款及銀行結餘存放於聲譽良好的中國及香港銀行,本集團認為該等款項的信貸風險甚微。

　　　　本集團金融資產概無以抵押品或其他信貸增強措施作抵押。

　　(d) **利率風險管理**

　　　　本集團面對的利率變動風險主要源自其於香港及中國之銀行存款及於中國之銀行借貸。此等銀行存款及銀行借貸按浮動利率計息、並令本集團須面對現金流量利率風險。本集團亦就固定利率其他貸款、銀行及其他借款以及可換股票據面對公允價值利率風險本集團現時並無利用任何衍生工具合約以對沖其面臨之利率風險。本集團並無制定管理利率風險的政策。

　　　　本集團就金融負債所面對之利率風險,詳述於本附註之流動資金風險管理一節。本集團之現金流量利率風險主要集中於來自於香港之銀行存款利息之波動,以及來自中國之銀行存款及銀行借貸之人行基準利率之波動。銀行存款為現行市場利率。

　　　　下表詳述本集團對銀行存款利率上升或下降100個基點,及人行基準利率所規定的利率上升或下降100個基點的敏感度。100個基點乃向主要管理層人員作內部匯報利率風險時之敏感度比率,乃管理層對利率合理可能變動的評估。

　　　　敏感度分析僅包括浮動利率之銀行銀行存款及銀行借款,假設報告期末尚未償還之銀行存款及銀行借款於全年一直未還。

　　　　倘銀行存款利率上升或下降100個基點(二零一六年:100個基點),而所有其他可變因素均維持不變,則本集團截至二零一七年十二月三十一日止年度稅後虧損(二零一六年:除稅後溢利)將減少/增加約744,000港元(二零一六年:增加/減少5,097,000港元)。

　　　　倘人行基準利率所規定的利率上升或下降100個基點(二零一六年:100個基點),而所有其他可變因素均維持不變,則本集團截至二零一七年十二月三十一日止年度除稅後虧損(二零一六年:除稅後溢利)將增加/減少約559,000港元(二零一六年:增加/減少292,000港元)。

**Confidential**

**Qin_00001100**

54. **金融工具**

   (a) **財務風險管理目標**

   金融工具對本集團之日常營運極為重要。下文載列與該等金融工具有關之風險及如何降低該等風險之政策。管理層管理及監控該等風險，以確保及時有效地採取適當之措施。

   (b) **金融工具類別**

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| **金融資產** |  |  |
| 按公允價值透過損益列賬之金融資產： |  |  |
| － 持作買賣投資 | 61,961 | 304,217 |
| － 指定為按公允價值透過損益列賬之金融資產 | 147,941 | – |
| 可供出售投資 | 66,347 | 65,396 |
| 貸款及應收款項(包括現金及現金等值項目) | 1,416,290 | 1,852,220 |
| **金融負債** |  |  |
| 按公允價值透過損益列賬之金融負債： |  |  |
| － 衍生工具 | 14,584 | 55,686 |
| 按攤銷成本計量之金融負債 | 5,846,520 | 6,376,272 |

   就各類金融資產及金融負債所採用之主要會計政策及方法之詳情，包括確認標準、計量基準及確認收支之基準，於附註3披露。

   (c) **信貸風險管理**

   指定為按公允價值透過損益列賬之金融資產、收購物業、廠房及設備已付按金、其他金融資產、收購實體已付按金、已抵押銀行存款、銀行結餘及現金、貿易及其他應收款項、給予關聯方之貸款及應收關聯方款項之賬面值，乃本集團就有關金融資產所承擔之最高信貸風險。

   本集團的信貸風險主要來自已付按金及貿易應收款項以及已計入其他應收款項之向若干獨立第三方作出之墊款。

   本集團有信貸集中風險，應收賬款總額之44%(二零一六年：24%)來自本集團最大五名客戶。平均信貸期為90至180日。為了將信貸風險降至最低，本集團於報告期末會檢討各個別應收款項的可收回金額，從而確保就不可收回金額計提足夠減值虧損。內部信貸評核程序會評核潛在借款方之信貸質素，並釐定借款方之信貸限額。於此方面，董事認為，本集團的信貸風險已大幅減少。

Confidential



Qin_00001101

**51. 儲備（續）**

    **(iv) 本集團之匯兌儲備**

        匯兌儲備由換算海外業務財務報表所產生之所有匯兌差額組成。

    **(v) 本集團之法定儲備**

        誠如中國外資企業之相關法律及法例所規定，本公司之中國附屬公司須維持法定公積金。該等儲備之撥款來自中國附屬公司法定財務報表中之除稅後純利，而金額及分配基準則由董事會每年釐定。法定公積金可用作補足上年度之虧損（如有），並可透過資本化發行轉換為股本。

**52. 資金風險管理**

本集團管理其資金以確保於本集團內之實體能夠透過優化債務及權益結餘以持續增加股東之回報。本集團之整體策略多年來維持不變。

本集團之資金結構包括本公司擁有人應佔之借貸及權益（包括已發行股本、股份溢利、儲備及保留溢利）。

董事不時審閱資金結構。作為其審閱之一部份，董事認為資金成本及風險與各個程度之資金有關連。根據董事之意見，本集團將透過支付股息、發行新股、購回股份及發行新債務或贖回現有債務，以平衡其整體資金結構。

**53. 公允價值計量法**

公允價值乃於計量日期市場參與者於有序交易中出售資產將會收取或轉讓負債將會支付之價格。上文披露的公允價值計量法使用公允價值級別，其將用於計量公允價值的估值技術所需之輸入數據劃分為三個級別：

- 第一級輸入數據：本集團於計量日期可於活躍市場就相同資產或負債獲取的報價（未經調整）。

- 第二級輸入數據：有關資產或負債直接或間接可觀察的輸入數據，而非第一級所包括的報價。

- 第三級輸入數據：資產或負債的不可觀察輸入數據。

於報告期末，本集團列示持作買賣投資下的上市股權投資按公允價值（第一級輸入數據）計量。於報告期末，本集團按公允價值計入損益的金融資產及衍生金融資產按公允價值（第三級輸入數據）計量。年內並無第一級、第二級與第三級之間的轉換。

於報告期末，本集團列示可供出售投資下的非上市權益投資就減值檢討評估按公允價值（第三級輸入數據）計量。

董事認為，按攤銷成本於本於本集團業績及財務狀況入賬之其他金融資產及金融負債之賬面值與彼等各自之公允價值相若。

Confidential

Qin_00001102

**51. 儲備(續)**

**(ii) 其他儲備(續)**

[h] 截至二零一七年十二月三十一日止年度,星美文化旅遊集團完成配售214,285,000股每股面值0.01港元的星美文化旅遊集團股份,每股股份配售價0.70港元。本集團於星美文化旅遊集團的權益被攤薄12.41%。本集團出售股權的賬面值165,412,000港元與配售所得收益淨額145,500,000港元之間的差額19,912,000港元從其他儲備扣除。

[i] 截至二零一七年十二月三十一日止年度,本集團向星美文化旅遊集團全資附屬公司SMI Culture Investment出售本集團於星美文化旅遊集團全資附屬公司SMIE之全部股本權益,總代價為人民幣150,000,000元(相當於171,000,000港元),以現金代價人民幣50,000,000元(相當於57,000,000港元)及對本公司發行星美文化旅遊集團股份人民幣100,000,000元(相當於114,000,000)支付。本集團於星美文化旅遊集團的權益增加5.19%。本集團收購之非控股權益及股份代價之間的差額5,861,000港元已計入其他儲備。

[j] 截至二零一七年十二月三十一日止年度,本公司全資附屬公司成都潤運與投資者訂立注資協議,據此,投資者已同意增資以換取成都潤運15.63%經擴大股權。對成都潤運15.63%經擴大股權的增資已於二零一七年六月完成,所得收益總額人民幣1,980,000,000元已於完成時以自投資者收取的現金結付。本集團並未失去對成都潤運的控制權。本集團視作出售股本權益及增資所得收益之間的差額1,723,855,000港元已從其他儲備扣除。於二零一七年七月,額外增資人民幣230,000,000元以自投資者收取的現金結付。以股本交易入賬的增資及增資與視作出售非控股權益的賬面值之間的差額223,463,000港元已計入其他儲備。

**(iii) 本公司及本集團之繳入盈餘**

本集團之繳入盈餘指:(a)就一九九六年進行股本重組而削減股本及註銷股份溢價所產生之進賬結餘;(b)減就截至二零零三年及二零零五年三月三十一日止年度進行股本重組而轉撥至累計虧損之款項;(c)因過往年度出售若干聯營公司及分派股息而撥回之款項;及(d)於截至二零一四年十二月三十一日止年度因削減股本及就削減股份溢價而註銷股份溢價所產生之進賬結餘(如上文附註[i]所述)。

根據百慕達公司法,本公司的繳入盈餘賬可供用作分派。然而,在下列情況下,本公司不得以繳入盈餘宣派或派付股息或作出分派:(a)本公司無力償還到期負債或於作出分派後無力償還到期負債;或(b)本公司資產之可變現值將因此而較其負債及其已發行股本與股份溢價賬之總和為少。

51. **儲備（續）**

(ii) **其他儲備**

本公司及本集團之其他儲備包括：

(a) 於二零零九年就收購滙彩亞太有限公司的全部股權而發行的843,500,000股普通股的公允價值與該等普通股已發行及悉數繳足數額之間之差額。

除上述者外，本集團之其他儲備亦包括：

(b) 收購兩家主要附屬公司之額外股本權益之代價（有關該等交易之進一步詳情載於本公司日期為二零一一年一月十八日之通函）。

(c) 截至二零一六年十二月三十一日止年度獲得星美文化旅遊集團之控制權後（見附註43(b)(ii)），本集團向非控股權益收購星美文化旅遊集團之額外1.08%權益，以將其控股權益由63.41%增加至64.49%。收購代價為33,756,000港元，並以現金支付。被收購的非控股權益的賬面值31,562,000港元與已付代價33,756,000港元之間的差額2,194,000港元已從其他儲備中扣除。

(d) 除附註37(i)所披露者外，可換股票據XIII已轉換為本公司附屬公司星美文化旅遊集團的普通股。本集團於星美文化旅遊集團的權益被攤薄3.85%。本集團被出售股權的賬面值24,619,000港元與可換股票據XII負債部份及嵌入式衍生工具的總額44,343,000港元之間的差額19,724,000港元已計入其他儲備。

(e) 於截至二零一六年十二月三十一日，票量中國控股有限公司的前股東豁免14,587,000港元的股東貸款，作為對本集團的視作出資，並從其他儲備扣除。於同日，本集團自非控股權益中收購於本公司附屬公司票量中國控股有限公司的35.8%額外權益。收購代價為400,000港元，以現金支付。被收購的非控股權益的賬面值6,468,000港元與已支付代價400,000港元之間的差額6,068,000港元已計入其他儲備。

(f) 截至二零一七年十二月三十一日止年度，本集團自非控股權益收購星美文化旅遊集團11.02%額外權益，將其控股權益由64.49%增至75.51%。收購代價85,972,000港元已以現金支付。被收購的非控股權益的賬面值92,776,000港元與已支付代價85,972,000港元之間的差額6,804,000港元已計入其他儲備。

(g) 除附註37(g)及37(h)所披露者外，可換股票據XI及可換股票據XII已轉換為星美文化旅遊集團的普通股。本集團於星美文化旅遊集團的權益被攤薄5.62%。本集團出售股權的賬面值68,074,000港元與可換股票據XI及可換股票據XII負債部份及嵌入式衍生工具的總額65,907,000港元之間的差額2,167,000港元從其他儲備扣除。

Confidential

Qin_00001104

## 51. 儲備

| 本公司 | 股份溢價 千港元 | 其他儲備 千港元 附註(i)(a) | 繳入盈餘 千港元 | 可換股票據儲備 千港元 | 以股份為基礎之付款儲備 千港元 | 資本贖回儲備 千港元 | 累計虧損 千港元 | 總計 千港元 |
|---|---|---|---|---|---|---|---|---|
| 於二零一六年一月一日 | 1,487,498 | (36,615) | 1,468,501 | 35,381 | 12,393 | 4,415 | (151,626) | 2,819,947 |
| 年內虧損及全面開支總額 | - | - | - | - | - | - | (231,729) | (231,729) |
| 截至二零一五年十二月三十一日止年度 | | | | | | | | |
| 之已批准末期股息 | - | - | - | - | - | - | (147,231) | (147,231) |
| 發行換股股份 | 30,005 | - | - | (564) | - | - | 564 | 30,005 |
| 確認已行使購股權 | 5,467 | - | - | - | (7,508) | - | 7,508 | 5,467 |
| 已失效購股權 | - | - | - | - | (4,885) | - | 4,885 | - |
| 回購股份 | (57,187) | - | - | - | - | 8,100 | - | (49,087) |
| 年內權益變動 | (21,715) | - | - | (564) | (12,393) | 8,100 | (366,003) | (392,575) |
| 於二零一六年十二月三十一日 | 1,465,783 | (36,615) | 1,468,501 | 34,817 | - | 12,515 | (517,629) | 2,427,372 |
| 於二零一七年一月一日 | 1,465,783 | (36,615) | 1,468,501 | 34,817 | - | 12,515 | (517,629) | 2,427,372 |
| 年內虧損及全面開支總額 | - | - | - | - | - | - | (1,305,814) | (1,305,814) |
| 截至二零一六年十二月三十一日止年度 | | | | | | | | |
| 之已批准末期股息 | - | - | - | - | - | - | (179,668) | (179,668) |
| 回購股份 | (7,807) | - | - | - | - | 1,100 | - | (6,707) |
| 以股份為基礎之付款 | - | - | - | - | 12,064 | - | - | 12,064 |
| 年內權益變動 | (7,807) | - | - | - | 12,064 | 1,100 | (1,485,482) | (1,480,125) |
| 於二零一七年十二月三十一日 | 1,457,976 | (36,615) | 1,468,501 | 34,817 | 12,064 | 13,615 | (2,003,111) | 947,247 |

**(i) 本公司之股份溢價**

應用股份溢價賬乃受百慕達一九八一年公司法第40條所規管。

根據百慕達一九八一年公司法第46(2)條，本公司獲一項於二零一四年六月六日舉行之本公司股東週年大會上通過之特別決議案授權削減股份溢價賬（「削減股份溢價」）。於二零一四年一月一日，本公司股份溢價賬之進賬款項約為1,692,627,000港元，而累計虧損則約為260,129,000港元。根據削減股份溢價，於二零一四年一月一日本公司股份溢價賬之進賬款項約1,692,627,000港元被全數削減，由此所產生之部份進賬款項已用作抵銷本公司於二零一三年十二月三十一日之全數累計虧損約260,129,000港元，而餘下之進賬款項約1,432,498,000港元則計入本公司之繳入盈餘賬。

Confidential

Qin_00001105

50. **本公司主要附屬公司的詳情（續）**

非流動資產主要包括物業、廠房及設備2,387,000港元（二零一六年：390,000港元）、無形資產115,223,000港元（二零一六年：82,372,000港元）及商譽95,721,000港元（二零一六年：零港元）。

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 收益 | 134,948 | 548,429 |
| 本年度（虧損）溢利 | (133,914) | 26,441 |
| 其他全面收入（開支） | 29,840 | (1,391) |
| 經營業務現金流出淨額 | (289,399) | (309,014) |
| 投資業務現金（流出）流入淨額 | (3,194) | 1,049 |
| 融資業務現金（流出）流入淨額 | (139,913) | 696,990 |
| 現金（流出）流入淨額 | (432,506) | 389,025 |

成都潤運

| | 二零一七年<br>千港元 |
|---|---|
| 流動資產 | 833,261 |
| 非流動資產 | 9,338,017 |
| 流動負債 | 4,076,514 |
| 非流動負債 | 1,629,593 |
| 本公司擁有人應佔權益 | 4,465,171 |

流動資產主要包括預付租賃4,234,000港元、存貨24,317,000港元、貿易及其他應收款項736,202,000港元及銀行結餘及現金68,508,000港元。

流動負債主要包括貿易及其他應付款項2,820,124,000港元、企業所得稅及其他中國應付稅項296,708,000港元、應付融資租賃90,059,000港元、銀行借貸42,028,000港元及應付集團旗下各公司款項827,595,000港元。

非流動資產主要包括物業、廠房及設備3,323,267,000港元、商譽5,939,653,000港元、無形資產33,161,000港元、預付租賃款37,597,000港元及於聯營公司的權益4,339,000港元。

非流動負債主要包括銀行借貸106,871,000港元、其他借貸1,455,498,000港元、融資租賃應付款55,142,000港元及遞延稅項負債12,082,000港元。

| | 二零一六年<br>千港元 |
|---|---|
| 收益 | 2,723,669 |
| 本年度溢利 | 163,744 |

Confidential

Qin_00001106

## 50. 本公司主要附屬公司的詳情（續）

上表所列乃董事認為對本集團業績或資產或負債有重要影響之本公司附屬公司。董事認為，詳列其他並無業務或主要從事投資控股附屬公司之資料將令篇幅過於冗長。

**擁有重大非控股權益之非全資附屬公司之詳細資料**

有關本集團擁有重大非控股權益之非全資附屬公司之詳細資料列載如下：

| 附屬公司名稱 | 註冊成立及主要營業地點 | 本公司擁有人所佔權益比重及非控股權益持有之表決權 | | 分配至非控股權益之(虧損)溢利 | | 累計非控股權益 | |
|---|---|---|---|---|---|---|---|
| | | 二零一七年 | 二零一六年 | 二零一七年 千港元 | 二零一六年 千港元 | 二零一七年 千港元 | 二零一六年 千港元 |
| 星美文化旅遊集團 | 開曼群島 | 37.3% | 35.5% | (53,108) | 1,120 | 345,110 | 255,160 |
| 成都潤運 | 中國 | 15.6% | – | (62,171) | – | 700,772 | – |
| 個別非重大 | | | | 2,493 | 2,260 | (3,655) | (7,431) |
| | | | | (112,786) | 3,380 | 1,042,227 | 247,729 |

有關本公司附屬公司擁有重大非控股權益之財務資料概要截列如下。以下財務資料概要為集團成員之間對銷前之金額。

**星美文化旅遊集團**

| | 二零一七年 千港元 | 二零一六年 千港元 |
|---|---|---|
| 流動資產 | 1,453,662 | 1,477,654 |
| 非流動資產 | 213,331 | 82,762 |
| 流動負債 | 867,418 | 995,844 |
| 非流動負債 | 13,671 | – |
| 本公司擁有人應佔權益 | 787,571 | 565,388 |
| 非控股權益 | (1,667) | (816) |

流動資產主要包括存貨185,926,000港元（二零一六年：226,849,000港元）、電影版權投資810,617,000港元（二零一六年：397,643,000港元）、貿易及其他應收款項323,327,000港元（二零一六年：432,168,000港元）應收關聯方／一名股東款項127,664,000港元（二零一六年：12,200,000港元）及銀行結餘及現金6,128,000港元（二零一六年：408,794,000港元）。

流動負債主要包括貿易及其他應付款項124,080,000港元（二零一六年：67,977,000港元）、應付同系附屬公司／董事款項14,263,000港元（二零一六年：360,000港元）、應付稅項156,952,000港元（二零一六年：141,142,000港元）、貸款票據448,725,000港元（二零一六年：445,531,000港元）、可換股票據108,813,000港元（二零一六年：159,573,000港元）、衍生工具14,585,000港元（二零一六年：55,685,000港元）及其他借貸零港元（二零一六年：125,576,000港元）。

## 50. 本公司主要附屬公司的詳情(續)

| 附屬公司名稱 | 註冊成立／成立地點 | 已發行／繳足股本 | 本公司所持股權百分比 直接 | 間接 | 主要業務 |
|---|---|---|---|---|---|
| *上海金山星美百倍影院管理有限公司 | 中國 | 註冊資本 人民幣6,000,000元 | – | 100% | 經營電影院 |
| *上海星美樂莫影院管理有限公司 | 中國 | 註冊資本 人民幣6,000,000元 | – | 100% | 經營電影院 |
| *上海星美影院管理有限公司 | 中國 | 註冊資本 人民幣12,000,000元 | – | 100% | 經營電影院 |
| 星美文化旅遊集團 | 開曼群島 | 1,316,009,000股 每股面值0.01港元之普通股 | – | 62.67% | 提供跨媒體服務包括對電影及電視節目製作及發行以及相關服務投資 |
| SMI International Cinemas Limited | 香港 | 10,000股每股面值1港元之普通股 | – | 100% | 投資控股 |
| SMI Investment (HK) Limited | 香港 | 1股每股面值1港元之普通股 | 100% | – | 證券投資 |
| SMI Management (Beijing) Limited | 香港 | 1股每股面值1港元之普通股 | – | 100% | 提供行政服務 |
| SMI Management (HK) Limited | 香港 | 1股每股面值1港元之普通股 | – | 100% | 提供行政服務 |
| *天津星美影城管理有限公司 | 中國 | 註冊資本 人民幣6,000,000元 | – | 100% | 經營電影院 |

\* 該等附屬公司為本公司於合約安排下所持有。董事認為本集團仍於該等公司擁有控制權。其詳情載於附註4。

Confidential

Qin_00001108

50. **本公司主要附屬公司的詳情（組）**

| 附屬公司名稱 | 註冊成立／成立地點 | 已發行／繳足股本 | 本公司所持股權百分比 | | 主要業務 |
|---|---|---|---|---|---|
| | | | 直接 | 間接 | |
| Bravissimi Films (International) Limited | 英屬處女群島 | 1股每股面值 1美元之普通股 | 100% | – | 投資電影製作 |
| Campbell Hall Limited | 英屬處女群島 | 3股每股面值 1美元之普通股 | – | 100% | 投資控股 |
| *成都潤達 | 中國 | 註冊資本 人民幣11,851,852元 | – | 84.37% | 主要從事投資 經營電影院，以及提供 廣告及公共關係服務 |
| 滙彩亞太有限公司 | 香港 | 1股每股面值 1港元之普通股 | – | 100% | 投資控股 |
| GDL Nominee Limited | 香港 | 2股每股面值 1港元之普通股 | – | 100% | 投資控股 |
| *蘭州星美影城管理有限公司 | 中國 | 註冊資本 人民幣6,000,000元 | – | 100% | 經營電影院 |
| Market Dynamics (Hong Kong) Limited | 香港 | 10,000股每股面值 1港元之普通股 | – | 100% | 提供廣告及 公共關係服務 |
| North Hollywood Limited | 英屬處女群島 | 1股每股面值 1美元之普通股 | 100% | – | 投資控股 |

Confidential

Qin_00001109

## 50. 本公司主要附屬公司的詳情

主要附屬公司於二零一七年十二月三十一日的詳情如下：

| 附屬公司名稱 | 註冊成立／成立地點 | 已發行／繳足股本 | 本公司所持股權百分比 直接 | 間接 | 主要業務 |
|---|---|---|---|---|---|
| Able Charm Limited | 香港 | 10,000,000股 每股面值 1港元之普通股 | – | 100% | 投資控股 |
| Admiral Team Limited | 英屬處女群島 | 1股每股面值 1美元之普通股 | – | 100% | 投資控股 |
| *北京回龍觀星美國際影城管理有限公司 | 中國 | 註冊資本 人民幣6,000,000元 | – | 100% | 經營電影院 |
| *北京名翔國際影院管理有限公司 | 中國 | 註冊資本 人民幣7,000,000元 | – | 100% | 經營電影院 |
| *北京世界城星美國際影城管理有限公司 | 中國 | 註冊資本 人民幣6,000,000元 | – | 100% | 經營電影院 |
| *北京望京星美國際影城管理有限公司 | 中國 | 註冊資本 人民幣7,500,000元 | – | 100% | 經營電影院 |
| 北京星美滙餐飲管理有限公司 | 中國 | 註冊資本 人民幣8,800,000元 | – | 100% | 於電影院內經營咖啡廳及銷售食品及飲料 |
| 北京中星美滙商貿有限公司 | 中國 | 註冊資本 人民幣10,000,000元 | – | 90% | 經營電影院專櫃銷售及網上購物 |

Confidential

Qin_00001110

綜合財務報表附註

*截至二零一七年十二月三十一日止年度*

48. **關聯方交易**

除附註33所披露的該等關聯方結餘外，本集團於本年度與其關聯方有以下交易：

[a] 本集團之控股股東覃先生為取得本集團之借款向貸款人提供個人財務擔保。

[b] 星美聖典為取得二零一六財政年度信託貸款向貸款人提供公司財務擔保。

[c] 年內，本集團已付主要管理人員（董事）的薪酬已於附註12披露。

49. **本公司的財務狀況表**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| **非流動資產** | | |
| 於附屬公司的投資（附註） | 4,656,606 | 5,819,354 |
| 於一家聯營公司的權益 | – | 50,000 |
| 可供出售投資 | 66,347 | 65,396 |
| | 4,722,953 | 5,934,750 |
| **流動資產** | | |
| 預付款項、按金及其他應收款項 | 42,755 | 78,448 |
| 其他貸款 | 126,000 | 150,000 |
| 應收關聯方款項 | 26,813 | 169 |
| 銀行結餘及現金 | 10,489 | 37,340 |
| | 206,057 | 265,957 |
| **流動負債** | | |
| 其他應付款項 | 86,511 | 41,670 |
| 財務擔保責任 | – | 103 |
| 其他借款 | – | 100,000 |
| 可換股票據 | 799,000 | 847,999 |
| 債券 | 1,079,445 | 780,180 |
| 應付附屬公司款項 | 315,797 | 2,376 |
| | 2,280,753 | 1,772,328 |
| **流動負債淨值** | (2,074,696) | (1,506,371) |
| **總資產減流動負債** | 2,648,257 | 4,428,379 |
| **非流動負債** | | |
| 可換股票據 | 10,000 | – |
| 債券 | 330,989 | 639,886 |
| | 340,989 | 639,886 |
| | 2,307,268 | 3,788,493 |
| **資本及儲備** | | |
| 股本 | 1,360,021 | 1,361,121 |
| 儲備（附註51） | 947,247 | 2,427,372 |
| **權益總額** | 2,307,268 | 3,788,493 |

附註：於截至二零一六年十二月三十一日止年度，本公司已豁免應收附屬公司款項735,117,000港元（二零一七年：無）。該款項
視作出資處理。



星美控股集團有限公司 120

**Confidential**

## 45. 租賃承擔

於二零一七年十二月三十一日，根據不可撤銷經營租賃應付之未來最低租賃款項總額如下：

| | 二零一七年 千港元 | 二零一六年 千港元 |
|---|---|---|
| 一年內 | 452,680 | 422,510 |
| 第二年至第五年（包括首尾兩年） | 1,746,645 | 1,659,832 |
| 五年後 | 2,553,715 | 2,702,369 |
| | 4,753,040 | 4,784,711 |

經營租賃付款指本集團就其在香港之辦公室、員工宿舍及倉庫、在中國之辦公室以及若干電影院物業所支付之租金。

香港之租賃經磋商平均年期為兩年，而中國之租賃經磋商平均年期介乎15至20年。

上述租賃承擔僅包括基本租金承擔及物業管理費，並不包括額外應付租金承擔（或然租金）（如有），由於不可能事先計算該等額外租金之金額，故該等額外租金一般應用未來收益之預設百分比減各租賃之基本租金而釐定。

## 46. 資本承擔

於報告期末，本集團有下列資本承擔：

| | | 二零一七年 千港元 | 二零一六年 千港元 |
|---|---|---|---|
| (a) | 有關綜合財務報表已訂約但未作撥備的金額： | | |
| | 電影院物業之裝修 | 439,082 | 202,093 |
| | 出資於一項分類作可供出售投資的投資 | 59,701 | 67,845 |

如附註25所述，根據本集團與多名賣方訂立之諒解備忘錄，本集團管理層向賣方收購中國之11家電影院（二零一六年：6家），按金總額約為292,928,000港元（二零一六年：154,289,000港元），已支付予個別賣方。董事認為，該等收購之承擔總額視乎二零一七年十二月三十一日之盡職審查結果而定，目前尚未最終確定。

## 47. 或然負債

截至批准刊發綜合財務報表日期，於電影院的日常經營過程中會不時產生若干糾紛。本集團現正處理該等事項。該等糾紛處於早期階段，董事認為該等糾紛將不會對本集團的綜合財務報表產生重大不利影響。

於二零一七年十二月三十一日及二零一六年十二月三十一日，本集團並無任何其他重大或然負債。

Confidential

Qin_00001112



44. **出售附屬公司(續)**

[ii] 於截至二零一五年十二月三十一日止年度,本公司與一名獨立第三方訂立一份無條件股份轉讓協議,以出售於Photon集團之全部股權。出售已於二零一六年四月三十日完成。

Photon集團於出售日期之資產淨值總額如下:

| | 千港元 |
|---|---|
| 現金代價 | 22,250 |
| **失去控制權之資產及負債分析:** | |
| 無形資產 | 25,120 |
| 銀行結餘及現金 | 58 |
| 貿易及其他應付款項 | (3,667) |
| | 21,511 |
| **出售該附屬公司之收益** | |
| 代價 | 22,250 |
| 已出售資產淨值 | (21,511) |
| 非控股權益 | (1,222) |
| 失去該附屬公司控制權時與該附屬公司之資產淨值 (由權益重新分類至損益)有關之累計匯兌差額 | 1,641 |
| 出售該附屬公司之收益 | 1,158 |
| **出售該附屬公司之現金流入淨額** | |
| 現金代價 | 22,250 |
| 將收取現金代價 | (14,233) |
| 銀行結餘及現金 | (58) |
| | 7,959 |

8894

星美控股集團有限公司 (118)

Confidential

Qin_00001113



44. **出售附屬公司(續)**

　　(i)　(續)

　　上述附屬公司於出售日期的資產淨值總額如下：

| | 千港元 |
|---|---|
| 現金代價 | 44,837 |
| **已失去控制權的資產及負債分析如下：** | |
| 物業、廠房及設備 | 2,287 |
| 無形資產 | 915 |
| 商譽 | 36,804 |
| 存貨 | 4 |
| 貿易及其他應收款項 | 1,283 |
| 銀行結餘及現金 | 11 |
| 貿易及其他應付款項 | (185) |
| 遞延稅項負債 | (229) |
| | 40,890 |
| **出售附屬公司的收益** | |
| 代價 | 44,837 |
| 已出售資產淨值 | (40,890) |
| 失去該附屬公司控制權時與該附屬公司之資產淨值 （由權益重新分類至損益）有關之累計匯兌差額 | (3,696) |
| 出售附屬公司之收益 | 251 |
| **出售附屬公司之現金流入淨額** | |
| 現金代價 | 44,837 |
| 銀行結餘及現金 | (11) |
| | 44,826 |

43. **收購附屬公司(組)**

(b) **截至二零一六年十二月三十一日止年度(續)**

(ii) **(續)**

由於合併成本包括控制權溢價,故收購星美文化旅遊集團產生商譽。此外,就合併支付的代價實際包括有關該等附屬公司預期協同效應、收益增長、未來市場發展及工作團隊的效益。由於該等利益不符合可識別無形資產的確認基準,故並無從商譽中獨立確認。

收購相關成本並不重大,並無計入於損益確認之轉讓代價中。

本集團截至二零一六年十二月三十一日止年度溢利中包括3,379,000港元由該等附屬公司產生之其他業務應佔溢利。截至二零一六年十二月三十一日止年度收益中有16,744,000港元產生自該等附屬公司。

倘收購已於二零一六年一月一日完成,截至二零一六年十二月三十一日止年度集團總收益將為3,894,675,000港元,截至二零一六年十二月三十一日止年度溢利將為430,176,000港元。備考資料僅供說明用途,未必能指示倘收購於二零一六年一月一日完成時本集團將實際取得之收益及經營業績,亦不擬作為未來業績之預測。

於釐定本集團「備考」收益及溢利時,假設該等附屬公司已於截至二零一六年十二月三十一日止年度年初收購,董事已按初步確認業務合併時產生之公允價值計算物業、廠房及設備之折舊以及所收購無形資產之攤銷。

44. **出售附屬公司**

(i) 於二零一六年九月三十日,本集團訂立一份協議,向一獨立第三方出售一家全資附屬公司。該附屬公司主要在中國從事電影院經營業務。出售附屬公司已於截至二零一六年十二月三十一日止年度完成,出售該附屬公司之收益淨額約251,000港元已於損益確認。

Confidential　　　　　　　　　　　　　　　　　　Qin_00001115

43. **收購附屬公司(續)**
   (b) **截至二零一六年十二月三十一日止年度(續)**
   [ii] (續)

於收購日期，已收購資產及已確認負債如下：

| | 千港元 |
|---|---:|
| 收購資產淨值之公允價值： | |
| 物業、廠房及設備 | 444 |
| 無形資產 | 88,017 |
| 存貨 | 227,572 |
| 貿易及其他應收款項(附註) | 992,131 |
| 電影版權投資 | 209,535 |
| 銀行結餘及現金 | 93,382 |
| 可換股票據 | (130,128) |
| 衍生金融工具 | (55,452) |
| 其他借款 | (160,000) |
| 債券 | (509,550) |
| 貿易及其他應付款項 | (209,710) |
| 資產淨值 | 546,241 |

| | 千港元 |
|---|---:|
| 收購產生之商譽 | |
| 已付代價 | 213,899 |
| 加： | |
| 非控股權益 | 260,903 |
| 先前持有權益之公允價值 | 191,998 |
| 減： | |
| 收購資產淨值 | (546,241) |
| 商譽(附註17) | 120,559 |
| 以下列方式支付： | |
| 現金 | 213,899 |
| 收購星美文化旅遊集團之現金流出淨額： | |
| 已付現金代價 | (213,899) |
| 自星美文化旅遊集團所取得之銀行結餘及現金 | 93,382 |
| | (120,517) |

附註：貿易及其他應收款項於收購日期之公允價值亦指合約總額。

於收購日期確認之星美文化旅遊集團非控股權益乃參考非控股權益公允價值而計量，金額為
260,903,000港元。



Confidential

Qin_00001116

**43. 收購附屬公司(續)**

    (b) 截至二零一六年十二月三十一日止年度(續)

        (i) (續)

附註:貿易及其他應收款項於收購日期之公允價值亦指合約總額。

由於合併成本包括控制權溢價,故收購該等附屬公司產生商譽。此外,就合併支付的代價實際包括有關該等附屬公司預期協同效應、收益增長、未來市場發展及工作團隊的效益。由於該等利益不符合可識別無形資產的確認基準,故並無從商譽中獨立確認。

收購相關成本並不重大,並無計入於損益確認之轉讓代價中。

截至二零一六年十二月三十一日止年度溢利中包括36,478,000港元由該等附屬公司產生之其他業務應佔溢利。截至二零一六年十二月三十一日止年度收益中252,314,000港元產生自該等附屬公司。

倘收購已於二零一六年一月一日完成,截至二零一六年十二月三十一日止年度集團總收益將為3,561,275,000港元,截至二零一六年十二月三十一日止年度溢利將為463,698,000港元。備考資料僅供說明用途,未必能指示倘收購於二零一六年一月一日完成時本集團將實際取得之收益及經營業績,亦不擬作為未來業績之預測。

於釐定本集團「備考」收益及溢利時,假設該附屬公司已於截至二零一六年十二月三十一日止年度年初收購,董事已按初步確認業務合併產生之公允價值計算所收購物業、廠房及設備之折舊。

        (ii) 於二零一六年十月二十八日,本集團於公開市場收購從事提供跨媒體服務(包括電影及電視節目製作及發行以及相關服務投資)之星美文化旅遊集團之約33.42%股權,現金代價為213,899,000港元。收購後,本集團於星美文化旅遊集團之股權由29.99%增加至63.41%,星美文化旅遊集團成為本集團之附屬公司。

Confidential

Qin_00001117

43. **收購附屬公司(續)**

   (a) **截至二零一七年十二月三十一日止年度(續)**

倘收購已於二零一七年一月一日完成,本年度集團總收益將為3,878,200,000港元,年內虧損將為275,209,000港元。備考資料僅供說明用途,未必能指示倘收購於二零一七年一月一日完成時本集團將實際取得之收益及經營業績,亦不擬作為未來業績之預測。

於釐定本集團「備考」收益及溢利時,假設該等附屬公司已於本年度年初收購,董事已按初步確認業務合併時產生之公允價值計算物業、廠房及設備之折舊以及所收購無形資產之攤銷。

   (b) **截至二零一六年十二月三十一日止年度**

      (i) 截至二零一六年十二月三十一日止年度,本集團向獨立第三方收購79家從事電影院經營業務之實體之全部股權,總現金代價為人民幣2,160,700,000元(相等於約2,401,834,000港元)。本集團收購79家實體以持續拓展本集團的電影院經營業務。由於該等附屬公司個別對本集團而言並不重大,故其資料已按合併基準予以披露。

