UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

Huzhou Chuangtai Rongyuan Investment    :
Management Partnership, Huzhou Huihengying    :
Equity Investment Partnership, and Huzhou    :     1:21:cv-09221-KPF
Huirongsheng Equity Investment Partnership,    :
                                 :
                 Petitioners,    :
                                   :
            -v.-    :
                                   :
Hui Qin,    :
                                   :
                 Respondent.    :
                                   :

-------------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS'
RENEWED MOTION TO COMPEL, FOR SANCTIONS AND FOR AN
<u>ORDER OF CIVIL CONTEMPT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ .............1

STATEMENT OF FACTS ........................................................................................................ 5

ARGUMENT ............................................................................................................................. 11

   I.   Qin Has Complied with Petitioners' Discovery Requests; a Contempt Finding is   Not
      Warranted........................................................................................................................... 11

      A.   Qin Has Complied with Petitioners' Discovery Requests ....................................... 11

      B.   A Contempt Finding is Not Warranted ................................................................... 25

   II.   No Adverse Findings Should Be Made ........................................................................... 20

CONCLUSION.......................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*A.V. By Versace, Inc. v. Gianni Versace S.p.A.*,
  446 F. Supp. 2d 252 (S.D.N.Y. 2006) .................................................................... 12

*Amusement Indus., Inc. v. Midland Ave. Assocs. LLC*,
  820 F. Supp. 2d 510 (S.D.N.Y. 2011) .................................................................... 20

*AXGINC Corp. v. Plaza Automall, Ltd.*,
  2018 WL 4771886 (E.D.N.Y. Oct. 2, 2018) ........................................................... 17

*Badgley v. Santacroce*,
  800 F.2d 33 (2d Cir.1986) ...................................................................................... 19

*Benthos Master Fund, Ltd. v. Etra*,
  2022 WL 1527315 (S.D.N.Y. Mar. 14, 2022*), report and recommendation adopted in
  part*, 2022 WL 1555543 (S.D.N.Y. May 16, 2022) ......................................... 15, 19

*Bowens v. Atlantic Maintenance Corp.*,
  546 F. Supp. 2d 55 (E.D.N.Y. 2008) ...................................................................... 11

*Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*,
  2001 WL 958975 (S.D.N.Y. Aug. 22, 2001) ........................................................... 16

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
  814 F.3d 91 (2d Cir. 2016) ..................................................................................... 11

*Chan v. Triple 8 Palace, Inc.*,
  2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005) ......................................................... 21

*Chao v. Gotham Registry, Inc.*,
  314 F.3d 280 (2d Cir. 2008) ................................................................................... 15

*Denis v. Cnty. of Nassau*,
  2019 WL 7372957 (E.D.N.Y. Dec. 31, 2019) .......................................................... 11

*Dunn v. N.Y. State Dep't of Labor*,
  47 F.3d 485 (2d Cir. 1995) ..................................................................................... 12

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
  286 F.R.D. 288 (E.D. Va. 2012) ............................................................................. 17

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012), *aff'd sub nom. NML Capital, Ltd.* ............................................ 17

*Est. of Jackson ex rel. Jackson v. Cnty. of Suffolk*,
   2014 WL 3513403 (E.D.N.Y. July 15, 2014) ........................................................................ 25

*Evans v. Murphy*,
   2013 WL 2250709 (W.D.N.Y. May 22, 2013) ...................................................................... 13

*F.D.I.C. v. Horn*,
   2015 WL 1529824 (E.D.N.Y. Mar. 31, 2015) ................................................................. 24, 25

*Field Day, LLC v. County of Suffolk*,
   2010 WL 1286622 (E.D.N.Y. Mar. 25, 2010) ...................................................................... 25

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir.1998) ...................................................................................................... 19

*Fundacion Presidente Allende v. Banco de Chile*,
   2006 WL 2796793 (S.D.N.Y. May 29, 2006) ...................................................................... 20

*Gesualdi v. Rockwala Inc.*,
   2019 WL 4306349 (E.D.N.Y. Sept. 11, 2019) ..................................................................... 17

*GMA Accessories, Inc. v. Electric. Wonderland, Inc.*,
   2012 WL 1933558 (S.D.N.Y. May 22, 2012) ...................................................................... 18

*Golia v. Leslie Fay Co.*,
   2003 WL 21878788 (S.D.N.Y. Aug. 7, 2003) ...................................................................... 25

*Hatala v. Sustainable Concepts Dev.*,
   2022 WL 2341234 (S.D. Fla. Apr. 25, 2022) ....................................................................... 18

*In re Aluminum Warehousing Antitrust Litig.*,
   2016 WL 11727416 (S.D.N.Y. May 19, 2016) .................................................................... 23

*In re Bailey*,
   2011 WL 7702799 (Bankr. S.D. Ga. July 29, 2011) ............................................................ 20

*In re Charles DeGennaro, III*,
   2020 WL 7231945 (S.D.N.Y. Dec. 8, 2020) ........................................................................ 16

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*,
   236 F.R.D. 177 (S.D.N.Y. Apr.19, 2006) ............................................................................. 13

*In re Mosdos Chofetz Chaim Inc.*,
    624 B.R. 576 (Bankr. S.D.N.Y. 2021) ................................................................. 21

*King v. Allied Vision, Ltd.*,
    65 F.3d 1051 (2d Cir. 1995) ............................................................................... 11

*Kingsway Financial Services v. Pricewaterhouse-Coopers, LLP*,
    2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) ........................................................ 18

*Kreyn v. Gateway Target*,
    2006 WL 3732463 (E.D.N.Y. Dec. 17, 2006) ..................................................... 22

*La Belle v. Barclays Cap. Inc.*,
    340 F.R.D. 74 (S.D.N.Y. 2022) .......................................................................... 21

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*,
    2014 WL 1201905 (S.D.N.Y. Mar. 24, 2014), *objections overruled*,
    2016 WL 3042733 (S.D.N.Y. May 24, 2016) ...................................................... 13

*Official Comm. of Unsecured Creditors of Exeter Hldgs. Ltd. v. Haltman*,
    2015 WL 5027899 (E.D.N.Y. 2015) .................................................................. 21

*Passlogix, Inc. v. 2FA Technology, LLC*,
    708 F. Supp. 2d 378 (S.D.N.Y. 2010) ............................................................... 21

