# EXHIBIT 9

## Madigan, Sarah M.

| | |
|---|---|
| **From:** | Jennifer Blecher <jblecher@seidenlaw.com> |
| **Sent:** | Monday, August 21, 2023 8:05 PM |
| **To:** | Lee, Carol; Madigan, Sarah M.; Smith, Andrew C. |
| **Cc:** | Sant, Geoffrey; Ray, III, Hugh M.; Amiad Kushner; Xintong Zhang; Wang, Fangwei |
| **Subject:** | Re: Huzhou Chuangtai Rongyuan Inv. Mgmt. Partnership, et al. v. Qin, No. 21-cv-9221-KPF – Mr. Qin's Cell Phones |

Counsel,

It has now been nearly 96 hours since you confiscated Mr. Qin's phones and refused to return them notwithstanding your forensic agent's representations to the Court—in response to a direct question from the judge—that it would only take a few hours to image the devices and that they would be returned to Mr. Qin on Friday.  As you concede, "Setec Investigations has imaged the information on the phones which it has been able to access."   Immediately after Setec imaged the phones – which occurred days ago – they were required to be returned.  No one authorized the Pillsbury firm or its forensic agent to seize the phones, or to hold the phones hostage until Pillsbury's new demands were met.  The phones must be returned immediately.

Nothing in your email below provides any clarity in response to the basic questions we posed to your agent Mr. Kyprianou to confirm that he was able to successfully *copy* the data on those phones, which is what the judge authorized.  The Court did not give Pillsbury the authority to hold the phones hostage until Mr. Qin provides additional passwords demanded by Pillsbury.  Nor is the Court's grant of authority for *copying* data synonymous with "access" to the data as you continue to assert.

Moreover, your agent Mr. Kyprianou stated on Thursday evening in Ms. Madigan's and Ms. Wang's presence that there was not a Gmail application on Mr. Qin's phone, which would be consistent with Mr. Qin's repeated testimony that he does not use email. *See, e.g.*, Dep. Tr. at 301:10-13 ("I don't know about emails"); 430:10-18 ("Not in my recollection.  And I don't know how to send email.  Q. You have an email address, don't you? THE WITNESS: Yes.  Q. And you don't read emails, correct? A. I don't. And it used to be my secretary or my assistant read the emails and inform me, but I don't do that anymore"); 576:25-577:2 ("And you use [the phone] for WhatsApp and text messages and email, right? A: I don't do emails."), as well as his interrogatory response saying that friends of his access his email account for him. Mr. Qin told both Ms. Madigan and Ms. Wang as well as your agent Mr. Kyprianou on Thursday that he does not have the password, and all of us spent time trying to figure out how to reset it using a web browser.  Indeed, it was Ms. Wang who demanded that Mr. Qin call and then send a WeChat message to his friend Kevin to try and obtain the password.  He did so. That message is referenced right in Ms. Madigan's Friday email.  It therefore defies belief that my Saturday email to you could be the first time you heard of this.  It is further inappropriate that you condition return of the phones on the willingness of third parties that Mr. Qin does not control to comply with your demands, and particularly galling that you demand Mr. Qin contact anyone when you are withholding the very device he would need to do that.

Given that there is no Gmail application on Mr. Qin's phone, your assertion that you need his password to copy Gmail application data on the phone makes no sense, and also raises questions about your unfounded assertion that another Gmail address with an entirely different person's name is somehow associated with the phone or that it has any connection to Mr. Qin.  Similarly, you complain about not having the password to an iCloud email address with which Mr. Qin is not familiar, but even if that email address is being used, which many iCloud email addresses are not, iCloud email data is stored in the cloud, not on the phone*. See* https://support.apple.com/guide/icloud/what-you-can-do-with-icloud-mail-mmaae54a2288/1.0/icloud/1.0  ("Any messages you send or receive at that address are stored in the cloud instead of locally on your device.").  Mr. Qin notably assisted in resetting the password for the iCloud account with which he is familiar.

