UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT
PARTNERSHIP, HUZHOU HUIHENGYING
EQUITY INVESTMENT PARTNERSHIP, and
HUZHOU HUIRONGSHENG EQUITY
INVESTMENT PARTNERSHIP,

                Petitioners,

                     v.

HUI QIN,

                Respondent.
-------------------------------------------------------------------x

1:21-cv-09221 (KPF)

**DECLARATION OF ANDREW C. SMITH IN FURTHER SUPPORT OF PETITIONERS' THIRD MOTION TO COMPEL (RE: ORDERS OF APRIL 18, 2023 AND AUGUST 17, 2023), FOR ORDER TO SHOW CAUSE AND RENEWED MOTION FOR CONTEMPT AGAINST RESPONDENT HUI QIN**

1. I am a partner at Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"). Pillsbury represents Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership (collectively, "Petitioners") in the above-captioned action.

2. I am licensed and in good standing to practice law in the State of New York.

3. I submit this declaration in further support of Petitioners' Third Motion to Compel (Re: Orders of April 18, 2023 and August 17, 2023), for Order to Show Cause and Renewed Motion for Contempt against Respondent Hui Qin (Dkts. 220).

4. I am one of the supervising partners from Pillsbury on this matter.

5. During a break at Qin's deposition on April 25, 2023, my colleague Hugh Ray and I had discussions with Qin's counsel, Amiad Kushner and Tony Zhang, about Qin's failure to provide any communications ordered produced by the Court in its April 18, 2023 order. Mr. Zhang

reported that he personally had attempted to review, collect and produce the responsive documents off of Qin's phone (or phones) but was having difficulty. Mr. Ray and I were surprised to learn that Mr. Zhang, who communicated a lack of technical ability, was attempting to do this collection himself. We told them that they should engage a third party vendor, as all parties to litigation typically do, and told them we would provide them with a recommended vendor if they did not have one. They indicated they would welcome the recommendation.

6. That afternoon, on April 25, 2023, my colleague Carol Lee sent Mr. Kushner and Mr. Zhang the contact information for Setec Investigations ("Setec"). Mr. Zhang responded: "Well received with thanks." *See* Exhibit A (4/25/23 email chain). Qin and Seiden Law never engaged Setec or any other vendor to assist in their collection efforts.

7. Mr. Tino Kypriano from Setec, the same vendor that Pillsbury recommended to Seiden Law and that they did not engage, attended the August 17, 2023 hearing at Pillsbury's request and was instructed by the Court to conduct a device collection. Those instructions are described at length elsewhere so I will not repeat them here.

8. I directed and remotely oversaw the device collection efforts and supervised two junior associates from Pillsbury, Ms. Fangwei Wang and Ms. Sarah Madigan, in these efforts. All the actions they took in connection with these efforts were at my express direction.

9. I insisted that Ms. Madigan and Ms. Wang be present throughout the process and ensure that Qin did not attempt to communicate with anyone before his devices and messaging applications were secured and accessed. I was concerned that Qin would direct someone to delete messages from his email or remote storage accounts. This was a reasonable concern given (i) Qin's admitted deletion of messages in the past, and (ii) the fact that Qin has testified, during his

deposition and in a sworn declaration, that at least three of his assistants have access to his Gmail account.

10. Throughout the collection process I was in communication with Ms. Madigan, who sought my direction throughout the evening. I specifically instructed Ms. Madigan to let me know if there were any issues or concerns during the collection process.

11. Almost immediately Ms. Madigan contacted me with concerns. She informed me of an unexplained delay in departing for Seiden Law's offices, and a suggestion by Qin's counsel that Qin could leave and not accompany Mr. Kyprianou and counsel to Seiden Law's offices. When Ms. Madigan appropriately insisted that Qin should not leave because he was required by the Court's order to go to Seiden Law's offices, she was challenged by Mr. Amiad Kushner, who questioned Ms. Madigan's understanding of the Court's order. Only after Mr. Kyprianou also reiterated the Court's order necessitating Qin's presence to provide access information did Mr. Kushner relent.

12. I was shocked to hear that Mr. Kushner, a partner at Seiden Law and Qin's most senior attorney on this matter, had suggested that Qin could leave – in direct violation of this Court's unambiguous order – and then challenged Ms. Madigan, a junior associate at Pillsbury, when she appropriately objected.

13. If I had any idea that Qin and Qin's counsel would behave in the manner that they did I would have personally supervised the endeavor.

14. I also was informed that Qin was yelling in Chinese in the Lyft ride to Seiden Law's offices, protesting the requirement to turn over information to Petitioners from his phone, and saying something to the effect that he would rather be incarcerated than turn over such information.

3

15. After learning about this comment, the unexplained delay and confusion surrounding the departure from the courthouse, and Mr. Kushner's improper suggestion that Qin could leave, I reiterated to Ms. Madigan and Ms. Wang that they should not let Qin out of their presence to ensure he did not attempt to communicate with anyone to delete his information remotely. I also instructed Ms. Wang, who speaks Chinese, to listen to any conversations that Mr. Qin may have with any third parties to ensure the same.

16. Shortly after counsel and Qin arrived at the Seiden Law offices, Ms. Madigan called me on my cell phone and informed me that Qin wanted to access his phone to make phone calls or send messages. I was placed on speaker phone and informed counsel that Qin should not be permitted to have any communications with third parties unless Pillsbury attorneys were privy to such communications, to ensure that Qin did not instruct any third parties to delete information. If he wanted to make a call to arrange dinner plans, as represented, Ms. Wang, who speaks Chinese, must be permitted to listen to that conversation.

17. At no time during the collection process did any of Qin's attorneys insist or even suggest that they should be permitted to have a private conversation with Qin that would be privileged. If they had I would have told them to wait until the device and password collection process was over.

18. Qin's attorneys did not raise this purported privilege issue until Petitioners raised Qin and Qin's attorneys' improper conduct. I take great offense to Seiden Law's accusation of ethical violations on the part of my two junior associates, who were acting at my direction, in an aggressive and hostile situation, to comply with the Court's order. The Court expressly ordered Pillsbury attorneys to accompany Qin, Qin's counsel and Mr. Kyprianou to Seiden Law's offices to be present throughout the collection process precisely to ensure that Qin *did not leave* and that

he provided all required passwords and access codes. Not to be potted plants. These associates, who acted wholly appropriately, have expressed great anxiety at being accused of ethical violations and threatened with disciplinary action. Qin's counsel's conduct – during the collection process and now their baseless attacks on these associates – is the only questionable conduct in this instance.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on August 24, 2023.

　　　　　　　　　　　　　　　　　　　　　　　Andrew C. Smith