UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT
PARTNERSHIP, HUZHOU HUIHENGYING
EQUITY INVESTMENT PARTNERSHIP, and
HUZHOU HUIRONGSHENG EQUITY
INVESTMENT PARTNERSHIP,

           Petitioners,

           v.

HUI QIN,

           Respondent.
---------------------------------------------------------------------x

1:21-cv-09221 (KPF)

**DECLARATION OF SARAH M. MADIGAN IN FURTHER SUPPORT OF
PETITIONERS' THIRD MOTION TO COMPEL (RE: ORDERS OF APRIL 18, 2023
AND AUGUST 17, 2023), FOR ORDER TO SHOW CAUSE AND RENEWED MOTION
FOR CONTEMPT AGAINST RESPONDENT HUI QIN**

    1.    I am an attorney at Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"). Pillsbury represents Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership (collectively, "Petitioners") in the above-captioned action.

    2.    I am licensed and in good standing to practice law in the State of New York.

    3.    I submit this declaration in further support of Petitioners' Third Motion to Compel (Re: Orders of April 18, 2023 and August 17, 2023), for Order to Show Cause and Renewed Motion for Contempt against Respondent Hui Qin (Dkts. 220).

**The August 17, 2023 Hearing**

    4.    Attached hereto as **Exhibit A** is a copy of the transcript of the August 17, 2023 hearing ("8/17 Hr'g Tr.").

5. At the August 17, 2023 hearing, the Court ordered Respondent Hui Qin ("Qin") to turn over his devices to Mr. Tino Kyprianou of Setec Investigations.

6. Specifically, at the August 17, 2023 hearing, the Court ordered "that what is known as the Chinese phone will be produced to the gentleman in the gallery from Setec Investigations." 8/17 Hr'g Tr. at 103:1-3.

7. With respect to the Chinese phone, the Court stated Qin "will be responsible for giving [Mr. Kyprianou] the information that he needs to access this. So I hope your client remembers the password that was used for this phone." *Id.* at 103:14-17.

8. In a colloquy with Mr. Kyprianou, the Court asked, "you will be explaining [to Qin's counsel], I imagine, that there will be something done to the password to prevent someone from remoting in while you're doing your work?" *Id.* at 105:14-16.

9. The Court then asked Petitioners' counsel, "does someone have the ability to accompany respondent's counsel to their office to pick up the other phone?" *Id.* at 106:2-4. Petitioners' counsel replied, "Absolutely. And we would go with Mr. Kyprianou." *Id.* at 106:5-6. The Court then responded, "So that will be this evening. I will let you all figure out who draws the short or long straw to accompany him back to the office." *Id.* at 106:7-9.

10. The Court told Mr. Kyprianou, "I want you to have both phones in your possession this evening." *Id.* at 106:14-15.

11. Counsel for Petitioners asked the Court to confirm its "order to be directing respondent to provide Mr. Kyprianou with all necessary passwords, access codes?" *Id.* 106:16-18. The Court replied, "Yes. All of those things. It's not worth it for him to have the device if he can't access it."

12. Mr. Kyprianou stated, "if there are any messages on the iCloud, then we need the password for that as well to access the iCloud." *Id.* 106:22-24. The Court replied, "I would expect that the iCloud passwords will be given in addition to the password to access the phone." *Id.* 106:25-107:1.

**The Device Collection Process**

13. I was directed by partner Andrew C. Smith, who is my supervisor at Pillsbury, to accompany Mr. Kyprianou, Qin, and his counsel to Seiden Law LLP's office.

14. I was instructed by Mr. Smith to ensure compliance with the Court's order directing Qin to turn over his devices to Mr. Kyprianou and his passwords. Specifically, Mr. Smith instructed me to ensure that Qin's U.S. phone was handed directly to Mr. Kyprianou, that Qin provided his passwords, and that nothing was deleted, whether remotely or otherwise, from either phone. Mr. Smith further instructed me to ensure that I was present with Qin until Qin provided full access and all passwords, so that Qin did not have an opportunity to use his device or otherwise signal to a third party to attempt to delete information.

15. I was in constant communication with Mr. Smith throughout the evening and under his direct supervision. All my actions were taken in furtherance of the directions I had been given by, and was receiving from, by Mr. Smith.

16. Mr. Smith told me to call him if I encountered any difficulty in the process. In attempts to effectuate Mr. Smith's directions I felt it necessary to call him to get his instructions directly regarding Qin's request to make dinner arrangements before the device collection process was over. We therefore called Mr. Smith. From this phone call, it was my understanding that Ms. Fangwei Wang, who understands Chinese, would be able to listen to Qin's phone calls

during the device collection process to ensure he was not instructing anyone to delete any information.

17. Qin's counsel did not make any objections on the basis of privilege during the device collection process on August 17, 2023.

18. Qin's counsel did not make any objections to Ms. Wang videotaping.

I declare under penalty of perjury tha t the foregoing is true and correct to the best of my knowledge, information and belief. Executed on August 24, 2023.

                                            Sarah M. Madigan