

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Andrew C. Smith
tel: 212.858.1743
andrew.smith@pillsburylaw.com

September 5, 2023

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2103
New York, NY 10007

> Re: *Huzhou Chuangtai Rongyuan Investment Management Partnership, et al. v. Hui Qin*, Case No. 21 Civ. 9221 (KPF) – **Response to Respondent's September 2, 2023 Letter**

Dear Judge Failla:

We represent Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership ("Petitioners"). We respectfully submit this letter in brief response to Respondent Hui Qin's September 2, 2023 sur-reply to their sur-reply ("9/2 Letter") (Dkt. 259). Qin's insistence upon sending sur-reply after sur-reply to this Court, all unauthorized, puts Petitioners' counsel in the difficult position of either responding and further deluging the Court, or else not responding and allowing Qin's false and misleading accusations to stand unanswered. As advocates for our clients, we cannot do the latter, and therefore apologize in advance.

*First*, Qin's claim that he has no "address" where responsive documents could reside mirrors Qin's position in multiple lawsuits (including this one and the underlying Arbitration proceedings) that there is simply no place to serve Qin, so he is immune from suit. Qin claims he has **no** "permanent residence" so there is no place where Petitioners can search for withheld information. 9/2 Letter at 1. Qin claims no search can be conducted at the addresses where Qin gets his mail, or uses as his legal residence on his New York state and federal tax returns, or where he receives financial statements – such as his AmEx records, which Qin still has not produced. This is not only unbelievable, it is wrong as a matter of law. Qin conflates home "ownership" with "residence" in support of this absurd position. Renters and other tenants reside at addresses they do not "own"; this does not immunize those residences from a lawful search. Just as his attempts to avoid service were properly rejected, so should Qin's arguments regarding the location of responsive documents.

*Second*, while Qin complains about the orders to image his devices and provide passwords, Qin's conduct forced the Court to issue these orders. As this Court stated, Qin "has violated each and every one of this Court's discovery orders." Dkt. 243 at 1. On August 17 the Court ordered Qin to

The Honorable Katherine Polk Failla
September 5, 2023
Page 2 of 3

provide his devices for imaging, and "all the necessary passwords" and "access codes" to access those devices and accounts that Qin had accessed on those phones, including his iCloud password. 8/17 Trans. 102:21-107:1. The August 24 Order expressly ordered Qin to provide passwords to "all of the accounts for which [Petitioners' vendor] has requested passwords" and cites Qin's admission that he had not complied with the August 17 Order to provide all court-ordered passwords. Dkt. 243 at 3-4 (citing to Resp. Br. 7-9).[1] Qin now takes the illogical position that, even though the Court specifically ordered Qin to turn over Gmail and iCloud passwords, supposedly this was just so that Setec Investigations ("Setec") could hold the passwords and do nothing with them. *See* 9/2 Letter at 2 (claiming Setec had no right "to use those passwords to download Gmail inboxes and Google drive data from the internet"). That makes no sense. Apparently, Qin believes this Court ordered access to his Gmail account to earn a gold star for compliance, not to preserve Qin's withheld emails. Making Qin's complaint all the more absurd, as recently as August 21, Qin's counsel informed the Court that Qin "does not use email," quoting Qin's sworn testimony that "I don't know how to send email," "read emails" or "do emails." Dkt. 219 at 2. Despite Seiden Law LLP ("Seiden") and Qin's obligations to collect and produce emails, neither ever produced a single responsive email and instead echoed Qin's unbelievable claims to this Court. They now complain that Setec has improperly collected what remains of the email account Qin claims not to have used.

Qin's intended "mo[tion] to vacate the August 24, 2023 contempt finding" is frivolous. Qin "violated each and every one of this Court's discovery orders" and has been held in contempt twice. This Court cited to "strong evidence" that Qin "engaged in the spoliation of evidence." Dkt. 243 at 1. Qin has either violated or sought reconsideration of every order directed at Qin since Seiden began representing him. As this Court held, the threat of incarceration was required to ensure Qin's compliance with its orders, as "all lesser sanctions imposed by the Court up to this point have been insufficient to coerce Respondent's compliance." Dkt. 243 at 3. Qin's accusation of "bad faith" therefore is wholly misplaced. Indeed, Petitioners agreed to extend the incarceration deadline to facilitate compliance, not once but twice – both times at the express suggestion of *Petitioners' counsel*. This is the epitome of good faith.

*Third*, Qin's persistent false accusation that Petitioners are a harassing arm of the CCP must end. What Qin calls "substantial evidence" (9/2 Letter at 2) is nothing but his own self-serving statements and citations to wholly unrelated media stories. As Petitioners have previously stated, Qin's purported "fear of China" excuse is no defense for his non-compliance with this Court's many orders finding him in contempt and in violation of his post-judgment discovery obligations. Instead, it is a distraction designed to delay and hinder Petitioners' ability to collect on their judgment and obtain the relevant information to aid them in doing so.

