UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUZHOU CHUANGTAI RONGYUAN
INVESTMENT MANAGEMENT
PARTNERSHIP, HUZHOU HUIHENGYING
EQUITY INVESTMENT PARTNERSHIP,
and HUZHOU HUIRONGSHENG EQUITY
INVESTMENT PARTNERSHIP,

                Petitioners,

-v.-

HUI QIN,

                Respondent.

21 Civ. 9221 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

Before the Court is Petitioners' Motion to Compel Documents from Third-Party Emma Duo Liu (Dkt. #266-67), Ms. Liu's Opposition to Petitioners' Motion (Dkt. #281), and Petitioners' Reply in Further Support of Their Motion (Dkt. #283). The parties' submissions were precipitated by Petitioners' June 9, 2023 document subpoena (the "Subpoena"), which commands Ms. Liu to produce twenty distinct categories of documents (each a "Request"). (Dkt. #197). To date, Ms. Liu has failed to produce a single responsive document, claiming that the "extraordinarily broad" Subpoena "demands ... documents to which Petitioners have no legal basis" and, further, that her "[Fifth] Amendment 'Act of Production' privilege and her spousal privilege" relieve her

---

[1]  For ease of reference, the Court refers to Petitioners' memorandum of law in support of their motion to compel as "Pet. Br." (Dkt. #267); to Ms. Liu's opposition memorandum as "Liu Opp." (Dkt. #281); and to Petitioners' reply memorandum in further support of their motion as "Pet. Reply" (Dkt. #283).

of the obligation to comply with it. (Liu Opp. 1). The Court now considers the extent of Ms. Liu's obligation to comply with the Subpoena.

The Fifth Amendment privilege against self-incrimination "is an exception to the general principle that the Government has the right to everyone's testimony." *Garner* v. *United States*, 424 U.S. 648, 658 n.11 (1976). As enumerated in the U.S. Constitution, the privilege against self-incrimination prohibits the Government from "[c]ompell[ing] [a person] in any criminal case to be a [w]itness against himself." U.S. CONST. amend. V. In more modern parlance, the privilege prohibits the Government from ordering an accused person to produce information that tends to incriminate her. *Couch* v. *United States*, 409 U.S. 322, 328 (1973).

Under the "act of production" doctrine, first promulgated by the Supreme Court in *Fisher* v. *United States*, 425 U.S. 391 (1976), the act of producing information — not just the information itself — may be protected by the privilege against self-incrimination. The *Fisher* Court held that an act of production is privileged when it involves "tacit averments" that are both "testimonial" and "incriminating" under prevailing Fifth Amendment jurisprudence, *id.* at 410-11, or, as reformulated by the Second Circuit, "when the witness's simple act of producing the documents could be used against the witness," *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 343 (2d Cir. 2013).

In the Second Circuit, to determine whether the act of production doctrine applies to a particular request for production, courts apply a two-part

test: "First, the court must determine whether the production of documents would be testimonial. Second, the subpoenaed party must demonstrate that the summoned documents are incriminating." *In re DG Acquisition Corp.*, 208 B.R. 323, 330 (Bankr. S.D.N.Y.), *aff'd*, 213 B.R. 883 (S.D.N.Y. 1997), *aff'd*, 151 F.3d 75 (2d Cir. 1998) (citations omitted). At step one, the court will inquire whether the act of production "tacitly concedes the existence of the papers demanded and their possession or control by the [producer]," or "may implicitly authenticate the documents." *United States* v. *Fox*, 721 F.2d 32, 36 (2d Cir. 1983) (internal citations and quotation marks omitted). At step two, the court must determine whether the communicative elements of the act of production "provide a link in the chain of incrimination" or "tend to incriminate" the producer. *Id.* at 36, 40.

Two exceptions to the doctrine merit the Court's attention. The first is the "foregone conclusion" exception. To invoke the foregone conclusion exception, the requesting party must demonstrate that the communicative elements of the production of the documents — "[(i)] the existence of the documents, [(ii)] the [producer's] possession or control of the documents[,] and [(iii)] the authenticity of the documents" — are a foregone conclusion. *United States* v. *Greenfield*, 831 F.3d 106, 115 (2d Cir. 2016). That is, the requesting party must "independently establish the communicative elements inherent in [the] production of the sought records." *Id.* at 116.

