UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUZHOU CHUANGTAI RONGYUAN INVESTMENT MANAGEMENT PARTNERSHIP, HUZHOU HUIHENGYING EQUITY INVESTMENT PARTNERSHIP, and HUZHOU HUIRONGSHENG EQUITY INVESTMENT PARTNERSHIP,

Petitioners,

-v.-

HUI QIN,

Respondent.

21 Civ. 9221 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Before the Court is Third-Party Emma Duo Liu's Motion for Reargument and Reconsideration (Dkt. #301-306) of this Court's September 29, 2023 Order (the "MTC Order" (Dkt. #296)) granting in part Petitioners' Motion to Compel Documents from Ms. Liu (Dkt. #266-268).[1] Also before the Court is Petitioners' opposition to Ms. Liu's motion (Dkt. #312-315), as well as Ms. Liu's reply in further support of her motion (Dkt. #320-321). The MTC Order directed Ms. Liu to produce certain documents in response to Petitioners' June 9, 2023 document subpoena (the "Subpoena") as to which Ms. Liu was asserting her Fifth Amendment privilege. (MTC Order 8). Specifically, the Court ordered Ms. Liu's production of all documents in her possession, custody, or control that, on their face, fall outside the scope of the Fifth Amendment privilege. (*Id.*; *see,*

---

[1] For ease of reference, the Court refers to Ms. Liu's memorandum of law in support of her Motion for Reargument and Reconsideration as "Liu Br." (Dkt. #306); to Petitioners' opposition to Ms. Liu's motion as "Pet. Opp." (Dkt. #312); and to Ms. Liu's reply in further support of her motion as "Liu Reply" (Dkt. #321).

*e.g.*, *id.* at 5 ("[T]he records of any of the collective entities identified by Petitioners that are held by Ms. Liu in a representative capacity are not entitled to Fifth Amendment protection.")). The MTC Order further required Ms. Liu to file a letter with the Court identifying all responsive documents in her possession or control, the production of which documents Ms. Liu still believed — consistent with the Order — to be protected by the Fifth Amendment privilege, as well as the reason(s) for such belief. (*Id.* at 8).

Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 govern motions for reconsideration, depending on the type of order at issue. *See Cadet* v. *All. Nursing Staffing of New York, Inc.*, No. 21 Civ. 3994 (KPF), 2023 WL 3872574, at *4 (S.D.N.Y. Jan. 6, 2023), *reconsideration denied*, 2023 WL 3872558 (S.D.N.Y. Apr. 12, 2023); *Silverberg* v. *DryShips Inc.*, No. 17 Civ. 4547 (SJF), 2018 WL 10669653, at *2 (E.D.N.Y. Aug. 21, 2018); *United States* v. *Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y. 11362*, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014); *see also* Fed. R. Civ. P. 59(e) (motion to alter or amend judgment), 60(b) (motion for relief from judgment or order); Local Civ. R. 6.3 (motion for reconsideration). Reconsideration motions are subject to a "strict" standard, *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and will be granted "only when the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *Sec. & Exch. Comm'n* v. *Gottlieb*, No. 98 Civ. 2636 (LAP), 2021 WL

5450360, at *2 (S.D.N.Y. Nov. 22, 2021) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

Importantly, a reconsideration motion is not a vehicle (i) to "introduce additional facts not in the record on the original motion"; (ii) to "advance[] new arguments or issues that could have been raised on the original motion"; or (iii) to "relitigate an issue already decided." *Silverberg*, 2018 WL 10669653, at *2 (collecting cases); *accord Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012). Instead, reconsideration may be warranted where the movant "can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257; *see also Lichtenberg* v. *Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (summary order). Ultimately, "the decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." *Vincent* v. *Money Store*, No. 03 Civ. 2876 (JGK), 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011).

The instant motion asks this Court to reconsider the MTC Order on four separate grounds. (Liu Br. 1). According to Ms. Liu, the MTC Order (i) "failed to address her over-breadth objections to specific demands within Petitioners' sweeping subpoena"; (ii) "erroneously relied on arguments made for the first time in Petitioners' reply papers"; (iii) "erroneously found that Ms. Liu cannot assert the [Fif]th Amendment Act of Production privilege pertaining to any immigration records"; and (iv) "set a five-business-day deadline which, at least

3

for electronic communications, was impossible to meet." (*Id.*). The Court addresses each objection in turn.

