UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUZHOU CHUANGTAI RONGYUAN INVESTMENT
MANAGEMENT PARTNERSHIP, HUZHOU
HUIHENGYING EQUITY INVESTMENT
PARTNERSHIP, and HUZHOU HUIRONGSHENG
EQUITY INVESTMENT PARTNERSHIP,

Petitioners,

-v.-

HUI QIN,

Respondent.

21 Civ. 9221 (KPF)

**[REDACTED] SEALED
OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Yet again, this Court must contend with Respondent Hui Qin's impenitent refusal to abide by court orders, particularly insofar as they pertain to post-judgment discovery. After months of noncompliance, in April 2023, the Court imposed sanctions on Respondent in the form of the reimbursement of the reasonable attorneys' fees and expenses incurred by Petitioners Huzhou Chuangtai Rongyuan Investment Management Partnership, Huzhou Huihengying Equity Investment Partnership, and Huzhou Huirongsheng Equity Investment Partnership in connection with certain motion practice before this Court. Petitioners have submitted a fee petition with substantial supporting documentation, and Respondent has filed objections to that petition. For the reasons set forth in the remainder of this Opinion, the Court grants the fee petition in full.

**BACKGROUND**

**A.    The Arbitral Award and Its Confirmation**

Familiarity is presumed with the factual and procedural histories of this case, some of which have been summarized in previous orders of the Court. *See, e.g.*, *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2022 WL 4485277 (S.D.N.Y. Sept. 26, 2022) ("*HCR I*"), *order corrected on denial of reconsideration*, No. 21 Civ. 9221 (KPF), 2023 WL 2734433 (S.D.N.Y. Mar. 31, 2023) ("*HCR III*"); *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2022 WL 16908278 (S.D.N.Y. Oct. 28, 2022) ("*HCR II*"); *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2023 WL 6390161 (S.D.N.Y. Sept. 29, 2023) ("*HCR IV*"), *on reconsideration in part*, No. 21 Civ. 9221 (KPF), 2024 WL 262741 (S.D.N.Y. Jan. 24, 2024) ("*HCR VI*"); *Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2023 WL 6446147 (S.D.N.Y. Oct. 3, 2023) ("*HCR V*").  The case began in November 2021, when Petitioners moved pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. §§ 201-208, to confirm an arbitral award (the "Award") that had been issued in April 2021 pursuant to an arbitration before the China International Economic and Trade Arbitration Commission ("CIETAC").  (Dkt. #1).  Petitioners subsequently filed a motion for summary

judgment to confirm the award (Dkt. #15-18), and Respondent filed materials in opposition to the motion (Dkt. #28-33).[1]

In an Opinion and Order issued on September 26, 2022, the Court granted Petitioners' motion and confirmed the Award.  *HCR I*, 2022 WL 4485277, at *12.  In so doing, the Court rejected Petitioner's arguments that: "(i) the Supplemental Agreement is not valid; (ii) [Petitioner] was not given proper notice of the arbitration and was otherwise unable to present his case; (iii) the arbitration was not conducted in accordance with the terms of the Supplemental Agreement, and (iv) enforcing the award would contravene U.S. public policy."  *Id.* at *6.  On October 11, 2022, the Court entered a judgment that delineated money damages and reimbursements owed to Petitioners in excess of $500 million, and provided for certain injunctive relief (the "Judgment").  (Dkt. #46).

## B.    The Progress of Post-Judgment Discovery

Respondent's post-judgment conduct evokes a statement attributed to Andrew Jackson: "John Marshall has made his decision; now let him enforce it!"  DAVID LOTH, CHIEF JUSTICE JOHN MARSHALL AND THE GROWTH OF THE REPUBLIC 365 (1948).  Shortly after the Court's entry of the Judgment, Petitioners moved to dissolve the 30-day automatic stay of collection proceedings specified by

---

[1]     Many of the parties' submissions were filed under seal, with redacted versions then filed on the public docket.  To the extent possible, the Court has cited to and quoted from the redacted versions of these materials.  For ease of reference, the Court refers to the redacted versions of Petitioners' brief in support of their fee petition as "Pet. Fee Br." (Dkt. #151); of Respondent's brief in opposition as "Resp. Fee Opp." (Dkt. #164); and of Petitioners' reply brief as "Pet. Fee Reply" (Dkt. #166).

Federal Rule of Civil Procedure 62(a) and for expedited discovery, citing concerns that Respondent was or would be concealing assets to avoid collection of the Judgment.  (Dkt. #48-54).  The Court granted the motion to dissolve by order dated October 28, 2022 (Dkt. #61), and granted the request for expedited discovery by order dated November 1, 2022 (Dkt. #64).