於收購日期,已收購資產及已確認負債如下:

|  | 千港元 |
|---|---|
| **收購資產淨值之公允價值:** |  |
|   物業、廠房及設備 | 310,223 |
|   存貨 | 3,868 |
|   貿易及其他應收款項(附註) | 100,906 |
|   銀行結餘及現金 | 23,200 |
|   貿易及其他應付款項 | (315,663) |
|   融資租賃應付款項 | (6,712) |
| 可識別資產淨值總額之公允價值 | 115,822 |
| 商譽(附註17) | 2,286,012 |
|  | 2,401,834 |
| **以下列方式支付:** |  |
|   現金 | 2,401,834 |
| **收購附屬公司之現金流出淨額:** |  |
|   已付現金代價 | (2,401,834) |
|   動用於過往年度收購實體之已付按金 | 914,068 |
|   自附屬公司所取得之銀行結餘及現金 | 23,200 |
|  | (1,464,566) |

Confidential

Qin_00001118

## 43. 收購附屬公司(續)

### (a) 截至二零一七年十二月三十一日止年度(續)

於收購日期,已收購資產及已確認負債如下:

|  | 千港元 |
|---|---|
| 收購資產淨值之公允價值: | |
| 物業、廠房及設備 | 200,403 |
| 存貨 | 2,260 |
| 貿易及其他應收項(附註) | 27,248 |
| 銀行結餘及現金 | 23,591 |
| 貿易及其他應付款項 | (134,803) |
| 可識別資產淨值總額之公允價值 | 118,699 |
| 商譽(附註17) | 1,600,847 |
| | 1,719,546 |
| 以下列方式支付: | |
| 現金 | 1,719,546 |
| 收購附屬公司之現金流出淨額: | |
| 已付現金代價 | (1,719,546) |
| 動用於過往年度收購實體之付按金 | 154,289 |
| 自附屬公司所取得之銀行結餘及現金 | 23,591 |
| | (1,541,666) |

附註:貿易及其他應收款項於收購日期之公允價值亦指合約總額。

由於合併成本包括控制權溢價,故收購該等附屬公司產生商譽。此外,就合併支付的代價實際包括有關該等附屬公司預期協同效應、收益增長、未來市場發展及工作團隊的效益。由於該等利益不符合可識別無形資產的確認基準,故並無從商譽中獨立確認。

收購相關成本並不重大,並計入於損益確認之轉讓代價中。

本年度虧損中包括23,336,000港元由該等附屬公司產生之其他業務應佔虧損。本年度收益中95,858,000港元產生自該等附屬公司。

Confidential

Qin_00001119

42. **資產抵押**

於報告期末，本集團有以下資產抵押：

(a) 如附註16所述，本集團位於中國價值205,057,000港元（二零一六年：24,456,000港元）的租賃土地及樓宇已抵押作為本集團所獲授若干銀行借貸之抵押品。

(b) 如附註31所述，本集團已抵押銀行存款149,262,000港元（二零一六年：121,642,000港元）作為二零一六財政年度信託貸款之抵押品。

(c) 如附註36(a)、36(b)及36(e)所述，若干附屬公司未來年度之部份電影院票房收入已用作二零一五財政年度信託貸款、二零一六財政年度信託貸款及二零一七財政年度其他貸款之抵押品。

(d) 如附註21及36所述，本集團已將資產抵押證券安排所述之次級證券質押為二零一五財政年度信託貸款及二零一六財政年度信託貸款之抵押品。

(e) 於二零一七年十二月三十一日，於星美文化旅遊集團之全部股權及持作買賣投資已按規定用作授予本集團之保證金賬戶融資之或然抵押品。

43. **收購附屬公司**

(a) **截至二零一七年十二月三十一日止年度**

截至二零一七年十二月三十一日止年度，本集團向獨立第三方收購51家從事電影院經營業務之實體之全部股權，總代價為人民幣1,432,000,000元（相等於約1,719,546,000港元）。本集團收購51家實體以持續拓展本集團的電影院經營業務。由於該等附屬公司個別對本集團而言並不重大，故其資料已按合併基準予以披露。

Confidential

Qin_00001120

41. **以股份支付(續)**

**以股權結算之購股權計劃(續)**

於截至二零一六年及二零一七年十二月三十一日止年度根據購股權計劃尚未行使之購股權變動概述如下:

| | | | | 截至二零一六年十二月三十一日止年度內變動 | | | |
|---|---|---|---|---|---|---|---|
| 參與者類別 | 授出日期 | 行使期間 | 每股行使價港元 | 於二零一六年一月一日之結餘 | 於二零一六年行使 | 於二零一六年失效 | 於二零一六年十二月三十一日之結餘 |
| 董事 | 二零一三年七月十九日 | 二零一三年七月十九日至二零一六年七月十八日 | 0.18 | 21,666,665 | (21,666,665) | - | - |
| 僱員 | 二零一三年七月十九日 | 二零一三年七月十九日至二零一六年七月十八日 | 0.18 | 46,666,666 | (20,000,000) | (26,666,666) | - |
| 其他參與者 | 二零一三年七月十九日 | 二零一三年七月十九日至二零一六年七月十八日 | 0.18 | 39,999,999 | (26,666,666) | (13,333,333) | - |
| | | | | 108,333,330 | (68,333,331) | (39,999,999) | - |

| | | | | 截至二零一七年十二月三十一日止年度內變動 | | | |
|---|---|---|---|---|---|---|---|
| 參與者類別 | 授出日期 | 行使期間 | 每股行使價港元 | 於二零一七年一月一日之結餘 | 於二零一七年行使 | 於二零一七年失效 | 於二零一七年十二月三十一日之結餘 |
| 董事 | 二零一七年十月十二日 | 二零一七年十月十二日至二零一八年十月十一日 | 4.37 | - | 15,250,000 | - | - | 15,250,000 |
| | 二零一七年十月十二日 | 二零一八年十月十二日至二零一九年十月十一日 | 4.37 | - | 15,250,000 | - | - | 15,250,000 |
| 僱員 | 二零一七年十月十二日 | 二零一七年十月十二日至二零一八年十月十一日 | 4.37 | - | 26,750,000 | - | - | 26,750,000 |
| | 二零一七年十月十二日 | 二零一八年十月十二日至二零一九年十月十一日 | 4.37 | - | 26,750,000 | - | - | 26,750,000 |
| | | | | - | 84,000,000 | - | - | 84,000,000 |

0898

星美控股集團有限公司  110

Confidential

### 41. 以股份支付

#### 以股權結算之購股權計劃

於二零零九年九月三十日，本公司於股東特別大會上提呈一項普通決議案，以批准採納購股權計劃（「購股權計劃」）並終止運作舊購股權計劃。該決議案已獲股東批准，而購股權計劃於二零零九年九月三十日起計10年期間內有效。

根據購股權計劃，每次授出之購股權須支付之代價將為1.00港元。認購價將由董事會釐定並通知參與者，且須最少為下列之最高者：(i)本公司股份於授出日期（必須為營業日）在聯交所每日報價表所報之收市價；(ii)本公司股份於緊接授出日期前五個營業日每日報價表所報之平均收市價；及(iii)股份之面值。有關購股權計劃之主要條款詳情已概述及載列於日期為二零零九年九月九日之致股東通函內。

於二零一七年十月十二日，本公司根據購股權計劃授出84,000,000份購股權（「二零一七年購股權」）。二零一七年購股權於本集團收購370家從事電影院經營業務之實體時歸屬。二零一七年購股權可於到期日前任何時間行使，惟每名承授人於行使期內每年可予行使之購股權數目最多不得超過二零一七年購股權承授人所獲授購股權二分之一。截至二零一七年十二月三十一日止年度，並無二零一七年購股權歸屬及／或獲行使。

購股權於授出日期的估計公允價值為55,043,000港元。二零一七年購股權分兩次授出，其中第一批可於授出日期後一年內（即二零一七年十月十二日至二零一八年十月十一日）行使，而第二批可於授出日期後第二年（即二零一八年十月十二日至二零一九年十月十一日）行使。二零一七年購股權的公允價值乃使用柏力克－舒爾斯模式計算。輸入模型之參數如下：

|  | 二零一七年十月十二日 | |
|---|---|---|
|  | 第一批 | 第二批 |
| 股價 | 4.37港元 | 4.37港元 |
| 行使價 | 4.37港元 | 4.37港元 |
| 預期波幅 | 26.98% | 35.95% |
| 無風險利率 | 0.70% | 1.00% |
| 預期收益率 | 1.51% | 1.53% |

截至二零一七年十二月三十一日止年度，本集團確認就二零一七年購股權的總開支12,064,000港元。

**Confidential**

Qin_00001122

## 40. 股本

| | 股份數目 | | 金額 | |
| 法定： | 二零一七年 | 二零一六年 | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|---|---|
| 於年初 | | | | |
| 每股面值0.1港元之普通股 | 20,000,000,000 | 20,000,000,000 | 2,000,000 | 2,000,000 |
| 股份合併（附註(ii)) | (16,000,000,000) | – | | |
| 於年終 | | | | |
| 每股面值0.1港元之普通股 | – | 20,000,000,000 | – | 2,000,000 |
| 每股面值0.5港元之普通股 | 4,000,000,000 | – | 2,000,000 | – |
| 已發行及繳足： | | | | |
| 於年初 | | | | |
| 每股面值0.1港元之普通股 | 13,611,209,583 | 13,507,427,488 | 1,361,121 | 1,350,743 |
| 發行換股股份 | – | 116,448,764 | – | 11,645 |
| 已行使之購股權 | – | 68,333,331 | – | 6,833 |
| 回購股份（附註(i)) | (11,000,000) | (81,000,000) | (1,100) | (8,100) |
| 股份合併（附註(ii)) | (10,880,167,667) | – | – | – |
| 於年終 | | | | |
| 每股面值0.1港元之普通股 | – | 13,611,209,583 | – | 1,361,121 |
| 每股面值0.5港元之普通股 | 2,720,041,916 | – | 1,360,021 | – |

附註：

(i) 截至二零一六年十二月三十一日止年度，本公司分別於五月二十七日、六月三十日、七月二十九日及九月三十日從聯交所購回33,000,000股、23,000,000股、20,000,000股及5,000,000股每股面值0.1港元之普通股，款項合共57,187,000港元，每股價格最高為0.77港元，最低為0.63港元，已付金額超過股份面值之部份已從本公司股份溢價賬扣除。股本8,100,000港元已轉撥至資本贖回存備以於報告期末後註銷。

截至二零一七年十二月三十一日止年度，本公司分別於五月四日、五月十五日及五月十九日從聯交所購回5,000,000股、3,000,000股及3,000,000股每股面值0.1港元之普通股，款項合共7,807,000港元，每股價格最高為0.73港元，最低為0.68港元，已付金額超過股份面值之部份已從本公司股份溢價賬扣除。股本1,100,000港元已轉撥至資本贖回儲備以於報告期末後註銷。

(ii) 於二零一七年五月十日，本公司董事會建議將本公司已發行及未發行股本中每五股每股面值0.1港元之現有股份合併為一股本公司已發行及未發行股本中每股面值0.5港元之合併股份（「建議股份合併」）。建議股份合併已獲本公司股東於二零一七年六月二日舉行的股東特別大會上審批，並於二零一七年六月五日生效。

Confidential
Qin_00001123

38. **債券(續)**

[g] 星美文化旅遊集團於二零一六年八月向一獨立第三方晉晉發行一批1年期固定年票息率5厘之債券，本金總額為200,000,000港元，由本公司提供公司擔保。該等債券將按以下贖回金額贖回，即將使相關金額之內部回報率合共達每年10%的款項。債券的實際利率為11.00厘。

於二零一七年八月，債券到期日延後至二零一八年八月，並無加入額外條款。其他條款維持不變，於年內並無贖回。

39. **遞延稅項負債**

以下為本集團確認之遞延稅項負債:

|  | 無形資產<br>千港元 | 租賃合約之<br>公允價值調整<br>千港元 | 總計<br>千港元 |
|---|---|---|---|
| 於二零一六年一月一日 | 14,706 | 3,792 | 18,498 |
| 年內損益(附註10) | (2,558) | (513) | (3,071) |
| 出售 | (229) | – | (229) |
| 匯兌調整 | (1,173) | – | (1,173) |
| 於二零一六年十二月三十一日及二零一七年一月一日 | 10,746 | 3,279 | 14,025 |
| 計入年內損益(附註10) | (2,151) | (513) | (2,664) |
| 匯兌調整 | 721 | – | 721 |
| 於二零一七年十二月三十一日 | 9,316 | 2,766 | 12,082 |

於報告期末，本集團有未動用稅項虧損1,827,703,000港元(二零一六年:1,118,995,000港元)可用作抵銷未來溢利。由於未能預測未來溢利來源，故未有確認任何遞延稅項資產。計入未確認稅項虧損之虧損約1,510,394,000港元(二零一六年:938,571,000港元)將於五年內屆滿。其他稅項虧損可無限期結轉。

於報告期末，與附屬公司未分派盈利有關之暫時差額而未確認遞延稅項負債之總額約為2,743,520,000港元(二零一六年:1,787,188,000港元)。由於本集團可控制暫時差額之回撥時間，而該等差額可能於可見將來不作回撥，因此並無就該等差額確認負債。

Confidential

Qin_00001124

**38. 債券**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 債券須於以下期限內償還： | | |
| 一年內 | 1,528,170 | 1,225,711 |
| 超過一年但不超過兩年之期間內 | 9,225 | 330,533 |
| 超過兩年但不超過五年之期間內 | 256,548 | 177,270 |
| 超過五年期間內 | 65,216 | 132,083 |
| | 1,859,159 | 1,865,597 |
| 減：於一年內到期償還之款項 | (1,528,170) | (1,225,711) |
| 於一年後到期償還之款項 | 330,989 | 639,886 |
| 分析為： | | |
| 無抵押 | 1,859,159 | 1,865,597 |
| | 1,859,159 | 1,865,597 |

於報告期末，該等金額包括：

(a) 於二零一三年及二零一四年，本公司向獨立第三方發行十五批7年期、本金總額為170,000,000港元之5厘固定年票息率私募債券。債券實際利率介乎5.0厘至9.1厘。

(b) 於二零一五年，本公司向獨立第三方發行兩批3年期5厘債券、一批4年期6厘債券，以及十三批7年期5厘債券，本金總額為95,900,000港元，債券實際利率介乎7.8厘至11.1厘。

(c) 於二零一六年，本公司向獨立第三方發行一批3年期5厘債券、三批4年期5厘債券、一批5年期5厘債券、十批7年期5厘債券，以及三批8年期5厘債券，本金總額為96,000,000港元，債券實際利率介乎8.3厘至13.3厘。

(d) 於二零一六年，本公司向獨立第三方發行三批2年期8.5厘債券，本金總額為1,124,805,000港元，債券實際利率介乎8.79厘至10.25厘。截至二零一七年十二月三十一日止年度，本公司已提早贖回40,000,000港元債券。

(e) 於二零一七年，本公司向獨立第三方發行一批7年期6厘債券，本金額為5,000,000港元，債券實際利率為9.59厘，以及兩批3年期5厘債券，本金總額為10,000,000港元，債券實際利率為12.36厘。

(f) 星美文化旅遊集團於二零一六年八月向一獨立第三方發行一批1年期固定年票息率5厘的債券，本金總額為315,000,000港元，由本公司提供公司擔保。該等債券將按以下贖回金額贖回，即將使相關金額之內部回報率合共達等年10%的款項。該等債券的實際利率為9.85厘。於二零一六年十一月，星美文化旅遊集團已提早贖回64,431,000港元的債券。

於二零一七年八月，債券到期日延後至二零一八年八月，並無加入額外條款。其他條款維持不變，於年內並無贖回。

Confidential

Qin_00001125



37. **可換股票據／衍生金融工具(續)**

  (i)  (續)

  下表載列可換股票據XIII的負債部份及轉換選擇權及其他嵌入式衍生工具於本年度的變動情況：

| | 負債部分 千港元 | 轉換及其他 嵌入式衍生工具 千港元 | 總計 千港元 |
|---|---|---|---|
| 因收購而產生 | 33,976 | 13,683 | 47,659 |
| 已收取利息 | 176 | – | 176 |
| 已付／應付利息 | (103) | – | (103) |
| 本年度已轉換 | (34,049) | (10,294) | (44,343) |
| 因公允價值變動產生之收益 | – | (3,389) | (3,389) |
| 於二零一六年十二月三十一日 | – | – | – |

  於本公司收購星美文化旅遊集團(見附註43(b)(ii))之日期，負債部份按公允價值確認。負債部份之公允價值按合約釐定以規定收益率貼現之未來現金流量之現值計算，而所規定之收益率則參照具有類似信貸評級及餘下到期時間之票據之平均收益率而釐定。於往後期間，負債部份按攤銷成本以實際利率法列賬。可換股票據XIII負債部份之實際利率為8.94厘。

  二項式權定價模型乃用於可換股票據XIII轉換選擇權之估值。輸入模型之參數如下：

| | 收購日期 | 二零一六年 十一月二十一日 |
|---|---|---|
| 股價 | 0.900港元 | 0.830港元 |
| 行使價 | 0.675港元 | 0.675港元 |
| 波幅 | 37.00% | 37.51% |
| 選擇權有效期 | 0.78年 | 0.72年 |
| 無風險利率 | 0.42% | 0.53% |

  於二零一六年十一月二十一日，可換股票據XIII的持有人行使可換股票據XIII全部本金額35,000,000港元的轉換權，按每股普通股0.675港元之轉換價兌換可換股票據XIII，當時合共發行51,851,851股星美文化旅遊集團的換股普通股。於二零一七年及二零一六年十二月三十一日，概無任何可換股票據XIII尚未轉換。

Confidential

Qin_00001126

**37. 可換股票據／衍生金融工具(續)**

   (h)  (續)

二項式期權定價模型乃用於可換股票據XII轉換選擇權之估值。輸入模型之參數如下：

| | 收購日期 | 二零一六年十二月三十一日 | 二零一七年三月十五日 | 二零一七年十二月三十一日 |
|---|---|---|---|---|
| 股價 | 0.900港元 | 0.860港元 | 0.790港元 | 0.750港元 |
| 行使價 | 0.675港元 | 0.675港元 | 0.675港元 | 0.675港元 |
| 波幅 | 38.70% | 36.04% | 37.55% | 21.05% |
| 選擇權有效期 | 0.99年 | 0.82年 | 0.62年 | 0.82年 |
| 無風險利率 | 0.43% | 0.86% | 0.65% | 1.47% |

於二零一七年三月十五日，永昔行使可換股票據XII本金額25,000,000港元之轉換權，按每股普通股0.675港元的轉換價轉換可換股票據XII，並於當時發行合共37,037,037股星美文化旅遊集團的換股普通股。

於二零一七年十二月三十一日，可換股票據XII的本金額75,000,000港元(二零一六年：100,000,000港元)尚未贖回。

   (i)  星美文化旅遊集團於二零一六年八月八日向獨立第三方投資者Cheer Hope發行本金額35,000,000港元的一年期5厘可換股票據(「可換股票據XIII」)。可換股票據XIII以港元計值，並賦予持有人權利於發行日期後一年期屆滿當日起(包括該日)至到期日(二零一七年八月八日)營業時間結束止期間之任何營業日以每股0.675港元(可根據可換股票據XIII的條款及條件予以調整及重定)的轉換價將其兌換為星美文化旅遊集團的普通股。倘可換股票據XIII未獲兌換，本公司將按發行日至到期日(包括該日)之10%年度內部回報率計算之金額贖回可換股票據XIII。該等票據不得提早贖回，自發行日期起於每半年末按年息5厘支付利息。

可換股票據XIII包含兩個部份 – 債務部份及轉換選擇權。轉換選擇權與負債部份關係並不密切，並被分類為衍生工具，原因是有關轉換不會導致星美文化旅遊集團控股有限公司發行固定數目之股份以償付負債成份之定額款項。轉換選擇權按公允價值計量，其公允價值之變動於損益確認。

37. **可換股票據／衍生金融工具（續）**

(h) 星美文化旅遊集團於二零一六年十月二十六日向獨立第三方投資者永晉投資有限公司（「永晉」）發行本金額100,000,000港元的一年期5厘可換股票據（「可換股票據XII」）。可換股票據XII以港元計值，並賦予持有人權利於發行日期後一年期屆滿當日（包括該日）起至到期日（二零一七年十月二十五日）營業時間結束止期間之任何營業日以每股0.675港元（可進行反攤薄調整）之轉換價將其兌換為星美文化旅遊集團的普通股。倘可換股票據XII未獲兌換，本公司將按發行日至到期日（包括該日）之5%年度回贖率計算之金額贖回可換股票據XII。該等票據不得提早贖回，自發行日期起於每半年末按年息5厘支付利息。

可換股票據XII包含兩個部份－債務部份及轉換選擇權。轉換選擇權與債務部份關係並不密切，並被分類為衍生工具，原因是有關轉換不會導致星美文化旅遊集團發行固定數目之股份以償付負債成份之定額款項。轉換選擇權按公允價值計量，其公允價值之變動於損益確認。

於本公司收購星美文化旅遊集團（見附註43(b)(ii)）之日期，負債部份按公允價值確認。負債部份之公允價值按合約釐定以規定收益率貼現之未來現金流量之現值計算，而所規定之收益率則參照具有類似信貸評級及餘下到期時間之票據之平均收益率而釐定。於往後期間，負債部份按攤銷成本以實際利率法列賬。可換股票據XII負債部份之實際利率為12.09厘（二零一六年：9.11厘）。

截至二零一七年十二月三十一日止年度，永晉將可換股票據XII的到期日由二零一七年十月二十五日延後至二零一八年十月二十五日。可換股票據XI的所有其他條款及條件維持不變，永晉可於二零一八年十月二十五日營業時間結束止期間將可換股票據XI按每股0.675港元之轉換價將其兌換為星美文化旅遊集團的普通股。

由於根據新條款按原實際利率貼現之現金流量貼現現值（包括任何已付費用）與金融負債餘下現金流量貼現現值之差額少於10%，本公司董事認為延長到期日為非重大修訂，並無導致終止確認。可換股票據XI負債部份剩餘期間之實際利率經調整後修正為12.09厘。

下表載列可換股票據XII的負債部份及轉換選擇權及其他嵌入式衍生工具於本年度的變動情況：

| | 負債部分<br>千港元 | 轉換及其他<br>嵌入式衍生工具<br>千港元 | 總計<br>千港元 |
|---|---|---|---|
| 因收購而產生 | 96,152 | 41,769 | 137,921 |
| 已收取利息 | 1,605 | – | 1,605 |
| 已付／應付利息 | (2,522) | – | (2,522) |
| 因公允價值變動產生之收益 | | (6,847) | (6,847) |
| 於二零一六年十二月三十一日 | 95,235 | 34,922 | 130,157 |
| 已收取利息 | 9,110 | – | 9,110 |
| 已付／應付利息 | (6,486) | – | (6,486) |
| 本年度已轉換 | (24,046) | (5,368) | (29,414) |
| 因公允價值變動產生之收益 | – | (20,430) | (20,430) |
| | 73,813 | 9,124 | 82,937 |

Confidential

Qin_00001128

**37. 可換股票據／衍生金融工具(續)**

    (g)  (續)

由於根據新條款按原實際利率貼現之現金流量貼現現值(包括任何已付費用)與金融負債餘下現金流量貼現現值之差額少於10%,本公司董事認為延長到期日為非重大修訂,並無導致終止確認。可換股票據XI負債部份剩餘期間之實際利率經調整後修正為11.40%。

下表載列可換股票據XI的負債部份及轉換選擇權及其他嵌入式衍生工具於本年度的變動情況:

| | 負債部分<br>千港元 | 轉換及其他<br>嵌入式衍生工具<br>千港元 | 總計<br>千港元 |
|---|---:|---:|---:|
| 於截至二零一六年十二月三十一日止年度發行 | 64,190 | 810 | 65,000 |
| 已收取利息 | 593 | – | 593 |
| 已付／應付利息 | (445) | – | (445) |
| 因公允價值變動產生之虧損 | – | 19,954 | 19,954 |
| 於二零一六年十二月三十一日 | 64,338 | 20,764 | 85,102 |
| 已收取利息 | 3,635 | – | 3,635 |
| 已付／應付利息 | (3,225) | – | (3,225) |
| 本年度已轉換 | (29,748) | (6,745) | (36,493) |
| 公允價值變動 | – | (8,559) | (8,559) |
| | 35,000 | 5,460 | 40,460 |

二項式期權定價模型乃用於可換股票據XI轉換選擇權之估值。輸入模型之參數如下:

| | 二零一六年<br>十一月十一日 | 二零一六年<br>十二月三十一日 | 二零一七年<br>二月十日 | 二零一七年<br>十二月三十一日 |
|---|---|---|---|---|
| 股價 | 0.840港元 | 0.860港元 | 0.810港元 | 0.750港元 |
| 行使價 | 0.675港元 | 0.675港元 | 0.675港元 | 0.675港元 |
| 波幅 | 40.44% | 37.73% | 38.28% | 22.00% |
| 選擇權有效期 | 0.74年 | 0.61年 | 0.49年 | 0.61年 |
| 無風險利率 | 0.49% | 0.82% | 0.76% | 1.39% |

於二零一七年二月十日,Cheer Hope行使可換股票據XI本金額30,000,000港元之轉換權,按每股普通股0.675港元的轉換價轉換可換股票據XI,並於當時發行合共44,444,444股星美文化旅遊集團的換股普通股。

於二零一七年十二月三十一日,可換股票據XI的本金額35,000,000港元(二零一六年:65,000,000港元)尚未贖回。

0102

**Confidential**

**Qin_00001129**

37. **可換股票據／衍生金融工具(續)**

    (f)    (續)

截至二零一七年十二月三十一日止年度,可換股票據X持有人將可換股票據X的到期日由二零一七年十一月二十二日延後至二零一八年十一月二十二日。可換股票據X的所有其他條款及條件維持不變。獨立第三方投資者可於二零一八年十一月二十二日營業時間結束止期間將可換股票據X,按每股3.85港元之轉換價將其兌換為本公司的普通股,已根據本公司於二零一七年六月五日生效的股份合併而作出反攤薄調整。

由於根據新條款按原實際利率貼現之現金流量貼現現值(包括任何已付費用)與金融負債餘下現金流量貼現現值之差額少於10%,本公司董事認為延長到期日為非重大修訂,並無導致終止確認。可換股票據X負債部份剩餘期間之實際利率經調整後修正為10.00%。

於二零一七年及二零一六年十二月三十一日,可換股票據X之本金額224,000,000港元尚未贖回。

    (g)    本公司附屬公司星美文化旅遊集團於二零一六年十一月十一日向獨立第三方投資者Cheer Hope Holdings Limited(「Cheer Hope」)發行本金額65,000,000港元的一年期5厘可換股票據(「可換股票據XI」)。可換股票據XI以港元計值,並賦予持有人權利於發行日期後一年期屆滿當日起(包括該日)到期日(二零一七年八月八日)營業時間結束止期間之任何營業日以每股0.675港元(可作出反攤薄調整)的換股價將其兌換為星美文化旅遊集團的普通股。倘可換股票據XI未獲兌換,本公司將按發行日至到期日(包括該日)之5%年度回報率計算之金額贖回可換股票據XI。該等票據不得提早贖回,自發行日期起每半年末按年息5厘支付利息。

可換股票據XI包含兩部份 – 債務部份及轉換選擇權。轉換選擇權與負債部份關係並不密切,並被分類為衍生工具,原因是有關轉換不會導致星美文化旅遊集團發行固定數目之股份以償付負債成份之定額款項。轉換選擇權按公允價值計量,其公允價值之變動於損益確認。

於發行日期,負債部份按公允價值確認。負債部份之公允價值按合約釐定以規定收益率貼現之未來現金流量之現值計算,而所規定之收益率則參照具有類似信貸評級及餘下到期時間之票據之平均收益率而釐定。於往後期間,負債部份按攤銷成本以實際利率法列賬。可換股票據XI負債部份之實際利率為11.40厘(二零一六年:6.75厘)。

截至二零一七年十二月三十一日止年度,Cheer Hope將可換股票據XI的到期日由二零一七年八月八日延後至二零一八年八月八日。可換股票據XI的所有其他條款及條件維持不變,Cheer Hope可於二零一八年八月八日營業時間結束止期間將可換股票據XI按每股0.675港元之轉換價將其兌換為星美文化旅遊集團的普通股。

**Confidential**

Qin_00001130

## 37. 可換股票據／衍生金融工具（續）

(e) 本公司於二零一五年十一月十二日向一名獨立第三方投資者發行本金總額為275,000,000港元的兩年期4.0厘可換股票據（「可換股票據IX」）。可換股票據IX以港幣計值，並賦予持有人權利在發行日後六個月當日（包括該日）起至到期日（二零一七年十一月十一日）營業時間結束止期間的任何營業日，按每股0.77港元之轉換價將其兌換為本公司的普通股，可作出反攤薄調整。倘可換股票據IX未獲兌換，本公司將按發行日至到期日（包括該日）之10%年度回報率計算之金額贖回可換股票據IX。可換股票據不得提早贖回。按年利率4.0厘計算之利息於每半個曆年最後一個營業日支付。

可換股票據IX包括兩部份：負債部份與兌換部份。由於兌換選擇權將以本公司固定數目之權益工具結付，故兌換選擇權於權益內呈列為可換股票據儲備。負債部份之實際利率為10.00厘（二零一六年：12.30厘）。

截至二零一七年十二月三十一日止年度，可換股票據IX持有人將可換股票據IX的到期日由二零一七年十一月十一日延後至二零一八年十一月十一日。可換股票據IX的所有其他條款及條件維持不變，獨立第三方投資者可於二零一八年十一月十一日營業時間結束止期間將可換股票據IX，按每股3.85港元之轉換價將其兌換為本公司的普通股，已根據本公司於二零一七年六月五日生效的股份合併作出反攤薄調整。

由於根據新條款按原實際利率貼現之現金流量貼現現值（包括任何已付費用）與金融負債餘下現金流量貼現現值之差額少於10%，本公司董事認為延長到期日為非重大修訂，並無導致終止確認。可換股票據IX負債部份剩餘期間之實際利率經調整後修正為10.00厘。

於二零一七年及二零一六年十二月三十一日，可換股票據IX之本金額275,000,000港元尚未贖回。

(f) 本公司於二零一五年十一月二十三日向若干獨立第三方投資者發行本金總額為224,000,000港元的2年期4.0厘可換股票據（「可換股票據X」）。可換股票據X以港幣計值，並賦予持有人權利在可換股票據X發行日六個月當日（包括該日）起至到期日（二零一七年十一月二十二日）營業時間結束止期間的任何營業日，按每股0.77港元之轉換價將其兌換為本公司的普通股，可作出反攤薄調整。倘可換股票據X未獲兌換，本公司將按發行日至到期日（包括該日）之10%年度回報率計算之金額贖回可換股票據X。可換股票據不得提早贖回。按年利率4.0厘計算之利息於每半個曆年最後一個營業日支付。

可換股票據X包括兩部份：負債部份與兌換部份。由於兌換選擇權將以本公司固定數目之權益工具結付，故兌換選擇權於權益內呈列為可換股票據儲備。負債部份之實際利率為10.00厘（二零一六年：12.45厘）。

0103

星美控股集團有限公司 (100)

37. **可換股據／衍生金融工具（續）**

(c) （續）

於二零一五年五月十三日，可換股據V持有人行使可換股據V之本金額2,632,000美元（相等於約20,400,000港元）之換股權，按每股普通股0.34港元的轉換價轉換可換股據V，並於當時發行合共60,000,000股換股普通股。

於二零一五年十二月三十一日，可換股據V之本金額2,528,000美元（相等於約19,592,000港元）尚未贖回。於二零一六年九月十三日，可換股據V持有人行使可換股據V之本金額2,528,000美元（相等於約19,592,580港元）之餘下換股權，按每股普通股0.34港元的轉換價轉換可換股據V，並於當時發行合共57,625,235股換股普通股。於二零一七年及二零一六年十二月三十一日，概無可換股據V尚未贖回。

(d) 本公司於二零一五年十一月五日向一名獨立第三方投資者發行本金總額為300,000,000港元的兩年期4.0厘可換股據（「可換股據VIII」）。可換股據VIII以港幣計值，並賦予持有人權利在發行日起至於二零一七年十一月四日到期日營業時間結束止期間的任何營業日，按每股0.77港元之轉換價將其兌換為本公司的普通股，可作出反攤薄調整。倘可換股據VIII未獲兌換，本公司將按發行日至到期日（包括該日）之10%年度回報率計算之金額贖回可換股據VIII。可換股據VIII不得提早贖回。按年利率4.0厘計算之利息於每半個曆年最後一個營業日支付。

可換股據VIII包括兩部份：負債部份與兌換部份。由於兌換選擇權將以本公司固定數目之權益工具結付，故兌換選擇權於權益內呈列為可換股據儲備。負債部份之實際利率為10.00厘（二零一六年：11.71厘）。

截至二零一七年十二月三十一日止年度，可換股據VIII持有人將可換股據VIII的到期日由二零一七年十一月四日延長至二零一八年十一月四日。可換股據VIII的所有其他條款及條件維持不變。獨立第三方投資者可於二零一八年十一月四日營業時間結束止期間將其可換股據VIII，按每股3.85港元之轉換價將其兌換為本公司的普通股，已根據本公司於二零一七年六月五日生效的股份合併作出反攤薄調整。

由於根據新條款按原實際利率貼現之現金流量貼現現值（包括任何已付費用）與金融負債餘下現金流量貼現現值之差額少於10%，本公司釐認為延長到期日為非重大修訂，並無導致終止確認。可換股據VIII負債部份剩餘期間之實際利率經調整後修正為10.00厘。

於二零一七年及二零一六年十二月三十一日，可換股據VIII之本金額300,000,000港元尚未贖回。

Confidential

Qin_00001132

整理中

**37. 可換股票據／衍生金融工具（續）**

(b) 本公司於二零一四年八月十五日向若干獨立第三方投資者發行若干本金總額為200,000,000港元的3年期9厘可換股票據（「可換股票據IV」）。可換股票據IV以港元計值，並賦予持有人權利在可換股票據IV發行日期起至到期日（二零一七年八月十四日）（包括該日）止期間的任何營業日，按每股0.34港元之轉換價將其轉換為本公司的普通股，惟可作出反攤薄調整。倘可換股票據IV未獲轉換，本公司將按發行日至到期日（包括該日）之12%年度回報率計算之金額贖回可換股票據IV。認購人可向本公司發出最少45日的書面通知，於可換股票據IV發行日期起計24個月當月要求本公司以發行日至提早贖回日（包括該日）之12%年度回報率計算之金額贖回可換股票據IV（全部或部份）。按年利率9厘計算之利息每季度支付一次。

可換股票據IV包括兩部份：負債部份（連同緊密相關之提早贖回權）及兌換部份。由於兌換選擇權將以本公司固定數目之權益工具結付，故兌換選擇權於權益內呈列為可換股票據儲備。若行使提早贖回權，由於贖回價約相當於已發行工具之攤銷成本（於權益兌換選擇權被拆分前），因此提早贖回權與負債部份緊密相關，故不予單獨確認。負債部份之實際利率為13.62厘。

於二零一五年五月十四日、二零一五年六月五日、二零一五年七月六日及二零一五年十月二十二日，可換股票據IV持有人分別行使可換股票據IV的本金額100,000,000港元、30,000,000港元、30,000,000港元及20,000,000港元之換股權，按每股普通股0.34港元的轉換價轉換可換股票據IV，並於當時發行合共529,411,764股換股普通股。

於二零一六年八月十四日，可換股票據IV持有人行使可換股票據IV的本金額20,000,000港元之換股權，按每股普通股0.34港元的轉換價轉換可換股票據IV，並於當時發行合共58,823,529股換股普通股。於二零一七年及二零一六年十二月三十一日，概無可換股票據IV尚未贖回。

(c) 本公司於二零一四年十二月二十日向一名獨立第三方投資者發行本金額為5,160,000美元（相等於約39,992,000港元）的3年期7厘可換股票據（「可換股票據V」）。可換股票據V以美元計值，根據認購協議，美元兌港元按7.7505的固定匯率換算，可換股票據V並賦予持有人權利在可換股票據V發行日期起至到期日（二零一七年十二月十九日）（包括該日）止期間的任何營業日，按每股0.34港元之轉換價將其轉換為本公司的普通股，惟可作出反攤薄調整。倘可換股票據V未獲轉換，本公司將按發行日至到期日（包括該日）之10%年度回報率計算之金額贖回可換股票據V。認購人可向本公司發出最少45日的書面通知，於可換股票據V發行日期起計24個月當月要求本公司以發行日至提早贖回日（包括該日）之10%年度回報率計算之金額贖回可換股票據V（全部或部份）。按年利率7厘計算之利息每半年支付一次。

可換股票據V包括兩個部份：負債部份（連同緊密相關之提早贖回權）及兌換部份。由於兌換選擇權將以本公司固定數目之權益工具結付，故兌換選擇權於權益內呈列為可換股票據儲備。若行使提早贖回權，由於贖回價約相當於已發行工具之攤銷成本（於權益兌換選擇權被拆分前），因此提早贖回權與該工具的負債部份緊密相關，故不予單獨確認。負債部份之實際利率為11.50厘。

37. **可換股票據／衍生金融工具**

綜合財務狀況報表列示如下：

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 流動負債 | 907,813 | 1,007,572 |
| 非流動負債 | 10,000 | – |
| | 917,813 | 1,007,572 |