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002) ............................................................................... 21

*Scalera v. Electrograph Sys., Inc.*,
    262 F.R.D. 162 (E.D.N.Y.2009) ........................................................................ 21

*SEC v. Collector's Coffee Inc.*,
    2021 WL 266284 (S.D.N.Y. Jan. 27, 2021) ....................................................... 22

*SJS Distribution Sys., Inc. v. Sam's E., Inc.*,
    2013 WL 5596010 (E.D.N.Y. Oct. 11, 2013) ............................................... 24, 25

*State Farm Mut. Auto. Ins. Co. v. Cohan*,
    2010 WL 3034985 (E.D.N.Y. July 28, 2010) ..................................................... 20

*Stein Indus., Inc. v. Jarco Indus., Inc.*,
    33 F. Supp. 2d 163 (E.D.N.Y. 1999) ................................................................. 11

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993) ......................... 20

*Treppel v. Biovail Corp*,

    249 F.R.D. 111 (S.D.N.Y.2008) ........................................................................ 24

*United States v. Campo Flores*,

    2016 WL 5946472 (S.D.N.Y. Oct. 12, 2016) ..................................................... 23

*United States v. Commey*,

    452 F. App'x 21 (2d Cir. 2011) ................................................................... 13-14

*Weitzman v. Stein,*

    98 F.3d 717 (2d Cir. 1996) ........................................................................... 19

**Rules and Statutes**

31 C.F.R. § 501.601 ........................................................................................... 15
Federal Rule of Civil Procedure 11 ..................................................................... 2
Federal Rule of Civil Procedure 34 .............................................................. 3, 12
Federal Rule of Civil Procedure 37 ........................................................... 20, 23

Respondent Hui Qin ("Qin") respectfully submits this memorandum of law, along with the accompanying Declaration of Hui Qin ("Qin Decl."), in opposition to Petitioners' Motion to Compel, for Sanctions and for an Order of Civil Contempt (ECF 172, the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

While Petitioners ostensibly seek to enforce a judgment against Qin, this action has devolved into a mechanism for Petitioners—  )—to abuse and harass Qin, whose relatives ████████████████████████. Qin's concerns with ██████████████████████████████. In April 2023, it was publicly disclosed that ████████████████████████████████████████. In June 2022, unidentified intruders (with masks and sunglasses) trespassed the ████████████ and poured red paint on the front door, a well-known warning in Chinese culture that someone intends to hurt you.

Moreover, Petitioners are not behaving as judgment creditors. They are doing virtually nothing to actually enforce their judgment.

Indeed, despite Qin's good faith efforts to comply with discovery demands, including producing over 3,500 pages of documents and sitting for over 20 hours of deposition testimony in which he has identified numerous known and potential assets, including equity with a value of over $100 million (as well as assets Petitioners baselessly contend were fraudulently transferred), ***Petitioners have taken no steps to attach any of Qin's assets, nor have they sought any third-party discovery at all regarding the alleged fraudulent transfers.***

Instead, Petitioners' counsel has apparently devoted all their time to preparing repeated motions for sanctions against Qin and his counsel, demanding payment for hundreds of hours allegedly spent preparing briefs in which they cherry-pick irrelevant and out-of-context quotes

from depositions; misrepresent the content of bank statements produced by Qin; complain that Qin will not fly across the world to obtain bank documents that are not in his possession, custody or control; and make patently false accusations that Qin fabricated evidence and "destroyed" a cell phone that actually still functions, is in his counsel's possession, and from which Qin has already produced documents—which Petitioners would have known if they had bothered to engage in the "inquiry reasonable under the circumstances" required by Rule 11 of the Federal Rule of Civil Procedure before making their latest motion.

**Eight months after securing their judgment against Qin,** Petitioners noticed the deposition of ███████████████ who they contend is the fraudulent transferee of various properties including two ██████ penthouse apartments in which Qin ██████ ██ and which feature prominently in every one of Petitioners' motions. Before that deposition has even occurred or a single document been produced by ████, Petitioners now ask this Court for the extraordinary and inappropriate remedy of an adverse inference finding that assets—which Qin has either never owned or which he transferred years before the underlying arbitration—were fraudulently transferred to ██████, as well as a finding of contempt and potential incarceration of Qin and payment of fees by both Qin *and his counsel*[1] for Petitioners' bad faith and baseless motion.

The Court should deny all of Petitioners' requested relief for the following reasons:

*First*, Qin *has* complied with Petitioners' discovery demands and this Court's April 18, 2023 order (the "Order"). He has performed a reasonable search of documents in his possession, custody and control and produced over 3,500 pages of responsive documents. He also contacted banking institutions in Hong Kong in an effort to obtain bank statements not in his possession. He

---

[1] Qin's counsel will submit a separate response to Petitioners' motion as to them.

produced what he received, but otherwise was refused access by the banks either entirely or only if he travels to Hong Kong in person, which he cannot do because of ████████████ ████████. Rule 34 does not require that a party undertake a costly and burdensome exercise to obtain materials equally available to both parties.  Nor does it impose penalties for failure to produce documents that a demanding party insists, without basis, exist.

Further, many of Petitioners' demands concern alleged fraudulent transfers they have no basis to assume occurred other than that they find it unbelievable that a woman could afford to purchase expensive real estate. ████████████████ and has been a spokesperson for numerous companies in China and Japan and a television host and actress.  She comes from a wealthy family and was reportedly worth millions before she ever met Qin.  Qin Decl. ¶ 40.  To the extent Qin ever owned any of the properties, they were transferred years before this litigation began (as far back as 2011), and as a result Qin does not have many documents regarding them.

Petitioners also complain about not receiving patently irrelevant documents, including Qin's communications with a woman with whom he was trying to set up a date and texted during a break in his deposition.  He subsequently learned ██████████████████ ████████.  What relevance this could possibly have to a judgment enforcement action remains unexplained.  Qin also complied with this Court's Order and "responded" (which is what the Order required and a word that Petitioners have conspicuously omitted from their motion papers) by the April 21 deadline and produced additional documents shortly thereafter, including documents that Petitioners falsely contend were destroyed.