1

In short, your assertions below are not consistent with any representation that any data stored on the physical devices has not been copied. Rather, it appears that you have simply decided to hold onto the phones with no legal authorization to do so until unrelated parts of the Court's order or your own separate demands are complied with, including gaining access to information stored not on the devices but rather online. To the extent that there is data on the phone itself that could not be copied, that representation should come from Mr. Kyprianou, explaining what type of extraction was performed, what type of MPED was used, what specific application data *on the phones* cannot be copied and why. Instead, you apparently have instructed him not to answer any questions and indeed refer to such questions as "inappropriate."

Additionally, your contention below that you believe the Court authorized you to seize the phones until such time as you deem fit to return them is not consistent with what the Court actually said, nor did you cite a single case in any of your briefing supporting your alleged entitlement to such an extraordinary remedy. This is a civil proceeding, not a criminal investigation. The Court asked whether Mr. Qin would consent to turning over his phones, and then ordered him to do so, an order he voluntarily complied with. The Court did not "seize" nor authorize any "seizure" of the phones. Not even in the case of Steven Donziger, arguably the most severe contempt case in the Circuit, did the court ever seize devices that the defendant refused to turn over for imaging. *See United States v. Donziger*, 2021 WL 3141893, at *46 (S.D.N.Y. 2021); *see also Tenen v. Winter*, 1996 WL 947560, at *10 (W.D.N.Y. July 23, 1996) ("[P]laintiffs have provided no authority to cite their contention that Rule 4.1 allows the Court to order the U.S. Marshal[] to 'enter the business premises of the defendant . . . and seize, carry away and store . . . all his digital computers and digital computer peripheral equipment . . . .'"). We are aware of no cases authorizing such relief outside of the statutory authorization under 15 U.S.C.A. § 1116, which is not applicable here. Nor did the Court appoint you as the sole arbiter of whether Mr. Qin has complied with or is able to comply with other Court orders or authorize you to restrain his phones because you allege without basis that he has a "pattern" of "destroying" information you have provided no reason to assert ever existed in the first place.

Finally, your "note" about alleged statements Mr. Qin made during the car ride to retrieve his phone is false, irrelevant and not well taken. Indeed it is belied by Mr. Qin's subsequent handover of the phone. Mr. Qin has repeatedly stated his concerns about harassment and threats by your clients and their CCP-linked parent, going all the way back to the first minutes of his January 30 deposition. *See* Dep. Tr. 24:23-25:10. Mr. Qin stated, as he did multiple times in the presence of Ms. Madigan and Ms. Wang and during his deposition, that he would turn over the materials to the Court, but does not want them handed over to parties that unrebutted facts show are linked to the Chinese government. None of this was helped by the fact that Ms. Madigan and Ms. Wang behaved inappropriately during the phone handover, with Ms. Wang in particular following Mr. Qin around the office at Ms. Madigan's instruction to listen in on calls he was making on a borrowed phone (even though Mr. Kyprianou already had possession of his phones and had put them in airplane mode) to find a place to stay for the night and even listening in on privileged conversations between Mr. Qin and Mr. Zhang. This inflammatory allegation is part of a pattern of misrepresenting Mr. Qin's statements to the Court in an apparent effort to engender hostility against him.

Mr. Qin has complied with the Court's order and turned over the phones for imaging, provided the passwords he knows, contacted a third party at your request to try to obtain an unknown password, and allowed your agent Mr. Kyprianou to reset passwords he did not know. Either provide a detailed statement from Mr. Kyprianou identifying what specifically he cannot copy off the physical devices and why, or return them immediately. That you believe you are acting pursuant to extraordinary Court authority will not shield your agent Mr. Kyprianou or anyone in your office, as private attorneys, from individual liability for unauthorized and illegal actions, in addition to sanctions. We also reserve all rights.