*Fourth*, Qin's attempted explanation of his false testimony regarding his Cathay Bank records and

---

[1] This Court also ordered the parties to negotiate and submit an ESI protocol by Friday, September 1. On Friday, September 1, Qin's counsel (Amiad Kushner) wrote: "Given travel schedules and the upcoming Labor Day weekend, our team is not available today to discuss" and suggested that the parties "discuss these issues on Tuesday." One day (11:57 AM on Saturday) after claiming Qin's legal team has no time to discuss the ESI protocol ordered by the Court, Mr. Zhang filed their 9/2 Letter, which was signed by Ms. Blecher.

The Honorable Katherine Polk Failla
September 5, 2023
Page 3 of 3

tax returns (9/2 Letter at 2) falls flat. When asked by the Court about money in his Cathay Bank account, Qin testified that "a few months ago" he "was paid a fee ending a contract" which, after deducting "from the credit card they [St. Tome] give to me," was "probably a few thousand dollars." 8/17 Trans. 34:1-2, 9-11. But there is no such payment from St. Tome into the Cathay Bank account in the past "few months"—or indeed at *any time* in 2023.[2] The payment Qin received "a few months ago" must have gone into a different bank account. Qin's counsel misrepresents Qin's testimony at the August 17 hearing to reconcile Qin's reported $72,000 income (in his tax returns) with the absence of any such revenue in his Cathay Bank records. Specifically, Qin's counsel falsely claims that the "remainder [*i.e.,* the missing *2022* reported income], as Qin testified, was retained by St. Tome to cover credit card expenses." 9/2 Letter at 2.[3] But Qin testified that the alleged credit card reimbursement occurred a "few months ago" – not in 2022. Further, Qin has not produced any of his St. Tome credit card records. Everyone must once again simply take Qin's ever-changing and unsupported "word" for it. And when Petitioners point out that the scant records Qin produced contradict his lies, Qin's counsel accuses Petitioners of "attempt[ing] to smear" Qin.

*Finally*, despite direct questioning from this Court at the August 17 hearing, neither Qin nor his counsel disclosed that Qin had engaged Hong Kong counsel in June 2023. The sole explanation for not disclosing this information in response to this Court's questions is Qin's counsel's statement that "*we* [Seiden] did not receive a copy of that letter until August 21, 2023." 9/2 Letter at 3 (emphasis added). But that is the problem. Petitioners' Renewed Motion for Contempt was briefed in July 2023 – yet Qin's counsel argued in that July briefing, and also at the August 17 hearing, that Qin could not get his Hong Kong records because he had to travel to China in person. According to Seiden, Qin withheld the June 2023 engagement from them.[4] Thus, there is no comfort in Qin's counsel's assurance that "[t]o the extent Hong Kong counsel obtains any responses from Qin's Hong Kong banks concerning Qin's Hong Kong bank statements, we [Seiden] will produce them to Petitioners promptly." *Id*. That assumes Qin will give them the information. There is no reason to believe Qin will voluntarily provide anything to his counsel or to anyone else. The entire history of this case is that Qin only provides information when threatened with incarceration.

Respectfully submitted,

*/s/ Andrew C. Smith*
Andrew C. Smith

cc: All counsel of record (via ECF)

---

[2] Indeed, the last payment into the Cathay Bank account from St. Tome was in November 2022. See Dkt. 258 (Ex. B) at Qin_00003602.

[3] St. Tome's apparent payments to Qin in 2022 (some deposits have no descriptions) are each exactly $4,000 or slightly more. *See* Dkt. 108-10 at Qin_0000541, 546, 551, 563, 570, 578, and Dkt. 258 at 3602 (totaling $37,286.67). *Compare* 9/2 Letter at 2 (stating St. Tome 2022 payments total "about $37,000.00"). But Qin's declared federal and state deductions (disclosed in his 2022 tax returns) mean that $54,034 was paid to Qin, which is not fully accounted for in his Cathay Bank account. There are other unreconcilable differences as well. For example, a 4/27/22 deposit in the amount of $35,041.00 from New Lido Theater Restaurant (Dkt. 108-10 at Qin_0000556) was not reported in Qin's 2022 tax return.

[4] Petitioners' September 1, 2023 letter noted that Seiden failed to produce responsive documents *held by Seiden* and that Seiden misled Petitioners in response to Petitioners' subpoena *to Seiden*. Seiden's 9/2 Letter says nothing in response. *See* Dkt. 257 at 2 n2.