The second is the "required records" exception. The required records exception abrogates the protection of the act of production doctrine as to

"documents that must be maintained by law." *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d at 344.  In determining whether the "required records" doctrine applies to a particular set of documents, courts apply a three-part test: (i) "the purposes of the United States' inquiry [in requiring the records] must be essentially regulatory"; (ii) the records must be "of a kind which the regulated party has customarily kept"; and (iii) "the records themselves must have assumed 'public aspects' which render them at least analogous to public documents."  *Grosso* v. *United States*, 390 U.S. 62, 67-68 (1968).  Critically, the recordkeeping requirement must be "imposed [by the Government] in an essentially non-criminal and regulatory area," and must not be "directed at a selective group inherently suspect of criminal activities." *Marchetti* v. *United States*, 390 U.S. 39, 57 (1968) (internal quotation marks omitted).

As an initial matter, the Court rejects Ms. Liu's contention that the Subpoena is "vastly overbroad."  (Liu Reply 10).  Generally speaking, wide-ranging post-judgment discovery is permitted in New York federal and state courts, including asset discovery from third parties.  *EM Ltd.* v. *Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment." (citing Fed. R. Civ. P. 69(a)(2))), *aff'd sub nom. Republic of Argentina* v. *NML Cap.*, Ltd., 573 U.S. 134 (2014).  Importantly, a party may seek information regarding the assets of a non-party "where the relationship between the judgment debtor and the non-party is sufficient to

4

raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing, Inc.* v. *Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977). The allegations in Petitioners' motion support the conclusion that Liu's relationship with Respondent meets this standard. (Pet. Reply 7-8). The Court also understands that counsel for Petitioners and for Ms. Liu have met and conferred so that Petitioners could clarify the materials sought. (*Id.* at 1-2).

Turning to the contents of the Subpoena, the Court finds that at a baseline level, a subset of the documents identified in the Subpoena is not protected by the Fifth Amendment. To begin, the records of any of the collective entities identified by Petitioners that are held by Ms. Liu in a representative capacity are not entitled to Fifth Amendment protection. *Fox*, 721 F.2d at 35 ("The constitutional privilege against self-incrimination is 'essentially a personal one, applying only to natural individuals.' It cannot be invoked by a collective entity or its representatives." (quoting *United States* v. *White*, 322 U.S. 694, 698 (1944))); *see generally Bellis* v. *United States*, 417 U.S. 85, 87-101 (1974) ("It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be.").

Such records include all documents that are responsive to Request #1(ii) (bank records of Relevant Entities) and Request #2(c) (credit card records of Relevant Entities). It also includes documents associated with Request #9 (agreements and communications involving Qin), Request #11 (mortgage documents and lease agreements), Request #12 (property appraisals), and

5

Request #20 (records of payments made on behalf of Qin), all of which concern an entity identified by Petitioners for which documents would be held by Ms. Liu in a representative capacity. The same goes for documents held by Liu belonging to the specific trusts identified by Petitioners in Request #3 (trust records). *See United States* v. *Fridman*, 974 F.3d 163, 182 (2d Cir. 2020) ("[T]rusts ... are collective entities for purposes of the Fifth Amendment.").

Additionally, Petitioners request certain documents in the Subpoena that are excepted from the act of production doctrine and are not shielded by the Fifth Amendment privilege. For instance, any passports or Form I-94s associated with Request #4 (immigration records) and any Form W-2s, Form 1099s, or their equivalents associated with Request #5 (tax records) and Request #13 (property tax records) unequivocally fall under the "required records" exception to the act of production doctrine, as such documents are regulatory in nature, customarily kept, and vital to a broader regulatory regime. *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d at 347-51. Indeed, the Second Circuit has explicitly held that an individual's W-2s, passports, and I-94s are not protected by the act of production doctrine. *Rajah* v. *Mukasey*, 544 F.3d 427, 442 (2d Cir. 2008); *see also United States* v. *Barile*, No. 06 Misc. 137 (LEK) (RFT), 2007 WL 3534261, at *3 (N.D.N.Y. Nov. 13, 2007).