As to Ms. Liu's first basis for reconsideration, the Court rejects as demonstrably false her contention that the Court "failed to rule on the specifics of a key argument made in movant's opposition … that specific demands in the subpoena are vastly overbroad." (Liu Br. 7-8). The MTC Order directly and sufficiently addressed Ms. Liu's overbreadth argument, explaining:

> Generally speaking, wide-ranging post-judgment discovery is permitted in New York federal and state courts, including asset discovery from third parties. *EM Ltd.* v. *Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment." (citing Fed. R. Civ. P. 69(a)(2))), *aff'd sub nom. Republic of Argentina* v. *NML Cap., Ltd.*, 573 U.S. 134 (2014). Importantly, a party may seek information regarding the assets of a non-party "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing, Inc.* v. *Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977). The allegations in Petitioners' motion support the conclusion that Liu's relationship with Respondent meets this standard. ([Dkt. #283 at] 7-8).

(MTC Order 4-5). For this reason, Ms. Liu's overbreadth argument is not one that the Court "overlooked … in other words, [a matter] that might reasonably be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257. As such, it is not a valid basis for reconsideration. *Id.* Nonetheless, the Court will elucidate further for the sake of clarity.

4

In cases involving the scope of a subpoena of a third-party witness seeking information in aid of satisfying a judgment, "the presumption should be in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets." *Owens* v. *Republic of Sudan*, No. 01 Civ. 2244 (JDB), 2020 WL 4039302, at *5 (D.D.C. July 17, 2020) (alterations adopted) (internal quotation marks omitted); *accord Gujarat State Petroleum Corp. Ltd.* v. *Republic of Yemen*, No. 19 Misc. 547 (RA), 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022). "Those related matters may include information relevant to the existence or transfer of the judgment debtor's assets, as well as the location and source of those assets." *Id.* (alterations adopted) (internal quotation marks omitted).

Here, the Court believes that all of the requests in the Subpoena are directed at uncovering information surrounding the existence, transfer, location, or source of Mr. Qin's assets. Ms. Liu's banking records, for instance, could reveal as-yet-undisclosed transfers of money from her to Mr. Qin and vice versa. Further, Ms. Liu's immigration records may shed light on the country in which her or Mr. Qin's assets were located at any particular point in time. The Court strains to see how such requests are not, at the very least, "reasonably related to the judgment debtor, [his] assets, or suspected transfers of [his] assets[.]" *D'venza S.p.A. In Bankr.* v. *Garrick & Co.*, No. 96 Civ. 0166 (DLC) (KNF), 1998 WL 13844, at *4 (S.D.N.Y. Jan. 15, 1998).

What is more, the notion that "Petitioners have not made an adequate showing to justify discovery into the wide range of information sought about Ms. Liu's highly personal financial records or those of her solely owned companies" is wholly at odds with the record. (Liu Br. 8). In the more than two years since this case was initially filed, Petitioners have brought forth a veritable deluge of evidence revealing the breadth and depth of the ties between Ms. Liu and Mr. Qin, beyond their marital relationship. For example:

- On April 2, 2020, a limited company associated with Mr. Qin transferred a mansion located on 39 Applegreen Drive to Ms. Liu's mother; days later, Ms. Liu's mother transferred the mansion to her and Ms. Liu as joint tenants for only $10. (Dkt. #52 at 2, 6).

- Mr. Qin was served in this matter on December 23, 2021, as he drove his Rolls Royce out of that same mansion, where Ms. Liu still resides. (Dkt. #52 at 3; Dkt. #111 at 9).

- At Mr. Qin's January 30, 2023 deposition, he testified that in 2022, he sought U.S. citizenship based upon his marriage to Ms. Liu (Dkt. #108-11 at 34:14-25); that, historically, he has sent stacks of pre-signed blank checks to Liu for her use (*id.* at 192:2-5; 192:25-193:16); that he repeatedly transferred payments of up to $100,000 to Ms. Liu's father, including two such payments in September 2022 (*id.* at 181:16-183:18); that he receives $4,000 to $5,000 each month from "St. Tome," an entity registered at the 39 Applegreen Drive address (again, Ms. Liu's home address) (*id.* at 168:25-169:14); and that St. Tome's ownership is connected "to my ex-wife" (*id.* at 127:13-17), among many other statements to the same effect.