From there, the parties proceeded on two tracks, with Petitioners focused on obtaining discovery in the service of enforcing the Judgment and Respondent focused on relitigating certain matters.  To those ends, Petitioners served post-judgment discovery requests (Dkt. #62), while Respondent sought reconsideration of the Court's decision confirming the Award (Dkt. #66-69) and moved to quash Petitioners' subpoenas (Dkt. #78-80).[2]  In an oral decision issued on January 6, 2023, the Court granted in part and denied in part Respondent's motion to quash, and set a schedule for Respondent's compliance with the subpoenas as modified.  (*See* Minute Entry for January 6, 2023; Dkt. #95 (transcript of conference held on January 6, 2023)).  However, Respondent's meager productions were focused on publicly available documents, and Petitioners were consequently forced to engage in motion

---

[2]  During this time, counsel for Respondent, Xue & Associates, P.C., moved to withdraw and was replaced by current counsel, the Seiden Law Group LLP (the "Seiden Firm"). (*See* Minute Entry for November 18, 2022; Dkt. #85 (transcript of conference held on November 18, 2022)).  At the conference held to discuss the motion to withdraw, Petitioners advised the Court that they had not yet received any materials from Respondent, despite the order expediting discovery.  (Dkt. #85).

In resolving Respondent's motion for reconsideration, the Court found that its original summary judgment opinion had included one factual error occasioned by an unfortunate redaction, but ultimately concluded that the error did not require the Court to disturb its earlier conclusion that Respondent had received proper notice of the arbitration.  *See Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship* v. *Qin*, No. 21 Civ. 9221 (KPF), 2023 WL 2734433, at *4 (S.D.N.Y. Mar. 31, 2023).

practice to obtain the evidence to which they were entitled.  (*See, e.g.*, Dkt. #93).

On January 9, 2023, Petitioners requested a conference with the Court to discuss their ongoing concerns about Respondent's compliance with his post-judgment discovery obligations and their anticipated motion to compel post-judgment discovery.  Specifically, Petitioners claimed that Respondent had not produced a single document in the three months following the entry of the Judgment.  (Dkt. #93).  The day after Petitioners filed their letter request, Respondent produced 82 documents, 81 of which were public, including court judgments in other cases involving Respondent.  (Dkt. #94).

The Court held a video conference on Petitioners' anticipated motion on January 20, 2023, during which Petitioners' counsel provided additional information regarding the deficiencies in Respondent's production.  (Dkt. #106-1 (transcript of conference held on January 20, 2023)).  The Court observed that Respondent's production to date had been "woefully inadequate" (*id.* at 16), and ordered the parties to meet and confer "in the month of January ... to ascertain whether and what additional documents exist and are being produced ... [a]nd to ascertain ... the objections" (*id.* at 48; *see also* Dkt. #100 (order)).

Separate and apart from Respondent's shortcomings in document production was his deposition conduct, which was obstructionist in a different manner.  From the inception of his deposition, Respondent made irrelevant speaking objections rather than answering the questions posed.  (*See, e.g.*, Dkt.

#108-11 at 11 (███████████████████████████████████████

████████████████████████████████), 25 (█████████████████

███████████████████████████████████████████████████████),

26-28 (███████████████████████████████████████████████

███████████████████).  After more than an hour of questioning with little

substantive response, the parties reached out to the Court for guidance.  (*Id.* at

46).  Respondent's counsel ███████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████" (*Id.* at 55).[3]  The Court found it "████████

████████████████████████████████████████████████████

██████████████████ (*Id.* at 58-59).  Ultimately, the Court

admonished Respondent to answer all questions unless his attorney instructed

him not to answer.  (*Id.* at 65-68).  Respondent then █████████████████

██████████████████████████████████████████████. (*Id.* at

68-69).

Respondent's deposition testimony after the Court's directives was only

slightly improved.  The problem may have been chemical in nature;

██████████████████████████████████████████████████████

███████████████████████████. (Dkt. #108-11 at 72).

---

[3]     Having subsequently reviewed the complete transcript of Respondent's deposition, the
Court finds that Respondent's counsel's statements to the Court that ████████████
████████████████ were optimistic to the point of being misleading.

Regardless, Petitioners' counsel found it difficult to get Respondent to answer

the questions asked; ███████████████████████████████████████

████████████████████████████████████████████████

███████. (*Id.* at 81-83).  Later, after repeatedly refusing to answer a line of

questioning to which his counsel did not object, Respondent announced that

even ██████████████████████████████████████████████

███████████████████████ (*Id.* at 90).  Respondent also █████████████

████████████████████. (*Id.* at 184-85).  On the issue of his finances,

Respondent explained that there were ████████████████████████████████

██████████████████████ (*id.* at 187), and ███████████████████

████████████████████████████████████████████████

████████████████████ (*id.* at 194).