可換股票據負債部分於本年度之變動列示如下：

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 於年初之賬面值 | 1,007,572 | 823,207 |
| 由收購附屬公司產生（附註43(b)(ii)） | – | 130,128 |
| 年內發行（附註37(g)） | – | 64,190 |
| 已收利息（附註9） | 105,434 | 103,072 |
| 轉換為本公司股份（附註37(b)及(c)） | – | (41,650) |
| 轉換為星美文化旅遊集團之股份（附註37(g)、(h)及(i)） | (53,794) | (34,049) |
| 已付／應付利息 | (141,149) | (37,326) |
| 還款 | (250) | – |
| | 917,813 | 1,007,572 |

於報告期末，該等金額包括：

(a) 本公司於二零一二年九月十一日向若干獨立第三方投資者發行若干本金總額為10,250,000港元的五年期5厘可換股票據（「可換股票據II」）。可換股票據II以港元計值，並賦予持有人權利在可換股票據II發行日期起至到期日（二零一七年九月十日）前7個營業日當日（包括該日）止期間的任何營業日，按每股1.00港元的轉換價將其轉換為本公司的普通股，可作出反攤薄調整。倘可換股票據II未獲轉換，本公司將於到期日按彼等本金額之100%贖回可換股票據II。可換股票據II不得提早贖回。按年利率5.0厘計算的利息將每年於每個曆年最後一個營業日支付。

可換股票據II包括兩部份：負債部份及兌換部份。由於兌換選擇權將以本公司固定數目之權益工具結付，故兌換選擇權於權益內呈列為可換股票據儲備。負債部份之實際利率為5.00厘（二零一六年：5.94厘）。

截至二零一七年十二月三十一日止年度，獨立第三方投資者將可換股票據II的到期日由二零一七年九月十日延後至二零一八年九月十日。可換股票據II的所有其他條款及條件維持不變。獨立第三方投資者可於二零一八年九月十日營業時間結束止期間將可換股票據II，按每股5.00港元之轉換價將其兌換為本公司的普通股，根據本公司於二零一七年六月五日生效的股份合併作出反攤薄調整。

由於根據新條款按原實際利率貼現之現金流量貼現現值（包括任何已付費用）與金融負債餘下現金流量貼現現值之差額少於10%，本公司董事認為延長到期日為非重大修訂，並無導致終止確認。可換股票據II負債部份剩餘期間之實際利率經調整後修正為5.00厘。

於二零一七年十二月三十一日，可換股票據II之本金額10,000,000港元（二零一六年：10,250,000港元）尚未贖回。

Confidential

Qin_00001134

36. **其他借款（續）**

(b) 根據本公司於二零一六年八月九日刊發之公告，本公司若干附屬公司已經與一中國信託人訂立信託貸款協議（「二零一六財政年度信託貸款安排」），據此，信託人已同意向本集團提供本金總額人民幣1,500,000,000元之二零一六財政年度信託貸款，為期五年，按固定實際年利率6.67厘計息（「二零一六財政年度信託貸款」）。二零一六財政年度信託貸款以本公司於中國的若干附屬公司於二零一六年至二零二零年期間若干曆月的經營電影院票房收入及應收款項作抵押。二零一六財政年度信託貸款亦由本公司及星美堅典提供之交叉擔保作進一步擔保。其後，中國一家金融機構將本公司已根據二零一六財政年度信託貸款安排提取之二零一六財政年度信託貸款匯集為資產抵押證券（「證券」），證券以本公司於中國的若干附屬公司所經營電影院之票房收入及應收款項作抵押（「二零一六財政年度資產抵押證券安排」）。根據二零一六財政年度資產抵押證券安排，本公司須投資一批證券產品，即二零一六財政年度資產抵押證券安排中所規定人民幣100,000,000元（相等於123,519,000港元）之五年期不可流通零票息次級證券，以讓本公司可根據二零一六財政年度信託貸款安排獲得二零一六財政年度信託貸款（詳見附註21(b)）。證券已自二零一六年八月九日起在深圳證券交易所上市。

於二零一七年十二月三十一日，二零一六財政年度信託貸款的賬面值為1,006,855,000港元（二零一六年：1,478,188,000港元）。

(c) 於截至二零一六年十二月三十一日止年度，本集團：1)從一家財務機構取得短期信貸額度，上限金額680,000,000港元，用以收購星美文化旅遊集團之股權。於二零一六年十二月三十一日，本集團已提取貸款中之75,724,000港元（二零一七年：無），為無抵押、按年利率24厘計息，須於六個月內償還；及2)從一家財務機構取得短期信貸額度100,000,000港元，作一般商業用途。於二零一六年十二月三十一日，本集團已提取貸款中之100,000,000港元（二零一七年：無），乃按年利率24厘計息，須於兩個月內償還。全部其他借款已於截至二零一七年十二月三十一日止年度獲本集團悉數償還。

(d) 於二零一六年十二月三十一日，其他借款包括向財務機構借予星美文化旅遊集團的125,576,000港元款項，須於一年內償還、無抵押及按固定年利率17.5厘計息。全部其他借款已於截至二零一七年十二月三十一日止年度獲星美文化旅遊集團悉數償還。

(e) 截至二零一七年十二月三十一日止年度，本集團從財務機構取得一筆信貸額度，上限金額人民幣150,000,000元（相等於173,625,000港元），作一般商業用途（「二零一七財政年度其他貸款」）。該信貸額度以本公司於中國的若干附屬公司所經營電影院之票房收入及應收款項作抵押，按固定年利率9厘計息，並須於二零一九年一月悉數償還。本集團可於到期日前選擇提早償還借款的全部或部份本金額。於二零一七年十二月三十一日，本集團已提取全數信貸額度，並已償還人民幣61,000,000元（相等於70,608,000港元）。

Confidential

Qin_00001135

36. **其他借款(續)**

於報告期末，該等金額包括：

[a] 根據本公司於二零一五年四月二十九日刊發之公告，本公司若干附屬公司已經與一中國信託人訂立信託貸款協議(「二零一五財政年度信託貸款安排」)，據此，信託人已同意向本公司提供本金總額人民幣1,350,000,000元之二零一五財政年度信託貸款，為期五年，按固定平均實際年利率9.6厘至11.8厘計息(「二零一五財政年度信託貸款」)。二零一五財政年度信託貸款以本公司於中國的若干附屬公司於二零一五年至二零一九年期間若干電影之經營電影院票房收入及應收款項作抵押。二零一五財政年度信託貸款亦由本公司、本公司一間附屬公司及覃先生提供之交叉擔保作進一步擔保。其後，中國一家金融機構將本公司已根據二零一五財政年度信託貸款安排提取之二零一五財政年度信託貸款匯集為資產抵押證券(「證券」)，證券以本公司於中國的若干附屬公司所經營電影院之票房收入及應收款項作抵押(「二零一五財政年度資產抵押證券安排」)。根據二零一五財政年度資產抵押證券安排，本公司須投資一批證券產品，即二零一五財政年度資產抵押證券安排中所規定人民幣100,000,000元(相等於123,519,000港元)之五年期不可流通零票息次級證券，以讓本公司可根據二零一五財政年度信託貸款安排獲得二零一五財政年度信託貸款(詳見附註21[a])。證券已自二零一五年八月四日起在深圳證券交易所上市。

根據二零一五財政年度資產抵押證券安排發行之兩批證券(總本金額為人民幣647,000,000元(相等於796,522,000港元))已由中國另一家金融機構(「金融機構乙」)按本金總額收購，其後該兩批證券被其重新組合為非上市資產擔保證券(「合成工具」)。合成工具之條款及條件與其相關之兩批證券相同，每年固定有效利率為7.7厘及8.3厘。根據相關證券之條款，合成工具將於二零一八年及二零一九年到期。

根據金融機構乙與本集團訂立之認購協議，金融機構乙透過合成工具把兩批證券之所有風險及回報轉移。據此，本集團已有效地根據此協議回購兩批證券，而收購合成工具已支付之人民幣647,000,000元(相等於796,522,000港元)已初步確認為扣減二零一五財政年度信託貸款負債。

於二零一五年十二月及二零一六年三月，本集團向金融機構乙分別出售本金人民幣297,000,000元(相等於365,637,000港元)及人民幣350,000,000元(相等於389,060,000港元)的全部合成工具，所得款項分別為人民幣303,144,000元(相等於373,201,000港元)及人民幣353,467,000元(相等於407,365,000港元)，同時，金融機構乙於出售該等合成工具，乃作為出售以往購回之自身債務工具入賬。故此，出售所得款項乃作為視作發行負債工具所得款項之一部分入賬。

於二零一七年十二月三十一日，二零一五財政年度信託貸款的賬面值為854,047,000港元(二零一六年：1,031,456,000港元)。

Confidential

Qin_00001136

35. **銀行借款 (續)**

所有銀行貸款以人民幣列值，並按中國人民銀行（「人行」）基準利率計息，實際年利率介乎5.9厘至6.5厘（二零一六年：6.5厘）。

於二零一七年十二月三十一日，本集團位於中國價值205,057,000港元（二零一六年：24,456,000港元）的租賃土地及樓宇已抵押作為本集團銀行借款之抵押品。

36. **其他借款**

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 其他貸款 |  |  |
| － 有抵押 | 1,967,774 | 2,509,644 |
| － 無抵押 | – | 301,300 |
|  | 1,967,774 | 2,810,944 |

按預定還款日期劃分，其他貸款須於以下期限內償還：

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 一年內 | 1,336,112 | 824,900 |
| 一至二年 | 631,662 | 1,192,916 |
| 二至五年 | – | 793,128 |
|  | 1,967,774 | 2,810,944 |
| 減：於一年內到期償還之款項 | (1,336,112) | (824,900) |
| 於一年後到期償還之款項 | 631,662 | 1,986,044 |

## 34. 融資租賃應付款項

| | 最低租金付款 | | 最低租金付款之現值 | |
|---|---|---|---|---|
| | 二零一七年<br>千港元 | 二零一六年<br>千港元 | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
| 融資租賃項下之應付款項： | | | | |
| 一年內 | **98,488** | 99,294 | **90,059** | 88,662 |
| 第二年至第五年（包括首尾兩年） | **60,082** | 104,345 | **55,142** | 96,279 |
| | **158,570** | 203,639 | **145,201** | 184,941 |
| 減：日後財務支出 | **(13,369)** | (18,698) | **–** | – |
| 融資租賃責任之現值 | **145,201** | 184,941 | **145,201** | 184,941 |
| 減：一年內到期償還之金額<br>（於流動負債呈列） | | | **(90,059)** | (88,662) |
| 一年後到期償還之金額 | | | **55,142** | 96,279 |

本集團之慣例乃根據融資租約租賃若干影院設備。租賃期一般為10年期。於二零一七年十二月三十一日，平均實際借貸年利率為5.87厘（二零一六年：6.90厘）。利率於合約日期訂定，本集團因而須承受公允價值利率風險。由於無法預先計算該等額外租金金額（一般以預設百分比之將來收入減相關租約之基本租金釐定），上述租賃責任只包括基本租金付款，並不包括或然租金款項（如有）。

所有融資租賃應付款項均以人民幣結算。

本集團融資租賃責任由出租人的租賃資產所有權作抵押。

## 35. 銀行借款

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 銀行貸款： | | |
| – 有抵押 | **74,492** | 38,906 |
| | **74,492** | 38,906 |

按預定還款日期劃分，銀行貸款須於以下期限內償還：

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 一年內 | **45,411** | 38,906 |
| 一至二年 | **3,383** | – |
| 二至五年 | **10,149** | – |
| 五年以上 | **15,549** | – |
| | **74,492** | 38,906 |
| 減：一年內到期償還之金額 | **(45,411)** | (38,906) |
| 一年後到期償還之金額 | **29,081** | – |

Confidential

Qin_00001138

32. **貿易及其他應付款項(續)**

附註:

[a] 客戶按金及預收款項指廣告經紀就廣告服務的預付款項、電影顧客的預付卡按金及客戶就貨物的預付款項。

[b] 於二零一六年十二月三十一日,合共590,000港元(二零一七年:零)的金額屬非貿易性質、無抵押、以年利率7%計息及須按要求償還。

[c] 應付金融機構的保證金由本集團於是美文化旅遊集團的股權及持作買賣投資作抵押,並須按要求償還。年利率介乎11%至12%。

[d] 應計費用及雜項應付款項主要包括應付利息及應計經營成本。

採購貨物及服務的信貸期為30日至60日。此外,購買電影版權投資的平均信貸期為90日。本集團貿易應付款項於報告期末根據發票日期之賬齡分析如下:

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 0至30日 | 286,567 | 317,857 |
| 31至60日 | 137,027 | 56,840 |
| 61日至1年 | 60,094 | 10,366 |
| 1年以上 | 21,204 | 20,262 |
|  | 504,892 | 405,325 |

33. **應收(付)關聯方款項**

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 | 年內未償還<br>最高金額<br>千港元 |
|---|---|---|---|
| **應收關聯方款項** |  |  |  |
| 星美影業有限公司(附註) | 74,812 | – | 74,812 |
| 深圳星美聖典文化傳媒集團有限公司<br>(「星美聖典」)(附註) | 1,812 | – | 1,812 |
|  | 76,624 | – | 76,624 |
|  |  |  |  |
| **應付關聯方款項** |  |  |  |
| 深圳星美聯合通訊有限公司(附註) | (8,178) | (7,871) |  |
| 星美聖典(附註) | (13,985) | (13,096) |  |
|  | (22,163) | (20,967) |  |

附註:覃先生對該等實體擁有控制權。該金額屬非貿易性質、無抵押、免息及無固定還款期。

0107



星美控股集團有限公司　92

Confidential

Qin_00001139

28. **貿易及其他應收款項(細)**

貿易及其他應收款項之呆賬撥備變動如下：

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 年初之結餘 | | – |
| 呆賬撥備 | 52,842 | 37 |
| 以無法收回款項撇銷 | (52,842) | [37] |
| 年末之結餘 | – | – |

29. **持作買賣投資**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 於香港上市之股本證券 | 61,961 | 304,217 |

持作買賣之上市股本證券的公允價值按香港聯交所提供的市場報價買入價釐定。

30. **其他貸款**

於二零一七年十二月三十一日，該款項包括給予一名獨立第三方之循環貸款126,000,000港元(二零一六年：150,000,000港元)，為無抵押、按年利率8厘(二零一六年：8厘)計息，並具有按要求償還條款。

31. **已抵押銀行存款／銀行結餘及現金**

於二零一七年十二月三十一日，本集團之已抵押銀行存款149,262,000港元(二零一六年：121,642,000港元)乃以人民幣列值，並作為二零一六財政年度信託貸款之抵押，詳情載於附註36[b]。

於二零一七年十二月三十一日，本集團以人民幣計值的銀行結餘及現金為約78,960,000港元(二零一六年：142,743,000港元)。人民幣兌換為外幣受中國《外匯管理條例》及《外匯管理條例之結匯、售匯及付匯管理規定》所規限。

銀行結餘按年利率0.01厘至0.2厘(二零一六年：0.01厘至0.2厘)計息。

32. **貿易及其他應付款項**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 貿易應付款項 | 504,892 | 405,325 |
| 客戶按金及預收款項(附註[a]) | 74,352 | 214,074 |
| 其他應付稅項 | 232,202 | 178,065 |
| 應付附屬公司之非控股權益之款項(附註[b]) | | 590 |
| 應付金融機構的保證金(附註[c]) | 389,130 | 66,258 |
| 應計費用及雜項應付款項(附註[d]) | 267,182 | 182,982 |
| | 1,467,758 | 1,047,294 |

Confidential

Qin_00001140

28. **貿易及其他應收款項(續)**

預付款項及餘下其他應收款項主要包括預付經營及行政開支以及就業務活動之其他墊付予員工之現金。

本集團的票房售票主要以現金或透過線上購票平台經紀支付。本集團給予票房線上購票平台經紀、廣告經紀及批發客戶之平均信貸期為90日。

本集團給予編寫權銷售合同貿易客戶之平均信貸期為90至180日。

特許權收入貿易應收款項一般於合約簽訂日期起計180日內收取。

電影投資收入貿易應收款項一般於收到票房證明及分成確認後90日內收取。

下表乃按發票日期、合約日期或收取票據證明及分成確認日期(視何者適用)呈列,貿易應收款項於報告期末之賬齡分析。

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 0至30日 | 299,793 | 222,392 |
| 31至90日 | 253,538 | 127,153 |
| 91至180日 | 73,723 | 263,420 |
| 181日至365日 | 125,234 | 4,289 |
| 1年以上 | 8,119 | 6,338 |
| | 760,407 | 623,592 |

於二零一七年十二月三十一日,貿易應收款項207,076,000港元(二零一六年:274,047,000港元)為已逾期但未減值。該等貿易應收款項乃與若干近期並無拖欠記錄之獨立客戶有關。該等貿易應收款項之賬齡分析如下:

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 逾期少於90日 | 73,723 | 263,420 |
| 逾期91至180日 | 125,234 | 4,289 |
| 逾期181以上 | 8,119 | 6,338 |
| | 207,076 | 274,047 |

於各報告期末,本集團之貿易及其他應收款項已個別進行減值測試。個別減值應收款項乃根據對方之信貸記錄(如財務困難或拖欠付款)而確認,然後再確認特定減值虧損。

貿易及其他應收款項之減值虧損乃使用撥備賬入賬,除非本集團信納該款項收回之可能性甚微,在此情況下,減值虧損與貿易及其他應收款項結餘直接撇銷。

Confidential

Qin_00001141

## 26. 存貨

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 劇本、故事大綱、出版權、發行權及編寫權 | 185,926 | 226,849 |
| 食品及飲料(不包括紅酒) | 37,699 | 41,512 |
| 紅酒 | 58,776 | 76,151 |
| 電子產品 | 6,748 | 4,526 |
| 其他 | 8,578 | 11,017 |
|  | 297,727 | 360,055 |

本集團購入之劇本、故事大綱、出版權、刊行權及編寫權由本集團持有作於日常業務過程中轉售。

董事已參照獨立合資格專業估值師中證評估有限公司於二零一七年十二月三十一日進行之估值,檢討劇本、故事大綱、出版權、刊行權及編寫權之可變現淨值。估值就每一項劇本、故事大綱及編寫/刊行權獨立進行,當中計及估計售價之市場資料,並就作者、作品長度、作品可出售程度之過往趨勢等因素作出調整。

## 27. 電影版權投資

|  | 千港元 |
|---|---|
| 於二零一六年一月一日 | – |
| 因收購附屬公司而添置 | 209,535 |
| 年內添置 | 188,108 |
| 於二零一六年十二月三十一日 | 397,643 |
| 年內添置 | 456,513 |
| 於銷售成本內確認為開支 | (37,049) |
| 減值 | (6,490) |
| 於二零一七年十二月三十一日 | 810,617 |

由於可收回金額的預期虧損,截至二零一七年十二月三十一日止年度確認減值虧損6,490,000港元(二零一六年:無)。

## 28. 貿易及其他應收款項

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 貿易應收款項,扣除呆賬撥備 | 760,407 | 623,592 |
| 租金及其他按金 | 11,964 | 14,537 |
| 預付款項及其他應收款項,扣除呆賬撥備 | 375,941 | 335,629 |
|  | 1,148,312 | 973,758 |

於二零一七年十二月三十一日,就收購潛在電影版權預付的金額116,784,000港元(二零一六年:67,207,000港元)已計入其他應收款項。該金額將於投資協議落實時轉撥至電影版權投資。

Confidential

Qin_00001142

23. **指定為按公允價值計入損益之金融資產(續)**

本集團將所有於二零一九年到期的7.5厘可換股票據於初步確認時指定為按公允價值計入損益，因重新計量產生的任何收益或虧損於損益中確認。於初始確認時，根據認購價，於二零一九年到期的7.5厘可換股票據的公允價值為90,000,000港元。於二零一九年到期的7.5厘可換股票據於報告期末的公允價值乃根據獨立於本集團的獲認可專業估值師提供的估值釐定，該估值以二項式期權定價模型計量。於報告期末，輸入模型之參數如下：

| | 二零一七年<br>十二月三十一日 |
|---|---|
| 股價 | 0.49港元 |
| 轉換價 | 0.30港元 |
| 無風險利率 | 1.31% |
| 預期波幅 | 49.31% |
| 到期時間 | 1.68年 |
| 折現率 | 14.64% |

24. **物業、廠房及設備的工程進度款項及其他按金**

於報告期末，該等款項包括：

[i] 支付予承包商的進度款項166,386,000港元(二零一六年：50,022,000港元)。本集團已就其租賃電影院的改進租賃項目內部裝修及影院設備與該等承包商訂立協議。

   於截至二零一七年十二月三十一日止年度，於二零一六年十二月三十一日支付之50,022,000港元(二零一六年：於二零一五年十二月三十一日支付之328,684,000港元)已用於年內添置物業、廠房及設備。

[ii] 於二零一七年十二月三十一日，已就收購其他物業、廠房及設備支付2,217,000港元(二零一六年：77,749,000港元)。

25. **收購實體之已付按金**

該等款項指向代理支付之按金，其已獲本集團授權與若干中國賣方就建議出售於中國從事經營電影院的11家(二零一六年：6家)實體訂立買賣協議。於報告期末，本集團與該代理訂立協議，而該代理已與上述賣方訂立多項協議，據此賣方有條件同意向主要建築公司出售(主要建築公司其後將向本集團出售)該等實體之股權，惟收購完成需待完成盡職審查及獲得相關中國政府機構批准方作生效。

於報告期末，該等款項為免息款項，且倘建議交易並無進行，則應由賣方透過代理退還。

於截至二零一七年十二月三十一日止年度，於二零一六年十二月三十一日已付的按金約154,289,000港元已全部用於本年度收購附屬公司(詳見附註43(a))。

21. **其他金融資產**

於報告期末，該款項包括：

[a] 一筆人民幣100,000,000元（相當於121,180,000港元）的五年期不可交易零息次級證券，二零一五財政年度資產擔保證券安排（詳見附註36(a)）規定作為本集團根據二零一五財政年度信託貸款安排所獲得的二零一五財政年度信託貸款的抵押。有關次級證券將於二零一九年十二月到期。

於初次確認時，由公允價值調整產生的37,117,000港元虧損已根據本金額人民幣100,000,000元（相當於121,800,000港元）按實際年利率8.3%予以確認。有關款項於初次確認時確認作二零一五財政年度信託貸款的賬面值。

[b] 一筆人民幣100,000,000元（相當於111,160,000港元）的五年期不可交易零息次級證券，二零一六財政年度資產擔保證券安排（詳見附註36(b)）規定作為本集團根據二零一六財政年度信託貸款安排所獲得的二零一六財政年度信託貸款的抵押。有關次級證券將於二零二零年十二月到期。

於初次確認時，由公允價值調整產生的23,000,000港元虧損已根據本金額人民幣100,000,000元（相當於111,160,000港元）按實際年利率6%予以確認。有關款項於初次確認時作為交易成本的一部份確認作二零一六財政年度信託貸款的賬面值。

22. **可供出售投資**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 按成本： | | |
| －非上市私募基金 | 66,347 | 65,396 |

上述於私募基金之非上市投資於報告期末按成本減值計量，乃由於公允價值的合理估計範圍非常大，而本公司董事認為其公允價值無法可靠計量。該私募基金於新加坡註冊成立，投資於海外公司之股本證券。

23. **指定為按公允價值計入損益之金融資產**

截至二零一七年十二月三十一日止年度，本集團認購由一間香港聯交所GEM上市公司發行之可換股票據。該等可換股票據（「於二零一九年到期的7.5厘可換股票據」）之本金為90,000,000港元，以年率7.5厘計息，於每季度末支付，並於二零一九年到期，贖回金額為可換股票據之100%本金金額。於二零一九年到期的7.5厘可換股票據可於發行日期至到期日期間的任何時間以初始換股價每股0.3港元（可根據於二零一九年到期的7.5厘可換股票據的條件及條款予以調整）兌換。此外，發行人可於發行日期至到期日期間的任何時間選擇提早贖回於二零一九年到期的7.5厘可換股票據之全部或部份未贖回本金額，連同全部應計利息。

Confidential

Qin_00001144

20. **於聯營公司之權益**

| | 二零一七年千港元 | 二零一六年千港元 |
|---|---|---|
| 上市投資： | | |
| 投資成本 | – | 301,860 |
| 分佔收購後業績及累計減值虧損 | – | (137,672) |
| 視為出售一家聯營公司(附註) | – | (164,188) |
| | – | – |
| 非上市投資： | | |
| 投資成本 | 14,731 | 64,731 |
| 分佔收購後業績 | 2,454 | 442 |
| 匯兌調整 | 650 | (449) |
| | 17,835 | 64,724 |
| | 17,835 | 64,724 |

附註：如附註43(b)(ii)所披露，本集團於二零一六年十月從公開股票市場購入前聯營公司星美文化旅遊集團之控股股權。緊隨是項購買後，該聯營公司股權於當日之賬面值約164,188,000港元被視為視作出售該聯營公司收益，於截至二零一六年十二月三十一日止年度，已就損益確認27,810,000港元視作出售該聯營公司權益之收益。

於二零一七年五月二十五日，本集團已以現金代價50,000,000港元向第三方出售於國匯證券(集團)有限公司之全部股本權益，而出售收益2,478,000港元已於本年度之損益中確認。

於二零一七年十二月三十一日及二零一六年十二月三十一日，本集團聯營公司之詳情如下：

| 名稱 | 註冊成立/成立地點 | 主要營業地點 | 本集團持有之股權/溢利攤分百分比 | | 主要業務 |
|---|---|---|---|---|---|
| | | | 二零一七年 | 二零一六年 | |
| 廣州市華影星美影城有限公司 | 中國 | 中國 | 46.55% | 46.55% | 經營電影院 |
| 北京世紀東都國際影城有限公司 | 中國 | 中國 | 40.85% | 40.85% | 經營電影院 |
| 國匯證券(集團)有限公司 | 香港 | 香港 | – | 25% | 投資活動 |

全部聯營公司以權益法於綜合財務報表列賬。董事認為並無個別對本集團重大之聯營公司。

**Confidential**

Qin_00001145

18. **無形資產及所購買特許權(續)**

電影院經營專利技術乃收購經營電影院的62家個別非重大組別實體之一部份，於收購日期以其公允價值確認。電影院經營專利技術具有限可使用年期，以直線法於五年內攤銷。

所購買特許權乃收購星美文化旅遊集團之一部份，於收購日期按公允價值確認。所購買特許權指已購入之電影、電視劇及紀錄片等之播映權。該等權利具有限可使用年期，預期透過出租安排產生長期經濟利益，而根據有關出租安排，本集團會向電視台以及其他廣播及媒體渠道授出播映權特許，以有限期間在特定地點播映。所購買特許權具9年至15年之可使用年期。

本公司董事已參照所購買特許權於二零一七年十二月三十一日的公允價值減出售成本(二零一六年：使用價值)評估其可收回金額。本集團所購買特許權於二零一七年十二月三十一日的可收回金額乃由持有獲認可及相關專業資格並擁有近期就類近資產估值經驗之獨立專業估值師中證評估有限公司根據市值法得出(二零一六年：參照艾升評價諮詢有限公司進行之估值使用價值法計算得出)。

於二零一七年十二月三十一日，所購買特許權的公允價值屬第三級經常性公允價值計量。其他主要估計包括3.9%的無風險利率和10.42%的市場股權風險溢價。於二零一六年十二月三十一日，所購買特許權的使用價值乃根據貼現現金流量分析，根據有關未來自該等權利的現金流量淨額的假設以20.08%的貼現率估計。未來現金流量估計的其他假設包括預測收入和所購買特許權的毛利率，參考資產的可銷售性以及媒體行業的一般市場狀況釐定。

截至二零一七年十二月三十一日止年度，所購買特許權的減值虧損9,318,000港元(二零一六年：3,326,000港元)於損益確認，乃由於授出該等資產的特許權的業績持續不理想所致。所購買特許權之可收回金額為229,300,000港元(二零一六年：87,163,000港元)。

19. **預付租賃款項**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 本集團預付租賃款項包括： | | |
| 於中國的租賃 | 41,831 | 42,854 |
| 為報告目的之分析： | | |
| 流動資產 | 4,234 | 2,999 |
| 非流動資產 | 37,597 | 39,855 |
| | 41,831 | 42,854 |

Confidential

Qin_00001146

## 18. 無形資產及所購買特許權

| | 電影院<br>經營專利技術<br>千港元 | 所購買特許權<br>千港元 |
|---|---|---|
| **成本** | | |
| 於二零一六年一月一日 | 56,773 | – |
| 由收購一家附屬公司產生(附註43(b)(ii)) | – | 88,017 |
| 由出售一家附屬公司產生(附註44(i)) | (915) | – |
| 匯兌調整 | (4,213) | – |
| 於二零一六年十二月三十一日 | 51,645 | 88,017 |
| 匯兌調整 | 3,624 | – |
| 於二零一七年十二月三十一日 | 55,269 | 88,017 |
| **攤銷及減值** | | |
| 於二零一六年一月一日 | – | – |
| 攤銷費用 | 10,714 | 2,319 |
| 於損益確認減值 | – | 3,326 |
| 於二零一六年十二月三十一日 | 10,714 | 5,645 |
| 攤銷費用 | 10,656 | 11,906 |
| 於損益確認減值 | – | 9,318 |
| 匯兌調整 | 738 | – |
| 於二零一七年十二月三十一日 | 22,108 | 26,869 |
| **賬面值** | | |
| 於二零一七年十二月三十一日 | 33,161 | 61,148 |
| 於二零一六年十二月三十一日 | 40,931 | 82,372 |

0111

星美控股集團有限公司 84

Confidential



17. **商譽（續）**

**電影院業務分部及零售業務分部（續）**

於二零一七年十二月三十一日，51家個別非重大組別實體的14組現金產生單位的可收回金額乃公允價值減出售成本與使用價值之較高者。於二零一七年十二月三十一日，董事根據51家個別非重大組別實體的14組現金產生單位的公允價值減出售成本（高於其使用價值）評估其可收回金額，並根據近期交易以市場法釐定。董事認為，51家個別非重大組別實體的14組現金產生單位的賬面值並未超過其可收回金額。

於二零一七年十二月三十一日，票量集團現金產生單位之可收回金額乃公允價值減出售成本與使用價值之較高者。董事根據票量集團現金產生單位的公允價值減出售成本（高於其使用價值）評估其可收回金額，並根據其他指標報價實體於二零一七年十二月三十一日活躍市場的報價釐定其每股公允價值。董事認為，票量集團現金產生單位的賬面值並未超過其可收回金額。

對於剩餘的現金產生單位，管理層認為，倘任何該等假設出現任何合理可能的變動，將不會導致該等現金產生單位的個別賬面值超過彼等各自的可收回金額。

**其他分部**

於二零一七年十二月三十一日，董事根據公允價值減出售成本（其高於使用價值）評估星美文化旅遊集團現金產生單位的商譽之可收回金額，並根據星美文化旅遊集團於二零一七年十二月三十一日活躍市場的報價釐訂的每股公允價值計算。董事認為，星美文化旅遊集團的商譽賬面值並未高於星美文化旅遊集團之可收回金額。

於二零一六年十二月三十一日，計算使用價值所採用之主要假設為期內各現金產生單位之折現率、增長率及預計收益增幅有關。本集團乃以反映市場現時對金錢時值及現金產生單位特定風險之評估的稅前比率估計折現率。增長率乃基於現金產生單位經營所在地區之長期平均經濟增長率。預計收益增幅乃基於本集團及行業的歷史數據及對特許電影及電視劇集於可見未來之市場發展預期。

本集團乃根據經管理層及董事會核准之最近期財政預算編製未來五年之現金流量預測，剩餘期間的現金流預測則使用增長率3%得出。用以貼現預計現金流量之貼現率為18.02%。

**Confidential**

Qin_00001148

## 17. 商譽（續）

**電影院業務分部及零售業務分部**

截至二零一七年十二月三十一日止年度，已就[i]由62家個別非重大組別實體組成的12組現金產生單位之其中5組（二零一六年：2組）的商譽，確認減值虧損174,272,000港元（二零一六年：46,556,000港元）；[ii]由79家個別非重大組別實體組成的18組現金產生單位之中其中3組（二零一六年：零）的商譽確認減值虧損113,643,000港元（二零一六年：零）；及[iii]由Stellar China Line集團現金產生單位之商譽確認減值虧損59,264,000港元（二零一六年：零）。

由62家個別非重大組別實體組成的12組現金產生單位之其中5組（二零一六年：2組）、由79家個別非重大組別實體組成的18組現金產生單位之中其中3組（二零一六年：零）、以及Stellar China Line集團現金產生單位皆已減值，其可回收金額分別為774,287,000港元（二零一六年：326,023,000港元）、573,483,000港元（二零一六年：無）及1,762,589,000港元（二零一六年：無）。

Beijing Stellar集團現金產生單位、Stellar China Line集團現金產生單位、62家個別非重大集團實體的12組現金單位以及79家個別非重大集團實體的18組現金單位的可回收金額乃根據使用價值計算釐定。計算使用價值所採用之主要假設為與期內各現金產生單位之折現率、增長率、電影院估計平均上座率、電影院平均上映場次及平均票價有關者。本集團估計現值時，會利用可反映現行市場對金錢時間值及現金產生單位特有風險之評估之除稅前利率。增長率則按現金產生單位業務經營地區之平均長期經濟增長率為基準。各現金產生單位之電影院估計平均上座率、電影平均上映場次及平均票價以本集團及行業的過往數據及中國電影市場於可見未來的市場發展預期為基準。

本集團乃根據經管理層及董事會核准之最近期財政預算編製未來五年之金流量預測，剩餘期間的現金流量預測則使用增長率3%（二零一六年：3%）得出。來自Beijing Stellar集團、Stellar China Line集團及62家及79家個別非重大組別實體之附屬公司之預測現金流量折現所使用之折現率為14.09%（二零一六年：介乎13.40%至13.85%）。於二零一六年十二月三十一日，票量集團之預測現金流量折現所支用之折現率為19.05%。

除採用基本方案假設進行的減值測試外，本集團亦就[i]在基本方案的基礎上將折現率提高1%；或[ii]在基本方案的基礎上將上座率降低1%分別進行敏感度分析。

採用降低1%後的較低上座率進行之敏感度測試顯示，[i]62家個別非重大組別實體的12組現金產生單位之其中5組；[ii]79家個別非重大組別實體的18組現金產生單位之其中5組；及[iii]Stellar China Line集團的減值虧損將增加分別12,269,000港元、11,649,000港元及17,419,000港元。

採用提高1%後的較高折現率進行之敏感度測試顯示，[i]62家個別非重大組別實體的12組現金產生單位之其中6組；[ii]79家個別非重大組別實體的18組現金產生單位之其中8組；及[iii]Stellar China Line集團的減值虧損將增加分別96,963,000港元、94,777,000港元及116,254,000港元。

## 17. 商譽

千港元

**成本**

| | |
|---|---:|
| 於二零一六年一月一日 | 3,375,078 |
| 收購附屬公司－79家個別非重大組別實體（附註43(b)(i)） | 2,286,012 |
| 收購一家附屬公司－星美文化旅遊集團（附註43(b)(ii)） | 120,559 |
| 出售附屬公司（附註44） | (36,804) |
| 匯兌調整 | (156,252) |
| 於二零一六年十二月三十一日 | 5,588,593 |
| 收購附屬公司－51家個別非重大組別實體（附註43(a)） | 1,600,847 |
| 匯兌調整 | 317,886 |
| 於二零一七年十二月三十一日 | 7,507,326 |

**減值**

| | |
|---|---:|
| 於二零一六年一月一日 | 5,912 |
| 於損益確認之減值虧損 | 46,556 |
| 於二零一六年十二月三十一日 | 52,468 |
| 於損益確認之減值虧損 | 347,179 |
| 匯兌調整 | 12,987 |
| 於二零一七年十二月三十一日 | 412,634 |

**賬面值**

| | |
|---|---:|
| 於二零一七年十二月三十一日 | 7,094,692 |
| 於二零一六年十二月三十一日 | 5,536,125 |

為進行減值測試，商譽已分配至48組（二零一六年：34組）現金產生單位（「現金產生單位」），按本集團收購時之地理位置及時間作分類，於電影院業務及其他分部下經營。已分配至該等現金產生單位組別之商譽之賬面值（扣除累計減值虧損）如下：

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---:|---:|
| **電影院業務分部：** | | |
| Beijing Stellar 集團 | 15,431 | 15,431 |
| Stellar China Line 集團 | 1,344,794 | 1,406,275 |
| 62家個別非重大組別實體（二零一五年）（構成12組現金產生單位） | 1,629,100 | 1,675,446 |
| 79家個別非重大組別實體（二零一六年）（構成18組現金產生單位） | 2,351,559 | 2,286,012 |
| 51家個別非重大組別實體（二零一七年）（構成14組現金產生單位） | 1,600,847 | |
| | 6,941,731 | 5,383,164 |
| **零售業務分部：** | | |
| 票疊集團 | 32,402 | 32,402 |
| **其他分部：** | | |
| 星美文化旅遊集團（二零一六年） | 120,559 | 120,559 |
| | 7,094,692 | 5,536,125 |