*Second*, an adverse inference instruction is not an appropriate sanction in a post-judgment enforcement context.  There is no "proceeding" and no "fact finder" to draw such an inference.  Moreover, all of the adverse inferences Petitioners seek concern fraudulent transfers.  Circuit case

3

law is clear that the only appropriate defendants in such actions are the *transferees* or beneficiaries of the transfer.  Given that no transferee is a party to this action, the adverse inference sought by Petitioners is not permissible.

In any event, Petitioners cannot demonstrate an entitlement to any adverse inference because certain of the alleged spoliation did not actually occur, and they have not met their burden to demonstrate that any deleted messages had any relevance to asset recovery, or that Qin willfully deleted any relevant messages in bad faith.  Indeed, many of the messages Petitioners seek have been communications with Qin's friends whom he asked to help him obtain information in China or Hong Kong *for* Petitioners.  Qin referred to these individuals using a Chinese word that translates to "assistant" because they were assisting Qin with a specific request, but these individuals *are not* Qin's employees and there is no basis to allege that Qin's friends enabled any fraudulent transfer or that they possess information regarding Qin's finances, or that he would have been under any obligation to preserve *all* communications with them by virtue of this action.  Qin has ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████—*not* because of this lawsuit.  Moreover, courts in this Circuit have declined to order an adverse inference when the spoliated material is available from other sources, which is plainly the case here.  Finally, Petitioners have failed to provide any legal or factual basis to support their contention that "transfers" of property that Qin never owned, or that were made years before the underlying arbitration, were fraudulent.

The Court should not give its imprimatur to an obvious harassment campaign.  Qin has produced what he has or was able to obtain through reasonable efforts.  The law requires nothing

more.  For these reasons and as further discussed below, Petitioners' Motion should be denied in its entirety.

**STATEMENT OF FACTS**

In response to Petitioners' discovery demands, to date, Qin has produced approximately 3,600 pages of responsive documents including substantial information concerning Qin's equity holdings at various companies in PRC and Hong Kong, bank and tax records, deeds, transfer agreements, and WeChat messages. Qin Decl. ¶¶ 2-12.  Qin has also sat for more than 20 hours of deposition testimony. *Id.* ¶¶ 13, 15, 23, 25, and 49.  During his final day of deposition, Qin took out his cell phone and provided answers to Petitioners' questions directly from the phone. *Id.* ¶ 52. *e.g.*, Tr. 505:7-13.  Qin has attempted to obtain requested information outside of his possession, custody and control from banks in Hong Kong, from an attorney regarding immigration records, and from ████ with respect to various financial documents. *Id.* ¶¶ 9, 31, 12 and 87.  Where he has obtained responses, he has provided them to Petitioners. *Id.* ¶ 10.  Where unsuccessful, he has provided documentation of his attempts. *Id.*  Qin's productions have included, among other things:

- full and accurate corporate registration records of Ningbo Sunlight Electrical Appliance Co., Ltd. Ningbo Sunlight Electrical Technology Co., Ltd. Run Yun Chengdu Culture Communication Co., Ltd., and Xingmei Shengdian Culture Media Group Co., Ltd.;

- the bank statements of Qin's ████████████; and closed ████████ account;

- deed and ownership transfer records of ████████████████ ████;

- a draft of the residential contract of sale related to ████████████ ████████████;

- deed records of 1 Central Park South, ████████████████████ and deed records of 1 Central Park South, ████████████████;

- amended ████ tax returns for 2021 and original tax returns for 2021 and 2020; and ████████ tax returns between 2019 and 2022;

5

- a full and accurate communication record between Qin's counsel and accountant, ███ ███, in response to Petitioners' false assertions of missing pages in Qin's 2020 tax returns;

- documentation of Qin's counsel's efforts to try to obtain immigration documents;

- friends' WeChat contact information such as ████████████████ ███████████████;

- communications with ███████████████ ██████████████;

- contact information for ███████████████████;

- Qin's and his counsel's communications with ██████ and ████████ in an attempt to obtain bank statements;

*See* Qin Decl. ¶¶ 4, 7, 10.

### Petitioners' Lack of Diligence in Pursuing Discovery or Attaching Assets

Through his production and via deposition testimony, Qin has identified numerous former and existing assets that may be used to satisfy the judgment, including his ownership interest in SMI shares (currently illiquid but valued at over $100 million), two vehicles in Beijing and Hong Kong, ownership interest in several Chinese companies, and former bank accounts. *See* Qin Decl. ¶ 59 for a full list. To date, Petitioners have not notified Qin of any attempts to seek further discovery from any third party, such as the banks, nor to attach any of these assets. *Id*. ¶¶ 57-59, 61. Qin has also provided contact information for dozens of individuals—many of whom have a tenuous or no relationship to Qin's assets but have nevertheless been demanded by Petitioners. *Id*. ¶¶ 29, 59. Some of these individuals reside in New York. *Id*. ¶ 29. Petitioners have not informed Qin of any efforts to obtain any discovery from a single one of them. *Id*. ¶¶ 59, 61.

Petitioners accuse Qin of having fraudulently transferred certain properties (of which he denies ownership) to his ███████ *see* Mot. at 24-25, but have taken no third-party discovery to support these claims. For example, Petitioners contend that apartments at the ██████████ that Qin does not own but where he sometimes stays are really his. Petitioners, however, have not informed Qin of any discovery demands made to the ██████████ for ownership records or guest records, even though he has consistently denied that he lives there. *Id.* ¶¶ 30, 55, 56, 59. Nor have they taken any discovery of the seller of the apartment, whose identity is known to them. Qin has testified on multiple occasions that he did not have certain documents requested by Petitioners and ████████ was more likely to have them, including regarding ██████████, ████████████ details about ████████████████████████. Qin Decl. ¶¶ 28, 51, 54-55, ECF 108-11 at 188:22-189:5, 191; ECF 176-10 at 417:14-21, 421:23-422:9. ████████ is also the person who provided him with the ██████████████ that Petitioners assert is fabricated, *see* Mot. at 17, yet Petitioners have not taken any discovery from her, and only noticed her deposition two weeks ago. Petitioners also contend that Qin ████████████████████████████████████ ████████████, *see* Mot. at 5; *see* ECF 176-11 at 583:8-584:7, yet have not notified Qin of any attempts to locate and identify the vessels, despite public registration information being readily available.[2]

### Qin Never Owned Certain Properties at Issue or Transferred Them Years Ago

Qin does not and has not ever owned either of the ██████████████. Qin Decl. ¶¶ 30, 55, 98. Nor does he reside in them. *Id.* ¶ 55. Qin long ago resided in the ██████████ ████████████████████████████████████████████████████████████ ████████████████████. *Id.* ¶ 99. Qin previously owned the ██████████████████

---

[2] *See, e.g.*, https://registry.faa.gov/aircraftinquiry/Search/NNumberInquiry

through an entity known as ███████. *Id.* ¶ 99.  Qin's share of ███████████████████

████████████████████████████████████████████████████████████

█████████████████████. *Id.* ¶¶ 54, 96.