- Jennifer

**Jennifer Blecher, Esq.**
*Senior Counsel*

SEIDEN | LAW

2

**Seiden Law LLP**
322 Eighth Avenue, Suite 1200
New York, NY 10001 USA
**O.** (646) 766-1763
**E.** jblecher@seidenlaw.com
**W.** www.seidenlaw.com

Confidentiality Statement: This email (including any attachments) may **contain** confidential information and is protected by law. If you are not the correct recipient, please notify the sender immediately and delete this email. Please do not copy this email for any other purpose or disclose the contents of this email.

---

**From:** Lee, Carol <carol.lee@pillsburylaw.com>
**Date:** Saturday, August 19, 2023 at 5:35 PM
**To:** Jennifer Blecher <jblecher@seidenlaw.com>, Madigan, Sarah M. <sarah.madigan@pillsburylaw.com>, Smith, Andrew C. <andrew.smith@pillsburylaw.com>
**Cc:** Sant, Geoffrey <geoffrey.sant@pillsburylaw.com>, Ray, III, Hugh M. <hugh.ray@pillsburylaw.com>, Amiad Kushner <akushner@seidenlaw.com>, Xintong Zhang <xzhang@seidenlaw.com>, Wang, Fangwei <fangwei.wang@pillsburylaw.com>
**Subject:** RE: Huzhou Chuangtai Rongyuan Inv. Mgmt. Partnership, et al. v. Qin, No. 21-cv-9221-KPF – Mr. Qin's Cell Phones

Counsel,

Thank you for your email. As you know, during the Court's colloquy with Mr. Kyprianou, the Court made clear that Mr. Qin must provide all passwords on his phones, and specifically mentioned his iCloud passwords. Your email below is the first time you have alleged that Mr. Qin does not have any information concerning his phone's Gmail and iCloud accounts, or the passwords to those accounts. No such assertion was made at the court hearing, or even in response to our Friday afternoon email to you.

During the Court's colloquy with Mr. Kyprianou of Setec Investigations, the Court specifically and clearly ordered Mr. Qin to provide his passwords (including iCloud passwords) and to assist Mr. Kyprianou in accessing Mr. Qin's phone data so that Mr. Kyprianou can image the data in those accounts. That includes the Gmail and iCloud passwords. At the court hearing, neither Mr. Qin nor his counsel objected to providing his passwords, nor did Mr. Qin or his counsel make the unbelievable claim that he does not know his own passwords. Two days have passed since the Court ordered Mr. Qin to provide his passwords, and he has refused or failed to do so. We note that during the car ride from the court to the Seiden offices, Mr. Qin loudly announced that he would rather be detained than allow Petitioners to access the data on his phones. We are therefore deeply concerned by Mr. Qin's attempts to get his phones back without ever providing the password information needed to image all information on his phones. We do not believe Mr. Qin's purported inability to identify his passwords, or to even reset his passwords. In any case, Mr. Qin himself controls when he will get his phones back, because he will receive them after he fully provides password information to Mr. Kyprianou.

We once again demand that Mr. Qin immediately provide all access information including passwords to all of his Gmail and iCloud accounts. If he does not immediately provide the passwords, we will be forced to once again inform the Court of Mr. Qin's failure to comply with clear and unambiguous court orders.

We note your position that Mr. Qin allegedly is unable to reset the password for his Gmail account, because the password reset request goes to Emma Duo Liu. We find it incredible that Mr. Qin claims to neither know his password nor is willing to contact Emma Duo Liu to reset the password.

You never identified Mr. Qin's additional Gmail account to us in your discovery responses, and you never made any attempt to access or produce data from this account. Indeed, as discussed at the court hearing, Mr. Qin has not produced a single responsive email in this action. This too is extremely disturbing.