The same is true for the Form W-2s associated with Request #7 (records of Qin's income and compensation); no law exists suggesting that such forms lose their status as "required records" in the hands of Ms. Liu. So too for those

6

records associated with Request #10 (vehicle records), Request #11 (mortgage records), and Request #16 (divorce records) that Liu is required to maintain pursuant to a law or regulation. *See, e.g.*, *In re Grand Jury Subpoena*, 21 F.3d 226, 227 (8th Cir. 1994) (identifying "licensing, titling, and purchase/sale records required under state law" as "required records"); *S.E.C.* v. *Ryan*, 747 F. Supp. 2d 355, 364 (N.D.N.Y. 2010) (identifying "real estate closing documents, loan and mortgage documents, promissory notes, [and] escrow accounts ... shared public[ly] and/or with third parties, such as banks, lenders, or investors" as "required records").

And at least one document identified in Petitioners' subpoena falls within the foregone conclusion exception to the act of production doctrine. In particular, Request #6 (Deed of Gift) demands the Deed of Gift, dated August 30, 2018, between Qin and Xuemin Liu and witnessed by Ms. Liu, including the Schedule of Assets attached thereto (the "Deed"), a copy of which Ms. Liu previously sent to Qin's counsel. (Pet. Br. 10 & Ex. 10). Through the email sent by Ms. Liu to Qin's counsel attaching the Deed, Petitioners have established their knowledge of the Deed's existence, Ms. Liu's control of the Deed, and the Deed's authenticity. (*See id.*). Accordingly, Petitioners have "independently establish[ed] the communicative elements inherent in [Ms. Liu's] production of the [Deed]" and it is no longer protected by the act of production doctrine or the Fifth Amendment. *Greenfield*, 831 F.3d at 116.

The remaining documents in Petitioners' subpoena may or may not be protected by the Fifth Amendment privilege against self-incrimination, but Ms.

Liu's blanket assertion of privilege an insufficient basis for the Court to make such a determination. *United States* v. *Cianciulli*, No. 18 Misc. 304 (RMB), 2001 WL 1097919, at *3 (S.D.N.Y. Sept. 19, 2001) ("A [party] asserting the Fifth Amendment may not rely on a blanket claim of privilege, but must assert his or her claim in the context of specific questions and on a document-by-document basis.")

The Court therefore ORDERS Liu to produce all responsive documents in her possession or control identified above as falling outside the scope of the Fifth Amendment privilege to Petitioners on or before **October 6, 2023**. In other words, the Court GRANTS Petitioners' motion to compel to that extent. As to the documents identified in Petitioners' subpoena that are not otherwise covered by this Order, the Court hereby ORDERS Ms. Liu to file a letter identifying with specificity — that is, as to each individual Request — the documents in her possession or control that are responsive to such Request and the reason(s) that the Fifth Amendment privilege applies to the act of producing the precise documents on or before **October 13, 2023**. As necessary, Ms. Liu is permitted to file such letter *ex parte* and under seal.

To the extent Ms. Liu wishes to claim "spousal privilege" as to any of the documents identified in the Subpoena, Ms. Liu must do so on a document-by-document basis, providing a privilege log to Petitioners identifying the basis of each such assertion. The Court cautions Ms. Liu, however, that "spousal privilege" in this case can only be claimed as to the limited set of responsive documents that consist of confidential communications between her and Qin

8

during the course of the marriage — and even then may not apply.  *See In re Donald Sheldon & Co., Inc.*, 191 B.R. 39, 48-49 (Bankr. S.D.N.Y. 1996).

The Clerk of Court is directed to terminate the motion at docket entry 266.

SO ORDERED.

Dated:   September 29, 2023
         New York, New York

                                          KATHERINE POLK FAILLA
                                          United States District Judge