- In his April 21, 2023 Objections and Responses to Petitioners' Supplemental Post-Judgment Demands for Production, Mr. Qin claimed that he had recently "communicated with one of the directors of St. Fortune

6

>   Group LLC, Ms. Duo Liu (a/k/a Emma Liu)[,] for the purpose of borrowing money to pay certain attorney fees[.]" (Dkt. #176 at 45).
>
> - At his April 25, 2023 deposition, Mr. Qin stated that he had been staying at Ms. Liu's residence "a lot since [the] later part of [2022]" (Dkt. #176-10 at 411:8-21), and that he had asked Ms. Liu "at least three or four times" the prior week for records concerning his various trusts that she was apparently holding (*id.* at 422:2-3).
>
> - The password reset function on Mr. Qin's mobile phone sends a verification code to Ms. Liu's phone. (Dkt. #223 at 1).

(*See also* Pet. Opp. 11 n.11). Simply put, there is more than enough evidence to "raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing, Inc.*, 76 F.R.D. at 562.

As a second basis for her reconsideration motion, Ms. Liu argues that the Court's MTC Order "erroneously relied on arguments made for the first time in Petitioners' reply papers with no opportunity for Ms. Liu to respond to them[.]" (Liu Br. 1). Specifically, according to Ms. Liu, the Court relied only upon the statements in Petitioners' reply memorandum of law in further support of their motion to compel to conclude that Petitioners had produced sufficient evidence of Mr. Qin and Ms. Liu's relationship to justify the breadth of the Subpoena. (*Id.* at 10).

Not so. To start, while Ms. Liu is correct that the MTC Order cited only Petitioners' reply memorandum in support of its conclusion regarding Ms. Liu and Mr. Qin's relationship (*see* MTC Order 5), the Court is not required to catalogue for Ms. Liu an exhaustive list of all of the assertions in any of Petitioners' submissions that may lend support

7

to each this Court's findings (*see* Pet. Opp. 15 ("Liu cites to no authority for demanding the Court tic and tie every sentence in [her] [o]pposition or [Petitioners'] Motion to Compel for the [MTC] Order to be valid.")). Notwithstanding, the Court notes that Petitioners cited evidence substantiating the materiality of Mr. Qin and Ms. Liu's relationship in their opening brief as well. For example, Petitioners noted that:

> [Qin] has sworn he has communicated with [Liu] regarding [the] Relevant Entities and Relevant Properties [identified in the Subpoena]. He has sworn he uses her company's car. He is paid by companies she controls.

(*See* Dkt. #267 at 11 (citations omitted)). Petitioners further related that

> [In 2018] [Liu's] mother received, in an apparently fraudulent multimillion-dollar asset transfer, the 39 Applegreen Drive mansion from Qin for no consideration, which Liu ultimately received for nominal consideration. Mere days after the underlying arbitration award was issued by CIETAC, Liu's entities holding the Plaza penthouses received a $27 million loan, guaranteed by Liu and a trust she controls, to satisfy all mortgages on those properties. Liu helped Qin avoid service of Petitioners' initial papers in this proceeding by falsely claiming that they no longer live together and that she has no contact with him, when in fact he stays at her home[.]

(*Id.* at 14 (citations omitted)).

In view of this discussion in Petitioners' opening brief, the Court cannot conclude that "Ms. Liu was denied any ability to address the[] [] arguments and factual assertions raised by Petitioners" pertaining to Ms. Liu and Mr. Qin's relationship. (Liu Br. 12). The Court accordingly finds no "need to correct a clear error or prevent manifest injustice" and denies

8

reconsideration of the MTC Order on this ground. *Gottlieb*, 2021 WL 5450360, at *2 (internal quotation marks omitted).