### C.   The Motion to Compel, for Sanctions, and for a Finding of Contempt

On February 14, 2023, Petitioners moved to compel, for sanctions, and

for a finding of contempt (the "Motion to Compel").  (Dkt. #104-111).  Indeed,

Petitioners sought the imposition of sanctions on *both* Respondent and the

Seiden Firm for their alleged misconduct during the discovery process.  (*See,*

*e.g.*, Dkt. #110 at 6, 17-18, 24, 26-28, 30).  Petitioners' opening memorandum

of law began with a detailed accounting of Respondent's numerous

transgressions during the discovery process, including specific violations of the

Court's November 1, 2022 order expediting discovery, its January 23, 2023

order setting Respondent's deposition, and its January 30, 2023 oral decision

requiring Respondent to answer deposition questions.  (*See id.* at 6-12).

Additionally, Petitioners argued that Respondent had: (i) lied to this Court and other courts about various matters, including advancing false claims of forged signatures; (ii) lied to the Court about his relationship with his wife, including his transfer of assets to her for minimal consideration, and her nominal ownership of a company through which Respondent received substantial cash payments; (iii) spoliated evidence by having an assistant remove the evidence from the United States; (iv) refused to produce documents that he acknowledged were in his possession, custody, or control; (v) testified to possessing records even after having his counsel advise the Court of the contrary; (vi) used identification documents in the names of other people; and (viii) lied to U.S. immigration officials regarding his marriage.  (*Id.* at 12-23; *see also* Dkt. #108 (sealed Declaration of Carol Lee attaching more than 400 pages of exhibits in support); Dkt. #126-131 (reply materials)).

Respondent and the Seiden Firm filed separate oppositions to Petitioners' Motion to Compel.  (Dkt. #120 (Respondent), 121 (Seiden Firm); *see also* Dkt. #118, 119 (supporting declarations)).  Respondent's opposition argued his compliance with court orders and his permissible challenges to what he believed to be Petitioners' overbroad discovery demands (Dkt. #120 at 5-18; *but see* Pet. Fee Reply 8 (cataloging Respondent's acknowledged discovery violations, while noting that, as of June 12, 2023, Respondent still had not produced materials in compliance with the Court's April 18, 2023 order on Petitioners' Motion to Compel)), while the Seiden Firm pushed back on Petitioners' claims of witness-coaching (Dkt. #121 at 11-15).  Respondent and

his counsel also both argued that Petitioners were in fact seeking to reopen Respondent's then-pending Rule 60(b) motion seeking reconsideration of the Court's earlier decision confirming the arbitral Award.  (Dkt. #120 at 18-19, 26; Dkt. #121 at 15-11).

The Court issued an oral decision on Petitioners' Motion to Compel on April 18, 2023, after directing the parties to file information about Respondent's then-most recent document productions.  (Minute Entry for April 18, 2023).  Pursuant to the Court's order, the parties filed a joint update on Respondent's productions on April 13, 2023, in which they reported that in the weeks after Petitioners filed the Motion to Compel, Respondent had produced an additional 92 documents, 79 of which were publicly available.  (Dkt. #135).

At the outset of its oral decision, the Court found that Respondent had "repeatedly and willfully failed to comply with his discovery obligations," and thus ordered him to respond to certain of Petitioners' document requests; to sit for a second deposition at his own expense; and to pay the attorneys' fees and costs incurred by Petitioner in bringing the motion.  (Dkt. #136 (transcript of April 18, 2023 oral decision) at 4).  After recounting the extensive procedural history leading to Petitioners' motion (*id.* at 5-9), the Court set forth the relevant legal standards (*id.* at 9-10; *see also id.* at 16-17, 21-23).  It then considered the parties' arguments, and overruled each of Respondent's proffered objections to the production of certain materials.  (*Id.* at 11-12).  The Court directed Respondent to respond to outstanding document requests on or

before April 21, 2023.  (*Id.* at 15).  It also explained why it was ordering a second deposition for Respondent, one that was not limited to materials produced and/or information learned after the first deposition.  (*Id.* at 13-16).

The Court then proceeded to consider Petitioners' application for sanctions.  (Dkt. #136 at 16-21).  After reviewing a non-exhaustive list of factors used by courts in the Second Circuit, the Court found that the imposition of attorneys' fees and costs incurred by Petitioners in connection with their Motion to Compel was warranted because Respondent had (i) "repeatedly and intentionally violated the Court's discovery orders"; (ii) "completely refused to produce documents that he admits exist and are responsive to [P]etitioners' requests"; (iii) employed strategies of "produc[ing] copious public records on the eve of court deadlines to divert attention from his uncooperativeness" and "producing the bare minimum in key categories of documents"; and (iv) violated the Court's order compelling his deposition, and indeed flouted the Court's directives to him during that deposition.  (*Id.*).  As the Court observed:

> Time and again, [R]espondent has done what he perceives to be, but is not even, the bare minimum to be able to feign cooperation with [P]etitioners' discovery requests.  Given [R]espondent's pattern of behavior over a period of months, the Court finds that [R]espondent's repeated efforts to evade disclosure of his assets and to avoid collection are willful violations of his obligations under the Federal Rules of Civil Procedure and this Court's orders.  Monetary sanctions are appropriate.