Confidential

Qin_00001150

16. 物業、廠房及設備

| | 租賃土地及樓宇<br>千港元 | 租賃物業裝修<br>千港元 | 電影院設備<br>千港元 | 辦公室設備<br>千港元 | 汽車<br>千港元 | 總計<br>千港元 |
|---|---|---|---|---|---|---|
| **成本** | | | | | | |
| 於二零一六年一月一日 | 61,406 | 1,978,017 | 820,524 | 21,856 | 7,145 | 2,888,948 |
| 收購附屬公司(附註43) | 803 | 198,277 | 103,494 | 5,583 | 2,510 | 310,667 |
| 添置 | 1,117,143 | 529,091 | 107,942 | 5,094 | 3,534 | 1,762,804 |
| 出售/撇銷 | – | (34,801) | (2,226) | – | – | (37,027) |
| 匯兌差額 | (53,389) | (185,806) | (79,941) | (2,036) | (750) | (321,922) |
| 於二零一六年十二月三十一日 | 1,125,963 | 2,484,778 | 949,793 | 30,497 | 12,439 | 4,603,470 |
| 收購附屬公司(附註43) | – | 84,297 | 111,288 | 4,818 | – | 200,403 |
| 添置 | – | 524,679 | 149,126 | 10,130 | 6,191 | 690,126 |
| 出售/撇銷 | – | (37,376) | (229) | (102) | (624) | (38,331) |
| 匯兌差額 | 86,982 | 217,213 | 79,477 | 2,452 | 851 | 386,975 |
| 於二零一七年十二月三十一日 | 1,212,945 | 3,273,591 | 1,289,455 | 47,795 | 18,857 | 5,842,643 |
| **累計折舊及減值虧損** | | | | | | |
| 於二零一六年一月一日 | 4,690 | 382,281 | 221,003 | 9,900 | 5,100 | 622,974 |
| 年度開支 | 2,221 | 264,312 | 145,171 | 7,550 | 202 | 419,456 |
| 出售/撇銷 | – | (179) | (340) | – | – | (519) |
| 匯兌差額 | (480) | (43,253) | (31,331) | (1,157) | (431) | (76,652) |
| 於二零一六年十二月三十一日 | 6,431 | 603,161 | 334,503 | 16,293 | 4,871 | 965,259 |
| 年度開支 | 30,655 | 309,848 | 320,271 | 7,135 | 3,284 | 671,193 |
| 出售/撇銷 | – | (37,376) | (103) | (26) | (162) | (37,667) |
| 匯兌差額 | 1,563 | 97,033 | 38,818 | 1,216 | 436 | 139,066 |
| 於二零一七年十二月三十一日 | 38,649 | 972,666 | 693,489 | 24,618 | 8,429 | 1,737,851 |
| **賬面值** | | | | | | |
| 於二零一七年十二月三十一日 | 1,174,296 | 2,300,925 | 595,966 | 23,177 | 10,428 | 4,104,792 |
| 於二零一六年十二月三十一日 | 1,119,532 | 1,881,617 | 615,290 | 14,204 | 7,568 | 3,638,211 |

上述物業、廠房及設備項目以直線法按下列年率折舊：

| | |
|---|---|
| 租賃土地及樓宇 | 5%或有關租賃期(如較短) |
| 租賃物業裝修 | 按3至20年或有關租賃期(以較短者為準) |
| 電影院設備 | 10%至33.33% |
| 辦公室設備 | 10%至33.33% |
| 汽車 | 20% |

於二零一七年十二月三十一日，本集團正在獲取賬面值為340,341,000港元(二零一六年：961,956,000港元)的租賃土地及樓宇的相關物業所有權證。董事認為，本集團已合法獲賦予有關物業之所有權，並有效佔用及使用相關物業。

物業、廠房及設備之賬面值包括222,414,000港元(二零一六年：188,614,000港元))以融資租賃責任持有之資產。

於二零一七年十二月三十一日，205,057,000港元(二零一六年：24,456,000港元)位於中國之租賃土地及樓宇用作本集團銀行借款之抵押。

0113



Confidential

Qin_00001151

13. **退休福利計劃**

根據中國適用之法規，本公司於中國之附屬公司已參加由有關地方政府機構管理的退休福利計劃。本集團須代表具中國永久居民身份之僱員作出供款。

本集團之香港辦事處根據香港適用法規為其員工設立強制性公積金計劃（「強積金計劃」）。該等供款乃根據僱員之基本薪金的比例作出，於根據強積金計劃之規則須予支付時於損益中確認。強積金計劃資產與本集團之資產分開，並於獨立管理之基金中持有。本集團之僱主供款於向強積金計劃作出時全部歸僱員所有。

14. **股息**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 年內確認分派之末期股息 | | |
| – 截至二零一六年十二月三十一日止年度每股普通股1.32港仙<br>　（二零一六年：截至二零一五年十二月三十一日止年度<br>　每股普通股1.09港仙） | 179,668 | 147,231 |

董事會不建議就截至二零一七年十二月三十一日止年度派付末期股息。

15. **每股(虧損)盈利**

本公司擁有人應佔的每股基本及攤薄(虧損)盈利乃基於下列數據計算：

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 用以計算每股基本及攤薄(虧損)盈利之(虧損)盈利： | (153,734) | 403,724 |

**股份數目**

| | 二零一七年 | 二零一六年<br>（經重列） |
|---|---|---|
| 用以計算每股基本(虧損)盈利之普通股加權平均數 | 2,720,826,026 | 2,707,230,941 |
| 潛在攤薄普通股之影響： | | |
| 購股權 | – | 9,014,166 |
| 用以計算每股攤薄(虧損)盈利之普通股加權平均數 | 2,720,826,026 | 2,716,245,107 |

如附註40(ii)所載，本年度及過往年度用以計算每股基本及攤薄盈利之普通股加權平均數已就股份合併作出調整。

截至二零一七年十二月三十一日止年度，由於所有購股權及可換股票據（二零一六年：所有可換股票據）所產生之潛在普通股對年內每股(虧損)盈利有反攤薄影響，故於計算每股攤薄(虧損)盈利時並無計算該等股份之影響。

Confidential

Qin_00001152

12. **董事、主要行政人員酬金及五位最高薪僱員（續）**

附註：（續）

(e) 於二零一七年一月十六日獲委任為獨立非執行董事及於二零一七年三月十五日調任非執行董事

(f) 於二零一六年四月二十六日獲委任及於二零一七年十一月二十八日辭任

(g) 於二零一六年六月二日獲委任及於二零一七年一月十六日辭任

(h) 於二零一六年四月二十六日辭任

(i) 於二零一六年六月二日退任／辭任

上文所述的執行董事酬金為酬謝彼等就管理本公司及本集團的事務所提供的服務。

上文所述的非執行董事酬金為酬謝彼等擔任本公司的董事所提供的服務。

上文所述的獨立非執行董事酬金為酬謝彼等擔任本公司董事所提供的服務。

於兩個報告期間，概無董事放棄或同意放棄任何酬金之安排。

於年內，本集團五位最高薪人士包括五位（二零一六年：兩位）董事，其酬金詳情載於上述所呈列之分析。截至二零一六年十二月三十一日止年度，其餘三位人士之酬金載列如下：

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 薪金及津貼 | – | 4,082 |
| 退休福利計劃供款 | – | 53 |
| | – | 4,135 |

並非本公司董事之最高薪僱員人數之酬金範圍分類如下：

| | 人數 | |
|---|---|---|
| | 二零一七年 | 二零一六年 |
| 1,000,001港元至1,500,000港元 | – | 2 |
| 1,500,001港元至2,000,000港元 | – | 1 |

截至二零一七年及二零一六年十二月三十一日止年度，本集團並無支付任何酬金予任何董事或本集團最高薪人士作為吸引其加入本集團或加入時之獎勵或作為其離職補償。

0114

星美控股集團有限公司

78

Confidential

Qin_00001153

## 12. 董事、主要行政人員酬金及五位最高薪僱員

各董事及主要行政人員之酬金如下：

| 董事姓名 | 董事袍金 千港元 | 薪金及津貼 千港元 | 以股本結算之股份支付款 千港元 | 退休福利計劃供款 千港元 | 總計 千港元 |
|---|---|---|---|---|---|
| **執行董事** | | | | | |
| 魏裕泰先生(附註[a]) | – | 1,000 | 862 | – | 1,862 |
| 楊榮兵先生 | 240 | 2,565 | 1,005 | – | 3,810 |
| 高鳳森先生(附註[b]) | – | 968 | 646 | – | 1,614 |
| 鄭吉崇先生 | 240 | 2,420 | 862 | – | 3,522 |
| 孔大路先生(附註[d]) | 260 | 1,315 | 1,005 | – | 2,580 |
| **非執行董事** | | | | | |
| 洪嘉禧先生(附註[e]) | 345 | – | – | – | 345 |
| 葉家海博士(附註[f]) | | | | | |
| **獨立非執行董事** | | | | | |
| 龐鴻先生 | 168 | | | | 168 |
| 李福生先生 | 168 | | | | 168 |
| 黃瑞洋先生(附註[c]) | 129 | | | | 129 |
| 李穎賢先生(附註[g]) | 17 | | | | 17 |
| 截至二零一七年十二月三十一日止年度 | 1,567 | 8,268 | 4,380 | – | 14,215 |
| **執行董事** | | | | | |
| 鄭吉崇先生 | 120 | 818 | | – | 938 |
| 楊榮兵先生 | 240 | 1,260 | | – | 1,500 |
| 周林先生(附註[i]) | 165 | | | – | 165 |
| **非執行董事** | | | | | |
| 張永東先生(附註[j]) | 56 | – | | – | 56 |
| 李軒先生(附註[h]) | 33 | – | | – | 33 |
| 葉家海博士(附註[f]) | – | – | | – | – |
| **獨立非執行董事** | | | | | |
| 甘志成先生(附註[i]) | 56 | – | | – | 56 |
| 龐鴻先生 | 132 | – | | – | 132 |
| 李福生先生 | 132 | – | | – | 132 |
| 李穎賢先生(附註[g]) | 77 | – | | – | 77 |
| 截至二零一六年十二月三十一日止年度 | 1,011 | 2,078 | – | – | 3,089 |

附註：

[a] 於二零一七年九月五日獲委任

[b] 於二零一七年九月一日獲委任及於二零一八年三月九日辭任

[c] 於二零一七年四月十三日獲委任

[d] 於二零一七年四月六日獲委任


Confidential

Qin_00001154

## 11. 年內(虧損)溢利

本集團之年內(虧損)溢利已扣除下列各項:

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---:|---:|
| 預付租賃款項攤銷(已計入銷售成本) | 3,122 | 3,074 |
| 無形資產攤銷(已計入銷售成本) | 10,656 | 10,714 |
| 所購買特許權攤銷(已計入銷售成本) | 11,906 | 2,319 |
| 核數師酬金 | 12,500 | 10,475 |
| 影展及相關成本(已計入銷售成本) | 825,646 | 712,914 |
| 已售存貨之成本(已計入銷售成本) | 623,887 | 296,528 |
| 已支出之電影版權投資成本(已計入銷售成本) | 37,049 | – |
| 存貨撥備(已計入銷售成本) | 9,819 | 723 |
| 董事酬金(附註12) | 14,215 | 3,089 |
| 物業、廠房及設備折舊 | 671,193 | 419,456 |
| 宣傳及廣告支出 | 37,950 | 42,963 |
| 物業之經營租賃付款 | | |
| – 最低租賃付款 | 400,056 | 300,724 |
| – 或然租金 | 31,240 | 34,215 |
| | 431,296 | 334,939 |
| 其他員工成本(不包括董事酬金) | | |
| – 薪金、花紅及津貼 | 273,596 | 315,376 |
| – 以股本結算之股份支付款 | 7,684 | – |
| – 退休福利計劃供款 | 55,661 | 60,143 |
| | 336,941 | 375,519 |

Confidential

Qin_00001155

10. **所得稅開支(續)**

根據財稅 [2011] 112號及新財法稅 [2012] 1號所規定，於二零一一年至二零二零年期間在新疆喀什／霍爾果斯經濟特區新成立之企業，自其首年錄得溢利開始可獲豁免五年企業所得稅。該等附屬公司從事《新疆困難地區重點鼓勵發展產業企業所得稅優惠目錄》所定義之鼓勵產業，可享企業所得稅豁免之該等附屬公司之收益佔本集團截至二零一七年十二月三十一日止年度收益超過25%。根據《企業所得稅優惠事項備案表》，本集團於二零一五年七月十四日獲中國稅務局批准豁免自二零一五年六月一日起至二零一九年十二月三十一日止之企業所得稅。

就本公司之其他中國附屬公司而言，中國企業所得稅撥備乃根據中國相關所得稅規則及法規所釐定，按本集團各實體估計應課稅溢利25%（二零一六年：25%）的法定稅率計算。

由於本集團在香港之業務並無在香港產生可評稅應課稅溢利，故並無在香港作出稅項撥備。

年內所得稅開支與綜合損益及其他全面收入報表內之除稅前(虧損)溢利之對照如下：

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 除稅前(虧損)溢利 | (253,275) | 493,097 |
| | | |
| 按適用所得稅率25%（二零一六年：25%）計算之稅項 | (63,319) | 123,274 |
| 分佔聯營公司業績的影響 | (136) | (2,811) |
| 不可抵扣稅項支出的稅務影響 | 122,011 | 85,159 |
| 毋須課稅收入的稅務影響 | (18,703) | (19,483) |
| 給予一家附屬公司免稅後的稅務影響 | (225,210) | (255,508) |
| 未確認稅項虧損的稅務影響 | 182,602 | 189,890 |
| 動用先前未確認之稅項虧損 | (5,425) | (2,051) |
| 過往年度超額撥備 | – | (5,354) |
| 於其他司法權區經營的附屬公司不同稅率的影響 | 20,464 | (27,325) |
| 其他 | 961 | 202 |
| 年內稅項開支 | 13,245 | 85,993 |

Confidential

Qin_00001156

8. 其他虧損及支出

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 呆賬撥備 | 370 | 37 |
| 匯兌虧損淨額 | 5,287 | 7,875 |
| 出售／撇減物業、廠房及設備之虧損 | 664 | 34,221 |
| 出售持作買賣投資之已變現虧損 | 7,704 | – |
| 持作買賣投資公允價值變動之未變現虧損 | – | 17,373 |
| 無形資產減值 | 9,318 | 3,326 |
| 電影版權投資減值 | 6,490 | – |
| 商譽減值(附註17) | 347,179 | 46,556 |
| 其他應收款項減值 | 52,472 | – |
| 衍生金融工具之公允價值變動 | – | 9,718 |
| 已沒收按金 | – | 2,947 |
| 雜項支出 | 77 | 107 |
| | 429,561 | 122,160 |

9. 財務費用

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 借貸之利息： | | |
| – 債券 | 176,397 | 67,996 |
| – 可換股票據 | 105,434 | 103,072 |
| – 銀行借款 | 3,243 | 5,213 |
| – 其他借款 | 259,025 | 195,546 |
| – 證券保證金融資 | 32,755 | 28,389 |
| 財務支出 | 6,729 | 7,590 |
| 融資租約支出 | 15,667 | 15,110 |
| 借貸成本總額 | 599,250 | 422,916 |

10. 所得稅開支

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 稅項開支(抵免)包括： | | |
| 即期稅項 | | |
| – 中國企業所得稅(「企業所得稅」) | 15,909 | 94,418 |
| – 過往年度超額撥備 | – | (5,354) |
| | 15,909 | 89,064 |
| 遞延稅項(附註39) | | |
| – 本年度 | (2,664) | (3,071) |
| | 13,245 | 85,993 |

Confidential

Qin_00001157

6. 分部資料(續)

其他分部資料(續)

本集團主要在香港及中國經營，而收益及溢利主要來源於該等地區的業務。

本集團絕大部份來自外部客戶（按客戶地理位置劃分）的收益及90%以上的非流動資產（按資產的地理位置劃分）位於中國。

於截至二零一七年及二零一六年十二月三十一日止年度，概無主要客戶貢獻本集團收益10%以上。

7. 其他收益及收入

| | 二零一七年 千港元 | 二零一六年 千港元 |
|---|---|---|
| 來自銀行的利息收入 | 1,832 | 2,456 |
| 來自其他金融資產的利息收入 | 13,200 | 15,194 |
| 按公允價值計入損益的金融資產所產生的利息收入 | 2,200 | – |
| 來自聯營公司的利息收入 | – | 2,038 |
| 政府補貼(附註(a)) | 53,336 | 72,271 |
| 出售附屬一家聯營公司之收益(附註44) | – | 1,409 |
| 視作出售一家聯營公司權益之收益(附註(b)) | – | 27,810 |
| 出售一家聯營公司權益之收益 | 2,478 | – |
| 持作買賣證券的股息收入 | 348 | 3,249 |
| 出售持作買賣投資之已變現收益 | – | 25,988 |
| 持作買賣投資公允價值變動之未變現收益 | 11,706 | – |
| 指定為按公允價值計入損益之金融資產之公允價值變動 | 57,941 | – |
| 衍生金融工具公允價值變動 | 28,989 | – |
| 雜項收入 | 11,984 | 13,166 |
| | 184,014 | 163,581 |

附註：

(a) 政府補貼主要為向國家電影事業發展專項資金供款的退款。政府補貼於該等政府補貼的條件獲達成時確認為其他收入。於二零一七年及二零一六年十二月三十一日，概無有關該等補貼的未達成條件或非預期事項。截至二零一七年十二月三十一日止年度，自該等補貼收取的金額為53,336,000港元(二零一六年：72,271,000港元)。

(b) 如附註43(b)(ii)所披露，本集團於二零一六年十月從公開股票市場購入前聯營公司星美文化旅遊集團之控股股權。緊隨是項收購後，星美文化旅遊集團(作為聯營公司)之股權於當日之賬面值164,188,000港元以視作出售處理。視作出售星美文化旅遊集團(作為聯營公司)權益之收益27,810,000港元已於截至二零一六年十二月三十一日止年度之損益中確認。

Confidential

Qin_00001158

6. **分部資料（續）**
   **分部資產及負債（續）**
   **分部負債**

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 電影院業務 | 3,161,164 | 3,793,985 |
| 零售業務 | 184,161 | 22,599 |
| 其他 | 1,225,756 | 1,144,122 |
| 分部負債總額 | 4,571,081 | 4,960,706 |
| 應付關連方款項 – 公司 | 4,847 | 20,967 |
| 可換股票據 – 公司 | 809,000 | 847,999 |
| 債券 – 公司 | 1,410,435 | 1,420,066 |
| 其他借貸 – 公司 | – | 100,000 |
| 公司負債 | 95,647 | 54,047 |
| 綜合負債 | 6,891,010 | 7,403,785 |

**其他分部資料**

*截至二零一七年十二月三十一日止年度*

| | 電影院業務<br>千港元 | 零售業務<br>千港元 | 其他<br>千港元 | 總計<br>千港元 |
|---|---|---|---|---|
| 計量分部損益或分部資產所計入的金額： | | | | |
| 非流動資產添置（附註） | 1,816,222 | 217,722 | 133,320 | 2,167,264 |
| 折舊及攤銷 | 675,982 | 11,841 | 9,054 | 696,877 |
| 於聯營公司之權益 | 17,835 | – | – | 17,835 |
| 分佔聯營公司溢利 | 545 | – | – | 545 |
| 財務費用 | 253,866 | – | 345,384 | 599,250 |
| 其他收益及收入 | 79,412 | 632 | 103,970 | 184,014 |

*截至二零一六年十二月三十一日止年度*

| | 電影院業務<br>千港元 | 零售業務<br>千港元 | 其他<br>千港元 | 總計<br>千港元 |
|---|---|---|---|---|
| 計量分部損益或分部資產所計入的金額： | | | | |
| 非流動資產添置（附註） | 2,882,228 | 382,063 | 55,496 | 3,319,787 |
| 折舊及攤銷 | 427,839 | 5,217 | 2,507 | 435,563 |
| 於聯營公司之權益 | 17,202 | – | 47,522 | 64,724 |
| 分佔聯營公司（虧損）溢利 | (486) | – | 11,732 | 11,246 |
| 財務費用 | 174,840 | 3,534 | 244,542 | 422,916 |
| 其他收益及收入 | 103,094 | 4,146 | 56,341 | 163,581 |

附註：非流動資產不包括收購實體之已付按金。

0117

Confidential

Qin_00001159

6. **分部資料(續)**

截至二零一六年十二月三十一日止年度

| | 電影院業務<br>千港元 | 零售業務<br>千港元 | 其他<br>千港元 | 總計<br>千港元 |
|---|---|---|---|---|
| **收益** | | | | |
| 外部及分部收益 | 2,951,319 | 383,123 | 16,744 | 3,351,186 |
| 分部業績 | 739,265 | 23,884 | (53,818) | 709,331 |
| 未分配公司收入 | | | | 6,575 |
| 未分配公司開支 | | | | (222,809) |
| 除稅前溢利 | | | | 493,097 |

附註:

(a) 上文所呈報之收益為來自外部客戶之收益。截至二零一七年及二零一六年十二月三十一日止年度並無分部之間的銷售。

(b) 截至二零一七年及二零一六年十二月三十一日止年度之「電影院業務」分部業績包括分佔聯營公司之相關電影院業務業績。截至二零一六年十二月三十一日止年度之「其他」分部業績則包括分佔聯營公司之電視節目相關業務、電影投資及發行業績。該聯營公司於二零一六年十月成為本集團附屬公司。

**分部資產及負債**

以下為按可呈報及經營分部對本集團的資產及負債進行的分析:

***分部資產***

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 電影院業務 | 12,200,855 | 9,984,349 |
| 零售業務 | 696,243 | 589,375 |
| 其他 | 1,830,683 | 2,065,975 |
| 分部資產總額 | 14,727,781 | 12,639,699 |
| 未分配公司資產 | 337,267 | 282,939 |
| 綜合資產 | 15,065,048 | 12,922,638 |

Confidential

Qin_00001160

綜合財務報表附註
*截至二零一七年十二月三十一日止年度*

6. **分部資料**
本集團的經營及可報告分部分析如下：

| (a) | 電影院業務 | — | 票房售票、宣傳、活動與現場營銷服務及其他相關服務，以及銷售食品與飲料及電影產品。 |
| (b) | 零售業務 | — | 電影院專櫃銷售及於「星美生活」品牌下之網上購物以及相關業務。 |
| (c) | 其他 | — | 出售編寫權、電視節目相關業務所購買特許權之特許權收入、電影版權製作及發行投資以及有價證券買賣。 |

該等經營及可報告分部基於根據與國際財務報告準則相一致的會計政策編製的內部管理報告釐定，該等報告由身為本公司執行董事的主要營運決策者（「主要營運決策者」）就資源分配及表現評估定期檢討。主要營運決策者按電影院業務及零售業務定期檢討收益分析。

分部業績指各分部賺取之溢利或產生之虧損，而並未分配企業層面之收入及開支（包括若干財務費用、若干其他收益及收入及若干其他虧損及開支）。分部資產不包括總部資產及總部之其他負債及其應收款項。分部負債不包括若干應付關聯方款項、總部之其他應付款項、若干其他借貸、債券及可換股票據。

下表為按可呈報及經營分部作出的本集團收益及業績分析。

**截至二零一七年十二月三十一日止年度**

| | 電影院業務<br>千港元 | 零售業務<br>千港元 | 其他<br>千港元 | 總計<br>千港元 |
|---|---|---|---|---|
| **收益** | | | | |
| 外部及分部收益 | 3,027,371 | 624,027 | 137,366 | 3,788,764 |
| 分部業績 | 103,649 | 27,027 | (89,978) | 40,698 |
| 未分配公司收入 | | | | 2,478 |
| 未分配公司開支 | | | | (296,451) |
| 除稅前虧損 | | | | (253,275) |

星美控股集團有限公司 70

Confidential

Qin_00001161

4. **重大會計判斷及估計不確定性的主要來源(續)**
   **應用會計政策的重大判斷(續)**
   *所購買特許權的減值評估*
   董事於各報告期末就所購買特許權進行檢討，於事件或情況變化顯示賬面值可能無法收回時作出減值。釐定所購買特許權有否減值與減值程度涉及管理層對可收回金額的估計，即賬面值與可收回金額的較低者。本集團委聘獨立合資格專業估值師進行估值。可收回金額的計算以市場價值為基礎，並包含其他重要估計，包括無風險利率和市場股權風險溢價。於二零一七年十二月三十一日，所購買特許權的賬面值為61,148,000港元(已扣除累計減值虧損12,644,000港元)(二零一六年：82,372,000港元(已扣除累計減值虧損3,326,000港元))。

5. **收益**
   本集團年內之收益分析如下：

|  | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| 電影院業務 | 3,027,371 | 2,951,319 |
| 零售業務 | 624,027 | 383,123 |
| 其他 | 137,366 | 16,744 |
|  | 3,788,764 | 3,351,186 |

電影院業務收益包括票房收入、廣告收入、活動與現場營銷服務及其他相關服務，以及銷售食品與飲料及電影產品收入。

Confidential

Qin_00001162

4. **重大會計判斷及估計不確定性的主要來源(續)**

   **應用會計政策的重大判斷(續)**

   *估計商譽減值(續)*

   於報告期末，商譽的賬面值為6,941,731,000港元(二零一六年：5,383,164,000港元)。有關評估減值虧損的詳情載於附註17。

   *物業、廠房及設備及折舊*

   董事就本集團之物業、廠房及設備釐定估計可使用年期、剩餘價值及相關折舊開支。此估計乃基於性質與功能類似之物業、廠房及設備之實際可使用年期及剩餘價值之歷史經驗作出。倘可使用年期及剩餘價值與早前估計不同，本集團會修訂折舊開支，或會撇銷或撇減技術上已廢棄的資產。於二零一七年十二月三十一日，物業、廠房及設備的賬面值約4,104,792,000港元(二零一六年：3,638,211,000港元)。

   *所購買特許權的估計可使用年期*

   董事根據附註3所載的會計政策估計所購買特許權的可使用年期，從而釐定所須確認的攤銷費用。本集團於購入所購買特許權之時，根據以往經驗、預期使用量以及會否因市場需求有變而過時，估計其可使用年期。董事亦會於每年作出檢討，以判斷為釐定可使用年期所作出的假設是否仍然有效。有關檢討會計的有關資產的市場變化、未來使用量、市場知名度及公眾接受度。倘預期收入與實際結果有重大差異，則或需對無形資產的賬面值作出調整。

   *就劇本、故事大綱、出版權、發行權及編寫權之撥備*

   董事於各報告期末對劇本、故事大綱、出版權及編寫權進行檢討，並於劇本、故事大綱、出版權及編寫權的可變現淨值估計少於其賬面值時計提撥備。本集團聘請獨立合資格專業估值師就各項劇本、故事大綱、出版權及編寫權的售價作出估計，詳情載於附註26。倘可變現淨值有別於原來估計，則或就存貨作出額外撥備。於二零一七年十二月三十一日，劇本、故事大綱、出版權、發行權及編寫權賬面值為185,926,000港元(二零一六年：226,849,000港元)(已扣除撥備9,819,000港元(二零一六年：723,000港元))。

Confidential

4. **重大會計判斷及估計不確定性的主要來源(續)**
   **應用會計政策的重大判斷(續)**
   *將於中國從事電影院業務之實體綜合入賬(續)*
   雖然如此,惟合約安排不一定能如直接合法擁有(給予本集團對相關實體之直接控制權)般有效,中國法律體系之不確定性可損害到本集團對相關實體業績、資產及負債之實益權益。然而,本公司相信,按本公司中國外聘法律顧問之法律意見,合約安排符合相關現行中國法律法規,並具法律約束力及可予強制執行。

   **估計不確定性的主要來源**
   以下是有關未來的關鍵假設以及於報告期末有關估計不確定性的其他主要來源,具有極大風險導致須對下一財政年度資產及負債賬面值作出重大調整。

   *呆壞賬減值虧損*
   本集團之呆壞賬減值虧損乃根據對貿易及其他應收款項可收回性之評估作出,包括各債務人之目前信譽及過往還款記錄。倘發生任何事件或情況出現變動顯示餘額可能無法收回,則會出現減值。本集團需要作出判斷及估計識別呆壞賬。

   倘實際結果有別於原來估計,則有關差額將影響有關估計出現變動之年度之貿易及其他應收款項之賬面值及呆賬開支。倘債務人之財務狀況惡化,令其付款能力被削弱,則或須作出額外撥備。於二零一七年十二月三十一日,貿易應收款項以及預付款項及其他應收款項的賬面值分別約760,407,000港元及375,941,000港元(二零一六年:623,592,000港元及335,629,000港元),已扣除呆壞賬減值虧損。

   *估計商譽減值 – 電影院業務*
   釐定電影院業務分部之商譽有否減值須估計獲分配商譽的現金產生單位的可收回金額。本集團管理層在評估該等現金產生單位的可回收金額時須作出重大判斷及假設。可收回金額乃以有關現金產生單位的使用價值或公允價值減出售成本之較高者釐定,計算使用價值時須就期內折現率、增長率、影院的估計平均上座率、影院的平均放映場次及平均票價作出重要假設,以便得出折現未來現金流量分析的淨現值。倘調低折現未來現金流量,則可收回金額將予以調整,並會產生重大減值虧損。

**Confidential**

Qin_00001164

4. **重大會計判斷及估計不確定性的主要來源(續)**

   **應用會計政策的重大判斷(續)**

   *將於中國從事電影院業務之實體綜合入賬(續)*

   根據中國適用法律法規,外國投資者持有任何電影院營運實體的股權不得超過49%,惟下列情況除外:i) 實施外國投資者允許持有任何電影院營運實體75%以上股權的試點計劃的中國若干城市(包括北京、上海、廣州、成都、西安、武漢及南京);及 ii) 自二零一五年一月一日起,香港或澳門的電影院營運商可透過持股方式投資任何電影院營運實體不超過75%的股權。為可通過本集團所投資從事電影院營運業務之實體行使控制權,本公司若干全資附屬公司與相關實體及彼等各自之股權持有人(均為覃先生之聯屬人士)訂立若干合約安排(「合約安排」),使該等全資附屬公司及本公司可:

   • 對相關實體行使實際財政及營運控制權;

   • 行使相關實體股權持有人的表決權;

   • 收取相關實體所產生的絕大部分經濟利益回報;

   • 取得不可撤回專屬權利,向相應股權持有人購買相關實體之餘下股本權益;及

   • 就相關實體全部股本權益獲相應股本持有人之抵押,作為保證履行合約安排下相關實體及彼等各自股權持有人責任之抵押品。

   因合約安排關係,本集團擁有參與相關實體可變回報之權利,並有能力通過其對相關實體之權力影響該等回報,故被認為可控制相關實體。故此,本公司按國際財務報告準則視相關實體為綜合結構性實體,於該等相關實體之全部現有擁有權權益乃由本集團持有。本集團將相關實體之資產及負債以及業績於綜合財務報表綜合入賬。相關實體於截至二零一七年十二月三十一日止年度所產生之收益及相關實體所應佔二零一七年十二月三十一日之總資產及總負債分別為3,027,371,000港元(二零一六年:2,951,319,000港元)、12,200,855,000港元(二零一六年:9,984,349,000港元)及3,161,164,000港元(二零一六年:3,793,985,000港元)。


Confidential

Qin_00001165

3. **重大會計政策(續)**
   **以股份為基礎的付款安排(續)**
   ***權益價付的股份基礎付款交易(續)***
   當購股權被行使,之前於股份基礎付款儲備被確認的金額將會轉入股份溢價。當購股權於歸屬期後被沒收或於到期日仍未行使,之前於股份基礎付款儲備確認的金額將會轉撥至保留溢利。

   **撥備**
   當本集團因過去事項須承擔法律責任或推定責任,而本集團很可能需要履行該責任,並能可靠估計債務金額時確認撥備。

   確認為撥備之金額乃經考慮責任所附帶之風險及不確定因素後,根據報告期末為抵償該當前責任而須承擔之代價之最佳估計確認。倘撥備使用抵償該當前責任之估計現金流量計量,其賬面值為該等現金流量之現值(如果貨幣的時間價值影響重大)。

4. **重大會計判斷及估計不確定性的主要來源**
   於應用附註3所述本集團的會計政策時,董事須對不能從其他資料來源得知的資產負債賬面值作出判斷、估計及假設。該等估計及相關假設乃根據過往的經驗及其他被認為有關的因素作出。實際結果可能有別於此等估計。

   該等估計及相關假設會持續檢討。如修訂會計估計只影響修訂期間,則該等會計估計在該期間確認,如有關修訂影響現時及未來期間,則在作出修訂的期間及未來期間確認。

   **應用會計政策的重大判斷**
   以下為本公司董事於應用本集團會計政策過程中所作並對在綜合財務報表中確認的金額具有重大影響的重要判斷(涉及估計者除外)。

   ***將於中國從事電影院業務之實體綜合入賬***
   本集團電影院業務主要通過在中國註冊成立之本地營運公司經營。本公司若干全資附屬公司持有當中若干電影院營運公司之股權,該等電影院營運公司之其餘股權則由本公司控股股東覃先生所控制之若干中國實體(「覃先生之聯屬人士」)持有。本集團從事電影院營運業務之實體,在下文統稱為「相關實體」。

Confidential

Qin_00001166

3. **重大會計政策（續）**
   **金融工具（續）**
   *可換股票據（續）*
   *附有債項及衍生工具部分之可換股貸款債券*
   如轉換權利並非以交換固定金額現金或有關固定數目本集團本身權益工具之另一項金融資產結付，則屬轉換期權衍生工具。

   於發行當日，債項部分及衍生工具部分按公允價值列賬。於其後期間，可換股票據之債項部分以實際利息法按攤銷成本列賬。衍生工具部分按公允價值計量，公允價值之變動於損益中確認。

   發行可換股貸款票據所涉及之交易成本乃按公允價值比例分配至債項部分及衍生工具部分。衍生工具部分之相關交易成本即時計入損益內。債項部分之相關交易成本計入債項部分之賬面值，並採用實際利率法按可換股貸款票據年期攤銷。

   ***終止確認***
   只有在資產收取現金流量的合約權利屆滿，或本集團已將金融資產及當中擁有權的絕大部分風險及回報轉讓予另一實體時，本集團方會終止確認金融資產。

   於完全終止確認金融資產時，該項資產賬面值與已收及應收代價、已於其他全面收益確認及於權益累計的盈利或虧損的總和間的差額，則於損益內確認。

   本集團僅會於責任獲解除、註銷或屆滿時，終止確認金融負債。被終止確認的金融負債的賬面值與已付及應付代價間的差額於損益內確認。

   倘現有金融負債之條款被修訂，而有關修訂導致根據新條款之現金流量貼現現值（包括任何已付費用，經扣除任何已收費用）與原金融負債餘下現金流量貼現現值之差異為最少10%，則此修訂入賬列為清償原金融負債，並確認新金融負債或權益工具或複合工具，而已清償金融負債賬面值與金融負債公允價值之間的差額則於損益中確認。

   **以股份為基礎的付款安排**
   *權益償付的股份基礎付款交易*
   授予僱員及其他提供類似服務者之權益償付的股份基礎付款，按授出購股權日期之公允價值釐定。

   權益償付的股份基礎付款在授出日期釐定的公允價值（不計及所有非市場歸屬條件），根據本集團對權益工具最終歸屬的估計於歸屬期內以直線法支銷，股份基礎付款儲備亦會相應增加。本集團會根據對所有相關非市場歸屬條件的評估，於各報告期末修訂預期將歸屬的估計權益工具數目。原先估算作出修訂的影響（如有）會在損益內確認，以令累計開支反映經修訂的估算，股份基礎付款儲備亦會作出相應調整。對於在授出日期立即歸屬的購股權，所授購股權的公允價值立即於損益內支銷。

3. **重大會計政策(續)**

**金融工具(續)**

***金融負債及權益工具***

集團實體發行的債務及權益工具乃根據所訂立的合約安排的內容以及金融負債及權益工具的定義而分類為金融負債或權益。

***權益工具***

權益工具為證明於一間實體經扣除其所有負債後的資產中所剩餘權益的任何合約。本集團發行的權益工具按已收所得款項扣除直接發行成本確認。

回購本公司自有權益工具於權益確認及直接減扣。購買、銷售、發行或註銷本公司自有權益工具的收益或虧損概不於損益賬內確認。

***實際利率法***

實際利率法乃計算金融負債的已攤銷成本及分配相關期間利息開支的方法。實際利率乃按金融負債的預計年期或適用的較短期間,準確貼現估計未來現金付款(包括所有構成整體實際利率的已付或已收費用及利率差價、交易成本及其他溢價或折扣)至初始確認時的賬面淨值的利率。利息支出按實際利率基準確認。

***金融負債***

金融負債(包括貿易及其他應付款項、應付關連方款項、銀行借款、其他借款、債券及可換股票據 – 負債部分)乃隨後採用實際利率法按攤銷成本計量。

***可換股票據***

*包含權益部分之可換股貸款票據*

本公司所發行的若干可換股貸款票據之組成部份,乃根據所訂立合約安排內容以及金融負債及股本工具的定義,獨立分類為金融負債及權益。將以固定金額現金或另一項金融資產交換本公司本身固定數目的股本工具方式結清的換股權乃分類為股本工具。