**Qin's** ████████████████

████Qin has no background in politics but ██████████████████ Qin Decl. ¶ 73.  His

███████████████████████████████. *Id.*; ECF 115 ¶ 29. ███████████

██████████████████████, with whom he is very close and ████████████

████████████████████████████████████████████████████████

████████████. *Id.* ¶ 74.  ████ has stayed at ████████████████. *Id.* ████████████

██████████████████████████████████. *Id.* ¶ 76. ████████████

██████████████████████████████ *Id.* ████████████████████████

██████████████████. *Id.* ████████████████████████████████

███████████████████████████████████. *Id.*

████The ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████. *Id.* ¶¶ 76-77.  Qin refused.  *Id.* ████████████

███████████████████████████████████████████y. *Id*.  Qin still refused. *Id.*

████████████████████████████████████████████████████████

██████████████████████████████████. *Id.* ¶ 78.  In Chinese culture, this

is a warning that someone intends to hurt you.  *Id.* ████████████████████

████████████████████████ *Id.* ¶ 79; ECF 176-10 at 404:17-408:13.  Qin previously

had ████████████████████████████████████████████████████████



███████████████████████ Qin Decl. ¶ 79. ████████████████████████████████

███████████████████████████████. *Id.* ¶ 81. ██████████████████████████████

█████████████████████████████████████. *Id.*

It is Qin's desire to protect himself, his family and his friends from █████████████████

████████████████████████████████████████████████████████████████████████

███████████████, *see id.* ¶ 77; ECF 108-11 at 185:2-7; ECF 115 ¶ 26; (ii) ████████████

████████████████, *see id.* ¶¶ 38, 79; ECF 176-10 at 404:17-408:13; and █████████████

███████████████████████. *see id.* ¶¶ 80, 92; ECF 176-9 at 379:2-17.  For this

reason, █████████████████████████████████████ *Id.* ¶ 80.

Qin also has reason to believe that ████████████████████████. *Id.* ¶¶ 62-69.

Petitioners are all 100% owned by a large Chinese investment company, Zhongzhi Investment

Management Co., Ltd. *Id.* ¶ 62. The former CEO of the company, a friend of Qin's – Zhikun Xie

("Xie"), died mysteriously on December 18, 2021. *Id.* ¶¶ 63-65.  Immediately after Xie's death, a

deputy chief judge of a Chinese court and CCP secretary left his job and subsequently was

appointed chairman of Zhongzhi despite having no management or investment experience. *Id.* ¶

66.  Zhongzhi's new CEO was the former CEO of Zhongrong Trust, one of the largest Chinese

central government-owned companies. *Id.* ¶ 67.  Zhongzhi has also begun transferring its

investments to Chinese government entities. *Id.* ¶ 69.  For example, on April 24, 2023, Zhongzhi

group's equity interest in Kangsheng Gufen was transferred to the Zhejiang Lishui government.

*Id.*  Also, on October 13, 2022, Zhongzhi transferred its equity interest in Zhongrong Fund

(approximately 1.5 billion RMB) to Guolian Securities, a governmental securities company

established by Wuxi city government. *Id.*

**Qin Did Not Destroy His Cell Phone**

As a result of his belief that the ████████████████████████, Qin ████████
██████████████████████████████ Qin Decl. ¶ 38; Mot. at 12.  Upon learning of this
at Qin's deposition, Qin's counsel immediately requested the device, which Qin turned over.  Qin
Decl. ¶ 38.  Upon inspection, the phone was physically damaged but still worked. *Id*.  A search
was performed for relevant WeChat messages and those were produced to Petitioners on May 9,
2023. *Id*. ¶ 60.  At no point at Qin's subsequent deposition or otherwise did Petitioners ever inquire
as to data recovery efforts from the phone. *Id*.

**Qin Did Not Falsify a Document**

Qin has testified numerous times that he not in possession or control of the ████████
██████████████████████ Qin_0000845, the ████████.  Qin Decl. ¶ 31; ECF
108-1 at 2; ECF 108-11 at 196:5-14; 197:7-11; ECF 176-9: 348:19-349:7 and 349:17-354:21.
During his deposition, he was asked ████████████████████████, and he testified
that ████████████████████ ECF 176-9 at 354:16-17, but that he thought the total
pages of the ████████████████████████████ *Id*. at 354:17-21 and
355:18-25.  In order to respond to Petitioners' demand, Qin contacted ██████ who emailed the
completed version of the ████████████████████ to Qin's counsel on April
24, 2023.  Qin Decl. ¶ 31; That document was immediately produced to Petitioners. *See*
Qin_00003341 and Qin_00003342-44.  It is visually identical to the version Qin previously
produced but with the additional page listing the schedule.  Qin did not create the document but
merely passed along what was provided to him.  Petitioners have not questioned ██████ regarding
the authenticity of the document.

**Qin Does Not Have FBI Records**



Petitioners contend that Qin failed to produce records of an ██████ that occurred at the ████████████. Mot. at 4, 13.  Qin does not own the property, was not the target of the ████████████, and was asked to leave by the ████████████████████.  Qin Decl. ¶ 47.  Petitioners do not explain why Qin would be expected to have any documents about an ████████████████████. *Id.*

**ARGUMENT**

**I.     QIN HAS COMPLIED WITH PETITIONERS' DISCOVERY REQUESTS; A CONTEMPT FINDING IS NOT WARRANTED**

**A.     Qin Has Complied with Petitioners' Discovery Requests**

A court may only hold a party in contempt if the court determines that "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).  The "[p]rocess of contempt is a severe remedy, and should not be resorted to when there is fair ground of doubt as to the wrongfulness of the defendant's conduct." *Denis v. Cnty. of Nassau*, 2019 WL 7372957, at *6 (E.D.N.Y. Dec. 31, 2019) (citations omitted); *see also Stein Indus., Inc. v. Jarco Indus., Inc.*, 33 F. Supp. 2d 163, 170 (E.D.N.Y. 1999).  The moving party must establish each essential element by clear and convincing evidence. *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 63-64 (E.D.N.Y. 2008); *see also King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) ("[a] contempt order is warranted only where the moving party established by clear and convincing evidence that the alleged contemnor violated the district court's edict.").  Further, "[t]he failure to meet the strict requirements of an order does not necessarily subject a party to a holding of

contempt." *A.V. By Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252, 257 (S.D.N.Y. 2006) (quoting *Dunn v. N.Y. State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir. 1995)).