The Court clearly authorized Setec Investigations to maintain possession of Mr. Qin's devices until Setec is able to gain full access to them and preserve all data stored on those devices, including the iCloud and Gmail data. Again, until Mr. Kyprianou at Setec Investigations has received the passwords to the two Gmail accounts and the additional iCloud account and is able to successfully access those accounts and image this data, the devices will not be returned to Mr. Qin. We once again ask that you and Mr. Qin comply with the Court's clear order to provide all passwords, and/or to enable Mr. Kyprianou to reset the passwords.

Your list of questions to Mr. Kyprianou is inappropriate given your failure to comply with the Court's order to produce all passwords. Nevertheless, we confirm that Pillsbury has not received any of the data recovered by Mr. Kyprianou to date. We understand that Setec Investigations has imaged the information on the phones which it has been able to access. However, as we have repeatedly informed you, Setec Investigations does not yet have access to the iCloud and Gmail accounts on Mr. Qin's phones because he refuses to provide this information. Because Mr. Qin has not provided his passwords, Setec is not able to complete the imaging process. Moreover, given Mr. Qin's pattern of destroying and deleting information, his devices will not be returned until he provides all passwords to Mr. Kyprianou and allows the full imaging of all information from Mr. Qin's phones.

Please immediately provide Mr. Qin's passwords. Once Mr. Qin's phones have been fully imaged, Mr. Qin's devices will be returned. We reserve all rights.

Best,
Carol


**Carol Lee** | Pillsbury Winthrop Shaw Pittman LLP
Counsel
31 West 52nd Street | New York, NY 10019-6131
t +1.212.858.1194
carol.lee@pillsburylaw.com | pillsburylaw.com

**From:** Jennifer Blecher <jblecher@seidenlaw.com>
**Sent:** Saturday, August 19, 2023 1:30 PM
**To:** Madigan, Sarah M. <sarah.madigan@pillsburylaw.com>; Smith, Andrew C. <andrew.smith@pillsburylaw.com>
**Cc:** Sant, Geoffrey <geoffrey.sant@pillsburylaw.com>; Lee, Carol <carol.lee@pillsburylaw.com>; Ray, III, Hugh M. <hugh.ray@pillsburylaw.com>; Amiad Kushner <akushner@seidenlaw.com>; Xintong Zhang <xzhang@seidenlaw.com>; Wang, Fangwei <fangwei.wang@pillsburylaw.com>
**Subject:** Re: Huzhou Chuangtai Rongyuan Inv. Mgmt. Partnership, et al. v. Qin, No. 21-cv-9221-KPF – Mr. Qin's Cell Phones

Counsel,

You have now been in possession of Mr. Qin's cell phones for more than 36 hours despite representing to the Court that it would take only a few hours to image the data, which was all the Court authorized you to do, and that the phones would be returned to him on Friday. Nothing in Ms. Madigan's email indicated that the inability to obtain a password that Mr. Qin has repeatedly and consistently said he does not know in any way inhibited your ability to preserve the contents of these phones, nor is possession of either phone required to "access" the contents of an icloud account or web-based email account. The phones must be returned immediately.

Mr. Qin fully complied with the Court's order, surrendered the phones to your forensic agent for imaging, provided the passwords he was aware of or permitted you to reset passwords he did not know, and even called and messaged a friend in an attempt to obtain the passwords to his Gmail account. He has said he has no knowledge of the two additional accounts you identified (i.e., the Gmail account and the icloud account), but believes the icloud

account may be somehow related to SMI because the number at the end of the account name, *i.e.*, 198, is SMI's listing number.  He has continued to attempt to contact others to obtain the password to his Gmail account and tried to reset the password, but the fact that he does not have his phone makes that difficult, and you have no basis to treat third parties (such as his ex-wife Ms. Liu) as subject to his control.  In any event, the Court did not authorize you to hold his phones hostage until he satisfies your other demands.  You are effectively engaged in an unauthorized seizure at this point and we request that you identify the authority under which you believe you are entitled to retain possession of his phones.