As a third basis for reconsideration of the MTC Order, Ms. Liu asserts that this Court's finding regarding Petitioners' request for immigration records is erroneous. (Liu Br. 14). This section of Ms. Liu's reconsideration motion reiterates arguments that were made in her initial submissions on Petitioners' Motion to Compel. (*Compare id.* ("The Court's reliance on [*Rajah* v. *Mukasey*, 544 F.3d 427 (2d Cir. 2008)] is misplaced as th[at] case[] speak[s] to an individual's production of *their own* immigration papers." (emphasis in original)), *with* Dkt. #281 at 8 ("There is nothing in *Rajah* or other Second Circuit caselaw preventing a party from relying on the act of production doctrine to decline to produce another individual's immigration records.")). The Court is entitled to deny reconsideration on this basis alone. *Silverberg*, 2018 WL 10669653, at *2 (indicating that a reconsideration motion is not a vehicle for "relitigat[ing] an issue already decided").

That said, the Court wishes to clarify its position on the substance of Ms. Liu's argument. While Ms. Liu may be correct that Petitioners did not cite a "case holding that immigration records in the hands of someone other than the applicant are not subject to act of production" (Liu Reply 9), it is also the case that Ms. Liu has not cited a case for the opposite proposition: that Mr. Qin's immigration records (otherwise constituting "required records"), in the hands of Ms. Liu, *are* subject to

9

the act of production. What is more, Ms. Liu has provided the Court with no factual basis (in her *ex parte* submissions or otherwise) from which the Court can infer that her "simple act of producing" Mr. Qin's immigration records "could be used against [her]." *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 343 (2d Cir. 2013).

To the extent that Ms. Liu believes such a factual basis or legal support exists, the Court invites Ms. Liu to submit — promptly — a supplemental *ex parte* submission explaining in detail why her production of Mr. Qin's immigration records "could be used against [her]," *In re Grand Jury Subpoena*, 741 F.3d 343, or relevant legal authorities. Absent such submission, the Court denies reconsideration on this ground.

As a final basis for reconsideration, Ms. Liu asserts that "given the issues raised in th[e] Motion [to Compel] and the impossibility of complying with the Court-imposed deadline, Ms. Liu should be granted additional time [beyond the deadline specified in the MTC Order] to gather and produce responsive documents." (Liu Br. 15). On this issue, the Court agrees with Ms. Liu. The difficulties associated with production specific to this matter identified by Ms. Liu in her reconsideration motion are sufficient to "alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257. Accordingly, the Court grants Ms. Liu's reconsideration motion to the extent that it will allow her more time for her production.

10

Finally, the Court will briefly address Petitioners' recently-filed letter motion requesting a pre-motion conference in anticipation of a further motion to compel Ms. Liu's compliance with the Subpoena (Dkt. #356-357), and Ms. Liu's response (Dkt. #361-362).[2]  In light of the Court's resolution of Ms. Liu's reconsideration motion as outlined above, the Court hereby DENIES Petitioners' request as moot.  The Court notes its disappointment at the tone of the parties' communications with each other preliminary to their most recent court submissions, and advises the parties to consider, when drafting future letters to one another, that such communications may later be reviewed by this Court.

In accordance with the foregoing analysis, the Court hereby GRANTS IN PART and DENIES IN PART Ms. Liu's Motion for Reargument and Reconsideration of the MTC Order.  The Court hereby ORDERS Ms. Liu to produce all documents in her possession or control on or before **March 25, 2024**, that are responsive to the Subpoena and fall outside the scope of the Fifth Amendment privilege, in accordance with the MTC Order and the Court's analysis herein.  The Court further ORDERS Ms. Liu to file a letter with the Court on or before **April 8, 2024**, identifying all responsive documents in her possession or control, the production of which documents Ms. Liu still believes — consistent with the MTC Order

---

[2]  The Court notes that initial drafting of this Order was substantially complete prior to Petitioners' (unauthorized) filing of a further reply to Ms. Liu's response (Dkt. #363). For this reason, such reply was not considered as part of the Court's determination of the issues discussed herein.

11

and the Court's analysis herein — to be protected by the Fifth Amendment privilege, as well as the reason(s) for such belief. Ms. Liu's production shall adopt the search terms identified in Appendix A of Mr. Ray's December 8, 2023 letter to Mr. Younger. (*See generally* Dkt. #357-4). Finally, the Court refrains from issuing sanctions against either party at this time and hereby DENIES Ms. Liu's fee-shifting request (Dkt. #361).

The Clerk of Court is directed to terminate the pending motions at docket entries 301 and 356.

SO ORDERED.

Dated: January 24, 2024
New York, New York

KATHERINE POLK FAILLA
United States District Judge