(*Id.* at 20-21).  However, the Court declined to issue a contempt order against Respondent, hoping that its decision that day — including its imposition of

sanctions — "can serve as a wake-up call for [R]espondent and can prompt him to take his discovery obligations more seriously." (*Id.* at 23-24; *see also id.* at 27 (making clear that contempt remained available for continued noncompliance)).[4]  The Court also declined to sanction the Seiden Firm, finding that Petitioners had not adequately demonstrated the firm's bad faith.  (*Id.* at 25).

## D.    The Fee Petition

After negotiations between the parties to agree upon a sanctions figure proved unsuccessful, Petitioners filed their fee petition on May 9, 2023.  (Dkt. #148, 149, 151).  The materials submitted along with the fee petition included billing statements and retainer letters, as well as detailed information concerning the hourly rates charged by each of Petitioners' (and Respondent's) counsel.  (Dkt. #150).  Respondent filed his materials in opposition on June 7, 2023.  (Dkt. #163-164).  Petitioners then filed their reply submissions on June 12, 2023.  (Dkt. #166-167).

## DISCUSSION

## A.    Applicable Law

### 1.    The Interplay of Federal Rules of Civil Procedure 69 and 37

Under Federal Rule of Civil Procedure 69(a)(2), a judgment creditor may obtain discovery "[i]n aid of judgment or execution" in accordance with the procedure specified by the Federal Rules of Civil Procedure or the law of the

---

[4]    The Court's hope was not realized, as the docket in this case has now expanded to include a second, and a third, motion to compel.  (*See* Dkt. #172, 220).

state in which the court is located.  Fed. R. Civ. P. 69(a)(2).  The Second Circuit

has made clear that "broad post-judgment discovery in aid of execution is the

norm in federal and New York state courts."  *EM Ltd.* v. *Republic of Argentina*,

695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina* v. *NML

Cap., Ltd.*, 573 U.S. 134 (2014).  "The scope of discovery under Rule 69(a)(2) is

constrained principally in that it must be calculated to assist in collecting on a

judgment."  *Id.*; *see also Banco Cent. de Paraguay* v. *Paraguay Humanitarian

Found., Inc.*, No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *8 (S.D.N.Y.

Nov. 30, 2006) ("Under Rule 69(a), a judgment creditor is entitled to a wide

range of discovery concerning the assets and liabilities of a judgment debtor.").

Federal Rule of Civil Procedure 37(a)(1) gives a court authority to order a

party to respond to a discovery request upon a showing that the party has

failed to produce documents.  Fed. R. Civ. P. 37(a)(1); *see also* Fed. R. Civ.

P. 37(a)(3)(B)(i), (iv) (providing specifically for motions to compel responses to

deposition questions and requests for production, respectively).  The rule

further provides in cases of successful motion practice that, after giving the

non-moving party an opportunity to be heard, the court must require the non-

moving party to pay the moving party's reasonable expenses in making the

motion, absent a showing of substantial justification or other circumstances

making an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A).[5]  "[T]he

burden is on the violator to show that there was a substantial justification for

---

[5]    A further exception exists for circumstances in which the moving party "filed the motion
before attempting in good faith to obtain the disclosure or discovery without court
action."  Fed. R. Civ. P. 37(a)(5)(A)(i).  That exception is not applicable here.

the violation, or that circumstances would make it unjust to award reasonable expenses to the moving party." *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 Civ. 7990 (RWS), 2018 WL 1353261, at *5 (S.D.N.Y. Mar. 15, 2018) (internal quotation marks omitted).  In awarding sanctions against Respondent but not his counsel, this Court necessarily found, and reaffirms here, that there was neither substantial justification for Respondent's conduct in discovery, nor other circumstances making an award of fees and costs unjust.

"Disciplinary sanctions under Rule 37 are intended to serve three purposes.  First, they ensure that a party will not benefit from its own failure to comply.  Second, they are specific deterrents and seek to obtain compliance with the particular order issued.  Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *S. New England Tel. Co.* v. *Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (quoting *Update Art, Inc.* v. *Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)); *see also City of Almaty* v. *Ablyazov*, No. 15 Civ. 5345 (AJN), 2021 WL 4846366, at *3 (S.D.N.Y. Oct. 18, 2021) ("The purposes of these sanctions are to ensure that a party does not profit from their disregard of court orders and to deter future noncompliance."); *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 132 (S.D.N.Y. 2007) (noting that Rule 37 sanctions are meant to "restore the parties to the position they would have occupied but for breach of discovery obligations and deter future misconduct").