於發行日期,負債部分之公允價值(包括任何嵌入式非股本衍生性質)乃按並無相關權益部份之類似負債之公允價值估算。

分類為權益之兌換權乃由複合工具整體之公允價值扣除負債部分之金額而釐定。此金額在扣除所得稅影響後在權益確認入賬,其後將不會重新計量。此外,分類為權益之兌換權將保留在權益中,直至兌換權獲行使為止,而在此情況下,在權益中確認之結餘將轉撥至股份溢價。倘兌換權於可換股票據到期日仍未獲行使,則在權益中確認之結餘將轉撥至保留溢利。在兌換權獲兌換或到期時,不會於損益表中確認任何盈虧。

發行可換股貸款票據所涉及之交易成本乃按所得款項總額分配比例分配至負債部分及權益部分。權益部分之相關交易成本直接於權益中扣除。負債部分之相關交易成本計入負債部分之賬面值,並採用實際利率法按可換股貸款票據年期攤銷。

**Confidential**

**Qin_00001168**

3. **重大會計政策(續)**
   **金融工具(續)**
   *金融資產(續)*
   *金融資產減值*

   金融資產(按公允價值計入損益者除外)於各報告期末評估有否減值跡象。金融資產於有客觀證據顯示金融資產的估計未來現金流量因於首次確認該金融資產後發生的一項或多項事件而受到影響時視作減值。

   就所有其他金融資產而言,減值的客觀證據可包括:

   - 發行人或對約方出現重大財務困難;或

   - 發生欠繳或拖欠利息或本金付款等違約行為;或

   - 借款人可能面臨破產或財務重組。

   應收賬款組合出現減值的客觀證據包括本集團過往收款記錄、組合內超過平均信貸期的還款數目上升,以及地區經濟狀況出現明顯變動導致應收賬款未能償還。

   就以攤銷成本列賬的金融資產而言,減值虧損金額會於資產的賬面值與估計未來現金流量的現值(按金融資產的原實際利率折算)之間的差額確認。

   就按成本列賬的金融資產而言,減值虧損金額按資產的賬面值與按同類金融資產當前市場回報率貼現的估計未來現金流量現值間的差額計量。有關減值虧損將不會於往後的期間撥回(見下文會計政策)。

   除貿易應收款項的賬面值會透過撥備賬作出扣減外,所有金融資產的減值虧損會直接於金融資產的賬面值中扣減。撥備賬的賬面值變動於損益內確認。倘貿易應收款項被視為無法收回,則於撥備賬撤銷。如其後收回過往撇銷的款項,則計入損益內。

   就按已攤銷成本計量的金融資產而言,倘減值虧損金額於往後期間有所減少,而有關減少在客觀上與確認減值虧損後發生的事件有關,則先前已確認的減值虧損將透過損益撥回,惟該投資於減值被撥回當日的賬面值不得超過未確認減值時的已攤銷成本。

Confidential

Qin_00001169

3. **重大會計政策（續）**
   **金融工具（續）**
   *金融資產（續）*
   *按公允價值計入損益的金融資產*

   當金融資產為[i]持有作買賣；或[ii]於初步確認時指定為按公允價值計入損益時，會分類為按公允價值計入損益的金融資產。

   倘屬下列情況，金融資產會分類為持作買賣：

   - 收購金融資產的主要目的為於不久將來作出售用途；或

   - 金融資產於初步確認時構成本集團合併管理的已識別金融工具組合的一部分，並具有最近實際短期獲利模式；或

   - 金融資產為未被指定的衍生工具及可有效作為對沖工具。

   倘持作買賣金融資產以外的金融資產構成包含一項或多項嵌入式衍生工具之合約其中一部分，而國際會計準則第39號允許將整份合併合約（資產或負債）指定為按公允價值計入損益，則可在初步確認時將該金融資產指定為按公允價值計入損益。

   按公允價值計入損益的金融資產按公允價值計量，而因重新計量引致的損益將在其產生期間於損益中確認。於損益確認的收益或虧損淨額不包括就金融資產賺取的任何股息或利息，並計入「其他收益及收入」。公允價值按附註53所述方式釐定。

   *可供出售投資*
   可供出售投資為指定為可供出售類別或未有劃分為貸款及應收款項或按公允價值計入損益的金融資產的非衍生項目。於活躍市場並無報價而其公允價值無法可靠計算的可供出售股本投資於各報告期末按成本扣除任何已識別減值虧損列賬。

   *貸款及應收款項*
   貸款及應收款項指並非於活躍市場報價而具備固定或可確定付款金額的非衍生金融資產。於初步確認後，貸款及應收款項（包括其他金融資產、貿易及其他應收款項、應收關聯方款項、其他貸款、已抵押銀行存款以及銀行結餘及現金）均採用實際利率法按已攤銷成本減任何減值入賬（見下文有關金融資產減值虧損的會計政策）。

   利息收入採用實際利率確認，惟確認利息不顯著的短期應收款項除外。

**Confidential**

Qin_00001170

綜合財務報表附註

*截至二零一七年十二月三十一日止年度*

**3. 重大會計政策(續)**

**稅項(續)**

遞延稅項資產及負債乃根據於報告期末已實施或大致上已實施的稅率(及稅法),按預期於負債清償或資產變現期間適用之稅率計算。

遞延稅項負債與資產之計量,反映按照本集團於報告期末預期收回或清償資產及負債賬面值之方式所產生稅務結果。

即期及遞延稅項於損益內確認。惟當該等稅項與於其他全面收入確認的項目有關或直接於權益確認時,該等即期及遞延稅項亦分別於其他全面收入確認或直接於權益確認。倘對業務合併進行初步會計處理時產生即期或遞延稅項,則對業務合併進行會計處理時會計入該稅項影響。

**金融工具**

當集團實體成為金融工具合約條款之訂約方時,即確認相關金融資產及金融負債。

金融資產及金融負債初步按公允價值計量。收購或發行金融資產及金融負債(按公允價值計入損益之金融資產及金融負債除外)直接應佔之交易成本於初次確認時計入或扣除自金融資產或金融負債之公允價值(以合適者為準)。收購按公允價值計入損益之金融資產或金融負債直接應佔之交易成本即時於損益內確認。

***金融資產***

金融資產歸類為以下數個類別:按公允價值計入損益(「按公允價值計入損益」)之金融資產、可供出售(「可供出售」)投資及貸款及應收款項。分類乃視乎金融資產的性質及目的而定並於初次確認時釐定。所有定期購買或出售金融資產乃按交易日基準確認及終止確認。定期購買或出售乃購買或銷售金融資產,並要求於市場規則或慣例設定的時間框架內交付資產。

***實際利率法***

實際利率法乃計算債務工具的已攤銷成本及分配相關期間利息收入的方法。實際利率乃於初步確認時按債務工具的預計年期或適用的較短期間,準確貼現估計未來現金收入(包括所有構成整體實際利率的已付或已收費用及利率差價、交易成本及其他溢價或折讓)至賬面淨值的利率。

債務工具的利息收入乃按債務工具實際利率基準確認。

0123

星美控股集團有限公司  60

Confidential

Qin_00001171

3. **重大會計政策**(續)

**借款成本**

直接用作收購、建造或生產合資格資產(即需長時間進行準備以用作擬定用途或出售之資產)之借款成本增加至該等資產之成本，直至資產大致準備開始作擬定用途或出售為止。

所有其他借款成本於發生期間在損益內確認。

**政府補貼**

惟當可合理保證本集團將符合附帶條件及將會獲得有關補貼時，政府補貼方會予以確認。

政府補貼按系統基準於本集團確認補貼補償的相關成本為開支的各期間在損益內確認。具體而言，授出政府補貼的主要條件為本集團應購買、興建或以其他方法收購非流動資產並於綜合財務狀況報表確認為遞延收入，然後在有關資產的可用年期內有系統及合理地轉撥至損益。

**稅項**

所得稅指即期稅項及遞延稅項之總和。

應付即期稅項乃按年度應課稅溢利計算。應課稅溢利與損益內確認之溢利不同，此乃由於在其他年度應課稅或可扣稅之收入或開支項目及從未課稅和可扣稅之項目。本集團之即期稅項負債使用報告期末前已頒佈或實質頒佈之稅率計算。

遞延稅項根據綜合財務報表內資產及負債賬面值與計算應課稅溢利之相應稅基之差額確認。一般就所有應課稅暫時差額確認遞延稅項負債，而遞延稅項資產乃按可能出現應課稅溢利以抵銷可扣稅暫時差額、未使用稅項虧損或未使用稅項抵免時確認。若於一項交易中，自商譽或自業務合併以外初次確認其他資產及負債引致之暫時差額既不影響應課稅溢利，亦不影響會計溢利，則該等資產及負債不予確認。另外，若暫時差額來自商譽初次確認，遞延稅項負債亦不予確認。

遞延稅項負債按於附屬公司及聯營公司之投資所產生之應課稅暫時差額予以確認，惟本集團可控制暫時差額之撥回及於可預見將來不會撥回暫時差額之情況除外。因與有關投資及權益相關的可扣減暫時差額而產生的遞延稅項資產僅於可能產生足夠應課稅溢利以動用暫時差額溢利並預期可於可見將來撥回時確認。

遞延稅項資產的賬面值於各報告期末均會進行審閱，如不再可能有足夠應課稅溢利可用於抵免全部或部分相關資產，則會予以扣減。

Confidential

Qin_00001172



3. **重大會計政策(續)**

   **退休福利成本及離職福利**

   本集團對國家管理退休福利計劃及強制性公積金計劃所作出之供款於僱員已提供服務以享有相關供款時確認為開支。

   **短期及其他長期僱員福利**

   短期僱員福利於僱員提供服務時按預期將支付之未貼現福利金額確認。所有短期僱員福利均確認為開支,除非另一項國際財務報告準則規定或准許將有關福利計入資產成本則作別論。

   僱員工資及薪金、年假及病假等應計之福利乃於扣除已支付之任何金額後確認負債。

   **外幣**

   編製各個別集團實體的財務報表時,以該實體功能貨幣以外的貨幣(外幣)進行的交易均按交易日期的適用匯率換算為各種功能貨幣計值。於報告期末,以外幣計值的貨幣性項目按當日適用匯率重新換算。按公允價值以外幣計值的非貨幣性項目按釐定公允價值當日的適用匯率重新換算。按歷史成本以外幣計值的非貨幣性項目未有重新換算。

   結算貨幣性項目及重新換算貨幣性項目所產生的匯兌差額於產生期間的損益內確認。

   就呈列綜合財務報表而言,本集團於中華人民共和國(「中國」)的業務資產及負債按各報告期末適用的匯率換算為本集團的呈列貨幣(即港元),而其收入及開支則按該期間平均匯率換算。所產生的匯兌差額(如有)會在匯兌儲備項下於其他全面收入中確認及於權益中累計(非控股權益應佔者(如適用))。

   於出售海外業務(即出售本集團於海外業務的全部權益,或涉及失去對一間附屬公司(包括海外業務)的控制權出售或出售於合營安排或聯營公司(包括海外業務)之部分權益,當中的保留權益成為金融資產時,就歸屬於本公司擁有人的該業務而於權益內累計的所有匯兌差額重新分類至損益。

   此外,就並無導致本集團失去附屬公司控制權之部份出售而言,累計匯兌差額乃按比例重新歸屬於非控股權益,而不於損益中確認。就所有其他部份出售(即並無導致本集團失去聯營公司的重大影響的部份出售)而言,累計匯兌差額乃按比例重新分類至損益。

   收購海外業務產生的收購可識別資產商譽及公允價值調整,被視為該海外業務之資產及負債,並按報告期末適用之匯率重新換算。由此產生之匯兌差額於其他全面收入確認。

**Confidential**

**Qin_00001173**



3. **重大會計政策(續)**

**租賃**

凡租約條款規定將擁有權的絕大部分風險及回報撥歸承租人的租約均列作融資租約。所有其他租約則列作經營租約。

**本集團作為承租人**

按融資租賃持有之資產按租約開始時之公允價值或(倘為較低者)按最低租約付款之現值確認為本集團資產。出租人之相應負債於綜合財務狀況報表列作融資租賃債務。

租賃付款按比例就融資費用及約項債務減少之間作出分配,從而使該等負債之應付餘額之息率固定。財務費用直接於損益賬確認,除非直接計入合資格資產內,在該情況下,財務費用依據本集團之一般借貸成本政策(見下文會計政策)撥充資本。或然租金於產生期間確認為開支。

經營租賃付款於租期內按直線基準確認為開支,然而如另有系統性基準較時間性模式更具代表性,租賃資產之經濟效益據此被消耗除外。經營租賃項下產生的或然租金於產生期間確認為開支。

倘訂立經營租賃可以獲得租賃優惠,該等優惠作為負債確認。優惠整體利益以直線法沖減租金開支。

**租賃土地及樓宇**

當本集團就包括租賃土地及樓宇兩個部分的物業權益作出付款時,本集團會評估各部分所有權附帶的絕大部分風險及回報是否已轉至本集團而將各部分單獨分類為融資或經營租賃。惟倘各部份明顯為經營租賃,則整個物業入賬列為經營租賃。具體而言,全部代價(包括任何一次過預付款項)乃按土地部分及樓宇部分於初始確認時佔租賃權益的公允價值比例就租賃土地及樓宇部分之間分配。

當租關款項能可靠分配時,則入賬列作經營租賃的租賃土地權益於綜合財務狀況報表呈列為「預付租賃款項」,並於租期內按直線法攤銷。當款項無法於租賃土地與樓宇部分之間可靠分配時,整個物業一般分類為融資租賃下的租賃土地。

Confidential

Qin_00001174

3. **重大會計政策(續)**

   **有形及無形資產(商譽除外)的減值(續)**

   可收回金額乃公允價值減出售成本與使用價值之較高者。在評估使用價值時,估計未來現金流量將使用稅前折現率折現至其現值,以反映當前市場所評估之金錢時間值及未來現金流量的估計值未作調整之資產(或現金產生單位)特有風險。

   倘資產或現金產生單位之可收回金額估計低於其賬面值,則資產或現金產生單位賬面值將扣減至其可收回金額。於分配減值虧損時,減值虧損將先分配以減少任何商譽(如適用)之賬面金額,其後按照單位內各資產之賬面金額比例分配至單位內之其他資產。抵減後的各資產賬面值不得低於以下三者之最高者:該資產的公允價值減出售成本(如可確定)、該資產的使用價值(如可釐定)及零。已分配至該資產的減值虧損金額按比例分配至單位內的其他資產。減值虧損即時於損益內確認。

   倘減值虧損其後撥回,則資產或現金產生單位賬面值增至經修訂估計可收回金額,惟所增加賬面值不得高於假設於往年該資產或現金產生單位並無確認減值虧損下釐定之賬面值(經扣除攤銷或折舊)。減值虧損撥回即時於損益內確認。

   **存貨**

   存貨按成本與可變現淨值兩者之較低者列賬。可變現淨值為存貨估計銷售價減全部估計完成成本及促成銷售所需之成本。

   **電影版權投資**

   電影版權投資指本集團所投資之電影。投資受本集團及製作公司的相關協議所規管,據此,本集團有權根據於相關電影的投入資本比例收取發行該電影的收益。電影版權投資按成本減累計攤銷及任何已識別減值虧損列賬。

   電影版權投資之攤銷乃按年內賺取之實際收入相對於本集團按相應電視投資協議放映影片之估計總收入之比例,於損益中支銷。

Confidential

Qin_00001175

3. **重大會計政策(續)**

**無形資產**

*單獨收購的無形資產*

另行收購之無形資產如具有限可使用年期,則按成本減累計攤銷及任何累計減值虧損列賬。具有限可使用年期之無形資產之攤銷,乃按直線法於估計可使用年期內確認。估計可使用年期及攤銷法於各報告期間完結時審視,估計如有任何變動,其影響乃按不予追溯之基準列賬。

*業務合併中收購的無形資產*

業務合併中收購的無形資產與商譽分開來確認,以及初步按其於收購日期的公允價值確認(被視作其成本)。

初步確認後,業務合併中收購的有固定使用年期的無形資產以與單獨收購的無形資產相似的基準按成本減累計攤銷及任何累計減值虧損入賬。而業務合併中收購的無固定使用年期的無形資產則以成本任何後續累計減值虧損(見下文有關有形及無形資產減值虧損的會計政策)入賬。

無形資產於出售時或當預期使用或出售無形資產不會產生將來經濟利益時終止確認。終止確認無形資產所產生的損益按出售收益淨額及該資產賬面值的差額計量,並於終止確認該資產期間於損益賬內確認。

**所購買特許權**

所購買特許權乃按成本減累計攤銷及任何累計減值虧損列賬。所購買特許權產生收益期間,攤銷乃按所攤銷成本相比於預期從特許權所得收益之比例所得出之比率予以確認。在所購買特許權不產生收益的期間,所購買特許權攤銷按估計可使用年期以直線法確認。

**有形及無形資產(商譽除外)的減值**

於報告期末,本集團檢查其附有限定使用年期的有形及無形資產的賬面值以決定是否有任何顯示該等資產受到減值虧損。如若有此跡象,估計資產的收回金額以確定減值虧損的程度(如有)

倘無法個別估算資產的可收回金額,本集團會估算該資產所屬現金產生單位的可收回金額。於可識別合理及一貫分配基準的情況下,企業資產亦會被分配至個別的現金產生單位,否則或會被分配至可合理及按一貫分配基準而識別的最小現金產生單位中。

Confidential

Qin_00001176

3. **重大會計政策（續）**

   **收益確認（續）**

   管理費／推廣服務收入乃於提供服務時予以確認。

   投資之股息收入乃於股東收取股息之權利確定時確認。

   利息收入參考未清還本金以適用的實際利率按時間基準累計。實際利率即將金融資產預期於整個可使用年期收取之估計未來現金款項準確折算至資產初步確認時的賬面淨值之利率。

   **物業、廠房及設備**

   物業、廠房及設備包括持有用作生產或供應貨品或服務或作行政用途之土地及樓宇（分類為融資租賃，下述在建物業除外），於綜合財務狀況報表按成本減其後累計折舊及其後累計減值虧損（如有）列賬。

   仍在興建用作生產、供應或行政用途的物業按成本減任何已確認的減值虧損入賬。成本包括專業費及（對合資格資產而言）根據本集團會計政策撥作資本的借貸成本。有關物業於竣工並可作擬定用途時分類至物業、廠房及設備的合適類別。該等資產於可作擬定用途時按與其他物業資產相同的基準開始折舊。

   折舊乃於資產（在建物業除外）之估計可使用年期內按直線法將已扣除剩餘價值的資產成本撇銷而確認的數額。估計可使用年期、剩餘價值及折舊方法於各報告期末檢討，估計變動之影響會以未來適用法入賬。

   按融資租賃持有之資產按與自置資產相同之基準，於預計可使用年期計算折舊。然而，當擁有權未能在租賃期末合理地確定，則資產須以其租賃期與可使用年期之較短者折舊。

   物業、廠房及設備的任何項目於出售或繼續使用有關資產預期不會產生日後經濟利益時終止確認。物業、廠房及設備的其中一個項目出售或報廢而產生的任何盈利或虧損為銷售所得款項與資產賬面值之間的差額，乃於損益確認。


**Confidential**

Qin_00001177



3. **重大會計政策(續)**

**於聯營公司之投資(續)**

當本集團削減於聯營公司之所有權權益但繼續使用權益法時,倘以往在其他全面收益確認有關削減所有權權益之盈虧部分將於出售相關資產或負債時重新分類至損益,則本集團會將該盈虧重新分類至損益。

倘一集團實體與本集團之聯營公司交易,與該聯營公司交易所產生之損益只會在有關聯營公司之權益與本集團無關的情況下,才會在本集團之綜合財務報表確認。

**收益確認**

收益按已收或未來應收代價之公允價值計量。收益就估計客戶退貨、回扣及其他類似津貼作出扣減。

於收益金額能可靠計算時;當未來經濟收益可能流入本集團及當本集團各項活動符合特定條件(如下文所述)時,確認收益。

票房收入在提供服務時確認。

廣告、活動與現場營銷服務及其他相關服務之收入在提供服務時確認。

出售劇本、故事大綱與編寫╱發行權之收益於項目交付以及其所有權轉移予客戶之時(以與客戶簽訂合同為證)確認。

購買涉及電視劇、紀錄片及同類產品播映權之特許權。特許播映權之收益於符合下列準則時確認:(i)與客戶簽訂協議;(ii)已交付母帶;及(iii)未來經濟利益有可能流入本集團。

電影投資收入指於影院支付稅項及其他政府收費,以及扣除影院費用後,本集團應佔之電影票房收入。本集團應佔溢利按相關電影投資協議所載溢利分成比率釐定。

來自電影投資之收益於符合以下條件時確認:(i)電影已於影院放映;(ii)收入金額能可靠計量;及(iii)應享所得款項之可收回性能合理確定。

根據本集團客戶忠誠度計劃向客戶所授出獎勵積分而作出的貨品銷售作為多重元素收益交易入賬。已收或應收代價之公允價值於所供應貨品與所授出的獎勵積分之間分配。分配至獎勵積分的代價乃參考可能贖回的獎勵的公允價值進行計量。有關代價不會於首次買賣交易時確認為收益,惟會遞延並於獎勵積分贖回且本集團已完成全部責任時確認為收益。

**Confidential**

Qin_00001178

3. **重大會計政策（續）**

   **於聯營公司之投資**

   聯營公司指本集團可對其產生重大影響的實體。重大影響指參與被投資公司的財務及營運決策的權力，而非控制或聯合控制有關政策的權力。

   聯營公司的業績、資產及負債採用權益會計法納入該等綜合財務報表。就權益會計目的而言所用的聯營公司財務報表，乃採用本集團就類似交易及類似狀況下的事件所用者一致的會計政策編製。根據權益法，於聯營公司或合營公司的投資按成本於綜合財務狀況報表中初步確認，其後經調整以確認本集團所佔聯營公司損益及其他全面收益。聯營公司的淨資產值變動（計入損益及其他全面收入者除外）不予入賬，除非該變動引致本集團的所有權權益發生變動。倘本集團應佔聯營公司的虧損高於本集團於該聯營公司的權益，則本集團會終止確認其應佔的進一步虧損。額外虧損僅以本集團已產生法律或推定責任或代表該聯營公司作出付款為限。

   自投資對象成為一家聯營公司當日起，對聯營公司的投資採用權益法入賬。於收購一間聯營公司的投資時，投資成本高於本集團應佔投資對象確認的可識別資產及負債公平淨值的數額確認為商譽。有關商譽計入投資的賬面值。倘本集團所佔可識別資產及負債的公平淨值高於投資成本之數額，則會於重新評估後於收購投資期間即時於損益內確認。

   國際會計準則第39號之規定予以應用，以釐定是否需要就本集團於聯營公司之投資確認任何減值虧損。於需要時，該項投資之全部賬面值（包括商譽）會根據國際會計準則第36號以單一項資產的方式進行減值測試，方法是比較其可收回金額（即使用價值與公允價值減出售成本之較高者）與賬面值。任何已確認之減值虧損構成該項投資之賬面值的一部份，有關減值虧損之任何撥回均於該項投資之可收回金額其後增加之情況下根據國際會計準則第36號確認。

   倘本集團不再對聯營公司擁有重大影響，會入賬列為出售於該投資對象之全部權益，所產生之盈虧於損益內確認。當本集團保留於前聯營公司之權益，且保留權益為國際會計準則第39號範圍內的金融資產時，則本集團於當日按公允價值計量保留權益，而公允價值則被視為初步確認時之公允價值。聯營公司之賬面值與任何保留權益之公允價值及出售聯營公司相關權益的任何所得款項之間的差額，乃計入釐定出售聯營公司之損益。此外，倘該聯營公司直接出售相關資產或負債，則本集團可能需要按相同基準計入有關該聯營公司的以往於其他全面收益確認的所有金額。因此，倘聯營公司以往於其他全面收益確認之損益重新分類為出售相關資產或負債之損益，則本集團於出售／部份出售相關聯營公司時將盈虧由權益重新分類至損益賬（列作重新分類調整）。

0127

**Confidential**

**Qin_00001179**

3. **重大會計政策（續）**
   **業務合併（續）**
   商譽是以所轉撥之代價、非控股權益於被收購方中所佔金額、及本集團以往持有之被收購方股權之公允價值（如有）之總和，減所收購之可識別資產及所承擔之負債於收購日期之淨值後，所超出之差額計值。倘經重估後，所收購之可識別淨資產與所承擔負債於收購日期之淨額高於轉撥之代價、非控股權益於被收購方中所佔金額以及本集團以往持有之被收購方股權之公允價值（如有）之總和，則差額即時於損益內確認為議價收購收益。

   現時擁有權權益且於清盤時賦予持有人權利可按比例分佔有關附屬公司淨資產的非控股權益，初步按非控股權益佔被收購方可識別資產淨值的已確認金額比例或按公允價值計量。計量基準視乎每項交易而作出選擇。

   倘業務合併乃分階段達成，本集團過往所持有被收購方之股本權益乃於收購日期（即本集團取得控制權當日）重新計量至公允價值，因而所得之收益或虧損（如有）乃於損益中確認。有關權益告出後，如作出以下處理乃屬恰當，則收購日期前從被收購方權益產生並已於過往在其他全面收益中確認之金額，乃重新分類至損益。

   **商譽**
   收購業務所產生商譽，乃按於業務收購日期的成本（請參閱上文的會計政策）減任何累計減值虧損（若有）入賬。

   就減值測試而言，商譽會分配至預期會從合併獲得協同效益的各個現金產生單位或組別，即就內部管理目的之監控商譽的最小單位，且不大於經營分部。

   獲分配商譽的現金產生單位或組別會每年或於單位出現減值跡象時更頻繁進行減值測試。就於報告期內收購產生的商譽，獲分配商譽的現金產生單位或組別會於財政年度結束前進行減值測試。倘若現金產生單位的可收回金額少於單位的賬面值，則減值虧損會首先分配以削減任何商譽的賬面值，其後按各項資產所佔單位或現金產生單位組別的賬面值比例分配至其他資產。

   於出售有關現金產生單位（或本集團監察商譽之現金產生單位中之任何現金產生單位組合）時，在釐定出售溢利或虧損時會計入應佔的商譽數額。

   本集團對於收購聯營公司產生的商譽的政策載列如下。

**Confidential**

Qin_00001180

**3. 重大會計政策(續)**

**綜合基準(續)**

***本集團於現有附屬公司所有權的變動(續)***

當本集團失去一間附屬公司之控制權時,該附屬公司及非控股權益(如有)的資產及負債終止確認。盈虧於損益內確認,並按:[i]已收代價公允價值與任何保留權益公允價值之總額與[ii]本公司擁有人應佔附屬公司之資產(包括商譽)及負債之賬面值之差額計算。所有先前於其他全面收益確認之有關該附屬公司之款項,將按猶如本公司已直接出售該附屬公司之相關資產或負債入賬(即按適用國際財務報告準則之規定/許可條文重新分類至損益內或轉撥至另一類權益)於失去控制權當日於前附屬公司保留之任何投資之公允價值將根據國際會計準則第39號,於其後入賬時被列作初步確認之公允價值,或(如適用)於初步確認時列作於聯營公司或合資企業之投資成本。

**業務合併**

收購業務採用收購法入賬。業務合併中之轉讓代價按公允價值計量,而計算方法為本集團所轉讓資產、本集團自被收購方原股東承接之負債及本集團為交換被收購方之控制權而發行之股權於收購當日之公允價值總額。有關收購之費用通常於產生時於損益中確認。

所收購之可識別資產及所承擔之負債乃於收購日按公允價值確認,惟以下情況除外:

* 遞延稅項資產或負債或僱員福利安排所產生的資產或負債分別按國際會計準則第12號「所得稅」及國際會計準則第19號「僱員福利」確認及計量;

* 與被收購方的以股份為基礎的付款安排或為取代被收購方的以股份為基礎的付款安排而訂立的本集團以股份為基礎的付款安排有關的負債或權益工具,乃於收購日期按國際財務報告準則第2號計量;及

* 根據國際財務報告準則第5號「持作出售的非流動資產及已終止經營業務」分類為持作出售的資產(或出售組別)根據該準則計量。

Confidential

Qin_00001181

3. **重大會計政策(續)**

**綜合基準**

綜合財務報表包括本公司及其所控制實體及其附屬公司的財務報表。倘本公司符合以下條件時，即取得控制權：

- 可對投資對象行使權力；

- 因參與投資對象業務而承受浮動回報的風險或享有權利；及

- 有能力使用其權力影響其回報。

倘有事實及情況顯示上述三項控制因素之一項或多項出現變化，本集團將重新評估其是否控制投資對象。

若本集團擁有投資對象少於大多數之表決權，如其表決權足以使有實質能力單方面操控投資對象之相關活動，則彼對投資對象具有權力。本集團評估本集團對投資對象之表決權有否賦予彼權力時，已考慮全部相關事實及狀況，包括：

- 本集團持有表決權之規模相比於其他表決權持有人所股之規模及分佈；

- 本集團、其他表決權持有人或其他人士所持有之潛在表決權；

- 其他約定安排所產生之權利；及

- 其他額外事實及狀況，顯示本集團現時已經(或並無)能力，在需作出決策時操控相關活動(包括過往股東會議之表決模式)。

附屬公司之綜合入賬於本集團取得有關附屬公司之控制權起開始，並於本集團失去有關附屬公司之控制權時終止。具體而言，年內所收購或出售附屬公司之收入及開支乃自本集團取得控制權之日期起計入綜合損益及其他全面收入報表，直至本集團不再控制有關附屬公司之日期為止。

損益及其他全面收入之每個項目乃歸屬於本公司擁有人及非控股權益。附屬公司之全面收入總額歸屬於本公司擁有人及非控股權益，即使此舉會導致非控股權益產生虧絀結餘。

於必要時，將對附屬公司之財務報表作出調整，以令彼等之會計政策與本集團之會計政策一致。

有關本集團成員之間交易的所有集團內公司間之資產及負債、權益、收入、支出及現金流量於綜合時悉數對銷。

***本集團於現有附屬公司所有權的變動***

本集團於附屬公司所有權的權益出現變動，但並無導致本集團失去該等附屬公司的控制權，均以權益交易入賬。本集團的相關權益部分及非控股權益的賬面值均予以調整，以反映彼等於附屬公司的相關權益的變動(包括按照本集團及非控股權益所佔權益比例於本集團及非控股權益之間重新歸屬相關儲備)。

非控股權益所調整的款額與所付或所收代價的公允價值兩者之間的差額，均直接於權益確認並歸屬於本公司擁有人。

**Confidential**

**Qin_00001182**



**綜合財務報表附註**

*截至二零一七年十二月三十一日止年度*

3. **重大會計政策**

此等綜合財務報表乃按照國際會計準則委員會頒佈之國際財務報告準則編製。此外，此等綜合財務報表包括香港聯合交易所有限公司證券上市規則（「上市規則」）以及香港公司條例（「公司條例」）之適用披露規定。

除於各報告期末按公允價值計算的若干金融工具外，綜合財務報表乃根據歷史成本基準編製，已在下列會計政策作出解釋。

歷史成本一般以交換貨品及服務時給予代價的公允價值為基準。

公允價值是於計量日期市場參與者於有秩序交易中出售資產可收取或轉讓負債須支付的價格，而不論該價格是否直接可觀察或可使用其他估值技術估計。若市場參與者於計量日期對資產或負債定價時會考慮資產或負債的特點，則本集團於估計資產或負債的公允價值時會考慮該等特點。此等綜合財務報表中作計量及／或披露用途的公允價值乃按此基準釐定，惟屬於國際財務報告準則第2號「以股份為基礎之付款」範圍的以股份付款的交易、屬於國際會計準則第17號「租賃」範圍內的租賃交易，以及與公允價值有部份相若地方但並非公允價值的計量，譬如國際會計準則第2號「存貨」內的可變現淨額或國際會計準則第36號「資產減值」內的使用價值除外。

此外，就財務呈報而言，公允價值計量根據公允價值計量的輸入數據可觀察程度及公允價值計量的輸入數據對其整體的重要性分類為第一級、第二級或第三級，詳情如下：

- 第一級輸入數據是實體於計量日期可以取得的相同資產或負債於活躍市場之報價（未經調整）；

- 第二級輸入數據是就資產或負債直接或間接地可觀察之輸入數據（第一級內包括的報價除外）；及

- 第三級輸入數據是資產或負債的不可觀察輸入數據。

主要會計政策載列如下。

0129

星美控股集團有限公司　48

**Confidential**

**Qin_00001183**

## 2. 採納新訂及經修訂國際財務報告準則(「國際財務報告準則」)(續)

### 已頒佈但尚未生效的新訂及經修訂國際財務報告準則(續)

### 國際財務報告準則第16號「租賃」(續)

使用權資產初步按成本計量，並隨後以成本(惟若干例外情況除外)減累計折舊及減值虧損計量，並就租賃負債任何重新計量而作出調整。租賃負債乃按租賃付款(非當日支付)的現值初步確認。隨後，租賃負債經(其中包括)利息及租賃付款以及租賃修訂的影響所調整。就現金流量分類而言，本集團現時將持作自用租賃土地之前期預付租賃付款呈列為投資現金流量，而其他經營租賃付款則呈列為經營現金流量。於採用國際財務報告準則第16號後，有關租賃負債的租賃付款將分配為本金及利息部分，將以本集團融資現金流量呈列。

根據國際會計準則第17號，本集團作為承租人就融資租賃安排及租賃土地之預付租賃款項，已確認為資產及相關融資租賃負債。採用國際財務報告準則第16號可能導致該等資產之分類發生潛在變動，其分類視乎本集團將倘擁有資產時之使用權單獨或於相應有關資產的同一項目內呈列。

與承租人會計處理方法相反，國際財務報告準則第16號大致保留國際會計準則第17號內出租人的會計要求，並繼續規定出租人將租賃分類為經營租賃或融資租賃。

此外，國際財務報告準則第16號亦要求較廣泛的披露。

於二零一七年十二月三十一日，本集團有不可撤銷的經營租賃承擔為數4,753,040,000港元(如附註45所披露)。初步評估顯示該等安排將符合租賃的定義。於應用國際財務報告準則第16號後，本集團將會就所有該等租賃確認使用權資產及對應負債，除非該等租賃符合低值或短期租賃。

另外，本集團現時認為已付可退回租賃按金77,311,000港元是租賃項下的權利及義務，適用於國際會計準則第17號。按國際財務報告準則第16號租賃付款的定義，上述按金並非與相關資產使用權有關的付款，因此，上述按金的賬面值可調整至攤銷成本，而有關調整乃視被為額外租賃付款。已付可退回租賃按金的調整會計入使用權資產的賬面值內。

此外，應用新規定可能導致上文所述的計量、呈列及披露事項出現變動。

Confidential

Qin_00001184

2. **採納新訂及經修訂國際財務報告準則(「國際財務報告準則」)(續)**
   *已頒佈但尚未生效的新訂及經修訂國際財務報告準則(續)*
   **國際財務報告準則第15號「客戶合約收入」**
   國際財務報告準則第15號的頒佈為實體建立了一個單一的綜合模式,以確認來自客戶合約的收入。當國際財務報告準則第15號生效時,將取代現時沿用的收入確認指引,包括國際會計準則第18號「收入」、國際會計準則第11號「建設合同」以及相關詮釋。

   國際財務報告準則第15號的核心原則乃一個實體應確認收入以體現向客戶轉讓承諾貨品或服務的數額,並反映實體預期交換該等貨品或服務而應得的代價。具體來說,該準則引入五個步驟來確認收入:

   - 第1步:確定與一個客戶的合同
   - 第2步:確定合同內的履約義務
   - 第3步:釐定交易價格
   - 第4步:將交易價格分配至合同內的履約義務
   - 第5步:當(或於)實體履行履約義務時確認收入

   根據國際財務報告準則第15號,當(或於)履約義務一經達成,實體即可確認收入。即:當貨品「控制」或服務指定履約義務所已轉移至客戶。規定的指引已加入國際財務報告準則第15號以處理特別可能出現的情況。此外,國際財務報告準則第15號亦要求較廣泛的披露。

   於二零一六年,國際會計準則委員會頒佈有關識別履約責任、主體代理安排及許可應用指引之國際財務報告準則第15號之澄清。

   董事預期日後應用國際財務報告準則第15號將引致更多的披露。然而,本公司董事預期,應用國際財務報告準則第15號將不會對相關報告期間確認收入的時間及金額造成重大影響。

   **國際財務報告準則第16號「租賃」**
   國際財務報告準則第16號為識別出租人及承租人之租賃安排及會計處理引入一個綜合模式。當國際財務報告準則第16號生效時,將取代國際會計準則第17號「租賃」及相關的詮釋。

   國際財務報告準則第16號根據所識別資產是否由客戶控制來區分租賃及服務合約。除短期租賃及低值資產租賃外,經營及融資租賃的差異自承租人會計處理中移除,並由承租人須就所有租賃確認使用權資產及相應負債的模式替代。