Petitioners cannot satisfy that high standard.  As explained at 5-6, *supra*, Qin has (i) produced extensive documents (over 3,500 pages) including corporate records, available bank records and tax returns, WeChat messages, contact information for dozens of requested individuals, transfer agreements, and deeds; (ii) sat for over 20 hours of deposition testimony over four days during which time he produced his phone and provided requested information directly off of it; (iii) timely responded to each of Petitioners' numerous document demands and interrogatories, and (iv) gone beyond the requirements of Rule 34 and made attempts to obtain documents beyond what is in his "possession, custody and control" and produced such documents when he was able to obtain them or otherwise provided evidence of his attempts to obtain those documents and inability to obtain them. Qin Decl. ¶¶ 3-11.  Qin has also attempted to answer all deposition questions to the best of his ability and understanding despite not speaking English, having translation difficulties, and experiencing severe medical issues. *Id.* ¶¶ 14-52.   There is therefore no basis to impose sanctions or to hold him in contempt because he has "diligently attempted to comply in a reasonable manner."

Petitioners' arguments to the contrary are largely a collection of false or unsupported accusations or cherry-picked out-of-context quotes. They accuse Qin of "destroying" his Chinese cell phone (Mot. at 12-13) even though Petitioners never inquired as to the status of the data on the phone, which is intact.   Indeed, documents from that phone *were recently produced* to Petitioners, well after the phone was allegedly "destroyed."  Qin Decl. ¶ 60.

They also accuse Qin of "fabricating" a ██████████, Mot. at 17-18, based on nothing other than speculation because Qin had previously testified that the document—whose text was in

a language he could not read—was "█████████ and the █████████ produced was

███████. *Id.* at 18.   Petitioners have no evidence to support their allegation that the

███████ was "fabricated," and tellingly point to nothing in the ████ itself which

suggests that it is anything but genuine.   Nor is there anything suspicious about the timing of the

production of the ████████.   Qin informed Petitioners that the copy of the ████████

████████████████████████████████████████████

████████████████████████████.   Qin Decl. ¶ 31.

Qin produced what she provided to him, which is an identical ████████████

████████████████.   *Id.*

## B.   A Contempt Finding is Unwarranted

A court "can only compel [a party] to produce documents that are within

their possession, custody or control."  *Evans v. Murphy*, 2013 WL 2250709, at *4 (W.D.N.Y. May

22, 2013). "The party seeking the production bears the burden of demonstrating that the other party

has control over the documents sought." *In re Flag Telecom Holdings, Ltd. Secs. Litig.,* 236 F.R.D.

177, 180 (S.D.N.Y. Apr.19, 2006) (citation omitted).  A contempt finding is improper where it is

sought based upon a failure to produce documents that are not in a party's possession or control.

*See Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.,* 2014 WL 1201905, at *5

(S.D.N.Y. Mar. 24, 2014), *objections overruled,* 2016 WL 3042733 (S.D.N.Y. May 24, 2016)

(denying contempt motion where movant "presented no facts indicating that [defendant] retained

the letter and willfully withheld its production," or "[i]n other words . . . has not shown that

[defendant] still had possession, custody or control over the [documents] during the relevant time

periods."); *see also United States v. Commey*, 452 F. App'x 21, 23–24 (2d Cir. 2011) (contempt

inappropriate where respondent "explained that he produced all of the records that were in his immediate possession" and moving party later obtained remaining documents).

Petitioners do not even come close to establishing that a contempt finding is warranted.

As discussed above, there is no evidence to support Petitioners' allegation that the schedule of assets is fabricated. Petitioners have no basis to simply pronounce the document "fake" and demand a contempt finding. Petitioners notably have not even deposed ███, who provided the ████████████ to Qin's counsel.

There is also no basis for Petitioners to demand and seek a contempt finding for Qin's alleged failure to produce bank account records. Qin has produced the bank account documents for all of his U.S. bank accounts, including ██████████████████. Qin Decl. ¶¶ 82-88. Petitioners' contention that the "first produced month for ████████ refers to the *previous year's interest*, thus, year(s) of statements are missing" (ECF 175 at 3) is false. Contrary to Petitioners' misrepresentation, the first ████████ statement shows *no* previous year's interest and a beginning balance of ████ for both accounts, as pictured below:



Qin Decl. ¶ 83.  The ██████████ statements begin in January 2018, or approximately five years prior to when they were requested in this action. Qin_00002889. Five years is the minimum requirement under the Bank Secrecy Act for maintaining bank records. 31 C.F.R. § 501.601.[3]  That is all that Qin received from ████████, and Qin produced all of these records.

Qin has also attempted to obtain documents relating to his Hong Kong bank accounts, which have been closed for years.  In response to inquiries from Qin and his counsel, the Hong Kong banks have refused to produce Qin's account documents outright or have demanded that he appear in person in Hong Kong to obtain them, which he cannot do given his ██████████ ████.  Even if Qin could go to China or Hong Kong ████████████████████, it would be unduly burdensome to demand that he do so. *See* Qin Decl. ¶¶ 70-81; *Benthos Master Fund, Ltd. v. Etra*, 2022 WL 1527315, at *12 (S.D.N.Y. Mar. 14, 2022*), report and recommendation adopted in part*, 2022 WL 1555543 (S.D.N.Y. May 16, 2022) ("It is not required that a party 'exhaust all means available' to comply") (citing *Chao v. Gotham Registry, Inc.*, 314 F.3d 280, 293 (2d Cir. 2008)).