Additionally, your forensic agent has not responded to our questions, and the fact that you have provided no meaningful update regarding the status of the collected data and whether you have searched or reviewed any of it is very troubling, especially given that Ms. Madigan's email began by referring to "searching" his data rather than preserving it as the Court ordered.  The Court's order did not address any search and mere preservation of data does not grant you unfettered access to it.  Any search must still respect the permissible scope of discovery under Rule 69, applicable privileges and protections, and Mr. Qin's constitutional rights.  We made clear to Ms. Madigan and Ms. Wang (and they agreed) on Thursday night that no searches were to be performed prior to meeting and conferring regarding a protocol for reviewing the data, including with respect to protecting privilege and ensuring that any search is permissible in scope.

We therefore again request that you have your forensic agent respond to our questions, and request that you immediately confirm that no searches have been performed on Mr. Qin's phones, email or social media accounts and that no one at the Pillsbury firm has received or reviewed any data from them.  If any transmission or search has been performed, please identify the names of each person at your firm who received or reviewed the data, the time this occurred, and whether any of that data has been transmitted to your clients or outside of the U.S.

If you or your forensic agent continue to ignore these requests, we will have to seek immediate relief from the Court.

- Jennifer

**Jennifer Blecher, Esq.**
*Senior Counsel*

**SEIDEN | LAW**

**Seiden Law LLP**
322 Eighth Avenue, Suite 1200
New York, NY 10001 USA
***O.*** (646) 766-1763
***E.*** jblecher@seidenlaw.com
***W.*** www.seidenlaw.com

Confidentiality Statement: This email (including any attachments) may **contain** confidential information and is protected by law. If you are not the correct recipient, please notify the sender immediately and delete this email. Please do not copy this email for any other purpose or disclose the contents of this email.

---

From: Madigan, Sarah M. <sarah.madigan@pillsburylaw.com>
Date: Friday, August 18, 2023 at 4:16 PM
To: Smith, Andrew C. <andrew.smith@pillsburylaw.com>, Jennifer Blecher <jblecher@seidenlaw.com>
Cc: Sant, Geoffrey <geoffrey.sant@pillsburylaw.com>, Lee, Carol <carol.lee@pillsburylaw.com>, Ray, III, Hugh M. <hugh.ray@pillsburylaw.com>, Amiad Kushner <akushner@seidenlaw.com>, Xintong Zhang <xzhang@seidenlaw.com>, Wang, Fangwei <fangwei.wang@pillsburylaw.com>
Subject: RE: Huzhou Chuangtai Rongyuan Inv. Mgmt. Partnership, et al. v. Qin, No. 21-cv-9221-KPF – Mr. Qin's Cell Phones

Counsel,

Searching Qin's phones would have taken only a few hours but for the fact that we do not have Qin's Gmail password. Without it, we cannot access certain data stored on the phone or in the cloud. In response to the message Tony sent from Qin's phone last night, we received two potential passwords from Kevin, neither of which work. A number ending in 86 is one of the ways the Gmail account can be verified so that we can access the account by changing the password. Our IT expert has identified the number ending in 86 as Emma Duo Liu's. We ask that you coordinate with her, or her counsel Angus Ni (angus@afnlegal.com), to set a time when Emma will be ready, willing, and able to respond when our vendor pings Emma's device (the phone with the number ending in 86) for verification. Our vendor's contact information is: Tino Kyprianou, tkyprianou@setecinvestigations.com.

When reviewing both of Qin's phones, our vendor also identified an additional Gmail account, Sinuosiminghan@gmail.com, as well as a second iCloud account, qinhui198@icloud.com.  Neither of these accounts has previously been disclosed to us in response to our multiple requests for Qin's contact information. What are the passwords for these accounts?

Until our vendor is able to access both Gmail accounts and the second iCloud account, he will retain the phones.

Regarding a protocol, it is premature to discuss any protocol before we have all of the access information.