### 2.   The Lodestar Method of Awarding Attorneys' Fees

"Attorneys' fees are typically awarded by determining the "'presumptively reasonable fee,'" often (if imprecisely) referred to as the "lodestar." *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010); *Cardwell* v. *Davis Polk & Wardwell LLP*, No. 19 Civ. 10256 (GHW), 2021 WL 2650371, at *3 (S.D.N.Y. June 28, 2021) ("As with the award of statutory attorneys' fees to a party that prevails on the merits, an award of fees as a sanction for discovery abuse begins with a lodestar analysis." (internal quotation marks and citations omitted)); *Sullivan* v. *Aircraft Servs. Grp., Inc.*, No. 19 Civ. 6500 (MKB) (CLP), 2023 WL 6160187, at *1 (E.D.N.Y. Sept. 1, 2023) ("When awarding attorneys' fees and costs incurred as a sanction under Rule 37, courts must determine whether such expenses are reasonable." (collecting cases)), *report and recommendation adopted*, No. 19 Civ. 6500 (MKB) (CLP), 2023 WL 6158953 (E.D.N.Y. Sept. 21, 2023).

The lodestar is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case." *Millea*, 658 F.3d at 166. Courts may, only after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly* v. *City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Millea*, 658 F.3d at

167).[6]  A district court possesses considerable discretion in awarding attorneys'
fees.  *See Millea*, 658 F.3d at 166; *Arbor Hill*, 522 F.3d at 190.

　"To determine the reasonable hourly rate for each attorney, courts must
look to the market rates 'prevailing in the community for similar services by
lawyers of reasonably comparable skill, experience, and reputation.'"  *Heng
Chan* v. *Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2
(S.D.N.Y. May 8, 2007) (quoting *Gierlinger* v. *Gleason*, 160 F.3d 858, 882 (2d
Cir. 1998)).  The Second Circuit's "forum rule" requires courts to "generally use
'the hourly rates employed in the district in which the reviewing court sits' in
calculating the presumptively reasonable fee."  *Simmons* v. *N.Y.C. Transit Auth.*,
575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill,* 493 F.3d at 119).

"A district court has discretion to determine a reasonable hourly rate
based on considerations such as the complexity of the case, the prevailing

---

6    While the *Lilly* decision arose in the context of a fee-shifting statute, the Second Circuit
has cited to it in subsequent decisions analyzing attorneys' fees awarded as a result of
sanctions.  *See, e.g.*, *Rossbach* v. *Montefiore Med. Ctr.*, 81 F.4th 124, 144-45 (2d Cir.
2023).  Also in *Lilly*, the Second Circuit confirmed that while it has adopted the lodestar
approach for fee determinations, the twelve factors set forth in *Johnson* v. *Georgia
Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other
grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989) — which articulated a competing
method for fee determinations — "remain important tools for helping district courts
calculate the lodestar and, in exceptional cases, determining whether an enhancement
or cut to the lodestar is warranted."  *Lilly* v. *City of New York*, 934 F.3d 222, 233 (2d
Cir. 2019).  These twelve factors are: (i) the time and labor required; (ii) the novelty and
difficulty of the questions; (iii) the level of skill required to perform the legal service
properly; (iv) the preclusion of employment by the attorney due to acceptance of the
case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or contingent;
(vii) the time limitations imposed by the client or the circumstances; (viii) the amount
involved in the case and results obtained; (ix) the experience, reputation, and ability of
the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the
professional relationship with the client; and (xii) awards in similar cases.  *See Arbor
Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 186 n.3
(2d Cir. 2008) (citing *Johnson*, 488 F.2d at 717-19).

rates in similar cases in the district, and the quality of representation." *Pasini* v. *Godiva Chocolatier, Inc.*, 764 F. App'x 94, 95 (2d Cir. 2019) (summary order) (citing *Townsend* v. *Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012)); *accord Lilly*, 934 F.3d at 231-32.  In this setting, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven* v. *Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

When determining the reasonable number of hours, a court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley* v. *Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and citation omitted).  In addition, a court should examine the hours expended by counsel with a view to the value of the work product to the client's case.  *See Lunday* v. *City of Albany*, 42 F.3d 131, 133-34 (2d Cir. 1994) (per curiam).  The court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  The Second Circuit has suggested that courts should consider factors including "the experience, reputation, and ability of the attorneys," "awards in similar cases," and more broadly,

> the purpose of the award; that is, a different presumptively reasonable fee may be warranted if the fee is being awarded as a sanction for misconduct than if the fee is being awarded in connection with a

> successful outcome in a statutory fee-shifting case in
> order to make its determination.

*Arbor Hill*, 522 F.3d at 190.