Confidential

Qin_00001185

## 2. 採納新訂及經修訂國際財務報告準則（「國際財務報告準則」）(續)
### 已頒佈但尚未生效的新訂及經修訂國際財務報告準則(續)
### 國際財務報告準則第9號「金融工具」(續)

- 就金融資產減值而言，相對國際會計準則第39號下按已產生信貸虧損模式，國際財務報告準則第9號要求按預期信貸虧損模式計算。預期信貸虧損模式規定實體將各報告日期之預期信貸虧損及該等預期信貸虧損的變動入賬，以反映信貸風險自初始確認以來的變動。換言之，毋須再待發生信貸事件方確認信貸虧損。

根據本集團於二零一七年十二月三十一日之金融工具及風險管理政策，董事預期首次應用國際財務報告準則第9號將產生下列潛在影響：

### 分類及計量

- 分類為貿易及其他應收款項、應收關聯方款項、其他貸款、已抵押銀行存款及銀行結餘及現金，以攤銷成本入賬之債務工具（分別於附註28、33、30及31披露）：於目的為收取合約現金流量的業務模式下持有以及附有純粹作本金及尚未償還本金利息付款的合約現金流量的債務投資。因此，該等金融資產將於應用國際財務報告準則第9號後繼續於往後期間按攤銷成本計量。

- 分類為可供出售投資並按成本減減值列賬的股本證券（於附註22披露）：根據國際財務報告準則第9號，該等證券符合資格指定為以透過其他全面收入按公允價值列賬的方式計量，然而，本集團無意選擇指定透過其他全面收入按公允價值列賬的方式計量該等證券，而將按公允價值計量該等證券，並在損益中確認其後的公允價值損益。於首次應用國際財務報告準則第9號後，成本減減值與公允價值的差額將於二零一八年一月一日轉撥至保留溢利；

- 現時按攤銷成本計量之其他金融資產（於附註21披露），於往後會計期間於應用國際財務報告準則第9號時乃透過損益按公允價值計量。初次應用國際財務報告準則第9號時，公允價值變動指攤銷成本與公允價值之間的差額，將於二零一八年一月一日之保留溢利中調整；

- 於二零一八年一月一日，本集團亦撤回根據國際財務報告準則第9號指定為透過損益按公允價值列賬的金融資產及透過損益按公允價值列賬的持作買賣投資的計量分類，此乃由於根據國際財務報告準則第9號規定，該等金融資產須透過損益按公允價值計量；及

- 除受國際財務報告準則第9號項下預期信貸虧損模式規限的金融資產外，所有其他金融資產及金融負債將繼續按與現時根據國際會計準則第39號計量之相同基準計量。

### 減值

一般而言，董事預期應用國際財務報告準則第9號的預期信貸虧損模式，將導致提早就有關本集團按攤銷成本計量的金融資產以及於本集團應用國際財務報告準則第9號時須作出減值撥備的其他項目之尚未產生的信貸虧損作出撥備。

根據董事的評估，倘本集團應用預期信貸虧損模式，本集團擬於二零一八年一月一日確認的累計減值虧損金額將較根據國際會計準則第39號所確認的累計金額增加，乃主要由於預計就貿易及其他應收款項及其他貸款計提信貸虧損撥備所致。於預期信貸虧損模式下確認的有關進一步減值將減少二零一八年一月一日的期初保留溢利。

Confidential

Qin_00001186

綜合財務報表附註
*截至二零一七年十二月三十一日止年度*

## 2. 採納新訂及經修訂國際財務報告準則(「國際財務報告準則」)(續)
### 已頒佈但尚未生效的新訂及經修訂國際財務報告準則
本集團並無提早應用下列已頒佈但尚未生效之新訂及經修訂國際財務報告準則:

| | |
|---|---|
| 國際財務報告準則第9號 | 金融工具[1] |
| 國際財務報告準則第15號 | 客戶合約收入及相關修訂[1] |
| 國際財務報告準則第16號 | 租賃[2] |
| 國際財務報告準則第17號 | 保險合約[4] |
| 國際財務報告詮釋委員會第22號 | 外幣交易及預付代價[1] |
| 國際財務報告詮釋委員會第23號 | 所得稅處理之不確定性[2] |
| 國際財務報告準則第2號之修訂 | 以股份為基礎之付款交易之分類及計量[1] |
| 國際財務報告準則第4號之修訂 | 連同國際財務報告準則第4號「保險合約」應用國際財務報告準則第9號「金融工具」[1] |
| 國際財務報告準則第9號之修訂 | 具有負補償的提前還款特性[2] |
| 國際財務報告準則第10號及國際會計準則第28號之修訂 | 投資者與其聯營公司或合營公司間之資產出售或注資[3] |
| 國際會計準則第19號之修訂 | 計劃修訂、縮減或清償[2] |
| 國際會計準則第28號之修訂 | 於聯營公司或合營公司之長期權益[2] |
| 國際會計準則第28號之修訂 | 國際財務報告準則二零一四年至二零一六年週期之年度改進其中一項[1] |
| 國際會計準則第40號之修訂 | 轉讓投資物業[2] |
| 國際財務報告準則之修訂 | 國際財務報告準則二零一五年至二零一七年週期之年度改進[2] |

[1] 於二零一八年一月一日或其後開始之年度期間生效
[2] 於二零一九年一月一日或其後開始之年度期間生效
[3] 於待定日期或其後開始之年度期間生效
[4] 於二零二一年一月一日或其後開始之年度期間生效

### 國際財務報告準則第9號「金融工具」
國際財務報告準則第9號引進有關金融資產、金融負債、一般對沖會計的分類及計量之新規定以及金融資產之減值要求。

國際財務報告準則第9號的主要規定:

- 所有屬國際財務報告準則第9號範疇內之已確認金融資產,其後均按攤銷成本或公允價值計量。尤其是,按商業模式持有而目的為收取合約現金流量之債務投資,以及僅為支付本金及未償還本金之利息之合約現金流量之債務投資,一般均於其後會計期間結束時按攤銷成本計量。於目的為同時收取合約現金流及出售金融資產之業務模式中持有之債務工具,以及金融資產合約條款令於特定日期產生之現金流純粹為支付本金及尚未償還本金之利息的債務工具,均按透過其他全面收入按公允價值(「透過其他全面收入按公允價值」)列賬之方式計量。所有其他金融資產均於其後會計期間按其公允價值計量。此外,根據國際財務報告準則第9號,實體可以不可撤回地選擇於其他全面收入呈列股本投資(並非持作買賣)之其後公允價值變動,而一般僅於損益內確認股息收入。

- 就不會導致終止確認的非重大金融負債修訂而言,相關金融負債的賬面值將按經修訂合約現金流量現值計算並按金融負債原實際利率貼現。交易成本或所產生費用按經修訂金融負債的賬面值調整,並按經修訂負債的餘下限予以攤銷。金融負債賬面值的任何調整於修訂日期於損益確認。目前,本集團修訂非重大金融負債修訂的實際利率,惟並未於損益確認收益╱虧損。

0131

Confidential

Qin_00001187



1. **一般資料及綜合財務報表之編製基準(續)**

根據有關該等商討之現況,董事有信心本集團將獲得足夠資金支持本集團於該等綜合財務報表獲批准日期起未來十二個月之營運資金要求。

綜合財務報表以港元(「港元」)呈列。港元亦為本公司之功能貨幣。管理層認為本集團的營運涉及使用港元及人民幣(「人民幣」),而融資活動則主要採用港元。經計及一切因素並考慮到採用港元作為功能貨幣乃最忠實反映與本公司有關的相關交易、事項及情況的經濟影響後,管理層運用其判斷釐定港元作為功能貨幣。

2. **採納新訂及經修訂國際財務報告準則(「國際財務報告準則」)**
   **於本年度強制生效之國際財務報告準則之修訂**

本集團已於本年度首次應用由國際會計準則理事會(「國際會計準則理事會」)頒佈的國際財務報告準則及國際會計準則(「國際會計準則」)之下列修訂:

| | |
|---|---|
| 國際會計準則第7號之修訂 | 披露計劃 |
| 國際會計準則第12號之修訂 | 就未變現虧損確認遞延稅項資產 |
| 國際財務報告準則第12號之修訂 | 作為國際財務報告準則二零一四年至二零一六年週期的年度改進一部分 |

除上述者外,本年度應用國際財務報告準則之該等修訂對本年度及/或過往年度本集團的財務表現及狀況以及本綜合財務報表中所載的披露事項並無重大影響。

**國際會計準則第7號「披露計劃」之修訂**

本集團於本年度首次應用該等修訂。該等修訂規定實體須作出能讓財務報表使用者評估融資活動所產生負債之變動的披露,包括現金及非現金變動。此外,該等修訂亦要求,當金融資產的現金流量已經或其未來現金流量將會計入融資活動的現金流量時,實體須披露有關金融資產的變動。

具體而言,該等修訂要求披露下列各項:(i)融資現金流量的變動;(ii)取得或失去附屬公司或其他業務控制權所引起的變動;(iii)外幣匯率變動的影響;(iv)公允價值的變動;及(v)其他變動。

該等項目的年初及年末結餘對賬載於附註55。按照該等修訂的過渡條文,本集團並無披露去年的比較資料。除附註55的額外披露外,應用該等修訂對本集團的綜合財務報表並無影響。

Confidential

Qin_00001188

# 綜合財務報表附註

*截至二零一七年十二月三十一日止年度*

## 1. 一般資料及綜合財務報表之編製基準

星美控股集團有限公司(「本公司」)在百慕達註冊成立為獲豁免有限公司,其股份於香港聯合交易所有限公司主板上市。本公司董事(「董事」)認為,本公司之直接及最終控制方為覃輝先生(「覃先生」)。本公司註冊辦事處及主要營業地點地址於本年報公司資料一節披露。本公司為一間投資控股公司,其主要附屬公司之主要業務載列於附註50。

編製綜合財務報表時,鑒於本集團於二零一七年十二月三十一日產生流動負債淨額約3,050,152,000港元,董事已謹慎考慮本集團日後之流動資金狀況。基於下列原因,故綜合財務報表乃按持續經營基準編製:

(i) 覃先生同意為本公司提供足夠資金,使本公司在可預見未來可悉數履行其財務責任;

(ii) 按本公司於二零一八年三月二十七日公告,星美國際影院有限公司(「星美國際」,本公司全資附屬公司)與獨立第三方訂立買賣協議,據此星美國際(作為賣方)同意向買方出售成都潤運之5%股權,代價為人民幣1,000,000,000元,於出售事項完成時支付。於出售事項完成時,本集團於成都潤運之所有權將由84.375%減少至79.375%,而無失去成都潤運之控制權。有關代價將於出售事項完成時支付,而董事預期出售事項將於二零一八年四月完成;

(iii) 於二零一八年三月二十六日,本集團已獲得一間財務機構授出信貸融資額最多300,000,000港元,用作本集團之營運資金。該融資額為無抵押、按年利率6厘計息及須於二零一九年九月三十日前悉數償還。提取該融資額任何金額時須達成若干先決條件(包括本集團信貸評估盡職審查)。本集團已申請提取全數融資額。董事預期該申請將於二零一八年四月獲批;

(iv) 於二零一八年三月,三名獨立第三方投資者認購本金金額為430,000,000港元、60,000,000美元及30,000,000美元之本公司兩年期可換股票據。該等可換股票據按年利率7.5厘計息,並按達成年度回報率11%(自發行日期起計算)之金額贖回其全部或部份。董事預期該等可換股票據將於二零一八年四月發行;

(v) 於二零一八年三月二十八日,本集團與一間中國註冊財務機構簽訂認購協議以發行本金金額為70,000,000美元之9.75%固定息率債券,年期為兩年,並可延後至第三個週年日;及

(vi) 按本公司於二零一八年三月二十七日公告,本集團已獲得財務機構之認購要約,以發行合共本金金額不多於人民幣1,000,000,000元之債券,年期為不多於三年。建議有關債券於深圳證券交易所上市。

Confidential

Qin_00001189

| | 二零一七年 千港元 | 二零一六年 千港元 |
|---|---|---|
| **投資業務** | | |
| 一間聯營公司償還貸款 | | 50,000 |
| 償還其他貸款 | 24,000 | – |
| 已收取銀行利息 | 1,832 | 2,456 |
| 已收取其他利息 | 2,200 | 17,232 |
| 出售附屬公司所得收益 | 14,233 | 52,785 |
| 出售一家聯營公司權益所得收益 | 50,000 | – |
| 收購一家聯營公司權益 | | (50,000) |
| 存放已抵押銀行結餘 | (17,859) | (12,604) |
| 收購次級資產擔保證券 | | (116,390) |
| 收購物業、廠房及設備之已付按金 | (162,523) | (298,580) |
| 購買物業、廠房及設備 | (557,079) | (1,252,923) |
| 墊付予其他人士貸款 | | (150,000) |
| 墊付予關連人士之款項 | (76,624) | – |
| 收購企業之已付按金 | (282,365) | (215,349) |
| 收購附屬公司（扣除已收購之現金） | (1,541,666) | (1,464,566) |
| 收購星美文化旅遊集團 | | (120,517) |
| 可供出售投資之投資 | (951) | (65,396) |
| 收購指定為按公允價值透過損益列賬之金融資產 | (90,000) | |
| 投資業務動用之現金淨額 | (2,636,802) | (3,623,852) |
| **融資業務** | | |
| 其他借款所得收益 | 173,625 | 1,915,231 |
| 配售一家附屬公司股份之所得收益 | 145,500 | – |
| 發行可換股票據之所得收益 | | 65,000 |
| 所籌集銀行借款之所得收益 | 72,809 | 38,906 |
| 出售自身債務證券之所得收益 | | 407,365 |
| 發行債券之所得收益 | 12,300 | 1,184,804 |
| 行使購股權時發行股份之所得收益 | | 12,300 |
| 視作出售一間附屬公司部份權益但並未失去控制權之所得收益 | 2,682,998 | |
| 關連人士墊款 | 1,196 | 2,431 |
| 融資租賃墊款 | 60,566 | 122,051 |
| 償還融資租賃應付款項 | (113,180) | (16,055) |
| 回購股份 | (7,807) | (57,187) |
| 已付股息 | (179,668) | (147,231) |
| 已付利息 | (540,178) | (323,927) |
| 償還債券 | (40,000) | (64,431) |
| 償還其他借款 | (1,166,111) | (399,264) |
| 償還銀行借款 | (41,516) | (364,863) |
| 贖回可換股票據 | (250) | |
| 收購星美文化旅遊集團額外權益 | (85,972) | (33,756) |
| 收購票據集團額外權益 | – | (400) |
| 融資業務產生之現金淨額 | 974,312 | 2,340,974 |
| 現金及現金等值項目減少淨額 | (536,657) | (339,683) |
| 於一月一日之現金等值項目 | 625,081 | 1,007,689 |
| 外匯匯率變動之影響 | 8,741 | (42,925) |
| 於十二月三十一日之現金及現金等值項目 銀行結餘及現金 | 97,165 | 625,081 |



Confidential

Qin_00001190

# 綜合現金流量表

截至二零一七年十二月三十一日止年度

| | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|
| **經營業務** | | |
| 除稅前(虧損)溢利 | (253,275) | 493,097 |
| 就以下項目調整: | | |
| 物業、廠房及設備之折舊 | 671,193 | 419,456 |
| 借貸利息開支 | 576,854 | 400,216 |
| 無形資產攤銷 | 10,656 | 10,714 |
| 所購買特許權攤銷 | 11,906 | 2,319 |
| 融資租賃費用 | 15,667 | 15,110 |
| 以股本結算之股份支付款 | 12,064 | – |
| 存貨撥備 | 9,819 | 723 |
| 無形資產減值虧損 | 9,318 | 3,326 |
| 出售 Photon 集團分類為持作出售之<br>　可供出售金融資產之收益 | – | (1,158) |
| 電影版權投資減值虧損 | 6,490 | – |
| 預付租賃項減值虧損 | 3,122 | 3,074 |
| 出售／撇銷物業、廠房及設備之虧損 | 664 | 34,221 |
| 分佔聯營公司業績 | (545) | (11,246) |
| 銀行利息收入 | (1,832) | (2,456) |
| 出售／視作出售聯營公司權益之收益 | (2,478) | (27,810) |
| 持作買賣投資公允值變動產生之未變現(收益)虧損 | (11,706) | 17,373 |
| 衍生金融工具公允值變動 | (28,989) | 9,718 |
| 呆賬撥備 | 370 | 37 |
| 其他應收款項之減值 | 52,472 | – |
| 來自聯營公司、其他金融資產及指定為按公允價值<br>　透過損益列賬之金融資產之利息收入 | (15,400) | (17,232) |
| 指定為按公允價值透過損益列賬之金融資產之公允價值變動 | (57,941) | – |
| 商譽減值虧損 | 347,179 | 46,556 |
| 出售一家附屬公司之收益 | – | (251) |
| 營運資金變動前之經營現金流量 | 1,355,608 | 1,395,787 |
| 存貨減少(增加) | 81,734 | (42,177) |
| 租金按金(增加)減少 | (700) | 70,686 |
| 貿易及其他應收款項(增加)減少 | (136,242) | 619,344 |
| 應收關連人士款項減少 | – | 13,788 |
| 持作買賣投資減少(增加) | 253,962 | (125,573) |
| 遞延收入減少 | – | (90,786) |
| 貿易及其他應付款項增加(減少) | 9,711 | (689,213) |
| 電影版權投資增加 | (419,464) | (188,108) |
| 經營產生之現金 | 1,144,609 | 963,748 |
| 已付所得稅 | (3,109) | (5,443) |
| 已付融資租賃費用 | (15,667) | (15,110) |
| 經營業務產生之現金淨額 | 1,125,833 | 943,195 |

0133

Confidential

Qin_00001191

| | 本公司擁有人應佔 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 股本<br>千港元<br>(附註51(i)) | 股份溢價<br>千港元<br>(附註51(ii)) | 其他儲備<br>千港元<br>(附註51(iii)) | 併入虧絀<br>千港元<br>(附註51(iv)) | 換算儲備<br>千港元 | 可換股票據儲備<br>千港元 | 法定儲備<br>千港元<br>(附註51(v)) | 以股份為基礎之付款儲備<br>千港元 | 資本贖回儲備<br>千港元 | 保留溢利<br>千港元 | 小計<br>千港元 | 非控股權益<br>千港元<br>(附註50) | 權益總額<br>千港元 |
| 於二零一七年一月一日 | 1,361,121 | 1,465,783 | (33,053) | 1,463,670 | (258,064) | 34,817 | 265,691 | - | 12,515 | 958,644 | 5,271,124 | 247,729 | 5,518,853 |
| 本年度虧損 | | | | | | | | | | (153,734) | (153,734) | (112,786) | (266,520) |
| 其他全面收入 | | | | | 251,928 | | | | | | 251,928 | 36,755 | 288,683 |
| 年內全面收入(開支)總額 | | | | | 251,928 | | | | | (153,734) | 98,194 | (76,031) | 22,163 |
| 截至二零一六年十二月三十一日止年度之已批准末期股息 | | | | | | | | | | (179,668) | (179,668) | - | (179,668) |
| 回購股份 | (1,100) | (7,807) | | | | | | | 1,100 | | (7,807) | | (7,807) |
| 轉撥至法定儲備 | | | | | | | 2,188 | | | (2,188) | | | |
| 以股份為基礎之付款 | | | | | | | | 12,064 | | | 12,064 | | 12,064 |
| 收購一間附屬公司之非控股權益(附註d) | | | 6,804 | | | | | | | | 6,804 | (92,776) | (85,972) |
| 因兌換一間附屬公司可換股票據而產生(附註e) | | | (2,167) | | | | | | | | (2,167) | 68,074 | 65,907 |
| 因出售一間附屬公司的股份而產生(附註f) | | | (19,912) | | | | | | | | (19,912) | 165,412 | 145,500 |
| 以股份配售方式增發附屬公司部份股份(附註g) | | | 5,861 | | | | | | | | 5,861 | (5,861) | |
| 因喪失一間附屬公司部份權益但未失去控制權而產生(附註h) | | | 1,947,318 | | | | | | | | 1,947,318 | 735,680 | 2,682,998 |
| 年內權益變動 | (1,100) | (7,807) | 1,937,904 | - | 251,928 | - | 2,188 | 12,064 | 1,100 | (335,590) | 1,860,687 | 794,498 | 2,655,185 |
| 於二零一七年十二月三十一日 | 1,360,021 | 1,457,976 | 1,904,651 | 1,463,670 | (6,136) | 34,817 | 267,879 | 12,064 | 13,615 | 623,054 | 7,131,811 | 1,042,227 | 8,174,038 |

附註：

[d] 截至二零一七年十二月三十一日止年度，本集團自非控股權益收購星美文化旅遊集團11.02%額外股權益，將其股權益由64.49%增至75.51%。收購代價85,972,000港元已以現金支付。被收購的非控股權益的賬面值92,776,000港元與已支付代價85,972,000港元之間的差額6,804,000港元已計入其他儲備。

[e] 除附註37(g)及37(h)所披露者外，可換股票據XI及可換股票據XII已轉換為星美文化旅遊集團的普通股。本集團於星美文化旅遊集團的權益被攤薄5.62%。本集團所出售股本權益的賬面值68,074,000港元與可換股票據XI及可換股票據XII負債部份及嵌入式衍生工具的總和65,907,000港元之間的差額2,167,000港元已從其他儲備扣除。

[f] 截至二零一七年十二月三十一日止年度，星美文化旅遊集團已發行214,285,000股每股面值0.01港元的新股份，每股股份配售價0.70港元。本集團於星美文化旅遊集團的權益被攤薄12.41%。本售賣出售股本權益的賬面值165,412,000港元與售賣所得收益淨額145,500,000港元之間的差額19,912,000港元已從其他儲備扣除。

[g] 截至二零一七年十二月三十一日止年度，本集團向星美文化旅遊集團全資附屬公司SMI Culture Investment Holdings Limited（「SMI Culture Investment」）出售SMI Entertainment Limited（「SMiE」）之全部股本權益，總代價為人民幣150,000,000元（相當於171,000,000港元），以現金代價人民幣50,000,000元（相當於57,000,000港元）及對SMI Culture Investment發行星美文化旅遊集團股份人民幣100,000,000元（相當於114,000,000港元）支付。本集團向SMI Culture Investment出售SMIE之權益已作為共同控制的業務合併入賬。本集團於星美文化旅遊集團的權益增加5.19%。本集團應收購之非控股權益的賬面值與股份代價之間的差額5,861,000港元已計入其他儲備。

[h] 截至二零一七年十二月三十一日止年度，本公司全資附屬公司成都潤運文化傳播有限公司（「成都潤運」）與獨立投資者（「投資者」）訂立獨立協議（「注資協議」），據此，投資者全同意增資以換取成都潤運15.63%經擴大股權。對成都潤運15.63%經擴大股權的增資已於二零一七年六月完成，所得收益總額為人民幣1,980,000,000元（相當於2,403,772,000港元）於完成時以投資者收取的現金結付。本集團並未失去對成都潤運的控制權。本集團作出售股本權益之賬面值與增資所得收益之間的差額1,723,855,000港元已計入其他儲備。於二零一七年七月，額外增資人民幣230,000,000元（相當於279,226,000港元）以自投資者收取的現金結付。增資以股本交易入賬，增資與我作出售非控股權益的賬面值之間的差額223,463,000港元已計入其他儲備。

Confidential　　　　Qin_00001192

# 綜合權益變動表

*截至二零一七年十二月三十一日止年度*

| | 本公司擁有人應佔 | | | | | | | | | | | 非控股權益 千港元 | 權益總額 千港元 (附註50) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 股本 千港元 | 股份溢價 千港元 (附註51(i)) | 其他儲備 千港元 (附註51(ii)) | 匯入儲備 千港元 (附註51(iii)) | 換算儲備 千港元 (附註51(iv)) | 可換股票據儲備 千港元 (附註51(v)) | 法定儲備 千港元 | 以股份為基礎之付款儲備 千港元 | 資本贖回儲備 千港元 | 保留溢利 千港元 | 小計 千港元 | | |
| 於二零一六年一月一日 | 1,350,743 | 1,487,498 | (71,238) | 1,463,670 | (6,445) | 35,381 | 54,741 | 12,393 | 4,415 | 900,144 | 5,231,302 | (3,968) | 5,227,334 |
| 本年度溢利 | - | - | - | - | - | - | - | - | - | 403,724 | 403,724 | 3,380 | 407,104 |
| 其他全面開支 | - | - | - | - | (251,619) | - | - | - | - | - | (251,619) | (397) | (252,016) |
| 年內全面(開支)收入總額 | - | - | - | - | (251,619) | - | - | - | - | 403,724 | 152,105 | 2,983 | 155,088 |
| 截至二零一五年十二月三十一日止年度 之已批准末期股息 | - | - | - | - | - | - | - | - | - | (147,231) | (147,231) | - | (147,231) |
| 兌換後發行股份 | 11,645 | 30,005 | - | - | - | (564) | - | - | - | 564 | 41,650 | - | 41,650 |
| 行使購股權時發行股份 | 6,833 | 5,467 | - | - | - | - | - | (7,508) | - | 7,508 | 12,300 | - | 12,300 |
| 購股權失效 | - | - | - | - | - | - | - | (4,885) | - | 4,885 | - | - | - |
| 回購股份 | (8,100) | (57,187) | - | - | - | - | - | - | 8,100 | - | (57,187) | - | (57,187) |
| 轉撥至法定儲備 | - | - | - | - | - | - | 210,950 | - | - | (210,950) | - | - | - |
| 收購一間附屬公司因額外權益(附註(a)) | - | - | (2,194) | - | - | - | - | - | - | - | (2,194) | (31,562) | (33,756) |
| 因發行一間附屬公司可換股票據而產生 (附註(b)) | - | - | 19,724 | - | - | - | - | - | - | - | 19,724 | 24,619 | 44,343 |
| 收購票盈中國控股有限公司額外權益(附註(c)) | - | - | 6,068 | - | - | - | - | - | - | - | 6,068 | (6,468) | (400) |
| 視作出資(附註(c)) | - | - | 14,587 | - | - | - | - | - | - | - | 14,587 | - | 14,587 |
| 因收購附屬公司而產生(附註43(b)(iii)) | - | - | - | - | - | - | - | - | - | - | - | 260,903 | 260,903 |
| 出售附屬公司(附註44(ii)) | - | - | - | - | - | - | - | - | - | - | - | 1,222 | 1,222 |
| 年內權益變動 | 10,378 | (21,715) | 38,185 | - | (251,619) | (564) | 210,950 | (12,393) | 8,100 | 58,500 | 39,822 | 251,697 | 291,519 |
| 於二零一六年十二月三十一日 | 1,361,121 | 1,465,783 | (33,053) | 1,463,670 | (258,064) | 34,817 | 265,691 | - | 12,515 | 958,644 | 5,271,124 | 247,729 | 5,518,853 |

附註:

[a] 在取得星美文化旅遊集團控股有限公司(「星美文化旅遊集團」)的控制權(見附註43(b)(iii))後,本集團自非控股權益收購星美文化旅遊集團1.08%額外權益。收購代價33,756,000港元已以現金支付。被收購的非控股權益的賬面值31,562,000港元與已支付代價33,756,000港元之間的差額2,194,000港元已從其他儲備扣除。

[b] 除附註37(ii)所披露者外,可換股票據XIII已轉換為星美文化旅遊集團的普通股。本集團於星美文化旅遊集團的權益被攤薄3.85%。本集團被出售股權的賬面值24,619,000港元與可換股票據XIII負債部份及嵌入式衍生工具的總額44,343,000港元之間的差額19,724,000港元已計入其他儲備。

[c] 於二零一六年三月,票盈中國控股有限公司的前股東豁免14,587,000港元的股東貸款,作為對本集團的視作出資,並計入其他儲備。於同日,本集團自非控股權益中收購本公司附屬公司票盈中國控股有限公司的35.8%額外權益。收購代價400,000港元已以現金支付。被收購的非控股權益的賬面值6,468,000港元與已支付代價400,000港元之間的差額6,068,000港元已計入其他儲備。

Confidential

Qin_00001193

| | 附註 | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|---|
| **非流動負債** | | | |
| 融資租賃應付款項 | 34 | 55,142 | 96,279 |
| 銀行借款 | 35 | 29,081 | – |
| 其他借款 | 36 | 631,662 | 1,986,044 |
| 可換股票據 | 37 | 10,000 | – |
| 債券 | 38 | 330,989 | 639,886 |
| 遞延稅項負債 | 39 | 12,082 | 14,025 |
| | | 1,068,956 | 2,736,234 |
| **資產淨值** | | 8,174,038 | 5,518,853 |
| **資本及儲備** | | | |
| 股本 | 40 | 1,360,021 | 1,361,121 |
| 儲備 | | 5,771,790 | 3,910,003 |
| **本公司擁有人應佔權益** | | 7,131,811 | 5,271,124 |
| 非控股權益 | | 1,042,227 | 247,729 |
| **權益總額** | | 8,174,038 | 5,518,853 |

第35至135頁之綜合財務報表已於二零一八年三月二十九日獲董事會批准及授權刊發，並由以下董事代表簽署：


董事　　　　　　　　　　　　　　　董事
魏裕泰　　　　　　　　　　　　　　楊榮兵

**Confidential**

Qin_00001194

# 綜合財務狀況報表

於二零一七年十二月三十一日

| | 附註 | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|---|
| **非流動資產** | | | |
| 物業、廠房及設備 | 16 | 4,104,792 | 3,638,211 |
| 商譽 | 17 | 7,094,692 | 5,536,125 |
| 無形資產 | 18 | 33,161 | 40,931 |
| 所購買特許權 | 18 | 61,148 | 82,372 |
| 預付租賃款項 | 19 | 37,597 | 39,855 |
| 於聯營公司之權益 | 20 | 17,835 | 64,724 |
| 租金按金 | | 65,347 | 59,845 |
| 其他金融資產 | 21 | 202,755 | 177,724 |
| 可供出售投資 | 22 | 66,347 | 65,396 |
| 指定為按公允價值計入損益之金融資產 | 23 | 147,941 | |
| 物業、廠房及設備的工程進度款項以及其他按金 | 24 | 168,603 | 127,771 |
| 收購實體之已付按金 | 25 | 292,928 | 154,289 |
| | | 12,293,146 | 9,987,243 |
| **流動資產** | | | |
| 預付租賃款項 | 19 | 4,234 | 2,999 |
| 存貨 | 26 | 297,727 | 360,055 |
| 電影版權投資 | 27 | 810,617 | 397,643 |
| 貿易及其他應收款項 | 28 | 1,148,312 | 973,758 |
| 應收關聯方款項 | 33 | 76,624 | – |
| 持作買賣投資 | 29 | 61,961 | 304,217 |
| 其他貸款 | 30 | 126,000 | 150,000 |
| 已抵押銀行存款 | 31 | 149,262 | 121,642 |
| 銀行結餘及現金 | 31 | 97,165 | 625,081 |
| | | 2,771,902 | 2,935,395 |
| **流動負債** | | | |
| 貿易及其他應付款項 | 32 | 1,467,758 | 1,047,294 |
| 應付關聯方款項 | 33 | 22,163 | 20,967 |
| 融資租賃應付款項 | 34 | 90,059 | 88,662 |
| 銀行借款 | 35 | 45,411 | 38,906 |
| 其他借款 | 36 | 1,336,112 | 824,900 |
| 可換股票據 | 37 | 907,813 | 1,007,572 |
| 衍生金融工具 | 37 | 14,584 | 55,686 |
| 債券 | 38 | 1,528,170 | 1,225,711 |
| 應付稅項 | | 409,984 | 357,853 |
| | | 5,822,054 | 4,667,551 |
| **流動負債淨額** | | (3,050,152) | (1,732,156) |
| **資產總值減流動負債** | | 9,242,994 | 8,255,087 |

0135

星美控股集團有限公司

36

Confidential

Qin_00001195

# 綜合損益及其他全面收入報表

*截至二零一七年十二月三十一日止年度*

| | 附註 | 二零一七年<br>千港元 | 二零一六年<br>千港元 |
|---|---|---|---|
| 收益 | 5 | 3,788,764 | 3,351,186 |
| 電影院業務及銷售成本 | | (2,810,646) | (2,144,264) |
| 毛利 | | 978,118 | 1,206,922 |
| 其他收益及收入 | 7 | 184,014 | 163,581 |
| 銷售及推廣開支 | | (55,115) | (64,747) |
| 行政開支 | | (332,026) | (278,829) |
| 其他虧損及開支 | 8 | (429,561) | (122,160) |
| 財務費用 | 9 | (599,250) | (422,916) |
| 分佔聯營公司之業績 | | 545 | 11,246 |
| 除稅前(虧損)溢利 | | (253,275) | 493,097 |
| 所得稅開支 | 10 | (13,245) | (85,993) |
| 年內(虧損)溢利 | 11 | (266,520) | 407,104 |
| **其他全面收入(開支)** | | | |
| *隨後可能重新歸類至損益的項目:* | | | |
| 換算海外業務產生的匯兌差額 | | 288,683 | (254,137) |
| 分佔聯營公司其他全面收入 | | – | 66 |
| 出售附屬公司後撥回儲備 | | – | 2,055 |
| 年內其他全面收入(開支) | | 288,683 | (252,016) |
| 年內全面收入總額 | | 22,163 | 155,088 |
| **下列人士應佔年內(虧損)溢利:** | | | |
| 本公司擁有人 | | (153,734) | 403,724 |
| 非控股權益 | | (112,786) | 3,380 |
| | | (266,520) | 407,104 |
| **下列人士應佔全面收入(開支)總額:** | | | |
| 本公司擁有人 | | 98,194 | 152,105 |
| 非控股權益 | | (76,031) | 2,983 |
| | | 22,163 | 155,088 |
| **每股(虧損)盈利(港仙)** | | | (經重列) |
| – 基本 | 15 | (5.65) | 14.91 |
| – 攤薄 | | (5.65) | 14.86 |

Confidential

Qin_00001196

## 獨立核數師報告

- 就　貴集團中實體或業務活動的財務資料獲取充分、適當的審計憑證，以對綜合財務報表發表意見。我們負責指導、監督和執行集團審計。我們對審計意見承擔全部責任。

我們與管治層負責人溝通了計劃的審計範圍、時間安排、重大審計發現等事項，包括我們在審計期間識別出內部控制的任何重大缺陷。

我們亦向管治層負責人提交聲明，說明我們已符合有關獨立性的相關職業道德要求，並與他們溝通所有合理地被認為可能影響我們獨立性的關係及其他事項，以及在適用的情況下，相關的防範措施。

從與管治層負責人溝通的事項中，我們決定哪些事項對本期綜合財務報表的審計最為重要，因而構成關鍵審計事項。我們會在核數師報告中描述這些事項，除非法律法規不允許對某事項作出公開披露，或在極端罕見的情況下，若有合理預期在我們報告中溝通某事項而造成的不利後果將超過其產生的公眾利益，我們將不會在此等情況下在報告中溝通該事項。

本獨立核數師報告的審計項目合夥人為鍾振翔。


**德勤 • 關黃陳方會計師行**
*執業會計師*
香港
二零一八年三月二十九日

**Confidential**

**Qin_00001197**

**董事及管治層負責人就綜合財務報表須承擔的責任**

貴公司董事須負責根據國際財務報告準則及香港公司條例的披露規定編製綜合財務報表，以令綜合財務報表作出真實而公平的反映，及落實董事認為編製綜合財務報表所必要的內部控制，以使綜合財務報表不存在由於欺詐或錯誤而導致的重大錯誤陳述。

在編製綜合財務報表時，董事負責評估 貴集團持續經營的能力，並在適用情況下披露與持續經營有關的事項，以及使用持續經營為會計基礎，除非董事有意將 貴集團清盤或停止經營，或別無其他實際的替代方案。

管治層負責人負責監督 貴集團財務報告過程。

**核數師就審計綜合財務報表須承擔的責任**

我們的目標是，對整體綜合財務報表是否不存在由於欺詐或錯誤而導致的重大錯誤陳述取得合理保證，並根據百慕達公司法第九十條僅向整體股東出具包含我們意見的核數師報告，除此以外，我們的報告不可作其他用途。我們概不就本報告的內容，對任何其他人士負責或承擔法律責任。合理保證是高水準的保證，但不能保證按《香港審計準則》進行的審計在某一重大錯誤陳述存在時總能發現。錯誤陳述可由於欺詐或錯誤引起，如果合理預期它們個別或滙總起來可能影響綜合財務報表使用者所作出的經濟決定，則有關的錯誤陳述可被視作重大。

在根據《香港審計準則》進行審計過程中，我們運用了專業判斷，保持了專業懷疑態度。我們亦：

- 識別及評估由於欺詐或錯誤而導致綜合財務報表存在重大錯誤陳述的風險，設計及執行審計程序以應對這些風險，以及取得充足而適當的審計憑證，作為我們意見的基礎。由於欺詐可能涉及串謀、偽造、蓄意遺漏、虛假陳述，或凌駕於內部控制之上，因此未能發現因欺詐而導致的重大錯誤陳述的風險比因錯誤而導致的重大錯誤陳述的風險為高。