Petitioners also repeatedly claim that Qin failed to produce documents by the Court-ordered deadline of April 21, 2023. *See, e.g.*, Mot. at 1, 18, 19.  Petitioners conspicuously omit the full language of that order, which required a *response* by a particular date.  Qin *did* respond by that date to all of Petitioners' document demands and interrogatories, and produced additional documents shortly thereafter. Qin Decl. ¶ 22.

With respect to certain contact information that Qin had not previously identified, Qin *took out his phone and searched it* during his last day of deposition testimony and provided the information he had. *Id*. ¶ 52.  *e.g.*, Tr. 505:7-13.  Even if the Order could have been read to require

---

[3] *See also* https://www ██████████████████████████████████

*production* by the deadline, a *de minimus* delay is not a basis for a contempt finding. *In re Charles DeGennaro, III*, 2020 WL 7231945, at *10 (S.D.N.Y. Dec. 8, 2020) ("very short duration of noncompliance" with a court order counseled in favor of finding abuse of discretion to award contempt sanctions when party had failed to produce documents by nine days after a court-ordered deadline). Indeed, courts have declined to make a contempt finding even where discovery was produced much more belatedly. *See, e.g.*, *Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, 2001 WL 958975, at *7 (S.D.N.Y. Aug. 22, 2001) (where bad faith was not established, declining a contempt finding and giving party an additional month to comply with a two-year-old document request).

Petitioners twist Qin's words and accuse him of destroying documents and money to avoid implicating his family and friends in this action (Mot. at 15, 23), when in reality, Qin has previously testified that ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████. Qin Decl. ¶ 81. ██████████████ ████████████████████████████████████. *Id.* ¶ 78. Qin's actions to protect family and friends therefore have nothing to do with, ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████. Qin Decl. ¶ 89. Additionally, the ████████████████ ████████████████████████████████████ Mot. at 24, ██████████████████████ ████████████████████████████████████████████. *Id.* ¶ 93.

The Court should further deny Petitioners' Motion because Petitioners' conduct in the judgment enforcement phase of this case makes clear that they are acting in bad faith and only to harass Qin. Indeed, as noted above, Petitioners' motion is replete with false statements (such as

their claims that ████████ statements are missing) or unsupported speculation (such as their

accusation that the ████████████ was "fabricated." *See supra*, at 8, 14.

Petitioners disregard the voluminous discovery that Qin has provided concerning his

income and assets, while insisting that Qin must produce reams of irrelevant information that no

longer exists, such as text messages from years ago with his social acquaintances or paramours.

Despite its broad scope, post-judgment discovery is not limitless.  Rather, post-judgment discovery

is "constrained principally in that it must be calculated to assist in collecting on a judgment." *EM*

*Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. NML Capital, Ltd*.

The inquiry "must be kept pertinent to the goal of discovering concealed assets of the judgment

debtor and not be allowed to become a means of harassment of the debtor or third persons."

*Gesualdi v. Rockwala Inc.,* 2019 WL 4306349, at *1 (E.D.N.Y. Sept. 11, 2019).  "A plaintiff may

not embark on a fishing expedition, and should tailor its requests appropriately, in order to foster

compliance and to achieve its ultimate goal, to wit, ***having its judgment satisfied***." *AXGINC Corp.*

*v. Plaza Automall, Ltd.*, 2018 WL 4771886, at *4 (E.D.N.Y. Oct. 2, 2018) (quotations omitted and

emphasis added); *see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288,

292 (E.D. Va. 2012) ("[D]iscovery should not devolve into a fishing expedition for irrelevant or

cumulative information that does not advance that purpose.").

Petitioners' conduct during the pendency of this action has been entirely inconsistent with

satisfying the judgment. ***Petitioners have taken no action to attach any assets Qin has identified,***

***even though some of them may be worth more than a hundred million dollars***. Qin Decl. ¶ 8.

Petitioners have not even sought any third-party discovery despite the fact that many documents—

such as old bank statements—are not in Qin's possession and despite Petitioners' unsupported and

repeated allegations that Qin has fraudulently transferred assets, which they now ask this Court to

declare by fiat.   Judgment creditors are permitted discovery of non-party assets "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt as to the bona fides of the transfer of assets between them." *GMA Accessories, Inc. v. Electric. Wonderland, Inc.*, 2012 WL 1933558, at *5 (S.D.N.Y. May 22, 2012) (internal quotation marks omitted).   Petitioners have done nothing and ████████████████████████████████████

Instead, Petitioners have used deposition time to ask harassing questions about Qin's children, whether he beats his wife, whether anyone ███████████████████, and about an ████████ ██████████████████████. Qin Decl. ¶ 17.

Instead of seeking relevant discovery (or acting on the extensive discovery that Qin has provided), Petitioners seek to sanction Qin because he has not provided some discovery that has no or minimal relevance to satisfying a judgment.   In particular, Petitioners are seeking a contempt finding because of the non-production of correspondence with a woman that Qin had only recently met and was attempting to set up a date with, for no reason other than that he had texted her during a break in his deposition. Mot. at 13.   Qin ██████████████████████████████████ █████████████████████████. *Id.*, *see* Qin Decl. ¶¶ 31, 91.   Petitioners nowhere explain why this information is material to their case, despite it being their burden to demonstrate the relevance of the requested material.   *See Kingsway Financial Services v. Pricewaterhouse-Coopers, LLP*, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008)).   Petitioners also point to a lack of production of WeChat messages with random individuals that Petitioners characterize as Qin's employees, even though he has testified repeatedly that they are not. ECF 116 at 10.   "[A subpoena] is not the equivalent of a search warrant [] and should not be used as a fishing expedition to require a witness to produce broad categories of documents which the party can search to find what may be wanted." *Hatala v. Sustainable Concepts Dev., LLC*, 2022 WL 2341234, at *3 (S.D. Fla. Apr. 25, 2022).

Petitioners rely on nothing but speculation to assert that any of these communications are relevant, *see* 23-24, *infra*, yet instead of proceeding against identifiable and valuable assets as would be expected in a post-judgment action, they are filing successive sanctions motions pertaining to irrelevant material, material that Qin does not possess, or both.