Regards,
Sarah

Sarah M. Madigan | Associate
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131
t +1.212.858.1169
sarah.madigan@pillsburylaw.com | website bio

From: Smith, Andrew C. <andrew.smith@pillsburylaw.com>
Sent: Friday, August 18, 2023 4:06 PM
To: Jennifer Blecher <jblecher@seidenlaw.com>
Cc: Sant, Geoffrey <geoffrey.sant@pillsburylaw.com>; Lee, Carol <carol.lee@pillsburylaw.com>; Ray, III, Hugh M. <hugh.ray@pillsburylaw.com>; Amiad Kushner <akushner@seidenlaw.com>; Xintong Zhang <xzhang@seidenlaw.com>; Madigan, Sarah M. <sarah.madigan@pillsburylaw.com>; Wang, Fangwei <fangwei.wang@pillsburylaw.com>
Subject: Re: Huzhou Chuangtai Rongyuan Inv. Mgmt. Partnership, et al. v. Qin, No. 21-cv-9221-KPF – Mr. Qin's Cell Phones

Jennifer,

I note that you did not copy the two Pillsbury attorneys who attended the device collection. I am copying them here. One of them will respond before 4:30 pm.

Sincerely,
Andy

Sent from my iPhone


Andrew C. Smith | Partner
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131
t +1.212.858.1743 | f +1.212.858.1500 | m +1.917.687.2099

andrew.smith@pillsburylaw.com | website bio

On Aug 18, 2023, at 4:00 PM, Jennifer Blecher <jblecher@seidenlaw.com> wrote:

Counsel,

We have still received no response regarding the status of Mr. Qin's phone, notwithstanding that he fully complied with the Court's order and notwithstanding representations made to the Court that the imaging process would only take a few hours and that the phone would be returned to him today.  Mr. Qin needs his phone to, among other things, contact his children, who are currently out of the country.  Both phones have been in your vendor's possession for 20 hours and it has been five hours since we inquired about its status.  If we do not receive a response indicating the status as well as the time and place of return of the phone by 4:30 p.m., we will be reaching out to the Court for further relief.

- Jennifer

From: Jennifer Blecher <jblecher@seidenlaw.com>
Date: Friday, August 18, 2023 at 10:58 AM
To: Sant, Geoffrey <geoffrey.sant@pillsburylaw.com>, Lee, Carol <carol.lee@pillsburylaw.com>, Ray, III, Hugh M. <hugh.ray@pillsburylaw.com>, Smith, Andrew C. <andrew.smith@pillsburylaw.com>
Cc: Amiad Kushner <akushner@seidenlaw.com>, Xintong Zhang <xzhang@seidenlaw.com>
Subject: Huzhou Chuangtai Rongyuan Inv. Mgmt. Partnership, et al. v. Qin, No. 21-cv-9221-KPF – Mr. Qin's Cell Phones

Counsel,

I write to confirm that yesterday, Mr. Qin's Chinese cell phone was taken into possession by a third-party vendor during the Court hearing and that his U.S. cell phone was handed over to the vendor without incident last night at the Seiden Law office in your presence, as well as to follow up on the status of both phones.  The vendor had stated that it would only take a few hours to image those phones and that they would then be returned to Mr. Qin.  Please provide us with the vendor's contact information and let us know when we can expect to receive the phones back.

Separately, our position is that the data from those phones should not be searched until the parties have met and conferred regarding an appropriate protocol that would respect any issues related to attorney-client or other applicable privilege or protection.  Please let us know your availability for a call to discuss that issue.

Regards,

Jennifer

Jennifer Blecher, Esq.
*Senior Counsel*

**SEIDEN | LAW**

Seiden Law LLP
322 Eighth Avenue, Suite 1200
New York, NY 10001 USA
O.  (646) 766-1763
E.  jblecher@seidenlaw.com
W.  www.seidenlaw.com

Confidentiality Statement: This email (including any attachments) may contain confidential information and is protected by law. If you are not the correct recipient, please notify the sender immediately and delete this email. Please do not copy this email for any other purpose or disclose the contents of this email.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.