In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Samms* v. *Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Yea Kim* v. *167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009) (internal quotation marks and citation omitted); *see also Fox* v. *Vice*, 563 U.S. 826, 838 (2011) (observing that the calculation of attorneys' fees "should not result in a second major litigation," because "[t]he essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection" (citation omitted)). A court retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as "trimming the fat." *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987); *accord McDonald ex rel. Prendergast* v. *Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006).

The burden is on the fee applicant — here, Petitioners — to "document[ ] the appropriate hours expended and hourly rates." *Dancy* v. *McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Hensley* v. *Eckerhart*, 461 U.S.

424, 437 (1983)).  Requested fees "must be supported with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done."  *Abdell* v. *City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *2 (S.D.N.Y. Mar. 2, 2015) (internal quotation marks and citation omitted).  "[C]ounsel … [are] not required to record in great detail how each minute of [their] time was expended," but "counsel should identify the general subject matter of [their] time expenditures."  *Hensley*, 461 U.S. at 437 n.12.

## B.   Analysis

### 1.   Overview

Every fee petition is unique, but the instant petition is unusual in the amount of proactive reductions that Petitioners' counsel have made to their billings.  One category of reductions was implemented independent of the instant litigation: Petitioners negotiated with their counsel a single hourly rate of $█ for all attorneys, which rate represents a discount — and for several of the attorneys, a substantial discount — from their customary hourly rates. (Dkt. #150 ¶¶ 13-21 & Ex. B-D).  In addition, Petitioners' counsel have elected to seek reimbursement for only three of the nine attorneys who billed time to the Motion to Compel, which results in an additional 60% reduction in the amount of fees that were actually billed to the motion.  (*Id.*).

Because of these *ex ante* reductions, the Court can quickly reject certain of Respondent's arguments in opposition to the fee petition.  For instance, Respondent repeatedly accuses Petitioners' counsel of top-heavy billing and

failing to delegate matters to more junior members of the team.  (Resp. Fee Opp. 1, 4, 7).  While such an argument might have force if there were a difference in billing rates among Petitioners' team members, it matters not here, where the rate is identical.  Indeed, as Petitioners note, "By criticizing these attorneys for having too much expertise, [Respondent] admits Petitioners obtained good value for the fixed rate — and, ironically, this good value is being passed along to [Respondent] via this fee award."  (Pet. Fee Reply 5).

Respondent also criticizes Petitioners' counsel for overstaffing the matter by employing "[a]n army of lawyers" for a matter that required only an attorney or two.  (Resp. Fee Opp. 5).  Without crediting Respondent's position that a one- or two-attorney team would have sufficed here, the Court notes that such an argument makes little sense where Petitioners have not submitted the billings of six of the nine attorneys who worked on this component of the case.  Similarly, Respondent's declamation of Petitioners' counsel for failing to submit the hours worked by paralegals and support staff falls flat where Petitioners do not seek to recover for these hours.  The same can be said for Respondent's objections to Petitioners' counsel's redactions to the billing statements (*see id.* at 2, 9-12); Petitioners' counsel did disclose all time entries relating to the Motion to Compel, even those for which they do not seek reimbursement (Dkt. #150 at Ex. B).  Put simply, the Court is not interested in seeing documentation for work for which Petitioners' counsel does *not* seek reimbursement, particularly where, as Petitioners note (*see* Pet. Fee Reply 8-9),

such disclosure would reveal litigation strategies to which Respondent is not entitled.[7]

Many of Respondent's objections proceed from the premise that the Motion to Compel addressed a routine dispute involving "garden-variety discovery issues." (Resp. Fee Opp. 6). This premise is mistaken. Nothing about the parties' dispute is garden-variety, as the more than 400 entries that populate the docket of this case will attest. The Judgment at issue exceeds $500 million; the interest alone is accruing at a rate of more than $80,000 per day. (Pet. Fee Br. 9). Respondent's assets, so far as the Court has been able to intuit from this litigation, are scattered all over the world, and some appear to have been transferred to others to prevent their discovery. Respondent has stymied Petitioners at every step of discovery, as demonstrated by the motions to compel (and other motions) that remain pending. If Petitioners' counsel's fees are high — in the absolute or on a comparative basis — it is due to Respondent's gamesmanship, and not some failing on counsel's part.

Finally, it is significant to the Court that Petitioners' fee petition arises in the context of a sanctions award. From Petitioners' perspective, the Court's order limiting sanctions to fees and costs incurred in connection with their Motion to Compel is too narrow; Petitioners have noted, for example, that sanctions are also warranted for Respondent's deposition conduct. (Pet. Fee

---

[7] Respondent also criticizes Petitioners for not documenting the fees and costs for which they seek reimbursement. However, client invoices were included as an exhibit with Petitioners' opening submission (Dkt. #150 at Ex. B), and Petitioners confirmed that they "███████████████████████████████████████████████" (Pet. Fee Reply 4).