- 了解與審計相關的內部控制，以設計適合實際情況的審計程序，但目的並非對 貴集團內部控制的有效性發表意見。

- 評價董事所採用會計政策的恰當性及所作出會計估計和相關披露資料的合理性。

- 對董事採用持續經營會計基礎的恰當性作出結論，並根據所得的審計憑證，判定是否存在與事件或情況有關的重大不確定性，以致可能對 貴集團持續經營能力構成重大疑慮。如果我們認為存在重大不確定性，則有必要在核數師報告中提請使用者關注綜合財務報表中的相關披露資料。假若有關披露資料不足，則我們須修改我們的意見。我們的結論是基於截至核數師報告日止所取得的審計憑證。然而，未來事件或情況可能導致 貴集團不能繼續持續經營。

- 評價綜合財務報表的整體列報方式、結構及內容，包括披露資料，以及綜合財務報表是否做到公允地反映相關交易及事件。

**Confidential**

Qin_00001198



獨立核數師報告

| 關鍵審計事項 | 我們的審計如何對關鍵審計事項進行處理 |
| --- | --- |
| **影院經營分部的商譽減值** | |

我們釐定電影院業務分部的商譽減值為關鍵審計事項，因為管理層在考慮商譽減值時編製及使用的折現未來現金流量模型涉及判斷及估計。

商譽減值由管理層透過比較從事電影院業務的有關現金產生單位於報告期末的可收回金額與賬面值之間的差額進行評估。 貴集團管理層在評估該等現金產生單位的可收回金額時須作出重大判斷及假設。可收回金額乃以有關現金產生單位的使用價值或公允價值減出售成本中之較高者釐定，計算使用價值時須就期內折現率、增長率、影院的估計平均上座率、影院的平均放映場次及平均票價作出重要假設，以便得出折現未來現金流量分析的淨現值。

誠如綜合財務報表附註4及17所披露， 貴集團呈現電影院業務分部於二零一七年十二月三十一日的商譽為6,941,731,000港元，扣除累計減值虧損412,634,000港元。

我們對管理層評估的電影院業務分部商譽減值評估有關的程序包括：

- 了解 貴集團對商譽減值評估的主要控制；

- 取得管理層編製的折現未來現金流量分析並檢查其計算準確度；

- 評估管理層採用的主要假設的合理性，包括期內折現率、增長率、影院的估計平均上座率、影院的平均放映場次及平均票價；

- 對比 貴集團的歷史表現，並參考 貴集團就各現金產生單位的未來戰略規劃，評估折現未來現金流量模型中採用的相關主要輸入數據，包括收益、銷售成本及經營開支，並檢查其準確度；及

- 檢討管理層就上座率及折現率作出的敏感度分析，以評估對可收回金額及減值的潛在影響。

### 其他資料

貴公司董事須對其他資料負責。其他資料包括年度報告所載資料，但不包括綜合財務報表及我們就此發出的核數師報告。

我們對綜合財務報表的意見並不涵蓋其他資料，我們亦不對其他資料發表任何形式的鑒證結論。

在我們審計綜合財務報表時，我們的責任是閱讀其他資料，並在此過程中，考慮其他資料是否與綜合財務報表或我們在審計過程中所了解的情況存在重大抵觸，或似乎存在重大錯誤陳述。基於我們已執行的工作，如果我們認為該等其他資料存在重大錯誤陳述，我們需要報告該事實。在這方面，我們沒有任何情況需要報告。

## 關鍵審計事項

關鍵審計事項是指根據我們的專業判斷,認為屬於對本期綜合財務報表審計有重要影響的事項。該等事項在我們審計整體綜合財務報表及形成審計意見時予以處理,我們不就該等事項提供單獨意見。

| 關鍵審計事項 | 我們的審計如何對關鍵審計事項進行處理 |
|---|---|
| **在中華人民共和國(「中國」)從事電影院業務的實體於綜合入賬時作出的會計判斷** | |
| 我們釐定在中國從事電影院業務的實體(「有關實體」)於綜合入賬時作出的會計判斷為關鍵審計事項,因為管理層須作出重大判斷以釐定 貴集團(根據若干合約安排)有權因參與 貴集團在中國從事院業務的實體的經營而獲得浮動回報,同時有能力透過於有關實體享有的權力影響彼等之回報而被視為對有關實體具有控制權。<br><br>在釐定 貴集團對有關實體的參與及控制程度時,管理層須考慮多項因素,包括 貴集團是否已1)對有關實體的財務及營運行使實際控制;2)行使有關實體的股權持有人投票權;3)基本取得有關實體產生的所有經濟利益回報;4)取得一項不可撤回的排他性權利以自各股權持有人手中購買有關實體的剩餘全部股權;及5)自各股權持有人手中取得對有關實體全部股權的質押,作為確保有關實體及其各股權持有人履行合約安排項下責任的抵押擔保。<br><br>有關上述資料之更多詳情載於綜合財務報表附註4。 | 我們與在中國從事電影院業務的實體於綜合入賬作出的會計判斷的有關程序包括:<br><br>• 檢討與 貴集團對有關實體的控制權相關的合約協議;<br><br>• 了解 貴集團如何控制有關實體的日常業務經營;<br><br>• 了解管理層根據國際財務報告準則第10號「綜合財務報表」就對有關實體的控制權作出的判斷;及<br><br>• 取得及檢討自 貴公司的中國外部法律顧問取得的關於該等合約安排是否符合現行相關中國法律及法規,及是否具有法律約束力與可否強制執行的法律意見。 |

**Confidential**

Qin_00001200

# 獨立核數師報告

# Deloitte.                                    德勤

致星美控股集團有限公司股東
*(於百慕達註冊成立之有限公司)*

## 意見

本核數師(以下簡稱「我們」)已審計列載於第35至135頁星美控股集團有限公司(以下簡稱「貴公司」)及其附屬公司(以下合稱「貴集團」)的綜合財務報表,該等綜合財務報表包括於二零一七年十二月三十一日的綜合財務狀況報表及截至該日止年度的綜合損益及其他全面收入報表、綜合權益變動表和綜合現金流量表,以及綜合財務報表附註,包括主要會計政策概要。

我們認為,該等綜合財務報表已根據國際財務報告準則(「國際財務報告準則」)真實而公平地反映 貴集團於二零一七年十二月三十一日的綜合財務狀況以及截至該日止年度的綜合財務表現及綜合現金流量,並已遵照香港《公司條例》的披露規定妥為編製。

## 意見的基礎

我們已根據香港會計師公會(「香港會計師公會」)頒佈的《香港審計準則》(「香港審計準則」)進行審計。我們在該等準則下承擔的責任已詳載於本報告中「核數師就審計綜合財務報表承擔的責任」一節中作進一步闡述。根據香港會計師公會頒佈的《專業會計師道德守則》(以下簡稱「守則」),我們獨立於 貴集團並已按照守則履行我們的其他專業道德責任。我們相信,我們所獲得的審計憑證能充足和適當地為我們的審計意見提供基礎。

## 與持續經營相關的重大不確定性

我們請閣下垂注綜合財務報表附註1,其指出於二零一七年十二月三十一日, 貴集團之流動負債超出其流動資產3,050,152,000港元。 貴公司董事正考慮及商討數項融資措施(載於附註1),以改善 貴集團之流動資金及財務狀況,並認為 貴集團於成功實行該等措施後,將有足夠營運資金為其營運撥資,並應付其於可見將來到期之財務責任。該等狀況顯示存在重大不確定性,或會對 貴集團繼續持續經營之能力構成重大疑問。我們在此方面之意見並無修改。

0138

**Confidential**                                **Qin_00001201**

提名文件包括：

(1)　股東建議之意向通知；

(2)　獲提名候選人發出同意獲選為本公司董事之同意書；

(3)　獲提名候選人之簡歷；及

(4)　該建議之任何其他相關資料。

Confidential

Qin_00001202

**股東權利**

以下為本公司股東若干權利之概要：

**(1) 應股東之要求召開股東特別大會**

根據公司細則，於遞交呈請通知書日期持有獲賦予於本公司股東大會上投票權利之本公司繳足股本不少於十分之一之股東，於任何時候均有權透過向董事會或本公司秘書以書面呈請之方式，要求董事會就處理該呈請要求所列明之任何事務召開股東特別大會；而該大會須於遞交該呈請要求後兩(2)個月內舉行。若董事會於接獲該項呈請後之二十一(21)天內未能召開大會，呈請人可根據公司法第74(3)條自行召開股東特別大會。

**(2) 將股東之查詢送達董事會之程序**

股東可隨時以書面形式經公司秘書向本公司董事會轉交彼等之查詢及關注事項，公司秘書之聯絡詳情如下：

香港中環
皇后大道中 99 號
中環中心
6701-2 及 13 室
星美控股集團有限公司
公司秘書
電子郵件：info@smi198.com
電話號碼：+852 2111 9859
傳真號碼：+852 2111 0498

公司秘書須將所收到之查詢及關注事項轉交董事會及／或本公司之相關董事委員會(若適當)，以便回覆股東之查詢。

**(3) 股東將建議提呈予股東大會之程序**

根據公司細則第 88 條，本公司股東可參閱以下提名人選參選本公司董事之程序：

凡有意提名他人(本公司退任董事除外)於任何股東大會參選董事之任何股東(其須正式合資格出席大會並於會上投票)，均可透過發送書面通知及所述建議之其他相關文件(「提名文件」)至本公司之總辦事處或註冊辦事處之方式提名人選參選本公司董事。提交有關書面通知之期間由不早於就該項選舉召開之股東大會之通告發送翌日開始至不遲於該股東大會舉行日期前七天止。該通知之最短期間至少為七天。

股東可將提名文件送交下文所載之本公司香港主要營業地點：

香港中環
皇后大道中 99 號
中環中心
67 樓 6701-2 及 13 室
星美控股集團有限公司
公司秘書

Confidential

Qin_00001203



本公司之風險管理程序如下：

| | |
|---|---|
| 風險識別： | 風險由一系列內部及外部因素所取決，包括但不限於：經濟、政治、社會、技術及環境因素、法律及法規、業務目標及持分者之期望 |
| 風險評估： | 已識別之風險將根據可能性及對本集團達成目標之影響予評估及評級 |
| | 風險評估主要以發生風險的可能性及其引起的後果作為依據，並分為3個類別。風險的影響程度分為：輕微（1分）、中等（2分）及重大（3分），而發生風險的可能性分為：不可能（0分）、不太可能（1分）、可能（2分）及很可能（3分） |
| 監控活動： | 已設計及實施內部監控程序以減輕風險 |
| 風險監察： | 定期更新風險資料以持續監察風險 |
| 風險管理檢討： | 董事會及審核委員會將審視本集團重大風險之任何變動 |

於回顧年度，董事會已對本公司內部監控系統之有效性進行檢討，包括本公司會計及財務匯報職能方面的資源、員工資歷及經驗、培訓課程及有關預算是否足夠，董事會認為內部監控系統在該等方面均為有效及充足。

**憲章文件**
於截至二零一七年十二月三十一日止年度，本公司憲章文件概無重大變動。

**董事對綜合財務報表之責任**
董事會確認其負責編製本公司各財政年度之財務報表，以真實與公平地反映本公司之財務狀況，並選擇適當的會計政策及貫徹運用。

**與股東及投資者之溝通**
**投資者關係及與股東之溝通**
本公司透過在聯交所及本公司網站刊發公佈、通函、年報及中期報告等，致力於確保可按及時和透明之方式向其股東及投資界提供本公司之全面資訊，使股東及投資界可充份獲悉本公司之發展及資訊。本公司亦定期更新其網站以向股東及投資界提供其他最新資訊。

本公司亦透過股東週年大會及其他股東大會與股東保持對話，藉以與股東進行有效之溝通。

本公司已制定股東通訊政策作為促進與股東之間有效溝通之框架。

**Confidential**

**Qin_00001204**

提名委員會之主要職責為就填補董事會及高級管理層臨時空缺或新增席位之候選人向董事會提出建議。所有董事之委任均由提名委員會根據職位空缺、候選人之能力、經驗、具備之必要技能及資格以及獨立性及持正態度等考慮因素提名。

提名委員會就新董事之提名及委任採納「董事會多元化政策」。提名委員會因應本公司之業務模式及具體需要，按一系列多元化觀點甄選董事人選，包括但不限於性別、年齡、種族、語言、文化背景、教育背景、行業經驗及專業經驗。

提名委員會職權範圍於二零一二年三月獲採納，與企業管治守則之守則條文相符，其副本於本公司及聯交所網站上刊登。

於截至二零一七年十二月三十一日止年度，提名委員會舉行三次會議。會議出席記錄如下：

| 姓名 | 出席次數 |
|---|---|
| 龐鴻（主席） | 3/3 |
| 李福生 | 3/3 |
| 洪嘉禧 | 3/3 |
| 李穎賢（於二零一七年一月十六日辭任） | – |

### 問責及核數
#### 核數師薪酬
截至二零一七年十二月三十一日止年度，有關本集團核數師所提供審核及其他服務之薪酬如下：

| | 二零一七年<br>千港元 |
|---|---|
| 年度審計服務 | 12,500 |
| 其他非審計服務 | 185 |

### 風險管理及內部監控
董事會整體負責本公司的內部監控系統。董事會已制定其內部監控和風險管理系統，同時亦負責檢討及維持充足之內部監控系統，以保障股東權益及本公司資產。

系統旨在管理而非消除未能達成業務目標的風險，而且只能就重大錯誤陳述或損失作出合理而非絕對的保證。本公司已採取由下而上的方法以識別、評估及減低在本公司所有業務層面及各功能範疇上的風險。

本公司的風險管理架構如下：

| 董事會及審核委員會 | 整體風險管理 |
|---|---|
| 財務團隊 | 協助董事會及審核委員會審視及監察主要風險 |
| 經營團隊 | 識別及管理營運層面之風險 |

星美控股集團有限公司　26

Confidential

Qin_00001205



於截至二零一七年十二月三十一日止年度，審核委員會共舉行兩次會議，以考慮截至二零一六年十二月三十一日止財政年度之全年審核報告及截至二零一七年六月三十日止六個月之中期報告。會議出席記錄如下：

| 姓名 | 出席次數 |
|---|---|
| 李穎賢（主席）（於二零一七年一月十六日辭任） | 0/2 |
| 龐鴻 | 2/2 |
| 李福生 | 2/2 |
| 洪嘉禧 | 2/2 |
| 黃瑞洋（主席） | 1/2 |

**薪酬委員會**

自二零零九年七月十四日起，本公司已成立薪酬委員會（「薪酬委員會」），並以書面制定其職權範圍。目前，薪酬委員會由兩名獨立非執行董事李福生先生（主席）及龐鴻先生、以及一名非執行董事洪嘉禧先生組成。

在董事會授予之職權範圍內，薪酬委員會之主要職責包括就本公司有關全體董事及高級管理人員之所有薪酬政策及架構，以及就制定有關薪酬政策確立正式及具透明性之程序向董事會提出建議及意見；參考董事會不時決定之企業目標及目的以檢討所有董事及高級管理人員之具體薪酬待遇；確保概無董事或其任何聯繫人參與釐定本身之薪酬，並建議股東如何就須獲股東批准之董事服務合約的投票。

薪酬委員會職權範圍於二零一二年三月獲採納，與企業管治守則之守則條文相符，其副本於本公司及聯交所網站上刊登。

於截至二零一七年十二月三十一日止年度，薪酬委員會舉行三次會議，以審閱截至二零一七年十二月三十一日止財政年度之董事及高級管理人員之薪酬，並就新任董事之薪酬待遇提出建議。會議出席記錄如下：

| 姓名 | 出席次數 |
|---|---|
| 李福生（主席） | 3/3 |
| 龐鴻 | 3/3 |
| 李穎賢（於二零一七年一月十六日辭任） | 0/3 |
| 洪嘉禧 | 3/3 |

根據企業管治守則第B.1.5條，董事及高級管理層成員於截至二零一七年十二月三十一日止年度之薪酬範圍如下：

| 薪酬範圍 | 人數 |
|---|---|
| 零至1,000,000港元 | 9 |
| 1,000,001港元至2,000,000港元 | – |
| 2,000,001港元至3,000,000港元 | 2 |

有關董事薪酬及五名最高薪僱員須按照上市規則附錄十六披露之進一步詳情載於綜合財務報表附註12。

**提名委員會**

自二零零九年七月十四日起，本公司已成立提名委員會（「提名委員會」），並以書面制定其職權範圍。目前，提名委員會由兩名獨立非執行董事龐鴻先生（主席）及李福生先生，以及一名非執行董事洪嘉禧先生組成。

**Confidential**

Qin_00001206

## 出席記錄及會議

於截至二零一七年十二月三十一日止年度，本公司各董事於各會議之出席記錄列示如下：

| | 股東週年大會 | 董事會會議 | 審核委員會會議 | 薪酬委員會會議 | 提名委員會會議 |
|---|---|---|---|---|---|
| **會議次數** | 1 | 7 | 2 | 3 | 3 |
| **執行董事** | | | | | |
| 魏裕泰(於二零一七年九月五日獲委任) | 0 | 2 | 0 | 0 | 0 |
| 楊榮兵 | 1 | 7 | 0 | 0 | 0 |
| 高國森(於二零一七年九月一日獲委任及於二零一八年三月九日辭任) | 0 | 0 | 0 | 0 | 0 |
| 鄭吉崇 | 0 | 7 | 0 | 0 | 0 |
| 孔大路(於二零一七年四月六日獲委任) | 0 | 0 | 0 | 0 | 0 |
| 潘仁凱(於二零一八年三月九日獲委任) | 不適用 | 不適用 | 不適用 | 不適用 | 不適用 |
| **非執行董事** | | | | | |
| 葉家海(於二零一七年十一月二十八日辭任) | 0 | 0 | 0 | 0 | 0 |
| 洪嘉禧(於二零一七年一月十六日獲委任為獨立非執行董事，並於二零一七年三月十五日調任非執行董事) | 1 | 5 | 2 | 3 | 3 |
| **獨立非執行董事** | | | | | |
| 龐鴻 | 0 | 5 | 2 | 3 | 3 |
| 李福生 | 0 | 2 | 2 | 3 | 3 |
| 黃瑞洋(於二零一七年四月十三日獲委任) | 0 | 3 | 1 | 0 | 0 |
| 李穎賢(於二零一七年一月十六日辭任) | 0 | 0 | 0 | 0 | 0 |

董事會會議及股東大會會議記錄由本公司秘書(「秘書」)保存，並可供本公司董事查閱。本公司各位董事均有權查閱董事會文件及相關資料，亦可在不受限制下取得秘書的意見及享有其服務，並可於需要時自行尋求外界專業意見。

## 遵守董事進行證券交易的標準守則

本公司已就董事進行證券交易採納上市規則附錄十所載之上市公司董事進行證券交易的標準守則(「標準守則」)。經本公司向全體董事作出特定查詢後，全體董事均已確認彼等已全面遵守標準守則。

## 董事委員會

### 審核委員會

自二零零九年七月十四日起，本公司已成立審核委員會(「審核委員會」)，並已按企業管治守則之守則條文以書面制定其職責範圍。審核委員會目前由三名獨立非執行董事黃瑞洋先生(主席)、龐鴻先生及李福生先生以及一名非執行董事洪嘉禧先生組成。

審核委員會之主要角色乃監督本公司年報、賬目以及半年度報告之完整性，並審閱有關報告所載之重大報告判斷；審閱本集團之財務及會計政策及慣例；審閱本集團之財務監控、內部監控及風險管理系統(尤其是其效能)以及就委員會於監督工作中所發現需要注意或作出改善之範圍向董事會提出建議。審核委員會亦定期與本公司外聘核數師舉行會議以討論核數進展及會計事宜。

審核委員會已審閱本集團截至二零一七年十二月三十一日止年度之綜合財務報表，並已就審核、內部監控及財務報告事宜(包括檢討本集團採納之會計常規及原則)，與本公司之核數師進行討論。

0141

星美控股集團有限公司



24

同時，董事之培訓是一個持續過程。根據企業管治守則之守則條文第A.6.5條，董事應參加持續專業培訓，以發展彼等之知識及技能。於截至二零一七年十二月三十一日止年度內，根據適用法例及規例，董事獲提供本公司表現之最新資料，以便董事會全體成員及各董事履行彼等之責任及對本公司業務有適當了解。本公司亦將向董事提供有關上市規則及其他適用監管規定發展及變動之最新資料。

除獲得上市規則及本公司之最新資料外，董事亦曾造訪及會見主要管理人員及本公司於香港或中國之設施，以了解本公司業務及管理及取得相關最新資料。本公司相信，此舉將確保董事對董事會之貢獻為本公司所知及與本公司相關。

截至二零一七年十二月三十一日止年度董事之參與情況如下：

| 董事姓名 | 閱讀監管規定更新資料 | 造訪／會見主要管理人員 |
| --- | --- | --- |
| **執行董事** | | |
| 魏裕泰(於二零一七年九月五日獲委任) | ✓ | ✓ |
| 楊榮兵 | ✓ | ✓ |
| 高國森(於二零一七年九月一日獲委任及 於二零一八年三月九日辭任) | ✓ | ✓ |
| 鄭吉崇 | ✓ | ✓ |
| 孔大路(於二零一七年四月六日獲委任) | ✓ | ✓ |
| 潘仁凱(於二零一八年三月九日獲委任) | 不適用 | 不適用 |
| **非執行董事** | | |
| 葉家海(於二零一七年十一月二十八日辭任) | ✓ | ✓ |
| 洪嘉禧(於二零一七年一月十六日獲委任為獨立非執行董事，並於二零一七年三月十五日調任) | ✓ | ✓ |
| **獨立非執行董事** | | |
| 龐鴻 | ✓ | ✓ |
| 李福生 | ✓ | ✓ |
| 黃瑞洋(於二零一七年四月十三日獲委任) | ✓ | ✓ |
| 李穎賢(於二零一七年一月十六日辭任) | ✓ | ✓ |

**公司秘書**
黃榮舜先生(「黃先生」)於二零一七年七月三十一日獲委任為公司秘書。

黃先生，42歲，在財務會計方面擁有超過18年經驗。黃先生亦具有公司秘書服務經驗。黃先生為香港會計師公會會員以及特許會計師公會資深會員。

公司秘書負責協助執行董事會議事程序，以及董事會成員間的溝通。截至二零一七年十二月三十一日止財政年度，公司秘書已遵守上市規則第3.29條之規定，接受不少於15小時之相關專業培訓。

**董事及主管人員之保險**
本公司已投購適當之董事及主管人員責任保險為本集團之董事及主管人員可能被提起之法律訴訟向彼等提供保障。



**Confidential**

Qin_00001208

# 企業管治報告

管理層負責：

- 管理層經董事會授權並在行政總裁的領導下負責本公司及其附屬公司之日常運作

- 制定企業及業務戰略以供董事會批准

- 執行董事會批准之企業及業務戰略

- 制定投資、收購、合併或分拆計劃

- 執行董事會批准之投資、收購、合併或分拆計劃

## 委任、重選及撤換董事

全體董事(包括獨立非執行董事)須根據公司細則及企業管治守則輪值退任及接受重選。

新任董事將願意根據公司細則於下一次股東特別大會或應屆股東週年大會(以較早者為準)上接受重選。

董事輪值退任及重選之詳情載於本年報第12和13頁。

## 非執行董事

本公司現有四名非執行董事，其中三名為獨立非執行董事。各獨立非執行董事已與本公司訂立為期三年之服務協議。根據本公司之公司細則，全體董事(包括非執行董事)人數之三分之一須於每屆股東週年大會上輪值退任。

本公司有三名獨立非執行董事，佔董事會成員總數超過三分之一，並符合上市規則第3.10條之規定，董事已各自根據上市規則第3.13條向本公司作出年度獨立性確認，而本公司亦認為全體獨立非執行董事均為獨立人士。

三名獨立非執行董事中有一名為專業會計師，而其中兩名具有相關的豐富管理經驗。審核委員會主席黃瑞洋先生擁有根據上市規則第3.10(2)條所規定下的合適會計及財務管理專業知識。

獨立非執行董事憑藉其獨立判斷於董事會內擔當重要角色，其意見對董事會之決策舉足輕重。董事會亦認為，獨立非執行董事可就本公司之業務策略、績效及管理提供獨立意見，因此能維護本公司及其股東之利益。

## 培訓及持續支持

各新任董事於獲委任後將接受入職培訓。有關入職培訓可能包括簡述董事根據上市規則及其他監管規定須負之責任，及／或參觀本公司之業務現場及與本公司管理層舉行會議。此舉可令董事對本公司之業務及營運有更全面了解以及知悉上市公司董事之職責。所有獲委任以填補臨時空缺之董事須於獲委任後之第一個本公司股東大會上接受股東選舉。

## 董事會

本公司由董事會帶領，負責領導及監督本公司事務。

截至本報告日期，董事會包括五名執行董事、一名非執行董事及三名獨立非執行董事，為董事會帶來切合本集團業務需要且均衡之技能及經驗之組合。全體董事之簡歷及彼等之間的關係（如有）在本年報第9至10頁中說明。

本公司已收到全體獨立非執行董事之年度獨立性確認書，確認除年報內所披露者外，彼等與本公司或其附屬公司之間並無任何業務或財務利益關係，且於二零一七年十二月三十一日根據上市規則第3.13條為獨立人士。本公司認為，所有現任獨立非執行董事均為獨立人士。

召開每次董事會定期會議之通告最少會於十四天前發出，而其他董事會會議則會發出合理時間的通知。除就考慮緊急突發事項而緊急召開之董事會會議外，公司秘書最少會於董事會會議前三天向董事傳閱會議議程及輔助文件，使董事能就將予討論之事項作出知情決定。

會議記錄充份詳細記錄包括董事會於會議上所考慮之事項及達致之決定，當中包括持反對意見之董事所提出之任何疑慮。

倘董事的角色及職能有任何變動，載列有關詳情的最新董事名單可於聯交所網站（www.hkexnews.hk）及本公司網站（www.smi198.com）上查閱。

董事會之職能和責任及授權予管理層之職能和責任列示如下：

董事會負責：

- 批准本公司之企業以及業務戰略及目標

- 批准本集團年度預算和財務報告及選擇適當會計政策，以及確保該等政策獲貫徹應用

- 監督本集團之營運及財務表現

- 監察本公司管理層與持份者，尤其與政府、股東等之關係

- 批准本公司投資計劃

- 本集團之重組及分拆

- 監督評估內部監控、風險管理、財務報告及合規是否足夠之程序

- 監察管理層之表現

- 監察本公司採用之企業管治政策

**Confidential**                                                                 **Qin_00001210**

# 企業管治報告

**企業管治概述**

本公司致力維持高水平之企業管治。董事會相信有效的內部控制及企業管治常規對於本集團持續發展以及保障及為股東帶來最大利益至為重要。

本公司已建立了企業治理架構，主要包括公司細則及本公司內部控制手冊，以落實聯交所證券上市規則（「上市規則」）附錄十四所載之企業管治守則（「企業管治守則」）。

**企業管治守則**

於截至二零一七年十二月三十一日止年度內，本公司一直遵守企業管治守則之守則條文（「守則條文」），惟偏離上市規則附錄十四所載之守則條文第A.6.7條及第E.1.2條除外，茲闡述如下：

1. 守則條文第A.6.7條 — 本守則條文規定，獨立非執行董事及其他非執行董事作為與其他董事擁有同等地位的董事會成員，應定期出席委員會會議並積極參與會務，以其技能、專業知識及不同的背景及資格作出貢獻。彼等亦應出席股東大會，對股東的意見有公正的了解。

   所有董事已有定期出席及積極參與會議，向董事會及各自所屬的委員會貢獻其技能、專業知識及不同的背景及資格。

   鄭吉崇先生及孔大路先生（均為執行董事）、葉家海博士（前任非執行董事）、李福生先生、龐鴻先生及黃瑞洋先生（均為獨立非執行董事）因為須處理其他事務而未能出席本公司於二零一七年六月二日舉行之股東特別大會。

   鄭吉崇先生及孔大路先生（均為執行董事）、葉家海博士（前任非執行董事）、李福生先生、龐鴻先生及黃瑞洋先生（均為獨立非執行董事）因為須處理其他事務而未能出席本公司於二零一七年六月二日舉行之股東週年大會（「二零一七年股東週年大會」）。

2. 守則條文第E.1.2條 — 本守則條文規定，主席應出席股東週年大會，亦應邀請審核委員會、薪酬委員會及提名委員會主席出席股東週年大會。

   鄭吉崇先生（執行董事兼前任主席）、李福生先生（獨立非執行董事兼薪酬委員會主席）、龐鴻先生（獨立非執行董事兼提名委員會主席）及黃瑞洋先生（獨立非執行董事兼審核委員會主席）因為須處理其他事務而未能出席二零一七年之股東週年大會。於二零一七年股東週年大會擔任主席之執行董事楊榮兵先生以及非執行董事洪嘉禧先生具備足夠能力及知識於二零一七年股東週年大會解答提問。

除上述者外，董事認為，本公司於報告期內一直遵守企業管治守則所有守則條文。

星美控股集團有限公司

20

Confidential

Qin_00001211

**遵守相關法例及規例**

本集團承認遵守相關規定之重要性以及不遵守適用規則及規例之風險。據董事所深知，於截至二零一七年十二月三十一日止年度內，本集團在各重大方面一直遵守對本集團業務及營運有重大影響之相關法例及規例。

**與僱員、供應商、客戶及其他持份者之關係**

本集團明白本集團業務之成功有賴其主要持份者，包括僱員、客戶、供應商、銀行、監管機構和股東之支持。本集團將繼續確保與各主要持份者維持有效溝通及保持良好關係。

**退休福利計劃**

本集團退休福利計劃詳情載於第79頁之綜合財務報表附註13。

**或然負債**

截至本報告日期，電影院的日常營運會不時產生若干糾紛。本集團現正處理該等事宜。董事認為該等糾紛將不會對本集團的財務業績產生重大不利影響。

於二零一七年十二月三十一日，本集團及本公司概無任何其他重大或然負債。

**報告期間後事項**

於財務狀況報表日期後發生之重大事項的詳情載於第135頁之綜合財務報表附註56。

**五年財務摘要**

本集團過去四個財政年度及截至二零一七年十二月三十一日止年度的業績、資產及負債概要載於本年報第136頁。

**核數師**

德勤 • 關黃陳方會計師行（「德勤」）將於應屆股東大會退任並合資格提出續聘。本公司將於應屆股東週年大會上提呈續聘德勤為本公司核數師之決議案。

**致謝**

本人謹藉此機會感謝各董事、管理層以及全體僱員對本集團不斷進步所作出的貢獻，並感謝股東、客戶及業務夥伴的支持。


代表董事會
*主席*
**魏裕泰**

香港，二零一八年三月二十九日

**Confidential**

Qin_00001212



董事會報告

**本公司為減低風險而採取之措施**

本公司已委聘中國法律顧問審閱結構性合約，以減低結構性合約違反中國適用法律及法規之風險。本公司的中國法律顧問認為，架構合約的安排並無違反適用的現有中國法律及法規。

**無重大變動**

除財務報表附註56所披露者外，截至本報告日期，結構性合約及／或導致採納該等結構性合約的情況概無任何重大變動。

**附屬公司及聯營公司之重大收購及出售**

於二零一七年三月十五日，成都潤運（本公司之附屬公司）與中泰創展控股有限公司、合盛一號（深圳）投資中心（有限合伙）、東証儒鼎（上海）投資合伙企業（有限合伙）及建銀國際（深圳）投資有限公司（統稱為「投資者」）訂立增資協議（「增資協議」），據此，投資者有條件同意出資合共人民幣 2,500,000,000 元（「增資」），以換取成都潤運經擴大股權合共約 15.625%。

成都潤運為本公司之附屬公司，其主要從事經營及管理電影院業務。本公司已根據上市規則第14.44條以本公司控股股東（彼持有獲賦予權利出席股東大會並於會上投票之本公司已發行股本超過50%）書面批准通過增資。於按照增資協議完成增資後，本集團於成都潤運之擁有權將由100%被攤薄至84.375%。由於本集團於成都潤運之擁有權由100%被攤薄至84.375%，根據上市規則第14.29條，增資構成本公司之視作出售事項。

**購買、出售或贖回本公司上市證券**

截至二零一七年十二月三十一日止年度，本公司購買其本身每股面值0.10港元之11,000,000股普通股，每股最高及最低價分別為0.74港元及0.66港元（「股份回購」）。本公司進行股份回購，乃因為董事會認為本公司股份之當時價值持續被低估，董事亦認為本公司當時之財政資源有能力進行股份回購，同時保持穩固財政狀況，供本公司業務在財政年度內持續經營。

於截至二零一七年十二月三十一日止年度內，本公司或其任何附屬公司購買、出售或贖回本公司上市證券之詳細資料於綜合財務報表附註40中披露。

**公眾持股量**

於二零一七年十二月三十一日，根據本公司公開取得的資訊及就董事會所知，本公司一直維持上市規則規定的公眾持股量。

**優先購買權**

公司細則或百慕達法律均無規定本公司須按比例向現有股東提呈發售新股份的優先購買權。

**環境政策及表現**

本集團致力於環境及其營運所在社區之長遠可持續發展。作為負責任之企業，據董事所深知，本集團於截至二零一七年十二月三十一日止年度內一直遵守有關環保之所有相關法例及規例。有關環境及社會責任之進一步詳情，將刊於一份獨立報告內，而該報告將於刊發本報告後三個月內上載至本公司之網站及聯交所之網頁。

**Confidential**

**Qin_00001213**

7. 上海金山星美百倍影院管理有限公司，一間於中國成立之有限公司，由深圳星美聖典文化傳媒集團有限公司及本集團分別持有51%及49%股權；

附註2：

下列中國個人／實體應統稱為「中國權益擁有人」：

1. 覃輝先生，中國公民，持有深圳星美聖典文化傳媒集團有限公司之全部股權及本公司一名控股股東；

附註3：

下列中國實體應統稱為「中國實體」：

1. 深圳星美聖典文化傳媒集團有限公司；

**使用合約安排之原因**
根據外商投資產業指導目錄（二零一五年修訂）、外商投資電影院暫行規定（二零一五年修訂）及其補充條文，外國投資者不得成立任何獨資影院或任何院線公司。對於中外合資影院，外國投資者於註冊股本之投資份額不得超過49%，而對於在北京、上海、廣州、成都、西安、武漢及南京等試點城市成立之中外合資影院，外資方於註冊股本之投資份額不得超過75%。

鑑於上述中國法律及法規以及為行使對於從事本集團所投資電影院經營業務之實體的控制權，需要採用合約安排，以令本公司能夠行使關於電影院經營公司之實際財務及運營控制權，以及獲取電影院經營公司所產生之絕大部分經濟利益回報。

**中國附屬公司之業務對於本集團之重要意義**
本集團透過結構性合約從事電影院經營業務。於截至二零一七年十二月三十一日止年度，來自此分部的收益及資產分別佔本集團總收益及總資產的約88.1%及77.3%。

**與合約安排相關的風險**
*(a)* *中國政府或會在將來認定結構性合約不符合適用的中國法律或法規*
　　董事確認，結構性合約乃屬合法及有效。核數師已對合約安排的該等交易執行程序，並理解本集團擁有參與相關實體可變回報之權利，並有能力通過其對相關實體之權力影響該等回報，故被認為可控制相關實體。

　　此外，無法保證中國政府部門不會於將來解釋或發佈法律及法規，導致結構性合約被認定違反當時的中國法律。

*(b)* *結構性合約所提供之控制或不如直接擁有股權有效*
　　中國法律顧問表示，結構性合約遵守當前生效之中國法律，可根據現行中國法律執行，以及若中國權益擁有人或中國實體出現任何違反或違約行為，星美匯可向彼等之任何一員採取法律行動。然而，結構性合約向本公司提供之控制權及保障並未給予本公司如直接有其中國附屬公司所擁有的合法性及實際擁有權，本公司需依賴中國法律體系執行此等安排。

**Confidential**

**Qin_00001214**

(x) 產品研發；

(xi) 系統維護；及

(xii) 其他與中國實體業務有關的管理諮詢服務。

**(b) 獨家購買權協議**

星美匯、中國權益擁有人及中國實體於二零一六年六月三十日訂立獨家購買權協議（「獨家購買權協議」），據此中國權益擁有人將不可撤銷地共同及個別授予星美匯獨家權利，可於任何時間一次或多次按中國相關法律及法規允許的最低價格收購中國實體的股權。

**(c) 股權質押協議**

星美匯、中國權益擁有人及中國實體於二零一六年六月三十日訂立股權質押協議（「股權質押協議」），據此中國權益擁有人同意向星美匯質押其於中國實體的股權作為抵押。星美匯有權於發生任何違約事件後處置質押股權，違約事件包括(i)中國權益擁有人違反獨家購買權協議、股東投票權委託協議或股權質押協議之條款或條件、或中國權益擁有人於獨家購買權協議、股東投票權委託協議或股權質押協議之聲明及擔保存在任何重大錯誤或虛假陳述；及(ii)中國實體違反獨家業務合作協議、獨家購買權協議、股東投票權委託協議或股權質押協議之條款或條件、或中國實體於獨家業務合作協議、獨家購買權協議、股東投票權委託協議或股權質押協議之聲明及擔保存在任何重大錯誤或虛假陳述。

**(d) 股東投票權委託協議**

星美匯、中國權益擁有人及中國實體於二零一六年六月三十日訂立股東投票權委託協議（「股東投票權委託協議」），據此中國權益擁有人不可撤銷及無條件同意將下列各項其於中國實體之全部投票權委託予星美匯之董事、繼承人或接管人：