In sum, Qin has made reasonable, good faith efforts to comply with Petitioners' demands and with the Court's orders.  Because Petitioners offer nothing but speculation and false statements regarding the "wrongfulness" of Qin's conduct, a contempt finding is not warranted, nor should the Court legitimize Petitioners' abusive conduct of discovery, particularly when they have already obtained numerous leads to potential assets that they have yet to follow up on.  In any event, contempt is not intended to punish, but rather to "coerce future compliance . . . and to remedy any harm past noncompliance caused . . ." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996).  Qin has produced what he has or has been able to obtain.  Many documents sought by Petitioners no longer exist for reasons unrelated to this litigation.  "[A] party that is unable to comply with a discovery request [may] present substantial justification for its failure to disclose and thereby avoid contempt sanctions." *First Am. Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 22 (2d Cir.1998) (internal quotation marks omitted).  Contempt sanctions will not draw blood from a stone, and Petitioners cannot show harm from past alleged noncompliance given that they have taken no action with respect to already-identified assets.  The Court should decline sanctions because "any attempts at coercion are pointless." *Badgley v. Santacroce,* 800 F.2d 33, 37 (2d Cir.1986).[4]

---

[4] In all events, incarceration is not an appropriate remedy where there has been partial compliance. *See Benthos*, 2022 WL 1527315, at *14.

## II.    NO ADVERSE FINDINGS SHOULD BE MADE

Petitioners request that this Court "make adverse findings" against Qin with respect to certain alleged fraudulent transfers because of purported "spoliation." Mot. at 24.  They provide no applicable precedent for such relief, but instead cite generally to Federal Rule of Civil Procedure 37(b)(2) and inapposite caselaw regarding adverse *inferences* in pre-judgment contexts.  Given that judgment has already been entered, adverse inferences are not available.  *See e.g.*, *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2010 WL 3034985, at *1 (E.D.N.Y. July 28, 2010) ("Here, the defendants have already defaulted, and the more severe sanctions under Rule 37—for example, striking answers or directing adverse inferences—are not available."); *see also In re Bailey*, 2011 WL 7702799, at *6 (Bankr. S.D. Ga. July 29, 2011) ("Now those documents are sought to enforce a judgment of the bankruptcy court. There is no 'adverse inference' to be drawn here.").  Indeed, at this point there is no "fact-finder" to whom such an instruction would be given, and no claim relating to any party against whom such an inference might be drawn.  Not surprisingly, not a single case cited by Petitioners involves an adverse inference in the *post-judgment* context.

Further, every one of the requested adverse inferences pertains to a finding of fraudulent transfer, *see* Mot. at 25, but a fraudulent transfer claim "can only be maintained against . . . either the transferee of the assets or the beneficiary of the conveyance." *Fundacion Presidente Allende v. Banco de Chile*, 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006) (citations omitted); *accord Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993). "[T]he transferor of the property—that is, the debtor—is not the proper defendant in a fraudulent conveyance claim." *Amusement Indus., Inc. v. Midland Ave. Assocs. LLC*, 820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011).  Petitioners cite no authority that an adverse inference —let

alone a "finding" — may be drawn against non-parties to support a hypothetical fraudulent transfer claim that has not been brought.  The Court should therefore deny this request on that basis alone.

Even if such a sanction were available, Petitioners have not demonstrated their entitlement to it.  A party seeking an adverse inference sanction bears the burden of establishing (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was relevant to the party's claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal citations omitted).  Implicit in this analysis is a requirement that evidence has *actually been destroyed. Passlogix, Inc. v. 2FA Technology, LLC*, 708 F. Supp. 2d 378, 417 (S.D.N.Y. 2010); *La Belle v. Barclays Cap. Inc.,* 340 F.R.D. 74, 82 (S.D.N.Y. 2022) ("a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed").  "[W]here more severe sanctions are at issue, ... the moving party must show that the lost information would have been favorable to it." *Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 178 (E.D.N.Y.2009) (quoting *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579, *7 (S.D.N.Y. Aug. 11, 2005)).  Finally, "where the missing information has been [or can be] obtained from other sources, courts have been reluctant to find that the moving party has suffered prejudice." *In re Mosdos Chofetz Chaim Inc.,* 624 B.R. 576, 584 (Bankr. S.D.N.Y. 2021) (quoting *Official Comm. of Unsecured Creditors of Exeter Hldgs. Ltd. v. Haltman*, 2015 WL 5027899, at *10, (E.D.N.Y. 2015)).

Petitioners have failed to meet this burden.  In some cases, Petitioners do not even allege that any evidence was "destroyed" but rather that it was just not produced. *See* Mot. at 24 ("Qin produced no records regarding ███████," "Qin has failed to produce any records at all relating to ███████," "Qin has failed to produce any records whatsoever regarding the ███████

and the ████████████" and baselessly asserting that Qin fabricated a ███████████ with no assertion that any existing ██████ was destroyed). Mere failure to produce documents does not establish destruction of evidence for purposes of a spoliation motion. *See Kreyn v. Gateway Target*, 2006 WL 3732463, at *2 (E.D.N.Y. Dec. 17, 2006). Qin has repeatedly testified that he does not possess these documents and Petitioners have taken no steps to obtain them from individuals who *do* possess them. Qin Decl. ¶¶ 31, 87, 96, 99.

Petitioners' claim that Qin's phone was destroyed is false. *See* 10, *supra*. Egregiously, Petitioners ask this Court to sanction Qin for "destroying" his phone, notwithstanding that the phone still works and that Qin's counsel produced data from that phone to Petitioners after it was allegedly "destroyed." Qin Decl. ¶ 60.

With respect to Petitioners' allegation that Qin deleted text messages with some of his contacts, Petitioners cannot establish that he was under any obligation to maintain them at the time he deleted them, that he did so in bad faith or that any of these documents were relevant to locating Qin's assets, let alone that they would have been favorable to Petitioners' claims. The WeChats with Qin's contacts were not required to be produced until the Court's April 18, 2023 Order which required Qin to respond a supplemental document request that was attached to Petitioners' motion papers. ECF 108-15. Petitioners concede that they received messages after the date that motion was granted. For any time prior, Petitioners cannot establish that Qin would have been under any knowable obligation to preserve text messages with friends—*who are not his employees.* ECF 108-11 at 166:13-23; *see SEC v. Collector's Coffee Inc.*, 2021 WL 266284, at *10–11 (S.D.N.Y. Jan. 27, 2021) (If we take the SEC's argument . . . to its logical conclusion, [defendant] could never delete even an innocuous email . . ."). Qin has repeatedly testified and states again in his declaration that ████████████████████████████████████████████████, who has ██████