Reply 13-14).  Given the state of the record, the Court is hardly in a position to disagree with their argument.  If nothing else, the Court recognizes that, even allowing the fee petition in full, Petitioners have still expended substantial sums of money to combat Respondent's misconduct.

### 2.    Determining the Reasonable Hourly Rate

The Court has written and reviewed many complex commercial litigation fee decisions over the years, and it recognizes that there has not been perfect consistency in assessing the reasonableness of attorneys' rates.  *See, e.g.*, *Murray* v. *UBS Sec., LLC*, No. 14 Civ. 927 (KPF), 2020 WL 7384722 (S.D.N.Y. Dec. 16, 2020) (fee petition in context of fee-shifting statute), *vacated and remanded on other grounds by Murray* v. *UBS Sec., LLC*, 43 F.4th 254 (2d Cir. 2022), *and reversed and remanded by Murray* v. *UBS Sec., LLC*, 144 S. Ct. 445 (2024); *Carrington* v. *Graden*, No. 18 Civ. 4609 (KPF), 2020 WL 5758916, at *1 (S.D.N.Y. Sept. 28, 2020) (fee petition in context of sanctions decision); *see also Tessemae's LLC* v. *Atlantis Capital LLC*, No. 18 Civ. 4902 (KHP), 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) ("Courts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable.").

On this prong of the analysis, the Court has focused on certain factors. First and foremost, the Court is persuaded by the fact that the hourly rate of $▮▮ sought by Petitioners' counsel is the very rate billed to, and paid by, Petitioners.  (Dkt. #150 at ¶¶ 15, 19 & Ex. B).  Payment of fees by clients has been recognized by courts as "solid evidence" of their reasonableness in the

market, *Bleecker Charles Co.* v. *350 Bleecker St. Apt. Corp.*, 212 F. Supp. 2d 226, 230-31 (S.D.N.Y. 2002), although courts must still exercise their discretion and look to the prevailing rates within this District, *see A.V.E.L.A., Inc.* v. *Estate of Monroe*, No. 12 Civ. 4828 (KPF) (JCF), 2014 WL 3610902, at *2 (S.D.N.Y. July 18, 2014) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" (alteration in original) (internal quotation marks and citation omitted)).  *See also Flatiron Acquisition Veh., LLC* v. *CSE Mortg. LLC*, No. 17 Civ. 8987 (GHW), 2022 WL 413229, at *14 (S.D.N.Y. Feb. 9, 2022) (noting that approved rates of $742 to $990 for partners and $405 to $660 for associates at large New York firm were rates that the "client was willing to pay").  The Court also acknowledges the substantial discount that this rate represents from counsel's customary rates.  (Dkt. #150 at ¶¶ 14-15).  And as a third cross-check on the reasonableness of the fees, the Court can compare the $██ rate sought to the rates charged to Respondent by his counsel, several of which are substantially higher.  (*See id.* at ¶¶ 22-25 & Ex. E-F).

The rate sought by Petitioners' counsel is also well within the range of rates found by courts in this District to be reasonable in analogous circumstances.  *See, e.g.*, *Carrington*, 2020 WL 5758916, at *11-15 (finding rates as high as $900 to be reasonable); *see also Proimmune Co., LLC* v. *Holista Colltech Ltd.*, No. 20 Civ. 1247 (KMK), 2024 WL 54281, at *3 (S.D.N.Y. Jan. 4, 2024) (finding hourly rate of $895 to be reasonable for partner in breach of contract action, citing "the hourly rates in this District, and the level of

experience of [p]laintiff's counsel"); *Match Grp., LLC* v. *Beazley Underwriting Ltd.*, No. 22 Civ. 4629 (LGS) (SLC), 2023 WL 9603886, at *7 (S.D.N.Y. Dec. 21, 2023) (finding hourly rate of $975 to be reasonable for partner with more than 30 years of insurance litigation experience); *U.S. Bank Nat'l Ass'n* v. *Dexia Real Est. Cap. Markets*, No. 12 Civ. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("As the Court has noted in approving billing rates in another complex commercial litigation, 'partner billing rates in excess of $1,000 an hour[ ] are by now not uncommon in the context of complex commercial litigation.'" (collecting cases)).  Accordingly, the Court finds the $██ hourly rate sought by Petitioners to be reasonable.