附註1：

下列中國實體應統稱為「中國附屬公司」：

1. 成都潤達文化傳播有限公司，一間於中國成立之有限公司，由深圳星美聖典文化傳媒集團有限公司及星美國際影院有限公司分別持有43.03%及41.34%股權；

2. 北京望京星美國際影城管理有限公司，一間於中國成立之有限公司，由深圳星美聖典文化傳媒集團有限公司及本集團分別持有51%及49%股權；

3. 北京回龍觀星美國際影城管理有限公司，一間於中國成立之有限公司，由深圳星美聖典文化傳媒集團有限公司及本集團分別持有51%及49%股權；

4. 北京名翔國際影院管理有限公司，一間於中國成立之有限公司，由深圳星美聖典文化傳媒集團有限公司及本集團分別持有51%及49%股權；

5. 天津星美影城管理有限公司，一間於中國成立之有限公司，由深圳星美聖典文化傳媒集團有限公司及本集團分別持有51%及49%股權；

6. 上海星美樂英影院管理有限公司，一間於中國成立之有限公司，由深圳星美聖典文化傳媒集團有限公司及本集團分別持有51%及49%股權；

0145

Confidential

Qin_00001215



**董事於合約之權益**

本公司、其附屬公司、其同系附屬公司或其控股公司概無訂立於年末或年內任何時間仍然存續、對本集團業務而言屬重大，且本公司董事於當中直接或間接擁有重大權益之合約。

**1. 管理合約**

年內概無訂立或存續有關本集團全部或絕大部分業務之管理及行政之合約。

**2. 獲准許彌償條文**

在適用法律規限下，公司細則訂明，本公司各董事及其他主管人員均有權就彼等或彼等任何一人因於彼之執行及履行職務而可能產生（或與此有關）之所有訴訟、訟費、支出、損失、損害及開支獲得本公司之彌償，免受損害。有關條文於截至二零一七年十二月三十一日止財政年度期間生效，並於本報告日期仍然生效。本集團已於全年內為董事及主管人員投購及保留責任保險。

**主要客戶及供應商**

於截至二零一七年及二零一六年十二月三十一日止年度內，概無貢獻超過本集團之收益10%之主要客戶。

**合約安排**

**結構性合約**

本公司之間接全資附屬公司北京星美匯餐飲管理有限公司（「星美匯」）、中國權益擁有人（定義見下文附註2）及中國實體（定義見下文附註3）之間或與其他已訂立一系列結構性合約（「結構性合約」），旨在向星美匯提供關於中國附屬公司（定義見下文附註1）財務及運營政策之實際控制權及（在中國法律及法規允許之範圍內）收購中國附屬公司股權之權利。

**(a) 獨家業務合作協議**

星美匯與中國實體於二零一六年六月三十日訂立獨家業務合作協議（「獨家業務合作協議」），據此中國實體須委任星美匯向中國實體獨家提供綜合劇場管理及支持、技術服務及諮詢服務，包括但不限於：

(i) 企業經營管理；

(ii) 業務支持；

(iii) 業務相關技術服務；

(iv) 互聯網支持；

(v) 業務諮詢；

(vi) 知識產權許可；

(vii) 設備或租賃；

(viii) 市場諮詢；

(ix) 系統集成；



**Confidential**

Qin_00001216

## 董事會報告

於截至二零一七年十二月三十一日止年度內，若干本公司現任執行董事及其他合資格參與者擁有可認購本公司股份之購股權之權益。有關權益及本公司所授出購股權之變動詳情載列如下：

| | 授出日期 | 行使期 | 於二零一七年一月一日之結餘 | 年內已授出 | 年內已行使 | 年內已失效 | 於二零一七年十二月三十一日之結餘 | 每股行使價（港元） |
|---|---|---|---|---|---|---|---|---|
| 魏裕泰 | 二零一七年十月十二日 | 附註1 | 0 | 6,000,000 | – | – | 6,000,000 | 4.37 |
| 楊榮兵 | 二零一七年十月十二日 | 附註1 | 0 | 7,000,000 | – | – | 7,000,000 | 4.37 |
| 高國森 | 二零一七年十月十二日 | 附註1 | 0 | 6,000,000 | – | – | 6,000,000 | 4.37 |
| 鄭吉崇 | 二零一七年十月十二日 | 附註1 | 0 | 4,500,000 | – | – | 4,500,000 | 4.37 |
| 孔大路 | 二零一七年十月十二日 | 附註1 | 0 | 7,000,000 | – | – | 7,000,000 | 4.37 |
| 其他合資格參與者 | 二零一七年十月十二日 | 附註1 | 0 | 53,500,000 | – | – | 53,500,000 | 4.37 |

附註：

[1] 可於二零一七年十月十二日起至二零一九年十月十二日（首尾兩日包括在內）止行使，惟每名承授人於行使期內每年可予行使於二零一七年十月十二日授出之購股權數目最多不得超過該名承授人所獲授購股權之一半。

### 主要股東權益

於二零一七年十二月三十一日，據董事所得悉，按照證券及期貨條例第336條規定須予存置之登記冊所示，下列各方（非本公司董事及主要行政人員）擁有本公司已發行股本5%或以上權益：

| 主要股東 | 實益擁有人 | 公司權益 | 家族權益 | 好倉 | 淡倉 | 佔已發行股份總數百分比 |
|---|---|---|---|---|---|---|
| 覃輝先生（附註1及2） | 1,767,025,513 | 1,285,828 | – | 1,767,025,513 | – | 65.01% |

附註：

1. 覃輝先生實益擁有1,767,025,513股股份。

2. 覃輝先生擁有Strategic Media International Limited（「SMIL」）全部權益，因此被視作於SMIL所持有之1,285,828股股份中擁有權益。

除本文所披露者外，本公司於二零一七年十二月三十一日並不知悉有任何其他人士（本公司董事除外）於股份及相關股份中擁有已載入本公司根據證券及期貨條例第336條存置之登記冊內之權益或淡倉。

### 董事於競爭性業務之權益

於本年度結束時或截至二零一七年十二月三十一日止年度內任何時間，除本集團業務外，本公司董事並無於任何直接或間接參與本集團業務競爭或可能構成競爭之業務中擁有根據上市規則第8.10條須予披露之重大權益。

0146

星美控股集團有限公司 

Confidential

Qin_00001217

董事之所有年度薪酬待遇乃根據彼等對本公司所作出的貢獻及在本公司之職責，由雙方公平協商後釐定。擬在應屆二零一八年股東週年大會上重選之董事概無訂有不得於一年內由本公司或其任何附屬公司終止且毋須作出賠償（一般法定賠償除外）服務合同。有關董事酬金之詳情載於綜合財務報表附註12。

**董事及主要行政人員之權益**

於二零一七年十二月三十一日，本公司董事及主要行政人員及彼等聯繫人士於本公司或其任何相聯法團（定義見證券及期貨條例（「證券及期貨條例」）第XV部）之股份及相關股份中擁有本公司根據證券及期貨條例第352條須存置之登記冊所記錄之權益及淡倉，或根據上市規則附錄十所載之上市發行人董事進行證券交易之標準守則（「標準守則」）須知會本公司及香港聯合交易所有限公司（「聯交所」）之權益及淡倉如下：

**於本公司股份及相關股份之好倉**

| 董事姓名 | 身份 | 登記股東 | 相關權益 | 權益總計 | 持股概約百分比 |
|---|---|---|---|---|---|
| 魏裕泰先生<br>（於二零一七年<br>九月五日獲委任） | 實益擁有人 | – | 6,000,000 | 6,000,000 | 0.22 |
| 楊榮兵先生 | 實益擁有人 | 1,066 | 7,000,000 | 7,001,066 | 0.26 |
| 鄭吉崇先生 | 實益擁有人 | – | 4,500,000 | 4,500,000 | 0.17 |
| 孔大路先生<br>（於二零一七年<br>四月六日獲委任） | 實益擁有人 | – | 7,000,000 | 7,000,000 | 0.26 |
| 高國森先生<br>（於二零一七年<br>九月一日獲委任及<br>於二零一八年三月九日辭任） | 實益擁有人 | – | 6,000,000 | 6,000,000 | 0.22 |

除上文所披露者外，於二零一七年十二月三十一日，概無董事或主要行政人員或彼等之聯繫人於本公司、附屬公司或其任何相關法團（定義見證券及期貨條例第XV部）之任何股份、相關股份或債權證中擁有根據證券及期貨條例第352條須予存置之登記冊中所記錄或根據標準守則另行知會本公司及聯交所之任何權益或淡倉。

**購股權計劃**

本公司於二零零九年九月三十日採納新購股權計劃。購股權計劃的目的為令董事會可酌情授予購股權予包括本公司董事在內之合資格參與者，作為彼等對本集團作出之貢獻之鼓勵或獎勵。計劃詳情載於綜合財務報表附註41。

Confidential

Qin_00001218

**股本及儲備**

於二零一七年十二月三十一日，本公司已發行股份數目合共為2,720,041,916股。本公司法定及已發行股本之變動載於第108頁之綜合財務報表附註40。

本集團儲備之變動載於第38至39頁之綜合權益變動表，而本公司之儲備變動載於第126至129頁之綜合財務報表附註51。

**物業、廠房和設備**

本集團於截至二零一七年十二月三十一日止年度的物業、廠房和設備詳情載於第80頁之綜合財務報表附註16。

**董事及董事服務合同**

本公司於截至二零一七年十二月三十一日止年度及截至本報告日期的董事如下：

**執行董事：**

| | |
|---|---|
| 魏裕泰先生 | *(主席)*（於二零一七年九月五日獲委任） |
| 楊榮兵先生 | *(行政總裁)* |
| 高國森先生 | （於二零一七年九月一日獲委任及於二零一八年三月九日辭任） |
| 鄭古崇先生 | |
| 孔大路先生 | （於二零一七年四月六日獲委任） |
| 潘仁凱先生 | （於二零一八年三月九日獲委任） |

**非執行董事：**

| | |
|---|---|
| 葉家海博士 | （於二零一七年十一月二十八日辭任） |
| 洪嘉禧先生 | （於二零一七年一月十六日獲委任為獨立非執行董事，並<br>於二零一七年三月十五日調任非執行董事） |

**獨立非執行董事：**

| | |
|---|---|
| 龐鴻先生 | |
| 李福生先生 | |
| 李穎賢先生 | （於二零一七年一月十六日辭任） |
| 黃瑞洋先生 | （於二零一七年四月十三日獲委任） |

根據本公司之公司細則（「公司細則」）第86(2)條、第87(1)條及第87(2)條，魏裕泰先生及潘仁凱先生於二零一七年六月二日舉行的上屆股東週年大會後獲董事會委任為本公司執行董事。彼等均將於本公司應屆二零一八年股東週年大會上退任，且合資格並願意接受重選。

本公司已接獲各獨立非執行董事根據香港聯合交易所有限公司證券上市規則（「上市規則」）第3.13條就其獨立性發出的年度確認書。本公司認為李福生先生及黃瑞洋先生為獨立人士。董事會認為，雖然龐鴻先生出任獨立非執行董事超過九年，龐鴻先生符合上市規則第3.13條所載之獨立身份準則，因為董事會認為其服務年限並不會妨礙龐先生於履行獨立非執行董事職責及責任時作出的獨立判斷。董事會認為彼為獨立人士並相信因彼對本集團業務及事務的熟悉及經驗，彼將繼續為董事會作出貢獻。三名獨立非執行董事各自與本公司簽訂了為期三年的服務合約。該服務合約可由一方提前三個月通知另一方而終止。

Confidential

# 董事會報告

董事會欣然提呈其報告及本集團截至二零一七年十二月三十一日止年度之經審核綜合財務報表。

## 主要業務

本公司為一間投資控股公司。其主要附屬公司之主要業務為在中國經營電影院。本公司於二零一七年十二月三十一日之主要附屬公司及聯營公司之詳情已分別列於綜合財務報表第121至125頁及第86頁的附註50及20。於截至二零一七年十二月三十一日止年度，本公司及本集團主要業務之性質並無重大變動。

## 業務回顧及表現

於回顧年度之本集團之業務回顧及有關本集團表現之討論與分析、有關本集團未來業務發展之討論、本公司之業務展望、本集團可能面臨之潛在風險及不確定因素以及於截至二零一七年十二月三十一日止年度內發生之影響本公司之重要事件，載於本年報第3頁至第4頁之「主席報告」一節、第5頁至第8頁之「管理層討論及分析」一節以及本節「主要風險及不確定因素」一段。於截至二零一七年十二月三十一日止年度內之本集團之表現分析採用財務表現指標作出，載於本年報第5頁至第8頁「管理層討論及分析」一節。有關本公司與其僱員、供應商及客戶之關係之敘述載於本年報本節「與僱員、供應商、客戶及其他持份者之關係」一段。

## 主要風險及不確定因素

風險及不確定因素將影響本集團之財務及經營。下文乃部分本集團已識別之主要風險及不確定因素。除下文所示者外，或許還存在其他不為本集團所知或目前可能並不重大然而未來可能轉為重大之風險及不確定因素。

### 業務風險

中國一線城市之電影院數量已趨飽和，而其他城市之發展步伐均不盡相同。本集團仍處於增長階段，倘本集團未能於現在市場正迅速發展之時於理想之位置開設新電影院，本集團市場佔有率或未能如預期上升。另外倘若電影口碑未如理想，未能成功吸引觀眾入座，票房收入或因此而減少而影響本集團整體表現。此外，線上線下零售業正面對激烈競爭。我們的增值業務——星美生活之表現或會受競爭者之定價及市場策略所影響。

### 流動資金風險

流動資金風險指本集團可能未能應付到期財務責任之潛在威脅。本公司將繼續監督本集團之現金流量，確保有充裕資金應付到期之任何財務負債。

### 業績及分派

本集團於截至二零一七年十二月三十一日止年度的業績載於第35頁的綜合損益及其他全面收入報表。董事不建議派付截至二零一七年十二月三十一日止年度之末期股息(二零一六年：每股普通股1.32港仙)。

**Confidential**

Qin_00001220

## 董事履歷資料

### 非執行董事

**洪嘉禧先生**，62歲，於二零一七年一月十六日獲委任為獨立非執行董事，並於二零一七年三月十五日調任為非執行董事。彼於二零一六年六月卸任德勤中國主席職位。於任期內，彼代表德勤中國擔任德勤全球理事會及管治委員會成員。

洪先生服務德勤中國逾31年。憑藉在首發上市、企業合併及戰略收購以及企業融資方面之資深專業經驗，彼於香港及中華人民共和國為跨國集團、上市公司及各類企業提供諮詢建議。彼亦為香港聯交所主板及GEM上市領域之專家。最近，彼憑藉其作為香港會計專才之豐厚經驗，獲中華人民共和國財政部委任為會計諮詢專家。

洪先生在成為主席之前曾於德勤擔任多個領導職位。彼曾出任德勤深圳辦公室及廣州辦公室之審計團隊領導及辦公室主管合夥人。彼亦為中國管理團隊成員。其後，洪先生出任華南區審計主管合夥人兼華南區副主管合夥人。

洪先生自二零零四年起擔任深圳註冊會計師協會榮譽會員，其後於二零零九年起擔任廣州註冊會計師協會顧問；於二零零六年至二零一二年期間，彼出任深圳市羅湖區政治協商委員會委員。

洪先生為國美金融科技有限公司（股份代號：628）、鎮科集團控股有限公司（股份代號：859）及勒泰商業地產有限公司（股份代號：112）之獨立非執行董事。彼亦為達利國際集團有限公司（股份代號：608）之非執行董事，上述公司的股份均在聯交所主板上市。彼亦為盛業資本有限公司（股份代號：8469）之獨立非執行董事，該公司的股份在聯交所GEM上市。

### 獨立非執行董事

**龐鴻先生**，63歲，於二零零四年九月二十八日獲委任為獨立非執行董事。龐先生曾在中國多家企業及政府部門工作逾20年。彼對中國投資環境具有相當豐富的知識，對中國公司管理擁有豐富經驗。在美國研修三年後，彼前往香港進一步發展其事業。彼目前受聘提供私人管理諮詢服務。龐先生現為邵氏兄弟控股有限公司（股份代號：953）及中國海景控股有限公司（股份代號：1106）的獨立非執行董事，該兩家公司的股份均在聯交所主板上市。

**李福生先生**，56歲，於二零一三年十月十日獲委任為獨立非執行董事。李先生為香港大公報北京辦事處辦公室主任。李先生自一九九四年加入大公報以來，參與大公報眾多大型新聞報導及重要活動。彼曾多次參與中國國內重要活動的報導，如連續20年參與全國兩會、北京奧運會等活動。李先生於傳媒運作方面擁有豐富的經驗及人脈。

**黃瑞洋先生**，47歲，於二零一七年四月十三日獲委任為獨立非執行董事。黃先生於香港公共會計、公司秘書、稅務、以及財務顧問及管理具有逾20年經驗。彼為香港會計師公會之執業及資深會員和香港證券及投資學會之會員。黃先生為Singapore eDevelopment Limited（股份代號：40V）之獨立非執行董事，其股份於新加坡證券交易所有限公司Catalist板上市。

**Confidential**

**Qin_00001221**

# 董事履歷資料

**執行董事**

**魏裕泰先生**，40歲，於二零一七年九月五日獲委任為執行董事兼董事會主席。彼於新加坡的私人銀行及財富管理領域具有約十五年工作經驗及豐富知識。魏先生於一九九九年於倫敦大學(校外)獲經濟學學士學位(主修銀行及金融)。魏先生自二零一五年起擔任摩根士丹利亞洲有限公司機構股票部私人財富管理之執行董事，主要服務超高資產淨值人士、企業及機構。於二零零三年至二零一五年期間，魏先生於Citibank Singapore Limited工作，最後職位為全球零售銀行之elite plus客戶關係經理。

**楊榮兵先生**，38歲，於二零一三年五月三日獲委任為執行董事，並於二零一七年四月六日獲委任為本公司行政總裁。彼為中央財經大學工商管理碩士。楊先生於二零一零年加入本集團，為執行董事兼本公司的副總裁。楊先生主要負責制定公司策略，同時監督一系列的主要營運部門，包括財務、投資、人力資源及法律部門。楊先生於投資及財務方面具有豐富的經驗，精通影視傳媒行業融資市場及稅務規劃等相關環節，並且是運用各種創新金融工具以支持業務迅速增長及資本架構持續改善的專家。楊先生先後在北京金泰集團有限公司、國家環境保護部對外合作中心、歐洲商業開發投資管理中心等國有企業及機構擔當不同的財務及投資相關職位，在財務管理、資金籌劃、內控管理、投資融資及資本運作策略方面積累豐富的經驗。

楊先生為中國力鴻檢驗控股有限公司(股份代號：1586)的獨立非執行董事，該公司的股份在香港聯合交易所有限公司(「聯交所」)主板上市。

**鄭吉崇先生**，51歲，於二零一一年十一月二十二日獲委任為執行董事。彼持有北京清華大學高級工商管理碩士學位及台灣大學學士學位，並獲得第44屆中國國家文藝獎章與榮譽。彼亦曾任北京國美在線有限公司首席執行官及東森集團董事、東森電視及東森購物(美洲)總經理、東森公關公司總經理及東森電視新聞台台長。鄭先生在文化傳媒及零售方面擁有豐富的管理經驗。

**孔大路先生**，45歲，於二零一七年四月六日獲委任為執行董事。彼於香港及中國大陸之銀行、企業融資及投資領域擁有約20年工作經驗及豐富知識。孔先生於一九九四年取得中國武漢大學經濟學學士學位(主修國際金融)。

孔先生於一九九四年至一九九七年間為華夏銀行股份有限公司總部國際商業部外匯經理及外匯交易員。於一九九七年至二零零七年間，孔先生亦曾分別為中國民生銀行股份有限公司擔任高級管理人員，由二零零七年起，孔先生任新策(香港)投資發展有限公司(於香港註冊成立之股權投資公司)董事。於二零零八年至二零一一年間，孔先生亦曾為海通証券股份有限公司(上海證券交易所股份號碼：600837，為上海證券交易所上市公司)之董事。孔先生於二零一四年六月七日至二零一八年三月九日為星美文化旅遊集團控股有限公司(股份代號：2366)之執行董事，該公司之股份於聯交所主板上市。

**潘仁凱先生**，38歲，於二零一八年三月九日獲委任為執行董事。彼具有逾18年股權投資研究、企業融資、投資銀行、資產管理以及上市公司方面之經驗。彼於紐約大學斯特恩商學院獲環球金融科學碩士學位。

**Confidential**

Qin_00001222

管理層討論及分析

於二零一七年十二月三十一日，負債比率（總借款（包括可換股票據）除以本公司資產總值）由二零一六年的46.1%減少至33.0%，主要原因由於商譽、進度款項及已付按金分別增加約1,559,000,000港元、約41,000,000港元及約139,000,000港元。

本集團的資金主要來自股本、儲備、債券、銀行借款及其他借款。

**資本支出**
年內，本集團的租賃土地及樓宇、租賃裝修及電影院設備支出增加約690,000,000港元。本集團亦以總代價約1,719,000,000港元收購多間附屬公司。上述支出主要與本集團於中國各地收購及興建電影院有關。

**或然負債**
截至本報告日期，電影院的日常營運會不時產生若干糾紛。本集團現正處理該等事宜。董事認為該等糾紛將不會對本集團的財務業績產生重大不利影響。

於二零一七年十二月三十一日，本集團及本公司概無任何其他重大或然負債。

**匯率波動風險及相關對沖**
本集團的貨幣資產及交易主要以港元及人民幣計值。於本年度，人民幣兌港元的匯率相對穩定。於本年度，本集團並無利用金融工具進行對沖。本集團持續監察人民幣兌風險，並將採取必要的程序以合理的成本降低匯率波動風險。

**資產抵押**
於報告期末，本集團有以下資產抵押：

[a] 本集團位於中國價值約為205,057,000港元（二零一六年：24,456,000港元）的樓宇已抵押作為本集團所獲授銀行借款之抵押品。

[b] 本集團指定由某些附屬公司於中國經營之電影院票房收入和應收款項交付金融機構，作為未來五年償還二零一五年財政年度、二零一六年財政年度信託貸款（「信託貸款」）及二零一七年財政年度其他貸款之抵押品。

[c] 本集團已將資產抵押證券安排所述之次級證券質押為信託貸款之抵押品。

[d] 於二零一七年十二月三十一日，於一間附屬公司之全部股權及持作買賣投資已用作授予本集團之保證金賬戶融資之或然抵押品。

**僱員**
除聯營公司的員工外，於二零一七年十二月三十一日，本集團有約6,400名全職僱員（包括董事，但不包括兼職員工）。本集團按照市場現行薪金水平、個別員工功績及表現制定有關僱員的薪酬及福利方案。

## 財務回顧

### 本年度之營業額、收益及溢利

截至二零一七年十二月三十一日止年度，總收益約3,789,000,000港元(二零一六年：約3,351,000,000港元)，較二零一六年增長13.1%。

年內，集團透過收購及自建新影院持續擴張。集團擁有之戲院數目及屏幕數目均顯著增加，令集團核心業務錄得增長。

經濟好轉，帶動企業增長時亦令經營成本持續上升，加上部份融資於二零一六年後期方告完成，年內的銷售成本及財務費用綠得較大增幅。部份新收購戲院由於需時間整合，營業額增幅未如管理層預期提升。因此本年於新收購影院之商譽進行較大之撥備。年內集團就商譽作出約347,000,000港元之減值(二零一六年：約47,000,000港元)。另年內就其他資產作出約68,000,000港元之減值。

另本集團之附屬公司星美文化旅遊控股集團有限公司(「星美文旅」)(上市代號：2366)由於縮減投資電影規模引致該部份業務錄得虧損。

年內除稅後虧損約267,000,000港元(二零一六年：溢利407,000,000港元)。撇除以上商譽及其他資產之減值，本年度錄得溢利約149,000,000港元。

截至二零一七年十二月三十一日止年度，分部收益及溢利主要來自電影院業務。

與二零一六年同期比較，截至二零一七年十二月三十一日止年度的電影院業務收益增加約76,000,000港元，受商譽減值影響，溢利由二零一六年約739,000,000港元下降約86%至二零一七年約104,000,000港元。

年內已就其他資產作出約68,000,000港元減值。

與此同時，零售業務分部錄得收益約624,000,000港元。於報告期間，本分部錄得溢利約27,000,000港元(二零一六年：溢利23,900,000港元)。

### 銷售、推廣及行政開支

銷售、推廣及行政開支共增加12.7%，乃主要由於截至二零一七年十二月三十一日止年度內收購及建成的電影院數目增加所致。

### 財務費用

財務費用主要為銀行及其他貸款的利息約262,268,000港元、債券的利息約176,397,000港元、可換股票據的利息約105,434,000港元、證券保證金融資的利息約32,755,000港元，以及融資租賃費用約15,667,000港元。

### 財務資源及流動資金

於二零一七年十二月三十一日，本集團的淨流動負債約3,050,000,000港元。本集團自二零一一年一直維持賺取經營溢利及錄得經營現金流入。集團不時與潛在投資者接觸，以不同形式擴充本集團的營運資金及長期發展用之資本；加上過往本集團成功組織集資活動，董事相信，本集團將擁有充裕現金資源以滿足其未來營運資金需要。

**Confidential**

Qin_00001224

**星美生活**

年內，星美不斷通過創新與誠意回饋會員，截至二零一七年十二月三十一日新會員計劃的會員人數已經累計達四千萬。同時，本集團積極搭載「新零售」平台，依託旗下365家影院和四千萬會員進行戰略升級，創造出更多產值。本集團通過雲平台對會員需求進行即時解析，從「猜會員喜歡」到「知道會員需求」，繼而逐步引入更多的戰略合作夥伴，不斷豐富自身的產品平台，並借助大數據、人工智能等技術手段，對星美消費生態圈實現再造重塑，實現消費場景升級，隨著數碼3C體驗館、母嬰生活用品館的逐步落地，基於影院場景的體驗式消費模式已初現端倪。

於年內，本集團於零售店銷售貨品產生收益約624,000,000港元，較二零一六年的383,000,000港元增加62.9%，這分部溢利則上升13.2%至約27,000,000港元（二零一六年：23,900,000港元），反映本集團「新零售」的策略已經逐步收成。

**前景**

二零一八年春節期間（二零一八年二月十六日至二零一八年二月二十二日），中國電影票房達到人民幣63.7億元，較去年同期大升近七成，受惠「史上最強春節檔」。二零一八年二月份內地電影票房史無前例突破人民幣100億元，單月電影票房躍居全球第一，甚至有業內人士大膽預測，二零一八年中國電影市場全年票房將突破人民幣700億元大關。數據顯示觀賞電影已經成為中國一種普遍的娛樂方式，而隨著人均收入不斷提高，市民對文化娛樂的消費將會持續增長。預期電影院業務將會繼續受惠。

近年國家政府出台一系列措施，包括關於支持電影發展若干經濟政策的通知、國家電影事業發展專項資金徵收使用管理辦法》及《電影產業促進法》等，以規範和扶持電影產業發展，同時，伴隨新消費升級與大眾娛樂消費觀念的轉變，預期將帶動電影關聯產業發展。

展望二零一八年，星美將繼續積極佈局影院擴張，同時重點加大傳統影院的升級改造，致力打造「新營銷、新零售、新發展」的影院新生態，攜手各方合作夥伴共同打開影院發展的嶄新局面。

未來，星美會繼續以會員核心需求為經營方向，借助現代化物流手段和平台化體驗模式，輔以智慧化科技創新，將更多成功模式進行複製，打造星美所特有的「新零售」模式。未來，觀影將只是星美業務鏈條上的基礎業務之一，而「星美生活」新零售平台將會引領傳統影院進行全要素、多維度、系統化的創新變革。

0150



**Confidential**

Qin_00001225

# 管理層討論及分析

## 行業回顧

根據中華人民共和國（「中國」）國家新聞出版廣電總局電影局統計數據，中國繼續為世界第二大電影市場，截至二零一七年十二月三十一日止年度（「年內」或「報告期」），中國電影票房收入為人民幣559.1億元，按年增長13.5%，是中國電影年度總票房首次突破人民幣550億元大關；城市觀影人次為16.2億，相比去年同期的13.7億增長18.1%。二零一七年全國影院達9,169家，全國新增銀幕9,597塊，銀幕總數逾50,000塊，穩居全球電影銀幕最多的國家。

根據國家統計局數據，二零一七年中國人均GDP約人民幣59,000元，全國居民人均可支配收入人民幣25,974元，按年實際增長7.3%，年內全國居民人均消費支出人民幣18,322元，按年實際增長5.4%，其中教育文化娛樂消費支出為人民幣2,086元，按年增長8.9%，佔人均消費支出的比重為11.4%。收入水平提升帶動居民對文化娛樂消費的需求增長，隨著消費升級推動，內地電影行業具有龐大發展潛力，尤其電影衍生品市場，除了傳統的院線廣告及商品銷售，未來圍繞電影開發的遊戲、餐飲、零售等收入將不斷提升，甚至有望超越票房收入。

## 業務回顧

年內本集團的經營收益約3,789,000,000港元，相較二零一六年約3,351,000,000港元增長13.1%。毛利約978,000,000港元（二零一六年：約1,207,000,000港元），毛利率為25.8%（二零一六年：36.0%）。年內虧損為約267,000,000港元（二零一六年：年內溢利407,000,000港元）。

## 電影院業務

於截至二零一七年十二月三十一日止年度，本集團的電影院業務分部產生收益約3,027,000,000港元，較二零一六年同期的2,951,000,000港元增加2.6%。

這分部溢利則減少86.0%至約104,000,000港元（二零一六年：739,000,000港元），主要由於年內錄得商譽減值347,000,000港元及其他資產減值約68,000,000港元。

截至二零一七年十二月三十一日，本集團在中國擁有約365家影院、2,290塊屏幕，相對截至二零一六年十二月三十一日的260家電影院約1,820塊屏幕有顯著增長。本集團將繼續依託行業優勢，並推動「一縣一院」的策略，即於中國每一個縣營運至少一家電影院，以抓緊行業機遇，預計於二零一八年底，本集團全國影院總數將為約450家。

年內，本集團的資本及財務結構得到進一步優化，旗下子公司成都潤運文化傳播有限公司（「成都潤運」）完成了人民幣22.1億元的增資，公司資金得到有效補充。本次增資所得將用作建設、收購新電影院及償還本集團部分帶息債務。

Confidential

Qin_00001226



主席報告

影票，並在星美票務APP完成購票選座。而星美生活新零售業務的持續發力，更是打破了傳統影院「影票＋爆米花＋可樂」的單一模式，同樣利用會員數據，對會員觀影頻次、客單價及消費行為等進行全面分析，星美生活新零售依靠線下場景優勢，豐富的產品內容及影院周邊2公里的免費配送服務，為會員提供個性化的定制服務。

依託集團旗下365家影院和4,000萬會員，二零一八年，星美集團將繼續強化主營業務，運用科技創新手段，深化「新零售」模式，全力開創中國影院的2.0新時代，助推中國文化產業創新世代。

*主席*
**魏裕泰先生**

香港，二零一八年三月二十九日

0151



**Confidential**

Qin_00001227

# 主席報告

致各位股東：

本人謹代表星美控股集團有限公司（「本公司」）董事（「董事」）會（「董事會」）欣然提呈本公司及其附屬公司（統稱「本集團」）截至二零一七年十二月三十一日止年度的全年業績。

近年中國內地的電影市場發展可謂一日千里，根據中華人民共和國（「中國」）國家廣播電視總局電影局統計數據，截至二零一七年十二月三十一日止年度（「年內」），全國影院銀幕總數已經超過5萬塊，數量超越美國，穩居世界第一，而電影總票房收入按年增長13.5%至人民幣559.1億元，是中國電影年度總票房首次突破人民幣550億元大關，繼續為世界第二大電影市場。踏入二零一八年，中國內地電影市場更迎來「史上最強春節檔」，帶動二月份票房突破人民幣100億元，躍居單月票房全球第一，相信二零一八年整體票房增長樂觀。

## 升級改造舊影院　開創中國影院2.0新時代

中國電影市場快速增長，影院競爭愈來愈激烈，由於本集團進入國內影院行業較早，個別老舊影院的線下場景已不能滿足消費者的品質需求，升級改造迫在眉睫。針對老舊影院，本集團於二零一七年啟動升級改造計劃，並擬在二零一八年完成旗下影院的線下場景升級，包括拓展影院設備、線下場景及會員服務，力圖開創中國影院的2.0新時代。

截至二零一七年十二月三十一日，星美集團旗下影院數量達365家，銀幕總數超過2,290塊，遍佈中國30個省、直轄市、自治區、140餘個城市，二零一八年本集團將繼續致力影院擴張佈局，計劃至年底透過自營及收購形式擁有400家影院。

## 基於會員大數據　佈局影院新生態

為了擺脫行業同質化競爭，星美早於二零一一年開始了基於場景和管道的生態化佈局，為「新營銷、新零售、新發展」的影院新生態打下了基礎。二零一八年，星美將於旗下100個影院進行新的營銷場景改造，在拓展經營範圍和非票房收入上持續發力。

現時公司已有約4,000萬會員，正在由經營影院向經營會員進行模式轉變。本集團擴展了與會員相關的生態業務，各業務之間現時已經相互打通，一個會員身份便能夠享用星美通信、星美生活和星美票務的全業態服務。在二零一七年，星美集團針對會員戰略產品－隨影卡，進行了全新升級，在線上線下渠道廣泛推廣，有效提升了會員粘性和會員增值業務。

星美通信是未來星美搭建新媒體、實現多屏互動、豐富會員多元化娛樂體驗的平台級入口，其為國內文化傳媒行業唯一一家獲得工信部虛擬電信運營商牌照的企業，成立兩年用戶總數已突破200萬。會員可以於星美通信渠道以積分兌換

Confidential

Qin_00001228



# 公司資料

## 董事會

### 執行董事
魏裕泰先生*(主席)*(於二零一七年九月五日獲委任)
楊榮兵先生*(行政總裁)*
高國森先生*(首席營運官)*(於二零一七年九月一日獲委任
　　及於二零一八年三月九日辭任)
鄭吉崇先生
孔大路先生(於二零一七年四月六日獲委任)
潘仁凱先生(於二零一八年三月九日獲委任)

### 非執行董事
葉家海博士(於二零一七年十一月二十八日辭任)
洪嘉禧先生(於二零一七年一月十六日獲委任為
　　獨立非執行董事,並於二零一七年三月十五日調任)

### 獨立非執行董事
龐鴻先生
李福生先生
李穎賢先生(於二零一七年一月十六日辭任)
黃瑞洋先生(於二零一七年四月十三日獲委任)

### 審核委員會
龐鴻先生
李福生先生
李穎賢先生(於二零一七年一月十六日辭任)
洪嘉禧先生(於二零一七年一月十六日獲委任)
黃瑞洋先生*(主席)*(於二零一七年四月十三日獲委任)

### 薪酬委員會
李福生先生*(主席)*
龐鴻先生
李穎賢先生(於二零一七年一月十六日辭任)
洪嘉禧先生(於二零一七年一月十六日獲委任)

### 提名委員會
龐鴻先生*(主席)*
李福生先生
李穎賢先生(於二零一七年一月十六日辭任)
洪嘉禧先生(於二零一七年一月十六日獲委任)

## 公司秘書
曾春曜先生(於二零一七年七月三十一日辭任)
黃榮舜先生(於二零一七年七月三十一日獲委任)

## 授權代表
鄭吉崇先生
楊榮兵先生

## 核數師
德勤‧關黃陳方會計師事務所

## 註冊處
Clarendon House
2 Church Street
Hamilton HM 11
Bermuda

## 香港主要營業地點
香港中環
皇后大道中99號
中環中心
6701-2及13室

## 股份過戶登記處
### 百慕達主要股份過戶登記處
MUFG Fund Services (Bermuda) Limited
The Belvedere Building
69 Pitts Bay Road
Pembroke HM08
Bermuda

## 股份登記香港分處
卓佳廣進有限公司
香港
皇后大道東183號
合和中心
22樓

## 主要往來銀行
香港上海滙豐銀行有限公司

## 股份代號
00198.HK

## 網站
http://www.smi198.com

0152

星美控股集團有限公司　②

Confidential

Qin_00001229

# 目錄

| | |
|---|---|
| 公司資料 | 2 |
| 主席報告 | 3 |
| 管理層討論及分析 | 5 |
| 董事履歷資料 | 9 |
| 董事會報告 | 11 |
| 企業管治報告 | 20 |
| 獨立核數師報告 | 30 |
| 綜合損益及其他全面收入報表 | 35 |
| 綜合財務狀況報表 | 36 |
| 綜合權益變動表 | 38 |
| 綜合現金流量表 | 40 |
| 綜合財務報表附註 | 42 |
| 財務概要 | 136 |


**Confidential**

Qin_00001230



# 星 美 控 股

# SMI HOLDINGS GROUP LIMITED
## 星美控股集團有限公司

(Incorporated in Bermuda with limited liability)
(Stock Code: 198)



2017
年報



Confidential