███████████████████████████████████████████████

███████████████████████████. Qin Decl. ¶¶ 70-82, ECF 108-9 ¶ 11, ECF 108-

11 at 166:13-23, ECF 116 at 10.  Qin has ████████████████████████████

████████████████. Qin Decl. ¶ 80.  Where an otherwise legitimate basis exists for the

failure to maintain evidence, a finding of bad faith is not warranted. *See United States v. Campo*

*Flores*, 2016 WL 5946472, at *4 (S.D.N.Y. Oct. 12, 2016) (failure of confidential sources to

maintain physical evidence of cocaine for government use in prosecution was "not in bad faith"

where there was a "real danger for the CSes to be in possession of cocaine while in Venezuela.");

*see also In re Aluminum Warehousing Antitrust Litig.*, 2016 WL 11727416, at *5 (S.D.N.Y. May

19, 2016) (rejecting Rule 37(e)(2) sanctions where plaintiffs failed to prove "by a preponderance

of the evidence that [defendants], who had deleted documents during the litigation pursuant to a

business arrangement, acted with the intent to deprive Plaintiffs of the use of the allegedly

destroyed information *in this litigation*") (emphasis added).

There is also no indication that any of these communications had anything to do with

Petitioners' claims.  Qin has on occasion asked friends to "assist" him with obtaining documents

located abroad and in the possession of third parties that Petitioners have unreasonably demanded

that Qin produce.  In describing these individuals, Qin has used a Chinese word that translates to

"assistant," because they were "assisting" him on a particular occasion.  But as Qin has testified,

these individuals ███████████████ ECF 108-11 at 166:13-23.  Petitioners rely on nothing

more than an alleged business relationship that does not exist to repeatedly assert that they "would

participate in and know about Qin's major financial transactions," *See, e.g.*, ECF 176 Appendix 3

at 4-8, 14-18.  Other purported bases are similarly tenuous, such as claiming that because an

"assistant" "deals with Qin's personal matters . . . [she] therefore would have been involved in

Qin's transactions regarding ███████████," *see id.* at 2, or that because an "assistant" "has access to Qin's email account, [she] therefore would know about any significant transactions involving Qin," *id.* at 6, or that because Qin once ████████████████████████

████████████████████████████████████████████

████████████████████████." *Id.* at 7.  This falls far short of establishing that relevant evidence existed in the first place. *See Kreyn*, 2006 WL 3732463, at *2 (spoliation claim "falls short" where defendant denied existence of videotapes of alleged incident and "testimony by one of the defendant's employees that there are . . . cameras throughout the store does not establish that there was a . . . camera at the [exact location] and that it was operating at the time of the accident such that a videotape was ever made, much less destroyed").

Where, as here, bad faith is not established, Petitioners "must demonstrate prejudice in order for the Court to consider imposing an extreme sanction such as an adverse inference instruction." *F.D.I.C. v. Horn*, 2015 WL 1529824, at *16 (E.D.N.Y. Mar. 31, 2015) (citing *Treppel v. Biovail Corp.,* 249 F.R.D. 111, 120 (S.D.N.Y.2008) (adverse inference instruction is "an extreme sanction and should not be imposed lightly"); *see also SJS Distribution Sys., Inc. v. Sam's E., Inc.,* N2013 WL 5596010, at *4 (E.D.N.Y. Oct. 11, 2013) (defendant's conduct was grossly negligent but concluding that, because the defendant "presented no evidence that the e-mails were deleted in bad faith," it has the burden to prove prejudice).

 Petitioners have not even established basic relevance, let alone favorability of the destroyed chats. "Although the destroyed [documents] would likely have aided [Petitioner] in gaining additional information relevant to its case, it cannot be said that the [documents] would have corroborated [Petitioner's] account of events or proven its claims . . . ." *Horn*, 2015 WL 1529824, at *16 (citing *SJS Distrib.,* 2013 WL 5596010, at *5).  Moreover, where missing

information has been (or could be) obtained from other sources, this weighs against finding prejudice. *Field Day, LLC v. County of Suffolk,* 2010 WL 1286622, at \*14 (E.D.N.Y. Mar. 25, 2010); *see also SJS Distrib.,* 2013 WL 5596010, at \*5 (adverse inference not warranted where "other evidence is still available to defendant") (citing *Golia v. Leslie Fay Co.*, 2003 WL 21878788, at \*10 (S.D.N.Y. Aug. 7, 2003) (spoliator's "misconduct has not robbed [the opposing party] of the only evidence on which they could base their case")).  Petitioners' failure to obtain *any* third-party discovery to obtain the missing information is fatal to its adverse inference request. *See Horn*, 2015 WL 1529824, at \*16 (declining to give an adverse inference where "Plaintiff's counsel conceded . . . that it did not attempt to subpoena [counterparties] or the buyers' and sellers' attorneys associated with the [transactions at issue].").  Similarly here, Petitioners can obtain much of the information they seek directly from the banks at issue, the █████████, the sellers of the properties at issue, and from Qin's ex-wife.  "To allow an adverse inference here would not have the effect of restoring the [Petitioners] to [their] position absent the destruction of the [evidence], but rather would prejudice the defendant by allowing [Petitioners] to profit from the destruction of the [evidence] when no evidence has been presented to support such an inference of its contents." *Est. of Jackson ex rel. Jackson v. Cnty. of Suffolk*, 2014 WL 3513403, at \*7 (E.D.N.Y. July 15, 2014).  Indeed, Petitioners extraordinarily ask that this Court declare that "transfers" that never occurred because Qin never owned the property, or that occurred years before the underlying *contract dispute* arbitration against SMI, *not Qin*—when there is no allegation Qin was insolvent— be deemed "fraudulent transfers" "made with the intent to defraud creditors."  Petitioners cannot use a lack of documentation to invent facts out of whole cloth.

## **CONCLUSION**

For the reasons above, Petitioners' motion should be denied in its entirety.

July 7, 2023
New York, New York

SEIDEN LAW LLP

By: _____/s/ Amiad Kushner_____
     Amiad Kushner
     Jennifer Blecher
     Xintong Zhang
     322 Eighth Ave, Suite 1200
     New York, NY 10001
     646-766-1914
     akushner@seidenlaw.com
     jblecher@seidenlaw.com
     xzhang@seidenlaw.com

*Counsel for Respondent Hui Qin*