### 3.    Determining the Reasonable Number of Hours Expended

The Court next proceeds to determine the reasonable number of hours incurred by Petitioners in connection with their Motion to Compel.  In total, Petitioners seek reimbursement for ██ hours billed by Geoffrey Sant, ██ hours billed by Andrew Smith, and ██ hours billed by Carol Lee for a total of ██ hours.  The Court has reviewed with great care the billing statements submitted as substantiation for these hours, which statements disclose the attorneys' involvement in drafting the extensive opening and reply submissions for Petitioners' Motion to Compel; reviewing prior decisions of this Court regarding discovery violations and sanctions; mining the records of this and other cases involving Respondent for relevant factual information; and consulting with a Chinese language expert to determine whether Respondent's counsel had improperly coached him during his deposition.  (Dkt. #150 at

23

Ex. B).  For several reasons, the Court concludes that these hours are reasonable and awards them in full.

To begin, while the number of hours sought is considerable, it is not excessive.  The arbitral Award confirmed by the Court exceeds $500 million, and it is therefore understandable that Petitioners would expend considerable resources to identify and locate assets that could be attached to satisfy the Award.  And when Respondent repeatedly, and improperly, hindered Petitioners' efforts to identify such assets, it was appropriate for Petitioners' team of attorneys to pursue the avenues available to them in this Court.  The notion that a motion to compel production in a half-billion-dollar case involving a recalcitrant Respondent predisposed to obfuscation should have been entrusted to "one or two lawyers, at most" (Resp. Fee Opp. 5), beggars belief.[8]

What is more, Petitioners have already engaged in the "fat-trimming" called for by the Second Circuit.  *See generally Kirsch* v. *Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).  As noted, they have elected not to seek reimbursement for six of the nine attorneys who billed time to this matter; stated a bit differently, Petitioners have elected not to seek reimbursement for ▮▮▮ of the ▮▮ hours that they were billed in connection with the Motion to

---

[8]     The Court recognizes that Petitioners did not achieve complete success in their Motion to Compel, insofar as the Court did not find Respondent in contempt and did not impose sanctions on the Seiden Firm.  However, because these arguments were intertwined with successful arguments, the Court will not reduce the fees awarded for lack of success.  *Cf. Wilson* v. *Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90-91 (2d Cir. 2004) ("[W]hen a plaintiff fails to prove one of two overlapping claims — *e.g.* a discriminat[ion claim] — but prevails on the other — *e.g.* retaliation for complaining of discrimination — the plaintiff may recover fees for all the legal work.").

Compel.  And Petitioners have elected not to seek reimbursement of the costs of preparing the instant fee petition, to which they would be entitled as so-called "fees on fees."  *See generally Weyant* v. *Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for … fees[.]"); *Valley Disposal, Inc.* v. *Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059-60 (2d Cir. 1995) (finding that "unless there are reasons to the contrary, motion costs should be granted whenever underlying costs are allowed," but noting that Circuit precedent permits reductions for exorbitant claims).[9]

Finally, the Court returns to the genesis of this fee petition, *i.e.*, the sanction it imposed on Respondent for repeatedly and willfully violating his discovery obligations and the Court orders regarding same.  As the Court noted previously, even full recovery of the fees and costs sought by Petitioners results in a net loss to them.  To make additional reductions to the hours Petitioners seek reimbursement for would undermine the purposes of Rule 37 sanctions. The Court will exercise its broad discretion to not do that.

---

[9]    Respondent argues that Petitioners should not recover for time billed to things that counsel would have had to do notwithstanding the Motion to Compel, such as reviewing deposition transcripts or preparing discovery requests.  (Resp. Fee Opp. 8 n.4).  For starters, the Court disagrees with Respondent's characterization of billing entries submitted for reimbursement that reference Respondent's deposition; those reviews were clearly undertaken to find grist for Petitioners' Motion to Compel.  The Court's review of the billing statements discloses a handful of references to the preparation of discovery requests in entries that otherwise concerned preparation of the Motion to Compel.  (*See, e.g.*, ███████████████████████████).  The Court will not reduce the fees awarded on the basis of those few entries.

### 4.    Determining the Reasonably Incurred Costs

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  In its April 18, 2023 order, the Court awarded reasonable expenses incurred in connection with Petitioners' Motion to Compel.  (Minute Entry of April 18, 2023).  In response, Petitioners request the reimbursement of $2,500 in costs.  (See Pet. Fee Br. 14; Dkt. #150 at ¶¶ 16, 18 & Ex. B).  The itemized billing statements submitted by Petitioners with their motion reflect costs in excess of $2,500.  The Court will accordingly award the $2,500 costs figure that Petitioners seek.

### CONCLUSION

For the reasons set forth above and in the Court's oral decision of April 18, 2023, the Court awards attorneys' fees in the amount of $161,374.50 and costs in the amount of $2,500 against Respondent.

The Court will issue this Opinion in two versions.  The Clerk of Court is directed to file the sealed version of this Opinion under seal, viewable to the Court and the parties only, and to file the redacted version of this Opinion on the public docket.  The Clerk of Court is also directed to terminate the motion at docket entry 148.

SO ORDERED.

Dated:   March 5, 2024
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge